UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) |
| | ) |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| Suits Naming Specialty Surgery Center, Crossville, PLLC | ) ) |
| | ) |

MDL No. 2419
Dkt. No 1:13-md-2419 (RWZ)

**REPLY IN SUPPORT OF MOTION FOR PROTECTIVE ORDER [DOC. 2906]**

Defendants Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, MD ("Dr. Lister"), and Kenneth Lister, MD, PC ("Dr. Lister's Practice") (collectively, the "SSC Defendants") submit this reply in support of their motion for protective order at Doc. 2906.

## <u>Introduction</u>

The PSC has subpoenaed computers formerly owned by SSC but now owned by Cumberland Medical Center ("CMC"). The issue before the Court is whether SSC waived privileges applicable to data on these computers by selling them to CMC. If the Court finds that any privilege still applies, SSC must be allowed to review the data for privilege before production to the PSC.

Despite the PSC's attempts to lump them together, the waiver analysis differs for (1) the quality improvement and peer review privileges, (2) the work product doctrine, and (3) the attorney-client privilege.

The quality improvement and peer review privileges **cannot be waived**. SSC continues to hold those privileges. The sale of the computers to CMC did nothing to jeopardize that privilege.

Work product protection can **only** be waived if the material is disclosed to an adversary or is made available to an adversary. That has not occurred here. Thus, work product protection has not been waived.

Finally, attorney-client privilege has not been waived because the disclosure of attorney-client communications by selling the computers was inadvertent.

To maintain the sanctity of privileges attached to data on the computers, SSC must be permitted to review the information contained on the computers before it is produced to the PSC.[1]

<u>**Brief Reset and Narrowing of Issues**</u>

A brief "reset" should assist the Court in narrowing the issues involved in the current motion.

On January 29, 2016, the PSC issued a subpoena to CMC seeking forensic inspection and copying of seven (7) computers that SSC sold to CMC in 2013.[2] Upon learning that the computers may still contain privileged information, SSC promptly filed the instant motion for protective order. The motion does not seek to quash the subpoena. It only seeks the opportunity to review materials from the computers for privilege prior to production.

---

[1] The relief requested here was the exact relief that the district court implemented in *Solis v. Bruister*, the case relied upon heavily by the PSC in its opposition.
[2] The PSC's opposition indicates that seven (7) computers are at issue. *See* Doc. 2920 at 1.

Universe of Documents

SSC retained counsel in October 2012. From that point forward, SSC communicated with counsel about the litigation and internally about litigation preparation done at the direction of counsel. SSC used SSC email accounts for these communications.[3] Counsel for SSC communicated primarily with Jean Atkinson, RN and Kim Bowlin at SSC.[4] This continued up to the sale of SSC's assets (including the computers) to CMC on June 27, 2013.[5]

Examples of these communications are attached as *Exhibit 1*, with privileged information redacted. Even with the redactions, the Court can see that these are not innocuous communications that reveal nothing. The communications are clearly protected by the work product doctrine. And, in most cases, they are also attorney-client communications. If CMC did not "wipe" the computers when they bought them from SSC, the computers probably contain about 400 of these privileged emails.[6]

Ms. Atkinson also used the computers to create SSC's quality improvement and peer review reports.[7] Examples of materials covered by this privilege are attached as *Exhibit 2* with privileged information redacted. Again, even with the redactions, it is obvious that these communications are covered by the Tennessee Peer Review Law of 1967, Tenn. Code Ann. § 63-6-219 or the Tennessee Patient Safety and Quality Improvement Act of 2011, Tenn. Code Ann. §§ 63-1-150, 68-11-272. If CMC did not wipe the computers, they also probably still contain these materials.

---

[3] Supplemental Cline Aff. ¶¶ 4-8, attached as *Exhibit 3*.
[4] Supplemental Cline Aff. ¶ 8. Their computers likely contain the vast majority of the information covered by the attorney-client privilege and work product doctrine.
[5] Supplemental Atkinson Aff. ¶ 2, attached as *Exhibit 4*; Supplemental Cline Aff. ¶ 4.
[6] Supplemental Cline Aff. ¶ 6.
[7] Atkinson Aff. ¶ 4. Doc. 2907-4.

<u>Accessing SSC's Computers</u>

The computers at SSC's facility were desktop computers that required a login and password for access.[8] Each SSC staff member had an individual login and password.[9] The physicians at SSC rarely used a computer.[10] When they did, they shared a login and password.[11]

Ms. Bowlin and Ms. Atkinson had their own individual computers at SSC, which they used to access their email accounts.[12] While these staff members could also use their login and password to access various "shared" computers throughout the facility for other purposes, their email accounts were accessed only on their individual computers, which were also password protected.[13] [14]

<u>The Computers Now</u>

CMC counsel has indicated that four computer hard drives were put into storage by CMC, never having been put into use.[15] The other three computers were put into use at CMC after being "reimaged."[16] [17]

In May 2014, CMC reopened SSC's former facility as an outpatient endoscopy center. Ms. Atkinson worked in the center as Staff Nurse from May 2014 to May 2015.[18] Ms. Atkinson and the clinical staff at the reopened center use laptops, not desktops like

---

[8] Supplemental Atkinson Aff. ¶ 3.
[9] Supplemental Atkinson Aff. ¶ 5.
[10] Supplemental Atkinson Aff. ¶ 5.
[11] Supplemental Atkinson Aff. ¶ 5.
[12] Supplemental Atkinson Aff. ¶ 4.
[13] Supplemental Atkinson Aff. ¶ 4.
[14] The important point here is that access to the confidential email communications was controlled by password.
[15] S*ee* email with CMC attached as ***Exhibit 5***.
[16] S*ee* email with CMC attached as ***Exhibit 5***.
[17] It is possible that "reimaging" the computers wiped the hard drives, but counsel for CMC was unable to say for certain. S*ee* email with CMC attached as ***Exhibit 5***.
[18] Supplemental Atkinson Aff. ¶ 8.

the computer she used at SSC.[19] Ms. Atkinson was issued a new CMC login and password to access CMC's system.[20] The laptops utilized CMC's medical records software, which was not the same software used by SSC.[21]

### Reply

This reply only addresses specific issues raised by the PSC's opposition.

1. **As a preliminary matter, SSC has sufficiently established that documents on the computers at issue are privileged.**

The PSC suggests that SSC has not established the existence of privilege over the data at issue. At this point, because SSC is not in possession of the computers and CMC counsel does not want to root through the computers looking for privileged data, no one has reviewed the computer data closely to determine exactly what privileged material still exists on the computers. Counsel for CMC eventually determined, after looking at some of the data, that some communications with attorneys remain on the computers.[22] After learning this information, SSC promptly moved for a protective order.

The PSC's argument that SSC should not be permitted to review the data for privilege because SSC has not cited specific privileged documents is circular. The entire purpose of this motion for protective order is to let SSC do a privilege review to identify specific privileged documents on a privilege log. The PSC can challenge the privilege assertion with respect to individual documents once SSC's privilege review is complete.

Regardless, SSC has established the existence of privilege over the data at issue sufficient to rule on the motion. SSC filed several affidavits with the initial motion to establish the existence of communications on the computers likely covered by

---

[19] Supplemental Atkinson Aff. ¶ 9.
[20] Supplemental Atkinson Aff. ¶ 7.
[21] Supplemental Atkinson Aff. ¶ 9.
[22] Krause Aff. ¶ 5, Doc. 2907-5; *see also* email with CMC attached as ***Exhibit 5***.

privilege. Additionally, with this reply, SSC adds to the record with additional affidavit testimony and specific examples of privileged documents. These materials, unrebutted in the record, establish that attorney-client privilege, the work product doctrine, and the peer review or quality improvement privileges apply to data likely remaining on the computers.

Even setting the above aside, the Court can rule on the instant motion without ruling on the privileged nature of specific documents. *See Am. Int'l Specialty Lines Ins. Co. v. NWI-I, Inc.*, 240 F.R.D. 401, 404-05 (N.D. Ill. 2007) (ruling on motion for protective order despite no identification of specific documents because motion put application of privilege at issue). The issue before the Court is whether or not the sale of the computers waived the privileges applicable to the documents on those computers, not whether a specific document is covered by a specific privilege. That is the next step.

## 2. The case that the PSC relies on (*Solis v. Bruister*) actually supports SSC's proposed solution.

The PSC's opposition relies heavily on a case from the Southern District of Mississippi, *Solis v. Bruister*, No. 4:10-cv-77; 4:10-cv-95, 2013 WL 493374 (S.D. Miss. Jan. 22, 2013). A careful reading of the opinion demonstrates that it actually supports SSC's position.

First and foremost, the PSC neglects to mention that the court in *Solis* did exactly what SSC requests here. In *Solis*, one of the defendants sold a computer containing privileged information to DirecTV (a nonparty). *Id.* at *1. The plaintiff issued a subpoena to DirecTV for the computer. *Id.*

The defendants filed a motion seeking permission to conduct a privilege review of information on the computer after the data was reviewed by DirecTV, but before it was produced to the plaintiff (*i.e.*, exactly what SSC seeks here). *Id.* The court granted the motion and permitted the defendants to conduct the privilege review.[23] *Id.* The defendants had to provide a privilege log identifying any documents withheld based upon a claim of privilege. *Id.*

SSC requests the exact same process. Thus, if this Court chooses to follow *Solis*, SSC's motion for protective order should be granted.

Second, the PSC misstates the *Solis* court's basis for finding the privilege waived. The court did find that attorney-client privilege and work-product protection had been waived. *Id.* at *2. But, the *Solis* court found that the party waived the privilege because its privilege log did not comply with the rules. *Id.* at *1-*2.[24] Most of the court's discussion on the waiver issue centers on the *deficient privilege logs*, not on the sale of the computers. *Id.* at *1-*2. The court only notes in passing that the defendants "have not convinced the court that any privileges were not waived when" the computer at issue was sold. *Id.* at *1-*2.[25]

The PSC implies that the *Solis* court considered and flatly rejected the proposal SSC seeks here. In fact, *Solis* (1) supports the relief sought by SSC's motion and (2) speaks more to a finding of waiver where there is a deficient privilege log.

---

[23] Protective order entered in *Solis* attached as **Exhibit 6**.
[24] The court specifically noted that the local rule governing privilege logs provided that a failure to provide a compliant privilege log could result in waiver of the privilege. *Id.* at *1. Despite repeated warnings from the court, the defendants failed to produce a compliant privilege log, resulting in the court's finding of waiver. *Id.* at *2.
[25] The full text opinion is attached as **Exhibit 7**.

3. **The PSC is incorrect about waiver of work product; it can only be waived in very limited circumstances, none of which are present here.**

In its opposition, the PSC urges the Court to adopt the same standard for waiver of work product protection as waiver of attorney-client privilege.[26] In support of this position, the PSC cites *In re: Columbia/HCA Health Care Corp. Billing Practices Litigation*, 392 F.3d 289 (6th Cir. 2002). Again, the PSC misstates the holding of the cited case.

The Sixth Circuit explicitly stated, "Other than the fact that the initial waiver *must be to an 'adversary,'* there is no compelling reason for differentiating waiver of work product from waiver of attorney-client privilege." *Id.* at 307 (emphasis supplied). In other words, the Sixth Circuit recognized a critical distinction between waiver of attorney-client privilege and work product protection that is determinative of the issue here: work product must be disclosed to an adversary to result in waiver of the protection.

This holding is consistent with the law of the First Circuit and Tennessee.[27] In the First Circuit, waiver of work product protection is afforded greater protection than attorney-client privilege: "the cases approach uniformity in implying that work-product protection is not as easily waived as the attorney-client privilege." *U.S. v. M.I.T.*, 129 F.3d 681, 687 (1st Cir. 1997); *see also U.S. v. Sawyer*, No. 2:11-CR-82, 2013 WL 1668285, *2 (E.D. Tenn. Feb. 20, 2013) ("The work-product privilege is not coextensive

---

[26] Doc. 2920 at 14.
[27] It appears that most federal courts treat work-product protection as a qualified immunity from discovery, rather than a privilege. Thus, federal law likely applies, rather than state law. *See Cont'l Cas. Co. v. Under Armour, Inc.*, 537 F. Supp. 2d 761, 769 (D. Md. 2008) (collecting cases).

with the attorney-client privilege; rather it is distinct from and broader than the attorney-client privilege." (internal citations and quotations omitted)).[28]

In *M.I.T.*, the First Circuit reiterated the distinction between waiving attorney client privilege and work product protection:

[O]nly disclosing material in a way inconsistent with keeping it from an adversary waives work product protection.

*M.I.T.*, 128 F.3d at 687. The District of Massachusetts, not surprisingly, follows the First Circuit standard. *See Szulik v. State St. Bank and Trust Co.*, No. 12–10018–NMG, 2014 WL 3942934, *5 (D. Mass. Aug. 11, 2014) ("[W]ork product protection is waived only when documents are used in a manner contrary to the doctrine's purpose, when disclosure substantially increases the opportunity for potential adversaries to obtain the information." (internal citation and quotations omitted)).

To find a waiver of work product protection, the Court <u>must</u> find that the work product was disclosed to an adversary or in a way likely to end up in an adversary's hands. SSC did neither here. It sold password-protected computers to a non-adversarial business partner. It did not sell the computers to an adversary or in a way that would substantially increase the chance that an adversary would end up with the work product.

Regardless, the PSC conflates SSC voluntarily waiving attorney-client privilege with the waiver of the work product protection. "[A]ttorney work product 'belongs' to the attorney." *Hartford Fire Ins. Co. v. Garvey*, 109 F.R.D. 323, 328 (N.D. Cal. 1985). Counsel for SSC has never waived the protection afforded their work product.

---

[28] It should be noted that many courts, including the District of Massachusetts, hold that opinion work product enjoys "nearly absolute" immunity from discovery. *In re: Grand Jury Subpoena*, 220 F.R.D. 130, 145 (D. Mass. 2004) (collecting cases). Some of the documents at issue will likely be opinion work product.

Put simply, neither SSC nor its counsel waived work product protection. The requisite element – that counsel waived the protection by making the work product available to an adversary or by using it in a way that makes it substantially likely that an adversary will gain access to it – is not present.

4. **Sale of the computers did not automatically destroy attorney-client privilege.**

The PSC presents this as open-and-shut: Sale of the computers automatically waives attorney-client privilege. However, "[t]here is no case law to support the proposition that" transferring a computer to a third party "automatically" waives attorney-client privilege for information contained on the computer. *Orbit One Commc'ns, Inc. v. Numerex Corp.*, 255 F.R.D. 98, 108 (S.D.N.Y. 2008). The privilege does not simply evaporate with the transfer of the computers.

In fact, where a company sells its assets (rather than control of the company), the *seller* retains the attorney-client privilege. *See Am. Int'l Specialty Lines Ins. Co.*, 240 F.R.D. at 406 ("A transfer of assets, without more, is not sufficient to effect a transfer of privileges…." (internal citations and quotations omitted)). SSC maintains the privilege, even with sale of the data. The privilege is not lost forever by carrying the computers across town.

**5. SSC's inadvertent disclosure of attorney-client communications did not waive the privilege because (a) SSC took precautions to protect the data and (b) promptly sought to remedy the potential disclosure.**

The PSC's response misstates both the facts and the record when arguing that SSC has waived the attorney-client privilege by inadvertently disclosing privileged communications to CMC.

**a. SSC took precautions to protect its data by password protecting its computers.**

At multiple points in its opposition, the PSC states that SSC "took no precautions" to protect the confidentiality of the privileged communications on the computers.[29] This is totally false. The computers were password protected.[30] They required both a login and password to access them.[31] The email accounts most likely to contain privileged communications – the accounts of Ms. Atkinson and Ms. Bowlin – could only be accessed by those individuals using their logins and passwords.[32] CMC would need to bypass those security measures to access the emails after the sale.[33]

The assertion that SSC took no precautions to protect the privileged information is simply untrue. They took the same level of precaution virtually all businesses across the country take – protect the information with a password and restrict access to the computers. It was reasonable to believe, even if the computers were later sold, stolen, or lost, that the information would remain inaccessible.

---

[29] Doc. 2920 at 8.
[30] The PSC made the hyper-technical claim that SSC only established that Ms. Atkinson's computer was password protected. Ms. Atkinson's supplemental affidavit, attached as ***Exhibit 4***, should put that issue to bed.
[31] Supplemental Atkinson Aff. ¶ 3.
[32] Supplemental Atkinson Aff. ¶ 4.
[33] Removing a hard drive from a computer and/or imaging the hard drive (as has occurred here) can, apparently, bypass these security measures.

### b.  SSC did not delay in attempting to remedy the disclosure.

The PSC also argues that SSC failed to take prompt action to remedy the disclosure and suggests that SSC simply sat on their hands once this issue arose. The relevant timeline debunks that myth:

| | |
|---|---|
| **1/29/16** | PSC issues subpoena for inspection and copying of computers. |
| **2/2/16** | Counsel for SSC contacted counsel for CMC to determine (1) whether CMC still had possession of the computers, (2) whether they were in use by CMC, and (3) whether the computers had been wiped clean of information from SSC.[34] |
| **2/5/16** | Counsel for CMC reported that CMC still possessed the computers purchased from SSC. Counsel for SSC had not accessed any information on the computers and did not intend to do so. He advised that CMC intended to have a third-party vendor conduct all access to the data. Finally, he advised that he did not know whether the computers or hard drives contained any information over which SSC would assert privilege.[35] |
| **3/2/16** | Counsel for SSC contacts the PSC, and the PSC **agrees** to permit SSC to conduct a privilege review of materials.[36] |
| **3/9/16** | The PSC reverses course and states that it will not allow SSC to review the material for privilege.[37] |
| **3/14/16** | A proposed protective order governing the production of the computers is circulated. The order required the agreement of SSC. Counsel for SSC took this to mean that SSC would be permitted the opportunity to provide input on the proposed order before it was filed, thus affording SSC the opportunity to assert that it should be permitted to conduct a privilege review of the data on the computers.[38] |
| **Week of 3/21/16** | Counsel for SSC contacts counsel for CMC and confirms that no effort had been undertaken to determine whether any privileged materials remained on the computers.[39] |

---

[34] Supplemental Krause Aff. ¶ 3, attached as **Exhibit 8**.
[35] Supplemental Krause Aff. ¶ 4.
[36] Supplemental Krause Aff. ¶ 5.
[37] Supplemental Krause Aff. ¶ 6.
[38] Supplemental Krause Aff. ¶ 7.
[39] Supplemental Krause Aff. ¶ 3.

| 5/2/16 | Counsel for SSC spoke with counsel for CMC, who refused to confirm whether or not CMC had determined whether any privileged communications existed on the computers.[40] |
|---|---|
| 5/9/16 | Counsel for CMC confirms **for the first time** that the computers contained apparent attorney-client communications.[41] |
| 5/10/16 | Counsel for SSC objects to production of any privileged information and gives notice that, to the extent there was any disclosure of privileged information on the computers, the disclosure was inadvertent.[42] |
| 5/11/16 | The PSC demands production of the privileged material.[43] |
| 5/23/16 | SSC files its motion for protective order.[44] |

This timeline demonstrates that SSC has been prompt and diligent in trying to remedy the disclosure. Counsel for SSC contacted CMC **one business day** after the subpoena was issued and remained in close contact thereafter to determine if there was actually any privileged information remaining on the computers. If the computers were wiped, there was no issue. If not, then the chance remained that there was confidential information remaining on the computer. It was not until **May 9**, **2016**, (after repeated prompting from counsel for SSC) that counsel for CMC confirmed that the computers contained communications between SSC and its attorneys. **One day later**, SSC gave notice of their position and filed this motion for protective order **less than ten business days** later.

For the PSC to suggest there was a lack of diligence in addressing this is disingenuous. SSC told **the PSC** as early as March 2, 2016, that SSC sought to review any information from the computers for privilege before it was produced. There are no

---

[40] Supplemental Krause Aff. ¶ 9.
[41] Supplemental Krause Aff. ¶ 12.
[42] *See* email attached to motion for protective order. Doc. 2907-10.
[43] *See* email from PSC attached as ***Exhibit 9***.
[44] Doc. 2906.

unreasonable gaps in attention to this issue. SSC responded promptly at each juncture.[45]

\* \* \* \* \* \* \*

The PSC's claim that SSC unnecessarily delayed in seeking to remedy the disclosure of privileged information does not match reality. Counsel for SSC acted immediately to remedy any possible disclosure within days of the subpoena and followed up repeatedly for the next 90 days. As soon as counsel for CMC confirmed the computers contained potentially privileged information, SSC took immediate action, including this motion.

### 6. Ms. Atkinson's subsequent employment by CMC at the reopened facility does not affect the analysis.

Finally, the PSC argues that Ms. Atkinson should have taken some action to protect the privileged information on her old SSC computer when she was hired by CMC to work at SSC's old facility in May 2014.[46] This is a non-starter. When Ms. Atkinson started work for CMC, she used a completely different type of computer. Ms. Atkinson's SSC computer was a desktop computer.[47] The computers used by Ms. Atkinson at the reopened center were laptop computers.[48] Additionally, Ms. Atkinson was issued an entirely new login and password when she was hired by CMC.[49] [50]

---

[45] The PSC also suggests in its opposition that the privilege issue came up at the deposition of CMC in July 2015, requiring some sort of action by SSC at that time. There was no such testimony. The PSC (which noticed the deposition) never asked the witness about the computers. The *asset sale* was discussed, but the computers themselves were never even mentioned, let alone any privilege issue. This is confirmed by the deposition excerpt attached to the PSC's opposition. Doc. 2921-3. To suggest that the deposition of CMC's corporate representative somehow should have prompted a discovery that residual privileged materials might remain on hard drives transferred as part of the sale is absurd.

[46] Supplemental Atkinson Aff. ¶ 8.
[47] Supplemental Atkinson Aff. ¶ 3.
[48] Supplemental Atkinson Aff. ¶ 9.
[49] Supplemental Atkinson Aff. ¶ 7.
[50] Interestingly, CMC uses the same login/password technique to safeguard its confidential information.

She did not have the opportunity to (assuming she had the technological expertise) safeguard the information on her old SSC computer because she was issued a new CMC laptop computer. There was nothing about Ms. Atkinson's new computer that suggested to her she needed to go back and preserve the privilege on her old computer. The PSC's contention otherwise has no basis in fact.

**7.  Even if the Court finds that SSC waived attorney-client privilege, Ms. Atkinson and Dr. Lister can still invoke the privilege.**

Many of the attorney-client communications at issue are not strictly between SSC and its attorneys. Examples are included with *Exhibit 1*. Counsel for SSC also represents Ms. Atkinson and Dr. Lister.[51] Many courts agree that, in instances of joint representation, waiver of attorney-client privilege by one client *does not* waive the privilege as to *all* clients. *E.g.*, *In re: Teleglobe Commc'ns Corp.*, 493 F.3d 345, 379-80 (3d Cir. 2007). Thus, even if the Court finds that SSC has waived attorney-client privilege, Dr. Lister and Ms. Atkinson can continue to assert the privilege.

**8.  SSC remains the holder of the quality improvement and peer review privileges.**

The PSC asserts that SSC cannot "intervene" with respect to the quality improvement privilege. The PSC cites no law for this proposition, and SSC has located no support for it under Tennessee law. As explained above, the privilege cannot be waived under Tennessee law.[52] *Powell v. Cmty. Health Sys., Inc.*, 312 S.W.3d 496, 513

---

[51] Supplemental Cline Aff. ¶ 2.
[52] The PSC half-heartedly argues that SSC's motion is "untimely" with respect to the quality improvement privilege. Again, the PSC cites no case law for this proposition. Regardless, SSC promptly filed the instant motion as soon as it was informed that the computers contained privileged information. The motion was clearly not untimely. And, even if it were considered untimely under some constrained interpretation of FRCP 45 (which appears to apply only to the recipient of the subpoena), courts routinely excuse untimeliness for good cause. *See, e.g.*, *Huene v. U.S. Dept. of Treasury*, No. 2:11–cv–2110 JAM AC PS, 2013 WL 417747, *5 (E.D. Cal. Jan. 31, 2013) (citing cases). Here, SSC was diligent in its efforts to ascertain whether the computers contained privileged information. The delay in filing the motion

(Tenn. 2010). Even if it could, a corporation does not sell its privilege when it sells its assets, rather than control of the company. *Am. Int'l Specialty Lines Ins. Co.*, 240 F.R.D. at 406. SSC can continue to assert the privilege.

9. **SSC has invoked the claw back provisions in the ESI Protocol and Third Amended Protective Order.**

Both the ESI Protocol (Doc. 1087 at pp. 6-7) and the Third Amended Protective Order (Doc. 814 at ¶ 20) contain claw back provisions governing the inadvertent disclosure of privileged information. Because the orders did not contemplate this unusual situation, the language does not speak directly to claw back of privileged materials in the context of a sale of assets. Nevertheless, SSC has invoked these claw back provisions.[53] These orders provide yet another basis for the Court to conclude that no waiver has occurred. *See Szulik v. State St. Bank and Trust Co.*, No. 12–10018–NMG, 2014 WL 3942934, *4-*5 (D. Mass. Aug. 11, 2014) (finding no waiver of work product doctrine where party produced work product to adversary and later sought to claw it back pursuant to claw back provision).

## Conclusion

The PSC apparently believes it has discovered a backdoor to a treasure trove of clearly confidential and privileged communications. The law does not support waiver of such important privileges just by selling computers that apparently contain some form of privileged information. There must be more.

Simply selling the computers did not waive the work product protection. There must have been disclosure **to an adversary** or in a way substantially increasing the

---

resulted from CMC's inability or unwillingness to determine whether the information on the computers was privileged. This was outside the control of SSC and clearly constitutes good cause.
[53] *See* email attached as ***Exhibit 10***.

chances an adversary would obtain the work product. Here, neither fits. SSC sold password-protected computers to a business partner. There was no disclosure to an adversary or a conduit to an adversary. This required element for waiver is missing.

The PSC has offered nothing to rebut the proof in the record that SSC took precautions to safeguard the data, that the disclosure was inadvertent, and that actions were promptly taken to remedy the disclosure. Simply selling the computers does not automatically cause the privilege to dissipate. The attorney-client privilege has not been waived.

Lastly, the quality improvement privilege simply cannot be waived. Even if it could, a sale of assets does not forfeit the privilege.

Privileges like those invoked here are sacrosanct. An admittedly sloppy sale of computers during a larger asset sale should not, absent airtight proof of each element of waiver, open to discovery potentially hundreds of attorney-client communications, mounds of electronically-stored work product, and important quality improvement communications.

SSC respectfully requests the Court follow the procedure in *Solis* and enter an order (1) finding that the sale of the computers to CMC did not waive privilege and (2) permitting SSC to review any materials from the computers for privilege before production to the PSC.[54]

---

[54] Even if the Court determines that attorney-client privilege was waived, the Court must still permit SSC to conduct a privilege review for work product and quality improvement privilege.

Respectfully submitted,

/s/ Kent E. Krause
**PARKS T. CHASTAIN\*\***
**KENT E. KRAUSE\*\***
**ASHLEY E. GENO\*\***
Attorneys for Defendant, Specialty Surgery Center,
PLLC

**BREWER, KRAUSE, BROOKS & CHASTAIN,
PLLC**
P. O. Box 23890
Nashville, TN  37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (Fax)
pchastain@bkblaw.com
kkrause@bkblaw.com
ageno@bkblaw.com


**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.\***
**Chris J. Tardio\***
**Alan S. Bean\*\***
**Matthew H. Cline\***
315 Deaderick Street, Suite 1100
Nashville, TN  37238
(615) 254-0400 (Phone
(615) 254-0459 (Fax)
chris@gideoncooper.com

***Attorneys for the SSC Defendants***

\*Admitted pursuant to MDL Order No. 1
\*\*Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be served via electronic mail or regular U.S. mail to those participants identified as unregistered this the 21st day of June, 2016.

/s/ Chris J. Tardio
**CHRIS J. TARDIO**

18