# EXHIBIT 5

# Matt H. Cline

| | |
|---|---|
| **From:** | Matt H. Cline |
| **Sent:** | Monday, June 20, 2016 5:41 PM |
| **To:** | pwehmeier@adhknox.com |
| **Cc:** | Chris J. Tardio; Kent Krause; Ginger F. Ward |
| **Subject:** | RE: NECC Cases |

Paul:

I write to confirm our call today. If I'm incorrect on anything, please let me know.

- There are seven hard drives the PSC is asking you to search. None of them are currently in service. You do not know who at SSC used the computers/hard drives before they were sold.

- After they were purchased from SSC, three of the hard drives were re-imaged before being put back into service. You do not know whether re-imaging wiped SSC's data from the hard drives or not. You do not know who at CMC used these computers or what they were specifically being used for.

- The other four hard drives have been in storage. To the best of your knowledge, they have not been re-imaged or wiped. You do not know whether they have been accessed by CMC.

- Your office has imaged all seven hard drives to enable you to run some searches for the limited purpose of serving objections to the subpoena. As part of that process, you have reviewed some of the data on the hard drives. You have determined that there appear to be communications between SSC and attorneys, which you believe are to or from my office (although you could not say for certain). As soon as you determined that they appeared to be attorney communications, you did not review them further. You estimated that there were more than 50 such communications, and possibly more than 100 returned by the search terms you used to conduct your "objection review," for lack of a better term. You also confirmed Kent's recollection that you conveyed these findings to him on May 9, but not before. Finally, you were not able to tell us on which computer(s) the apparent attorney communications were located.

Again, if anything above is not correct, please let me now. Likewise, if you come across any additional information that will help us fill in some of the blanks, I would appreciate it if you would let me know.

Thanks again for your help with this.

Matt

Matthew H. Cline
Gideon, Cooper & Essary, PLC
UBS Tower, Suite 1100
315 Deaderick Street
Nashville, TN 37238
Phone: (615) 254-0400
Fax: (615) 254-0459
matt@gideoncooper.com

**From:** Matt H. Cline
**Sent:** Tuesday, June 14, 2016 3:34 PM
**To:** pwehmeier@adhknox.com

1

**Cc:** Chris J. Tardio; Kent Krause; Ginger F. Ward
**Subject:** NECC Cases
**Importance:** High

Paul:

As you know, our motion for protective order, asking the Court to grant us permission to do a privilege review of any documents or information on the computers that SSC sold to CMC, is pending and set for hearing next week. In order to fully address the issue at the hearing, we again ask for certain information:

Questions re: the SSC Computers at CMC

1. According to the PSC's response (Doc. 2920), there are seven SSC computers now in CMC's possession that they seek to search. What SSC computers have remained in storage since the sale? What SSC computers have been put into use at CMC?

2. For those put into use by CMC, were they wiped (or SSC's data deleted) prior to putting them in use? If not, did the SSC data on the computers put into use at CMC remain password-protected (our understanding is that SSC had passwords on them)?

3. For those remaining in storage since 2013, has there been any access of the data on the computers since 2013 (aside from your vendor)?

4. The two SSC staff members likely to have most or all of the privileged data on their computers are Jean Atkinson and Kim Bowlin. What is the status of Jean Atkinson's computer and of Kim Bowlin's computer?

Questions re: the Specific Nature of the Privileged Information

1. For each of the computers that are in use, have CMC employees been able to access (1) emails from the SSC email accounts or (2) files saved locally on the computers by SSC employees? Our understanding is that the computers were password protected, so it's not clear to us how CMC employees would be able to access the information on the SSC computers, even if it were not deleted prior to the computers being put into use at CMC.

2. I know that you (or your vendor) have located some emails between SSC and counsel on the computers. How many emails have you located that appear to be privileged? On whose computer were those located? Were they still under password protection? (In other words, how did you access them?) Are there files other than emails that appear to be privileged?

3. Can your vendor provide us with an index of the files on the computers? As you saw from our motion, we cannot say whether or to what extent the computers still contain privileged information beyond your statement that there are emails that appear privileged on one of the computers. An index should help remedy this issue.

I know that Kent has already sought some of this information from you, but I wanted to make sure we have covered our bases in advance of next week's hearing. Magistrate Boal will likely want answers to these (or similar) questions.

I am available for a call to discuss this week at your convenience. Just let me know a time that works for you.

Thanks.

Matt

Matthew H. Cline
Gideon, Cooper & Essary, PLC

2

UBS Tower, Suite 1100
315 Deaderick Street
Nashville, TN 37238
Phone: (615) 254-0400
Fax: (615) 254-0459
matt@gideoncooper.com