# EXHIBIT 7

2013 WL 493374
Only the Westlaw citation is currently available.
United States District Court,
S.D. Mississippi,
Eastern Division.

Hilda L. SOLIS, et al., Plaintiffs
v.
Herbert BRUISTER, et al., Defendants.

Civil Action Nos. 4:10–cv–77–DPJ–FKB, 4:10–cv–95–DPJ–FKB.
|
Jan. 22, 2013.

**Attorneys and Law Firms**

Dane L. Steffenson, Angela Faye Donaldson, U.S. Department of Labor, Atlanta, GA, Louis H. Watson, Jr., Watson & Norris, PLLC, Jackson, MS, Leslie C. Perlman, Michael Schloss, Peter B. Dolan, Stephen Silverman, Thomas Tso, U.S. Department of Labor, Washington, DC, for Plaintiffs.

Cecil Maison Heidelberg, Heidelberg Harmon, PLLC, Ridgeland, MS, David R. Johanson, Jackson Lewis, LLP, Los Angeles, CA, Douglas A. Rubel, Jackson Lewis, LLP, Cary, NC, Jason M. Stein, Rene' E. Thorne, Jackson Lewis, LLP, New Orleans, LA, for Defendants.

*ORDER*

F. KEITH BALL, United States Magistrate Judge.

*1  This cause is before the Court on Plaintiff Hilda Solis's Motion to Compel [Docket No. 427] and related filings. For the reasons set forth in this Order, the Court concludes that the Motion to Compel should be granted, and all documents on both privilege logs[1] at issue shall be produced to Plaintiff within fourteen (14) days from entry of this Order.

Plaintiff's Motion to Compel seeks an order compelling the production of documents subpoenaed by Plaintiff from DirecTV, the purchaser of Southeastern Ventures, Inc. f/k/a Bruister & Associates, Inc. These documents were stored on Defendant Amy Smith's Bruister & Associates computer, which DirecTV acquired in the purchase. In a previous Order, Docket No. 355, this Court denied a request by Defendants to quash the DirecTV subpoena. However, without making any determination on whether Defendants have any viable or legally cognizable claims of privilege or protection as to the documents subpoenaed from DirecTV, the Court allowed Defendants an opportunity to review the documents prior to production to Plaintiff. The Court ordered that, after review, Defendants produce to Plaintiff all subpoenaed documents to which Defendants claim no privilege or protection and a privilege log compliant with L.U.Civ.R. 26(a)(1)(C) for all subpoenaed documents withheld from production to Plaintiff. The instant motion seeks production of the DirecTV documents withheld by Defendants. DirecTV asserts no objection to the production of the documents at issue in Plaintiff's Motion.

**A. Waiver**
As an initial basis for this ruling, the Court finds that Defendants have waived any privilege, albeit on a limited basis as described in the penultimate paragraph in this Order. The Court instructed Defendants no less than two times to comply with L.U.Civ.R. 26(a)(1)(C) when providing a privilege log, *see* Docket Nos. 355 at 2 and 402 at 1, and specifically instructed the Defendants

in the Order at Docket No. 414 to comply with L.U.Civ.R. 26(a)(1)(C)(2) when it ordered production of the information which is the subject of this Motion to Compel.

The standards for privilege logs are clearly set forth in the Local Rules, the Federal Rules of Civil Procedure, and case law. The relevant Local Rule provides that a privilege log must contain at least the following information:

> name of the document, electronically stored information, or tangible thing; description of the document, electronically stored information, or tangible thing, which description must include[ ] each requisite element of the privilege or protection asserted; date; author(s); recipient(s); and nature of the privilege. To withhold materials without such notices subjects the withholding party to sanctions under Fed.R.Civ.P. 37 *and may be viewed as a waiver of the privilege or protection.*

L.U.Civ.R. 26(a)(1)(C)(emphasis added). The Local Rule works in conjunction with Fed.R.Civ.P. 26(b)(5)(A), which provides that a party withholding information on a claim of privilege or other protection must describe the information not produced or disclosed "in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Furthermore, the Court specifically described for Defendants the information that must be provided when claiming privilege when it ruled on other motions in this case. *See* Docket No. 409. As stated in its Order,

> **\*2** [i]n seeking a ruling on privilege, "the proponent must provide the court with enough information to enable the court to determine privilege, and the proponent must show by affidavit that precise facts exist to support the claim of privilege." *Nutmeg Ins. Co. v. Atwell, Vogel & Sterling,* 120 F.R.D. 504, 510 (W.D.La.1988). "A general allegation of privilege is insufficient to meet this burden." *Williams v. Smurfit–Stone Container Enter., Inc.,* Civil Action No. 10–1025, 2011 WL 6026596, at \*3 (W.D.La. Dec. 2, 2011).

Docket No. 409 at 2–3.

Nevertheless, despite this guidance, Defendants wholly failed to describe in their privilege logs the allegedly privileged DirecTV/Amy Smith documents withheld with sufficient detail for the Court to make any meaningful determination. The Court attempted to glean on its own whether any of these documents were privileged by an *in camera* review. However, review of the documents from the "missing 141," in conjunction with the privilege log provided for those documents, demonstrated the futility of the effort.

In addition, a review of the privilege log for the remaining 1,268 documents demonstrates the deficiencies in that privilege log when compared to the standard set forth in Fed.R.Civ.P. 26(b)(5) and L.U.Civ.R. 26(a)(1)(C). *See* Docket No. 428–2. In entry after entry, Defendants have failed to give enough information for the Court or the other party to assess the claim. In Plaintiff's Motion to Compel, Docket No. 427, and supporting memorandum and documents, Docket No. 428, Plaintiff has set forth in painstaking detail the myriad deficiencies of Defendants' privilege logs. The Court declines to ferret further. Accordingly, because Defendants failed to present privilege logs in compliance with Fed.R.Civ.P. 26(b)(5) and L.U.Civ.R. 26(a)(1)(C), the Court determines that Defendants have waived the privileges and protections claimed as more specifically set forth below.

Moreover, Plaintiff has argued that because all the documents at issue were provided to a third party, DirecTV, the privilege, if any ever existed, was waived on that basis. *See Alldread v. City of Grenada,* 988 F.2d 1425, 1434 (5th Cir.1993)("Patently, a voluntary disclosure of information which is inconsistent with the confidential nature of the attorney-client relationship waives the privilege."). Along those lines, other federal district courts have held that a sale and transfer of assets, including allegedly privileged information, waives the attorney-client and work product privileges. *See Robbins & Myers, Inc. V.J.M. Huber Corp.,* 2003 WL 213843 04, \*3 (W.D.N.Y May 9, 2003); and *In re In–Store Adver. Secs. Litig,* 163 F.R.D. 452, 458 (S.D.N.Y.1995). Defendants have not convinced the Court that any privileges were not waived when Amy Smith's computer was turned over to DirecTV.

**B. Privilege is Overcome**

The Court finds further support for its decision in two Fifth Circuit cases, *In re Occidental Petroleum Corporation*, 217 F.3d 293 (5th Cir.2000), and *Garner v. Wolfinbarger*, 430 F.2d 1093 (5th Cir.1970). In *Garner*, a case of first impression, the Fifth Circuit analyzed the availability of the attorney-client privilege to a corporation in a suit brought by its shareholders for alleged improprieties in the issuance and sale of the company's stock. *Garner*, 430 F.2d at 1103. The Court observed that the differences between communications by a client to his attorney regarding a prospective crime or fraud and communications by a client to his attorney regarding "prospective action of questionable legality are differences of degree, not principle." *Id.* Following this logic, the Court concluded:

> **\*3** [t]he attorney-client privilege still has viability for the corporate client. The corporation is not barred from asserting it merely because those demanding information enjoy the status of stockholders. *But where the corporation is in suit against its stockholders on charges of acting inimically to stockholder interests, protection of those interests as well as those of the corporation and of the public require that the availability of the privilege be subject to the right of the stockholders to show cause why it should not be invoked in the particular instance.*

*Id.* at 1103–04 (emphasis added)(footnotes omitted).

*Garner* set forth a number of factors which could be considered to make this "show cause" determination, including:

> the number of shareholders and the percentage of stock they represent; the bona fides of the shareholders; the nature of the shareholders' claim and whether it is obviously colorable; the apparent necessity or desirability of the shareholders having the information and the availability of it from other sources; whether, if the shareholders' claim is of wrongful action by the corporation, it is of action criminal, or illegal but not criminal, or of doubtful legality; whether the communication related to past or to prospective actions; whether the communication is of advice concerning the litigation itself; the extent to which the communication is identified versus the extent to which the shareholders are blindly fishing; the risk of revelation of trade secrets or other information in whose confidentiality the corporation has an interest for independent reasons.

*Id.* at 1104.

In *Occidental*, the Fifth Circuit employed the *Garner* factors when faced with a company's claim of attorney-client privilege as a basis to withhold documents during the course of ERISA litigation alleging breaches of fiduciary duty by the company that established an Employee Stock Ownership Plan ("ESOP"). *Occidental*, 217 F.3d at 293. The Court of Appeals affirmed the district court's decision ordering production of the documents, not on the basis of the company's fiduciary duty as plan administrator to the ESOP, but on the ground that the ESOP, as a shareholder in the company, "was entitled to pierce the corporation's attorney-client privilege" based upon analysis of the *Garner* factors. *Id.* at 297. The Court noted that "a corporation may invoke only a limited attorney-client privilege against the discovery demands of a shareholder," because management was managing on behalf of the shareholder, not itself. *Id.*

In this case, the Bruister & Associates ESOP was a stockholder in Defendant Southeastern Ventures, Inc. f/k/a Bruister & Associates, Inc. as a result of a series of five stock purchase authorizations that occurred between December 30, 2002, and December 13, 2005. Plaintiff Secretary alleges that the corporation, as well as individual Defendants, acted contrary to or, in the words of *Garner*, "inimically" to stockholder interests by overvaluing and inflating the corporation's value. As in *Occidental*, the Secretary, on behalf of the former employees, is "entitled to sue ... on behalf of the plan under 29 U.S.C. § 1132(a)." *Id.*

**\*4** Nevertheless, the Secretary, on behalf of the plan beneficiaries, still must show cause why the attorney-corporate client privilege should be overcome. In this case, consideration of the *Garner* factors favors piercing the attorney-corporate client privilege. Most prominent among the considerations are that the Bruister and Associates ESOPs own a substantial portion of the stock of the company claiming the privilege, and there is a claim of wrongful action by the company. The Complaint alleges

that the individual Defendants had a conflict of interest in that they owed fiduciary duties to the employees purchasing the company, but were acting in the best interests of the company, by whom they were employed, to the detriment of the employees purchasing stock. The documents Defendants claim are privileged were on Defendant Amy Smith's computer. As she allegedly owed fiduciary duties to the stock-purchasing employees, those documents should be produced to the Plaintiff since Smith should arguably have been acting on the employees' behalf. Further, as the corporation is now defunct, there does not appear to be a risk of exposure of trade secrets or other proprietary interests. Defendants have not challenged the Secretary's good faith in initiating this action; Defendants have not moved to dismissed based on frivolousness; and the complaint survived a motion to dismiss. Accordingly, the Court finds that the attorney-corporate client privilege is pierced on these additional bases, and the documents should be produced.

Likewise, Defendants' claims of the work-product privilege fail for the eighty-seven items for which they assert the work-product privilege as the sole privilege or in conjunction with the attorney-client privilege. *See* Docket No. 428–2 at 9, 42, 43, 44, 46, 47, 48, 49, and 50, and Supplemental Privilege Log. Defendants have failed to present any "evidence demonstrating that these documents were compiled in their present form in preparation for litigation," and there is no indication that discovery of these documents would "reveal counsel's ... mental impressions." *Owen v. State Farm Fire and Cas. Co.,* 2007 WL 1562216, * 1 (S.D .Miss. May 29, 2007)(Parker, J.). Furthermore, there is no "indication that the documents were assembled in a fashion that would reveal counsel's mental impressions about the case. The mere securing of documents or records in anticipation of possible litigation does not remove such materials from discovery upon a proper request." *Id.* In short, Defendants have simply failed to show that any of these documents should be protected as work product.

### C. Protective Order
Previously, this Court entered a Protective Order [Docket No. 413] to govern *inter alia* any production of the DirecTV/Amy Smith documents, and the Protective Order remains in full force and effect. Therefore, in accordance with paragraph 2 of the Protective Order, Defendants may designate as "Confidential" documents produced pursuant to this Order by stamping them "Confidential–Subject to Protective Order" prior to producing the documents to Plaintiff. Any documents so designated by Defendants may be disclosed or made available only to the Court, to counsel for the parties, and the other persons identified in paragraph 5 of the Protective Order, and said documents shall be afforded the protection from disclosure afforded under the terms and conditions of the Protective Order.

### D. Scope of this Order
*5 The waiver of privileges found in this Order is limited. Specifically, the waiver found in this Order constitutes a waiver for purposes of this case only, and this Order shall not be used in any other federal, state, administrative, or other proceeding to support that Defendants have waived any privileges as to the documents at issue in this Order. Further, the Court specifically finds that disclosure of these documents in this case shall not be construed to be and is not a waiver in any other federal, state, administrative, or other proceeding. *See* Fed.R.Evid. 502(d).

SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2013 WL 493374

Footnotes
1   The privilege logs are found at Docket No. 428–2 and the Supplemental Privilege log for the "missing 141" document gap in Defendants' production.

End of Document                                                                 © 2016 Thomson Reuters. No claim to original U.S. Government Works.