UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) ) | |
| Suits Naming Specialty Surgery Center, Crossville, PLLC | ) ) ) ) | |

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION FOR SUGGESTION OF REMAND OF SSC CASES TO TENNESSEE AND
TO ESTABLISH VENUE IN TENNESSEE VIA §157(b)(5) OR §1404(a)**

Defendants Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, MD ("Dr. Lister"), and Kenneth Lister, MD, PC ("Dr. Lister's Practice") (collectively, the "Defendants") submit this memorandum of law in support of their *Motion for Suggestion of Remand of SSC Cases to Tennessee and to Establish Venue in Tennessee via §157(b)(5) or §1404(a).*

1. **Introduction**

At the May status conference, the PSC previewed a plan to remand cases to their home districts. The Court then signed an order drafted by the PSC beginning this process.[1] The Order declares the MDL's goal of centralized pretrial proceedings concluded for dozens of cases, and sends them home.

The Order carves out three (3) groups of cases – the New Jersey (Premier) cases; the Maryland (Box Hill) cases; and a remaining lot of Tennessee (SSC) cases – to potentially remain in Massachusetts, leaving the decision in the New Jersey and

---

[1] Dkt. 2928.

1

Maryland cases primarily to the lawyers.[2] Without valid explanation, the Order isolates only the SSC cases, foreclosing a defined path to return to the forum state of Tennessee.

Assuming the New Jersey and Maryland cases **remain** in the MDL Court, the process proposed by the PSC and adopted by the Court leaves an MDL in Massachusetts with a few dozen cases from Tennessee, New Jersey, and Maryland. The bankruptcy is the only link to Massachusetts. Virtually all the pretrial litigation yet to be completed in these three groups of cases has absolutely no remaining connection to the bankruptcy. Yet, these cases would continue in Massachusetts.

If the New Jersey and Maryland lawyers opt for a one-way trip home (a trip SSC was not offered), only the SSC cases will remain in Massachusetts.[3] Those 24 SSC cases arising from injections in rural Tennessee will then be litigated more than 1,000 miles from their lawyers, parties, witnesses, and factual nexus. This defies common sense and runs counter to relevant venue law.

The MDL Court's work for the SSC cases will conclude shortly. At that point, remand to Tennessee is appropriate. Following remand, Tennessee is the forum where the cases should remain through trial.

---

[2] The Order allows the lawyers from New Jersey and Maryland, with judicial input, to decide where they wish to litigate. [Dkt. 2928, p. 10.]

[3] Based on early indications, this appears to be a likely outcome – Maryland and New Jersey go home, and Tennessee remains in Massachusetts.

## 2.  **Summary of Relief Requested**

For the reasons discussed below, the Court should enter an order:

1) Suggesting to the JPML remand of the SSC cases pursuant 28 USC §1407, after the conclusion of common expert discovery.[4]

2) Exercising §157(b)(5) authority to set venue for trial in Tennessee *or*, in the alternative, to transfer the cases from Massachusetts to Tennessee pursuant to 28 USC §1404.[5]

Once the SSC cases are remanded to Tennessee, the SSC Defendants will move to consolidate the actions in the Middle District of Tennessee (where they will all be pending), to proceed as a consolidated single-district litigation. This is unquestionably the most efficient and fair way forward in the SSC cases.

## 3.  **Status of SSC litigation**

What has been accomplished to-date should guide the Court's prospective decision making. The progression of this litigation has so far followed a logical course:

| *Common National Discovery* | → | *Common Clinic-Specific Discovery* | → | *Bellwether Selection* | → | *Case-Specific Discovery* | → *BW Trial* |
|---|---|---|---|---|---|---|---|

The SSC cases are in the second stage, the "common clinic-specific discovery" phase, with a schedule to complete that phase. More specifically:

➢ There are 24 cases against SSC; some, but not all, name Dr. Lister and his practice. All were filed in the Middle District of Tennessee and transferred to the District of Massachusetts under §1407.[6]

➢ Dr. Lister (the injecting physician) and Jean Atkinson (the nurse who made the purchase decision) have been deposed.

---

[4] The present scheduling order for the SSC cases extends through common expert discovery. [Dkt. 2652.]
[5] Although the SSC Defendants respectfully submit that the Court is obligated to remand the cases irrespective of 28 USC §157(b)(5), the SSC Defendants recognize that the Court has found it has the power to set venue in cases related to the bankruptcy. [Dkt. 2309.]
[6] One case was filed both in Massachusetts and the Middle District of Tennessee, and then consolidated.

➢ SSC's outside management company, Calisher & Associates, had some involvement in medication purchase. (The level of involvement is disputed.) The principals of Calisher have been deposed. Calisher has been added to the lawsuits. Calisher is expected to file a motion to dismiss the cases.

➢ Virtually all document and ESI discovery is concluded. Judge Boal allowed limited additional ESI discovery,[7] which is nearly complete, spurring some pending motion practice.[8] Once resolved, Dr. Lister and Ms. Atkinson will be deposed again on limited issues.[9]

➢ The Court entered a scheduling order that takes the SSC cases through completion of common expert discovery.[10]

* * * * * * *

When common expert discovery ends, the SSC cases will reach the logical juncture for remand.[11] The Court should then suggest remand to the JPML. Once remanded, the cases should remain in Tennessee. If the Court sets §157(b)(5) venue in Massachusetts, it should then transfer the cases to Tennessee under §1404. The ultimate result should be that the cases proceed in Tennessee after common discovery.

---

[7] Dkt. 2494.
[8] Dkt. 2906, 2841.
[9] Dkt. 2494.
[10] Dkt. 2652.
[11] *See In re: Ameriquest Mortgage Co.*, No. 05-C-7097, 2016 WL 344476, at *4 (N.D. Ill. Jan. 28, 2016) (explaining that remand may be warranted where "core" discovery is completed and only case-specific discovery is left); *In re Insurance Brokerage Antitrust Litig.*, No. 1663, 2009 WL 4796662, at *2 (D. N.J. Dec. 9, 2009) (noting that the Panel may exercise its discretion to remand when everything that remains to be done is case-specific); *see generally* Heyburn & McGovern, *Evaluating & Improving the MDL Process*, 38 Litig. No. 3, 404 (Spring 2012) ("conducting discovery as to common questions takes the parties only so far; after that, each case will entail case-specific discovery on issues like specific causation and elements particular to each state's law").

4

4. __Remand of these cases to Tennessee is required by law, and the proper time to remand is upon conclusion of common expert discovery__.

   a. __Section 1407's mandate reflects a preference for trial in the home district__.

Section 1407(a) mandates that actions transferred pursuant to that section "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred."[12] *Lexecon* makes clear that mandate must be followed.[13] [14]

The mandate of §1407 reflects a legislative policy that "trial in the originating district is generally preferable from the standpoint of the parties and witnesses."[15] "Jury trials are…meant to bring a community's diverse perspectives and norms to bear on fact finding."[16] The original forum courts are also generally better equipped to assess claims under their states' laws.[17] These policy considerations underlie §1407's remand requirement.

---

[12] 28 USC §1407.

[13] *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (holding MDL transferee court cannot self-transfer case under §1404 and must transfer case to home district for trial).

[14] Counsel located a single case that addressed the interplay of §1407 and §157(b)(5): *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 90-91 (2nd Cir. 1998) (noting that "*Lexecon*'s reasoning applies equally to transfers pursuant to any venue statute"). This Court did not follow *Shah* at Dkt. 2309 and held that it *could* self-transfer these cases under §157(b)(5).

[15] Elizabeth Burch, *Remanding Multidistrict Litigation*, 75 LA. L. REV. No. 2, 401 (2014) (citing legislative history at S. REP. No. 90-454, at 5 (1967)).

[16] Elizabeth Burch, *Remanding Multidistrict Litigation*, 75 LA. L. REV. No. 2, 408 (2014).

[17] *See In re Activated Carbon Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F.Supp.2d 1193, 1199 (D. Minn. 2012) ("'[T]he transferor courts, each of which is familiar with the state law of their respective jurisdictions, are in a better position to assess' these claims") (additional citations omitted).

**b.  Remand under §1407 is proper when the goals of the MDL process have been achieved.**

The principal question to resolve in deciding *when* to remand is whether the cases will benefit from continued proceedings in the MDL.[18] The Court must decide whether remand is more likely to ensure maximum efficiency for the parties and the judiciary than keeping the cases in the MDL.[19]

"In deciding whether to suggest remand to the Panel, a transferee court applies the same standards for remand the Panel would apply."[20] Remand is appropriate if the benefit of the MDL – efficiency and convenience to the parties and witnesses – has ceased, when balanced against transfer to the home district.[21] The most "common" (and logical) time to remand an MDL's cases is upon completion of common discovery, when the bulk of work left is case- and state-law specific.[22]

---

[18] *Eastman v. Biomet, Inc.*, No. 3:15-CV-585-RLM-CAN, 2016 WL 1425954, at *2 (N.D. Ind. April 11, 2016).

[19] *Hockett v. Columbia/HCA Healthcare*, 498 F.Supp.2d 25, 38 (D. D.C. 2007).

[20] *Eastman*, 2016 WL 142594, at *1-2 (additional cites omitted).

[21] *See Hockett*, 498 F.Supp. at 38 ("[t]he purpose of pretrial consolidation or coordination is 'for the convenience of the parties and witnesses and [to] promote the just and efficient conduct of such actions'") (citing 28 USC §1407)).

[22] *See In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, 2013 WL 4718958, at *5 ("a suggestion of remand would be appropriate where only case-specific discovery remains") (citing *In re Bridgestone/Firestone, Inc.*, 128 F.Supp. 2d 1196, 1198 (S.D. Ind. 2001)); *In re Ins. Brokerage Antitrust Litig.*, 2009 WL 4796662, at *2 ("the Court agrees with Thornell and concludes that remand of this case is appropriate because it appears that:…(4) everything that remains to be done is case specific"); *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 476 F.Supp. 445, 449 (J.P.M.L. 1979) ("[o]nce common pretrial proceedings and any other pretrial proceedings that the transferee court considers appropriate have been completed in the transferee district, each transferred action is to be remanded by the Panel for further pretrial and trial to the district from which each action was transferred").

### c. __At the conclusion of common discovery, the MDL no longer benefits the SSC cases__.

Retaining the SSC cases in the MDL after common SSC discovery ends will not eliminate duplicative discovery, will not conserve the resources of the parties, counsel, and judiciary,[23] and will not eliminate duplicative work by the original forum courts[24].

At this stage in the litigation, centralization in Massachusetts confers little benefit on parties to the SSC cases. The "national" discovery pertinent to all actions in the MDL has long been finished.[25] The Court has ruled on the overarching legal issues that stretch across cases.[26] Prospective discovery issues are specific to the Tennessee cases and largely involve issues of Tennessee law.[27] Rulings on the SSC motions will be of no moment in New Jersey or Maryland cases. The bottom line is that virtually no common work remains in Massachusetts that cannot take place just as effectively, and much more inexpensively for the parties, in the Middle District of Tennessee.[28]

A bellwether process in Massachusetts including cases originating in Maryland, New Jersey, and Tennessee will serve no purpose. First, the three (3) batches are at materially different stages of discovery.[29] A bellwether trial of a Maryland case (with

---

[23] *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-MC-1565, 2004 WL 882456, at *2 (S.D. Ohio Mar. 25, 2004).

[24] *In re Zyprexa Prods. Liab. Litig.*, 375 F. Supp. 2d 170, 172 (E.D. N.Y. 2005).

[25] Dkt. 2928 (finding that "discovery concerning NECC and the national defendants has concluded and those documents and materials obtained in discovery are available in a central online repository").

[26] *See, e.g.*, Dkt. 2581, 2700 (ruling on choice of law, applicability of product liability, and scope of discovery of NECC).

[27] *See, e.g.*, Dkt. 2581.

[28] The Court cannot ignore the cost to the Tennessee parties to litigate this case in Boston. Boston's cost of living – which is a fair proxy for the cost of hotels and "living" in Boston for days at a time for litigation – is much higher than Nashville. [http://www.numbeo.com/cost-of-living/region_rankings.jsp?title=2016&region=019] These cases will probably be litigated in the Cookeville courthouse of the Middle District of Tennessee. Obviously, the cost to litigate the cases in Cookeville (or even Nashville) for the parties and lawyers is much, much lower than continuous travel to Boston for witnesses, parties, and lawyers. Hotels alone in Boston for a trial for several lawyers, support staff, and witnesses will be multiple thousands of dollars.

[29] *See* scheduling orders at Dkt. 2851 and 2652.

different facts, different players, and different law) offers no predictive value for the Tennessee or New Jersey cases.[30] If the Court recognizes that the Maryland, New Jersey, and Tennessee cases must continue in Massachusetts on separate bellwether tracks, that setup can proceed just as efficiently and far less expensively at home.

The Minnesota District Court's suggestion of remand in *In re Activated Carbon-Based Hunting Clothing Marketing* is instructive. There, the Minnesota District Court presided over an MDL with nine (9) consolidated consumer protection cases, pending for four (4) years, governed by the law in nine (9) different states.[31] The claims involved alleged misrepresentations pertinent to clothing worn by hunters.[32] The Minnesota court managed the cases, including class certification efforts, deciding summary judgment motions (including one appealed to the Eighth Circuit), and discovery, for several years.[33] Pertinent to this instant pending motion, the district court framed the question:

> The question, then, is at what point suggestion of remand becomes appropriate in a multi-district litigation….Generally speaking, whether to remand "turns on…whether the case will benefit from further coordinated proceedings as part of the MDL." In the undersigned's view, the Related Actions have passed the point where they will continue to benefit from coordinated proceedings in this Court.[34]

The court noted that completion of common discovery was the "key factor" in the decision to remand. Because the primary purpose of multi-district litigation is to coordinate discovery, the Minnesota court's coordinated action had served its purpose.[35]

---

[30] If the Maryland and New Jersey cases are remanded, the Tennessee cases gain <u>no</u> efficiency continuing to litigate 1,000 miles away, in an "MDL" that only includes Tennessee cases.
[31] *In re Activated Carbon-Based Hunting Clothing Mktg.*, 840 F. Supp. 2d at 1194.
[32] *Id.*
[33] *Id.* at 1194-96.
[34] *Id.* at 1198 (internal citations omitted).
[35] *Id.* (citing cases for proposition that, when discovery and depositions are completed, the cases should be remanded; also noting that legislative history of statute supports this).

The parties fully litigated several discovery disputes in this Court, each of which has been resolved. Discovery in [a lead case] was made available for use in each of the Related Actions, and the discovery period in all cases has closed. The "primary purpose" of consolidation, therefore, has been achieved.[36]

The Minnesota District Court identified other objective factors weighing in favor of transfer: the scope of the transferred claims had narrowed because some defendants had settled; the remaining cases were "simple" single-plaintiff cases; and global settlement appeared unlikely.[37] Finally, the Minnesota court emphasized that the remaining claims, while some repetition existed, were all state law claims.[38]

Even lack of resolution of all pending motions did not prevent recommendation of remand because the original forum courts were well-equipped to handle the pending state law issues.[39] While some limited pre-trial work remained, that was not a bar to remand – the district court reasonably determined that the original transferor court would get "up to speed" by ruling on the pending state-law-specific motions.[40]

An "MDL seeks to promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common to all cases.*"[41] "The fact that the plaintiffs' claims have some degree of commonality is not a sufficient reason to keep the Related Actions here."[42] The Minnesota court determined that the MDL had run its course and remanded the cases.

* * * * * * *

---

[36] *Id.*
[37] *Id.* at 1198-99.
[38] *Id.* at 1199 (noting that the transferor courts are better equipped to consider state law issues).
[39] *Id.*
[40] *Id.* at 1199, n. 9.
[41] *Id.* (emphasis in original).
[42] *Id.* (cites omitted).

The SSC cases occupy a status like the Hunter Clothing MDL. Common discovery is moving toward its end. This Court has served its purpose in coordinating common discovery. This Court has narrowed the landscape of the litigation significantly, leaving a smattering of single-plaintiff cases proceeding under state law. There are no issues left "common to all cases."

Finally, like in Minnesota, transfer at the conclusion of common discovery allows the home court to get "up to speed" by handling the bellwether process and immediate pretrial work.[43]

5. **After remand at the conclusion of common discovery, the Court should not invoke §157(b)(5) to set venue in Massachusetts because the proper venue for the SSC cases is Tennessee. If the Court sets venue for all the MDL's cases via §157(b)(5) in Massachusetts, it should then transfer the SSC cases to Tennessee for trial under §1404.**

The Court previously observed that it would likely set venue for the STOPNC cases in Massachusetts under §157(b)(5).[44] A similar conclusion is not appropriate for the SSC cases. *If* 28 USC §157(b)(5) vests this Court with power to set venue, Tennessee is the option to choose. However, *if* the Court sets venue in *Massachusetts* under §157(b)(5), the appropriate next step is to transfer the cases *to Tennessee* under 28 USC. §1404 for case-specific proceedings and the ultimate trials.

---

[43] The Middle District of Tennessee is not starting cold on this case. SSC's insurer has filed a declaratory judgment action in the Middle District, which has been pending since 04/30/2015. As part of that litigation, the Middle District has handled motion practice and recently issued an order describing the background of these cases. [Case No. 2:15-cv-00026, Dkt. 115.] While the Middle District of Tennessee will have to get "up to speed," it will not be starting from scratch. And, the Middle District can then manage the cases in a consolidated fashion, for further efficiency. *See* FED. R. CIV. P. 42.

[44] Dkt. 2309.

### a. **Venue in Massachusetts furthers none of the purposes of §157(b)(5).**

28 USC §157(b)(5) does not **require** consolidation of tort cases in the forum where the bankruptcy is pending; it only **permits** it.[45] The statute also allows the Court to set venue **in the district where the claim arose**.

* * * * * * *

The purposes designed to be served by §157(b)(5) should figure heavily in exercising authority derived from that section. Those purposes are:

> ➤ To centralize and organize the administration of the estate.[46]
> ➤ To avoid creating an unadministrable estate.[47]
> ➤ To develop a reasonable plan of reorganization for the debtor.[48]
> ➤ To eliminate multiple forums adjudicating different parts of the bankruptcy.[49]
> ➤ To eliminate confusion, delay, and inefficiencies in the bankruptcy process.[50]
> ➤ To avoid undue interference with administration of the bankruptcy estate.[51]

**None** of the purposes of §157(b)(5) are served by selecting Massachusetts for 24 cases arising in and around Crossville, Tennessee.

* * * * * * *

The bankruptcy plan resolved all of the tort claims against the debtor and the debtor's affiliates.[52] Approval of the plan likewise resolved all of SSC's indemnity claims against the debtor.[53] The Court has declared the only other meaningful link to the

---

[45] *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 831 (5th Cir. 1993).

[46] *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 716 (D. Del. 2006); *In re United States Lines, Inc.*, No. 97 CIV. 6727 (MBM), 1998 WL 382023, at *5 (S.D. N.Y. July 09, 1998).

[47] *Stokes v. Se. Hotel Props., Ltd.*, 877 F. Supp. 986, 1001 (W.D. N.C. 1994).

[48] *In re Jemsek*, No. 06-31986, 2007 WL 1360867, at *3 (W.D. N.C. May 7, 2007).

[49] *Hopkins*, 342 B.R. at 716.

[50] *Podkolizin v. Amboy Bus Co.*, 402 B.R. 539, 545 (E.D. N.Y. 2009).

[51] *In re Collins & Aikman Corp.*, No. 08-14801, 2009 WL 4646097, at *1 (E.D. Mich. Dec. 7, 2009).

[52] Dkt. 2928 ("[w]hereas, the Chapter 11 Plan for New England Compounding Pharmacy, Inc. resolved tort victims [*sic*] claims against NECC, the Affiliated Defendants, the Insiders, and the National Defendants").

[53] Dkt. 2928 ("[w]hereas, the Chapter 11 Plan resolved the indemnity and contribution claims against NECC").

bankruptcy – discovery of NECC – over.[54] The SSC tort claims have no meaningful impact (real or theoretical) on the bankruptcy estate.

Nothing about trying the Plaintiffs' tort claims against SSC in Massachusetts helps centralize and administer the estate (the primary purpose of §157(b)(5)). Keeping the cases in Massachusetts does not assist in the plan of reorganization for the debtor (there is no reorganization). It does not eliminate multiple forums adjudicating different parts of the bankruptcy case (the SSC tort claims are not part of the bankruptcy case). The SSC cases do not name the debtor,[55] nor does any party in the cases hold a claim against the debtor dependent on the outcome of any trial against SSC. Venue in Massachusetts does not eliminate any confusion or delay in the bankruptcy process or interfere with the administration of the estate. Certainly, trial in Tennessee does not create an unadministrable estate. The unavoidable truth is that the SSC cases will not impact the bankruptcy estate in any meaningful way.[56]

---

[54] Dkt. 2928 ("[w]hereas, discovery concerning NECC and the national defendants has concluded and these documents and materials obtained in discovery are available in a central online repository").

[55] All the case law that counsel located suggests that §157(b)(5) is used to set venue in PITWD claims **against the debtor** (*see, e.g.*, *In re Triad Grp., Inc.*, No. 13-C-1307, 2014 WL 580778, at *1 (E.D. Wis. Feb. 14, 2014) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986)) ("the Court can 'fix venue of personal injury tort actions against the debtor' under section 157(b)(5)"); *Marks v. Outboard Marine Corp.*, 974 F. Supp. 406, 409-10 (D. N.J. 1997) ("[b]y its plain language, this provision confers on district court judges…the authority to transfer the venue of related tort cases <u>involving the debtor</u>) (emphasis added); *In re Pan Am Corp.*, 16 F.3d 513, 516 (2nd Cir. 1994) ("[a] <u>bankrupt debtor</u> who is a defendant in a personal injury action may move under section 157(b)(5) to transfer…") (emphasis added)) <u>or</u> **against non-debtor defendants** intricately tied to the debtor via an indemnity agreement or claim (*see, e.g., Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) ("[i]n the case at bar, the court is of the opinion that, given the nature of the relationship and degree of identity between the debtor Solutia and Pharmacia, the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against Pharmacia. Under the terms of the Distribution Agreement, Pharmacia claims a right to absolute indemnity from Solutia for any judgment that might be rendered against it, so that a judgment against Pharmacia is, in practical effect, a judgment against Solutia")). Counsel has found <u>no</u> decision that extends the power of §157(b)(5) to tort cases **against a <u>non</u>-debtor with no contractual or common law right of indemnity against the debtor** (as is the case here).

[56] *See Podkolzin*, 402 B.R. at 545 ("[t]hat rationale does not apply here because, as defendants have conceded, trying the case in the Kings County Supreme Court would not impact the restructuring….In

Keeping Tennessee-centric cases in Massachusetts does nothing to advance the fundamental goal of §157(b)(5) – to aid the efficient administration of the bankruptcy.

**b. <u>The Court should not ignore its obligation under §1404 to transfer the cases to the forum most convenient for parties and witnesses.</u>**

Section 157(b)(5) does not set guidelines for application.[57] Many of the §1404 factors are considered in a §157(b)(5) analysis.[58] Although the analyses under §157(b)(5) and §1404 are sometimes conflated, §157(b)(5) **does not** abrogate the long-standing doctrine of *forum non conveniens*, codified at 28 USC §1404.[59] The Court should not ignore this longstanding doctrine in selecting venue for the SSC cases.[60]

Section 1404 cases consider the following factors to choose the correct venue:

1) Relative convenience of the potential venues to the parties.
2) Relative ease of access to sources of proof.
3) Availability of compulsory process for attendance of unwilling witnesses.
4) Relative availability of documentary and tangible evidence.
5) Public interest in the administration of justice, including trial efficiency.[61]
6) Possibility of consolidation.
7) The order in which the district court obtained jurisdiction.[62]
8) Any connection between the forum and the issues.
9) The law to be applied.
10) The state or public interests at stake.[63]

Selecting venue under §157(b)(5) requires consideration of this menu of §1404 factors.[64] Only one conclusion can be drawn from applying these factors to the SSC cases: Tennessee is the appropriate venue for trial. The question is not a close one.[65][66]

---

fact, the lawsuit has little, if any effect on the debtors because under the CPP, Royal Sun Insurers will cover any damages that plaintiffs may recover and are defending the suit on the debtors' behalf").

[57] *In re Collins & Aikman Corp.*, 2009 WL 4646097, at *1.

[58] *See, e.g., In re. Collins & Aikman Corp.*, 2009 WL 4646097, at *2.

[59] *Stokes*, 877 F. Supp. at 1001.

[60] *See Baumgart*, 981 F.2d at 834 ("we hold that §157(b)(5) does not abrogate the doctrine of *forum non conveniens*…and that the district court was not precluded by such statute from dismissing the instant action on *forum non conveniens* grounds").

[61] *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 24 (D. Mass. 2000).

[62] *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 10-11 (1st Cir. 2000).

[63] *The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 17 (D. Mass. 2002).

**Relative convenience of the potential venues to the parties.**

Not all §1404 factors are of equal weight. "Of the factors considered by the court, the convenience of expected witnesses is 'probably the most important factor, and the factor most frequently mentioned.'"[67] Considering this factor of first order importance, the court looks at the number of potential witnesses located in the competing forums, the nature and quality of their testimony, and whether the witnesses can be compelled to testify.[68] A party seeking transfer should specify the key witnesses to be called, with a general statement of their expected testimony.[69]

Parties[70]

The most important witnesses in the SSC cases will be the plaintiffs, Dr. Lister, and Jean Atkinson. Dr. Lister (the physician who administered the contaminated steroid) and Ms. Atkinson (the individual directly involved in ordering the drugs) are the persons alleged to have acted negligently.[71] These witnesses reside in Tennessee.[72]

---

[64] *In re Dow Corning Corp.*, 778 F.3d 545, 550-51 (6th Cir. 2015) ("finally, it is clear that a decision to transfer venue under §157(b)(5) should, like a venue transfer under §1404(a), 'turn on considerations of convenience and the interest of justice'…") (additional cites omitted).

[65] Recognizing that the procedural posture is odd, the Court can (and should) either (1) remand via §1407 and allow the cases to proceed to trial in Tennessee; (2) remand via §1407 and set venue via §157(b)(5) in Tennessee; or (3) remand via §1407, set venue in Massachusetts under §157(b)(5), and then transfer the cases to Tennessee via §1404. All lead to the most common sense result – the SSC cases go to Tennessee after the conclusion of common discovery for trial.

[66] The Court has not done an individualized §1404 analysis for the SSC cases. The Order at Dkt. 2309 generally previewed the Court's ruling under §157(b)(5) for a broad group of "candidate cases" from multiple states. The venue determination should be individualized to the SSC cases.

[67] *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (additional cites omitted).

[68] *Id.*

[69] *Id.*

[70] At Dkt. 2309, when analyzing the appropriate venue, the Court pointed to the fact that a plurality of lawyers are from Massachusetts. "No case articulates that the convenience of counsel is a consideration in deciding a motion to transfer pursuant to § 1404(a). Whether this court is more convenient to the plaintiff's counsel is, accordingly, of no consequence." *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (additional cites omitted). Regardless, the lawyers in the SSC cases are in Tennessee, not Massachusetts. If that is a proper consideration, it weighs toward *Tennessee*, not Massachusetts.

[71] The likely witnesses for Calisher & Associates are located in Missouri, California, and Hawaii. None are located in Massachusetts.

Expert witnesses

Assuming the SSC Defendants and the PSC utilize largely the same experts as in the STOPNC cases (as is likely), the majority are in Tennessee or contiguous states.[73] Tennessee is much more convenient for these witnesses than Massachusetts.

NECC witnesses

These witnesses would be within the subpoena power of the Court in Massachusetts but outside the subpoena power in Tennessee. However, the Court blocked depositions of these witnesses, pending completion of the initial criminal trial, requiring that the SSC Defendants rely, in the interim, on documentary NECC evidence.[74] Given the rulings on the Defendants' efforts to depose NECC's owners and employees, and employees of affiliates, the Court likely would quash trial subpoenas for these witnesses if they interfere with the criminal proceedings. Whether the trials proceed in Massachusetts or Tennessee, proof of NECC's actions will be almost entirely documentary unless the Court's position changes.

Other fact witnesses

Other key fact witnesses are the plaintiffs' treating providers and the plaintiffs' family members.[75] These witnesses will address damages. They will almost all be located in Tennessee.

* * * * * * *

---

[72] Dr. Lister has taken on raising, with his wife, several of his grandchildren, some of whom reside with him full-time at home. The inconvenience of travel to Boston for a trial (plus for any pretrial proceedings in Boston and requiring his attendance) is even more than the typical witness being away from home.

[73] *See* Dkt. 2595.

[74] Dkt. 2123, 2586.

[75] SSC had a limited relationship with NECC, spanning only months. They bought a relatively small volume of product. The overwhelming majority of the relevant events underlying this litigation – the Plaintiffs' medical treatment, the decision to purchase the medication, the injections, the post-outbreak treatment, and any facts relating to damages – all took place in Tennessee.

15

No credible argument can be made that the most important factor[76] – convenience to the parties and witnesses – does not **overwhelmingly** favor venue for the SSC cases in Tennessee. Virtually every important fact witness reasonably expected to appear at trial is in Tennessee. The potential witnesses from Massachusetts most likely will refuse to testify in person. Most experts are in Tennessee or a nearby state.

* * * * * * *

All of the other pertinent factors point to venue in Tennessee:

**Relative ease of access to sources of proof.**

Live witnesses, as explained above, are virtually all in Tennessee. Testimony not yet taken and documentary evidence not yet gathered (case-specific testimony, case-specific medical records) will be located in Tennessee. The only source of *available* proof in Massachusetts is the documentary evidence of NECC and its affiliates. This evidence is available in an online repository.[77] This factor favors Tennessee.

**Availability of compulsory process for attendance of unwilling witnesses.**

*If* the Court were to allow trial subpoenas for unwilling NECC witnesses, this factor *may* weigh slightly toward Massachusetts. However, that seems unlikely. Fact witnesses of significance, such as treating health care providers, will not come from Tennessee to Massachusetts to testify and will be outside subpoena power of this Court. Comparing probabilities, this factor on net favors venue in Tennessee.

---

[76] Generally, the plaintiff's choice of forum is given great weight, also. *Momenta v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514, 522 (D. Mass. 2012). Here, every Plaintiff filed in the Middle District of Tennessee first.

[77] Dkt. 2928 ("[w]hereas, discovery concerning NECC and the national defendants has concluded and those documents and materials obtained in discovery are available in a central online repository").

**Relative availability of documentary and tangible evidence.** [78]

"[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form…their location is entitled to little weight."[79] This factor is neutral. If anything, it weighs toward Tennessee, as treating provider medical records are located in Tennessee and have likely not all been gathered.

**Public interest in the administration of justice, including trial efficiency.**

The Court's familiarity with the docket weighs toward Massachusetts. However, the bulk of the thousands of docket entries to this point will have no bearing on the trial of the first SSC action. While this Court is likely much more familiar with the procedural issues, cases from other states, and the interplay of the bankruptcy with the tort cases, none of that will affect the trial of the SSC cases.[80] Unlike the Massachusetts court, the Tennessee court will be more familiar with issues of Tennessee law most likely to be material to pretrial preparations and trial.

If familiarity with the case were a dispositive finding, no case would transfer. The fact that this Court is familiar with the complicated legal workup of this case should not preclude transfer to a forum clearly more convenient to the parties and witnesses.[81]

---

[78] At Dkt. 2309, when analyzing the appropriate venue, the Court stated that "the court expects that nearly all the evidence presented to the jury will be documentary." This is simply not true. The most important testimony in the case will likely be the testimony of Dr. Lister and Ms. Atkinson about the decision to buy from NECC. Also, the plaintiffs' proof of injury will be by live witness. Expert witness testimony, also live, will be important. The only documentary evidence will be of NECC's actions, which will largely be explained through live expert witnesses.

[79] *Boateng*, 460 F. Supp. 2d at 276 (citing 15 Wright & Miller, Fed. Prac. & Proc., §3853).

[80] There is nothing barring the Massachusetts court and the Tennessee court communicating about the status, as a way to get the Tennessee court "up to speed" before the cases are remanded.

[81] Notably, §1404 says "[f]or the convenience of *parties and witnesses*," not the lawyers or courts. The convenience of the parties and witnesses should be the most important factor.

**Possibility of consolidation.**

The cases will likely be consolidated in Tennessee and proceed as a single-district group of 24 cases, just as they would in Massachusetts. This factor favors Tennessee because consolidation is still available in Tennessee.

**The order in which the district court obtained jurisdiction.**

The federal court only has jurisdiction because the cases are arguably "related to" NECC's bankruptcy. Otherwise, these cases would proceed in state court in Tennessee. This factor favors Tennessee.

**Any connection between the forum and the issues.**

At this point, Massachusetts has minimal connection to the issues. The conduct at issue – the decision to purchase product from NECC – occurred in Tennessee. The primary issue to be decided – whether SSC negligently purchased from NECC – is most connected to Tennessee. The jury will be required to determine and apply the standard of care in Crossville, Tennessee, or a similar community, in evaluating the conduct.[82] Likewise, any treatment for the plaintiffs' alleged injuries occurred in Tennessee.

The issues remaining in the SSC cases for trial have near universal connection to Tennessee. The only connection to Massachusetts is the jury's consideration of non-party comparative fault. Those non-parties are not required to attend trial or defend themselves, nor are they subject to a judgment. The jury simply allocates fault to them.

This factor heavily favors Tennessee.

---

[82] Tenn. Code Ann. §29-26-115.

**The law to be applied.**

Tennessee law governs all issues in the SSC cases.[83] The Tennessee District Court will obviously be more familiar with Tennessee law. If there is an unresolved question of Tennessee law for the federal court to consider, only the Tennessee district court has the power to refer it to the Tennessee Supreme Court for guidance. If the cases remain in Massachusetts, there is no direct mechanism to seek guidance from the Tennessee Supreme Court on unresolved questions of Tennessee law.[84] This factor heavily favors Tennessee.

**The state or public interests at stake.**

The injured parties and the health care providers reside in Tennessee. Tennessee has the only interest in determining whether Tennessee health care providers breached the community standard of care, causing injury to Tennessee citizens.[85] While Massachusetts has an interest in dissolving NECC and administering its estate, that interest is separate from the SSC tort lawsuits. Massachusetts has no interest in the outcome of these cases. There will be no judgment against an entity or person residing in or created by the laws of the state of Massachusetts.

* * * * * * *

If one thoughtfully considers the SSC cases in light of the factors above, this is not a close call: Regardless of the analytic route chosen, Tennessee is the appropriate venue under §157(b)(5)[86] or §1404.[87]

---

[83] Dkt. 2581.

[84] TENN. R. S. CT. 23.

[85] Dr. Lister and Ms. Atkinson are licensed health care providers in Tennessee and subject to Tennessee's licensing boards. Massachusetts has no interest in regulating their practice of medicine/nursing.

[86] *See, e.g., In re. Collins & Aikman Corp.*, 2009 WL 4646097, at *2 ("[f]irst and foremost, it is evident that Claimant's interests would best be served by allowing him to pursue his ADA claim in the Illinois district

court, where this claim accrued at Claimant's place of employment in the Central District of Illinois, he and most or all of his witnesses are located in that district, he is represented by Illinois counsel, and it does not appear that any of the fact witnesses are Michigan residents. Accordingly, if the claim were tried in this Court, Claimant would be unable to compel the attendance of unwilling witnesses, and he would incur considerable expense and other burdens in securing the attendance of willing witnesses. Likewise, Claimant's own participation would be more costly and burdensome if his claim were to be litigated before this Court, where he would have to retain local counsel and travel to Michigan for trial and perhaps some pretrial proceedings….Finally, considerations of efficient administration of the bankruptcy estate do not offset these factors in favor of the Central District of Illinois"); *In re Nw. Corp.*, No. 03-12872 CGC, 2004 WL 1044421, at *2 (D. Del. Apr. 29, 2004) ("[a]s cited above, Section 157(b)(5) permits a district court to order personal injury and wrongful death claims to be tried in the district where the bankruptcy action is proceeding or in the district where the claim arose. In the Court's view, the circumstances in this case require the Court to exercise its discretion and order a transfer to Montana. The events at the heart of this action all occurred in Montana. Also, Plaintiffs have indicated their intention to consolidate the instant action with the pending Montana state court action if the instant action is transferred to the Montana District Court. Further, the claims in the instant action involve Montana tort principles and all of the witnesses reside in that state. Based on these facts, and pursuant to the authority provided by Section 157(b)(5), the Court is persuaded that principles of judicial economy and the convenience of the parties require the Court to exercise its discretion and transfer this action to the Montana District Court"); *Broughton v. Celotex Corp.*, 183 B.R. 945, 948 (M.D. Fla. 1995) ("[t]he case may be tried either in the district court in which the bankruptcy case is pending, or in the court in which the claim arose. Given that all the factual issues in the case center in Jacksonville, the plaintiff lives in Jacksonville, and the defendant conducts business there, it would seem appropriate—as between the Tampa and Jacksonville Divisions—to try the case in Jacksonville"); *Stokes*, 877 F. Supp. at 1001 ("[t]ransferring this case to the Northern District of Florida will not create an unadministrable situation for the estate of SHPLP. Second, the plaintiffs assert that their witnesses will include members of the Pensacola Police Department and former employees of the Days Inn, all of whom are presumed to be Florida residents. Furthermore, the Court notes that (1) plaintiffs residence is closer to the Florida jurisdiction; (2) the sources of proof are in Florida; (3) compulsory process for the attendance of unwilling witnesses may not be available to plaintiffs if the trial is held in Charlotte; and, (4) the costs to plaintiffs of having willing witnesses travel from Pensacola, Florida to Charlotte, North Carolina would be unnecessarily expensive. Lastly…the Florida District Court is likely more familiar with Florida state law and, for all the above reasons, seems more properly suited to try this case").

[87] *See, e.g., Medgyesy v. Medgyesy*, No. 12-10644-RWZ, 2012 WL 5921696, at *1 (D. Mass. Nov. 26, 2012) ("[f]irst, Illinois is much more closely connected to this case than Massachusetts. The trust funds at issue were established in Chicago and administered there for many years. The commingling of the trust funds (leading to the present confusion over their ownership) took place in Chicago. The allegedly excessive distributions were made and received in Chicago where all of the defendants reside. Much of the money presently at issue remains in Illinois bank accounts. Previous legal proceedings regarding these trusts have taken place in the Illinois state courts. By contrast, the only connections between Massachusetts and this case are that the plaintiff resides in Massachusetts and some of the trust funds have been transferred to a Massachusetts account. Second, the convenience of the parties and witnesses favors Illinois. Although the plaintiff lives in Massachusetts, all of the defendants live in Illinois. Furthermore, as the underlying events took place in Illinois, it appears that most of the relevant witnesses and documents will be more readily available there. Third, Illinois law will presumably apply in this case, as all of the underlying events took place in Illinois. Fourth, given the connections to each forum discussed above, Illinois has a greater interest in this case than Massachusetts"); *In re Saltire Indus., Inc.*, No. 06 CIV 4451 AKH, 2007 WL 1815450, at *3 (S.D.N.Y. June 22, 2007) ("[t]he issue now becomes whether the Southern District of New York, or the Middle District of Tennessee, is the more proper forum for consolidation. This Court is inconvenient to the real parties in interest and the witnesses, and particularly to the City and County of Dickson, Tennessee, co-defendants with Saltire. The Middle District of Tennessee is convenient to all except the Liquidating Trustee. The circumstances clearly favor the Middle District of Tennessee, the district comprehending Dickson County, where the claim arose, where the land at issue sits, and where much of the evidence remains").

### 6. Conclusion

The scheduling order in place moving the SSC cases through completion of common expert discovery offers a natural division between the work of the MDL court coordinating common proceedings, and the work of the original transferor forum trying the cases. At the conclusion of common expert discovery, the Court must follow §1407 and remand the cases to Tennessee, where they should remain.

The Court should retreat from considering a recapture of these cases following the §1407 remand, or exercise power under §157(b)(5) to set venue in Tennessee, or perform a comprehensive §1404 analysis and transfer the cases to Tennessee. No fair application of the §1404 factors results in trial of a single SSC case anywhere other than Tennessee.

The two (2) dozen SSC cases should return to Tennessee, for trial before a jury of Tennessee peers with an interest in the case, not remain 1,000 miles away from the parties, witnesses, and locus of facts.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 21st day of June, 2016.

/s/ Chris J. Tardio
**Chris J. Tardio**