# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br>　　　　Plaintiffs, | MDL No. 2419<br><br>Docket No. 1:13-md-2419 (RWZ) |
| This document relates to: | |
| Armetta, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14022-RWZ | |
| Bowman, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14028-RWZ | |
| Davis, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14033-RWZ | |
| Dreisch, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14029-RWZ | |
| Farthing, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14036-RWZ | |
| Kashi, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14026-RWZ | |
| Torbeck, et al. v. Box Hill Surgery Center, LLC, et al.,<br>No. 1:14-cv-14023-RWZ | |
| Handy v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14019-RWZ | |

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY BARBARA WAGNER'S MOTION FOR PROTECTIVE ORDER REGARDING PLAINTIFFS' SUBPOENA AND AMENDED NOTICE OF VIDEOTAPED DEPOSITION *DUCES TECUM***

Plaintiffs in the eight above-captioned cases ("Box Hill Plaintiffs" or "Plaintiffs"), by and through their respective undersigned counsel, Law Offices of Peter G. Angelos, P.C. and Cohen, Placitella & Roth, P.C., submit the following Memorandum of Law in opposition to Non-Party Barbara Wagner's (hereinafter "Ms. Wagner") Motion for Protective Order Regarding Plaintiffs' Subpoena and Amended Notice of Deposition *Duces Tecum* relating to her deposition.

## I.   INTRODUCTION

One of the clinic defendants in this Multi-District Litigation ("MDL") is Box Hill Surgery Center, LLC ("Box Hill"). It is an ambulatory surgical center located in Harford County, Maryland. It is charged by Plaintiffs in the eight captioned cases with having prescribed, obtained and administered fungal tainted preservative free methylprednisolone acetate ("MPA") from New England Compounding Center ("NECC") by mail in violation of Massachusetts' pharmacy laws and administering that improperly acquired lethal medication to its patients.[1] Four of the eight cases involve patients who died as a result of fungal meningitis caused by the tainted NECC MPA.

---

[1] Mass. Gen. Laws ch. 94C §§ 17, 19, 21 and 22.

The deposition testimony of Box Hill's Nursing Director/Administrator, Andrew Vicker, R.N., establishes Box Hill violated these statutes. He testified Box Hill routinely used the names of past patients treated at Box Hill on NECC Prescription Order Forms to prescribe and obtain preservative free methylprednisolone acetate ("MPA") from NECC for administration to different, upcoming Box Hill patients. Deposition of A. Vickers at 115-17. (Excerpts attached as Exhibit "A"). He further testified NECC's MPA then came via UPS or Federal Express packed in foil pouches which contained five vials of MPA. *Id*. at 124-25. Each pouch came with a label bearing the name of the Box Hill former patient used to obtain the five vials. *Id*. The MPA was then administered to other Box Hill patients, including the eight plaintiffs (or their respective decedents) before the Court. In 2012, Massachusetts prescription law required that compounded prescription medication such as MPA be dispensed by Massachusetts pharmacies only pursuant to patient specific-prescriptions and labeled with the name of the patient the medication was prescribed for. Mass. Gen. Laws ch. 94C §§19, 21 (2012).
.

2

Box Hill is owned and operated by Dr. Ritu T. Bhambhani, M.D., an anesthesia/pain medicine specialist. Deposition of R. Bhambhani at 25. (Excerpts attached as Exhibit B.) Prior to her opening Box Hill in 2008, she was employed by another ambulatory procedure clinic located in Harford County, Maryland, the Harford County Ambulatory Surgical Center, LLC ("HCASC"). *Id*. at 28-30. Dr. Bhambhani continued to see and treat patients at HCASC even after opening Box Hill. *Id*. at 33-37, 59. According to her deposition testimony she learned about and selected NECC as Box Hill's source of preservative free MPA from HCASC, who used NECC as its source of MPA. *Id*. at 59-60, 78-79, 81-84. That information, came from discussing clinic supply sources with Barbara Wagner, a surgical tech at HCASC in charge of ordering medication supplies for HCASC. *Id*. 59-60. As it turns out, HCASC was not only Box Hill's primary source of information on NECC as a source for preservative free MPA, it also was a supplemental supplier of NECC's MPA to Box Hill when Box Hill from time to time ran out of MPA and, as occurred in early September of 2012 prior to NECC's MPA recall, Box Hill stopped using its supply of NECC MPA on hand after learning of the death and of a serious injury of two Box Hill patients to whom it had administered NECC's MPA. *Id*. at 83-87,160-65,183-188; Vickers Dep. at 71-72. The 35 vials of MPA Box Hill borrowed from HCASC in September of 2012 were drawn from the fungal tainted May 2012 lot NECC recalled in September 2012 after the fungal meningitis outbreak became known to health authorities. Bhambhani Dep. at 160-65. As result, based on discovery done to date, at least 25 patients at Box Hill were administered tainted, recalled NECC MPA supplied to the facility by HCASC.

In view of Bhambhani's and Vicker's testimony, Plaintiffs issued an Amended Notice of Deposition and *Subpoena Duces Tecum* to HCASC's Ms. Wagner requesting, *inter alia*, document production and testimony on a number of issues which relate to (1) HCASC's knowledge of

3

NECC; (2) its policies and procedures for ordering, handling and administering medication from NECC; and (3) its supplying NECC MPA to Box Hill. Plaintiffs have an August 1, 2016 deadline to complete common issue fact discovery and the deposition was duly and timely noticed. Citing the existence of state court litigation against HCASC by other NECC MPA victims, Ms. Wagner resists being deposed by the MDL Box Hill Plaintiffs on these subjects except, perhaps, the topic of HCASC's lending NECC MPA to Box Hill. For the reasons set forth herein, Plaintiffs' respectfully request that this Court deny Ms. Wagner's request for a Protective Order limiting the scope of the requested discovery (Dkt. 2953) and vacate the stay of her deposition the Court entered pending its ruling on this motion (Dkt. 2954 and Dkt. 2956).

## II.   ARGUMENT

Pursuant to Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…. [i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). "The Federal Rules of Civil Procedure are to be construed liberally in favor of discovery." *Koninklijke Philips Elecs. N.V. v. Zoll Med. Corp.*, 2013 U.S. Dist. LEXIS 61441, at *4 (D. Mass. April 30, 2013) (quoting *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001)).

Rule 26 also provides: [a] party or any person from whom discovery is sought may move for a protective order …. [and] [t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense…. Fed. R. Civ. P. 26(c)(1). The person seeking the protective order to limit discovery sought bears the burden of establishing "good cause" for the request, "i.e., that justice requires [the Court] to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Ameristar*

4

*Jet Charter*, 244 F.3d at 192. To show good cause, the person seeking the protective order "must demonstrate a particular need for protection; "[b]road allegations of harm, unsubstantiated by specific examples or articulated reasons, do not satisfy the Rule 26(c) test." *Voice Domain Techs., LLC v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 143903, at *4-5 (D. Mass. Oct. 8, 2014) (quoting *Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1121 (3d Cir. 1986)).

Ms. Wagner argues that the information Plaintiffs seek from her regarding HCASC's knowledge about NECC and its policies, procedures and practices in ordering medication from NECC is not relevant to the case at hand. *See* Wagner Memo. of Law at 7-9. However, this Court has already ruled on and allowed the Box Hill Defendants and other Clinic Defendants to serve Notices of Deposition by Written Question upon other, non-party clinics regarding *those clinics' purchase of MPA from NECC*. (*See* Dkt. 2528.) Specifically, the Court found that "the notices of deposition appear to be targeted to the narrow topic of what due diligence was conducted by various NECC customers prior to purchasing MPA from NECC." (*See* Dkt. 2528 at 2.) The scope of information Plaintiffs seek from Ms. Wagner is the same or substantially similar to the scope of questions this court has already allowed in the Box Hills Defendants' Depositions by Written Question to non-party clinics. For example, the Deposition by Written Question attached to Box Hill's Notice of Deposition to Peninsula Orthopaedic Associates, P.A. ("POA") specifically asked about the Deponent's representative's position and job duties at POA as well as POA's purchases from NECC and actions prior to purchase. *Id.*

Ms. Wagner readily admits in her Memorandum of Law in Support of her Motion for Protective Order that the Court has allowed Box Hill to propound the same or substantially similar information requests on other non-party clinics as the Box Hill Plaintiffs here are currently making. *See* Wagner Memo. of Law at 9. However, Ms. Wagner argues that this situation is distinguishable

5

because HCASC is involved in other, similar state court litigation in another jurisdiction where discovery has not yet begun and has not reached the stage of the Box Hill proceedings in federal court. However, such arguments have been rejected by the First Circuit in *FTC v. Standard Fin. Mgmt. Corp.*, 830 F.2d 404, 412 (1st Cir. 1987) wherein the defendants sought a protective order preventing their financial statements from being released to the public along with the judicial record. *Id.* at 407. They asserted, *inter alia*, that disclosure of their financial statements would be detrimental to them in other litigation in which they were parties. *Id*. at 412. In rejecting this argument, the First Circuit found that the appellants "were wholly unable to point the court below to a single particularized harm which might befall them…." *Id.* Further, "[i]n the absence of…a demonstration that cognizable harm is lurking in the background" the appellants' argument must fail because "[a] finding of good cause…must be based on a particular factual demonstration of potential harm, not on conclusory statements." *Id.* Despite bearing the burden to show "good cause" under Rule 26(c), Ms. Wagner cites no authority and provides no factual demonstration of potential harm to support her position that pending litigation elsewhere is good cause to prevent Plaintiffs from discovering relevant information in this case. Ms. Wagner simply makes unsubstantiated, broad-based allegations of harm, which are insufficient to support a protective order. *Id.* at 412. *See also*, *Voice Domain Techs., LLC v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 143903, at *4-5 (D. Mass., Oct. 8, 2014).

Ms. Wagner points to this Court's recent orders granting Emory Clinic's and Vanderbilt's Motions to Quash as a reason the Court should grant her Motion for Protective Order. However, the Court granted those Motions to Quash because Emory Clinic and Vanderbilt submitted sworn affidavits stating that neither clinic ever purchased MPA from NECC. (*See* Dkt. 2901.) Accordingly, any information to be obtained was "likely to be of limited, if any, value and the

discovery of such information would certainly not be proportional to the needs of the case." *Id.* That is not the case here. Not only did HCASC purchase MPA from NECC, it was, as well, a primary source of information on which Box Hill relied in choosing NECC as its MPA supplier, and it supplied MPA to Box Hill from its inventory of MPA that HCASC obtained from NECC, including MPA vials from the recalled May, 2012 tainted lot.

Finally, the evidence Plaintiffs seek is proportional to the needs of the case. Ms. Wagner's conclusory statements that the parties have been given ample opportunity to discover the appropriate standard of care and/or pattern of practice is unsupported. As set forth in the preceding section, there is ample reason to depose Ms. Wagner about what she knew and did regarding NECC's MPA.

In sum, Ms. Wagner has failed to meet her burden to show good cause as to why her motion for a protective order should be granted. Accordingly, Ms. Wagner's motion should be denied.

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court deny Non-Party Barbara Wagner's Motion for Protective Order Regarding Plaintiffs' Subpoena and Amended Notice of Deposition *Duces Tecum.*

Respectfully Submitted,

/s/ Patricia J. Kasputys
Patricia J. Kasputys, Esq. (Pro hac vice)
Sharon L. Houston, Esq. (Pro hac vice)
**Law Offices of Peter G. Angelos, P.C.**
One Charles Center
100 North Charles Street
Baltimore, Maryland 21201
(410) 649-2000
Fax: (410) 649-2101
*Attorneys for Plaintiffs Armetta, Bowman, Davis, Dreisch, Farthing, Kashi and Torbeck*

/s/ Michael Coren
Harry M. Roth, Esq. (Pro hac vice)
Michael Coren, Esq.
**Cohen, Placitella & Roth PC**
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
(215) 567.3500
(215) 567-6019
*Attorney for Plaintiff Handy*

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of July 2016, true and accurate copies of this document and the accompanying memorandum of law filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Michael Coren*
_____
Michael Coren