UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates To:<br><br>　　All Actions Involving Specialty<br>　　Surgery Center and Dr. Kenneth<br>　　Lister | MDL No. 13-2419-RWZ |

ORDER ON JOINT MOTION FOR ENTRY OF STIPULATED QUALIFIED
PROTECTIVE ORDER REGARDING PLAINTIFFS' STEERING
COMMITTEE'S SUBPOENA TO CUMBERLAND MEDICAL
CENTER AND SSC DEFENDANTS' MOTION FOR PROTECTIVE ORDER
[Docket Nos. 2841, 2906]

July 28, 2016

Boal, M.J.

　　The Plaintiffs' Steering Committee ("PSC") served a subpoena to Cumberland Medical Center, Inc. ("Cumberland"), seeking access to information contained on certain hard drives in Cumberland's possession. Cumberland received the hard drives at issue from the SSC Defendants[1] as a result of Cumberland's acquisition of their assets. To protect information subject to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") as well as to protect against the disclosure of Cumberland's proprietary, confidential, or privileged information, the PSC and Cumberland jointly moved for the entry of a stipulated protective order. Docket No. 2841. The SSC Defendants do not object to the order but request that the Court modify the proposed protective order or enter a separate protective order allowing them to

---

[1] The "SSC Defendants" refers to defendants Specialty Surgery Center, PLLC ("SSC"), Kenneth R. Lister, M.D. ("Dr. Lister"), and Kenneth Lister, M.D., P.C. ("Dr. Lister's Practice").

1

review the information for privilege, work product, confidentiality or proprietary information before the information is produced to the PSC. Docket Nos. 2905, 2906. For the following reasons, the Court grants in part and denies in part the motions.

I. RELEVANT BACKGROUND

On May 3, 2013, SSC and Cumberland entered into an Asset Purchase Agreement whereby SSC sold substantially all of its operating assets to Cumberland. Docket No. 2907-3. The sale included seven computers[2] that likely contain privileged information. See generally Dr. Lister Aff. at ¶¶ 7, 9;[3] Atkinson Aff. ¶¶ 2, 4.[4] Dr. Lister has averred he was not aware that the computers sold to Cumberland contained privileged information or that Cumberland would be able to access privileged information. Dr. Lister Aff. ¶ 11. However, he has also stated that SSC did not erase any data from its computers when they were sold to Cumberland. Dr. Lister Aff. ¶ 8.

On November 5, 2014, counsel for the SSC Defendants sent a letter to the PSC under the ESI Protocol set forth by the Court in Docket No. 1087. Docket No. 2921-2. In that letter, counsel stated that local computers for Dr. Lister's Practice were included in the sale of assets to Cumberland and that it did not intend to search those computers because they were no longer in SCC's possession or control. Id. at 3.

On January 29, 2016, the PSC served a subpoena on Cumberland, seeking to examine the computers in Cumberland's possession. On March 9, 2016, in the context of an email discussion

---

[2] The sale involved eight computers, to which the PSC seeks access to only seven. Docket No. 2920 at 1, n. 2.

[3] "Dr. Lister Aff." refers to the Affidavit of Kenneth Lister, M.D. Docket No. 2907-1.

[4] "Atkinson Aff." refers to the Affidavit of Jean Atkinson, RN. Docket No. 2907-4.

concerning the Cumberland computers subject to the subpoena, the PSC informed the SSC Defendants that it was not aware of any legal basis on which SSC could intervene to review information on those computers, and therefore took the position that SSC would not be permitted to review the data before it was produced to the PSC.  Docket No. 2921-4.  The SSC Defendants did not respond to that aspect of the email directly at that time.  Id.  The PSC maintains that the SSC Defendants did not raise the issue again until the PSC filed the joint motion for an entry of a stipulated protective order on May 3, 2016.  Docket No. 2920 at 2.

On May 23, 2016, the SSC Defendants filed a motion for a protective order, permitting them to conduct a privilege review of any information in the computers sold to Cumberland prior to production to the PSC.  Docket No. 2906.  They also filed a response to the PSC and Cumberland's joint motion for a stipulated protective order.  Docket No. 2905.  The PSC filed an opposition to the SSC Defendants' motion for a protective order on June 6, 2016.  Docket No. 2920.  The Court heard oral argument on June 22, 2016.

II.     ANALYSIS

The SSC Defendants assert that the attorney-client privilege, work product doctrine, and peer review privilege apply to documents contained in the computers sold to Cumberland and that any such privileges have not been waived.  For the following reasons, the Court finds that the SSC Defendants have waived the attorney-client privilege and work product protection but not the peer review privilege.  The Court also finds that Jane Atkinson has not waived any personal privileges.

A. The SSC Defendants Waived The Attorney-Client Privilege By Voluntarily Disclosing Documents To Cumberland

Under Tennessee law,[5] to successfully invoke the attorney client privilege, the party asserting the privilege is obligated to establish the communications were made pursuant to the attorney-client relationship and with the intention that the communications remain confidential. State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust, 209 S.W.3d 602, 616 (Tenn. App. 2006) (citations omitted). The party asserting the privilege has the burden of proving that the privilege applies. Id. (citations omitted).

The attorney-client privilege belongs to the client. Boyd v. Comdata Network, Inc., 88 S.W.3d 203, 213 (Tenn. App. 2002) (citation omitted). A client may waive the privilege by voluntarily divulging the communication to third parties. Id.

The attorney-client privilege may also be waived by the inadvertent disclosure of privileged documents. See Amgen v. Hoechst Marion Roussel, Inc., 190 F.R.D. 287, 290-292 (D. Mass. 2000). To determine if a privilege is waived by inadvertent disclosure of documents, the majority of federal courts generally consider the following factors: (1) the reasonableness of the precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the scope of the production; (4) the extent of the disclosure; and (5) overriding issues of fairness. Id. at 292.[6]

---

[5] "[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 501. Tennessee law governs the claims against the SSC Defendants. See generally Docket No. 2581.

[6] Neither side has cited any Tennessee cases dealing with inadvertent production of documents and waiver of the attorney-client privilege. The Court therefore looks to federal law for guidance.

In arguing that they have not waived the attorney-client privilege, the SSC Defendants focus on the law regarding waiver by inadvertent disclosure. See Docket No. 2907 at 10-16. However, in selling and transferring the computers to Cumberland without first wiping the contents in the computers, the SSC Defendants voluntarily revealed any privileged communications to Cumberland, a third party. Other courts have found a waiver under similar circumstances. For example, in Stooksbury v. Ross, the court considered whether the defendants could maintain privilege protections over information on computers that they sold to a third party. Stooksbury v. Ross, No. 3:09-cv-498, 2012 WL 3779113, at *3 (E.D. Tenn. Aug. 31, 2012). In relevant part, the Stooksbury court stated:

> . . . the privilege has been unequivocally waived via the selling of these devices to American Harper Corporation, a third party. Mr. Ross and the Ross Entities' decision to sell a vessel containing privileged communications with counsel to a third party **must certainly be interpreted as voluntarily revealing those communications to a third party**. The contents of the devices have been conveyed to third-parties, and therefore, the Court finds this conveyance effectively waives the protection afforded to the contents of the devices, including the communications contained therein, under the attorney-client privilege.

Id. (emphasis added); see also Solis v. Bruister, No. 4:10-cv-77-DPJ-FKB, 2013 WL 493374, at *2 (S.D. Miss. Jan. 22, 2013); Robbins & Myers, Inc. v. J.M. Huber Corp., No. 01-CV-0201-E(F), 2003 WL 21384304, at *3 (W.D.N.Y. May 9, 2003); In re Store Advertising Sec. Litig., 163 F.R.D. 452, 458 (S.D.N.Y. 1995).

Here, the SSC Defendants knowingly sold the computers to Cumberland without clearing them of any information and, as far as the Court can tell, placed no conditions on any data contained in the computers. In the course of this litigation, the SSC Defendants disclaimed any right to access the materials on those computers, taking the position that the computers were beyond their possession, custody or control. Under these circumstances, the Court finds that the

SSC Defendants voluntarily disclosed any privileged information to a third party and, therefore, waived the attorney-client privilege.

Even if the Court were to analyze this case under the inadvertent disclosure doctrine, it would find a waiver. First, the SSC Defendants do not describe any precautions taken to ensure that privileged materials were not disclosed. There is nothing in the record to show that they even considered the issue of what would happen to any data in the computers sold to Cumberland. Dr. Lister averred that he did not know that privileged data was contained in the computers. Dr. Lister Aff. ¶ 11. However, his counsel took steps to copy the relevant data from the computers prior to the sale, for use during this litigation. See Cline Aff. ¶ 9.[7] Yet, the SSC Defendants did not remove the data from the computers, did not create any screening procedures to protect privileged material, and it did not enter into a clawback provision or reservation of rights related to any data in the computers.

Second, it took three years after the sale for the Defendants to realize that there was a potential disclosure of privileged information. It then took several months to address the issue. While the SSC Defendants state that they did not have confirmation that the computers in fact contained privileged communications until May 9, 2016, they were aware as early as January 2016 about the possibility that the computers may contain privileged information. See Krause Aff. ¶¶ 2-4.[8] They were also aware in March 2016 that the PSC took the position that SSC was not entitled to review the data in the computers for privilege before it was produced to the PSC. See Docket No. 2907-7. It was not until the PSC filed their joint motion in May for a stipulated protective order that the SSC Defendants filed the instant motion.

---

[7] "Cline Aff." refers to the Affidavit of Matthew H. Cline. Docket No. 2907-2.

[8] "Krause Aff." refers to the Affidavit of Kent E. Krause. Docket No. 2907-5.

Third, the extent of the disclosure is not known. The SSC Defendants do not know what information is actually contained in the computers but it appears that all data originally in the computers is still there, including any privileged communications. In other words, this is not a situation where a single communication or small number of communications slipped during a document production. Rather, the SSC Defendants simply left all data that was in those computers when they were sold to Cumberland, without regard to whether Cumberland would have access to potentially privileged information.

Finally, the overriding interests of fairness and justice also weigh in favor of waiver. "A determination of 'the overreaching issue of fairness' involving the protection of an attorney-client privileged communication, 'must be judged against the care or negligence with which the privilege is guarded with care and diligence or negligence and indifference.'" Figueras v. Puerto Rico Elec. Power Auth., 250 F.R.D. 94, 98 (D.P.R. 2008) (citations omitted). As discussed above, the lack of any measures to prevent the disclosure of privileged documents to a third party and the passage of time before the SSC Defendants asserted the privilege are indicative of negligence, not diligence.

B. The SSC Defendants Waived Work Product Protection

The work product doctrine protects (1) documents or other things, (2) prepared in anticipation of litigation, (3) by or for a party or a party's representative. Fed. R. Civ. P. 26(b)(3); Hickman v. Taylor, 329 U.S. 495 (1947).[1] "The underlying purpose of the work product doctrine is to protect the integrity of the adversarial process by creating a zone of privacy for those matters prepared by or for the party or the party's counsel in anticipation of litigation."

---

[1] Federal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question. Ferrara & DiMercurio, Inc. v. St. Paul Mercury Ins.Co., 173 F.R.D. 7, 11 (D. Mass. 1997).

Amgen, 190 F.R.D. at 290. The work product doctrine does not protect the underlying facts contained in the documents. Tyler v. Suffolk County, 256 F.R.D. 34, 38 (D. Mass. 2009); In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004).

One claiming privilege, "bears the burden of establishing that . . . [the privilege] applies . . . and that it has not been waived." In re Keeper of Records (Grand Jury Subpoena Addressed to XYZ Corp.), 348 F.3d 16, 22 (1st Cir. 2003); see also Amgen, Inc. v. Hoecsht Marion Roussel, 190 F.R.D. at 289 ("The party claiming the protection of a privilege bears the burden of demonstrating, by a fair preponderance of the evidence, not only that the privilege applies, but also that it has not been waived."). Once a party claiming privilege has carried its initial burden of establishing grounds for asserting the privilege and that the privilege has not been waived, the burden shifts to the opposing party to establish any exceptions to the privilege. Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 (1st Cir. 2012).

"Work product protection is waived, not by disclosure to a third person, but 'only when documents are used in a manner contrary to the doctrine's purpose[.]'" Bryan Corp. v. Chemwerth, Inc. 296 F.R.D. 31, 38 (D. Mass. 2013) (citations omitted); see also United States v. Massachusetts Institute of Tech., 129 F.3d 681, 687 (1st Cir. 1997) ("[W]ork product protection is provided against 'adversaries,' so only disclosing material in a way inconsistent with keeping it from an adversary waives work product protection."). As courts have explained:

> the work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent. The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation. . . A disclosure made in pursuit of such trial preparation, and not inconsistent with maintaining secrecy against opponents should be allowed without waiver of the privilege.

Bryan Corp., 296 F.R.D. at 38 (emphasis in original; citations omitted).  Accordingly, "'a disclosure made in pursuit of . . . trial preparation[,]' such as where the 'transferor and transferee anticipate litigation against a common adversary on the same issue or issues,' should not be deemed a waiver of the work product doctrine.  Id. (citation omitted).

Here, the disclosure was to Cumberland, who does not appear to be an adversary.  However, there is nothing in the record to show that Cumberland and the SSC Defendants have a common interest or that disclosure was made in pursuit of trial preparation.  Accordingly, the Court finds that any work product protection was also waived by the disclosure to Cumberland.

C.   The Tennessee Peer Review Privilege

The Tennessee Peer Review Privilege ("PRP") "applies only to peer review proceedings before a peer review committee as defined in Tenn. Code Ann. § 63-6-219(c) that involve a physician's conduct, competence, or ability to practice medicine."  Lee Medical, Inc. v. Beecher, 312 S.W.3d 515, 526 (Tenn. 2010).  It covers records possessed by entities that qualify as peer review committees but only when those entities are performing a peer review function.  Id. at 536.  Records kept by a hospital in the regular course of business unrelated to a peer review function involving a physician's professional conduct, competence, or ability to practice medicine are not protected by the PRP.  Id.  Similarly, the PRP does not apply to "records in the custody of original sources who did not prepare the record for use by a peer review committee in a peer review proceeding."  Id.

Effective April 12, 2011, Tennessee repealed the PRP privilege and enacted the Quality Improvement Committee Privilege ("QICP"), Tenn. Code Ann. § 68-11-272.  The QICP protects from disclosure "records of a [Quality Improvement Committee ("QIC")] and testimony or statements by a healthcare organization's officers, directors, trustees, healthcare providers,

9

administrative staff, employees or other committee members or attendees relating to activities of the QIC." Tenn. Code Ann. § 68-11-272(c)(1). A QIC is defined as:

> . . . a committee formed or retained by a healthcare organization, an activity of a healthcare organization, or one (1) or more individuals employed by a healthcare organization performing the types of functions listed in subdivisions 4(A)-(P), the purpose of which, or one (1) of the purposes of which is to evaluate the safety, quality, processes, costs, appropriateness or necessity of healthcare services by performing functions including, but not limited to:
>
> (A) Evaluation and improvement of the quality of healthcare services rendered;
> (B) Determination that the health services rendered were professionally indicated or were performed in compliance with the applicable standards of care;
> (C) Determination that the cost of health care rendered was reasonable;
> (D) Evaluation of the qualifications, credentials, competence and performance of healthcare providers or actions upon matters relating to the discipline of any individual healthcare provider;
> (E) Reduction of morbidity or mortality;
> (F) Establishment and enforcement of guidelines designed to keep the cost of healthcare within reasonable bounds;
> (G) Research;
> (H) Evaluation of whether facilities are being properly utilized;
> (I) Supervision, education, discipline, admission, and the determination of privileges of healthcare providers;
> (J) Review of professional qualifications or activities of healthcare providers;
> (K) Evaluation of the quantity, quality and timeliness of healthcare services rendered to patients;
> (L) Evaluation, review or improvement of methods, procedures or treatments being utilized;
> (M) Participation in utilization review activities, including participation in review activities within the facility or hospital system and activities in conjunction with an insurer or utilization review agent under title 56, chapter 6, part 7;
> (N) The evaluation of reports made pursuant to § 68-11-211 and any internal reports related thereto or in the course of healthcare organization's patient safety and risk management activities;
> (O) Activities to determine the healthcare organization's compliance with state or federal regulations;
> (P) Participation in patient safety activities as defined in § 921 of the Patient Safety and Quality Improvement Act of 2005.

Tenn. Code Ann. §68-11-272(b)(4).

It appears that the PRP and QICP may not be waived. In <u>Powell v. Community Health Sys., Inc.</u>, 312 S.W.3d 496, 512-513 (Tenn. 2010), the Supreme Court of Tennessee declined to find a waiver of the PRP, noting that "the proper course is to defer to the General Assembly, as the author of the peer review privilege, to determine if and under what circumstances the privilege may be waived." <u>Id.</u> at 413. Accordingly, the Court declines to find a waiver of the PRP and QICP.

D. <u>Jane Atkinson Has Not Waived Any Personal Privileges</u>

It seems likely that the computers also contain privileged communications between Jane Atkinson, who was the Director of Nursing at SSC, and her lawyers. Atkinson Aff. ¶¶ 1-2. Where an employee claims privilege for documents saved to the hard drive of a company owned computer, courts have focused on the employer's ability and right to access the information at issue, and whether the privilege-claiming employee had notice of the employer's practices and policies. <u>Orbit One Comm'ns, Inc. v. Numerex Corp.</u>, 255 F.R.D. 98, 108 (S.D.N.Y. 2008).

Here, Ms. Atkinson accessed her email account using a computer that was password protected. <u>Id.</u> at ¶ 3. She had no role in the decision to sell SSC's assets, including its computers, to Cumberland. <u>Id.</u> at ¶ 5. She did not know that the computers being sold to Cumberland would be sold without removing privileged information. <u>Id.</u> at ¶ 6. At oral argument, counsel for the SSC Defendants stated that SSC had no email policies. Accordingly, Ms. Atkinson has a reasonable expectation of privacy and did not waive her rights to assert privilege.

III.     ORDER

For the foregoing reasons, the Court grants in part and denies in part the parties' motions. Prior to their production to the PSC, the SSC Defendants may review the information in the computers for the Tennessee peer review privilege and the quality improvement committee privilege only and Ms. Atkinson may review the information for documents protected by her personal attorney-client and work product privileges.  However, Cumberland shall be allowed to review the data before the SSC Defendants and Ms. Atkinson.  No later than August 4, 2016, the parties shall file, jointly if possible, and separately if necessary, a qualified protective order consistent with this opinion.  The parties shall complete the review and production of documents within the deadlines to be set by the Court for the completion of common fact discovery in the SSC cases.

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge