IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> Bequette v. Ameridose, et al.; No. 1:13-cv-12429; <br> Bland v. Ameridose, et al.; No. 1:13-cv-11881; <br> Deol v. Ameridose, et al.; No. 1:13-cv-12841; <br> Garland v. Ameridose, et al.; No. 1:13-cv-12736; <br> Hurt v. Ameridose, et al.; No. 1:13-cv-12605; <br> Judd v. Ameridose, et al.; No. 1:13-cv-13120; <br> Kirkwood v. Ameridose, et al.; No. 1:13-cv-12431; <br> Martin v. Ameridose, et al.; No. 1:13-cv-12624; <br> May v. Ameridose, et al.; No. 1:13-cv-12234; <br> McElwee v. Ameridose, et al.; No. 1:13-cv-12625; <br> Osborne v. Ameridose, et al.; No. 1:13-cv-12739; <br> Parman v. Ameridose, et al.; No. 1:13-cv-12433; <br> Pellicone v. Ameridose, et al.; No. 1:13-cv-12916; <br> Reed v. Ameridose, et al.; No. 1:13-cv-12565; <br> Richards v. Ameridose, et al.; No. 1:13-cv-12603; <br> Wiley v. Ameridose, et al.; No. 1:13-cv-12305; <br> Williams v. Ameridose, et al.; No. 1:13-cv-12434. <br><br> and <br><br> Adamson v. Ameridose, LLC et al.; 1:13-cv-12734; <br> Brinton v. Ameridose, LLC; 1:13-cv-12612; <br> Bumgarner et al v. Ameridose, LLC et al.; 1:13-cv-12679; <br> Chambers et al v. Ameridose, LLC, et al; 1:13-cv-12591; <br> Eggleston et al v. Ameridose, LLC; 1:13-cv-12589; <br> Fuelling et al v. Ameridose, LLC; 1:13-cv-12741; <br> Hill et al v. Ameridose, LLC et al.; 1:13-cv-12622; <br> Johnson, et al v. Ameridose, LLC, et al.; 1:13-cv-12621; <br> Kirby v. Ameridose, LLC et al.; 1:13-cv-12592; <br> Knight v. Ameridose, LLC et al; 1:13-cv-12563; <br> Koonce et al v. Ameridose, LLC; 1:13-cv-12590; <br> Lemberg, et al. v. Ameridose, LLC, et al.; 1:13-cv-12617; <br> Lodowski et al v. Ameridose, LLC et al.; 1:13-cv-12572; | MDL No. 2419 <br> Dkt. No. 1:13-md-2419 (RWZ) |

{00098310.DOCX / ver: }

| | |
|---|---|
| Lovelace v. Ameridose, LLC et al.; 1:13-cv-12772; | ) |
| Mathias v. Ameridose, LLC et al.; 1:13-cv-12574; | ) |
| McCulloch et al v. Ameridose, LLC et al.; 1:13-cv-12610; | ) ) |
| McKee et al v. Ameridose, LLC et al.; 1:13-cv-12779; | ) ) |
| Meeker et al v. Ameridose, LLC; 1:13-cv-12616; | ) |
| Miller v. Ameridose, LLC et al; 1:13-cv-12570; | ) |
| Minor et al v. Ameridose, LLC et al.; 1:13-cv-12836; | ) |
| Noble et al v. Ameridose, LLC et al.; 1:13-cv-12606; | ) |
| Pelters et al v. Ameridose, LLC; 1:13-cv-12780; | ) |
| Pruitt et al v. Ameridose, LLC; 1:13-cv-12573; | ) |
| Ragland v. Ameridose, LLC et al.; 1:13-cv-12778; | ) |
| Redkevitch et al v. Ameridose, LLC et al.; 1:13-cv-12666; | ) ) |
| Rhind et al v. Ameridose, LLC, et al.; 1:13-cv-12740; | ) |
| Robnett et al v. Ameridose, LLC et al.; 1:13-cv-12613; | ) ) |
| Ruhl et al v. Ameridose, LLC et al.; 1:13-cv-12670; | ) |
| Russell et al v. Ameridose, LLC; 1:13-cv-12794; | ) |
| Rybinski v. Ameridose, LLC et al.; 1:13-cv-12818; | ) |
| Scott et al v. Ameridose, LLC et al.; 1:13-cv-12578; | ) |
| Settle et al v. Ameridose, LLC et al; 1:13-cv-12569; | ) |
| Sharer et al v. Ameridose, LLC et al.; 1:13-cv-12577; | ) |
| Skelton et al v. Ameridose, LLC et al.; 1:13-cv-12575; | ) ) |
| Slatton et al v. Ameridose, LLC et al.; 1:13-cv-12618; | ) ) |
| Smith, et al v. Ameridose, LLC, et al.; 1:13-cv-12684; | ) ) |
| Sullivan et al v. Ameridose, LLC et al.; 1:13-cv-12781; | ) ) |
| Wanta et al v. Ameridose, LLC et al.; 1:13-cv-12623; | ) |
| Weaver v. Ameridose, LLC et al.; 1:13-cv-12681; | ) |
| Young v. Ameridose, LLC et al.; 1:13-cv-12594; | ) |
| Youree et al v. Ameridose, LLC et al; 1:13-cv-12566. | ) |

<u>MOTION TO ORDER TORT TRUSTEE TO MAKE TIMELY DISTRIBUTIONS, REFRAIN FROM IMPOSING UNNECESSARY OBLIGATIONS ON TORT TRUST BENEFICIARIES AND FOR OTHER APPROPRIATE RELIEF</u>

On July 28, 2016, the Court set a status conference for August 16, 2016 at 2:00 p.m. EDT to discuss a proposed global settlement agreement for the resolution of Medicare Liens involving meningitis victims. The undersigned represent the 58 meningitis victims referenced in this

{00098310.DOCX / ver: }                                   - 2 -

Motion. The 58 referenced meningitis victims are Tort Trust Beneficiaries and will be referred to herein as the "Tennessee Claimants." On behalf of the Tennessee Claimants, the undersigned request that the Court consider this Motion at the August 16, 2016 status conference. The Tennessee Claimants are Parties to this proceeding and are entitled to payment under the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. (the "Plan"). Tennessee Claimants move the Court for appropriate relief due to the excessive and unnecessary delay in the receipt of monetary compensation from the NECC National Compensation Program. In support of their Motion, Tennessee Claimants state as follows:

## PERTINENT FACTS

The Tennessee Claimants received contaminated epidural steroid injections approximately four (4) years ago at the Saint Thomas Outpatient Neurosurgical Center in Nashville, Tennessee. The Tennessee Claimants filed claims with the NECC National Compensation Program and began receiving Claim Approval Letters from the NECC National Compensation Program beginning in January 2016. The Tennessee Claimants continued receiving Claim Approval Letters through the spring of 2016. The Tennessee Claimants have been officially notified that they are entitled to compensation from the NECC National Compensation Program.

The Court appointed Lynne Riley to serve as Tort Trustee on May 14, 2015, and it confirmed the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. on June 20, 2015. The "Tort Trust Agreement," to which Ms. Riley is a party in her capacity as Tort Trustee, provides at Article IX, Section 9.02(a):

> Payments shall be made to a Tort Trust Beneficiary from the National Fund Net Trust Proceeds upon written notice to the Tort Trustee from the National Settlement Administrator of the amount of any Initial Payment or Final Payment … to which the Tort Trust Beneficiary is allowed and entitled….

To date, no payments have been made to Tennessee Claimants or to any other claimants, nationwide.

The National Settlement Administrator of the NECC National Compensation Program has advised the Tennessee Claimants that:

> No payment will be made to any Medicare beneficiary until each Claimant's Medicare Lien is resolved; and

> [Beginning in 2015], the Plaintiffs Steering Committee (PSC) has been in discussions with Medicare to resolve, on a global basis, all Medicare Liens asserted against Tennessee Claimants and all other claimants asserting claims with the NECC National Compensation Program.

Many of the Tennessee Claimants or their decedents were Medicare beneficiaries. However, many were not Medicare beneficiaries, and their health care expenses related to the meningitis catastrophe were paid in whole or in part by private or employer provided health insurance.

Resolution of Medicare Liens

In the typical scenario involving the settlement of a personal injury claim and the satisfaction of a Medicare lien, the claimant's lawyer will contact Medicare and open a claims file. Then Medicare will issue a Conditional Payment Letter listing claims that Medicare believes are related to a claimant's case. It typically takes approximately 65 days to receive a Conditional Payment Letter. Once a Conditional Payment Letter has been sent a claimant may also review updated Conditional Payment information on the Medicare website. Upon settlement of a claim, a claimant must submit to Medicare the gross settlement amount, as well as attorney's fees and procurement costs related to the resolution of the case. Medicare takes into account the attorney's fees and procurement costs before computing a final demand amount. Medicare then issues a Final Demand Letter with a payoff amount. The entire process typically takes months, sometimes up to four to six months.

Several Tennessee Claimants, who are also Medicare beneficiaries, requested updated Conditional Payment Letters from Medicare in order to determine the amount of Medicare's claimed lien, and they attempted to obtain final payoff amounts from Medicare following the procedure described in the preceding paragraph. To date, Medicare has either not responded or else has told Tennessee Claimants that it is in discussions with the Plaintiffs Steering Committee ("PSC") and that the Tennessee Claimants should contact lead counsel for the PSC. In other words, by failing to respond and/or referring the Tennessee Claimants to the PSC, Medicare is preventing the Tennessee Claimants from ascertaining the amount of any Medicare liens.

Tennessee Claimants who are Medicare beneficiaries are entitled to ascertain the amount of Medicare's claimed liens and obtain payoff amounts regardless of negotiations between Medicare and the PSC.

The PSC has provided Tennessee Claimants with the proposed global Settlement Agreement between the NECC Tort Trustee and Medicare (the "Medicare Agreement"). The Medicare Agreement provides for a percentage/sliding scale payment to Medicare based on a percentage of the amount paid by the NECC National Compensation Fund plus a sliding scale payment that would require an additional payment for claimants with "lengthy hospitalizations." The Medicare Agreement allows any claimant to "opt out" of the Medicare Agreement and then deal directly with Medicare in order to resolve the lien in the traditional manner described in the preceding paragraphs. However, a claimant may not opt out of the Medicare Agreement until Medicare actually approves the global agreement. The PSC has further informed counsel for Tennessee Claimants that the Medicare Agreement *will not allow any claimant who does not opt out to ascertain the dollar amount of Medicare's claimed lien amount*. This refusal to inform claimants as to the dollar amount of Medicare's claimed lien has the potential to place Tennessee

Claimants and their counsel in the unfortunate position of having to decide whether to accept the Medicare Agreement/global settlement without knowing the amount of Medicare's claimed lien. Counsel for Tennessee Claimants in some cases will have a difficult time recommending whether it is in a claimant's best interests to accept the terms of the Medicare Agreement or opt out and negotiate with Medicare in the typical fashion.

### Undue delay caused by negotiation of the Medicare Agreement

Tennessee Claimants have attempted to obtain payoff amounts from Medicare so that they can present their claims to the Tort Trustee. They have been unable to do so due to the ongoing negotiations between the PSC on behalf of the Tort Trustee and Medicare. Even assuming the Medicare Agreement is soon approved by the Secretary of Health and Human Services and the Tort Trustee, payment will continue to be delayed. It appears at this time that it potentially would be in the best interests of a significant number of Tennessee Claimants to opt out of the Medicare Agreement, because in the end, the payment to Medicare under the Medicare Agreement is either not advantageous to some claimants, or it is exceedingly difficult to accurately compare the two without knowing the amount of the lien. Furthermore, a claimant that opts out of the Medicare Agreement is going to face additional delay because she must then request a Conditional Payment Letter and a Final Payoff amount and await a response from Medicare.

### Resolution of Private Health Insurance Liens

Some Tennessee Claimants are not Medicare beneficiaries. Those Tennessee Claimants' medical payments for treatment of meningitis were often paid by private or employer provided health insurance. One Tennessee Claimant obtained a written payoff amount from his private health insurer along with a statement from Tennessee Medicaid that there were no Medicaid liens. That Tennessee Claimant presented those materials to the Tort Trustee along with a request that

the Tort Trustee release the claimant's settlement money after satisfying the health insurer's subrogation/repayment claim. Counsel for the referenced Tennessee Claimant has offered to provide a certificate that there are no other known liens; however, the Tort Trustee refuses to issue a settlement payment.

In summary, the Tort Trustee has stated that no settlement money will be released until she can (1) confirm that a claimant is not on a list of Medicaid recipients; (2) confirm that no other private liens have been asserted; and (3) obtain a certification from each claimant and their attorney that no other medical care or expenses were covered by any other government health or Medicare Advantage payers.

## Conclusion

The Tennessee Claimants have suffered significant injuries and almost four years have passed since they were injured due to the contaminated steroids. Under the proposal put forth by the PSC and the Tort Trustee, it will be months before many Tennessee Claimants receive any settlement money. During the passing years and months, several Tennessee Claimants have died due to their injuries. Others have been forced to move from their homes and have suffered other hardships because they have not received the compensation to which they are entitled. There is no justifiable reason for the delay.

Tennessee Claimants request that the Court award the following relief:

a. That the Court set this Motion for hearing on August 16, 2016 at 2:00 p.m., a time at which this Court has already scheduled a hearing relating to some of these issues;

b. Order the Tort Trustee to make immediate distributions to the Tennessee Claimants who are not Medicare beneficiaries upon presentation of a suitable payoff letter from their private insurer and a certification that there are no known Medicare, Medicaid, governmental or other private liens;

      b.      Require Medicare to forthwith comply with any requests by Tennessee Claimants or other Claimants for Conditional Payment letters and Final Payoff letters in an expedited manner; and

      c.      Award any further and additional relief to which Tennessee Claimants are entitled.

Respectfully submitted,

/s/ William D. Leader
William D. Leader (B.P.R. No. 09531)
George Nolan (B.P.R. No. 14974)
LEADER, BULSO & NOLAN, PLC
414 Union Street, Suite 1740
Nashville, TN 37219
(615) 780-4111
bleader@leaderbulso.com
gnolan@leaderbulso.com


/s/ Daniel L. Clayton
Randall L. Kinnard (B.P.R. No. 04714)
Daniel L. Clayton (B.P.R. No. 12600)
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Blvd.
Nashville, TN 37205-2211
(615) 297-1007
rkinnard@kcbattys.com
dclayton@kcbattys.com

## CERTIFICATE OF SERVICE

I, William D. Leader, hereby certify that on August 2, 2016, I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

/s/ William D. Leader
William D. Leader