UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) |
| | )     MDL No. 2419 |
| | )     Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| Suits Naming Specialty Surgery Center, Crossville, PLLC | ) ) |
| | ) |

### _REPLY_ OF SSC DEFENDANTS IN SUPPORT OF

### _MOTION_ FOR SUMMARY JUDGMENT ON THE PLAINTIFFS' CLAIMS FOR STRICT PRODUCT LIABILITY [DOC. 2882]

Defendants Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, MD ("Dr. Lister"), and Kenneth Lister, MD, PC ("Dr. Lister's Practice") (collectively, the "SSC Defendants") move at Doc. 2882 for summary judgment on the Plaintiffs' claims for strict product liability under Tennessee's Product Liability Act ("TPLA"). The motion was based primarily on the Court's ruling at Doc. 2700 dismissing the same claims against another Tennessee clinic, Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"). The argument in the underlying motion is simple: If the claims fail as a matter of Tennessee law against STOPNC, the same claims on the same material facts must fail against the SSC Defendants.

The PSC responded to the motion for summary judgment at Doc. 2994. Pursuant to Local Rule 56.1, the SSC Defendants submit this reply in support of their motion for summary judgment at Doc. 2882.

**Introduction**

The PSC's untimely[1] opposition to the motion for summary judgment reads more like an opening statement at trial than a brief addressing a concise legal issue. Pages are devoted to irrelevant argument disparaging the diligence undertaken by SSC prior to purchasing from NECC, criticizing SSC's motivation for buying the medication, and arguing that SSC "sold" steroids to patients.

Putting the hyperbole aside, the PSC fails to present any factual or legal basis for the Court to depart from its prior ruling on this same issue. The Court has already considered and rejected the arguments raised by the PSC twice: first in issuing its ruling that the Tennessee Health Care Liability Act ("THCLA") – not the TPLA – governs these cases[2]; then, in denying the PSC's motion to reconsider that ruling[3]. The Court should apply the law of the case and reject those arguments a third time here.

The Court should also deny the PSC's request to defer ruling on the instant motion based on the certification of this issue to the Tennessee Supreme Court. This 180-degree reversal of course by the PSC is an attempt to delay the inevitable. At the time of the Court's ruling at Doc. 2700, the Court knew that the issue had been certified for appeal to the Tennessee Supreme Court. That fact did not affect the timing or content of the decision. The Court rejected the suggestion that the Massachusetts Court should wait for the Tennessee Supreme Court to rule when the Defendants advocated it, and should likewise reject it now that it has been proposed by the PSC.

---

[1] No opposition was filed by the June 18, 2016 deadline. The motion may be granted as unopposed.
[2] Doc. 2700.
[3] Doc. 2826.

The correct course here is for the Court to follow its ruling at Doc. 2700 and grant the SSC Defendants' motion for summary judgment.

## Law and Argument

I.  **The PSC failed to file a timely opposition to the motion; thus, the motion should be granted.**

The pertinent chronology is undisputed. The SSC Defendants filed their motion for summary judgment and supporting documents on May 19, 2016.[4] MDL Order No. 9, Doc. 1425, requires responses to dispositive motions to be filed within 30 days. That made the PSC's opposition due June 18, 2016 (and certainly before the June 22 status conference). However, the PSC did not file an opposition by June 18, nor did it seek any extension or clarification of the deadline. Thus, the PSC's opposition is untimely.[5]

At the June 22, 2016 status conference, the PSC claimed that it had not filed an opposition because the SSC Defendants had not requested leave to move for summary judgment, citing the Court's July 9, 2015 order (Doc. 2075).[6] However, Doc. 2075 does not apply to the SSC cases:

> ***If the remaining Tennessee defendants waive <u>Lexecon</u>***, cases against them will be the first bellweather [*sic*] trials. The court will adopt the following bellweather [*sic*] selection process and trial schedule:
>
> …
>
> - ▪ The parties shall seek leave of court to move for summary judgment. By January 15, 2016, the party that seeks summary judgment shall file a motion for leave, not to exceed 5 pages, setting forth good cause for why a summary judgment motion should be allowed….[7]

---

[4] Doc. 2882.
[5] While the Court did give the PSC 21 days after the June status conference to respond to the motion, this does not excuse the PSC's failure to file any opposition, move for an extension, or file a motion for clarification by the June 18, 2016 deadline.
[6] Hr'g. Tr. at 60-62 (June 22, 2016 status conference).
[7] Doc. 2075 at 4-5 (emphasis supplied).

The order requires leave of the court to move for summary judgment **only if** the SSC Defendants waived <u>Lexecon</u>. The SSC Defendants did not waive <u>Lexecon</u>.[8] The plain language of the Court's order (and subsequent scheduling orders) establishes that leave of court was not required as a condition to the SSC Defendants' motion for summary judgment.[9] The PSC's emphatic claim to the contrary does not alter that fact.

The SSC Defendants even noted that leave was not required on the very first page of their motion for summary judgment.[10] Yet, the PSC chose to ignore the motion until the status conference on June 22, 2016. The PSC should not be permitted to simply disregard deadlines for dispositive motions, and escape by saying that an inapplicable order excused their failure to respond.

The Court should grant the SSC Defendants' motion for summary judgment due to the PSC's failure to file a timely opposition.

---

[8] See Doc. 2140.
[9] See Docs. 2652, 3016.
[10] Doc. 2882 at note 1.

II.    **The PSC's untimely opposition presents nothing new to justify departing from the Court's prior ruling that the Plaintiffs' claims must proceed under the THCLA, not the TPLA.**

At Doc. 2700, the Court held that (1) the TPLA and THCLA conflict and (2) the conflict must be resolved in favor of the more specific statute, the THCLA.[11] The sole issue presented by the motion for summary judgment is application of this ruling to the SSC cases. Despite this, the PSC's opposition avoids the criticial question of why the Court should depart from its ruling at Doc. 2700. Instead, the PSC's belated response (1) recycles the same arguments already rejected by the Court, (2) follows with pages of "facts" unrelated to the question before the Court in an improper attempt to show that the SSC Defendants are somehow worthy of punishment[12], and (3) finishes by arguing that SSC is a "seller" under the TPLA[13]. The overhwleming majority of the opposition has no bearing on the outcome of the limited question before the Court – whether the THCLA or TPLA applies.

a.    **The Court has already rejected the PSC's argument that the THCLA and TPLA do not conflict by finding that they <u>do</u> conflict and that the conflict must be resolved in favor of the THCLA.**

The PSC's opposition essentially asks the Court, for the second time, to reconsider its ruling at Doc. 2700. The PSC repeats the contentions that (1) there is no conflict between the THCLA and the TPLA, and (2) if there is a conflict, it must be resolved in favor of the TPLA. Those arguments failed when the PSC asked the Court to reconsider its ruling at Doc. 2700[14], and must fail again now.

---

[11] Doc. 2700 at 4-5.
[12] Doc. 2994 at 3-6.
[13] Doc. 2994 at 11-13.
[14] See "*First Motion for Reconsideration of the Court's Feb 29, 2016, Opinion and Order*" at Doc. 2749; Doc. 2826 (denying motion).

### i.  The THCLA and TPLA directly and unavoidably conflict.

The PSC's opposition initially duplicates the earlier motion to reconsider by asserting that the TPLA and THCLA can be construed "harmoniously" within their "spheres."[15]

First, the Court has unmistakably rejected the contention <u>in this MDL</u> that the purported "sale" of the steroid can be disassociated from the services of the health care providers who administered the medication:

> As this court has repeatedly held, the provision of the MPA was part-and-parcel with the service of its injection—the only purpose of the visit was the injection itself, something only a physician with special skill could provide.[16]

The alleged sale and the health care service are one and the same. The PSC's repeated notion that the Court can simply allow both to proceed on separate tracks, with no conflict, has been rejected "repeatedly."

Second, the Court specifically and correctly found that there is a direct and unavoidable conflict between the TPLA and THCLA:

> Under the plain meaning of their coverage provisions, both the THCLA and the TLPA [*sic*] could apply here, as the plaintiffs' allegations concern both a defective product and the provision of health care services. Because the coverage provisions of the two statutes overlap in this instance, their conflicting liability and damages provisions preclude the application of both, and force a choice between them.[17]

While the liability and damages provisions present the most obvious conflicts between the two statutes, they are not alone. There are nearly a dozen additional material conflicts between the two statutes:

---

[15] *Compare* Doc. 2994 at 14, 17, *with* Doc. 2749-1 at 5.
[16] Doc. 2985 at 3 (internal citations and quotations omitted).
[17] Doc. 2700 at 4-5.

| Provision | THCLA | TPLA |
|---|---|---|
| Statute of Limitations (in years) | 1[18] | 10/25[19] |
| Results of Surveys, Inspections, Investigations Admissible | NO[20] | YES[21] |
| Informed Consent Required | YES[22] | NO[23] |
| Pre-suit Notice Required | YES[24] | NO[25] |
| Good Faith Certificate Required | YES[26] | NO[27] |
| Rebuttable Presumption if Compliant with Federal / State Statutes or Administrative Regulations | NO[28] | YES[29] |
| Punitive Damages Exception | NO[30] | YES[31] |
| May Recover Gross Amount of Charges for Medical Care | NO[32] | YES[33] |
| Demand May Be Disclosed to Jury | NO[34] | YES[35] |
| Cap on Contingency Fee Award | YES[36] | NO[37] |
| Requirement to Include Demand in Complaint | NO[38] | YES[39] |

---

[18] Tenn. Code Ann. § 29-26-116.
[19] Tenn. Code Ann. § 29-28-103.
[20] Tenn. Code Ann. § 29-26-103.
[21] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[22] Tenn. Code Ann. § 29-26-118.
[23] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[24] Tenn. Code Ann. § 29-26-121.
[25] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[26] Tenn. Code Ann. § 29-26-122.
[27] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[28] *See* Tenn. Code Ann. § 29-26-101, *et seq.*
[29] Tenn. Code Ann. § 29-28-104.
[30] *See* Tenn. Code Ann. § 29-26-101, *et seq.*
[31] Tenn. Code Ann. § 29-28-104.
[32] Tenn. Code Ann. § 29-26-119.
[33] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[34] Tenn. Code Ann. § 29-26-117.
[35] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[36] Tenn. Code Ann. § 29-26-120.
[37] *See* Tenn. Code Ann. § 29-28-101, *et seq.*
[38] *See* Tenn. Code Ann. § 29-26-101, *et seq.*
[39] Tenn. Code Ann. § 29-28-107.

Allowing the Plaintiffs to pursue both their TPLA and THCLA claims against the SSC Defendants would create the following illogical and untenable results:

- If the Plaintiffs were successful in their claims against the SSC Defendants, the same damages would be calculated two different ways: they would be concurrently entitled to receive the gross amount of medical expenses (TPLA), and yet would be simultaneously limited to recovering only the amount of expenses actually paid (THCLA);

- The SSC Defendants would be held jointly and severally liable with NECC (TPLA), and yet at the same time would only be severally liability for the percentage of damages they are specifically found to have caused (THCLA); and

- The Plaintiffs could file suit against the SSC Defendants *without* sending presuit notice and filing a certificate of good faith (TPLA) and simultaneously be subject to dismissal for failing to do so (THCLA).

As the Court found, these discordant statutory schemes cannot be interpreted to permit a "harmonious operation" of both laws. *See Cronin v. Howe*, 906 S.W.2d 910, 912 (Tenn. 1995). The PSC's opposition offers no reason for a different conclusion.

### ii. The conflict must be resolved in favor of the THCLA.

Next, the PSC rehashes its assertion that the conflict between the THCLA and TPLA (the conflict that the PSC earlier contends does not exist) should be resolved in favor of the TPLA because it is more specific than the THCLA:

> The PLA applies specifically to the sale of a product, without regard to any standard of care, and therefore is the more specific statute under the facts at issue here. As it relates to the claims at issue, the PLA is more specific to the sale of MPA by NECC than is the HCLA, which does not even make reference to product sales.[40]

Again, the Court already rejected this argument in denying the PSC's motion to reconsider.[41]

---

[40] Doc. 2994 at 16.
[41] *See* Doc. 2749-1 at 9; Doc. 2826.

This argument is also completely inconsistent with the actual language of the TPLA, which governs:

> [A]ll actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product.

Tenn. Code Ann. § 29-28-102(6). It includes, but is not limited to:

> [A]ll actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever

*Id.*

The statute is clearly not limited to product sales, as the PSC misleadingly asserts. It covers virtually any claim or cause of action for personal injury related to a defective product. Indeed, the PSC's own brief acknowledges that the TPLA's seller provision "does not contain any exceptions for particular industries."[42] It is difficult to imagine language that could make the statute more general.

The THCLA, on the other hand, applies quite specifically to a single industry, health care. *Osunde v. Delta Med. Ctr.*, No. W2015–01005–COA–R9–CV, 2016 WL 537075, at *7 (Tenn. Ct. App. Feb. 10, 2016) ("Given the breadth of the statute, it should not be surprising if most claims now arising within a medical setting constitute health care liability actions." (emphasis supplied)). The THCLA governs claims (1) against health care providers (2) delivering health care services. *See* Tenn. Code Ann. § 29-26-101. And, the

---

[42] Doc. 2994 at 11.

statute defines health care providers to include a finite subset of individuals and entities as potential defendants, unlike the TPLA's endless reach. *Id.*

The THCLA is clearly the more specific statute, and must govern, as the Court has correctly determined. *Graham v. Caples*, 325 S.W.3d 578, 582 (Tenn. 2010) (citing *Arnwine v. Union Cnty. Bd. of Educ.*, 120 S.W.3d 804, 809 (Tenn. 2003)).

Likewise, the THCLA must govern because it is the more recent statute. *Cronin*, 906 S.W.2d at 912. "The Legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation." *Id.* (citing *Wilson v. Johnson*, 879 S.W.2d 807, 809 (Tenn. 1994)). "In the event two acts conflict and cannot be reconciled, the prior act will be repealed or amended by implication to the extent of the inconsistency between the two . . . ." *Id.*

The General Assembly passed the THCLA in 2011 as part of the broader Civil Justice Act. The THCLA amended its predecessor, the Medical Malpractice Act, materially expanding its reach to include all claims against health care providers "related to" the provision of health care services. While some minor provisions of the TPLA were also amended by the 2011 Civil Justice Act, the definitional provisions, which define the scope of the TPLA, remained undisturbed. *Compare* Tenn. Code Ann. § 29-28-102 (2010), *with* Tenn. Code Ann. § 29-28-102 (2012).[43] The THCLA, the more recent statute based upon its fundamental revisions in 2011, must govern the Plaintiffs' claims against the SSC Defendants. *Cronin*, 906 S.W.2d at 912.

---

[43] The PSC grossly misstates the scope of the 2011 amendment to the provision of the TPLA governing seller liability. The PSC's opposition states, "Effectively, in its amendments to PLA § 106, the Tennessee legislature authorized lawsuits against 'sellers' as defined in § 102(7), provided that (among other things) the manufacturer of the product at issue was insolvent." Doc. 2994 at note 47. This is simply false. The pre-2011 amendment version of Tenn. Code Ann. § 29-28-106 explicitly permitted lawsuits against sellers where the manufacturer was insolvent. *See* Tenn. Code Ann. § 29-28-106 (2010) (attached as Ex. 1).

The Court should reject the PSC's latest attempt to revisit the Court's previous findings that (1) the statutes conflict and (2) the conflict must be resolved in favor of the more specific and more recent THCLA.

### b.  The Court also rejected the PSC's public policy arguments.

The PSC next restates the public policy arguments raised in briefing this issue in the Saint Thomas cases,[44] ignoring the Court's previous rejection of those arguments[45]. The SSC Defendants will not rehash the myriad flaws in the PSC's reasoning (they have already done so at Doc. 2537) but do note one important point.

The PSC has not identified a single opinion, tort commentator, or piece of legislative history from within or without Tennessee endorsing the policy considerations advanced by the PSC. In fact, all the policy considerations embraced by the courts run directly counter to the PSC's position.

Strict liability is imposed for defective products for two primary reasons: (1) to encourage safe manufacturing practices, and (2) because the defendants in product liability actions are typically large manufacturers able to bear the risk of product liability through marginal increases in the price of large volumes of manufactured products. *Ford Motor Co. v. Lonon*, 398 S.W.2d 240, 250 (Tenn. 1966) (noting that the manufacturer (i) determines what safety precautions to implement before placing a product on the market, and (ii) is better suited to bear the risk of strict liability by increasing the price of products). Neither goal is served by imposing strict liability on health care providers.

First, the drug and medical device approval process is a technical and expensive process. *Med. Ctr. Pharmacy v. Mukasey*, 536 F.3d 383, 388-89 (5th Cir. 2008) (noting

---

[44] *Compare* Doc. 2508 at 19-20, *with* Doc. 2994 at 17-19.
[45] Doc. 2700.

that "rigorous" drug approval process is estimated to cost more than $800 million per drug). A health care provider in Crossville, Tennessee, has neither the time, resources, nor expertise to test the thousands of medical supplies and dozens of devices used to treat patients. That is instead the role of the FDA, with its scientific and technical expertise, and yearly budget in excess of $4 billion.[46] *See Cafazzo v. Central Medical Health Services*, 668 A.2d 521, 526 (Pa. 1995) (noting FDA's role in drug and medical device approval[47]). Imposing strict liability on health care providers for defective products will have no effect on drug safety. *See id.* It only shifts costs to an undeserving health care provider who received the defective product.

Second, unlike large drug manufacturers, health care providers cannot raise the price of care to offset the risk of product liability for the medical products used in treating patients. CMS sets reimbursement rates for medical procedures for Medicare beneficiaries, and private insurance companies typically negotiate reimbursement for their beneficiaries using CMS rates as a starting point. Elsevier Insights, *Telemental Health: Clinical, Technical, and Administrative Foundations for Evaluation Based Practice* 123 (Kathleen Myers, Carolyn Turvey eds., 1st ed. 2013) ("As for private payers, Medicare rules are often the starting point for private payers' policies regarding reimbursement."). The ballooning cost of health care in the United States is already a significant public concern. Health care providers cannot unilaterally raise the

---

[46] Information regarding the FDA's 2016 budget is available on the DHHS website: http://www.hhs.gov/about/budget/fy2017/budget-in-brief/fda/index.html#fn1 (last visited July 10, 2016).

[47] "As the Superior Court correctly pointed out, the safety of the product depends on the judgment of those connected to the research, development, manufacture, marketing and sale of the product. Moreover, the safety testing and licensing for use of medical devices is a responsibility specifically undertaken by the federal government. Therefore, imposing liability for a poorly designed or manufactured product on the hospitals and doctors who use them on the assurances of the FDA is highly unlikely to effect changes of this sort." *Cafazzo*, 668 A.2d at 526 (internal citation omitted).

reimbursement rate to account for the increased risk of product liability suits, nor would it serve the public interest for them to do so. *See Ayyash v. Henry Ford Health Systems*, 533 N.W.2d 353, 355-56 (Mich. Ct. App. 1995) (noting that increased costs of imposing strict liability upon health care providers would likely be passed on to patients).

Thus, the relevant policy considerations cited by courts considering imposing strict liability upon health care providers actually counsel _against_ imposing strict liability.

### c. The issue of whether SSC is a "seller" under the TPLA is not before the Court and need not be considered.

Finally, the PSC spends much of its brief (and statement of undisputed "facts") arguing that SSC "sold" the NECC MPA to the Plaintiffs.[48] This is a classic red herring. It has absolutely nothing to do with the issue presented by the motion for summary judgment: whether to apply the Court's ruling at Doc. 2700 regarding the controlling statutory scheme to the SSC cases.

First, as the Court explicitly stated at Doc. 2700, "Because the TLPA [*sic*] cannot apply here, I need not and do not address the question of whether it applies…."

Second, the issue has no effect on the outcome of this motion for summary judgment. The motion does not seek a ruling on whether SSC was "engaged in the business of selling a product" under the TPLA and undisputed facts. It seeks a ruling on whether the TPLA and THCLA unavoidably conflict, and how to resolve the conflict. The motion does not even mention the words "sale," "sell," or "seller." Indeed, even if the Court assumes that SSC is a "seller" under the TPLA, it must still decide how to resolve the conflict between the two statutes.

---

[48] Doc. 2994 at 2, 11-13.

Thus, it is unnecessary for the Court to consider whether SSC is a "seller" under the TPLA to decide the motion for summary judgment.[49]

## III.    The Court should not defer decision on the motion for summary judgment.

In its final attempt to resuscitate the TPLA claims, the PSC reverses its prior position and urges the Court to wait for a decision on this issue from the Tennessee Supreme Court.[50] [51] The Court will recall that the defendants in the Saint Thomas cases suggested this precise course when the issue was originally briefed.[52] The PSC savaged that proposal.[53] Now that it is clear that summary judgment will enter dismissing the Plaintiffs' TPLA claims, the PSC has changed its tune. It is apparently no longer important that "[t]he victims of this tragedy…see their day in court, and not have to wait on the results of an insurance declaratory action…."[54]

---

[49] Additionally, the issue is not properly before the Court because it was not raised in the motion for summary judgment, and the PSC chose not to file a cross-motion for summary judgment to raise it. If the PSC had done so, the SSC Defendants would have had the opportunity to present undisputed facts unequivocally establishing that SSC is **not** "engaged in the business of selling" MPA. Instead, the PSC chose to include extensive briefing in its opposition on a totally irrelevant point of law in a transparent attempt to muddy the water.

[50] The United States District Court for the Middle District of Tennessee certified this issue to the Tennessee Supreme Court in the context of a declaratory judgment action filed by SSC's insurer. Briefing is in progress.

[51] The PSC suggests in its brief at footnote 1 that additional ongoing discovery may affect the outcome of the motion, and "reserves the right to supplement this response or seek reconsideration of this Court's disposition of this motion based on any newly discovered evidence." However, Fed. R. Civ. P. 56(d) is clear that a request for additional time to take discovery in order to respond to a motion for summary judgment <u>must</u> be accompanied by an affidavit or declaration setting forth specific reasons the opposing party "cannot present facts essential to justify its opposition." *See Morrissey v. Boston Five Cents Sav. Bank*, 54 F.3d 27, 35 (1st Cir. 1995) (denying request for additional discovery where affidavit did not address the allegedly disputed facts).

[52] *See Motion to Stay a Decision on the Parties' Cross-Motions for Partial Summary Judgment on the Plaintiffs' Product Liability Claims* at Doc. 2466.

[53] *See* Doc. 2548.

[54] *Id.* at 5.

These were the reasons advanced by the PSC against awaiting a decision from the Tennessee Supreme Court, which the Court found persuasive:

- "[T]here is no guarantee that Tennessee Supreme Court will choose to accept [the certified question]."[55]

- "At a minimum, there will be months of briefing before a decision is even made whether the question will be accepted."[56]

- "Moreover, even if it is accepted, it will likely take months – if not years – to answer the question as certified."[57]

- "Even then, the Tennessee Supreme Court's rulings on certified [*sic*] often involve only a statement of the governing law that requires additional application of that law to the facts by the certifying federal court, which thereafter takes even more time following a decision on the certified question."[58]

These statements are as true today as they were when made by the PSC in December 2015.

In issuing the prior ruling at Doc. 2700, this Court declined to wait for a decision from the Tennessee Supreme Court. As the Court noted at the November 2015 status conference, a ruling from the Court on this issue will provide the Tennessee Supreme Court with "some additional stuff to work with" in deciding the certified question (assuming the Supreme Court accepts the question).[59]

There is no legitimate reason to now delay a decision on the instant motion for summary judgment.

---

[55] Doc. 2548 at 6.
[56] *Id.* at 6-7.
[57] *Id.* at 7.
[58] *Id.*
[59] Hr'g Tr. at 42 (Nov. 12, 2015 status conference).

## <u>Conclusion</u>

The PSC wastes most of its (untimely) opposition briefing irrelevant issues not appropriately before the Court in an attempt to mask the absence of a legal basis justifying opposition to the pending motion. The motion for summary judgment presents a simple and straightforward issue: whether the Court should apply its legal ruling in the Saint Thomas cases at Doc. 2700 to the SSC cases. The PSC fails to identify a single factual or legal distinction between the two (2) sets of cases warranting denial of the motion. The reality is that there is none. The <u>material</u> facts and operative law are identical. The Plaintiffs received the MPA manufactured by NECC during epidural steroid injection procedures at a licensed ambulatory surgery center. Any claims for injuries arising from those medical procedures are governed by the provisions of Tennessee's Health Care Liability Act. Summary judgment for the SSC Defendants should be allowed.

Respectfully submitted,


**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
(615) 254-0400 (Phone
(615) 254-0459 (Fax)
chris@gideoncooper.com

***Attorneys for the SSC Defendants***


/s/ Kent E. Krause
**PARKS T. CHASTAIN****
**KENT E. KRAUSE****
**ASHLEY E. GENO****
Attorneys for Defendant, Specialty Surgery Center, PLLC

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**
P. O. Box 23890
Nashville, TN 37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (Fax)
pchastain@bkblaw.com
kkrause@bkblaw.com
ageno@bkblaw.com


*Admitted pursuant to MDL Order No. 1
**Admitted pro hac vice

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be served via electronic mail or regular U.S. mail to those participants identified as unregistered this the 3rd day of August, 2016.

/s/ Chris J. Tardio

**CHRIS J. TARDIO**