UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Suits Naming Specialty Surgery Center, Crossville, PLLC | ) ) | |
| | ) | |

**SSC DEFENDANTS'**
**MOTION FOR RECONSIDERATION**
**OF ORDER AT DOC. 3015**

Defendants Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, MD ("Dr. Lister"), and Kenneth Lister, MD, PC ("Dr. Lister's Practice") (collectively, the "SSC Defendants") move the Honorable Magistrate Judge Boal to reconsider a specific point in the Court's Order at Doc. 3015.

### 1.  Introduction

At Doc. 3015, the Court decided several privilege issues related to documents on computers that SSC sold to Cumberland Medical Center ("Cumberland") in 2013. Regarding the work-product protection, the Court found that there is nothing in the record to show that SSC and Cumberland have a common interest. Because there was nothing to establish a common interest, the Court concluded that SSC waived the work-product protection when it sold the computers.[1]

---

[1] Doc. 3015, p. 9.

However, a specific document in the record **does** clearly demonstrate (in fact, explicitly states) that SSC and Cumberland share a common interest in the transaction at issue. Thus, respectfully, the Court's finding was in error, prompting the wrong conclusion on waiver of work-product protection. This necessitates revision of the Order.

For the reasons below, the Court should grant this motion to reconsider and revise the Order at Doc. 3015 to find no waiver of the work-product protection and allow the SSC Defendants to review the documents produced for work-product protection.[2]

## 2.  Motions to reconsider are appropriate in limited circumstances like this.

The federal system does not leave litigants without recourse when a litigant believes that a district court has made an erroneous interlocutory finding. A litigant can file a motion to reconsider, which allows the district court to exercise its discretion to revise or amend an interlocutory order at any time prior to a final judgment.[3] A district court can grant a motion for reconsideration when the movant shows that a change in the law, discovery of previously unavailable evidence, or a clear error of law justify reconsideration of the first order.[4] The court should consider its duty to render a just decision on the issue when deciding a motion to reconsider.[5]

---

[2] The SSC Defendants are only moving to reconsider this specific point.
[3] *Perez-Ruiz v. Crespo-Guillen*, 25 F.3d 40, 42 (1st Cir. 1994).
[4] *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (additional cites omitted).
[5] *See Bricklayers & Trowel Trades Int'l Pension Fund v. Credit Suisse First Boston*, 853 F.Supp.2d 181, 196 (D. Mass. 2012) (noting motions to reconsider require the court to consider its duty to render a just decision).

**3. The Court correctly recognized that, to find waiver, the Court must find that the work product was disclosed <u>to an adversary</u>; but, the Court then <u>in</u>correctly overlooked a document in the record that clearly establishes SSC and Cumberland have a non-adversarial common interest.**

> **a. The Court's decision that SSC waived the work-product protection hinged on its finding that there is nothing in the record demonstrating SSC and Cumberland have a common interest.**

The Court found that SSC waived the work-product protection when it sold computers containing work product to Cumberland.[6] The Court's decision rested on its finding nothing in the record to demonstrate that SSC and Cumberland have a common interest:

> Here, the disclosure was to Cumberland, who does not appear to be an adversary. However, <u>there is nothing in the record to show that Cumberland and the SSC Defendants have a common interest</u> or that disclosure was made in pursuit of trial preparation. <u>Accordingly, the Court finds that any work product protection was also waived by the disclosure to Cumberland.</u>[7]

With all due respect to the Court, the finding that the record lacks proof that Cumberland and SSC have a common interest (on which the Court's decision on waiver of work-product protection turned) is wrong.

> **b. There is undisputed proof in the record that SSC and Cumberland have a common interest.**

The Court correctly identified the rule governing waiver of the work-product protection, citing the seminal case of *U.S. v. Mass. Inst. of Tech.*, 129 F.3d 681 (1st Cir. 1997).[8] The case law of the First Circuit (and most other courts) clearly sets out this

---

[6] Doc. 3015, p. 7-9.
[7] Doc. 3015, p. 9 (emphasis added).
[8] Doc. 3015, p. 8-9.

controlling rule: "[W]aiver only occurs when a document otherwise protected as work product is shared with an adversary."[9] This is the "prevailing rule."[10]

After setting out the law, this Court applied the law to the facts. The Court first recognized the obvious – that Cumberland "does not appear to be an adversary."[11] Then, the Court made a key (but incorrect) factual finding: "[T]here is nothing in the record to show that Cumberland and the SSC Defendants have a common interest[.]"[12]

The Court overlooked the Asset Purchase Agreement ("APA") between Cumberland and SSC, which was filed in support of the motion for a protective order.[13] [14] Notably, the first page of the APA establishes that SSC and Cumberland's relationship (particularly for the sale at issue) arises from a common interest:

> WHEREAS, the **Members of the Seller and the Directors of Purchaser have agreed it is <u>in the best interest _of the parties_ and the community at large</u> to enter into the transaction** contemplated and agreed to hereby.[15]

This language shows that Cumberland and SSC have a common interest ("it is in the best interest of the partie<u>s</u>") in agreeing on the sale of SSC's assets to Cumberland ("to enter into the transaction contemplated"), and that they join in this common interest for the benefit of "the community at large." This document shows that Cumberland and SSC had a common interest when they entered into the sale, contrary to the Court's finding that nothing exists in the record to show a common interest.

---

[9] *In re Lernout & Hauspie Secs. Litig.*, 222 F.R.D. 29, 33 (D. Mass. 2004) (citing *Mass. Inst. of Tech.*, 129 F.3d at 687).

[10] *Jones v. Secord*, No. 11-91101-PBS, 2011 WL 2456097, *4 (D. Mass. 2011).

[11] Doc. 3015, p. 9.

[12] Doc. 3015, p. 9.

[13] Doc. 2907-3. It was filed again by Cumberland as an exhibit to a filing intended to clear up the record after the hearing on these privilege issues. Doc. 2962-1. For the Court's convenience, it is attached again as exhibit 1 to this motion.

[14] The fact that Cumberland was willing, after the hearing, to attest to certain facts that support no waiver of the protection, in and of itself, should be sufficient to demonstrate a non-adversarial relationship.

[15] Doc. 2907-3, p. 4 (emphasis added).

Again, respectfully, the Court simply erred in stating that "there is nothing in the record to show that Cumberland and the SSC Defendants have a common interest[.]"[16] The first page of the APA – filed in the record on this specific issue – establishes their non-adversarial common interest.[17]

### c. A finding of a common interest between Cumberland and SSC to negate waiver of the work-product protection is consistent with the law cited by the Court and the law of this circuit.

Respectfully, the Court should have found, based on the preamble language of the APA, that Cumberland and SSC are not adversarial and have a common interest, specifically with respect to the sale of the computers. Because SSC's disclosure of information was to a non-adversary with a common interest, there was no waiver. This revised conclusion is consistent with the case law that the Court cited in the Order and related case law.

Most cases of work-product protection waiver (including *MIT*) arise when a party discloses documents to a governmental agency that is investigating it, documents that later become relevant in a civil proceeding.[18] [19] That is far from the case here. This was not

---

[16] Doc. 3015, p. 9.

[17] Further, SSC and Cumberland had a common *litigation* interest because they were named as potential co-defendants in the lawsuits related to the outbreak. One-third of the 24 plaintiffs in the SSC cases provided notice of an intent to sue *both* SSC and Cumberland for wrongdoing related to the treatment of the plaintiffs. While most of these pre-suit notices were not filed into the record, one was: Doc. 41-1, in the individual case of *McDavid*, No. 1:13-cv-12742-RWZ. At page 5 of 41-1 (attached as exhibit 2 to this motion), the notice of intent to sue stated, "Sherry A. McDavid is asserting potential claims for health care liability against **Specialty Surgery Center, PLLC, Cumberland Medical Center, Inc., Kenneth R. Lister, MD**, and Calisher…" (emphasis added). The *McDavid* notice letter *is* part of this MDL's record. There are also documents not part of the formal record showing Cumberland was a potential co-defendant with SSC in this litigation all the way back to 2013. (Attached as exhibit 3 to this motion is a notice of intent to sue letter from Dallas Ray Nealon to SSC and Cumberland Medical Center, in 2013.) So, not only were SSC and Cumberland not adversarial, they were actually potential co-defendants with a common litigation interest in this MDL. *See generally Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 214-15 (Tenn. Ct. App. 2002) (explaining that Tennessee's common interest privilege applies to both co-defendants and *potential* co-defendants, and extends to pre-existing confidential communications and documents shared during a common enterprise).

[18] *Mass. Inst. of Tech.*, 129 F.3d at 687 (citing other circuits holding that disclosure to the government during an investigation constituted disclosure to an adversary) (citing *In re Steinhardt Partners*, 9 F.3d

5

offensive disclosure of documents to an investigating governmental agency to avoid prosecution or seek a more lenient penalty. The disclosure here occurred during a cooperative business transaction between Cumberland and SSC, where the controlling document cites the parties' common interest.

*U.S. v. Deloitte* is a good illustration of what an adversary is for purposes of waiver by disclosure to an adversary.[20] There, Dow Chemical was in tax litigation with the government.[21] Deloitte was Dow's independent auditor.[22] The government sought to compel Deloitte to turn over documents that Dow had disclosed to Deloitte as part of an audit.[23] The district court denied the motion to compel, finding no waiver by Dow when it disclosed the documents to Deloitte.[24]

On appeal, the government argued that Dow waived the work-product protection by disclosing the information to Deloitte.[25] The D.C. Circuit disagreed, explaining why Deloitte was not an adversary:

> Here, the question is not whether Deloitte could be Dow's adversary in any conceivable future litigation, but whether Deloitte could be Dow's adversary in the

---

230, 234 (2nd Cir. 1990) (finding disclosure to SEC when the party knew it was subject to an SEC investigation was done to an adversary; also noting "the presence of an adversarial relationship does not depend on the existence of litigation"); *Westinghouse Elec. Corp. v. Republic of Philippines*, 951 F.2d 1414, 1428 (3rd Cir. 1991) (concluding that disclosure of work product to the DOJ and the SEC when the party was the target of an investigation constituted disclosure to an adversary); *In re Subpoenas Duces Tecum*, 738 F.2d 1367, 1372 (D.C. Cir. 1984) (finding disclosure to SEC in exchange for leniency in punishment was disclosure to an adversary; "[t]his was not a partnership between allies")). The Sixth Circuit has followed this line of cases. *In re Columbia/HCA Healthcare Corp. Billing Practices Litig.*, 293 F.3d 289, 291-92, n. 28 (6th Cir. 2002) (following *MIT* and finding that the DOJ was an adversary at the time the disclosure was made because the DOJ was investigating HCA for billing fraud). State courts have followed this, too. *McKesson Corp. v. Green*, 610 S.E.2d 54, 56 (Ga. 2005) (following *MIT* and finding that party disclosing information to SEC had disclosed to an adversary because SEC was investigating merger of party and another company).

[19] In some cases, it is easy to determine if the disclosure was to an adversary. *See Jones*, 2011 WL 2011 WL 2456097, at *4 (finding disclosure *to plaintiff's attorney* was to a "definite adversary").

[20] *U.S. v. Deloitte LLP*, 610 F.3d 129 (D.C. Cir. 2010).

[21] *Id.* at 133.

[22] *Id.*

[23] *Id.*

[24] *Id.*

[25] *Id.* at 140.

sort of litigation the Dow Documents address. We conclude that the answer must be no. In preparing the Dow Documents, Dow anticipated a dispute with the IRS, not a dispute with Deloitte. The documents, which concern the tax implications of the Chemtech partnerships, would not likely be relevant in any dispute Dow might have with Deloitte. Thus Deloitte cannot be considered a potential adversary with respect to the Dow Documents.[26]

The D.C. Circuit specifically rejected the government's contention that the First Circuit's guidance in *MIT* compelled a different result:

> The government argues that *United States v. Massachusetts Institute of Technology,* 129 F.3d 681 (1st Cir.1997), supports its argument that an independent auditor is a potential adversary. In that case, a defense contractor (MIT) under IRS investigation claimed work-product protection for expense reports it had disclosed to the Defense Contract Audit Agency, a branch of the Department of Defense. The First Circuit held that MIT had waived the protection by disclosing its expense reports to a potential adversary. *Id.* at 687. The court's reasoning is clear: MIT disclosed the expense reports to the auditing arm of the Defense Department, the most likely adversary in any dispute over expense reports. In doing so, it disclosed its work product not to an independent auditor, but to an auditor affiliated with a potential adversary. Dow's disclosure to its independent auditor, which is not a potential adversary in tax litigation over the Chemtech partnerships, is wholly different.[27] [28]

The disclosure by SSC was much more akin to the disclosure in *Deloitte*, *i.e.*, to a cooperative business partner, and nothing like the knowing disclosure of information to adversarial administrative agencies in most cases finding waiver. The APA – coupled with

---

[26] *Id.*

[27] *Id.* at 140-41.

[28] *U.S. v. Textron*, 553 F.3d 87, 90, 102-03 (1st Cir. 2009), although vacated and reheard *en banc*, and ultimately reversed on other grounds (*see U.S. v. Textron*, 577 F.3d 21 (1st Cir. 2009)), is also a good illustration of what is an adversary for waiver purposes. There, the IRS sought Textron's "tax accrual workpapers" – internal documents that Textron maintained describing its tax strategies. The IRS asserted that Textron waived work-product protection when it showed these documents to Ernst & Young, its independent auditor. The First Circuit first recognized that (like here) it is undisputed Textron and E&Y were not "actual adversaries." The IRS relied on *MIT* to argue that Textron had disclosed the documents to "potential adversaries." The First Circuit rejected the IRS's argument. Unlike in *MIT* – where the party disclosed work product to a governmental agency in an adversarial position to it – Textron had disclosed documents to E&Y in "a cooperative not adversarial relationship." The court could see no reasonable scenario where Textron and E&Y would come into conflict based on the information disclosed. Comparing the *Textron* situation to *MIT*, the court held: "Whereas MIT's disclosure to the Defense Department auditing agency had the potential to directly trigger a dispute with that agency, no such potential adversity existed here." The SSC Defendants recognize this is not controlling precedent given its procedural posture; but, it is a good example of the analysis the Court should undertake in determining if disclosure was made *to an adversary.*

a common sense look at the Cumberland-SSC relationship based on the record before this Court – show that Cumberland is not (and was not) SSC's adversary. They joined for the disclosure at issue as part of a transaction done "in the best interest of the parties[.]"[29] Like in *Deloitte*, SSC's disclosure of work to a non-adversarial common interest partner does **not** waive work-product protection.

Further, the Cumberland-SSC relationship, and the disclosure, need not even be in furtherance of a common *litigation* interest.[30] District courts addressing waiver of work-product protection by disclosure to a third party have found that the "common interest" exception applies equally where the common interest is just a business interest and does not arise out of a shared role in litigation.[31]

A Northern District of California case illustrates this principle. In *Pecover v. Electronic Arts*, the plaintiffs sought discovery of an email sent from the defendant videogame company to the third-party NFL that contained work product.[32] The plaintiffs argued that, when EA sent the email to the NFL, it waived any work-product protection because the NFL – not a party to the lawsuit – did not share a common *litigation* interest with EA.[33]

---

[29] Doc. 2907-3, p. 4.

[30] To be clear, the SSC Defendants and Cumberland *do* share a common *litigation* interest because both were potential defendants in suits from this outbreak. *See* footnote 17 *supra*. But, the Court does not even have to go this far because all that is required is a common *business* interest.

[31] *See Cellco P'ship d/b/a Verizon Wireless v. Nextel Commun., Inc.,* No. M8-85, Civ. A. 03-725, 2004 WL 1542259, *1 (S.D. N.Y. 2004) (finding no waiver with disclosure to advertising agency that had a common business objective even though the agency was not involved in the litigation; "[w]hile TBWA does not share a litigation objective with Nextel, TBWA does clearly share a business interest with Nextel as it is Nextel's advertising agency"); *In re Copper Mkt. Antitrust Litig.,* 200 F.R.D. 213, 221, n. 6 (S.D. N.Y. 2001) (finding no waiver with disclosure to public relations firm with common interest); *see also Merrill Lynch & Co. v. Allegheny Energy, Inc.,* 229 F.R.D. 441, 447 (S.D. N.Y. 2004) ("[a]s I read them, the work product cases require a tangible adversarial relationship" between transferor and transferee to find waiver).

[32] *Pecover v. Electronic Arts Inc.,* No. C08-2820 CW (BZ), 2011 WL 6020412, *1 (N.D. Cal. 2011).

[33] *Id.* at *1 ("Plaintiffs argue that the common interest shared by Defendant and the NFL is only pecuniary and is therefore insufficient to maintain the work product protection.").

The district court rejected the plaintiffs' argument:

> Plaintiffs' contention that the common interest must be a legal interest and not a business interest is not well taken. While many courts have held that to waive a privilege, such as the attorney-client privilege, the common interest that parties must share has to have a legal component, this is not the case with the work product doctrine. Thus, even if I were to find that the sole shared interest between Defendant and the NFL were commercial or financial in nature, that shared interest would be sufficient to maintain the work product protection over the email at issue.[34]

The same applies here. Even if the Court finds only that Cumberland and SSC had a common *business* interest – as obvious from the APA – that is sufficient to qualify them for the "common interest" exception to waiver of work-product protection.[35]

### 4. Conclusion

Motions to reconsider are, admittedly, rarely well-taken. This is the exception. The Court made an incorrect factual finding, which was the key to deciding a significant point of law. Contrary to the Court's finding, the record **does** establish that Cumberland and SSC have a common interest and non-adversarial relationship. This corrected factual finding changes the Court's legal conclusion. Because Cumberland and SSC were not adversarial and have a common interest, the disclosure was **not** made to an adversary, and the work-product protection not waived.

The SSC Defendants respectfully request that, in light of the language in the APA (part of the record) showing Cumberland and SSC have a joint interest, the Court revise its Order at Doc. 3015 to rule that (1) the SSC Defendants did not waive the work-product

---

[34] *Id.* at *2.

[35] *See also California Sportfishing Prot. Alliance v. Chico Scrap Metal, Inc.*, 299 F.R.D. 638, 646 (E.D. Cal. 2014) (explaining that "[t]he great weight of authority holds that disclosure of work product to individuals who share a common interest with the disclosing party does not constitute waiver[,]" and finding that, where plaintiff disclosed work product to district attorney, the protection was not waived because, on those facts, the plaintiff had common interest with the district attorney in "actively protecting water quality and public health[,]" "not duplicating effort in protecting public health[,]" and "allocating scarce resources toward their highest and best uses").

protection by disclosure of the information to Cumberland and (2) the SSC Defendants can review the Cumberland documents for work-product protection.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

*/s/ Chris J. Tardio*
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
(615) 254-0400 (Phone
(615) 254-0459 (Fax)
chris@gideoncooper.com

***Attorneys for the SSC Defendants***

*Admitted pursuant to MDL Order No. 1
**Admitted pro hac vice

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be served via electronic mail or regular U.S. mail to those participants identified as unregistered this the 8th day of August, 2016.

*/s/ Chris J. Tardio*
**CHRIS J. TARDIO**