```
 1                    UNITED STATES DISTRICT COURT
 2                     DISTRICT OF MASSACHUSETTS

 3

 4
    IN RE:  NEW ENGLAND COMPOUNDING   )  MDL NO. 13-02419-RWZ
 5  PHARMACY CASES LITIGATION         )
                                      )
 6                                    )
                                      )
 7                                    )
                                      )
 8                                    )

 9            BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                       THE HONORABLE JENNIFER C. BOAL
10

11

12
                        STATUS CONFERENCE
13

14

15

16        John Joseph Moakley United States Courthouse
                       Courtroom No. 17
17                    One Courthouse Way
                      Boston, MA 02210
18

19                      July 28, 2016
                         2:00 p.m.
20

21

22
               Catherine A. Handel, RPR-CM, CRR
23                  Official Court Reporter
          John Joseph Moakley United States Courthouse
24             One Courthouse Way, Room 5205
                      Boston, MA 02210
25             E-mail: hhcatherine2@yahoo.com
```

APPEARANCES:

For The Plaintiffs:

        Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M. SOBOL, ESQ., (appearing telephonically), 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

        Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH, IV, ESQ., and BEN GASTEL, ESQ., 227 Second Avenue North, Nashville, Tennessee 37201-1631;

        Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac Street, Suite 500, Boston, Massachusetts 02114;

        Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K. MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York 10013-1413;

        Lieff Cabraser Heimann & Bernstein, LLP, by MARK P. CHALOS, ESQ., 150 Fourth Avenue North, Suite 1650, Nashville, Tennessee 37219;

        Janet, Jenner & Suggs, LLC, KIMBERLY A. DOUGHERTY, ESQ., 75 Arlington Street, Suite 500, Boston, Massachusetts  02116;


 FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF NECP, INC.:

        Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High Street, Suite 2400, Boston, Massachusetts 02110-1724;



    (Appearances continue on the next page.)

1     Appearances (Cont'd):

2

3     FOR THE DEFENDANTS:

4         Gideon, Cooper & Essary, PLLC, by CHRIS J. TARDIO, ESQ., 315
Deaderick Street, Suite 1100, Nashville, Tennessee 37238;

5

6         Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901
Dulaney Valley Road, Suite 400, Towson, Maryland 21204.

7

8         Brewer, Krause, Brooks, Chastain & Burrow, PLLC by KENT E.
KRAUSE, ESQ., 611 Commerce Street, Suite 2600, Nashville,

9     Tennessee 37203;

10

11        Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., 98 San
Jacinto Boulevard, Suite 1100, Austin, Texas 78701;

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1                    P R O C E E D I N G S
 2        (The following proceedings were held in open court before
 3   the Honorable Rya W. Zobel, United States District Court Judge,
 4   and the Honorable Jennifer C. Boal, Magistrate Judge, United
 5   States District Court, District of Massachusetts, at the John J.
 6   Moakley United States Courthouse, One Courthouse Way, Boston,
 7   Massachusetts, on July 28, 2016.)
 8             JUDGE ZOBEL:  Good afternoon.  Please be seated.
 9             COURTROOM DEPUTY CLERK URSO:  This is In Re:  New
10   England Compounding, 13-MD-2419.
11             JUDGE ZOBEL:  I see some change of personnel.
12             MS. MARTIN:  Good afternoon, your Honor.  Annika
13   Martin.
14             JUDGE ZOBEL:  I thought Ms. Johnson was on vacation.
15             MS. MARTIN:  I'm sorry?
16             JUDGE ZOBEL:  I thought Ms. Johnson was on vacation.
17             MS. MARTIN:  I don't think she is on vacation.
18             JUDGE ZOBEL:  She's not?
19             MS. MARTIN:  No.  I believe she is on --
20             JUDGE ZOBEL:  I would have excused her for that, but
21   I'm not sure for something other than this important case.
22             MS. MARTIN:  I will endeavor to take you through the
23   agenda today as well as Ms. Johnson does.  Annika Martin for
24   the Plaintiffs' Steering Committee.
25             JUDGE ZOBEL:  Let me go to the agenda.
```

```
1              MS. MARTIN:  Sure.

2              JUDGE ZOBEL:  The first order on the agenda was oral

3      argument on Specialty Surgery's motion to remand the case.  Do

4      I really need to hear argument on that?

5              MS. MARTIN:  The Plaintiffs' Steering Committee is

6      willing to waive oral argument on that.

7              MR. TARDIO:  Your Honor, Chris Tardio for Specialty

8      Surgery Center.

9              I wanted to make myself available in case the Court

10     had specific factual questions about these cases.  I think the

11     briefing covers the factual inquiry that the Court has to

12     make.  So, certainly, we're comfortable with the Court making

13     the decision on the briefs.

14             JUDGE ZOBEL:  Okay.  Nobody wants to be heard?

15             (No response.)

16             JUDGE ZOBEL:  I have studied the briefs and I,

17     frankly, do not think that the cases should be remanded and,

18     therefore, the motion to remand is denied as to Specialty

19     Surgery, who is the only defendant that we're dealing with in

20     this regard at the moment.  So, now we go to Item B.

21             MS. MARTIN:  That's right.  And we'll go to No. 1,

22     status of the bankruptcy, and we'll have the report on the

23     bankruptcy.

24             MR. GOTTFRIED:  Good afternoon, your Honor.  Michael

25     Gottfried for post confirmation officer, Paul Moore.
```

1          The most important development since the last status

2    conference is that the 2015 tax returns have now been filed

3    for the pharmaceutical entities.  We're hopeful that the

4    individual settling defendants' returns, as required under the

5    agreement, will be filed shortly thereafter.  And so, we

6    continue to make good progress in that area.  Thank you.

7          JUDGE ZOBEL:  Thank you.  That's it?  That's good.

8          MS. MARTIN:  I believe --

9          JUDGE ZOBEL:  There was also to be a status of the

10   payments?

11         MS. MARTIN:  Yes, that's correct.  I believe Mr.

12   Sobol should be on the phone.

13         MR. SOBOL:  Yes, I am.

14         JUDGE ZOBEL:  Can you tell us what the status is,

15   please.

16         MR. SOBOL:  Yes.  So, the status of payments to the

17   victims is as follows, your Honor:

18         First, the claims administrator, Epic, has done an

19   enormous job and has made decisions in all or virtually all of

20   the claims and as a result, there are approximately 1,199

21   claims of the approximately 1200 claims that there is a final

22   decision on and which, putting aside liens, which I'll turn to

23   in a moment, will be and are ready to be paid their initial

24   payments as soon as possible.

25         So, then there are three groups of healthcare

```
1    reimbursement obligations:  Medicare, Medicaid, and then
2    certain private lienholders.  So, I'll address those in turn.
3           First, regarding Medicare, I have good news to
4    report, which is that there is an agreement in principle with
5    CMS and the DOJ on a resolution under which victims who were
6    Medicare eligible have the right to participate or opt out.
7    That agreement is subject to a finalization at the Department
8    of Justice and we understand is working its way up the
9    approval route.
10          I will acknowledge that there has been some
11   frustration and perceived delay on the part of some
12   plaintiffs' lawyers and victims that it's taking the Federal
13   Government too long a period of time for it to approve the --
14   formally approve the Medicare deal.
15          I will report to this Court and to everybody else
16   that I am doing -- and the PSC is doing what it can to push
17   that matter along without making the situation more difficult
18   or worse than it is by some perceived --
19          JUDGE ZOBEL:  I'm sorry.  I didn't quite understand.
20   What is the agreement with Medicare?  What's the nature of the
21   agreement?  Are they giving up all of their rights to
22   reimbursement, or what?
23          MR. SOBOL:  No, they are not.  So, under the
24   agreement --
25          JUDGE ZOBEL:  One can hope.
```

1          MR. SOBOL:  Under the agreement, if it is approved by

2     Medicare and if it is approved by this Court, which I'll turn

3     to in a moment, then for some classes -- one class of victims,

4     class of seven victims, Medicare would waive any kind of lien,

5     and then for other classes of victims, Medicare is accepting a

6     significant reduction off of what it normally would be

7     entitled to receive based upon a percentage of what the person

8     is recovering in accordance with the matrix.

9          If it turns out that a participating victim decides

10    that he or she does not wish to participate in this proposed

11    resolution with Medicare, then they can have a private

12    individual one-to-one resolution with Medicare, and under our

13    agreement Medicare has agreed that it will open up and set

14    aside specific resources in order to expedite those individual

15    claims.

16         So, that is the nature of the resolution in broad

17    stroke of Medicare.

18         JUDGE ZOBEL:  Now --

19         MR. SOBOL:  Let me turn -- sorry.

20         JUDGE ZOBEL:  Excuse me one moment.

21         This problem with Medicare and Medicaid and the

22    various agencies around that is a problem that we encounter

23    quite regularly in qui tam cases that settle as well, and one

24    of the things that seems to have done some good is to require

25    the parties, including the governmental agencies, to talk to

1    the Court periodically.  If you think that would be helpful,

2    just let us know because we'll set up a telephone conference

3    and sit on them.

4                MR. SOBOL:  I think that would helpful, your Honor.

5    I think that it would be timely if the Court were to issue

6    some kind of an order or a request and we do that by the first

7    or the second week in August, because I think that if you hit

8    that time period and we don't have formal sign-off by the

9    Department of Justice, then it would be ripe at that point.

10   So, I would, frankly, encourage the Court to do that if you

11   were so inclined.

12               JUDGE ZOBEL:  The government is not a party to this

13   case, is it, in any way?

14               MR. SOBOL:  It is not.  It is not.

15               JUDGE ZOBEL:  So, I think the way to do it is for us

16   to schedule a status conference pertaining to this issue and

17   request the -- it's not DOJ.  HHS, isn't it?

18               MR. SOBOL:  Well, it's both DOJ and HHS, yes, your

19   Honor.

20               JUDGE ZOBEL:  One of the alphabet agencies to

21   participate in a telephone conference concerning the

22   agreement, or whatever.

23               MR. SOBOL:  That would be very helpful, your Honor,

24   and if I can augment that suggestion, your Honor, let me make

25   this suggestion as well.  So, under the agreement, the

1    agreement also contemplates that the Court approves the

2    agreement.

3           Now, in the ordinary course of events, I would as a

4    matter -- typically await the final formal approval by the

5    Department of Justice of the agreement before I would file a

6    motion with this Court and submit the agreement to this Court.

7           However, I'm mindful of everyone's desire to move

8    this forward with all human speed and, accordingly, my

9    intention was to early next week, on Monday or Tuesday, file

10   that motion with you, attach the proposed agreement with the

11   understanding, of course, that the -- HHS and DOJ have not

12   finally agreed to that and schedule some kind of a hearing

13   before you, your Honor.

14          So, if we combine your status conference with also

15   that hearing, where you might have any questions regarding the

16   operation of the agreement, we might be able to kill two birds

17   with one stone.

18          JUDGE ZOBEL:  Well, since you're filing a motion and

19   we're going to have some kind of discussion about this

20   motion -- normally we wouldn't need, but we will have it --

21   then we will invite the -- what agency is it, HEW?

22          MR. SOBOL:  Well, here it would be -- it's HHS and

23   CMS, but it's also a DOJ component, and I think that the

24   lawyers --

25          JUDGE ZOBEL:  We'll invite them all.  We'll invite

```
1    them all to come and participate.
2           Now, I have no problem in doing this on the
3    telephone, and maybe you could lay the groundwork for it and
4    say that I wish the governmental agencies to participate in
5    the hearing on this motion.
6           MR. SOBOL:  I will do that, your Honor.
7           JUDGE ZOBEL:  And Ms. Urso can give you a date, and
8    we can tell them that we are happy to do it by telephone or
9    they can all schlep up here and we'll see them, okay?
10          MR. SOBOL:  Very good.  I will see what their
11   preference is in that regard.  Thank you.
12          JUDGE ZOBEL:  So, I will rely on you to set it up.
13          MR. SOBOL:  I will do that.
14          JUDGE ZOBEL:  About when would you want this?
15          MR. SOBOL:  I think -- what is the second Monday in
16   August?  Is it the 15th?
17          JUDGE ZOBEL:  Would probably be a Tuesday.
18          MR. SOBOL:  Yes, the 16th of August would be great.
19          JUDGE ZOBEL:  What time, Lisa?
20          COURTROOM DEPUTY CLERK URSO:  2 o'clock.
21          JUDGE ZOBEL:  2 o'clock would work for you?
22          MR. SOBOL:  Thank you.
23          JUDGE ZOBEL:  Okay, that's when we'll do it.  So,
24   we'll set it down for a hearing on a motion that you're going
25   to file.
```

1          MR. SOBOL:  Yes.

2          JUDGE ZOBEL:  Thank you very much.

3          Now, is there another component to this?

4          MR. SOBOL:  Yes.  So, then I have to turn to Medicaid

5     and then I turn to the private insurers.  Okay, your Honor?

6          JUDGE ZOBEL:  Does Medicaid need some prodding, too?

7          MR. SOBOL:  I don't think so, but I want to visit

8     that with somebody, have a discussion momentarily, and if

9     there's some reason that that needs to be included in this, I

10    will add that to the request for the 16th of August.

11         JUDGE ZOBEL:  Okay.

12         MR. SOBOL:  So, there are, of course, many Medicaid

13    agencies and, of course, many of those Medicaid agencies don't

14    have any dogs in this hunt because this was a catastrophe that

15    was not as widespread as other situations, although still a

16    travesty.  So, there are some Medicaid agencies that

17    potentially have a bigger dog in this hunt than others, but I

18    have some news to report there as well.

19         Oh, and, of course, one of the things that we have to

20    do is make sure, to the extent that we can, that, though,

21    Medicaid agency that does have a lien is going to say that

22    moneys were paid over to a Medicaid beneficiary without their

23    knowing it.

24         So, the PSC has retained the Garretson Group, which

25    is a well-known lien resolution firm, to work with and speak

1    with Medicaid agencies in order to make sure that we have

2    information back from them so that we in turn can give

3    assurances to the tort trustee that payments will be made out

4    for victims from that state without a concern about Medicaid

5    lien.

6            I have good news to report, which is that although

7    this process typically takes a longer period of time, at our

8    request the Garretson Group did what it could to expedite the

9    responses from Medicaid from several of the key critical

10   states and they've already been able to get responses from two

11   of the three critical states and they are working on others,

12   such that we know that we have responses back from some of the

13   more critical agencies.

14           I need, though, to touch base with the Garretson

15   Group tomorrow -- on either Friday or on Monday to find out

16   exactly where we are in order to determine whether or not we

17   need any court discussion with respect to that as well, and I

18   will do so.

19           JUDGE ZOBEL:  Thank you.

20           MR. SOBOL:  And then, finally, there are also

21   agreements in principle with the two groups of private

22   insurers and those agreements are also in the process of being

23   finalized.

24           The net result of all of this is that for some of

25   those claims that have been allowed -- that half of the claims

1    that have been allowed, that we will be sending notices out,

2    hopefully, to as many of those persons whose claims have been

3    allowed in August, such that they can get back to us,

4    confirming that they have no other lien issues that the tort

5    trustee need to be concerned about, such that payments will

6    start happening in August.

7          I keep on saying that like it's both a fact.  It also

8    needs to be said that this is a matter of will, too.  We are

9    pushing on many different groups to make sure that we can keep

10   on that track.  And so, that is where we are.

11         And to the extent that we can't get the first checks

12   out to some approved people in August, then we are going to be

13   doing that as soon as we absolutely can thereafter in

14   September, and continue going forward on a rolling basis.

15         So, that's where we are with all of those matters,

16   your Honor.

17         JUDGE ZOBEL:  Thank you very much.  That really is a

18   very good report.

19         Let me ask you.  I've forgotten really where in the

20   sequence a claimant or a plaintiff can appeal the decision as

21   to the amount.  Does that come after you tell them -- after

22   you pay off some of it or --

23         MR. SOBOL:  No.  That's a process that's already been

24   underway, and if Mr. Ellis is the courtroom, I think that he

25   is our guru on all those matters and probably the best to

1    address it.

2             MR. ELLIS:  Yes, Judge.  After some --

3             JUDGE ZOBEL:  I think you need to turn your

4    microphone on.  There's a button behind the back end.

5             MR. ELLIS:  Yes.  After somebody receives a denial,

6    they have a 30-day period to file an appeal.  Those are

7    beginning to be filed.

8             JUDGE ZOBEL:  Really?

9             MR. ELLIS:  Yes.  We don't expect too many of them.

10             JUDGE ZOBEL:  Okay.  All right.

11             MS. MARTIN:  Your Honor, if I could just pick up on

12    one of the things that Mr. Sobol said.  He mentioned reaching

13    out for data from the state Medicaid agencies to see if the

14    claimants are Medicare eligible and if they have potential

15    claim for reimbursements from Medicaid, and some -- as Mr.

16    Sobol said, some of the agencies have turned over information,

17    but some Medicaid agencies are reluctant to share the

18    information without a qualified protective order saying that

19    sharing information does not violate HIPAA.

20             So, we have filed a motion for a qualified protective

21    order and a proposed order, and we have them also here to hand

22    up.  I believe it's set up for Judge Boal's signature, but we

23    would ask that the Court enter this order.  There's no

24    opposition to it.  It's similar to what we did earlier this

25    year with the private third-party payors, and as soon as we

1    get this order entered, then we can assuage the concerns of

2    those Medicaid agencies that have been reluctant to share the

3    information and they can get that information to the tort

4    trustee, and that won't be holding things up.

5            So, we have an order to hand up, if your Honors would

6    like.  It was Docket No. 3005 and it was, I believe, filed

7    yesterday.  We had filed a previous version ten days ago, but

8    this modified one is the correct one.  It reflects some

9    language that we agreed to with the defendants.  So --

10           MR. GASTEL:  May I approach, your Honor?

11           JUDGE ZOBEL:  Of course.

12           (Attorney Gastel hands document to the Court.)

13           MS. MARTIN:  I believe what you have there is both

14    the motion and the proposed order put together.

15           JUDGE ZOBEL:  Thank you.  Judge Boal will take care

16    of it.

17           JUDGE BOAL:  I had been waiting for the two-week

18    period, but in some ways started a new two-week period, but my

19    understanding, if I heard you correctly, is you don't believe

20    there's opposition.

21           MS. MARTIN:  We do not.  We made some modifications

22    after discussion with the defendants to -- and, basically, the

23    issue is that the defendants -- I believe that they are

24    entitled to receive information that is disclosed.  We don't

25    think it's discoverable, but we put language into the proposed

1  order that says that we will inform the defendants of the

2  nature of the information that is received and if they still

3  think that they are eligible to see it, then we can brief that

4  then, but we didn't want to have that issue hold up entry of

5  the order for payments.

6          JUDGE ZOBEL:  Thank you.

7          MS. MARTIN:  So, that brings us to the status of the

8  insurance declaratory judgment action, and Mr. Gastel will do

9  that.

10          MR. GASTEL:  I believe the last time we were here,

11  your Honor, the certification order had just entered.  The

12  insurer and Specialty Surgery Center had submitted their

13  opening brief.  Our reply brief is due, I believe, on Monday,

14  and then I believe that we will wait an order from the

15  Tennessee Supreme Court as to whether or not they accept the

16  question.  They continue to have the right to reject the

17  question, but they ask that we brief it fully first.  So that

18  the briefing should be completed on Monday, and at that point

19  we will be waiting to hear from the Supreme Court.

20          JUDGE ZOBEL:  Thank you.

21          MS. MARTIN:  So, that brings us to the status of

22  discovery.  I just want to go out of order for a moment.

23          Mr. Kirby wanted to address something for Box Hill

24  and wanted to be able to actually make his transportation out

25  of here.

```
 1           MR. KIRBY:  Good morning, your Honors -- or

 2     afternoon, I guess, at this point.

 3           This I think was probably more for Judge Boal, but it

 4     doesn't matter to me who addresses it.  I'm just the messenger

 5     on behalf of both the plaintiffs and the defendants.

 6           I know the last month or the month before, Judge

 7     Boal, you entered an amended scheduling order with different

 8     dates, I think on the back end dealing mostly with case-

 9     specific discovery.  We had an August 1st deadline of common

10     issue fact discovery.  Both sides have worked diligently to

11     satisfy that in the last few months.

12           However, despite working hard, there's still several

13     depositions due to exigent circumstances outside of our

14     control that hadn't been accomplished and a couple of them --

15     I'll give you the details.  Barbara Wagner and Kim Brockmeyer,

16     they're nonparty witnesses.  Judge Boal, you had a hearing on

17     that.  There was a protective order filed by counsel for the

18     nonparty witnesses.  You allowed those depositions to go

19     forward with some restrictions, at least -- I think you just

20     dealt with Barbara Wagner, but it would also apply to Kim

21     Brockmeyer.

22           Those depositions are scheduled to go forward, at

23     least by agreement of counsel, in mid August.  The dates have

24     already been agreed to by both sides.  And then the Department

25     of Health and Mental Hygiene, one of the state agencies that
```

had addressed this, their deposition was noticed along with
some document production was requested back in March.  There
were issues with the documents, some questions about
sensitivity of the information.  We just got those documents
last week -- or, actually, earlier this week.  The deposition
is at least scheduled by agreement of counsel for August the
9th.

       And then we have the Board of Pharmacy, the Maryland
Board of Pharmacy, similar situation, but that deposition was
actually started this past Tuesday, the 26th, and,
unfortunately, a little less than halfway through the
deposition, the witness, unbeknownst to either counsel or her
own counsel, had some child care issues and had to leave
halfway through.  And so, both sides agreed to suspend that
and continue it later.  Although due to some vacation
schedules, that can't be accomplished in the next two days or
in the very beginning of August.  So, we're working on getting
a new date for that, hopefully, in the last couple of weeks of
August, but both sides are okay with this, but I know that we
can't agree to do anything.  We need the Court's approval,
which is why I'm coming to you.  I didn't file anything.  I'm
happy to file a motion, a joint motion to extend it if you
would like, but I figured I would bring it up today.

       JUDGE BOAL:  So, the next deadline is September after
the close of common issue fact discovery.

1          MR. KIRBY:  It wouldn't affect any of those other

2     deadlines.

3          JUDGE BOAL:  The next deadline, actually, is the

4     plaintiffs' common issue expert.

5          MR. KIRBY:  Correct.

6          JUDGE BOAL:  So, is there anyone here from the

7     plaintiffs in that case?

8          MR. KIRBY:  The local plaintiff's counsel are the

9     only ones who have done anything in this case in these

10    proceedings.  So, I don't know if they're on the phone or not.

11    It would be Patty Kasputys or Michael Coren.  I can file

12    something and get them to sign it if you want to confirm.

13         JUDGE BOAL:  I will approve it as long as it doesn't

14    affect the September 1st date, that the parties operate under

15    that understanding.

16         MR. KIRBY:  Okay.

17         JUDGE BOAL:  So, you don't need to file another

18    motion.

19         MR. KIRBY:  Okay.  Thank you, your Honor.

20         MS. MARTIN:  So, that brings us to the Sub (a) under

21    the status of discovery.  We have the Court rulings update.  I

22    don't believe that there is any discussion that needs to

23    happen regarding the three orders that are here.

24         So, I think we can move to the litigation track, and

25    I also don't believe that there are any comments concerning

1    (a), the stipulation of dismissal, or the Court rulings

2    update, which is (b).

3          So, that brings us to (c), which is responses to show

4    cause regarding the remand and transfer, and this -- the list

5    that we have here is not complete.  This was just intended to

6    be a list of what had been filed since the last status

7    conference, but it also is missing a few --

8          JUDGE ZOBEL:  Which list are you talking about?

9          MS. MARTIN:  I'm sorry.  Under No. 4, status of

10   litigation track, and then (c), responses --

11         THE COURT:  The little i's.

12         MS. MARTIN:  Sorry?

13         JUDGE ZOBEL:  Little i, ii, iii --

14         MS. MARTIN:  Yes, the Romans there.

15         So, this was intended to be sort of a list of what

16   had been filed since the last status conference, but it does

17   not include everything that was filed since the last status

18   conference.  So, I wouldn't rely on this list to be a complete

19   list of the responses to show cause -- to show cause order,

20   but that aside, there's not really an action for the Court to

21   take here.  At the last status conference --

22         JUDGE ZOBEL:  Let me ask you.  I've looked at a

23   number of the filings.  I'm not sure I caught them all, but,

24   as I understand it, there was an order for the parties to let

25   us know and the parties, more or less, did.

1          And then there were a number -- there was the

2     order -- the proposed corrected order that has a list of cases

3     to be transferred subject to objection by the plaintiffs, as I

4     understood it, and the plaintiffs have, in fact, filed

5     objection as to some of them.

6          MS. MARTIN:  Right.

7          JUDGE ZOBEL:  So, those are now ripe to decide, are

8     they not?

9          MS. MARTIN:  So, at the last status conference, it

10    was discussed that the PSC would be consulting with the

11    counsel in those cases.

12         JUDGE ZOBEL:  Yes.  That hasn't happened?

13         MS. MARTIN:  It has been happening, but it is not

14    complete.  And so --

15         JUDGE ZOBEL:  So, I shouldn't rule on them yet?

16         MS. MARTIN:  Right.  It will be complete certainly

17    before the next status conference, but it is underway, just

18    has not -- not been able to connect with all the counsel that

19    you need to discuss with.

20         JUDGE ZOBEL:  There are not a whole lot of cases that

21    are involved in this dispute, are there?  I mean, maybe there

22    are six or seven or eight, at most?

23         MS. MARTIN:  I believe that's correct.

24         JUDGE ZOBEL:  Okay.

25         MS. MARTIN:  But we were still reaching out to them

```
1    to try to see if we could discuss the issues of timing with

2    them and come to the Court with an answer to the questions

3    that were posed at the last status conference.

4              JUDGE ZOBEL:  And is it the view of counsel that we

5    should not remand any of them until we have resolved this

6    issue as to the contested ones?

7              MS. MARTIN:  Should not remand any of those that are

8    contested or any of them at all?

9              JUDGE ZOBEL:  Any of them at all.  There are a number

10   that are not contested, as best as I can tell.

11             MS. MARTIN:  That is not our position.  Those are

12   separate and, as the Court may recall, we are -- we had

13   offered to prepare a proposed suggestion of remand for those

14   that are not contested, and we have been working on that and

15   intend to have that prepared to file by the end of next week.

16             JUDGE ZOBEL:  Okay.

17             MS. MARTIN:  So, this is just concerning --

18             JUDGE ZOBEL:  So, by the end of next week the

19   uncontested remands will be ready to go?

20             MS. MARTIN:  Yes, we will have a proposed

21   suggestion --

22             JUDGE ZOBEL:  In the meantime, you're also trying to

23   work out the contested pieces of it, which either will go

24   uncontested in the end or will go per order of the Court if

25   the Court sends them back.
```

```
1              MS. MARTIN:  Yes, I believe that's correct.
2              JUDGE ZOBEL:  And your response, you having worked
3    out with defense counsel, will be done by sometime in a week
4    or so?
5              MS. MARTIN:  I'm not sure if I can promise that,
6    but --
7              JUDGE ZOBEL:  Sometime before the next --
8              MS. MARTIN:  -- definitely before the next status
9    conference, yes.
10             JUDGE ZOBEL:  By the next meeting?
11             MS. MARTIN:  Yes, absolutely.
12             JUDGE ZOBEL:  So, the only thing for you to do now is
13   if you want the uncontested ones to go, you will give me the
14   appropriate documents to accomplish that.
15             MS. MARTIN:  Yes.
16             JUDGE ZOBEL:  And, otherwise, for the others we will
17   wait, and it may be that it makes sense to send the entire
18   group together, in which case you will do that also by the
19   next meeting.
20             MS. MARTIN:  Right.  We have been working on the
21   proposed suggestion for remand and we have a chart -- we
22   actually have the chart that lists all the cases that are
23   going to be -- that are uncontested or there are no objections
24   to remand, and we have a list of those, if you would like to
25   see it.  We were going to attach it to our proposed suggestion
```

1    of remand, but we do have it here today, if you wanted to see

2    it.  It's now up to about 70 cases, where at the previous

3    conference was 17 individual cases.

4             JUDGE ZOBEL:  Well, you had given me the chart, which

5    was -- no.

6             MS. MARTIN:  We have an updated version of that

7    chart.

8             JUDGE ZOBEL:  I don't know how you keep track of all

9    of this.  Was it -- here it is.  It's 2946 --

10            MS. MARTIN:  I believe that's right.

11            JUDGE ZOBEL:  -- which is a chart which also notes

12   certain objections.

13            MS. MARTIN:  Right.  We have an updated version of

14   that chart -- or, actually, this chart that we have is not the

15   one you're talking about.  You have the one that notes the

16   objections.  The chart that I have here is one that would be

17   just those that had no objection that we were going to attach

18   with our suggestion of remand.

19            JUDGE ZOBEL:  Well, the one that I just showed you is

20   a chart that has no commentary, presumably no objection, and

21   then there's a note of objection.

22            MS. MARTIN:  Right.

23            JUDGE ZOBEL:  So, it could serve as a template for

24   those that can go immediately.

25            MS. MARTIN:  It could, yes.

```
1              JUDGE ZOBEL:  But I leave it to you to decide how you

2     want to handle it.

3              MS. MARTIN:  Okay.

4              JUDGE ZOBEL:  But it would be nice to get it done by

5     the next meeting.

6              MS. MARTIN:  Yes, by the next meeting, both the

7     conversations with individual counsel and the proposed

8     suggestion for remand filing will be done.

9              JUDGE ZOBEL:  Okay.

10             MS. MARTIN:  So, that brings us to the report from

11    pro se liaison, which is me, and there is no report.  There

12    have been no communications from any pro se individuals since

13    the last status conference.

14             JUDGE ZOBEL:  Now, did you know when you became

15    liaison counsel that you were -- pro se liaison, that you

16    would be running the show?

17             MS. MARTIN:  I could only hope.

18             So, that brings us to the schedule for future status

19    conferences.  I believe on the docket they are only docketed

20    for Judge Boal and not for Judge Zobel.  So, I just wanted

21    to --

22             JUDGE ZOBEL:  Well, I'm not sure that's right,

23    because I noted on my agenda for June that we were having a

24    meeting on August 24th and September 29th, although here it

25    said Boal only.  I'm happy to turn it over to her.
```

```
 1              MS. MARTIN:  I just wanted to confirm that 2:00 p.m.
 2    would be the time for the status conference on those dates.
 3              JUDGE BOAL:  It's just a question they haven't been
 4    docketed?
 5              MS. MARTIN:  Yes.
 6              JUDGE ZOBEL:  So, it is both of us.
 7              MR. KIRBY:  Your Honor?
 8              JUDGE ZOBEL:  Yes.
 9              MR. KIRBY:  Can I raise an issue?  I hate to do it.
10    It's all my mistake, but when we agreed I think to September
11    29th, I was --
12              JUDGE ZOBEL:  What day would you like?
13              MR. KIRBY:  What day would I like instead of
14    September 29th?  September 28th, I think, would work.
15              JUDGE ZOBEL:  That's fine.  Let's find out what
16    counsel's preference is.  September 28th is a Wednesday.
17    Lisa, does that work?
18              COURTROOM DEPUTY CLERK URSO:  Yes.  We have a
19    revocation that I can change.
20              JUDGE ZOBEL:  Is September 28th agreeable to all
21    counsel?
22              MS. MARTIN:  Yes.
23              JUDGE ZOBEL:  So, we'll move the 29th to the 28th.
24              MR. KIRBY:  Thank you, your Honor.  Can't believe I'm
25    two for two today.
```

1          JUDGE BOAL:  Well, I, unfortunately, did not bring my

2     calendar with me for September.  So, I'll just coordinate.

3     Hopefully, I'll be able to make it work.

4          MR. KIRBY:  Thank you very much.

5          JUDGE ZOBEL:  Okay.

6          MS. MARTIN:  Then we have some fully-briefed motions

7     that are before the Court.

8          JUDGE ZOBEL:  Oh, yes.  I think we normally go three

9     months ahead.  So, do you want me to schedule something in

10    October, too?

11         MS. MARTIN:  Yes.

12         JUDGE ZOBEL:  Thank you.

13         What day in October would you like, Mr. Kirby?

14         MR. KIRBY:  What week are you looking at?

15         JUDGE ZOBEL:  Of course, if you choose it, you can't

16    change it.

17         MR. KIRBY:  I'm pretty flexible other than the 19th.

18         COURTROOM DEPUTY CLERK URSO:  What about -- so, the

19    week before or the week after?  Because you have the...

20         (Discussion off the record at the Bench.)

21         JUDGE ZOBEL:  We can do it either on the 13th or the

22    27th.

23         MR. KIRBY:  That's the only other date that doesn't

24    work.

25         JUDGE ZOBEL:  Really?

1          MR. KIRBY:  I was looking -- I was going to say

2  something, but I thought, no, there's no chance she's going to

3  pick the one date.

4          COURTROOM DEPUTY CLERK URSO:  What about the 13th, at

5  2:00?

6          JUDGE ZOBEL:  The week that you had suggested is the

7  circuit conference week.

8          MR. KIRBY:  I can do the 12th.

9          COURTROOM DEPUTY CLERK URSO:  We have stuff on that

10  date.

11          MR. KIRBY:  Or the 11th.

12          JUDGE ZOBEL:  Does that work for you?

13          (Discussion off the record at the Bench.)

14          JUDGE ZOBEL:  The 11th works for us.

15          MR. KRAUSE:  Your Honor, does it make sense to have

16  it on the 28th of September and another --

17          JUDGE ZOBEL:  I'm sorry?

18          MR. KRAUSE:  Does it make sense to have it on the

19  28th of September and then two weeks later --

20          JUDGE ZOBEL:  Do you want to skip October?

21          MR. KIRBY:  I'm happy to do it on the 28th.  I mean,

22  I've got 25, 26 and 27 all free, whatever works with everyone

23  else.

24          MS. MARTIN:  25th would work for us.

25          MR. KIRBY:  Actually, not the 25th.  26th and 27th.

```
1              MS. MARTIN:  Those don't work for us.
2              JUDGE ZOBEL:  Ms. Martin and Mr. Kirby, get together
3      and tell us what date you want before we leave here today.
4              MR. KIRBY:  I could make the 25th work, if that works
5      for everyone.  Does that work for you?
6              MS. MARTIN:  The 25th works for us.
7              JUDGE ZOBEL:  25th, does that work for you?
8              JUDGE BOAL:  No.
9              MR. KIRBY:  Does the 18th work for you?  Is that
10     whole week out?
11             JUDGE ZOBEL:  No.  That's the circuit conference in
12     Puerto Rico.
13             MR. KIRBY:  Can we come, too?
14             MS. MARTIN:  We can do it there.
15             JUDGE BOAL:  So, Wednesday works, the 26th.
16             JUDGE ZOBEL:  26th?
17             MS. MARTIN:  That doesn't work for our side.
18             JUDGE ZOBEL:  Does not work?
19             JUDGE BOAL:  27th --
20             MS. MARTIN:  Does not work for us.
21             MR. CHALOS:  26th and 27th do not work for us.
22             JUDGE ZOBEL:  This is the first time we've had that
23     kind of --
24             MS. MARTIN:  The 28th could work for us.
25             JUDGE ZOBEL:  I'm sorry?
```

1          COURTROOM DEPUTY CLERK URSO:  The 28th of October

2     doesn't work for us.

3          MR. KIRBY:  If you just send us back to Maryland, you

4     won't have to worry about the schedule.

5          JUDGE ZOBEL:  Then I'd have to go down there,

6     wouldn't I?

7          MR. KIRBY:  It's nice in Maryland.

8          MR. CHALOS:  How about the 24th?

9          MS. MARTIN:  The 24th would also work.

10         COURTROOM DEPUTY CLERK URSO:  No, not for us.

11         MS. MARTIN:  Does the 28th work or no?

12         COURTROOM DEPUTY CLERK URSO:  No.

13         JUDGE ZOBEL:  25th, 26th or 27th does not work for --

14         MS. MARTIN:  25th works for us, but not the 26th or

15     27th.

16         MR. KIRBY:  I'm good for all those dates, 25th, 26th,

17     and 27th, but I think Judge Boal has...

18         (Discussion off the record.)

19         JUDGE ZOBEL:  How about 26th?

20         MR. KIRBY:  For me, but not for the plaintiffs

21     apparently.

22         JUDGE ZOBEL:  How about 27th?

23         MS. MARTIN:  No, we can't do that either.

24         COURTROOM DEPUTY CLERK URSO:  What about the first

25     week of November?

```
1              MS. MARTIN:  We could do that.

2              COURTROOM DEPUTY CLERK URSO:  What about the 3rd?

3              MR. KIRBY:  Works for me.

4              MS. MARTIN:  That works for us as well.

5              JUDGE ZOBEL:  November 3rd?

6              MS. MARTIN:  Yes.

7              JUDGE BOAL:  I did not bring my calendar.

8              COURTROOM DEPUTY CLERK URSO:  I have hearings on, but

9      I could just move them, if that worked for everybody.

10             JUDGE ZOBEL:  November 3rd?

11             JUDGE BOAL:  Why don't we just schedule it.

12             COURTROOM DEPUTY CLERK URSO:  Does the 3rd work for

13     everyone, at 2:00?

14             MR. KIRBY:  Yes.

15             MS. MARTIN:  Yes.

16             COURTROOM DEPUTY CLERK URSO:  Okay.  So, 11/3, at

17     2:00.

18             JUDGE ZOBEL:  Effectively skipping a month.  We have

19     two, correct?

20             COURTROOM DEPUTY CLERK URSO:  Yes, Judge.

21             JUDGE ZOBEL:  Okay.  Now, with respect to the

22     discovery-related motions, again, Judge Boal.

23             MS. MARTIN:  Right.  So, the first motion there is a

24     motion to modify the protective order.  There were litigants

25     in state court who wanted access to and the ability to use
```

1    information that's in the repository.  So, the language of the

2    protective order needs to be tweaked to allow them to sing on

3    to the protective order.  So that was the gist of this motion.

4    I don't believe that we expect any opposition to this motion.

5              JUDGE BOAL:  I think the deadline for opposition is

6    Monday.  So, I was just waiting for that.

7              MS. MARTIN:   Okay.  And then Mr. Gastel will address

8    the (B) and (C).

9              MR. GASTEL:   (B) and (C) are fully briefed and I

10   believe have been argued, your Honor.

11             The issue is -- you might have seen just prior to the

12   status conference, we filed a joint motion to adjust the --

13   and update the current scheduling order for the Specialty

14   Surgery cases, which I think is Docket No. 2652.  Our joint

15   motion is Docket No. 3010.  We have largely come to an

16   agreement on the schedule.  There are three issues related,

17   that we have not come to an agreement to.  We would ask that

18   the Court resolve those issues, and we would ask the Court to

19   update the current schedule with one of the proposals that's

20   before the Court.

21             JUDGE BOAL:  So, I anticipate issuing a decision on

22   (B) and (C) shortly, maybe even today, but I wasn't sure,

23   given the schedule that was filed an hour or so ago.

24             How long -- under either way I decide the motion, the

25   parties are going to need to do some work.  And was that

1    factored in to the request for the extension of fact

2    discovery?

3        MR. GASTEL:  I think that the parties were working

4    under the assumption that your order would be forthcoming

5    relatively quickly, and I think the dates will hold if you

6    were going to rule that quickly.

7        JUDGE BOAL:  No matter how many levels of review,

8    depending on the order that I issue.

9        MR. GASTEL:  We generally believe that we've

10   accommodated the --

11       JUDGE BOAL:  Okay.

12       MR. TARDIO:  Part of it, of course, will depend on

13   how long it takes Cumberland Medical Center to produce and

14   have the vendor process the data, but we did build in extra

15   time for review of that information by the lawyers.

16       JUDGE BOAL:  I think, if I remember correctly, you

17   guys were 75 days, but about how long do you think this review

18   will take?

19       MR. TARDIO:  Well, I suppose it depends, in part, on

20   the orders, but probably at least 30 days, and then there are

21   some depositions that follow it that the Court has allowed.

22       JUDGE BOAL:  All right.  Thank you.

23       MS. MARTIN:  So, No. 2 under the fully-briefed

24   motions and the dispositive motions, the proposed suggestion

25   of remand, we've discussed that earlier.  So --

1          JUDGE ZOBEL:  So, that we just spoke of earlier

2     about --

3          MS. MARTIN:  Exactly.

4          JUDGE ZOBEL:  I gather that I will hear from you

5     shortly before the next meeting.

6          MS. MARTIN:  Yes.  By the end of next week we will

7     have proposed suggestion for remand.

8          So, that brings us to (D), briefing in progress.

9     We've already covered the two discovery-related motions.  The

10    first one we handed up to Judge Boal earlier, and then the

11    second one is what Mr. Kirby discussed earlier.

12         In the other motion section, the letter request is

13    covered by the proposed suggestion of remand.  So, we'll pass

14    that.

15         And then in dispositive motions, there is Specialty

16    Surgery's motion for summary judgment --

17         JUDGE ZOBEL:  Is that ripe?

18         MS. MARTIN:  Not yet.  Specialty Surgery Center's

19    reply is due on August 3rd, which I believe is Wednesday.  And

20    so, once that reply has been filed, then it will be ripe.

21         JUDGE ZOBEL:  Okay.  What date is that?

22         MS. MARTIN:  August 3rd.

23         JUDGE ZOBEL:  Okay.

24         MS. MARTIN:  And so, then the last section is the

25    motions that are stayed as a result of Docket 2898.  These are

1    all the Saint Thomas-related motions.  So, we need to discuss

2    them.  Mr. Chalos will give you an update.

3         MR. CHALOS:  Yes, your Honor.  Mark Chalos for the

4    Plaintiffs' Steering Committee.  I wanted to update the Court

5    on the progress of the Saint Thomas cases.

6         We now have a signed memorandum of understanding

7    between all the parties in those cases.  We are continuing now

8    the process of developing individual releases, which will be

9    presented to our clients, and we are also waiting resolution

10   of that lien issue, which will, obviously, impact -- or at

11   least potentially impact these cases as well, but in the

12   meantime, we're continuing to work toward getting those

13   individual releases to our clients, having an allocation plan

14   put into place for the settlement and, hopefully, by then the

15   lien issue will resolve itself and we can complete that

16   settlement.

17        JUDGE ZOBEL:  Well, that sounds good.  What's the

18   outside date that you anticipate you will be done?

19        MR. CHALOS:  Well, that's a good question.  I don't

20   know the answer to that.  We are moving as quickly as we can.

21   We are mindful that we have the 90-day stay on those cases,

22   and as for now, we're working to at least have the individual

23   releases completed within that 90-day period, and we'll update

24   the Court.  If we need some action from the Court, we'll ask

25   for it.

1          JUDGE ZOBEL:  Unfortunately, it won't move the
2    government any faster, will it?
3          MR. CHALOS:  It doesn't seem to be, but we remain
4    hopeful.
5          JUDGE ZOBEL:  Okay.
6          MS. MARTIN:  So, unless your Honors have any other --
7          JUDGE ZOBEL:  The rest of this is really all by way
8    of reporting?
9          MS. MARTIN:  Yes.  Correct.
10          So, unless there's anything else your Honors have,
11    then that is it for today.
12          JUDGE ZOBEL:  And all of the matters on the last page
13    are also for information only?
14          MS. MARTIN:  Yes.  All of these are motions that are
15    stayed currently.
16          JUDGE ZOBEL:  Is there anything else that anybody
17    wishes to discuss, either counsel in the courtroom or counsel
18    on the phone?
19          (No response.)
20          JUDGE ZOBEL:  Well, thank you very much.
21          MS. MARTIN:  Thank you, your Honor.
22          JUDGE ZOBEL:  We will see you again come August.
23          Have a safe trip back.
24          (Adjourned, 2:45 p.m.)
25

1

2                         C E R T I F I C A T E

3          I, Catherine A. Handel, Official Court Reporter of the

4   United States District Court, do hereby certify that the

5   foregoing transcript, from Page 1 to Page 37, constitutes to the

6   best of my skill and ability a true and accurate transcription of

7   my stenotype notes taken in the matter of No. 13-md-2419-RWZ, In

8   Re: New England Compounding Pharmacy, Inc., Products Liability

9   Litigation.

10

11     August 14, 2016              /s/Catherine A. Handel
       Date                        Catherine A. Handel RPR-CM, CRR
12

13

14

15

16

17

18

19

20

21

22

23

24

25