UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| _____ | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Suits Naming Box Hill Surgery Center, LLC | ) | |
| | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR SUGGESTION OF REMAND OR TRANSFER OF BOX HILL CASES TO MARYLAND AND TO ESTABLISH VENUE IN MARYLAND VIA § 157(B)(5) OR § 1404(A)**

Defendants Box Hill Surgery Center, LLC ("Box Hill"), Ritu T. Bhambhani, M.D. (Dr. Bhambhani"), and Ritu T. Bhambhani, M.D., LLC ("Dr. Bhambhani's Practice") (collectively, the "Box Hill Defendants") move to, at the conclusion of common expert discovery, remand the cases against Box Hill to Maryland state court, consistent with the directive of 28 USC §1407. As a similarly situated party, the Box Hill Defendants join in and adopt the arguments set forth by the Specialty Surgery Center ("SSC") Defendants as they relate to remand to the state of origin. The Motion requests that, following remand under §1407, the Court either (1) refrain from acting on venue so as to allow the cases to proceed to trial in Maryland; (2) set venue in Maryland pursuant 28 USC §157(b)(5); or (3) set venue in Massachusetts pursuant §157(b)(5) and then transfer the cases to Maryland pursuant 28 USC §1404.

Following any of the three paths outlined above results in the proper outcome: The Court would discharge its statutory duty under §1407 by remand of the cases to Maryland at the close of common discovery. The Box Hill cases would subsequently be tried in the appropriate venue (Maryland).

1.      **Introduction**

During the May status conference, the PSC discussed a plan to remand cases to their home districts. The Court signed an order prepared by the PSC setting forth this process.[1] The Order establishes that the objective of the MDL is to complete centralized pretrial proceedings for the catalog of cases. Once complete, the cases will be sent to their home state.

The Order at Dkt. 2928 distinguishes the cases by home state, but leaves venue for the Box Hill cases primarily to the lawyers.[2] Notwithstanding the practical logic and legal support for transfer or remand to Maryland after completion of common discovery, the PSC has refused to consent to a venue other than Massachusetts. *See* Dkt. 2969. Accordingly, the Box Hill cases remain in Massachusetts linked only by the NECC bankruptcy proceeding, which no longer has a connection to the claims against Box Hill (or any other healthcare provider defendant).[3]

Although these cases were originally consolidated in Massachusetts to maximize efficiency and increase convenience related to NECC and common issue discovery, they will oddly continue in Massachusetts despite substantial roots in Maryland and no connection to Massachusetts. Such a lopsided prospect protects the interests of no one, while inconveniencing the actual parties to the lawsuit as well as many, if not all, of the non-party fact witnesses unrelated to any allegations of fault. On the other hand, maximum efficiency can be achieved by utilizing the Massachusetts court for common discovery (which will have been accomplished) and then transferring the cases back to Maryland for case specific discovery, and pretrial and trial

---

[1] Dkt. 2928.

[2] The Order allows the lawyers from New Jersey and Maryland, with judicial input, to decide where they wish to litigate. [Dkt. 2928, p. 10].

[3] Further, if the bankruptcy was the basis for keeping the Box Hill cases in this Court, then it would reason that every other case that was previously included in this MDL would be required to stay in this MDL as well instead of being transferred back to its home state.

1696491

proceedings. When such a transfer will achieve efficiency at all stages of the litigation, it is the correct action.

In their argument against transfer, the PSC mistakenly characterizes the issue of venue as a request that is already decided. However, the PSC speaks from both sides of its mouth and requests transfer or remand of certain cases because "the MDL mechanism [has] been exhausted, and it is time for these actions to go their separate ways"[4] effectively agreeing with the logic presented by Box Hill. The conflict between the PSC's agreement to transfer some cases in the MDL and not others is perplexing; however, upon close analysis of the Box Hill cases the Court will see that transfer or remand to Maryland is proper.

Despite the PSC's contention that venue is established, the matter of venue has not been fully decided and explored by this Court. Further, the Court has only addressed preliminary venue issues in a previous order largely specific to the STOPNC cases (Dkt. 2309). With regard to the motion at issue here, the Court has not determined venue for the Box Hill cases, nor has it done the requisite case-specific, individualized analysis of venue for the Box Hill cases. When the Court conducts the case-specific, individualized analysis for the Box Hill cases, it will be evident that the appropriate venue is Maryland.

The overall landscape of the MDL also supports transfer or remand of the Box Hill cases to Maryland at the close of common discovery. The Court plans to remand four dozen cases against Premier back to New Jersey based on the argument that "only case-specific discovery remains."[5] Oddly, eight Box Hill cases, originally filed in Maryland, will remain in Massachusetts despite any meaningful procedural or legal distinction between the MDL

---

[4] *See* Dkt. 3028-1 at pg. 3. [Proposed] Suggestion of Remand of Transfer by MDL Plaintiffs.
[5] *Id.* at page 11.

defendants from Maryland and New Jersey. Separate handling of these defendants is instead based on the desire of the plaintiffs' lawyers, not an individualized analysis by the Court.

Furthermore, the fact that the Court can establish venue in Massachusetts for the Box Hill cases does not mean the Court should or must establish venue there. An individualized analysis of the factors for establishing venue reveals the appropriate conclusion. The Court should follow the proposal set forth by the SSC Defendants at Dkt. 2939 and Dkt. 3028, apply the same analysis to the similarly situated Box Hill Defendants, and send cases originating in Maryland back to their home state.

**2.    Argument**

    **a.    The Court should remand the Box Hill cases to Maryland at the close of common expert discovery because it is the appropriate action supported by law.**

        **i.    Maryland is the preferred venue under § 1407.**

Section 1407(a) requires that actions transferred to the MDL Court pursuant to the section "shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which [they were] transferred."[6] *Lexecon* makes clear that such mandate must be followed.[7] [8] Allowing Plaintiffs to decide where they want venue by objecting to remand or transfer disregards *Lexecon.* As such, a Plaintiffs can effectively sidestep the aim of *Lexecon* without supporting case law.

The mandate of §1407 reflects a legislative policy that "trial in the originating district is generally preferable from the standpoint of the parties and witnesses."[9] "Jury trials are…meant

---

[6] 28 USC §1407.
[7] *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) (holding MDL transferee court cannot self-transfer case under §1404 and must transfer case to home district for trial).
[8] A single case was identified addressing the interplay of §1407 and §157(b)(5): *Shah v. Pan Am. World Servs., Inc.*, 148 F.3d 84, 90-91 (2nd Cir. 1998) (noting that "*Lexecon*'s reasoning applies equally to transfers pursuant to any venue statute").
[9] *Id.* at 408

1696491

to bring a community's diverse perspectives and norms to bear on fact finding."[10] The original

forum courts are also generally better equipped to assess claims under their states' laws.[11] These

policy considerations underlie §1407's remand requirement.

     **b.**     **When the goal of the MDL (common expert discovery) is accomplished, remand is proper under §1407.**

The question is not if the cases should be returned to Maryland, but rather, a question of

when they are prepared for remand or transfer. Accordingly, §1407 asks a simple question,

whether the cases will benefit from continued proceedings in the MDL.[12] The ultimate goal is to

determine whether remand ensures maximum efficiency for the parties and the judiciary.[13] If the

home state ensures maximum efficiency to the parties and the judiciary, remand is necessary.[14]

     "In deciding whether to suggest remand to the Panel, a transferee court applies the same

standards for remand the Panel would apply."[15] The most "common" (and logical) time to

remand an MDL's cases is upon completion of common discovery, when the bulk of work left is

case- and state-law specific.[16] As admitted by Plaintiffs in Dkt. 3028, the remaining "cases in the

MDL raise only state law claims."[17]

     **c.**     **At the close of common discovery, the MDL will have accomplished its goal and will no longer aid in its intended purpose for the Box Hill Cases.**

---

[10] Elizabeth Burch, *Remanding Multidistrict Litigation*, 75 LA. L. REV. No. 2, 408 (2014).

[11] *See In re Activated Carbon Based Hunting Clothing Mktg. & Sales Practices Litig.*, 840 F.Supp.2d 1193, 1199 (D. Minn. 2012) ("'[T]he transferor courts, each of which is familiar with the state law of their respective jurisdictions, are in a better position to assess' these claims") (additional citations omitted).

[12] *Eastman v. Biomet, Inc.*, No. 3:15-CV-585-RLM-CAN, 2016 WL 1425954, at *2 (N.D. Ind. April 11, 2016).

[13] *Hockett v. Columbia/HCA Healthcare*, 498 F.Supp.2d 25, 38 (D. D.C. 2007).

[14] *Id.*

[15] *Eastman*, 2016 WL 142594, at *1-2 (additional cites omitted).

[16] *See In re: Ameriquest Mortgage Co. Mortgage Lending Practices Litig.*, 2013 WL 4718958, at *5 ("a suggestion of remand would be appropriate where only case-specific discovery remains") (citing *In re Bridgestone/Firestone, Inc.*, 128 F.Supp. 2d 1196, 1198 (S.D. Ind. 2001)); *In re Ins. Brokerage Antitrust Litig.*, 2009 WL 4796662, at *2 ("the Court agrees with Thornell and concludes that remand of this case is appropriate because it appears that:…(4) everything that remains to be done is case specific"); *In re Air Crash Disaster Near Chicago, Ill., on May 25, 1979*, 476 F.Supp. 445, 449 (J.P.M.L. 1979) ("[o]nce common pretrial proceedings and any other pretrial proceedings that the transferee court considers appropriate have been completed in the transferee district, each transferred action is to be remanded by the Panel for further pretrial and trial to the district from which each action was transferred").

[17] *See* Dkt. 3028-1 at pg. 4. [Proposed] Suggestion of Remand of Transfer by MDL Plaintiffs.

The goal of the MDL is to aid in common discovery to reduce inefficiencies and provide a consolidated front for common discovery issues. However, the Box Hill cases do not need to remain in the MDL upon completion of that objective because it does not conserve the resources of the parties, counsel for plaintiffs and defendants, and the judiciary.[18]

Upon completion of common discovery, venue in Massachusetts offers no benefit to the Box Hill Defendants, Box Hill Plaintiffs, or the fact witnesses relevant to each lawsuit. National discovery pertaining to NECC has concluded.[19] The Court has also ruled on the foundational legal issues that encompass the MDL cases.[20] Accordingly, the MDL has accomplished its objective of maximizing efficiency for the parties during common discovery.

The Court must recognize that refusing to remand the Box Hill cases to Maryland at the close of common discovery contravenes logic as it relates to efficiency. For issues that have no common element intended for the MDL, Maryland Defendants, Maryland Plaintiffs, Maryland based counsel, and Maryland fact witnesses will be forced to travel approximately 400 miles each way for trial. Parties will be forced to live and work in Massachusetts during what are likely to be lengthy trial proceedings incurring substantial costs. Additionally, non-party witnesses will be forced to take leave from their professions, impacting their patients and clientele. Imparting unnecessary time and expense on the parties negates the efficiency intended by the MDL. Such inefficiencies are substantially reduced if the Box Hill cases are properly remanded to Maryland at the close of common discovery.

---

[18] *In re Nat'l Century Fin. Enters., Inc. Fin. Inv. Litig.*, No. 2:03-MC-1565, 2004 WL 882456, at *2 (S.D. Ohio Mar. 25, 2004).

[19] Dkt. 2928 (finding that "discovery concerning NECC and the national defendants has concluded and those documents and materials obtained in discovery are available in a central online repository").

[20] *See, e.g.*, Dkt. 2581, 2700 (ruling on choice of law, applicability of product liability, and scope of discovery of NECC).

1696491

The inconvenience of Massachusetts for Maryland based Plaintiffs is also illustrated in the behavior of Plaintiffs' own counsel. Upon information and belief, Maryland counsel for the Box Hill Plaintiffs involved in the MDL have not travelled to Massachusetts on a single occasion even when issues required their participation. Rather, Maryland counsel has conveniently remained in Maryland and has noted "undue burden" and "expense" as their support for motions for leave to appear by telephone at status conferences.[21] Not only is such a habit indicative of the convenience to all parties, but representative of the true intention of the Plaintiffs' demand to keep the Box Hill case in Massachusetts. However, Plaintiffs continue to make the disingenuous argument that Massachusetts is more convenient when their pleadings state, and actions indicate, otherwise.

Similar to the question before this Court, the Minnesota District Court addressed this issue in *In re Activated Carbon-Based Hunting Clothing Marketing*. There, the Minnesota District Court presided over an MDL with nine (9) consolidated consumer protection cases, pending for four (4) years, governed by the law in nine (9) different states.[22] The claims involved alleged misrepresentations pertinent to clothing worn by hunters.[23] The Minnesota court managed the cases, including class certification efforts, deciding summary judgment motions (including one appealed to the Eighth Circuit), and discovery, for several years.[24] Pertinent to this instant pending motion, the district court framed the question:

> The question, then, is at what point suggestion of remand becomes appropriate in a multi-district litigation….Generally speaking, whether to remand "turns on…whether the case will benefit from further coordinated proceedings as part of the MDL." In the

---

[21] *See* Dkts. 2970 & 2972 in which Plaintiffs request Leave to Appear via Telephone at the July 14, 2016 Motion Hearing.
[22] *In re Activated Carbon-Based Hunting Clothing Mktg.*, 840 F. Supp. 2d at 1194.
[23] *Id.*
[24] *Id.* at 1194-96.

undersigned's view, the Related Actions have passed the point where they will continue to benefit from coordinated proceedings in this Court.[25]

The court noted that completion of common discovery was the "key factor" in the decision to remand. Because the primary purpose of multi-district litigation is to coordinate discovery, the Minnesota court's coordinated action had served its purpose.[26]

> The parties fully litigated several discovery disputes in this Court, each of which has been resolved. Discovery in [a lead case] was made available for use in each of the Related Actions, and the discovery period in all cases has closed. The "primary purpose" of consolidation, therefore, has been achieved.[27]

The Minnesota District Court identified other objective factors weighing in favor of transfer: the scope of the transferred claims had narrowed because some defendants had settled; the remaining cases were "simple" single-plaintiff cases; and global settlement appeared unlikely.[28] Finally, the Minnesota court emphasized that the remaining claims, while some repetition existed, were all state law claims.[29]

Even lack of resolution of all pending motions did not prevent recommendation of remand because the original forum courts were well-equipped to handle the pending state law issues.[30] While some limited pre-trial work remained, that was not a bar to remand – the district court reasonably determined that the original transferor court would get "up to speed" by ruling on the pending state-law-specific motions.[31]  Certainly, efficiency would be better served in Maryland where many more common issues exist between the 8 Box Hill MDL cases, cases against Box Hill by 25 other patient plaintiffs in state court and more than 50 other plaintiffs who made identical claims under Maryland law against approximately 20 healthcare provider

---

[25] *Id.* at 1198 (internal citations omitted).
[26] *Id.* (citing cases for proposition that, when discovery and depositions are completed, the cases should be remanded; also noting that legislative history of statute supports this).
[27] *Id.*
[28] *Id.* at 1198-99.
[29] *Id.* at 1199 (noting that the transferor courts are better equipped to consider state law issues).
[30] *Id.*
[31] *Id.* at 1199, n. 9.

defendants, instead of keeping the 8 Box Hill MDL cases in the MDL alone. Furthermore, Plaintiffs cannot lament that discovery is behind in the state cases when they personally filed 8 cases that became part of the MDL while waiting to file cases for 25 other plaintiffs a year later.

An "MDL seeks to promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common to all cases.*"[32]   The Minnesota court determined that the MDL had run its course and remanded the cases.  Following the same logic the Box Hill cases are best suited in Maryland and should be remanded to their home state at the close of common discovery.

> **d.** **After remand at the conclusion of common discovery, the Court should not invoke §157(b)(5) to set venue in Massachusetts because the proper venue for the Box Hill cases is Maryland. If the Court sets venue for all the MDL cases via §157(b)(5) in Massachusetts, it should then transfer the Box Hill cases to Maryland for trial under §1404.**

The Court previously observed that it would likely set venue for the STOPNC cases in Massachusetts under §157(b)(5).[33] This conclusion is not appropriate for the Box Hill cases. If 28 USC §157(b)(5) vests this Court with power to establish venue, Maryland is the proper venue. Conversely, if the Court establishes venue in Massachusetts under §157(b)(5), based on the foregoing discussion, the Court should transfer the cases to Maryland under 28 USC §1404 for case-specific proceedings and trial.

> **i.** ***Venue in Massachusetts furthers none of the purposes of §157(b)(5) because the bankruptcy proceeding has concluded and will not involve the Box Hill cases.***

28 USC §157(b)(5) does not require consolidation of tort cases in the forum where the bankruptcy is pending; it only permits it.[34] Of particular importance here, the statute also allows the Court to set venue in the district where the claim arose.

---

[32] *Id.* (emphasis in original).
[33] Dkt. 2309.
[34] *Baumgart v. Fairchild Aircraft Corp.*, 981 F.2d 824, 831 (5th Cir. 1993)(*emphasis added*).

The bankruptcy related purposes served by §157(b)(5) should figure heavily in guiding this Court to a decision with regard to remand. Those purposes are: (1) to centralize and organize the administration of the estate;[35] (2) to avoid creating an unadministrable estate;[36] (3) to develop a reasonable plan of reorganization for the debtor;[37] (4) to eliminate multiple forums adjudicating different parts of the bankruptcy;[38] (5) to eliminate confusion, delay, and inefficiencies in the bankruptcy process;[39] (6) to avoid undue interference with administration of the bankruptcy estate.[40] Naturally, the resolved NECC bankruptcy has no influence over the eight (8) Box Hill cases that arose in Maryland. Accordingly, the original purpose of utilizing §157(b)(5) to establish venue in Massachusetts is no longer logical or efficient.

### ii.     The bankruptcy plan has been resolved and the Box Hill cases should be transferred back to Maryland.

By way of the bankruptcy plan, the independent tort claims against the debtor and the debtor's affiliates were resolved.[41] The Court has declared the only other meaningful link to the bankruptcy – discovery of NECC – over.[42]

Trial of the Box Hill cases in Massachusetts does nothing to centralize and/or administer the estate (the primary purpose of §157(b)(5)). Further, maintaining Maryland based negligence claims in Massachusetts does not assist in reorganization for the debtor. NECC is dissolved. Retention also does not eliminate multiple forums adjudicating different parts of the bankruptcy case because the Box Hill tort claims are not part of the bankruptcy case.

---

[35] *Hopkins v. Plant Insulation Co.*, 342 B.R. 703, 716 (D. Del. 2006); *In re United States Lines, Inc.*, No. 97 CIV. 6727 (MBM), 1998 WL 382023, at *5 (S.D. N.Y. July 09, 1998).
[36] *Stokes v. Se. Hotel Props., Ltd.*, 877 F. Supp. 986, 1001 (W.D. N.C. 1994).
[37] *In re Jemsek*, No. 06-31986, 2007 WL 1360867, at *3 (W.D. N.C. May 7, 2007).
[38] *Hopkins*, 342 B.R. at 716.
[39] *Podkolizin v. Amboy Bus Co.*, 402 B.R. 539, 545 (E.D. N.Y. 2009).
[40] *In re Collins & Aikman Corp.*, No. 08-14801, 2009 WL 4646097, at *1 (E.D. Mich. Dec. 7, 2009).
[41] Dkt. 2928 ("[w]hereas, the Chapter 11 Plan for New England Compounding Pharmacy, Inc. resolved tort victims [*sic*] claims against NECC, the Affiliated Defendants, the Insiders, and the National Defendants").
[42] Dkt. 2928 ("[w]hereas, discovery concerning NECC and the national defendants has concluded and these documents and materials obtained in discovery are available in a central online repository").

1696491

More importantly, the Box Hill cases do not name the debtor,[43] nor does any party in the MDL cases hold a claim against the debtor dependent on the outcome of any trial against Box Hill. Venue in Massachusetts will not eliminate confusion or delay in the bankruptcy process or interfere with the administration of the estate. Trial in Maryland also does nothing to create an unadministrable estate.  In fact, representatives of the estate advised the Court that they are in the process of arranging to distribute funds from the tort trust to patient plaintiffs.  See Excerpt of Transcript of July 28, 2016 Status Conference with Judge Zobel, p. 6.

Due to the fact that the Box Hill cases will not impact the bankruptcy estate in any meaningful way, establishing venue in Massachusetts for tort claims arising out of Maryland does nothing to aid the efficient administration of the bankruptcy pursuant to §157(b)(5). In addition, it is believed that that process is already moving forward and being accomplished.  Id. Further, if it was necessary to keep the 8 Box Hill cases in the MDL because of the administration of the bankruptcy, then the same would have been true for all of the other cases the PSC and the Court now wish to transfer back to their home states including Premier against whom more than 50 cases exist in the MDL, as well as all of the other health care provider defendants.  Accordingly, Plaintiffs' reliance on 157(b)(5) is not credible.

---

[43] Case law suggests that §157(b)(5) is used to set venue in PITWD claims **against the debtor** (*see, e.g.*, *In re Triad Grp., Inc.*, No. 13-C-1307, 2014 WL 580778, at *1 (E.D. Wis. Feb. 14, 2014) (citing *A.H. Robins Co., Inc. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986)) ("the Court can 'fix venue of personal injury tort actions against the debtor' under section 157(b)(5)"); *Marks v. Outboard Marine Corp.*, 974 F. Supp. 406, 409-10 (D. N.J. 1997) ("[b]y its plain language, this provision confers on district court judges…the authority to transfer the venue of related tort cases <u>involving the debtor</u>) (emphasis added); *In re Pan Am Corp.*, 16 F.3d 513, 516 (2nd Cir. 1994) ("[a] <u>bankrupt debtor</u> who is a defendant in a personal injury action may move under section 157(b)(5) to transfer…") (emphasis added)) <u>or</u> **against non-debtor defendants** intricately tied to the debtor via an indemnity agreement or claim (*see, e.g.*, *Berry v. Pharmacia Corp.*, 316 B.R. 883, 889 (S.D. Miss. 2004) ("[i]n the case at bar, the court is of the opinion that, given the nature of the relationship and degree of identity between the debtor Solutia and Pharmacia, the rationale for exempting personal injury and wrongful death claims against the debtor's estate from the mandatory abstention provision applies fully to the claims against Pharmacia. Under the terms of the Distribution Agreement, Pharmacia claims a right to absolute indemnity from Solutia for any judgment that might be rendered against it, so that a judgment against Pharmacia is, in practical effect, a judgment against Solutia")). At this time, Counsel is unaware of a single decision that extends the power of §157(b)(5) to tort cases **against a <u>non</u>-debtor with no contractual or common law right of indemnity against the debtor** (as is the case here).

1696491

**e.** **The Court should adhere to the obligations codified under §1404 and transfer the Box Hill cases to Maryland under the doctrine of *forum non conveniens.***

Even if the Court determines that §157(b)(5) applies to the Box Hill cases, but none of the other MDL cases the Court wishes to remand, §157(b)(5) does not discard the doctrine of *forum non conveniens*, codified at 28 USC §1404.[44] The Court should closely evaluate the convenience to the parties when establishing venue for the Box Hill cases.[45]

Under the doctrine of *forum non conveniens*, Section 1404 considers the following factors to establish the correct venue: (1) relative convenience of the potential venues to the parties; (2) relative ease of access to sources of proof; (3) availability of compulsory process for attendance of unwilling witnesses; (3) relative availability of documentary and tangible evidence; (4) public interest in the administration of justice, including trial efficiency;[46] (5) possibility of consolidation; (6) the order in which the district court obtained jurisdiction;[47] (7) any connection between the forum and the issues; (8) the law to be applied; (9) the state or public interests at stake.[48]

Establishing venue under §157(b)(5) in conjunction with §1404 turns on the totality of circumstances relating to each case.[49] Based on an independent, case based analysis of the Box Hill cases, Maryland is the appropriate venue for trial. The question is not a close one.[50] [51]

---

[44] *Stokes*, 877 F. Supp. at 1001.

[45] *See Baumgart*, 981 F.2d at 834 ("we hold that §157(b)(5) does not abrogate the doctrine of *forum non conveniens*…and that the district court was not precluded by such statute from dismissing the instant action on *forum non conveniens* grounds").

[46] *Veryfine Prods., Inc. v. Phlo Corp.*, 124 F. Supp. 2d 16, 24 (D. Mass. 2000).

[47] *Coady v. Ashcraft & Gerel*, 223 F.3d 1, 10-11 (1st Cir. 2000).

[48] *The Holmes Group, Inc. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 17 (D. Mass. 2002).

[49] *In re Dow Corning Corp.*, 778 F.3d 545, 550-51 (6th Cir. 2015) ("finally, it is clear that a decision to transfer venue under §157(b)(5) should, like a venue transfer under §1404(a), 'turn on considerations of convenience and the interest of justice'…") (additional cites omitted).

[50] Recognizing that the procedural posture is odd, the Court can (and should) either (1) remand via §1407 and allow the cases to proceed to trial in Maryland; (2) remand via §1407 and set venue via §157(b)(5) in Maryland; or (3) remand via §1407, set venue in Massachusetts under §157(b)(5), and then transfer the cases to Maryland via §1404.

### i.    Maryland is the most convenient venue for the parties and witnesses.

Convenience of the parties and witnesses is a substantial factor under a §1404 analysis. "Of the factors considered by the court, the convenience of expected witnesses is 'probably the most important factor, and the factor most frequently mentioned.'"[52] Considering this critical factor first, the court evaluates the number of potential witnesses located in the competing forums, the nature and quality of their testimony, and whether the witnesses can be compelled to testify.[53] A party seeking transfer should specify the key witnesses to be called, with a general statement of their expected testimony.[54]

**Parties.**[55]

There is no question that the most important defense witnesses with regard to the Box Hill cases will be Ritu T. Bhambhani, M.D. and her nurse and office manager, Andrew Vickers. Dr. Bhambhani is the physician who administered the contaminated steroids at the Box Hill Surgery Center. Dr. Bhambhani's entire practice with Box Hill is also located and established in Maryland. Dr. Bhambhani resides in Maryland, practices medicine in Maryland, maintains a family in Maryland, and has no personal ties to Massachusetts.  Mr. Vickers shares the same ties to Maryland and the lack of any connections to Massachusetts.  He was the individual who ordered the MPA for Box Hill.

---

All lead to the most common sense result – the Box Hill cases go to Maryland after the conclusion of common discovery for trial.

[51] The Court has not done an individualized §1404 analysis for the Box Hill cases. The Order at Dkt. 2309 generally previewed the Court's ruling under §157(b)(5) for a broad group of "candidate cases" from multiple states. The venue determination should be individualized to the Box Hill cases.

[52] *Boateng v. Gen. Dynamics Corp.*, 460 F. Supp. 2d 270, 275 (D. Mass. 2006) (additional cites omitted).

[53] *Id.*

[54] *Id.*

[55] At Dkt. 2309, when analyzing the appropriate venue, the Court pointed to the fact that a plurality of lawyers are from Massachusetts. "No case articulates that the convenience of counsel is a consideration in deciding a motion to transfer pursuant to § 1404(a). Whether this court is more convenient to the plaintiff's counsel is, accordingly, of no consequence." *Princess House, Inc. v. Lindsey*, 136 F.R.D. 16, 18 (D. Mass. 1991) (additional cites omitted). Regardless, the lawyers in the Box Hill cases are in Maryland, not Massachusetts. If that is a proper consideration, it weighs toward Maryland, not Massachusetts.

Furthermore, to the best of our knowledge, all of the MDL Plaintiffs reside in Maryland and elected to bring their initial lawsuits in the state of Maryland, not Massachusetts. Certainly, none of the patient plaintiffs reside in Massachusetts.

**Expert Witnesses.**

Expert witnesses are at the sole discretion of the parties. As such, experts are fungible based on locale and a party's desire to engage a witness from a further distance for greater expense. Unlike the indispensable parties and fact witness that must appear in the established venue, experts are determined by prerogative to engage more or less expense.

Nonetheless, Maryland is a more convenient venue for expert witnesses because it is a familiar area to the parties and arrangements will be more seamless and efficient. Moreover, the Box Hill Defendants will utilize several experts from the state of Maryland for testimony at trial and none from Massachusetts.

**NECC Witnesses.**

The Court blocked the discovery requests for depositions of the NECC witnesses, pending completion of the initial criminal trial.[56] In the interim, this ruling sets the tone for the NECC witnesses and will result in the Box Hill Defendants relying on documentary NECC evidence. Unless the Court reverses its course, proof of NECC's actions will be almost entirely documentary.

**Other Fact Witnesses.**

Because the Box Hill plaintiffs all reside in Maryland, their treating providers and family members will largely be located in Maryland or in the immediate vicinity. These witnesses will be used by the Plaintiffs and the Box Hill Defendants throughout trial to address causation and damages. Maryland is the most convenient venue for them to present for trial.  As it relates to

---

[56] Dkt. 2123, 2586.

1696491

treating physicians, those witnesses, who did not ask to be involved in this litigation, will be forced to close their practices and deny care to patients for longer periods in order to travel to and from Massachusetts to testify.  They would also likely demand the payment of expenses for travel and lodging associated with the need to testify in Massachusetts, which will cause the parties to incur great expense.

Based on the totality of the circumstances, Maryland is the proper venue. The parties are located in Maryland, the Plaintiffs originally selected Maryland as the venue, and the fact witness are in Maryland, and the experts more proximate to Maryland. There is not a credible argument that can be raised for the most important factor[57] that supports venue in Massachusetts. Convenience to the parties and witnesses is paramount and merits venue in Maryland.

> ### ii.   *Maryland is the most convenient venue based on all other pertinent factors.*

### Sources of Proof.

The relative ease of access to sources of proof is at the foundation of the *forum non conveniens* argument. The live witnesses that are relevant to this case are virtually all in Maryland, which include, but are not limited to, prior medical care providers of each and every Plaintiff, Dr. Bhambhani and Box Hill, the Plaintiffs themselves and their families, and the medical facilities storing medical records pertinent to the Box Hill cases. Moreover, testimony not yet taken and documentary evidence not yet gathered will be located in Maryland.

---

[57] Generally, the plaintiff's choice of forum is given great weight. *Momenta v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514, 522 (D. Mass. 2012). Here, every Plaintiff initially filed in Maryland.

On the other hand, the only evidence in Massachusetts is the documentary evidence of NECC and its affiliates. This evidence is available in an online repository[58], which can be easily accessed from Maryland.

**Availability of Compulsory Process.**

As discussed herein, non-party treating health care providers and non-party fact witnesses will be substantially burdened by trial regardless of the venue. It is highly likely that both sides will encounter uncooperative witnesses. However, if the Box Hill cases are set in Maryland rather than Massachusetts, it is more likely that non-party witnesses will cooperate without Court intervention.

In the event that non-party witnesses refuse to cooperate, the parties will be forced to seek Court orders to compel testimony. The mechanism to compel Maryland based witnesses to testify in a Maryland Court is far more efficient and effective than the alternative. Moreover, additional motions to compel place an unnecessary burden and expense on the Court and the parties. Such an inconvenience can be mitigated by establishing venue in Maryland.

**Relative availability of documentary and tangible evidence.** [59]

"[S]ince most records and documents now can be transported easily or exist in miniaturized or electronic form…their location is entitled to little weight."[60] This factor is net neutral. If it is considered at all, it weighs toward Maryland because the treating provider medical records are located in Maryland. During the subpoena process, having a Maryland Court to address issues of Maryland law as it relates to discovery of relevant medical records will be a

---

[58] Dkt. 2928 ("[w]hereas, discovery concerning NECC and the national defendants has concluded and those documents and materials obtained in discovery are available in a central online repository").

[59] At Dkt. 2309, when analyzing the appropriate venue, the Court stated that "the court expects that nearly all the evidence presented to the jury will be documentary." This is simply not true. The most important testimony in the case will likely be the testimony of Dr. Bhambhani about the decision to purchase from NECC. Also, the plaintiffs' proof of injury will be by live witness. Expert witness testimony, also live, will be critical. The only documentary evidence will be of NECC's actions, which will largely be explained through live expert witnesses.

[60] *Boateng*, 460 F. Supp. 2d at 276 (citing 15 Wright & Miller, FED. PRAC. & PROC., §3853).

1696491

more efficient and expedient process. If disputes arise related to collection of medical records or policies, Maryland will also be more convenient because it will not require additional travel to Massachusetts for hearings.

**Public interest in the administration of justice, including trial efficiency.**

Although, the Court's familiarity with the docket weighs toward Massachusetts, the bulk of the docket entries will have no bearing on the trial of the first Box Hill lawsuit. While this Court is likely much more familiar with the procedural issues of the MDL, the multitude of cases from other states (which are being transferred to their respective home states in substantial part), and the relationship of the bankruptcy with the relevant tort cases, none of these issues will impact the trial of the Box Hill cases.[61] Furthermore, the Maryland court will be more familiar with issues of Maryland law material to pretrial preparations and trial.

If familiarity with the case were a dispositive finding, no case would transfer.  In fact, all MDL cases would stay with the transferee MDL court.   The fact that this Court is familiar with the complicated legal workup of this case should not preclude transfer to a forum clearly more convenient to the parties and witnesses. [62]

**Impact on the Court and the jurors of Massachusetts.**

Trial in Massachusetts also places an unnecessary burden on the court in Massachusetts and potential jurors from Massachusetts. The liability question in the Box Hill cases will relate to Dr. Bhambhani and Box Hill, a healthcare provider in Maryland. Furthermore, the damages question will relate to Maryland residents. Although the actions of NECC are significant to the liability picture, NECC settled its civil obligations, and its employees are being handled

---

[61] Although unlikely, if absolutely necessary, there is nothing barring the Massachusetts court and the Maryland court communicating about the status.
[62] Notably, §1404 says "[f]or the convenience of *parties and witnesses*," not the lawyers or courts. The convenience of the parties and witnesses should be the most important factor.

1696491

criminally already. NECC itself is dissolved and not a party to this civil action. The only remaining parties are in Maryland, and as such, the interests of the Defendants and Plaintiffs should rest with a jury of their peers in Maryland.

A jury pool from Maryland will also have fewer preconceived notions regarding NECC and the actions of NECC employees and agents. Potential jurors in Massachusetts are more likely to have encountered NECC in the news, among their peers and colleagues, in their daily lives traveling from work or school, and perhaps witnessing the criminal proceedings unfold in the local media. Potential Maryland jurors are far removed (400 plus miles) from the daily minutia of the NECC criminal proceedings and bankruptcy. As such, potential jurors in Maryland will be less influenced by the collateral issues relating to NECC. Establishing venue in Maryland will aid in efficiently seating a neutral jury and without having to use an even larger jury pool to find neutral jurors as would be the case in Massachusetts. Maryland will also obviate the unnecessary burden on a Massachusetts court and a Massachusetts jury addressing the question of liability among parties located entirely in Maryland. Such a factor favors venue in Maryland.

**<u>Possibility of Consolidation in Maryland.</u>**

As of the filing of this Motion, Plaintiffs in the Box Hill cases have asked the Maryland court to consolidate the Maryland cases, just as they would in Massachusetts. This factor favors Maryland because consolidation, efficiency, and convenience is available and desired in Maryland. There is no need to have separate consolidated actions both involving only the Box Hill Defendants, but in two different forums, despite identical claims. It is clear why counsel for the Box Hill Plaintiffs want the cases separated. The MDL cases appear to have cognizable and more severe alleged injuries while the State Box Hill Plaintiffs are largely claiming fear-type

18

1696491

injuries.  The amount of money a Plaintiff and his or her counsel can earn from a case should not trump efficiency and judicial economy.

**The order in which the district court obtained jurisdiction.**

The federal court only has jurisdiction because the cases are arguably "related to" NECC's bankruptcy. Otherwise, these cases would proceed in state court in Maryland. This factor favors Maryland.

**There is no longer a logical nexus between Massachusetts and the issues.**

Due to the resolution of the NECC bankruptcy, Massachusetts has only a collateral connection to the issues in the Box Hill cases. The conduct at issue – the decision to purchase product from NECC – occurred in Maryland. The primary issue to be decided – whether Box Hill and Dr. Bhambhani negligently purchased from NECC – is most connected to Maryland. The jury will be asked to determine whether a Maryland physician breached standards of care in evaluating that conduct. The Plaintiffs had previously been treated in Maryland and sought subsequent treatment for their alleged injuries in Maryland.

The issues remaining in the Box Hill cases for trial have near universal connection to Maryland. The only connection to Massachusetts is the jury's consideration of liability attributed to non-parties. Those non-parties are not required to attend trial or defend themselves, nor are they subject to a judgment. The jury simply assesses the facts as they relate to non-parties and makes a determination under Maryland law.

This factor heavily favors Maryland.

**Maryland law will be applied by Maryland courts.**

Maryland law will govern all issues in the Box Hill cases. The Maryland court will be more familiar with Maryland law as it relates to pretrial and trial disputes. This will help to

1696491

expedite the cases through the Maryland court systems. It is also likely that many of the pretrial and trial disputes will be familiar to the Maryland courts, which will alleviate the burden of reinventing the wheel for those issues well established in Maryland.

If there is an unresolved question of Maryland law for the federal court to consider, only the Maryland court has the power to refer it to the Maryland Court of Appeals for guidance. This factor heavily favors Maryland.

**The state of Maryland and its public has an interest in the Box Hill cases.**

The injured parties reside in Maryland. Similarly, the health care providers reside, but also practice medicine in Maryland. Maryland has the only interest in determining whether Maryland health care providers breached the standard of care, causing injury to Maryland citizens.[63] The public's interest in its right to hear the facts of a civil complaint, assess liability, and make a determination rests at the core of a personal injury claim. The bankruptcy of a multimillion dollar corporation subject to criminal proceeding in Massachusetts should not revoke the rights of Marylanders to review what is going on in their figurative backyard.   Again, the bankruptcy issues should not have any bearing, since they did not prevent many of the other MDL cases from being remanded.

Despite the fact that Massachusetts has an interest in dissolving NECC and administering its estate, that interest is separate from the Box Hill tort lawsuits. Massachusetts and its citizens have no interest in the outcome of the Box Hill cases because there will be no judgment rendered for or against a Massachusetts resident or entity. In fact, upon information and belief, no Massachusetts residents received or were affected by the contaminated steroids compounded by NECC.  Maintaining venue in Massachusetts is fundamentally unfair to both parties.

---

[63] Dr. Bhambhani is a licensed health care provider in Maryland and subject to Maryland's licensing boards. Massachusetts has no interest in regulating her practice.

1696491

Close consideration of the Box Hill cases, based on the factors outlined herein, illustrates that the proper venue is Maryland under §157(b)(5)[64] or §1404.[65]

---

[64] *See, e.g., In re. Collins & Aikman Corp.*, 2009 WL 4646097, at *2 ("[f]irst and foremost, it is evident that Claimant's interests would best be served by allowing him to pursue his ADA claim in the Illinois district court, where this claim accrued at Claimant's place of employment in the Central District of Illinois, he and most or all of his witnesses are located in that district, he is represented by Illinois counsel, and it does not appear that any of the fact witnesses are Michigan residents. Accordingly, if the claim were tried in this Court, Claimant would be unable to compel the attendance of unwilling witnesses, and he would incur considerable expense and other burdens in securing the attendance of willing witnesses. Likewise, Claimant's own participation would be more costly and burdensome if his claim were to be litigated before this Court, where he would have to retain local counsel and travel to Michigan for trial and perhaps some pretrial proceedings….Finally, considerations of efficient administration of the bankruptcy estate do not offset these factors in favor of the Central District of Illinois"); *In re Nw. Corp.*, No. 03-12872 CGC, 2004 WL 1044421, at *2 (D. Del. Apr. 29, 2004) ("[a]s cited above, Section 157(b)(5) permits a district court to order personal injury and wrongful death claims to be tried in the district where the bankruptcy action is proceeding or in the district where the claim arose. In the Court's view, the circumstances in this case require the Court to exercise its discretion and order a transfer to Montana. The events at the heart of this action all occurred in Montana. Also, Plaintiffs have indicated their intention to consolidate the instant action with the pending Montana state court action if the instant action is transferred to the Montana District Court. Further, the claims in the instant action involve Montana tort principles and all of the witnesses reside in that state. Based on these facts, and pursuant to the authority provided by Section 157(b)(5), the Court is persuaded that principles of judicial economy and the convenience of the parties require the Court to exercise its discretion and transfer this action to the Montana District Court"); *Broughton v. Celotex Corp.*, 183 B.R. 945, 948 (M.D. Fla. 1995) ("[t]he case may be tried either in the district court in which the bankruptcy case is pending, or in the court in which the claim arose. Given that all the factual issues in the case center in Jacksonville, the plaintiff lives in Jacksonville, and the defendant conducts business there, it would seem appropriate—as between the Tampa and Jacksonville Divisions—to try the case in Jacksonville"); *Stokes*, 877 F. Supp. at 1001 ("[t]ransferring this case to the Northern District of Florida will not create an unadministrable situation for the estate of SHPLP. Second, the plaintiffs assert that their witnesses will include members of the Pensacola Police Department and former employees of the Days Inn, all of whom are presumed to be Florida residents. Furthermore, the Court notes that (1) plaintiffs residence is closer to the Florida jurisdiction; (2) the sources of proof are in Florida; (3) compulsory process for the attendance of unwilling witnesses may not be available to plaintiffs if the trial is held in Charlotte; and, (4) the costs to plaintiffs of having willing witnesses travel from Pensacola, Florida to Charlotte, North Carolina would be unnecessarily expensive. Lastly…the Florida District Court is likely more familiar with Florida state law and, for all the above reasons, seems more properly suited to try this case").

[65] *See, e.g., Medgyesy v. Medgyesy*, No. 12-10644-RWZ, 2012 WL 5921696, at *1 (D. Mass. Nov. 26, 2012) ("[f]irst, Illinois is much more closely connected to this case than Massachusetts. The trust funds at issue were established in Chicago and administered there for many years. The commingling of the trust funds (leading to the present confusion over their ownership) took place in Chicago. The allegedly excessive distributions were made and received in Chicago where all of the defendants reside. Much of the money presently at issue remains in Illinois bank accounts. Previous legal proceedings regarding these trusts have taken place in the Illinois state courts. By contrast, the only connections between Massachusetts and this case are that the plaintiff resides in Massachusetts and some of the trust funds have been transferred to a Massachusetts account. Second, the convenience of the parties and witnesses favors Illinois. Although the plaintiff lives in Massachusetts, all of the defendants live in Illinois. Furthermore, as the underlying events took place in Illinois, it appears that most of the relevant witnesses and documents will be more readily available there. Third, Illinois law will presumably apply in this case, as all of the underlying events took place in Illinois. Fourth, given the connections to each forum discussed above, Illinois has a greater interest in this case than Massachusetts"); *In re Saltire Indus., Inc.*, No. 06 CIV 4451 AKH, 2007 WL 1815450, at *3 (S.D. N.Y. June 22, 2007) ("[t]he issue now becomes whether the Southern District of New York, or the Middle District of Tennessee, is the more proper forum for consolidation. This Court is inconvenient to the real parties in interest and the witnesses, and particularly to the City and County of Dickson, Tennessee, co-defendants with Saltire. The Middle District of Tennessee is convenient to all except the Liquidating Trustee. The

3.      **Response to the PSC's Presumed Opposition Arguments to Transfer or Remand.**

   a.      **The Court has not analyzed or ruled on the proper time to remand the Box Hill cases or on the proper venue.**

      i.      **The PSC confuses jurisdiction and venue; the Court has not analyzed venue specific to the Box Hill cases.**

It is presumed that the PSC will oppose transfer as they have against other healthcare provider defendants in the past such as with the St. Thomas Entities, STOPNC, and Specialty Surgery Center.   The PSC continually ignores a critical step in the process of the Court establishing proper venue by stating: "The Court's jurisdiction under § 157(b)(5) is settled. The Court has previously addressed this issue…establishing its jurisdiction under § 157(b)(5)."[66] The PSC improperly assumes Section 157(b)(5) is a venue statute, not a jurisdiction-conferring statute.[67] Venue and jurisdiction are separate principles that yield different results.

> Subject-matter jurisdiction defines a court's "power to adjudicate," while venue specifies "where judicial authority may be exercised" based on "convenience" to the "litigants." The former asks "whether" – whether "the Legislature [has] empowered the court to hear cases of a certain genre?" The latter asks "where" – where should certain kinds of cases proceed?[68]

> Jurisdiction establishes the power to adjudicate; venue calls on the court to determine the most convenient place for the litigants to litigate.[69] "[S]imply because a court has jurisdiction over a case does not mean that it is the appropriate venue for the case to be heard."[70]

The Court found at Dkt. 2309, after establishing that it had jurisdiction over the cases "related to" the bankruptcy, that it "will not set venue for the bellwether cases before the cases

---

circumstances clearly favor the Middle District of Tennessee, the district comprehending Dickson County, where the claim arose, where the land at issue sits, and where much of the evidence remains").

[66] Dkt. 2969, p. 1.

[67] *Stern v. Marshall*, 131 S.Ct. 2594, 2606-07 (2011).

[68] *Brentwood at Hobart v. NLRB*, 675 F.3d 999, 1002 (6th Cir. 2012) (internal cites omitted).

[69] *Still v. Rossville Crushed Stone Co.*, 370 F.2d 324, 325 (6th Cir. 1966).

[70] *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 432 (Bank. N.D. Ala. 2000).

1696491

are identified."[71] Dkt. 2309 presumably rules on subject matter jurisdiction over the Box Hill cases; however, it did not establish venue for the Box Hill cases. The PSC incorrectly combines venue with jurisdiction despite their distinct differences.

> **b.     Despite the PSC assumption, the order at Dkt. 2309 is not the final step in the analysis because the Court has yet to perform an individualized analysis with regard to the Box Hill cases.**

The PSC asserts that the argument is closed and venue in Massachusetts is a foregone conclusion.  However, Dkt. 2309 cannot foreclose the issue of venue because the otherwise required individualized venue analysis for the Box Hill cases has not occurred.[72] The Court must conduct the required case-specific factual inquiry for the Box Hill cases as fully explored herein. Based on the rulings of the Court thus far, neither Dkt. 2309, nor any other ruling establishes a finding of venue in Massachusetts for the Box Hill cases based on an individualized analysis.

Further, DKT. 2309 notes that the MDL Court will transfer the MDL cases back to the transferor courts pursuant to its obligation, and then entertain a motion by Plaintiffs to bring the cases back to this court, pursuant to a §157(b)(5) argument.  However, it is hard to imagine a compelling §157(b)(5) argument that trial in the MDL is absolutely necessary due to the bankruptcy given that the PSC and local Plaintiff's counsel in most of the other MDL cases have determined that transfer and trials in the transfer or state would not be problematic despite the bankruptcy.  The same reasoning should apply to the Box Hill cases.

> **i.     A.H. Robins and In re Dow Corning do not apply to the scenario before the Court in the Box Hill cases.**

---

[71] Dkt. 2309, p. 22.

[72] *See* Dkt. 2969, p. 1-2 ("The Specialty Surgery Center Defendants have already requested these cases be tried in Tennessee, and the Court has already rejected these arguments….Most relevant to the present motion is the Court's 26-page October 7, 2015 order (the "Venue Order") which provided key background on this litigation, thoroughly examined the best venue for trying cases, and ultimately concluded that trials in Massachusetts are warranted").

1696491

At Dkt. 2309, the Court cited two "similar" cases for support when invoking §157(b)(5). Neither, however, is similar to the Box Hill cases. In fact, when considered in the context of the true intent of §157(b)(5) – to "centralize the administration of the bankruptcy estate"[73] – neither is instructive for the Box Hill cases.

*A.H. Robins* involved 5,000 product liability cases related to the Dalkon Shield intrauterine device.[74] Thousands more were expected.[75] The manufacturer bankrupted and reorganized.[76] The court considered the propriety of centralizing all tort claims against the debtor in one place under §157(b)(5).[77]

The *A.H. Robins* court endorsed centralized venue, citing the following aims of §157(b)(5): (1) to help achieve a fair reorganization of the debtor; (2) to avoid consuming "the energies of the debtor's executives and officers…and the resources of the debtor [with] the expenses of litigating [and] the trial of thousands of personal injury suits in courts throughout the land spread over an interminable period of time"; and (3) to "harmonize" the interests of all claimants by considering claims together.[78]

As stated previously, considerations with regard to the NECC bankruptcy no longer apply to the Box Hill cases for several reasons: (1) NECC has not been reorganized; the plan is approved and bar date for claims passed. Thus, centralization will not assist reorganization. (2) The Court has denied the opportunity to depose an NECC representative,[79] and document discovery of NECC has closed[80]. NECC is not a defendant in any Box Hill lawsuit and will not participate at all in Maryland trials of the Box Hill cases. NECC will expend zero resources for

---

[73] *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 1011 (4th Cir. 1986) (additional cites omitted).
[74] *Id.* at 1012.
[75] *Id.*
[76] *Id.* at 996.
[77] *Id.* at 1011-16.
[78] *Id.*
[79] Dkt. 2123.
[80] *See* Dkt. 2075, p. 3, n. 3.

the Maryland trials. (3) Keeping the Box Hill cases in Massachusetts has no impact on the Tort

Trust allocation process already underway.  Further, the court had no issue with suggesting

remand of most of the remaining MDL cases, despite the bankruptcy issues.

The Box Hill cases – eight total – are a far cry from the thousands and thousands that, if

litigated in jurisdictions across the country, would have consumed the assets of the reorganizing

debtor in *A.H. Robins*. The situation in *A.H. Robins* does not compare favorably to the situation

here, particularly in the number of claims or – most importantly given §157(b)(5)'s true purpose

– in the positive impact of centralization on the debtor. There is no meaningful impact of

centralization on the debtor here, far from *A.H. Robins*, where centralization significantly helped

reorganization.

Reliance on *In re Dow Corning* also contravenes logic when applied to the Box Hill

cases. The court there (like in *A.H. Robins*) made a venue determination to effectuate

§157(b)(5)'s purpose – to centralize the administration of the estate.[81] Specifically, the Court

centralized venue to increase the odds of creating a reasonable plan of reorganization, to help

rehab the debtor, and to assure fair resolution of claims against the debtor.[82]

The *In re Dow Corning* court wrote: "The question for our consideration is whether

Section 157(b)(5) allows for the transfer of personal injury and wrongful death claims pending

against nondebtor defendants who have been sued with a debtor under claims of joint and several

liability."[83] The court found that §157(b)(5) "should be read to allow a district court to fix venue

for cases pending against nondebtor defendants which are 'related to' a debtor's bankruptcy

proceedings[.]"[84]

---

[81] *In re Dow Corning*, 86 F.3d 482, 496 (6th Cir. 1996).
[82] *Id.*
[83] *Id.*
[84] *Id.* at 497.

25

However, it is important to note that the *In re Dow Corning* court did so (1) in response to a question about claims against nondebtors for joint and several liability, with the debtor a co-defendant, and (2) in order to further the goal of the section, to "centraliz[e] the administration of the bankruptcy estate."[85] [86]

Unlike the hundreds of thousands of breast implant cases against the debtor and its affiliates in *In re Dow Corning,* Box Hill has no common thread to this logic. The Box Hill cases are also distinguishable because they do not name the debtor. Additionally, they do not require centralization to help administer the the bankruptcy plan of a (defunct and unrelated) entity. *In re Dow Corning* does not justify the use of §157(b)(5) in the very different Box Hill cases.

There are two core points to draw from application of *A.H. Robins* and *In re Dow Corning* to the Box Hill cases: First, neither fits the circumstance of the Box Hill cases, primarily because trial of the Box Hill cases in Maryland will not threaten to consume the assets and resources of the debtor. In fact, trial of the Box Hill cases in Maryland will consume none of the assets of the debtor; the debtor will not even participate in the Box Hill cases.[87] Second, trying the cases in Maryland instead of Massachusetts in no way improves the reorganization or rehabilitation of NECC. There is no reorganization. Trying the Box Hill cases in Massachusetts does not positively impact the execution of the bankruptcy plan at all, which was the decisive point behind centralization in *A.H. Robins* and *In re Dow Corning*.

---

[85] *Id.*

[86] Of note, it also did not do an abstention analysis for the claims against the nondebtors. *Id.* at 497-98.

[87] The notion that trying the cases in Massachusetts rather than Maryland is somehow easier on the debtor is an illusion. Trial in either location requires no debtor participation. Discovery of the debtor is over. In fact, trying the case in Maryland likely imposes less cost on the debtor than in Massachusetts. First, if the case is tried in Massachusetts, the debtor will have to file (through the post-confirmation officer) a motion to set venue in Massachusetts. That will require briefing and argument, a cost to the estate. Then, in Massachusetts, the debtor (and its officers and employees) will be subject to trial subpoenas. If the case is tried in Maryland, the proof of the debtor's acts will be documentary, and the debtor and its officers and employees remain outside the court's subpoena power, incurring no cost. In neither case will the debtor have a judgment against it.

1696491

### ii. The reasons for trial in Massachusetts mentioned at Dkt. 2309 do not apply to the Box Hill cases.

At Dkt. 2309, the Court cited three general reasons why venue in Massachusetts made sense:

1. Much of the evidence in this MDL – which is largely documentary – is in Massachusetts. Where it is not, the witnesses can testify by video or video-link.[88] [89]

2. The Court is familiar with the docket.[90]

3. A plurality of the lawyers in the MDL are from Massachusetts.[91]

None of these justifies setting venue for the Box Hill cases in Massachusetts.

### a. A practical analysis of the venue reveals that Maryland is more convenient based on witness location.

As argued herein, there is a substantial distinction between the location of the documentary evidence and the live witnesses, which the Court makes fairly distinguishes at Dkt. 2309. When applied to the Box Hill cases and the factors previously discussed, the Court reaches the wrong conclusion because venue in Massachusetts destroys the concept of efficiency. Documentary evidence in the Box Hill cases is largely related to NECC is housed online and medical records will almost entire come from Maryland. The fact that some remaining original documents may be located in Massachusetts is inconsequential to the overall analysis.

Most importantly, live witnesses testimony in the Box Hill cases is located largely in Maryland. Massachusetts witnesses deposed by defendants has already been captured by video. A majority of the testimony that remains is entirely in Maryland, which weighs not toward trial in Massachusetts, but toward trial in Maryland. Finally, the concept that documents "reside" in

---

[88] Dkt. 2309, p. 23.
[89] Common sense must prevail here. No reasonable court or counsel would say that a trial consisting of evidence presented largely by documents and videotaped testimony, presented to a jury in a locale far away from the nexus of facts, is a more effective search for the truth than trying the case with live witnesses to a local jury with a true interest in the case.
[90] Dkt. 2309, p. 23.
[91] Dkt. 2309, p. 23-24.

1696491

Massachusetts is a false premise. As the Court is well aware, documents (such as the pleadings in this case) can be easily transfer across hundreds of miles whereas live witnesses cannot. As such, the location of documentary evidence does not justify requiring the parties and dozens of fact witnesses and experts to travel from Maryland to Massachusetts for trial.

> **b.      Familiarity with mostly irrelevant docket entries has no bearing on a Maryland court's ability to administer timely adjudication.**

The Box Hill Defendants concede that the Court is familiar with the MDL. However, the vast majority of the docket entries have little significance to the Box Hill trials themselves. Rather, the MDL docket entries address the purpose of MDL, the NECC bankruptcy.[92] It is unlikely that a Maryland court will need or want to review the docket entries because they do not pertain to the pretrial and trial proceedings with regard to liability. The NECC bankruptcy is not at issue in state court and will not influence a state court judge. For the small number of docket entries that relate to the Box Hill cases, the parties can convey those to the Maryland court and assist in weeding out the extraneous noise.

The PSC argues that the Court's familiarity with the MDL warranted continuing in Massachusetts because the Court moved the STOPNC cases to trial "faster than in any other jurisdiction" and a state court judge would have to develop a bellwether protocol from scratch.[93]

However, the Box Hill Defendants would strongly consider adopting the same or similar scheduling order to that of the MDL if the PSC consented to transfer. The Box Hill Defendants do not wish to prolong the litigation process, but argue in support of the original intent of the MDL and the spirit of *forums non conveniens.* Additionally, there is no legitimate showing that a Maryland court cannot try these cases in a reasonable timeframe and the Box Hill Defendants

---

[92] The MDL structure is set up such that cases are returned after pretrial discovery for trial, anyway. In *all* MDL cases that return to the home district for trial, the MDL court will be more familiar with the docket.

[93] Dkt. 2969, p. 4-5.

1696491

would work expeditiously with the plaintiffs to establish prompt timelines.  In fact, two Maryland courts are addressing nearly ten times as many cases or patient plaintiffs than currently exists in the MDL.

Lastly, PSC's comment that a state court would have to create a bellwether protocol from scratch is wrong. Why any state court could not adopt the bellwether process already set forth is not explained by the PSC because there is no logical explanation. The parties mostly negotiated the bellwether protocol and would likely agree on the protocol again.

### c.      Counsel for the Maryland cases reside in Maryland.

In Dkt. 2309, the Court notes that a plurality of the lawyers are stationed in Massachusetts, which is entirely inaccurate with regard to the Box Hill cases. The Plaintiffs' lawyers actively litigating the Box Hill cases are located in Maryland. Furthermore, those lawyers have expressed the inconvenience of travel to Massachusetts for events as simple as status conferences. Extrapolating such logic out to trial, the inconvenience is magnified.  All of the defense lawyers are from Maryland.  There are no Massachusetts lawyers involved in depositions or any remaining active discovery.

The lawyers who will try the Box Hill cases are virtually all from Maryland. With all due respect to this honorable Court, the statement that the plurality of lawyers are from Massachusetts does not apply to the Box Hill cases.[94]

### d.      A case specific analysis with respect to venue supports the cases being returned to Maryland at the conclusion of common discovery.

---

[94] Setting this aside, the Court should consider the convenience to the litigants and witnesses, not the lawyers. Interestingly, plaintiffs' lawyers in this MDL advocate that Boston is the most convenient forum to try the case; yet, repeatedly, the Court entertains requests to appear by telephone from the same lawyers because of the travel burden. *Compare* Dkt. 2935, Hr'g Tr. 44-47 (6/22/16 status conference), *with* Dkts. 2970, 2972. And, the PSC, now advocating for the convenience of a multi-week trial in Boston, was the group that first advocated for the option of calling into status conferences by phone to ease the travel burden. Dkt. 970.

1696491

Respectfully, the general analysis done at Dkt. 2309 does not supplant the required case-specific Box Hill venue analysis. It most certainly does not demonstrate that venue in Massachusetts is proper for the Box Hill cases. The Dkt. 2309 preliminary analysis, stretched to cover the Box Hill cases, actually points the opposite direction. Adding in the full analysis only serves to drive the point home.  Moreover, Dkt. 2309 seems to suggest that the Court would transfer the Box Hill cases back to Maryland after common issue discovery and put the onus on Plaintiffs to demonstrate a valid reason to try the cases in Massachusetts.  Further delay in establishing such a plan only causes more confusion.

**4.     Conclusion**

The Court should not be forced to search for a thread connecting the Box Hill cases to the NECC bankruptcy, especially since the bankruptcy did not matter when transferring virtually every other MDL case.  The MDL accomplished its goal of streamlining the NECC bankruptcy, but the Massachusetts Court must now let go. Ignoring the overwhelming weight of evidence favoring trial in Maryland over trial in Massachusetts creates a substantial burden when the MDL is intended to create judicial efficiency. Accordingly, the Box Hill Defendants respectfully request that this Honorable Court perform a case-specific, individualized §157(b)(5)/§1404 analysis. Based on that analysis and the factors cited herein, the Court must reach one logical conclusion: Trial of the Box Hill cases in Maryland is the most convenient, efficient, practical, and fair approach for the litigants.

Respectfully submitted,

/s/ Gregory K. Kirby
Catherine W. Steiner
Gregory K. Kirby
Pessin Katz Law, P.A.

30

1696491

901 Dulaney Valley Road, Suite 500
Towson, Maryland  21204
(410) 938-8800
*Attorneys for Box Hill Surgery Center, L.L.C.,*
*Ritu T. Bhambhani, M.D., and Ritu T.*
*Bhambhani, M.D., L.L.C.*

## CERTIFICATE OF SERVICE

I, Gregory K. Kirby, hereby certify that a copy of the foregoing, filed through the CM/ECF system, will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF), including the attorneys representing the plaintiffs in the individual cases, and will be sent to these parties by operation of the CM/ECF system and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 22nd day of August, 2016.

Dated: August 22, 2016

*/s/* Gregory K. Kirby
Catherine W. Steiner
Gregory K. Kirby
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland  21204
(410) 938-8800
*Attorneys for Box Hill Surgery Center, L.L.C.,*
*Ritu T. Bhambhani, M.D., and Ritu T.*
*Bhambhani, M.D., L.L.C.*

1696491