# COHEN / PLACITELLA / ROTH PC
## ATTORNEYS AT LAW

MICHAEL COREN
mcoren@cprlaw.com

August 24, 2016

**Via ECF**
Honorable Rya W. Zobel
United States District Court Judge
John Joseph Moakley U.S. Courthouse
1 Courthouse Way, Suite 2300
Boston, Massachusetts 02210

**Re: In Re: New England Compounding Pharmacy, Inc. Products Liability Litigation
Case No. 1:13-md-02419-RWZ. (*This letter applies to the Box Hill Surgery Center Cases only*.)**

*Dkt. No. 3056 – Box Hill Surgery Center, LLC's. Motion to Remand or Transfer of Box Hill Cases to Maryland and to Establish Venue in Maryland Via Section 157(B)(5) or Section 1404(A)*

Dear Judge Zobel:

The undersigned are respective counsel to the eight New England Compounding Pharmacy, Inc., ("NECC") MDL Plaintiffs with pending claims before the Court against Box Hill Surgery Center, LLC and its principal, Dr. Ritu T. Bhambhani, as well as Ritu T. Bhambhani, M.D., LLC (collectively referred to as "Box Hill"). Plaintiffs contend Box Hill is liable to them under both Massachusetts and Maryland law for their respective injuries (and in four cases, deaths) resulting from the administration of NECC's fungus contaminated preservative free methyl-prednisolone acetate (MPA-PF) drug administered to them or to their decedent at Box Hill's ambulatory surgery facility in or about the Summer of 2012. Among their principal claims is that Box Hill was materially involved and complicit in NECC's illegal dispensing the fungal contaminated MPA-PF by submitting prior patients' names on prescription forms to obtain office supplies of prescription medication which, under both Massachusetts' and Maryland's pharmacy laws, could be dispensed by NECC as a pharmacy only pursuant to patient-specific prescriptions.

We write to join with the Plaintiffs' Steering Committee in opposing Box Hill's August 22, 2016 Motion for Suggestion of Remand or Transfer of Box Hill Cases to Maryland and to Establish Venue in Maryland Via §157(B)(5) or §1404(A) (Dkt. 3056), and we request that this motion be summarily denied and dismissed on grounds that the transfer/venue issues it raises have already been decided by the Court in connection with motions in similar Tennessee clinic

defendant cases. See Dkt. Nos. 2309 and 2969. On the two occasions this Court has taken up similar motions making essentially the same arguments that Box Hill makes, the Court has ruled that venue was properly in this Court. Those cases involved, as does the Box Hill cases, clinics who were charged with being complicit in NECC's tortious and illegal dispensing of compounded prescription drugs from its Framingham, Massachusetts facility through false and fabricated prescriptions. *Id*. [1]

We additionally write presently to briefly respond to Box Hill's claim that Massachusetts has no meaningful connection or interest in their cases. To the contrary it does, and indeed an overriding one.

From years spent presiding over the NECC MDL, the Court is well aware Framingham Massachusetts, NECC's place of business and pharmacy location, is the epicenter of the 2012 fungal infection outbreak; one of the largest health-care associated infection outbreaks ever reported to date in the United States. See, Smith, Rachel M., et al., *Fungal Infections Associated with Contaminated Methylprednisolone Injections,* N. ENGL. J. MED. 2013; 369:1598 at 1605 (Oct. 24, 2013).[2] It is the state in which the NECC MPA vials were adulterated with fungal pathogens and were misbranded with false patient labels accompanying them when dispensed. (See note 1.) Massachusetts is the state in which the NECC compounding pharmacy was regulated and inspected by the Massachusetts Board of Pharmacy. It is the state in which NECC's bankruptcy plan and victims trust are being administered for the benefit of the MPA infection victims (who are NECC's main creditors), a cohort who are spread out over 23 states. Massachusetts is also the state in which other key third-party actors material to the outbreak's happening reside. While in turn it is true —

---

[1] Mass. Gen. Laws ch. 94C §§ 17, 19, 21 and 22.

The videotaped deposition testimony of Box Hill's Nursing Director/Administrator, Andrew Vicker, R.N., establishes Box Hill violated these statutes. He testified Box Hill routinely used the names of past patients treated at Box Hill on NECC Prescription Order Forms to prescribe and obtain preservative free methylprednisolone acetate ("MPA") from NECC for administration to different, upcoming Box Hill patients. Deposition of A. Vickers at 115-17. (Excerpts have been previously filed with the court as Exhibit "A" to Memorandum of Law in opposition to Non-Party Barbara Wagner's Motion for Protective Order Regarding Plaintiffs' Subpoena and Amended Notice of Deposition *Duces Tecum,* Dkt. No.2966-2). Nurse Vickers further testified NECC's MPA then came to Box Hill via UPS or Federal Express packed in foil pouches which contained five vials of MPA. *Id*. at 124-25. Each pouch came with a label bearing the name of the Box Hill former patient used to obtain the five vials. *Id*. The MPA was then administered to other Box Hill patients, including the eight plaintiffs (or their respective decedents) before the Court. In 2012, Massachusetts prescription law required compounded prescription medication such as MPA be dispensed by Massachusetts pharmacies only pursuant to patient-specific prescriptions and labeled with the name of the patient the medication was prescribed for. Mass. Gen. Laws ch. 94C §§19, 21 (2012).

[2] Available on line at http://www.nejm.org/doi/full/10.1056/NEJMoa1213978 (last visited August 23, 2016.)

as Box Hill argues in support of remanding and venuing these cases in Maryland—that the Box Hill Plaintiffs were physically administered the contaminated MPA and thereby injured or killed in Maryland (albeit one of the Box Hill wrongful death victims before the court fell ill, was treated and died in California, his home state), more importantly and more weighty on the issue before the Court is the reason why the contaminated medicine was in Maryland in the first place. That is due to not only NECC's misdeeds, but at least as much, if not more, Box Hill's confederation and actions in concert with NECC to falsify prescriptions with former patients' names in order to circumvent applicable Massachusetts pharmacy laws designed to protect patients. Indeed, the prescription misconduct that underlies the tort claims against Box Hill provides the basis for one of the two federal criminal murder counts being tried against NECC's personnel in this District Court in January, 2017, *i.e.*, the death of Brenda Rozek who is one of the four pending Box Hill wrongful death cases.[3]

---

[3] We note that on the top of page 7 of its memorandum in support of its motion Box Hill makes the statement in support of its contention that Massachusetts is not even convenient for the Plaintiffs' counsel based upon purported information and belief the Plaintiffs' counsel never appeared in Massachusetts in the MDL matter. That is not true. Box Hill Plaintiff Meghan Handy, who is the executor of the Estate of Brenda Rozek, was appointed by the United States Bankruptcy Trustee in January, 2013 to serve on the Official Creditors Committee (OCC) in NECC's Chapter 11 proceedings. She was elected co-chair of the OCC by the committee members. Undersigned counsel for Ms. Handy, Harry Roth and Michael Coren, as is customary with respect to Chapter 11 creditor committees populated by tort victims, served throughout the Chapter 11 proceedings as her proxy on the OCC. In such role, Mr. Coren as representative co-chair appeared before the MDL court in person and addressed the Court on issues germane to the OCC's interests on several occasions before both Judge Saylor and Judge Zobel during their respective tenures as presiding judge. Mr. Coren and Mr. Roth also appeared in person in their OCC co-chair capacities before Bankruptcy Judge Boroff in his Springfield Massachusetts courtroom. Outside of his role as OCC co-chair representative for Ms. Handy, Mr. Coren also appeared in the MDL proceedings in person on behalf of individual or collectives of plaintiffs such as on behalf of the Premier and Box Hill plaintiffs. For example, he along with a colleague argued the opposition to the Premier Defendants' motion to dismiss.

Honorable Rya W. Zobel
August 24, 2016
Page 4

      In sum, we believe there is ample basis for the court to summarily deny and dismiss Box Hill's remand, transfer and venue motion. Should the court not be inclined to summarily deny the motion, the Box Hill Plaintiffs respectfully ask the court to allow them twenty days to provide a full brief, of not more than 20 pages, their opposition to the Defendants' Motion.

                                  Respectfully Submitted,

| /s/ Patricia J. Kasputys | /s/ Michael Coren |
|---|---|
| Patricia J. Kasputys, Esq. (Pro hac vice) | Harry M. Roth, Esq. (Pro hac vice) |
| Sharon L. Houston, Esq. (Pro hac vice) | Michael Coren, Esq. |
| **Law Offices of Peter G. Angelos, P.C.** | **Cohen, Placitella & Roth PC** |
| One Charles Center | Two Commerce Square |
| 100 North Charles Street | 2001 Market Street, Suite 2900 |
| Baltimore, Maryland 21201 | Philadelphia, PA 19103 |
| (410) 649-2000 | (215) 567.3500 |
| Fax: (410) 649-2101 | (215) 567-6019 |
| *Attorneys for Plaintiffs Armetta, Bowman, Davis, Dreisch, Farthing, Kashi and Torbeck* | *Attorneys for Plaintiff Handy* |