UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Dkt. No. 1:13-md-2419 (RWZ)<br><br>RWZ [CORRECTED PROPOSED]<br>**SUGGESTION OF REMAND OR TRANSFER** |

THIS DOCUMENT RELATES TO:

Witt v. Cincinnati Pain Management Consultants, et al., No. 1:14-cv-10432
Hosea v. UniFirst, et al., No. 1:14-cv-13739
Hancock v. UniFirst, et al., No. 1:14-cv-14669
Allen v. Anonymous Healthcare Provider 1, et al., No. 1:15-cv-10280
Griggs v. UniFirst, et al., No. 1:14-cv-14668
Younani v. NECC, et al., No. 1:13-cv-12015
Hanson v. NECC, et al., No. 1:13-cv-10685
Simas v. NECC, et al., No. 1:13-cv-10943
Eldreth v. Sunrise Hospital, et al., No. 1:14-cv-10362
Henley v. UniFirst, et al., No. 1:14-cv-10373
Tashima v. NECC, et al., No. 1:14-cv-12328
Birge v. Unifirst, et al., No. 1:14-cv-13548
Daugherty v. PCA, et al., No. 1:14-cv-10430
Marko v. NECC, et al., No. 1:13-cv-10404
Pennington v. NECC, et al., No. 1:13-cv-10406
Leaverton v. NECC, et al., No. 1:13-cv-10408
Tolotti v. NECC, et al., No. 1:13-cv-10413
Zacacki v. NECC, et al., No. 1:13-cv-10441
Letizia v. NECC, et al., No. 1:13-cv-10442
Tisa v. NECC, et al., No. 1:13-cv-10446
Devilli v. Ameridose, LLC, et al., No. 1:13-cv-11167
Effendian v. NECC, et al., No. 1:13-cv-11233
Snead v. NECC, et al., No. 1:14-cv-11821
Chambers v. NECC, et al., No. 1:14-cv-11822
Fisher v. Inspira Health Network, et al., No. 1:14-cv-13601
Campbell v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13909
Goff v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13913
Rivera v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13943
Baird v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13946

1314918.3

Gonzalez v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13949
Stech v. Inspira Health Network, et al., No. 1:14-cv-13952
Morell v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13961
Bolton v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13904
Askins v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13905
Jones, Preston v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13907
Warfle v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13908
Akers v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13910
McCoy v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13911
Hollywood v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13951
Shanon v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13555
Schwab v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13914
Roagers v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13915
Campbell v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13916
Styles v. Inspira Health Network, et al., No. 1:14-cv-13953
Trout v. Inspira Health Network, et al., No. 1:14-cv-13954
Howerton v. Inspira Health Network, et al., No. 1:14-cv-13955
Burrell v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13958
Santiago v. Inspira Health Network, et al., No. 1:14-cv-13959
Kirby v. Premier Orthopaedic Associates & Sport Medicine, et al., No. 1:14-cv-13960
Bacigalupo v. Premier Orthopaedic Associates, et al., No. 1:14-cv-13962
Esposti v. Cadden, et al., No. 1:14-cv-14086
McBride v. Premier Orthopaedic Associates, et al., No. 1:14-cv-14152
Bane et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-13599
Bazikos et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-13163
Dersch et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-13164
Garcia et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-14084
Gould et.al. v. Premier Orthopaedic Associates, et al., 1:13-cv-10444
Guzman et.al. v. Premier Orthopaedic Associates, et al., 1:12-cv-12208
Hannah et.al. v. Premier Orthopaedic Associates, et al., 1:13-cv-10407
Hermens et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-13945
Jones, Meagan et.al. v. Premier Orthopaedic Associates, et al., 1:13-cv-10409
Normand et.al. v. Premier Orthopaedic Associates, et al., 1:13-cv-10447
Ramos et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-13957
Rios et.al. v. Premier Orthopaedic Associates, et al., 1:13-cv-10411
Tayvinsky et.al. v. Premier Orthopaedic Associates, et al., 1:13-cv-10414
West et.al. v. Premier Orthopaedic Associates, et al., 1:14-cv-13165

A catastrophic outbreak of fungal meningitis in the fall of 2012 resulted in (among other proceedings[1]) hundreds of individual tort lawsuits that were eventually consolidated into multidistrict litigation ("MDL") before this Court. Significant pretrial litigation and discovery has been conducted in the MDL, and remains ongoing with regard to certain cases. That said, at this time, the Court concludes that for the 66 cases listed in the caption above, the efficiencies of the MDL mechanism have been exhausted, and it is time for these actions to go their separate ways. Therefore, as detailed below, the Court suggests that the Judicial Panel on Multidistrict Litigation ("JPML") remand or transfer each of the above actions to its court of origin.

## I.  PROCEDURAL BACKGROUND[2]

### A.  The Meningitis Outbreak

This dispute stems from an outbreak of fungal meningitis caused by contaminated methylprednisolone acetate ("MPA") manufactured and sold by the New England Compounding Pharmacy, Inc., d/b/a New England Compounding Center ("NECC"). NECC operated a compounding pharmacy in Framingham, Massachusetts, that combined and mixed ingredients to create specific formulations of pharmaceutical products. In the fall of 2012, health officials traced a number of cases of fungal meningitis to vials of MPA that had been manufactured by NECC. NECC initiated a recall of several contaminated batches of MPA before eventually surrendering its pharmacy license and ceasing production of all pharmaceutical products. NECC filed for bankruptcy in December 2012.

---

[1] The outbreak also resulted in criminal proceedings, bankruptcy proceedings, and state-court litigation that was not consolidated into this MDL.

[2] The allegations giving rise to this MDL have been described at length elsewhere, see, e.g., In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig., 496 B.R. 256, 262 (D. Mass. 2013), so only the most pertinent facts are repeated here.

B.  **Initial Litigation**

Beginning in November 2012, plaintiffs alleging death or injury caused by NECC's contaminated MPA filed lawsuits against NECC, its affiliated entities and individuals, and healthcare providers in multiple state and federal jurisdictions. Broadly speaking, all the cases name some combination of four groups of defendants: NECC[3]; its employees, directors, and affiliated companies[4] (the "Affiliated Defendants"); vendors who provided services to NECC[5] (the "National Defendants"); and clinics, hospitals, and healthcare professionals who procured contaminated NECC products and administered them to patients (the "Clinic-Related Defendants")[6]. All of the cases in the MDL raise only state law claims, like negligence, violation of consumer protection statutes, failure to warn, product liability, agency, wrongful death, loss of consortium, and punitive damages.[7]

---

[3] Under the bankruptcy laws, once NECC filed for bankruptcy in December 2012, tort victims were then prevented from naming NECC as a defendant in civil litigation.

[4] The Affiliated Defendants include Barry and Lisa Cadden; Doug, Carla, and Greg Conigliaro; Glenn Chin; Alaunus Pharmaceutical, LLC; Ameridose, LLC; GDC Properties Management, Inc.; Medical Sales Management, Inc.; and Medical Sales Management, SW, Inc.

[5] The National Defendants include UniFirst Corporation, ARL BioPharma Inc., Liberty Industries, Inc., Victory Mechanical Services, Inc., and Victory Heating & Air Conditioning Co.

[6] These included Inspira Health Network, High Point Surgery, Insight Imaging, Saint Thomas Outpatient Neurosurgical Center and the Saint Thomas entities (including Howell Allen Clinic), Specialty Surgery Center, Premier Orthopedics Surg. Assoc., Box Hill Surgery Center, Advanced Pain & Anesthesia Consultants, Cincinnati Pain Management Consultants, OSMC Outpatient Surgery Center, Ambulatory Care Center, BKC Pain Specialists, Encino Outpatient Surgery Center, Ocean State Pain Management, Sunrise Hospital and Medical, Dallas Back Pain Management, Fullerton Orthopaedic Surgery Medical Group, Sequoia Surgery Center, MAPS, Wellspring Pain Solutions Clinic, Dr. O'Connell's Pain Care Center, and PCA Pain Care. (The Clinic-Related Defendants also include the individual doctors, pharmacists, or other clinic employees that were named as defendants; for organizational purposes, these individuals have always been grouped by the clinic where they were employed.)

[7] The master complaint in this MDL originally included claims for battery and civil conspiracy, but, after the court dismissed those claims under some states' laws, the remainder were dropped.

### C. Consolidation into MDL 2419

On February 12, 2013, the JPML issued an order under 28 U.S.C. § 1407 transferring a number of cases pending in several federal courts to this Court for coordinated and consolidated pretrial proceedings.[8] Several other transfer orders followed.

On June 12, 2013, through operation of the bankruptcy code, this Court asserted § 1334 related-to subject matter jurisdiction over all cases across the country – whether pending in state or federal court – that named NECC or the Affiliated Defendants, on the grounds that the cases pending elsewhere would have a "substantial effect on the bankruptcy estate," and that tort claims and contribution or indemnity claims would make "it difficult or impossible to resolve the entire litigation in an equitable and efficient manner."[9] A few cases filed in state court were transferred to this Court (and the MDL) under 28 U.S.C. § 157(b)(5).[10] However, this Court did not exercise jurisdiction over any state-court cases that named only Clinic-Related Defendants.[11]

---

*See In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 [Dkt. 1360] (dismissing some battery and civil conspiracy claims), [Dkt. 1719] (second amended master complaint dropping battery and civil conspiracy counts).

[8] Transfer Order, *In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, No. 13-md-2419 (J.P.M.L. Feb. 12, 2013) [Dkt. 119].

[9] Corrected Memorandum and Order on Trustee's Motion to Transfer Cases and Related Motions, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419-FDS (D. Mass. June 12, 2013) [Dkt. 176].

[10] *See In re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 496 B.R. 256, 275 (D. Mass. 2013) (Virginia state court cases); *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. June 5, 2014) [Dkt. 1173] (additional Virginia state court cases).

[11] On May 15, 2014, this Court reaffirmed its initial finding of related-to subject-matter jurisdiction underscoring the effect of tort claims on the bankruptcy estate. Memorandum of Decision, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. May 15, 2014) [Dkt. 1131].

1314918.3

D. **Resolutions through the Bankruptcy Proceeding**

Between December 2012 and May 2014, the Bankruptcy Trustee and others negotiated with defendants to try to reach resolutions on behalf of all tort victims. Ultimately, resolutions were reached with NECC, the Affiliated Defendants, most of the National Defendants, and three Clinic-Related Defendants.

On May 6, 2014, the Trustee moved the bankruptcy court to approve a proposed plan for reorganization under Chapter 11. The proposed plan contemplated defendants in ongoing civil litigation would make cash contributions to the bankruptcy estate (for the benefit of the tort victims) in exchange for releases of liability. However, settling parties could only obtain a release if they agreed to provide discovery necessary for plaintiffs in the MDL to continue litigating their cases against the remaining defendants. As a result, discovery concerning the settling defendants continued until conclusion, and all documents and materials obtained from that discovery are available in a central online repository, and will remain available for at least four years for the benefit of parties continuing to litigate these cases.[12]

On May 20, 2015, the Chapter 11 Plan for New England Compounding Pharmacy, Inc. was confirmed by the Honorable Henry J. Boroff of the United States Bankruptcy Court for the District of Massachusetts. The Chapter 11 Plan became effective on June 4, 2015.[13]

The Chapter 11 Plan resolved all tort victims' claims against NECC, the Affiliated Defendants, and the National Defendants, as well as claims against three Clinic-Related

---

[12] *See* MDL Order No. 6: Case Management Order, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. June 28, 2013) [Dkt. 209].

[13] Findings of Fact, Conclusions of Law and Order Confirming the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., *In Re New England Compounding Pharmacy, Inc. (Debtor)*, 12-BR-19882 (HJB) [Dkt. 1355].

- 6 -

1314918.3

Defendants (High Point, Inspira, and Insight).[14] The Chapter 11 Plan also resolved the indemnity and contribution claims against NECC. After the Plan's effective date, this Court dismissed all claims in the MDL against defendants settling under the Chapter 11 Plan, including all cases against NECC, the Affiliated Defendants, the National Defendants, Insight, Inspira, and High Point.[15] The MDL Clerk is in the process of entering final judgment in the more than 450 cases that were entirely resolved by the Chapter 11 Plan, leaving only cases with claims against the non-settling Clinic-Related Defendants in the MDL.

### E. Continued Litigation against Non-Settling Clinic-Related Defendants in the MDL

The Court was initially able to manage the MDL's cases on a more-or-less uniform discovery schedule. But as the MDL progressed, the uniform case management approach began to groan under the weight of the constituent cases' idiosyncrasies. Because cases arising from some states advanced more quickly than those arising from others, the Court adopted a more nuanced approach and created several tracks for common fact discovery for cases from different states. For states with slower-advancing or fewer cases, discovery was eventually stayed, to allow the focus to be on the faster-moving states' cases.[16]

In the summer of 2015, knowing that the majority of cases in the MDL would be resolved by the Chapter 11 Plan, the Court sought to understand what work was left to be done in the

---

[14] Notice of Filing of Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc., *In Re New England Compounding Pharmacy, Inc. (Debtor)*, 12-BR-19882 (HJB) [Dkt. 1352].

[15] Order Dismissing Claims Against Settling Defendants, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. Aug. 25, 2015) [Dkt. 2193].

[16] Electronic Order Granting Stay of Discovery, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. Jan. 4, 2016) [Dkt. 2254].

MDL. On July 9, 2015, the Court ordered parties to actions that were not originally filed in Massachusetts to tell the Court whether they would consent to a trial before the MDL Court.[17] The Court required parties to execute either a *Lexecon* waiver (consenting to trial in this District) or a certification that the party will not waive its *Lexecon* rights (and wants to be sent back to the court where the case was originally filed).[18] On July 31, 2015, the PSC filed a report to the Court regarding *Lexecon* elections, noting that only one defendant (Insight) waived *Lexecon*.[19]

While cases against certain Tennessee and Maryland clinics were (and continue to be) actively litigated in the MDL[20], no other cases against Clinic-Related Defendants similarly advanced, simply because they were not progressed enough or numerous enough to actively

---

[17] Order, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. July 9, 2015) [Dkt. 2075].

[18] *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998) held that MDL courts may not "self-transfer" cases to themselves for trial, and that cases may not be tried before the transferee (MDL) court unless the parties waive their rights to be remanded back to the court where the action was originally filed.

[19] Plaintiffs' Steering Committee's Report to the Court Regarding *Lexecon* Election Forms, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. July 31, 2015) [Dkt. 2128].

[20] Cases against the Saint Thomas (Tennessee) Clinic-Related Defendants were actively litigated in the MDL and the first bellwether trial for that group had been set for August of this year. However, it now appears the parties in those cases are close to a resolution, so a 90-day stay is currently in effect for those cases. *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. May 24, 2016) [Dkt. 2912]. Cases against Specialty Surgery Center (Tennessee) Clinic-Related Defendants are likewise being actively litigated and moving towards bellwether trials pursuant to a Court-ordered pretrial schedule. *See* Order re Joint Motion to Modify Scheduling Order, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. July 29, 2016) [Dkt. 3016]. For that reason, the Court recently denied Specialty Surgery Center's motion to remand those cases. *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. July 28, 2016) [Dkt. 3011]. Similarly, cases against Box Hill (Maryland) Clinic-Related Defendants are also proceeding according to the discovery schedule set by the Court, and the Court denied Box Hill's request for remand. *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. June 24, 2016) [Dkt. 2958].

litigate efficiently in the MDL. At this point, there is no more common discovery concerning these other Clinic-Related Defendants for the MDL Court to oversee; only case-specific fact and expert discovery remain. Therefore, for all other remaining Clinic-Related Defendants (all of whom have four or fewer cases naming them as defendants in the MDL) the Court entered a stay of discovery through September 1, 2016.[21]

### F. Order to Show Cause Concerning Remand and Transfer

In the early spring of 2016, the Court asked the PSC what should be done with the cases against the remaining Clinic-Related Defendants (i.e. all other than the Tennessee and Maryland defendants mentioned in n.20 above). The PSC suggested that remand or transfer back to the courts in which the cases were originally filed would now be appropriate for those cases, unless counsel for the plaintiffs and/or the defendants in those cases objected.

On June 13, 2016, the Court entered an order requiring counsel in the remaining cases to meet and confer, and then file short responses indicating whether they opposed remand or transfer.[22] The Court did so because it "[saw] no efficiencies to be gained by litigating cases against the [remaining Clinic-Related Defendants] in the MDL, given the small number of cases against each clinic, but [wanted] to hear from counsel who may feel otherwise."[23]

---

[21] Electronic Order Granting Stay of Discovery, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. Jan. 4, 2016) [Dkt. 2254].

[22] Corrected Order to Show Cause Concerning Remand and Transfer, *In Re New England Compounding Pharmacy, Inc. Prods. Liab. Litig.*, 13-md-2419 (D. Mass. June 13, 2016) [Dkt. 2928].

[23] *Id.*

In response to the Court's order to show cause, counsel in nine civil actions (including cases against five different clinics) objected to remand or transfer.[24] The Court is in the process of considering those objections, and once that process is complete, those nine cases will be the subject of future orders and/or remand suggestions from this Court. Therefore those nine cases are not included in this Suggestion for Remand.

### G. The Cases for Which the Court Now Suggests Remand or Transfer

There were 74 actions for which no party objected to remand or transfer. Sixty-six of those actions are listed in the caption above and are the subject of this Suggestion for Remand or Transfer. The other eight of those actions were directly filed in this District, and therefore are not subject to § 1407.[25]

## II. LEGAL STANDARD

Under 28 U.S.C. § 1407(a), remand of a member action is required "at or before the conclusion of" consolidated or coordinated pretrial proceedings. In addition, under the JPML's Rules of Procedure, a transferee court may recommend to the JPML that it remand a member action "at any time by filing a suggestion of remand with the Panel." R. P. J.P.M.L. 10.1(b); *see also In re Aqua Dots Prods. Liab. Litig.*, Nos. 08 C 2364, 09 7652, 2011 WL 3325783, at * 1 (N.D. Ill. Aug. 2, 2011). "A judge should make such a suggestion when he or she perceives his

---

[24] The objections to remand came from four plaintiffs with claims against Advanced Pain & Anesthesia Consultants; one plaintiff with claims against Encino Outpatient Surgery Center; two plaintiffs with claims against Ocean State Pain Management; one defendant in a case against Fullerton Orthopaedic Surgery Medical Group; and one plaintiff with claims against MAPS.

[25] *See* Eldon E. Fallon et. al., *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2356–57 (2008) ("A case filed directly into the MDL, whether by a citizen of the state in which the MDL sits or by a citizen of another jurisdiction, vests the transferee court with complete authority over every aspect of that case. This is because the transferee court is no longer cognizable as the transferee court under 28 U.S.C. § 1407, but is technically the forum court.").

or her role in the case has ended." *In re Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig.*, 851 F. Supp. 556, 562 (S.D.N.Y. 1994).

A transferee court examining whether a suggestion of remand is appropriate looks to "whether the case will benefit from further coordinated proceedings as part of the MDL." *In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig.*, 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001). For instance, the JPML may decide to remand when "everything that remains to be done is case-specific." *Id.* (citing *In re Patenaude*, 210 F.3d 135, 145 (3d Cir. 2000)).

### III.  CONCLUSION

Because only case-specific discovery remains for the 66 cases listed above, the Court perceives its role in these cases has ended. Given that the Court received no objections to remand or transfer for these cases, it appears the parties in these cases agree that the time has come for them to leave the MDL. Therefore, the Court suggests these 66 cases be remanded or transferred to their courts of origin for further proceedings, pursuant to § 1407.

Dated: 8/25, 2016

_____
RYA W. ZOBEL
United States District Judge