# EXHIBIT C

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF MASSACHUSETTS
### EASTERN DIVISION

In re:

NEW ENGLAND COMPOUNDING
PHARMACY, INC.,

Debtor.

Chapter 11

Case No. 12-19882-HJB

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND
### ORDER CONFIRMING THE THIRD AMENDED JOINT CHAPTER 11 PLAN
### OF NEW ENGLAND COMPOUNDING PHARMACY, INC.

WHEREAS, on December 3, 2014, the Plan Proponents[1] filed with the United

States Bankruptcy Court for the District of Massachusetts, Eastern Division (this "Court") the

*Joint Chapter 11 Plan of Reorganization of New England Compounding Pharmacy, Inc.* [Dkt.

1054] and the *Disclosure Statement for Joint Chapter 11 Plan of New England Compounding

Pharmacy, Inc.* [Dkt. 1052]; and

WHEREAS, on February 22, 2015, the Plan Proponents filed with this Court the

*First Amended Joint Chapter 11 Plan of Reorganization of New England Compounding

Pharmacy, Inc.* [Dkt. 1154] (the "First Amended Plan") and the *Disclosure Statement for First

Amended Joint Chapter 11 Plan of Reorganization of New England Compounding Pharmacy,

Inc.* [Dkt. 1155] (the "Disclosure Statement"); and

WHEREAS, on March 3, 2015, this Court entered the *Order (I) Approving the

Adequacy of the Amended Joint Disclosure Statement; (II) Approving Solicitation and Notice

Procedures with Respect to Confirmation of the Plan Proponents' First Amended Joint Plan of

---

[1] All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan (as defined herein).

Reorganization; (III) Approving the Form of Various Ballots and Notices in Connection Therewith; (IV) Scheduling Certain Dates with Respect Thereto; and (V) Granting Related Relief ("Disclosure Statement Order") [Dkt. 1181]; and

WHEREAS, solicitation packages (collectively, the "Solicitation Packages") conforming to the requirements of the Disclosure Statement Order were transmitted to creditors, interest holders, and parties-in-interest in accordance with the Solicitation Procedures Order, as set forth in the *Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Dated February 22, 2015* executed by John Burlacu, filed on March 13, 2015 [Dkt. 1193], the *Affidavits of Service* executed by Maribeth D. Mills, filed on April 15, 2015 [Dkt. 1212], the *Supplemental Affidavit of Donlin, Recano and Company, Inc. Regarding Service of Solicitation Packages with Respect to Disclosure Statement for First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. Dated February 22, 2015*, executed by John Burlacu, filed on May 7, 2015 [Dkt. 1287], and the *Certificate of Service* executed by Michael R. Lastowski, filed on May 8, 2015 [Dkt. 1295] (collectively, the "Affidavits of Service"); and

WHEREAS, the Disclosure Statement Order, together with the solicitation materials and notice of the Confirmation Hearing approved pursuant thereto, was filed electronically in the MDL Proceeding on March 3, 2015 [MDL Court Dkt. 1714 and 1715], and, accordingly, served electronically through the MDL Court's ECF system to those parties registered to receive electronic notice, including the parties to the more than 680 suits involving MPA plaintiffs and defendants throughout the United States [*see* MDL Court Dkt. 1811 at 3]; and

WHEREAS, on February 13, 2015, the Plan Proponents filed with this Court certain supplemental appendices to the First Amended Plan [Dkt. 1123] (as supplemented, the "Plan Supplement"), and the Plan Supplement was itself subsequently supplemented on February 19, 2015 [Dkt. 1141], February 23, 2015 [Dkt. 1167], and May 7, 2015 [Dkt. 1288]; and

WHEREAS, on March 20, 2015, the *Notice of Hearing to Consider Confirmation of Chapter 11 Plan of Liquidation and Related Objection Deadline*, approved pursuant to the Disclosure Statement Order, was published in the National Weekend Edition of USA Today (the "Publication Notice"), a newspaper of national circulation in all 50 states, having an average daily print circulation of approximately 1.3 million, as set forth in the *Affidavit of Publication Notice of Confirmation Hearing* [Dkt. 1211]; and

WHEREAS, on May 8, 2015, Donlin, Recano and Company, Inc., the claims and noticing agent appointed in the Chapter 11 Case, filed the *Declaration of Jun W. Song on Behalf of Donlin, Recano & Company, Inc. Regarding Voting and Tabulation of Ballots Accepting and Rejecting the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1294] (the "Voting Declaration") certifying the results of the ballot tabulation for the votes to accept or reject the First Amended Plan; and

WHEREAS, there is pending a single objection to confirmation of the First Amended Plan, which was filed on or prior to the deadline established for filing objections to confirmation of the First Amended Plan [Dkt. 1272] (the "Plan Objection"); and

WHEREAS, on April 29, 2015 and May 12, 2015, respectively, the Plan Proponents filed the *Plan Proponents' Pre-Confirmation Hearing Memorandum of Law in Support of Confirmation of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1240] (the "Confirmation Brief") and the *Plan Proponents'*

*Reply Memorandum of Law (I) in Response to "Objection" to Confirmation of the First Amended Joint Chapter 11 Plan of Debtor New England Compounding Pharmacy, Inc., and (II) in Further Support of Confirmation Thereof* [Dkt. 1310] (the "<u>Confirmation Reply Brief</u>"), wherein the Plan Proponents set forth the legal basis for confirmation of the First Amended Plan and responded to the Plan Objection; and

WHEREAS, on May 12, 2015, the Plan Proponents filed the *Second Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1308] (the "<u>Second Amended Plan</u>") together with the *Joint Motion of the Chapter 11 Trustee and the Official Committee of Unsecured Creditors for an Order Approving Non-Materials Modifications to the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and Request for Expedited Determination and Limitation of Notice* [Dkt. 1311]; and

WHEREAS, this Court determined that further disclosure or solicitation of the Second Amended Plan was not necessary or required, and that votes cast in regard to the First Amended Plan were to be treated as votes cast in regard to the Second Amended Plan; and

WHEREAS, on May 13, 2015, the Plan Proponents filed the *Declaration of Paul D. Moore In Support Of Confirmation of the Second Amended Joint Chapter 11 Plan Of New England Compounding Pharmacy, Inc.* [Dkt. 1319] (the "<u>Confirmation Declaration</u>"); and

WHEREAS, this Court held a hearing commencing on May 19, 2015 at 10:00 a.m. (prevailing Eastern Time) (the "<u>Confirmation Hearing</u>") to consider confirmation of the Plan; and

WHEREAS, following the Confirmation Hearing, the Plan Proponents filed the *Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* (the "<u>Plan</u>") in order to address certain issues raised at the Confirmation Hearing;

NOW THEREFORE, based upon this Court's review and consideration of (i) the documents filed in this case, (ii) the record of the Confirmation Hearing (including the statements of counsel in support of confirmation at the Confirmation Hearing and all testimony presented and evidence admitted at the Confirmation Hearing), (iii) the declarations filed in support of confirmation of the Plan, including the *Declaration of Chapter 11 Trustee in Support of Pending Settlement Motions* [Dkt. 905]; *Declaration of Stephen B. Darr in Support of Pending Settlement Motions* [Dkt. 906]; the *Declaration of Michael F. Barrett, Esq. in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and for Approval of Inspira Settlement* [Dkt. 1225]; the *Declaration of Kimberly A. Dougherty in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and for Approval of the High Point Settlement* [Dkt. 1226]; the *Declaration of Kimberly A. Dougherty in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and for Approval of the Victory Settlement* [Dkt. 1227]; the *Declaration of Frederic L. Ellis in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and for Approval of ARL Settlement* [Dkt. 1228]; the *Declaration of Patrick T. Fennell in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and for Approval of Insight Settlement* [Dkt. 1229]; the *Declaration of J. Scott Sexton in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. (Relating to Settlement with Insight Health Corp., and Others - Virginia)* [Dkt. 1230]; the *Declaration of Thomas M. Sobol in Support of Approval of the Unifirst Settlement and in Support of Approval of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1231]; the *Declaration of Matthew K. Doonan, Esq. in Support of*

5

*Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1232]; the *Declaration of Henri G. Minette in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.*; [Dkt. 1233]; the *Declaration of Gregory Earl Thomas in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1234]; the *Declaration of Mark G. Ledwin on Behalf of Preferred Mutual Insurance Company in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1235]; the *Declaration of Frederic L. Ellis Concerning the National Compensation Program Established by the Proposed Amended Plan of Reorganization* [Dkt. 1236]; the *Plaintiffs' Steering Committee's Declaration in Support of Approval of the First Amended Joint Chapter 11 Plan* [Dkt. 1237]; the *Joint Declaration of Anne Andrews and Michael Coren, as Representatives of the Co-Chairs of the Official Committee of Unsecured Creditors, in Connection With the Official Committee's Support for Confirmation of the First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. and Approval of the Settlements Contained Therein* [Dkt. 1238]; the *Declaration of David J. Molton in Support of the Joint Motion of the Chapter 11 Trustee and the Official Committee of Unsecured Creditors for an Order Approving Plan Support and Settlement Agreement with Liberty Industries, Inc.* [Dkt. 1260]; the *Declaration of Rita A. Bunch in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1261]; *Claimant UniFirst Corporation's Statement in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1282]; the *Declaration of Joseph A. Ziemianski In Support of Confirmation of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1284]; the *Declaration of Liberty Industries, Inc. in Support of First Amended*

*Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1293]; the
*Declaration of Jung W. Song on Behalf of Donlin, Recano & Company, Inc. Regarding Voting
and Tabulation of Ballots Accepting and Rejecting the First Amended Joint Chapter 11 Plan Of
New England Compounding Pharmacy, Inc.* [Dkt. 1294]; the *Declaration of Amanda J. Cox,
Esq. in Support of Confirmation of First Amended Joint Chapter 11 Plan of New England
Compounding Pharmacy, Inc.* [Dkt. 1296]; the *Declaration of Michael T. Ryan, Esq. on Behalf of
Pharmacists Mutual Insurance Company in Support of First Amended Joint Chapter 11 Plan of
New England Compounding Pharmacy, Inc.* [Dkt. 1301]; the *Declaration of Brian Robischeau in
Support of First Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.*
[Dkt. 1306]; the *Declaration of Stephen B. Darr in Support of Second Amended Joint Chapter 11
Plan of New England Compounding Pharmacy, Inc.* [Dkt. 1309]; and the *Declaration of Chapter
11 Trustee in Support of Second Amended Joint Chapter 11 Plan of New England Compounding
Pharmacy, Inc.* [Dkt. 1319]; the *Declaration of Harry M. Roth Concerning the National
Compensation Program Established by the Proposed Amended Plan of Reorganization* [Dkt.
1327]; the *Supplemental Declaration of Frederic L. Ellis Concerning the National Compensation
Program Established by the Proposed Amended Plan of Reorganization* [Dkt. 1323]; and the
*Supplemental Declaration of Thomas M. Sobol Concerning the National Compensation Program
Established by the Proposed Amended Plan of Reorganization* [Dkt. 1322] and (iv) the entire
record of this Chapter 11 Case; and this Court finding that (a) notice of the Voting Deadline,
Objection Deadline, and Confirmation Hearing and the opportunity of any party in interest to
object to confirmation were adequate and appropriate, in accordance with Bankruptcy Rule
2002(b) and the Disclosure Statement Order, as to all parties to be affected by the Plan and the
transactions contemplated thereby, and (b) the legal and factual bases presented at the

Confirmation Hearing and as set forth in this Confirmation Order establish just cause for the relief granted herein; and after due deliberation thereon, and good cause appearing therefor;

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

THIS COURT HEREBY FINDS AND CONCLUDES THAT:[2]

A. This Court has jurisdiction over this Chapter 11 Case pursuant to 28 U.S.C. §§ 157 and 1334. Confirmation of the Plan is a "core proceeding" pursuant to 28 U.S.C. §§ 157(b)(2)(L) and (O), and this Court has jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code, to determine whether the Plan should be confirmed and to enter and enforce a final order with respect hereto. Venue of this Chapter 11 Case is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

B. Judicial notice is hereby taken of the docket of the Chapter 11 Case maintained by the Clerk of this Court, including, without limitation, all pleadings and other documents filed, all orders entered, and transcripts of, and all evidence and arguments made, proffered, or adduced at, the hearings held before the Court during the pendency of the Chapter 11 Case.

C. The Plan is dated and identifies the entities submitting it, thereby satisfying Bankruptcy Rule 3016(a). The filing of the Disclosure Statement with the Court satisfies Bankruptcy Rule 3016(b). All acts to be enjoined and identification of entities subject to such injunction under the Plan are set forth in specific and conspicuous bold text in the Plan and Disclosure Statement, thereby satisfying Bankruptcy Rule 3016(c).

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Fed. R. Bankr. P. 7052.

D.    The Plan Proponents have given notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d).  Such notice, including by publication in a newspaper of national circulation, was good and sufficient under the particular circumstances, and no other or further notice is or shall be required.

E.    The Plan Proponents also have provided further notice of the releases and injunctions in the Plan as required by Bankruptcy Rule 3017.1(f).  In addition to posting links providing all parties in interest with access to, among other documents, copies of the Plan, the Disclosure Statement [Dkt. 1155], the Disclosure Statement Order and the Confirmation Hearing Notice [Dkt. 1181] on the website maintained by Donlin, Recano & Company, Inc. ("DRC"), the Trustee's claims and noticing agent, DRC mailed the Plan Solicitation Packages to approximately 3,600 voting parties.  It also mailed Plan related documents, including the Confirmation Hearing Notice, the Plan and Disclosure Statement to approximately 21,000 additional non-voting parties who might be subject to the Plan Releases and Injunctions, including all patients identified by the CDC who may have been exposed to the three lots of MPA alleged by the CDC to have been contaminated.  Further, the Publication Notice was given. Such notice was good and sufficient under the circumstances, and no other and further notice is or shall be required.

F.    The solicitation of votes to accept or reject the Plan satisfies Bankruptcy Rule 3018.  The Plan was transmitted to all creditors entitled to vote on the Plan, and sufficient time was prescribed for such creditors to vote to accept or reject the Plan, thereby satisfying the requirements of Bankruptcy Rule 3018.

G.    The Plan Proponents have met their burden of proving all applicable elements of sections 1129(a) and (b) of the Bankruptcy Code by clear and convincing evidence.

H.      The Plan complies with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Massachusetts (the "Local Rules"), thus satisfying the requirements of section 1129(a)(1) of the Bankruptcy Code.

I.      The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this Bankruptcy Court with respect to the solicitation of acceptances or rejections of the Plan, including, without limitation, Bankruptcy Code sections 1125 and 1126 and Bankruptcy Rules 3017, 3018 and 3019, thus satisfying the requirements of Bankruptcy Code section 1129(a)(2).

J.      The Plan, and the compromises and settlements embodied therein, have been proposed in good faith and not by any means forbidden by law, thus satisfying the requirements of Bankruptcy Code section 1129(a)(3).

K.      Subject to the provisions of Section 5.09 and 6.01 of the Plan, all payments that have been made or are to be made under the Plan or by any person acquiring property under the Plan, for services or for costs and expenses in, or in connection with the bankruptcy case, or in connection with the Plan and incident to the bankruptcy case, have been approved by, or will be subject to the approval of, the Bankruptcy Court as reasonable, thus satisfying the requirements of Bankruptcy Code section 1129(a)(4).

L.      The Plan Proponents have made available all necessary information with respect to the identity of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee or the successor to the Debtor under the Plan (including, without limitation, the Tort Trustee and the Post-Confirmation Officer), and the appointment to such office of each individual is consistent with the interests of creditors and equity security

holders and with public policy, thereby satisfying the requirements of Bankruptcy Code section 1129(a)(5).

M.    The Debtor's business does not involve the establishment of rates over which any regulatory commission has jurisdiction or will have jurisdiction after confirmation. Thus, Bankruptcy Code section 1129(a)(6) is inapplicable to this Chapter 11 Case.

N.    Each holder of a Claim or Equity Holder in an impaired class has accepted the Plan, or will receive or retain under the Plan property having a value, as of the Plan Effective Date, that is not less than the amount that such holder would receive on account of such Claim or Interest if the Debtor were liquidated under Chapter 7 of the Bankruptcy Code.  The Plan therefore complies with the requirements of Bankruptcy Code section 1129(a)(7) and the "best interests" test set forth therein, as reflected more fully in the rulings of this Court, and the evidence introduced on the record at the Confirmation Hearing.

O.    Bankruptcy Code section 1129(a)(8) requires that for each Class of Claims or Interests under the Plan, such Class has either accepted the Plan or is not Impaired under the Plan.  Class A (Priority Claims), Class B (Miscellaneous Secured Claims), and Class F (Equity Interests) are unimpaired and are conclusively presumed to have accepted the Plan without the solicitation of acceptances or rejections pursuant to Bankruptcy Code section 1126(f).  Class C (General Unsecured Claims), Class D (Tort Claims) and Class E (Subordinated Claims) are Impaired and, as set forth in the Voting Declaration, have voted to accept the Plan.

P.    The treatment of Administrative Claims, including Bankruptcy Code section 503(b)(9) Claims, specified in Article II of the Plan, satisfies the requirements of Bankruptcy Code section 1129(a)(9)(A).  The treatment of Priority Tax Claims under Article II of the Plan satisfies the requirements of Bankruptcy Code 1129(a)(9)(C).

Q.    Class C (General Unsecured Claims), Class D (Tort Claims) and Class E (Subordinated Claims) are Impaired and have voted to accept the Plan, without consideration of any acceptance of the Plan by insiders, thus satisfying the requirements of Bankruptcy Code section 1129(a)(10).

R.    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor to the Debtor under the Plan, except as provided in the liquidation provisions of the  Plan.  The evidence introduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other credible evidence in the sole objection to the Plan, and (iii) establishes that the Plan is feasible and that confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Post-Effective Date Debtor (except as specifically set forth in the liquidation provisions of the Plan) or the need for further financial reorganization of the Post-Effective Date Debtor.  Therefore, the Plan satisfies Bankruptcy Code section 1129(a)(11).

S.    On the Effective Date, and thereafter as may be required, the Tort Trustee shall pay all fees payable pursuant to 28 U.S.C. § 1930, including all quarterly fees pursuant to 28 U.S.C. § 1930 that become due after the Effective Date, thus satisfying the requirements of Bankruptcy Code section 1129(a)(12).

T.    Section 1129(a)(13) of the Bankruptcy Code requires that a plan of reorganization provide for the continuation, after the effective date, of all retiree benefits at the level established by agreement or by court order pursuant to section 1114 of the Bankruptcy Code at any time prior to confirmation of the plan, for the duration of the period that the debtor has obligated itself to provide such benefits.  Because the Debtor does not have any such "retiree benefits," section 1129(a)(13) of the Bankruptcy Code is not applicable.

U.    The principal purpose of the Plan is not the avoidance of taxes or avoidance of the requirements of section 5 of the Securities Act of 1933, and no governmental unit has requested that the Bankruptcy Court deny confirmation on such basis.  The Plan satisfies the requirements of Bankruptcy Code section 1129(d).

V.    This Court finds that it may properly retain jurisdiction over the matters set forth in Article XI of the Plan and Bankruptcy Code section 1142.

W.    The conditions precedent to confirmation set forth in Article VII of the Plan have been satisfied or duly waived in accordance with the terms of the Plan.

X.    Article III of the Plan adequately and properly identifies and classifies all Claims and Interests.  The Claims or Interests placed in each Class are substantially similar to other Claims or Interests, as the case may be, in each such Class, and such classification is therefore consistent with Bankruptcy Code section 1122.  Valid business and legal reasons exist for the various Classes of Claims and Interests created under the Plan, and such classification does not unfairly discriminate among holders of Claims or Interests.  The Plan's classification scheme recognizes the differing legal and equitable rights of Creditors versus Equity Holders, secured versus unsecured Claims, and priority versus non-priority Claims.  Accordingly, the Plan satisfies Bankruptcy Code section 1123(a)(1).

Y.    Article III of the Plan states that Class A (Priority Claims), Class B (Miscellaneous Secured Claims) and Class F (Equity Interests) are not impaired under the Plan, thereby satisfying Bankruptcy Code section 1123(a)(2).

Z.    Article III of the Plan states that Class C (General Unsecured Claims), Class D (Tort Claims) and Class E (Subordinated Claims) are Impaired, and Article IV of the

Plan specifies the treatment of such impaired Classes of Claims or Interests.  Thus, Bankruptcy
Code section 1123(a)(3) is satisfied.

AA.    The Plan provides for the same treatment for Claims or Interests in each
respective Class, unless the holder of a particular Claim or Interest has agreed to a less favorable
treatment of such Claim or Interest, thereby satisfying Bankruptcy Code section 1123(a)(4).

BB.    Article V of the Plan provides adequate and proper means for
implementation of the Plan, thereby satisfying Bankruptcy Code section 1123(a)(5).

CC.    As provided in Article VI, Section 6.10, of the Plan, the Post-Effective
Date Debtor's certificate of incorporation and bylaws shall be deemed to include a provision
prohibiting the issuance of non-voting equity securities, thereby satisfying the requirements of
Bankruptcy Code section 1123(a)(6).

DD.    Article VI, Section 6.01(i), of the Plan regarding the selection of the Post-
Confirmation Officer is consistent with the interests of creditors and equity security holders and
with public policy, thereby satisfying Bankruptcy Code section 1123(a)(7).

EE.    In accordance with Bankruptcy Rule 9019, and in consideration of the
distributions and other benefits provided under the Plan, the Plan constitutes a global
compromise and settlement among: (a) the Chapter 11 Trustee, on one hand, and (b) the parties
to the National Settlement Agreements; (c) the parties to the Provider Settlement Agreements;
and (d) the parties to the Shareholder Settlement Agreement, as applicable, on the other hand.
The Chapter 11 Trustee has entered into the Settlement Agreements in exchange for fair and
reasonable consideration.  Each Settlement Agreement is (a) a good faith compromise; (b) in the
best interests of the Debtor, the Debtor's Estate and the holders of Claims and Interests; (c)
within the reasonable range of possible litigation outcomes; (d) fair, equitable and reasonable;

and (e) an essential element of the resolution of the Chapter 11 Case in accordance with the Plan.

Each Settlement Agreement: (a) falls within the jurisdiction of the Court under 28 U.S.C. §§

1334(a), (b) and (d); (b) is an essential means of implementing the Plan pursuant to Bankruptcy

Code section 1123(a)(5); (c) is an integral element of the transactions incorporated in the Plan;

(d) confers material benefits on, and are in the best interests of the Debtor, the Debtor's Estate

and the Debtor's creditors; (e) is vital to the overall objectives of the Plan to finally resolve all

claims among or against the parties in interest in the Bankruptcy case; and (f) is consistent with

Bankruptcy Code sections 105, 1123 and 1129 and other applicable provisions of the Bankruptcy

Code. Each Settlement Agreement has been negotiated at arm's length, has been entered into in

good faith, eliminates the need for costly and time consuming litigation and paves the way

toward confirmation of the Plan. In light of (a) the probability of success in the litigation being

compromised; (b) the difficulties to be encountered in the matter of collection; (c) the complexity

of the litigation involved and the expense, inconvenience and delay in pursuing the litigation;

and (e) the paramount interests of the creditors, and a proper deference to their views, the

Settlement Agreements are in the best interest of the Estate.

FF.    The release of Claims described in Article X, Section 10.05 of the Plan

constitute good faith compromises and settlements of the matters covered thereby. Such

compromises and settlements are made in exchange for the consideration identified in the

Settlement Agreements; are in the best interests of the holders of Claims; are fair, equitable, and

reasonable; and are integral elements of the Plan. Each of the release, indemnification and

exculpation provisions set forth in the Plan (1) is within the jurisdiction of the Court under 28

U.S.C. §§1334(a), (b) and (d); (2) is an essential means of implementing the Plan pursuant to

section 1123(a)(5) of the Bankruptcy Code; (3) is an integral element of the Settlement

Agreements identified in the Plan; (4) confers material benefit on, and is in the best interest of

the Debtor, the Estate and its creditors; (5) is important to the overall objectives of the Plan to

finally resolve all Claims among or against the parties-in-interest in the Chapter 11 Case and (6)

is consistent with sections 105, 1123, 1129 and other applicable provisions of the Bankruptcy

Code.

GG.     The third party releases and injunctions set forth in Article X of the Plan

are appropriate because: (a) the Debtor and the third parties share a unity of interest; (b) the third

parties have contributed substantial assets which are to be distributed to holders of Claims under

the Plan; (c) the third party releases and injunctions are essential to the Settlement Agreements

and therefore are essential to the Plan; (d) the creditors who are affected by the third party

releases have voted overwhelmingly in favor of the Plan; (e) the Plan provides a mechanism to

resolve and make payment towards claims of the affected creditors through the Tort Trust and the

Plan Proponents have provided notice to affected creditors sufficient to provide them with the

opportunity adequately to protect their interests; and (f) the facts and circumstances of this case

sufficiently establish extraordinary circumstances to warrant approval of the third party releases

and injunctions.

HH.     The releases by the Debtor, as set forth in Article X, Section 10.5(i), of the

Plan, are being provided as part of the Settlement Agreements, which themselves represent a

global compromise that is supported by all major constituencies.

II.     The exculpation provisions set forth in Article XII, Section 10.03, of the

Plan, establish a willful misconduct standard for any liability related to the Chapter 11 Case and

are limited to estate fiduciaries.  The exculpation provisions therefore comply with applicable

law.

JJ.     The term Other Contributing Parties includes, without limitation, those persons and entities listed on Schedule A hereto.

Accordingly, it is hereby **ORDERED, ADJUDGED AND DECREED** that:

1.   <u>Approval</u>.  The Plan attached hereto as Exhibit A is approved and confirmed, as having satisfied all of the requirements of Chapter 11 of the Bankruptcy Code.  All terms of the Plan are incorporated herein by reference, are an integral part of this Confirmation Order, and are so ordered.

2.   <u>Findings of Fact and Conclusions of Law</u>.   The findings of fact and conclusions of law set forth herein and at the Confirmation Hearing constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, as made applicable herein by Bankruptcy Rule 9014.  To the extent any finding of fact shall be determined to be a conclusion of law, it shall be so deemed, and vice versa.

3.   <u>Confirmation Objections</u>.  All confirmation objections and responses to the Plan, including, but not limited to, the United States Trustee's Objection to Confirmation of the First Amended Joint Plan of Liquidation of New England Compounding Pharmacy, Inc. [Dkt. 1272], both filed and informal, to the extent not resolved, withdrawn or otherwise addressed by this Confirmation Order or as set forth on the record at the Confirmation Hearing, including any reservations of rights contained therein, are hereby overruled on the merits.

4.   <u>Effects of Confirmation; Immediate Effectiveness.</u>   Subject to the stay contemplated by Bankruptcy Rule 3020(e), and Article IX of the Plan, and notwithstanding any otherwise applicable law, immediately upon entry of the Confirmation Order, the terms of the Plan (including the Plan exhibits and all documents and agreements executed pursuant to the Plan) and this confirmation Order are deemed binding upon (a) the Debtor, (b) the Post-Effective

Date Debtor, (c) all holders of Claims against and Equity Holders in the Debtors, whether or not Impaired under the Plan and whether or not, if Impaired, such Holders accepted the Plan, (d) each Person acquiring property under the Plan, (e) any other party-in-interest, (f) any Person making an appearance in this Chapter 11 Case, and (g) each of the foregoing's respective heirs, successors, assigns, trustees, executors, administrators, affiliates, officers, directors, agent, representatives, attorneys, beneficiaries, or guardians.

5.  Continued Corporate Existence of the Post-Effective Date Debtor.  Except as otherwise provided in the Plan, the Post-Effective Date Debtor shall continue to exist, with all the powers of a corporation under applicable law and shall be deemed to be reorganized and reincorporated as a Massachusetts corporation as of the Effective Date pursuant to its certificate of incorporation and bylaws or other organizational documents.

6.  Vesting of Assets.  On the Effective Date, and except as otherwise set forth in the Plan and in this Confirmation Order, all property of the Debtor's Estate shall vest in the Post-Effective Date Debtor free and clear of all Claims, Liens, charges, encumbrances, rights, and Interests of creditors and equity security holders; for the avoidance of doubt, the Estate Causes of Action shall vest in the Tort Trustee.

7.  Releases by the Debtor and Estate Representative(s).  Except as set forth in section 10.05(i) of the Plan, and subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, the Debtor, the Chapter 11 Trustee, the Estate Representative(s) and the Estate shall unconditionally release, and hereby are deemed to forever unconditionally release, the Shareholder and Affiliate Released Parties, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, and the Tort Claimants from any and all Claims, debts, obligations, demands, liabilities, suits, judgments,

damages, rights and Estate Causes of Action, whatsoever (other than the right to enforce the obligations under the Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements.

8.   <u>Releases in Favor of the Debtor and Estate Representative(s)</u>.   Subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, each of the Debtor, the Chapter 11 Trustee, the Estate Representative(s), and the Estate shall be forever and unconditionally released from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever by all Entities (other than the right to enforce the obligations under the Plan, the Settlement Agreements and the contracts, instruments, releases and other agreements and documents delivered thereunder), whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, any prepetition act or omission of the Debtor, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements.

9.  <u>Releases by Shareholder and Affiliate Released Parties</u>.  Subject in all respects to the provisions of Section 10.04 of the Plan and the Shareholder Settlement Agreement, on the Effective Date, each of the Shareholder and Affiliate Released Parties shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Other Contributing Parties, including, without limitation, GDC, the Individual GDC Insureds, Preferred Mutual, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Shareholder and Affiliate Released Parties to the Debtor or to the Chapter 11 Trustee pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreement,  and the contracts, instruments, releases and other agreements and documents delivered thereunder.

10. <u>Releases in Favor of Shareholder and Affiliate Released Parties (Other than Ameridose)</u>.  Subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, the Shareholder and Affiliate Released Parties (other than Ameridose), as well as

their respective attorneys and advisors (solely in their respective capacities as such), shall be forever and unconditionally released from any and all Tort Claims, Estate Causes of Action, Contributor and Affiliate Released Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, transfer, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that the right to enforce the obligations under the Shareholder Settlement Agreement, the Shareholder Escrow Agreement and the Plan and the contracts, instruments, releases and other agreements and documents delivered thereunder, and the right to enforce the provisions of the Shareholder Settlement Agreement with regard to "Non-Disclosed Assets" (as defined therein), shall be expressly preserved by the Estate Representative in accordance with the terms of the Shareholder Settlement Agreement.

11. Releases by Other Contributing Parties.  Except as to the rights and claims expressly preserved by the Settlement Agreements and subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, each Other Contributing Party including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual,  shall unconditionally release, and hereby are deemed to forever unconditionally release, each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Tort Claimants, the Shareholder and Affiliate

Released Parties, each additional Other Contributing Party, and the foregoing persons' and entities' respective attorneys and advisors (solely in their respective capacities as such) from any and all Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights, and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC, and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not apply to any Claims assigned by the Other Contributing Parties to the Debtor pursuant to a Settlement Agreement, nor shall it apply to the right to enforce the obligations under the Plan, the Settlement Agreement, and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.

12. <u>Releases in Favor of Other Contributing Parties (Other than Ameridose)</u>. Except as to the rights and claims expressly preserved by the Settlement Agreements and subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date each Other Contributing Party (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, shall be forever and unconditionally released from any and all Estate Causes of Action, Tort Claims, NECC Claims, and all other Claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, by all Entities, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise

that are based in whole or in part upon any act or omission, transaction, event or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation or funding of the Settlement Agreements; provided, however, that this release shall not in any way limit the right of the Estate Representative to enforce the obligations under the Plan, the Settlement Agreements, and the contracts, instruments, releases and other agreements and documents delivered thereunder in the Estate's favor.

13. <u>Releases by Tort Claimants</u>.  Subject in all respects to the provisions of Section 10.04 of the Plan, on the Effective Date, each Tort Claimant shall unconditionally release, and hereby is deemed to forever unconditionally release each of the Debtor, the Debtor's estate, the Chapter 11 Trustee, the Estate Representative(s), the Official Committee, the Official Committee members, the Other Contributing Parties (other than Ameridose), including, without limitation, GDC, the Individual GDC Insureds and Preferred Mutual, the Shareholder and Affiliate Released Parties (other than Ameridose), all parties released under the Settlement Agreements, and the foregoing persons' and entities' respective attorneys and advisors (solely in their capacities as such) from the Tort Claims, the NECC Claims, the Contributor and Affiliate Released Claims, and any and all claims, debts, obligations, demands, liabilities, suits, judgments, damages, rights and causes of action, whatsoever, whether direct or indirect, liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, then existing or thereafter arising, in law, equity or otherwise that are based in whole or in part upon any act or omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtor or to the Debtor's products, including, without

limitation, the Drugs, the Chapter 11 Case, the Plan, the Disclosure Statement, the Debtor's estate, the Policies, GDC and the negotiation of the Settlement Agreements; provided, however, that this release shall not apply to the right to enforce the obligations under the Plan, the Settlement Agreement,  and the contracts, instruments, releases and other agreements and documents delivered thereunder in their favor.

14. Injunction in Favor of the Debtor and Estate Representative(s).  Except as to the rights and claims created or expressly preserved by the Plan, the Settlement Agreements the Shareholder Escrow Agreement, and the Confirmation Order, upon the Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from asserting against the Debtor, the Chapter 11 Trustee, and the Estate Representative(s) any past, present and future rights, interests, obligations, claims, causes of action, damages (including punitive damages), demands (including demands for contribution, indemnity or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees, consulting fees and other professional fees) and costs of any kind or any type whatsoever, whether known or unknown, whether foreseen or unforeseen, whether direct or indirect, contingent or actual, whether liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies,

except with regard to the claims and rights expressly reserved pursuant to Section 10.05 of the
Plan.

        15. <u>Injunction in Favor of Shareholder and Affiliate Released Parties</u>.  Upon the
Effective Date, all Persons or Entities shall be permanently barred, enjoined, and restrained from
commencing, prosecuting, continuing or asserting, either derivatively or on behalf of themselves,
in any court, arbitration proceeding, administrative agency, or other forum in the United States of
America or elsewhere, any and all Claims released pursuant to Section 10.05 of the Plan or under
the Shareholder Settlement Agreement, whether the Person or Entity had actual or constructive
notice of the terms of the Shareholder Settlement Agreement, Plan or Confirmation Order or
otherwise, *except that* this injunction shall not apply to the right of the acting Estate
Representative to enforce the Substitute Lien and the obligations and the acting Estate
Representative's rights under the Shareholder Settlement Agreement, the Escrow Agreement, the
Plan, and the Confirmation Order.

        16. <u>Injunction in Favor of the Other Contributing Parties</u>.  Except as to the rights
and claims created or expressly preserved by the Plan, the Settlement Agreements, the Escrow
Agreement and the Confirmation Order, upon the Effective Date, all Persons or Entities shall be
permanently barred, enjoined, and restrained from asserting against the Other Contributing
Parties, including, without limitation, GDC, the Individual GDC Insures and Preferred Mutual,
any past, present and future rights, interests, obligations, claims, causes of action, NECC Claims,
damages (including punitive damages), demands (including demands for contribution, indemnity
or otherwise), liabilities, expenses, fees (including, but not limited to, attorneys' fees, expert fees,
consulting fees and other professional fees) and costs of any kind or any type whatsoever,
whether known or unknown, whether foreseen or unforeseen, whether contingent or actual,

whether direct or indirect, liquidated or unliquidated, whether statutory or common law, whether asserted or unasserted and whether based on contract, negligence, bad faith, willful, wanton or malicious conduct, or any other theory in law or equity concerning, arising from or relating to any actual or alleged past, present or future act, omission, defect, incident, event or circumstance from the beginning of the world to the Effective Date, in any way relating to or in connection with (i) the Debtor, the Drugs or any and all products of and/or distributed by the Debtor, or (ii) the Debtor's estate, the Chapter 11 Case, the Plan, the Disclosure Statement, the Settlement Agreements and/or the Policies..

17. The release and injunction provisions of the Plan, specifically those in sections 10.05 and 10.06 of the Plan, shall not be deemed to abrogate any defense based upon comparative fault that may be available under applicable state law to Persons or Entities signatory to the Stipulations and Agreed Orders dated May 1, 2015 and May 4, 2105 [Dkt. 1270 and 1278], or any supplements thereto, and named as defendants in lawsuits arising from the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC. The release and injunction provisions shall not preclude any such Person or Entity from naming the Debtor and/or the Tort Trust, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer Contributing Party(ies), as a party to the applicable proceeding, for the sole purpose of apportioning liability or otherwise securing a reduction in liability on account of the Debtor's, such Non-Insurer Contributing Party(ies)'s, or the Tort Trust's, as successor in interest to claims against the Debtor and/or the applicable Non-Insurer

Contributing Party(ies), fault or comparative fault, subject to and expressly conditioned on the satisfaction of the following conditions:

1.    Neither Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trustee shall be named as a party in any such proceeding.

2.    Neither the Debtor, nor Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, nor any such Non-Insurer Contributing Party, nor the Tort Trust, nor the Tort Trustee shall be required to enter an appearance in any such proceeding.

3.    No judgment requiring the Debtor, Paul D. Moore, as the duly appointed Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee to pay a damages award will be sought or entered against NECC, any such Non-Insurer Contributing Party, Paul D. Moore as the duly appointed Chapter 11 Trustee of NECC in the above-captioned bankruptcy case or the Post-Confirmation Officer, the Tort Trust, or the Tort Trustee in any such proceeding, but, if otherwise permitted by applicable state law, an affirmative defense asserting the comparative fault of the Debtor or any such Non-Insurer Contributing Party, may be asserted.

4.    So long as permitted by applicable state law, any allocation of fault to NECC or any such Non-Insurer Contributing Party shall only be for purposes of reducing such Person or Entity's potential liability pursuant to the principles of comparative fault, and shall not be given preclusive effect, nor any effect whatsoever, other than to reduce such Person or Entity's liability.

5.    Such relief shall be solely to permit such Persons or Entities to assert and prove any right they may have to reduce their potential liability pursuant to the principles of comparative fault, and not to permit, or otherwise authorize, such Persons or Entities to pursue the prosecution of any claims for affirmative or other relief against the Debtor, Paul D. Moore, as the duly appointed

> Chapter 11 Trustee of NECC in the Bankruptcy Case or the Post-Confirmation Officer, any such Non-Insurer Contributing Party, the Tort Trust, or the Tort Trustee, in such tort cases.

18. Further, the approval of the Plan and the releases and injunctions contained therein or entered pursuant thereto shall not be construed as precluding any Person or Entity from enforcing any judgment reduction, credit, or setoff rights otherwise available to it under applicable law for reduction of damages that may be assessed against any party not a Contributing Party or a Shareholder and Affiliate Released Party in connection with any lawsuit arising from the actual or alleged design, formulation, compounding, production, labeling, testing, marketing, advertising, supply, dispensing, sale, shipment, distribution or administration of injectable methylprednisolone acetate or any other drugs or products compounded, produced, sold or distributed by NECC.

19. <u>Enforcement of the Plan Releases and Injunctions in Favor of ARL</u>.  For a period of one year following entry of the Confirmation Order, the Tort Trustee shall take all actions as may be necessary to enforce the provisions of the Plan releases and the Plan injunctions in favor of ARL and Landmark; provided, however, that the Tort Trust trustee shall not be required to incur more in the aggregate than $100,000.00 in doing so.  Further, any Person determined to be in violation of the Plan releases and Plan injunctions in favor of ARL  shall pay the attorney's fees and costs incurred by ARL and Landmark in connection with efforts to enforce those releases and injunctions or otherwise defending Claims released under the Plan on and following the Plan Effective Date.

20. <u>Enforcement of the Plan Releases and Injunctions in Favor of Unifirst, National Union and North American Elite</u>.  For a period of one year following entry of the Confirmation Order, the Tort Trustee shall take all actions as may be necessary to enforce the

provisions of the Plan releases and the Plan injunctions in favor of Unifirst, National Union and

North American Elite; provided, however, that the Tort Trust trustee shall not be required to incur

more in the aggregate than $100,000.00 in doing so. Further, any Person determined to be in

violation of the Plan releases and Plan injunctions in favor of Unifirst, National Union and North

American Elite shall pay the attorney's fees and costs incurred by Unifirst, National Union and

North American Elite in connection with efforts to enforce those releases and injunctions or

otherwise defending Claims released under the Plan on and following the Plan Effective Date.

      21. <u>Automatic Stay</u>. The stay in effect in the Chapter 11 Cases pursuant to section

362(a) of the Bankruptcy Code shall continue to be in effect until the Effective Date, and at that

time shall be dissolved and of no further force or effect, subject to the injunction set forth in the

preceding paragraph and/or sections 524 and 1141 of the Bankruptcy Code; provided however,

that nothing herein shall bar the taking of any actions as are necessary to effectuate the

transactions specifically contemplated by the Plan or by this Confirmation Order prior to the

Effective Date.

      22. <u>Binding Effect</u>. As of the Effective Date, the Plan shall be binding upon and

inure to the benefit of the Debtor, the Post-Effective Date Debtor, all present and former

Creditors (wherever located anywhere in the world), all present and former Equity Holders, other

parties-in-interest and their respective heirs, successors and assigns.

      23. <u>Release of Liens and Guarantees</u>. Except as otherwise provided in the Plan or

the Confirmation Order, or in any contract, instrument, release or other agreement or document

entered into or delivered in connection with the Plan, on the Effective Date and/or concurrently

with the applicable distributions made pursuant to the Plan, all mortgages, deeds of trust, liens or

other security interests against the property of any Estate are fully released and discharged

(except to the extent reinstated under the Plan), and all right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interest, including any rights to any collateral thereunder, shall revert to the Post-Effective Date Debtor and its successors and assigns.

24. <u>Effectuating Documents; Further Transactions</u>.    The approvals and authorizations specifically set forth in this Confirmation Order are nonexclusive and are not intended to limit the authority of the Debtor or the Post-Effective Date Debtor or the Estate Representative to take any and all actions necessary or appropriate to implement, effectuate and consummate any and all documents or transactions contemplated by the Plan or this Confirmation Order.  The Debtor, the Post-Effective Date Debtor, and the Estate Representative are authorized to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents, and take such actions as they may deem necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

25. <u>Post-Confirmation Officer</u>.  Paul D. Moore shall be the Post-Confirmation officer of the Post-Effective Date Debtor upon the occurrence of the Effective Date, without the need for any further order of any court, notice to any Persons or Entities, or bond.

26. <u>Approval of Settlement Agreements.</u>  To the extent not previously approved by this Court, the National Settlement Agreements, including the Ameridose Settlement Agreement, the ARL Settlement Agreement, the GDC Settlement Agreement, the Liberty Industries Settlement Agreement, the PMIC/Maxum Settlement Agreement, the UniFirst Settlement Agreement and the Victory Settlement Agreement; the Provider  Settlement Agreements, including the High Point Settlement Agreement, the Insight Settlement Agreement, and the Inspira Settlement Agreement; and the Shareholder Settlement Agreement are hereby

approved pursuant to Bankruptcy Rule 9019 as fair, equitable, reasonable and in the best interest

of the Debtor, its Estates and its creditors and interest holders, are binding on all entities affected

thereby, and shall be effectuated in accordance with the terms thereof.

27. <u>Subordination of Class E Claims</u>.  Pursuant to the terms and conditions set

forth in the Plan, Subordinated Claims in Class E shall be, and hereby are, subordinated for

purposes of distribution under the Plan to other general unsecured claims, as and to the extent

provided in the Plan and in section 509 of the Bankruptcy Code.

28. <u>Exhaustion of Insurance Policies</u>.  On the Effective Date, the NECC Policies

shall be deemed completely exhausted, and any and all of PMIC's and Maxum's obligations

under the NECC Policies shall be, and are deemed to be, extinguished.  On the Effective Date,

the Ameridose Primary Policies shall be deemed completely exhausted, and any and all of

PMIC's obligations under the Ameridose Policies shall be, and are deemed to be, extinguished.

Further, any and all other provisions of any Settlement Agreement that provide for exhaustion of

any insurance policy are also approved and incorporated herein.

29. <u>The Tort Trust</u>.  As of the Effective Date, the Tort Trust shall be established

pursuant to Article V of the Plan for the primary purpose of implementing the Plan on behalf of,

and for the benefit of, the Tort Trust Beneficiaries, and to serve as a mechanism for liquidating

the Tort Trust Assets in an expeditious but orderly manner for the benefit of Tort Trust

Beneficiaries and holders of Allowed Class E Claims, with no objective to continue or engage in

the conduct of a trade or business, except to the extent reasonably necessary to, and consistent

with, the liquidating purposes of the Tort Trust. The Tort Trust is organized and established as a

trust pursuant to which the Tort Trustee, subject to the terms and conditions contained herein and

in the Plan, is to hold the Tort Trust Assets and dispose of the same in accordance with the Tort

Trust Agreement and the Plan in accordance with Treasury Regulation section 301.7701-4(d). The Tort Trust Agreement appears at Docket No. 1123-1 and approved in its entirety. Lynne F. Riley has been appointed as the Tort Trustee by the MDL Court [MDL Court Dkt. 1853]. The Tort Trustee shall be bonded in an amount equal to or exceeding the amount of funds she holds at any given time.

30.     <u>Quasi-Judicial Immunity</u>.     The Post-Confirmation Officer, the Estate Representative, the Tort Trustee, the Settlement Administrator and the Appeals Administrator are entitled to quasi-judicial immunity to the fullest extent allowed by law in connection with their implementation of this Confirmation Order, the Plan, the Tort Trust Agreement, the Claims Resolution Facility and the Provider Claims Resolution Facilities.

31. <u>Exemption from Certain Transfer Taxes and Recording Fees</u>.     Pursuant to section 1146(a) of the Bankruptcy Code, the making or assignment of any lease or sublease, or the making or delivery of any instrument of transfer from the Estate or the Post-Confirmation Debtor to the Tort Trust or any other Person or any government, governmental agency or any subdivision, department or other instrumentality thereof, pursuant to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax or other similar tax or governmental assessment and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment. Without limiting the foregoing, any issuance, transfer or exchange of a security or any making or delivery of an instrument of transfer pursuant to the Plan shall be exempt from the imposition and payment of any and all transfer taxes (including

but not limited to any and all stamp taxes or similar taxes and any interest, penalties and addition to the tax that may be required to be paid in connection with the consummation of the Plan and the Plan Documents) pursuant to sections 1146(a), 505(a), 106 and 1141 of the Bankruptcy Code.

32. <u>Preservation of Causes of Action</u>.  Except as may be otherwise provided in the Plan, the Post-Effective Date Debtor shall retain all Estate Causes of Action, which shall vest in the Post-Effective Date Debtor on the Effective Date. Thereafter, as and when provided for under the Plan, the Estate Causes of Action shall be transferred to the Tort Trust as part of the Initial Tort Trust Assets.

33. <u>Proofs of Claim, Patient Lists and PITWD Addenda</u>.  Upon request made to the Estate Representative on or after the Effective Date by the Tort Trustee, the Tort Trustee, the Settlement Administrator or the Appeals Administrator, the Estate Representative shall deliver to the Tort Trustee, the Tort Trustee, the Settlement Administrator or the Appeals Administrator, as applicable, on an un-redacted basis, the relevant Patient Lists and all proofs of claim and supporting documentation (including the PITWD Addenda) for purposes of effectuating the Tort Trust and distributions to holders of Allowed Class D Claims or Allowed Class E Claims.  With respect to the Patient Lists and PITWD Addenda, the Tort Trustee, the Settlement Administrator and the Appeals Administrator shall each be bound by the confidentiality restrictions applicable to the Patient Lists and PITWD Addenda contained in the Interim Bar Date Order and the Bar Date Order, as applicable, but notwithstanding same, shall be entitled to utilize the information contained in the Patient Lists and/or proofs of claim and supporting documentation (including the PITWD Addenda) in the process of reviewing, and determining or allowing ,claims.

34.    <u>The Expense Fund</u>.  On or after the Confirmation Date, if he deems advisable in

his sole discretion, the Estate Representative shall appoint an Expense Fund Administrator and transfer the Expense Fund Amount to the Expense Fund Administrator. The Expense Fund, and earnings thereon, may be used for, *inter alia*, payment of Allowed Class C Claims, Allowed Administrative Claims, Allowed Priority Tax Claims, Allowed Priority Non-Tax Claims, the post-confirmation fees and expenses of the Estate Representative, fees and expenses, including applicable income taxes, of the Expense Fund, and such other fees or expenses of the Debtor and the Estate as determined in the sole judgment of the Expense Fund Administrator. The allocation and disbursement of the Expense Fund shall be determined in the sole judgment of the Expense Fund Administrator. To the extent that a portion of the Expense Fund is not disbursed, or otherwise held in reserve to fund the costs and expenses described herein, in the sole judgment of the Expense Fund Administrator, such portion shall be transferred to the Tort Trust, and shall be subject to the terms thereof. In no event shall any amount transferred to the Expense Fund revert to the Debtor. The Debtor shall have no rights in the Expense Fund except as determined by the Expense Fund Administrator in accordance with Section 6.04 of the Plan. For all applicable income tax purposes, the Expense Fund Administrator shall file income tax returns for the Expense Fund as a complex trust or other tax entity as determined by the Expense Fund Administrator, and the Expense Fund shall be subject to and shall pay tax on its taxable income, if any.

35. Disallowance of Multi-Claimant Proofs of Claim. In accordance with paragraph 10 of the Bar Date Order, claims evidenced by "Multi-Claimant PITWD Claims," or by proofs of claim joining or on behalf of two (2) or more claimants, or by proofs of claim purporting to be on behalf of a class of claimants, submitted without the prior approval of this Court, shall be and are hereby disallowed to the extent not previously disallowed; provided,

_however_, that proofs of claim joining or on behalf of two (2) claimants, one of whose sole Claim is a Class D Consortium Claim, shall not be and are not so disallowed.

36. <u>Assumed and Rejected Contracts and Leases</u>.  On the Effective Date, all executory contracts and unexpired leases to which the Debtor is or may be deemed a party, ***except for and other than the Settlement Agreements and insurance policies issued to, or insurance agreements entered into by the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct),*** shall be deemed rejected as of the Effective Date, without the need for any further action by the Post-Confirmation Officer except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court entered prior to the Effective Date or (ii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Debtor prior to the Effective Date.

37. <u>Insurance Policies and Agreements</u>.  Except as set forth in the Settlement Agreements, Plan or this Confirmation Order, insurance policies issued to, or insurance agreements entered into by the Debtor prior to the Petition Date (including, without limitation, any policies covering directors' or officers' conduct) shall continue in effect after the Effective Date.  To the extent that such insurance policies or agreements (including, without limitation, any policies covering directors' or officers' conduct) are considered to be executory contracts, then, notwithstanding anything to the contrary in the Plan, the Plan shall constitute a motion to assume or ratify such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of this Confirmation Order shall constitute approval of such assumption pursuant to section 365(a) of the Bankruptcy Code and a finding that each such assumption is in the best interests of the Debtor and its Estate.  Unless otherwise determined by this Court pursuant to a

Final Order or agreed to by the parties thereto prior to the Effective Date, no payments shall be required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.  To the extent that this Bankruptcy Court determines otherwise as to any such insurance policy or agreement, the Plan Proponents reserve the right to seek the rejection of such insurance policy or agreement or other available relief.

38. <u>Indemnification Obligations.</u>  Subject to Article VI, Section 6.01(iii), of the Plan, or any contract, instrument, release, or other agreement or document entered into in connection with the Plan, any and all indemnification obligations that the Debtor has pursuant to a contract, instrument, agreement, certificate of incorporation, by-law, comparable organizational document or any other document, or applicable law that has not been rejected under Bankruptcy Code section 365 are hereby rejected.  In consideration for the releases and injunctions provided in the Plan and the Settlement Agreement, the rejection claims of former and current officers or directors of the Debtor, if any, resulting from the rejection of any contract or agreement for indemnification or any claim arising from any state statute are hereby deemed waived.

39. <u>Rejection Damages Date.</u>  In the event that the rejection of an executory contract or unexpired lease by the Debtor pursuant to this Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtor, or any property to be distributed under this Plan unless a proof of claim is filed with the Bankruptcy Court and served upon the Post-Confirmation Officer on or before the date that is thirty (30) days after the Confirmation Date or such earlier date previously ordered by this Court.

40. <u>Pre-Confirmation Date Administrative Expense Claims.</u>  Except for applications by professionals under section 330 of the Bankruptcy Code and fees payable

pursuant to 28 U.S.C. § 1930, all requests for payment of Administrative Expense Claims for which an earlier deadline has not been previously set or imposed by Local Rule 3002-1 shall be filed and served on each of the Plan Proponents no later than thirty (30) days after service of notice of entry of this Confirmation Order, unless otherwise extended by Order of this Court.

41. Professional Fee Claims and Final Fee Applications. All applications by professionals under section 330 of the Bankruptcy Code for final compensation for services rendered and reimbursement of expenses incurred in connection with this Chapter 11 Case shall be filed no later than sixty (60) days after the Effective Date, unless otherwise extended by order of this Court. Such fee applications shall seek approval of all fees and expenses incurred by such professionals on or before the Effective Date and may include an estimate of fees and costs incurred after the Effective Date in preparation and resolution of the fee application. Notwithstanding anything to the contrary contained in the Plan, the Settlement Agreement or this Confirmation Order: (i) the Chapter 11 Trustee's and the Official Committee's post-petition professionals shall have the right to appear and be heard on all matters related to applications for final compensation of professional persons for services rendered and reimbursement of expenses incurred on or before the Effective Date; and (ii) absent a stay pending appeal by a court of competent jurisdiction pursuant to Bankruptcy Rule 8005 or other order of the Bankruptcy Court, the Chapter 11 Trustee shall pay each professional the amount of fees and expenses awarded by the Bankruptcy Court within ten (10) days of the date of the order allowing the same, notwithstanding the filing of an appeal therefrom, provided that such an order is not then subject to any stay.

42. Distributions. The provisions of the Plan governing distributions and the procedures for treating and resolving disputed and contingent claims under the Plan, including

those contained in Article V, Section 5.10, and Article VI, Section 6.05, of the Plan, are approved and found to be fair and reasonable. Notwithstanding any provision of the Plan to the contrary, Distributions shall be made only to Holders of Allowed Claims. No Holder of a Disputed Claim shall receive any Distribution on account thereof until (and then only to the extent that) its Disputed Claim becomes an Allowed Claim. The Post-Effective Debtor and the Tort Trustee, as applicable, may, in their discretion, withhold Distributions otherwise due under the Plan to any individual Creditor pending the filing and determination of any objection to any such Claim. Any Holder of a Claim that becomes an Allowed Claim after the Effective Date shall receive its Distribution in accordance with the terms and provisions of the Plan.

43. W-9 Requirement. No distribution shall be made to any Claimant in Class A, B or C, and the Claimant's Claim shall be disallowed without further order of the Bankruptcy Court, if such Claimant has not delivered a signed form W-9 to the Post-Confirmation Officer on or before sixty (60) days after the Effective Date.

44. Applicability of Section 1125 of the Bankruptcy Code. The Debtor, the Chapter 11 Trustee, the Official Committee and each of their respective successors, members, officers, directors, employees, agents, attorneys, representatives, and other retained professionals, including the professionals retained by such members (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code, Bankruptcy Rules, the Local Bankruptcy Rules, and any applicable nonbankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation of acceptances to the Plan or elections thereunder and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of

securities under the Plan (if any) and, therefore, shall not be liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or elections thereunder or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code.

45. Payment of Statutory Fees and Related Reports.  All fees due and payable pursuant to 28 U.S.C. § 1930, as determined by this Court at the Confirmation Hearing, shall be paid on the Effective Date by the Tort Trustee, and all fees due and payable thereafter shall be paid by the Tort Trustee until the case is closed. After confirmation, the Tort Trustee will serve the U.S. Trustee with a quarterly financial report for each quarter (or portion thereof) that the case remains open.  The quarterly financial report shall include the following: (i) a statement of all disbursements made during the quarter by or on behalf of the Tort Trustee, whether or not pursuant to the Plan; (ii) a summary, by class, of amounts distributed or property transferred to each recipient under the Plan, and an explanation of the failure to make any distributions or transfers of property under the Plan, if any; (iii) the Tort Trustee's projections as to her continuing ability to comply with the terms of the Plan; (iv) a description of any other factors which may, in the Tort Trustee's view, materially affect her ability to complete her obligations under the Plan; and (v) an estimated date when an application for final decree will be filed with the Court (in the case of the final quarterly disbursement report, the date the decree was filed). The U.S. Trustee shall not be required to file a request for payment of its quarterly fees, which shall be paid by the Tort Trustee in accordance with Article XII, Section 12.05 of the Plan.

46. Dissolution of the Official Committee.  The Official Committee shall dissolve on the Effective Date; *provided, however*, that (i) the Official Committee shall continue to exist after the Effective Date for the purposes of defending any pending appeals of this Confirmation

Order and taking any actions related thereto, and the Official Committee's professionals may seek compensation for and reimbursement of expenses related to such defense and actions, if any, from the Post-Effective Date Debtor, and (ii) after dissolution of the Official Committee, the Official Committee's professionals shall retain their obligations to pursue, review and object to any applications for compensation and reimbursement of expenses filed in accordance with Article II, Section 2.01 of the Plan.

47. <u>Consents and Approvals</u>.   This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules or regulations of any State or any other governmental authority with respect to the implementation or consummation of the Plan and any other acts that may be necessary or appropriate for the implementation or consummation of the Plan.

48. <u>Retention of Jurisdiction</u>.   Notwithstanding confirmation of the Plan or the occurrence of the Plan Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising out of, and related to, the Chapter 11 Case and the Plan to the fullest extent permitted by law, including among other things, jurisdiction over the matters set forth in Article XI of the Plan.

49. <u>Failure to Reference Provisions of the Plan</u>.   The failure to reference or discuss any particular provision of the Plan in this Confirmation Order shall have no effect on the validity, binding effect and enforceability of such provision and such provision shall have the same validity, binding effect and enforceability as every other provision of the Plan.  All terms and provisions of the Plan are deemed so ordered by the Bankruptcy Court as if such terms and provisions had been set forth in this Confirmation Order.

50. <u>Actions of the Post-Confirmation Officer.</u>  The Post-Confirmation Officer may take all actions not inconsistent with the provisions of the Plan which the Post-Confirmation Officer deems reasonably necessary or desirable with respect to administering the Plan.

51. <u>Plan Modifications</u>.  The Plan may be amended, modified or supplemented by the Plan Proponents in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as the Bankruptcy Court may otherwise direct.  Prior to the Effective Date, the Plan Proponents may make appropriate technical adjustments and modifications to this Plan without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not materially and adversely affect the treatment of holders of Claims or Equity Interests.  In addition, after the Effective Date, so long as such action does not materially and adversely affect the treatment of holders of Claims or Equity Interests under this Plan, the Post-Confirmation Officer may institute proceedings in this Court to remedy any defect or omission or reconcile any inconsistencies in the Plan or this Confirmation Order. Notwithstanding the foregoing, without the prior express consent of the Shareholder and Affiliate Released Parties and of the Other Contributing Parties, the Plan may not be amended pursuant to this paragraph if, after such amendment, the Plan is no longer in a form acceptable to the Shareholders as to the matters relating to the Shareholder Settlement Agreement or if the Plan would no longer include the releases and injunctions in favor of the Shareholder and Affiliate Released Parties and of the Other Contributing Parties set forth in Sections 10.05 and 10.06 of the Plan.

52. <u>Notice of Entry of Confirmation Order</u>.  The Plan Proponents and their authorized agent shall serve notice of (a) entry of this Confirmation Order, (b) the Plan Effective

Date and (c) the bar dates for filing Administrative Claims and Professional Fee Claims, substantially in the form annexed hereto as Exhibit B (the "Plan Confirmation Notice"), which form is hereby approved, on all creditors of the Debtors as of the date hereof, and other parties in interest within five Business Days from the Confirmation Date.

53. Revocation, Withdrawal Or Non-Consummation.   If consummation of the Plan does not occur, then, except as may otherwise be provided in any Settlement Agreement or order of the Bankruptcy Court, (a) the Plan shall be null and void in all respects, (b) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount any Claim or Class of Claims), assumption or rejection of executory contracts or leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan, and no acts taken in preparation for consummation of the Plan, shall (i) constitute or be deemed to constitute a waiver or release of any Claims by or against, or any Interests in, the Debtor or any other Person, (ii) prejudice in any manner the rights of the Chapter 11 Trustee or any other Person, or (iii) constitute an admission of any sort by the Chapter 11 Trustee or any other Person.

54. Inconsistency.   In the event of an inconsistency between the Plan and any other agreement, instrument, or document intended to implement the provisions of the Plan, the provisions of the Plan shall govern unless otherwise expressly provided for in such agreements, instruments, or documents.   In the event of any inconsistency between the Plan and any agreement, instrument or document intended to implement the Plan and this Confirmation Order, the provisions of this Confirmation Order shall govern, unless otherwise expressly provided for in such agreements, instruments, or documents.   Nothing in the Plan, including, without

limitation, this paragraph, shall alter, supersede, modify or invalidate any settlements or prior order of the Bankruptcy Court approving any settlements.

55. <u>Enforceability</u>.  Pursuant to Bankruptcy Code sections 1123(a) and 1142(a) and the provisions of this Confirmation Order, the Plan, and all Plan-related documents shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

56. <u>Nonseverability of Plan Provisions Upon Confirmation</u>.  Each term and provision of the Plan, and the transactions related thereto is: (a) valid and enforceable pursuant to its terms; (b) integral to the Plan and may not be deleted or modified except as provided by the Plan or this Confirmation Order; and (c) nonseverable and mutually dependent.

Dated:    Springfield, Massachusetts
          <u>      May  20 </u>, 2015

_____
Honorable Henry J. Boroff
United States Bankruptcy Judge