# EXHIBIT E

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MASSACHUSETTS
EASTERN DIVISION**

| | |
|---|---|
| In re:<br><br>NEW ENGLAND COMPOUNDING PHARMACY, INC.,<br><br>                   Debtor | Chapter 11<br><br>Case No. 12-19882-HJB |

**BROWN RUDNICK LLP'S FIRST AND FINAL APPLICATION SEEKING APPROVAL
OF COMPENSATION FOR FEES AND REIMBURSEMENT OF EXPENSES
(FOR THE PERIOD JANUARY 18, 2013 THROUGH JUNE 4, 2015)**[1]

The law firm of Brown Rudnick LLP ("Brown Rudnick"), counsel to Official Committee of Unsecured Creditors (the "Committee") appointed in the above-captioned chapter 11 case of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center (the "Debtor"), pursuant to 11 U.S.C. §§ 330 and 331, Fed. R. Bankr. P. 2014 and 2016 and MLBR 2016-1, hereby submits this First and Final Application (the "Final Fee Application")[2] for the period January 18, 2013 through June 4, 2015 (collectively, the "Final Fee Period") seeking entry of an order allowing Brown Rudnick's (i) attorneys' fees in the amount of $3,441,094.25; and (ii) reimbursement of expenses in the amount of $251,992.00, as set forth more particularly herein. Accordingly, the total amount owed to Brown Rudnick for the Final Fee Period is $3,693,086.25. In support of this Final Fee Application, Brown Rudnick states as follows:

---

[1] A portion of the fees and expenses included herein is attributable to amounts incurred after June 4, 2015 (the "Effective Date"), including certain expenses incurred for which entries have not yet been made to Brown Rudnick's accounting system relating to the preparation and prosecution of this Final Fee Application.

[2] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the *Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc.* [Dkt. No. 1355-1] (the "Plan").

## **PRELIMINARY STATEMENT**

1. This case began with an administratively insolvent Debtor with almost no cash or tangible assets, and is now ending with a Plan confirmed with almost unanimous support, by which approximately $200 million will be distributed to the thousands of the Debtor's tort victims and other creditors.

2. As this Court is well aware, the vast majority of the Debtor's creditors are holders of tort claims arising from a 2012 outbreak of fungal meningitis that was quickly traced back to NECC's Framingham facility. As of October 2013, when the Centers for Disease Control stopped tracking cases, at least 64 people had been killed and no fewer than 751 individuals had fallen seriously ill. Since then, over three thousand people have filed claims and approximately 686 have filed suits against NECC on the basis that they or their family members were harmed, died or were otherwise affected by NECC's products.

3. Upon its formation, the Committee's first challenge was to retain highly capable counsel that would bring to the case considerable expertise and highly specialized experience in this type of mass tort insolvency, but without assurance of any material estate with which to pay administrative expenses. When interviewed, Brown Rudnick committed to the Committee to not settle for the more modest recoveries of the type usually available in liquidation cases, but instead to devote all necessary resolve and resources to work with a trustee (once appointed) and other constituents to marshal broad support for the type of plan that was ultimately confirmed here after 32 months of work. To achieve that success, the Committee and those who were willing to work with it would need to carefully build support for, and then obtain approval of, mandatory third party (non-debtor) "global" releases not generally available in liquidation cases, for which there was no clear precedent in the First Circuit in *any* type of case.

4. However, this approach to the case posed considerable financial risks to Committee counsel. It was very possible, for example, that efforts to achieve settlements with third parties for very large sums would prove in vain, and that the estate accordingly would remain administratively insolvent. Moreover, it was by no means certain that the contemplated third-party releases in favor of settling parties (viewed as essential elements of the Plan from day one) would be ultimately approved (in which case the settlements would fail even if achieved), something that would not be known until the very end of the proceedings. Indeed, even in the months preceding confirmation of the plan, several important parties expressed deep doubts as to whether the Plan could be confirmed, and bargained furiously in certain settlements for legal protections in the event of "global" plan failure.

5. Notwithstanding those risks, in light of the great personal harm suffered by the Debtor's creditors and the significant public interest in ensuring that the Committee had available to it the highest quality representation at greatly less than the market rate for such services, Brown Rudnick agreed to serve as counsel to the Committee, and to do so at what the firm estimated would potentially be as much as a fifty percent discount to the usual rates it achieves in other significant chapter 11 cases -- a blended hourly rate of $415 for all attorney time. And, recognizing that the failure to achieve significant settlements with potentially liable parties would leave the majority of tort victims without meaningful financial recompense, Brown Rudnick devoted to this case hundreds of hours of the time of its most senior partners such as David Molton, a nationally-recognized expert in creating structures for the resolution of tort claims in bankruptcy cases, and William Baldiga, the managing director of Brown Rudnick's Litigation and Restructuring group, notwithstanding that their usual rates were and are a multiple of the agreed blended rate.

6.     As reflected in the annexes to this Application, Messrs. Molton and Baldiga themselves collectively dedicated more than 3,000 hours over the course of two and a half years to this matter. Other Brown Rudnick partners, associates, paralegals and staff likewise made significant investments of time. Indeed, given that dedication of time and resources, had Brown Rudnick charged its standard rates during the course of this engagement, it would have incurred more than $6.2 million in fees. However, at no point in the case, did Brown Rudnick seek an adjustment to the $415 hourly rate agreed to at the outset, even to merely reflect the type of ordinary annual rate adjustments routinely approved in other large cases. Neither did Brown Rudnick seek any amount to compensate it for a delay in compensation that now measures in years. In addition, Brown Rudnick has reduced its fees by at least $69,000, including for several attorneys who billed less than 5 hours to the case, summer associate time and other time amounts voluntarily reduced that Brown Rudnick would normally charge to a client.

7.     At the end of the day, through the diligent efforts of their professionals, the members of the Committee and their own highly capable and devoted lawyers, the Chapter 11 Trustee (who also made an extraordinary personal commitment to the same aggressive goals of a global plan of a type never previously achieved in this Circuit) and the Plaintiffs' Steering Committee appointed in the NECC multi-district litigation were able to work together to amass a fund exceeding $200 million for distribution to tort victims and other creditors -- a striking result when compared to the initial dismal prospects for material recovery to creditors in this Case. As such, and for the reasons set forth herein, the Committee respectfully requests that this Court approve the fees of the Committee's counsel reflected in this Application.

## PROCEDURAL BACKGROUND

8. On December 21, 2012 (the "Petition Date"), the Debtor filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code [Docket No. 1].

9. On January 18, 2013, the United States Trustee for the District of Massachusetts (the "U.S. Trustee"), pursuant to Bankruptcy Code section 1102(a)(1), appointed the Committee.

10. Thereafter, on January 18, 2013, the Committee selected Brown Rudnick as its counsel in this chapter 11 case. The following creditors served as members of the Committee: (1) Katrina Eldreth; (2) Meghan A. Handy (3) Brenda Bansale; (4) Robert Cole; (5) Victor Davis; (6) Kathleen Distler; (7) Danny Swartzell; (8) Bertram Walker Bryant, Jr.; and (9) NStar Electric Company (n/k/a Eversource Energy).

11. On January 25, 2013, upon motion by the United States Trustee, this Court appointed Paul D. Moore (the "Trustee") to serve as chapter 11 trustee in this case pursuant to 11 U.S.C. § 1104(a) and Fed. R. Bank. P. 2007.1.

12. On February 22, 2013, this Court approved Brown Rudnick's retention as counsel to the Committee *nunc pro tunc* to January 18, 2013, to render legal services to the Committee in this case, as described in Brown Rudnick's retention application filed with the Court on February 7, 2013 [Docket No. 121]. Copies of the retention application and order are attached hereto as Exhibit A.

13. On May 20, 2015, this Court entered an Order confirming the Plan. In accordance with the terms of the Plan, the Plan became effective on June 4, 2015 (the "Effective Date").

14. In preparing this Final Fee Application, Brown Rudnick has complied with MLBR 2016-1.

15. Brown Rudnick estimates that it has incurred approximately $10,000.00 in expenses not already billed herein for expenses for which entries have not yet been made to Brown Rudnick's accounting system as of the filing of this Final Fee Application, relating to the preparation and prosecution of the Final Fee Application and the preparation and filing of an expense reimbursement application for the Committee members. That estimated amount is included in the aggregate amount of compensation sought to be paid in this Final Fee Application.

**SERVICES RENDERED BY BROWN RUDNICK DURING THE FINAL FEE PERIOD**

16. Brown Rudnick has recorded time charges in this case separately for each matter to which it has given attention during the Final Fee Period. For purposes of this Final Fee Application, the services rendered have been segregated into fourteen categories, as follows:

- Committee Matters
- Brown Rudnick Retention
- Other Professional Retentions
- Brown Rudnick Fees
- Other Professional Fees
- Plan and Disclosure Statement Issues
- JPML/MDL Action
- Other Estate Actions
- Other Motion Practice
- Non-Working Travel
- Creditor and Claim Matters
- Insurance Issues

- 6 -

- Proof of Tort Liability

- Sale of Ameridose and MSM

17. Attached hereto as <u>Exhibit B</u> is a narrative description of the services rendered by Brown Rudnick during the Final Fee Period. The narrative description is divided into categories which correspond to the particular categories referenced in paragraph 16 above.

18. Attached hereto as <u>Exhibit C</u> are the time entries indicating the daily work performed during this period by each professional with respect to whom compensation is sought. The lettered tabs in <u>Exhibit C</u> correspond to the categories set forth in paragraph 16 above and to the narrative description of services rendered contained in <u>Exhibit B</u>. Accordingly, to review the specific time entries in <u>Exhibit C</u>, which correspond to the narrative for each category set forth in <u>Exhibit B</u>, the reader may follow the category letter in <u>Exhibit B</u> to the tab letter in <u>Exhibit C</u>.

## **DISBURSEMENTS**

19. In rendering the legal services described in <u>Exhibits B</u> and <u>C</u>, Brown Rudnick paid disbursements in the amount of $251,992.00 during the Final Fee Period. These disbursement charges are set forth in detail and are itemized in <u>Exhibit D</u>.

20. In these proceedings, Brown Rudnick charges $.15 per page for internal duplicating (a reduced amount). Brown Rudnick does not charge for incoming facsimile transmissions.

21. Brown Rudnick respectfully submits that the actual expenses incurred in providing professional services for which reimbursement is sought in this Final Fee Application were necessary, reasonable and justified under the circumstances to serve the needs of the Committee.

22. Brown Rudnick does not hold a retainer in respect of its services as counsel to the Committee. The Final Fee Application is Brown Rudnick's first fee application filed in this case.

WHEREFORE, Brown Rudnick respectfully requests that the Court enter an order in the form submitted herewith (1) granting this Final Fee Application, (2) allowing Brown Rudnick the aggregate amount of $3,693,086.25, representing $3,441,094.25 in fees and $251,992.00 in disbursements for the Final Fee Period, (3) directing the Tort Trustee to pay such amount immediately to Brown Rudnick in accordance with the Plan, and (4) granting to Brown Rudnick such other and further amount as is appropriate under the circumstances.

Dated: August 3, 2015
      Boston, Massachusetts

Respectfully submitted,

**BROWN RUDNICK LLP**

By: /s/ William R. Baldiga
    William R. Baldiga, Esq. (BBO #542125)
    Kiersten A. Taylor, Esq. (BBO #681906)
    One Financial Center
    Boston, MA 02111
    Telephone: (617) 856-8200
    Facsimile: (617) 856-8201
    wbaldiga@brownrudnick.com
    ktaylor@brownrudnick.com

and

David J. Molton, Esq. (admitted *pro hac vice*)
Seven Times Square
New York, NY 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
dmolton@brownrudnick.com

*Counsel to the Official Committee of Unsecured Creditors of New England Compounding Pharmacy, Inc.*