UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) ) | MDL No. 2419 Dkt. No 1:13-md-2419 (RWZ) |
| This Document Relates to: | ) ) | |
| Suits Naming the SSC Defendants | ) ) | |

**SSC DEFENDANTS' _REPLY_ IN SUPPORT OF MOTION TO DISMISS [DOC. 3086]**

**AND**

**_RESPONSE IN OPPOSITION_ TO
PSC'S MOTION TO EXTEND TIME
TO FILE CERTIFICATES OF GOOD FAITH [DOC. 3121]**

Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, MD ("Dr. Lister"), and Kenneth Lister, MD, PC ("Dr. Lister's Practice") (collectively the "SSC Defendants") file this brief, which serves as their:

1. _Reply_ to the PSC's Response to the SSC Defendants' Motion to Dismiss.[1]

2. _Response in Opposition_ to the PSC's Motion for Extension of Time to File Certificates of Good Faith.[2]

---

[1] The SSC Defendants' Motion to Dismiss is at Doc. 3086. The SSC Defendants' Memorandum of Law in Support of the Motion is at Doc. 3087. The PSC's Response is at Doc. 3122.
[2] Doc. 3121.

**BRIEF RESET**

Fifteen (15) of the original complaints against SSC failed to include a certificate of good faith with the complaint as required by the Tennessee Health Care Liability Act ("THCLA").[3] These 15 cases fall into three categories, with differing excuses for noncompliance. For clarity, the SSC Defendants will continue to use the descriptors for the three categories from the PSC's Response:

1. *"Branstetter Actions"*: In these five (5) cases, the Plaintiff filed a "products liability only" original complaint *without* a certificate of good faith. The Plaintiff later amended the "products only" complaint to add a THCLA claim *with* a certificate.

   *I.e.*, "Products Only" Compl. <u>without</u> COGF → Am. Compl. including THCLA Claims <u>with</u> COGF

   Plaintiffs: *Bray*, *Collins*, *Graham*, *Savercool*, *Willis*.[4]

2. *"Cain Actions"*: In these two (2) cases, the Plaintiff filed a "products liability only" original complaint *without* a certificate, filed an amended complaint explicitly alleging negligence and failure to warn (*i.e.*, THCLA claims) *without* a certificate, then finally (apparently recognizing the error) filed a second amended complaint *with* a certificate.

   *I.e.*, "Products Only" Compl. <u>without</u> COGF → Am. Compl. including THCLA Claims <u>without</u> COGF → Second Am. Compl. including THCLA Claims <u>with</u> COGF

   Plaintiffs: *Palmer* and *Norris*.[5]

3. *"Remaining Actions"*: In these eight (8) cases, the Plaintiff <u>never</u> filed a certificate of good faith with any complaint, despite explicitly alleging negligence and failure to warn (*i.e.*, THCLA claims) in an amended complaint.

   "Products Only" Compl. <u>without</u> COGF → Am. Compl. including THCLA Claims <u>without</u> COGF → COGF Never Filed

   Plaintiffs: *Cox*, *Dingess*, *Hubbard*, *Jackson*, *Johnson*, *Lapiska*, *Nealon*, *Reed*.[6]

This Reply takes the three groups in reverse order.

---

[3] Tenn. Code Ann. § 29-26-122(a).
[4] Attached as Exhibit 1 is an illustration of how the <u>Branstetter Actions</u> unfolded procedurally.
[5] Attached as Exhibit 2 is an illustration of how the <u>Cain Actions</u> unfolded procedurally.
[6] Attached as Exhibit 3 is an illustration of how the <u>Remaining Actions</u> unfolded procedurally.

## INTRODUCTION

In the <u>Remaining Actions</u>, the amended complaints clearly alleged health care liability. The PSC acknowledges no certificate of good faith was filed with *any* complaint, including the amended complaints. Yet, the PSC asks the Court (without any precedent) to allow them to file a certificate now, 2+ years after it was due. However, because no "extraordinary cause" exists to excuse their noncompliance with Tenn. Code Ann. § 29-26-122, under clear Tennessee case law, dismissal awaits.

In the <u>Cain Actions</u>, the PSC does not dispute that no certificate of good faith accompanied the first amended complaints, even though they clearly alleged health care liability. Instead, the PSC asks the Court to create a new rule permitting the filing of a late-filed certificate of good faith alongside a second amended complaint. Tennessee law, however, plainly prohibits plaintiffs from remedying noncompliance by amendment. Fed. R. Civ. P. 15 does not change this rule of Tennessee law.

The Plaintiffs in the <u>Branstetter Actions</u> gambled that the Court would allow them to proceed on a novel product liability theory and avoid the THCLA. They chose not to hedge that bet by also complying with the TCHLA's presuit requirements, as other Plaintiffs did. This was a calculated risk. If it worked, the Branstetter Plaintiffs would have (arguably) been able to pursue a strict liability claim against SSC without expert proof of a deviation from the standard of care. But, the Court ruled the THCLA is the governing law, and the bet did not pay.[7] Now, the PSC asks the Court to contradict its previous order that the THCLA applies by finding that these complaints never required a certificate of

---

[7] Doc. 3027 at 3.

good faith. *Ellithorpe* does not permit this result. The Court must dismiss the Branstetter

Actions with prejudice.

The vast majority of the legal issues in this brief are not up for debate. Tennessee

law requires the Court to:

1. Deny the request for an extension to file a certificate of good faith in the Remaining Actions because the Plaintiffs cannot demonstrate extraordinary cause excusing their failure to *ever* file a certificate of good faith; and dismiss the Remaining Actions with prejudice for that failure.

2. Dismiss the Cain Actions with prejudice because they did not file a certificate of good faith when they filed amended complaints alleging health care liability and Rule 15 cannot fix noncompliance with Tennessee substantive law.

3. Dismiss the Branstetter Actions with prejudice because, while they called their original complaints "products only" complaints, they were actually health care liability actions (as the Court later determined) that required certificates.

## ARGUMENT

### I. Two preliminary, undisputable points should begin the Court's analysis.

The Court should keep in mind two basic, undisputable points when undertaking

its analysis of these issues:

First, the Court has ruled that <u>all</u> claims against the SSC Defendants must proceed

under the THCLA. The Court's August 29, 2014 Order specifically established that claims

for ordinary negligence and failure to warn are governed by the THCLA.[8] [9] The Court's

---

[8] Doc. 1360 at 34-36 ("As for the lack of informed consent claims, plaintiffs allege that the Tennessee Clinic Defendants failed to warn them that they were being administered 'an unsafe, unreasonably dangerous drug compounded by NECC rather than a high quality drug produced by an FDA regulated manufacturer' and failed to inform them of 'the risks and benefits of the procedure[] before it was performed.' Such allegations must be established with expert testimony regarding 'the usual and customary information given to patients to procure consent in similar situations.' The Tennessee Clinic Defendants correctly point out that lack of informed consent claims are governed by the THCLA. This does not mean plaintiffs cannot proceed on their theory of lack of informed consent, but rather that those allegations will be subsumed under their claims for health care liability and evaluated under the requirements and framework of the THCLA.") (internal citations omitted).

[9] Doc 1360 at 37-38 ("Plaintiffs' negligence claims, though they need not be entirely dismissed, will be evaluated under the THCLA and against the recognized standard of acceptable professional practice as required by the act.").

August 5, 2016 Order extended that ruling, holding that even claims purporting to allege product liability must also proceed under the THCLA.[10] Thus, the THCLA governs every complaint mentioned in this brief. That point has been litigated and decided, and is the law of the case.

Second, the THCLA requires a plaintiff bringing claims governed by the THCLA to file a certificate of good faith with the complaint, certifying the merit of the claim.[11] Failure to do so requires dismissal of the complaint with prejudice.[12] That is the plain mandate of the Tennessee Legislature. The Court's August 29, 2014 Order has already recognized this: "[I]t is clear that in cases where plaintiffs were required to give pre-suit notice and/or file certificates of good faith and yet wholly failed to do so, such errors are fatal and should result in those complaints being dismissed."[13]

These fundamental points must form the foundation for the Court's analysis of the remaining issues.

## II. The <u>Remaining Actions</u> failed to ever file a certificate of good faith, and no showing of extraordinary cause has been made; thus, they must be dismissed with prejudice.

### A. The PSC's arguments for excusing noncompliance in the Remaining Actions do not survive even passing scrutiny.

The Court must decline the PSC's invitation to confuse the Remaining Actions with the Branstetter Actions. In the Remaining Actions, the Plaintiffs did <u>not</u> file "products only" complaints and later add a certificate when they added THCLA claims. Instead, the Remaining Actions alleged ordinary negligence and failure to warn (both health care

---

[10] Doc. 3027 at 3.
[11] Tenn. Code Ann. § 29-26-122(a).
[12] Tenn. Code Ann. § 29-26-122(c).
[13] Doc. 1360 at 23.

liability claims under the Court's August 2014 Order[14]) in amended complaints but *never filed* the required certificate with the negligence and failure to warn claims. The only issue in the Remaining Actions is whether the Court should now, almost three years later, let these Plaintiffs late-file a certificate.

The PSC's entire argument for permitting late-filed certificates is that these Plaintiffs' lawyers were confused about whether the TPLA applied or the THCLA applied. However, this is a huge red herring. In the Remaining Actions, the Plaintiffs filed amended complaints alleging <u>ordinary negligence and failure to warn</u> without a certificate. There could be no confusion that these negligence and failure to warn claims were subject to the THCLA. They are entirely separate "counts" from the TPLA claims in the amended complaints.[15] Any confusion about the applicability of the TPLA has nothing to do with the separate claims for ordinary negligence and failure to warn. The PSC does not even attempt to bridge this fatal disconnect, instead citing amorphous overall confusion.

**B. The Remaining Actions have demonstrated neither extraordinary cause nor good cause for an extension.**

Assuming *arguendo* these lawyers were confused when bringing their clear THCLA claims (again, how could they be?), this confusion does not satisfy the statutory standard for excusing compliance. The statute specifically addresses when a failure to file a certificate of good faith is excused:

> **(a)** In any health care liability action in which expert testimony is required by § 29-26-115, the plaintiff or plaintiff's counsel shall file a certificate of good faith with the complaint. **If the certificate is not filed with the complaint, the complaint shall be dismissed, as provided in subsection (c), absent a showing that the failure was due to the failure of the provider to timely provide copies of the**

---

[14] Doc. 1360 at 34-38.

[15] *See, e.g., Dingess* Amended Complaint at Count III: Negligence and Gross Negligence; Count VIII: Failure to Warn, Count IX: Tennessee Product Liability Claims (attached as Exhibit 4).

**claimant's records requested as provided in § 29-26-121 or demonstrated extraordinary cause.**[16]

Based on this provision of the statute, a court <u>must</u> dismiss the complaint if it does not have a certificate of good faith unless (1) the medical records were not timely provided or (2) there is demonstrated extraordinary cause. The first exception is not at issue; and, the Plaintiffs do not even attempt to demonstrate <u>extraordinary</u> cause.[17] Even if the Court applies the lower "good cause" standard mentioned at the end of the statute, the Plaintiffs in the Remaining Actions have failed to justify filing a certificate almost three years late.

First, despite having the burden to show cause (extraordinary or good), the motion for an extension offers no basis for the extension, no affidavit, and no supportive filings; instead, it just requests it.[18] The PSC's response brief adds little, offering two listless explanations for the failure to file certificates in the Remaining Actions: (1) that it was not

---

[16] Tenn. Code Ann. § 29-26-122(a) (emphasis added).

[17] Based on the plain language of the statute, a plaintiff who fails to file a certificate must demonstrate *extraordinary* cause to justify noncompliance. Only one case directly addresses whether a plaintiff who fails to file a certificate with the complaint must show "extraordinary cause" or "good cause" (mentioned later in the statute) to allow a late-filed certificate. In *Stovall*, the plaintiff filed a certificate of good faith with the complaint but did not correctly complete the certificate. *Stovall v. UHS Lakeside, LLC*, No. W2013-01504-COA-R9-CV, 2014 WL 2155345, at *1 (Tenn. Ct. App. April 22, 2014) (overruled on other grounds). The defendants filed a motion to dismiss, citing the technical noncompliance. *Id.* In response, the plaintiff filed an amended complaint, with a fully-compliant certificate. *Id.* The court dismissed the case. *Id.* at *2. Before the order of dismissal was entered, though, the plaintiff moved for an extension to file a corrected certificate of good faith. *Id.* The trial court then reversed course and *denied* the motion to dismiss and, in the alternative, granted the extension of time to file the certificate. *Id.* at *2-3. The Court of Appeals focused on whether the motion for extension was properly granted. *Id.* at *8. The Court of Appeals relied on the opening language of § -122 and found that the "good cause" exception likely does <u>not</u> apply where a plaintiff *completely failed to file* a certificate of good faith, as opposed to a plaintiff who timely filed a *deficient* certificate. *Id.* at *10-11. When the issue is the *content* of the certificate (*i.e.*, whether it has the appropriate boxes checked), "good cause" can warrant an extension under section (c). *Id.* The Court of Appeals, in a footnote, explained that they were not *holding* that a plaintiff could not get an extension to file a certificate of good faith with just a showing of good cause, only mentioning it in *dicta*. *Id.* at *11, n. 8. While that may be true, *Stovall* is the only case that squarely considers the point, and its analysis makes sense.

[18] Doc. 3121.

apparent that personal injury actions against health care providers required a certificate[19] and (2) that the lawyers filing those actions did not understand the law[20].

Neither of these reasons comes close to extraordinary or even good cause.

### i. There is no extraordinary cause in the Remaining Actions to excuse the failure to file a certificate of good faith.

If the standard for an extension after failing to file a certificate entirely is <u>extraordinary</u> cause – as a plain reading of the statute requires and *Stovall*[21] suggests – this is an easy analysis. The reasons offered by the Plaintiffs come nowhere close to demonstrating extraordinary cause.

"Extraordinary cause" in this context means something "beyond the ordinary degree, measure, limit, *etc.*; very unusual; exceptional; remarkable."[22] Tennessee's appellate courts describe extraordinary cause as "illness of the plaintiff's lawyer, a death in that lawyer's immediate family, [or] illness or death of the plaintiff's expert in the days before the filing became necessary."[23]

Obviously, failing to read the THCLA or understand its clear language is not akin to the death of a close family member on the eve of the certificate's due date. Not surprisingly, the case law agrees, rejecting the PSC's position that misunderstanding the law is cause to allow a late certificate:

- In *Patterson*, the plaintiff failed to give the required 60-day notice before filing suit.[24] The plaintiff's lawyer argued that he was in "somewhat of a dilemma"

---

[19] Doc. 3122 at 18 ("simply because the Remaining Actions sought relief against a healthcare provider for a personal injury did not necessarily mean that those claims were claims under the THCLA").

[20] Doc. 3122 at 20 ("[t]he Remaining Actions ultimately decided to proceed along a different path working under a different understanding").

[21] *See supra* note 17.

[22] *Myers v. Amisub (SFH), Inc.*, 382 S.W.3d 300, 310-11 (Tenn. 2012) (defining "extraordinary cause" in -122 context).

[23] *Id.*

[24] *Patterson v. Lincoln Med. Ctr.*, No. M2014-01145-COA-R3-CV, 2015 WL 3882899, at *1 (Tenn. Ct. App. June 23, 2015).

8

because he had to choose between meeting the Governmental Tort Liability Act's one-year statute of limitations and giving the full 60-day notice required by the THCLA.[25] The Court of Appeals was "not unsympathetic to Mr. Patterson's situation" but affirmed dismissal of the complaint because his "dilemma" did not constitute extraordinary cause.[26]

- In *Igou*, the plaintiff patient and his wife filed health care liability claims against the hospital.[27] The presuit notice did not give notice that the wife would file a loss of consortium claim.[28] The trial court dismissed the wife's claim.[29] The plaintiff argued extraordinary cause justified the failure to comply with the statute because the issue of whether a consortium claim required separate notice had not been decided.[30] The Court of Appeals rejected that argument, finding that an arguably open question about the statutory language is not extraordinary cause.[31]

- In *Givens*, the plaintiffs sued the hospital for medical negligence related to the death of the patient.[32] The plaintiffs filed suit *before* the presuit requirements were enacted; but, the plaintiffs voluntarily dismissed the lawsuit and refiled *after* the requirements became law.[33] The second lawsuit did not comply with the presuit requirements.[34] The plaintiffs then filed a third lawsuit that *did* comply.[35] The Court of Appeals held that the plaintiffs were required to comply with the presuit requirements but did not, and dismissed the action.[36] The plaintiffs claimed extraordinary cause based on the lack of case law interpreting the THCLA at the time and the "extraordinary efforts" they made to comply by filing two separate lawsuits.[37] The Court of Appeals disagreed and noted the requirements had been law for 19 months but the plaintiffs simply did not comply.[38]

\* \* \* \* \* \* \*

---

[25] *Id.*

[26] *Id.* at \*3-4.

[27] *Igou v. Vanderbilt Univ.*, No. M2013-02837-COA-R3-CV, 2015 WL 1517794, at \*1 (Tenn. Ct. App. Mar. 27, 2015).

[28] *Id.*

[29] *Id.* at \*2.

[30] *Id.* at \*9.

[31] *Id.*

[32] *Givens v. Vanderbilt Univ.*, No. M2013-00266-COA-R3CV, 2014 WL 820622, at \*1 (Tenn. Ct. App. Feb. 27, 2014).

[33] *Id.*

[34] *Id.*

[35] *Id.* at \*2.

[36] *Id.* at \*5-6.

[37] *Id.* at \*5-6.

[38] *Id.* at \*6.

These three cases are on-point. The Plaintiffs in the Remaining Actions did not comply with the Act. That is indisputable. The PSC's tepid excuse – the lawyers misunderstood the THCLA's requirements – is not cause to allow a late-filed certificate.[39]

### ii. The Plaintiffs in the Remaining Actions have not even shown good cause to justify a three-year delay in asking for an extension.

The outcome is the same under a "good cause" standard. The Plaintiffs knew filing a negligence action against a health care provider alleging injury related to the provision of health care services required a certificate of good faith. That has been the law since the THCLA was enacted in 2011. It has even been law <u>of the case</u> for over two years. The Court held in August 2014 that claims against SSC for ordinary negligence and failure to warn were governed by the THCLA.[40]

Tennessee courts have not specifically defined "good cause" in the context of § -122. They have found that attorney error, even with a good faith belief that the attorney complied with the requirement, is not good cause.[41] They have also found that an attorney should ask for an extension *before* the deadline to establish good cause.[42]

Furthermore, in analogous cases, Tennessee's appellate courts agree that misunderstanding or misapplication of the statute does not constitute good cause.

- In *DePue*, the Court of Appeals found that a misreading or misunderstanding of the provisions of the statute did not "rise to the level of 'good cause'…and would certainly not rise to the level of 'extraordinary cause[.]'"[43]

---

[39] Two additional points: First, this misunderstanding has not been established by any affidavit testimony. Second, the Plaintiffs in the Remaining Actions *still* have not filed a certificate.

[40] Doc. 1360 at 34-38.

[41] *Brandon*, 343 S.W.3d at 789.

[42] *Id.*

[43] *DePue v. Schroeder*, No. E2010-00504-COA-R9-CV, 2011 WL 538865, at *8 (Tenn. Ct. App. Feb. 15, 2011); *see Brandon*, 343 S.W.3d at 789 (finding no good cause shown where plaintiff could have obtained expert opinion and certificate, waited to ask for extension until after due date, did not have explanation for months-long delay in asking for extension, and allowing claim to proceed would prejudice defendants by requiring expenditure in preparing and trying case); *see also Mathes v. Lane*, No. E2013-01457-COA-R3-CV, 2014 WL 346676, at *8 (Tenn. Ct. App. Jan. 30, 2014) (finding plaintiff's status as incarcerated and pro

- In *Brandon*, the Court of Appeals found that claimed ignorance of the statutory requirements, coupled with waiting 60 days after the deadline to file the certificate, was not good cause to justify a late-filed certificate.[44]

- In *West*, the Court of Appeals ruled that the plaintiff did not demonstrate extraordinary or good cause for her failure to file a certificate of good faith with her complaint in general sessions court, finding her misinterpretation of the statute (she thought it did not apply in general sessions court) was not good cause, particularly in light of delaying request for an extension.[45]

* * * * * * *

For whatever reason – be it (inexcusable) neglect or intentional strategy – the Plaintiffs in the Remaining Actions did not file a certificate. Moreover, the factors courts look at to evaluate cause establish that it does not exist here:

- The Plaintiffs delayed over 2 ½ years after the issue was raised in the initial dispositive motions to ask for an enlargement of time.[46] [47]

- This delay was entirely within the Plaintiffs' control.[48]

- There is no affidavit to establish the reason for the delay.[49]

Finally, the purpose of the statute – to ensure that health care liability claims have expert support *at the time they are filed* – is undercut by allowing a certificate of merit to be filed 2+ years after its due date.

---

se not sufficient good cause to excuse compliance with certificate of good faith requirement); *Litton v. Wellmont Health Sys.*, No. 2:11-CV-257, 2012 WL 4372375, at *3 (E.D. Tenn. Sept. 24, 2012) (finding no showing of good cause where plaintiff offered no explanation for the failure to comply with the presuit requirements); *Reed v. Speck*, 508 Fed. Appx. 415, 423 (6th Cir. 2012) (finding no good cause where plaintiff had means to timely file a certificate and did not do so).

[44] *Brandon*, 343 S.W.3d at 790-97.

[45] *West v. Amisub (SFH), Inc.*, No. W2012-00069-COA-R3-CV, 2013 WL 1183074, at *6 (Tenn. Ct. App. Mar. 21, 2013).

[46] Docs. 770, 771, and 774 (filed January 10, 2014).

[47] *Brandon*, 343 S.W.3d at 790 (noting length of time and reason for the delay are prominent factors in deciding whether good cause exists for an extension).

[48] *Id.* (noting whether reason for delay in performing act is within control of the party asking for an extension is a factor in assessing good cause).

[49] *See id.* at 790-91 (looking to affidavit of plaintiff to evaluate whether cause for extension demonstrated).

There is simply zero proof upon which the Court can find good cause to allow a certificate to be filed now, years after it was due. Doing so would basically ignore the law written by the Legislature and undermine the purpose of the statute. The Remaining Actions have no excuse for their noncompliance, and the statute requires dismissal.[50] [51]

### III. The Cain Actions also require dismissal because they failed to comply and cannot fix the noncompliance by amending the complaint under FRCP 15.

Like the Remaining Actions, the PSC does not dispute that the Cain Actions also failed to file a certificate despite bringing clear THCLA claims in their first amended complaints. Instead, the PSC argues that noncompliance should be forgiven because the Plaintiffs later filed a second amended complaint with the required certificate. In making the argument, the PSC disregards the actual language of FRCP 15 and does not mention that Tennessee courts have already rejected this position.[52]

#### i. While FRCP 15 may give a plaintiff in federal court the right to amend a pleading, a certificate of good faith is neither a pleading nor a part of a pleading.

The PSC incorrectly asserts that the THCLA conflicts with a litigant's right to amend a complaint under FRCP 15. However, the PSC misconstrues FRCP 15 to create

---

[50] See Akers v. Heartland Dental Care, Inc. No. 3:10-1213, 2011 WL 1322781, at *3-5 (M.D. Tenn. April 5, 2011) (dismissing case where plaintiff offered no excuse for not filing a certificate of good faith other than "simply maintain[ing] that this is not a medical malpractice case"; "[u]nfortunately for his case, the Tennessee Supreme Court has held otherwise").

[51] Of note, the PSC argues that the Plaintiffs in the Remaining Actions "ultimately decided to proceed along a different path" by filing claims under the TPLA instead of the THCLA. Doc. 3122 at 20. That path ended in August 2016 when the Court granted summary judgment on the Plaintiffs' TPLA claims. If, on the other hand, these Plaintiffs intended to also bring claims under the THCLA, they clearly failed to comply with the requirements of the statute. In either scenario, dismissal of the actions is the appropriate result. Allowing these Plaintiffs to file certificates of good faith now essentially allows them to either (1) bring new THCLA claims they did not originally intend to file, or (2) rehabilitate THCLA claims that are clearly deficient and subject to dismissal with prejudice.

[52] Eiswert v. U.S., No. 2:11-CV-304, 2014 WL 11517824, at *2-3 (E.D. Tenn. Sept. 10, 2014); Litton v. Wellmont Health Sys., No. 2:11-CV-257, 2012 WL 4372375, at *4 (E.D. Tenn. Sept. 24, 2012).

a conflict with § -122 where there is none. Indeed, a Tennessee district court already rejected this same argument when put forth by the same lawyers advancing it here.[53]

In rejecting the PSC's position, the Eastern District of Tennessee reasoned that FRCP 15 permits the amendment of "pleadings," but a certificate of good faith is not a pleading.[54] FRCP 7 defines a "pleading" as a complaint, answer, or third-party complaint or answer.[55] A certificate of good faith is a document filed <u>with</u> a pleading, but is not a pleading itself.[56]

Tennessee Code Annotated § 29-26-122 reinforces the conclusion that a certificate of good faith is not a pleading subject to FRCP 15. The statute requires the certificate is to be filed *with* the complaint, signifying a contemporaneous but separate document.[57] The Administrative Office of the Courts – at the direction of the Legislature – developed a separate form for plaintiffs to file.[58] The original version of the statute called for the certificate to be filed *after* the filing of the complaint.[59] Finally, the statute calls for a certificate to be filed, when asserting comparative fault, 30 days *after* the assertion of comparative fault.[60] The operation of the statute clearly contemplates a filing separate from the complaint.

A certificate of good faith is simply not a "pleading" subject to FRCP 15, and it cannot be amended to comply with the statute.[61] The two procedures – amending the

---

[53] *Eiswert*, 2014 WL 11517824, at *2-3.
[54] *Id.* (citing Fed. R. Civ. P. 15 and 7).
[55] Fed. R. Civ. P. 7.
[56] *See Eiswert*, 2014 WL 11517824, at *2.
[57] Tenn. Code Ann. § 29-26-122(a); *Eiswert*, 2014 WL 11517824, at *2.
[58] Tenn. Code Ann. § 29-26-122(d); *see* http://www.tsc.state.tn.us/administration/judicial-resources/forms-documents/court-forms; *Eiswert*, 2014 WL 11517824, at *2.
[59] Tenn. Code Ann. § 29-26-122(a) (2008).
[60] Tenn. Code Ann. § 29-26-122(b).
[61] *Eiswert*, 2014 WL 11517824, at *2.

13

complaint and late-filing a certificate – operate in different planes. The Cain Plaintiffs late-filed a certificate <u>with</u> an amended complaint; they did not amend the complaint to add a certificate to the complaint itself. Filing a certificate of good faith <u>for the first time</u> is not <u>amending</u> anything.

### ii.   Regardless, FRCP 15 does not save the Cain Actions.

The PSC argues that FRCP 15 gives the plaintiff an absolute right to amend a complaint <u>once</u> to cure any <u>procedural or technical</u> defects.[62] However, FRCP 15 does **not** give a plaintiff the absolute right to amend a complaint **twice** to avoid a **substantive** provision of Tennessee law. That is what occurred in the Cain Actions. The Plaintiffs filed original complaints alleging "only" products liability. They amended their complaints to add claims under the THCLA (ordinary negligence and failure to warn) *without* a certificate of good faith. They then amended their complaints a second time and finally filed certificates of good faith.

First, it is uncontroverted in Tennessee's three federal districts that Tennessee's presuit notice and certificate of good faith requirements are substantive law.[63] A failure to comply with a <u>substantive</u> provision of Tennessee law is not a "procedural or technical" defect that can be cured under FRCP 15.

---

[62] Doc. 3122 at 12 ("Under the *Hanna* and *Shady Grove* principles, they had an ultimate federal right to amend their complaint to cure any procedural or technical defects[.]").

[63] *See Truth v. Eskioglu*, 781 F. Supp. 2d 630, 631-34 (M.D. Tenn. 2011) (applying presuit requirements in diversity case); *Miller v. Monroe County, Tenn.*, No. 3:09-CV-85, 2010 WL 1427298, at *4 (E.D. Tenn. April 7, 2010) ("[t]he Court agrees with the principles articulated by these courts and finds that the requirements of the Tennessee Medical Malpractice Act are substantive law to be applied in a diversity case such as this case"); *Williams v. U.S.*, 754 F. Supp. 2d 942, 948-53 (W.D. Tenn. 2010) (doing long analysis of procedural versus substantive and concluding, "[b]ecause the Tennessee Act is outcome-determinative and failing to apply it in federal court would encourage forum-shopping and result in inequitable administration of the laws, and because the Act is bound up with the rights and obligations created by the State of Tennessee, the Act is substantive").

Second, the PSC neglects to mention that district courts in Tennessee have considered this exact argument and rejected it.

In *Litton*, the plaintiff filed a medical negligence claim but did not comply with the presuit notice or certificate of good faith requirements.[64] The plaintiff tried to cure the errors by late-filing a certificate of good faith with a FRCP 15 motion to amend the complaint.[65] The U.S. District Court for the Eastern District of Tennessee first concluded that the plaintiff knew of the requirement and offered no reason for the failure to file the certificate.[66] Thus, no extraordinary cause existed.[67] The district court then rejected the same Rule 15 argument the PSC advances here:

> The plaintiff makes cursory mention that Federal Rule of Civil Procedure 15 allows this Court to freely give leave to amend complaints. This Court could infer from such statement that plaintiff means for Rule 15 to trump Tennessee substantive law. Medical malpractice pre-suit notice requirements are substantive law to be applied in federal diversity cases. Moreover, district courts within the Sixth Circuit have held that the requirement of a state law certificate or affidavit of good faith in regard to state law medical malpractice claims is also substantive law that applies in diversity cases. Therefore, this Court will apply the substantive law of Tennessee and it requires dismissal of the suit with prejudice.

> This Court realizes that this is a harsh result, for it seems a mere technicality requires dismissal of the suit. The Court further understands that the purpose of the pre-suit Notice and Certificate of Good Faith requirements are designed to reduce the number of frivolous lawsuits and to facilitate early resolution of cases through settlement. In this situation, one could argue that the purpose of the Act would not be fulfilled by dismissal, considering a medical expert had opined that the case was not frivolous prior to filing suit. In addition, the plaintiff apparently had the documentation in his possession to satisfy the Notice requirements. Nonetheless, Tennessee case law, which this Court must follow in this diversity action, dictates a different result. Although this Court may not agree with the statutory requirements and the result in this case, it is the Tennessee legislature, and not this Court, that drafts the laws of the state. Any change to a law that may seem to some unjust must come from the legislature. This Court will not use federal

---

[64] *Litton*, 2012 WL 4372375, at *1.
[65] *Id.*
[66] *Id.* at *3.
[67] *Id.*

procedural law, i.e. Federal Rule of Civil Procedure 15, to subvert Tennessee substantive law.[68] [69]

Finally, the PSC fails to acknowledge that FRCP 15 only permits federal litigants the right to amend pleadings <u>once</u> as a matter of course.[70] The Plaintiffs in the Cain Actions, however, did not include a certificate of good faith until their <u>second</u> amendment to the complaint. Thus, Rule 15 does not save the Cain Actions from dismissal even if the Court accepted the false premise that a certificate of good faith is a "pleading." The Cain Plaintiffs exercised their "right" to amend their pleadings once, but failed to correct their error when doing so.

\* \* \* \* \* \* \*

Even if the Court finds that FRCP 15 applies to the filing of a certificate of good faith (which it clearly does not), the rule cannot be used to defeat the substantive requirement of Tenn. Code Ann. § 29-26-122. The PSC offers no case law holding FRCP 15 trumps Tenn. Code Ann. § 29-26-122. The only courts to consider this exact argument (once even put forth by these same lawyers[71]) rejected it outright.

The Cain Actions failed to comply with Tenn. Code Ann. § 29-26-122 when filing their first amended complaint explicitly alleging ordinary negligence and failure to warn.

---

[68] *Id.* at \*4 (internal citations omitted); *see also Eiswert*, 2014 WL 11517824, at \*2 ("This Court determined previously that the magistrate judge was correct in his determination that failing to comply with section 122 cannot be cured by filing an amended complaint. Furthermore, compliance with section 122 is part of Tennessee substantive law, and it is not at odds with federal procedural law, i.e. Federal Rule of Civil Procedure 15."); *Miller v. Uchendu*, No. 2:13-cv-02149-JPM-dkv, 2013 WL 4097340, at \*5 (W.D. Tenn. Aug. 13, 2013) ("Plaintiff did not attach the HIPAA releases to his Complaint. While Plaintiff argues that his later Notice should be considered part of his pleadings, Plaintiff may not use federal procedural law to circumvent the requirements of state substantive law") (reversed on other grounds).

[69] *See also Eiswert*, 2014 WL 11517824, at \*2 ("[C]ompliance with section 122 is part of Tennessee substantive law, and it is not at odds with federal procedural law, i.e. Federal Rule of Civil Procedure 15.").

[70] Fed. R. Civ. P. 15(a); *see also* Committee Notes - 2009 Amendment to Rule 15.

[71] *See Eiswert*, 2014 WL 11517824, at \*2-3.

A second amendment to the complaint cannot fix this noncompliance. The Cain Actions must be dismissed with prejudice.

### iii. *Shady Grove* does not change the outcome.

The PSC mentions *Shady Grove*, casting it as a magic potion curing all state law deficiencies through FRCP 15. It is not.

First of all, *Shady Grove* is an exceptionally fragmented decision.[72] Four justices (Scalia, Roberts, Thomas, Sotomayor) joined in most of the opinion of the Court, but Justice Sotomayor opted out of one section. Justice Stevens cast the deciding vote with his concurrence, joining in the result of Justice Scalia's opinion but not all the reasoning. The remaining four justices (Kennedy, Breyer, Alito, Ginsberg) joined in dissent. With this fracture, the position taken by those justices who concurred in the judgment on the narrowest grounds becomes the Court's controlling opinion.[73] In *Shady Grove*, the Stevens concurrence is controlling.[74]

The PSC ignores this and cherry-picks quotations from other parts of the decision. All the quotations on page 14 of the PSC's brief are from the non-controlling Scalia opinion that reflects the opinion of only four justices. None are from the controlling Stevens

---

[72] The syllabus describes the decision as follows:

> Scalia, J., announced the judgment of the Court and delivered the opinion of the Court with respect to Parts I and II-A, in which Roberts, C.J., and Stevens, Thomas, and Sotomayor, JJ., joined, an opinion with respect to Parts II-B and II-D, in which Roberts, C.J., and Thomas, and Sotomayor, JJ., joined, and an opinion with respect to Part II-C, in which Roberts, C.J., and, Thomas, J., joined, Stevens, J., filed an opinion concurring in part and concurring in the judgment. Ginsburg, J., filed a dissenting opinion, in which Kennedy, Breyer, and Alito, JJ., joined.

[73] *Coe v. Bell*, 161 F.3d 320, 354 (6th Cir. 1998) (citing *Marks v. U.S.*, 430 U.S. 188, 193 (1977)); *see also U.S. v. Johnson*, 467 F.3d 56, 62 (1st Cir. 2006) (same).

[74] *Bearden v. Honeywell Intern., Inc.*, No. 3:09-1035, 2010 WL 3239285, at *10 (M.D. Tenn. June 14, 2010) ("[h]ere, that means that Justice Stevens's concurrence is the controlling opinion"); *see also In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 408 (D. Mass. 2013) (noting that Stevens' opinion is controlling).

opinion. That fact virtually negates the PSC's entire *Shady Grove* analysis, to the extent it even applies.

The controlling Stevens opinion actually reinforces that a federal rule cannot displace a state substantive right and remedy.[75] Here, the requirements of § -122 are undeniably substantive. Thus, under the controlling Stevens holding, FRCP 15 cannot supplant Tennessee's substantive law. Likewise, the Cain Actions cannot avoid dismissal by invoking FRCP 15 and *Shady Grove*.[76]

Even applying the Scalia rationale, the outcome is the same. There is no conflict between FRCP 15 and § -122 because the certificate is not a pleading covered by FRCP 15. The Plaintiffs do not lose the ability to amend their complaints by this Court enforcing § -122. They simply cannot use FRCP 15 to circumvent the separate, substantive requirement of § -122.[77]

## IV. Continued invocation of the TPLA cannot save the Branstetter Actions from dismissal.

Finally, the SSC Defendants move to dismiss the five (5) Branstetter Actions because the original complaints purporting to allege only product liability were not accompanied by a certificate. The Court's August 5, 2016 Order – holding the THCLA, not the TPLA, applies to the Plaintiffs' claims against SSC – mandates this result.

The PSC advances four flawed arguments in the hopes of saving the Branstetter Actions from mandatory dismissal with prejudice:

1. The Court has already ruled on the law applicable to the Branstetter Actions.

---

[75] *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 130 S. Ct. 1431, 1448-50 (2010) (Stevens, J., concurrence).
[76] The *Shady Grove* decision is admittedly complex. If the Court believes it has any impact on the ultimate outcome on this motion, the SSC Defendants request the opportunity to fully brief it.
[77] *Eiswert*, 2014 WL 11517824, at *3 ("[i]n addition, this Court finds that [*Shady Grove*] does not require the Court to reach a different result. The Court's decision not to allow the amendment to the Complaint does not contravene the controlling opinion in *Shady Grove*").

2. Interaction between the TPLA and THCLA created a "procedural catch 22."

3. No certificate of good faith was required because the Branstetter Plaintiffs filed only product liability claims with their original complaint, which do not require expert testimony.

4. The certificate of good faith requirement conflicts with a plaintiff's rights to plead alternative claims under FRCP 8.

To conclude that any of these arguments saves the Branstetter Actions from dismissal, the Court would have to (1) ignore its August 5, 2016 holding that the THCLA applies to the Plaintiffs' claims against SSC <u>and</u> (2) overlook the eight (8) Plaintiffs who complied with Tenn. Code Ann. § 29-26-122, despite the supposed "procedural catch 22." The PSC fails to explain why the Court should do either, instead opting to pretend the 2016 Order and the eight compliant complaints do not exist. They do exist, however, and lead to the conclusion that the Branstetter Actions must be dismissed with prejudice.

**A. The Court <u>did</u> rule on the law applicable to the Branstetter Actions, announcing on August 5, 2016 that the THCLA applies.**

The PSC begins by correctly asserting "The Court Has Already Ruled On The Issue of Law Applicable To The Branstetter Actions."[78] The PSC then cites to the Court's August 29, <u>2014</u> Order, in which the Court ruled that the Plaintiffs adequately stated claims under the TPLA <u>to survive dismissal</u>.[79] [80] The Court <u>did not</u> decide that the TPLA applied to the Plaintiffs' claims, as the PSC implies. The Court did not issue a definitive

---

[78] Doc. 3122 at 2.

[79] Doc. 1360 at 30.

[80] The PSC incorrectly asserts that the SSC Defendants are attempting to relitigate an issue without satisfying the appropriate standard for a motion to reconsider. This misstates the procedural posture of these issues. The SSC Defendants filed a motion for summary judgment based upon the Plaintiffs' failure to file certificates of good faith in January 2014. Doc. 774. The PSC opposed the motion, arguing that discovery was necessary to respond to the motion for summary judgment. Doc. 948. The Court agreed and denied the motion "without prejudice to being renewed following further discovery." Doc. 1255 at 3. Now that the PSC has had years to take discovery, the SSC Defendants raised the issue again through the instant motion.

ruling on the governing law until August 2016, when it held the THCLA applies to the Plaintiffs' claims against SSC, even those purporting to allege only products liability.[81] The PSC ignores the August 2016 Order, presumably because it is irreconcilable with the Branstetter Plaintiffs' position.

For instance, application of the THCLA pursuant to the Court's August 2016 Order means expert testimony (and, therefore, a certificate of good faith) is required in the Branstetter Actions. The Plaintiffs do not get to choose whether a certificate of good faith is required simply by asserting the THCLA does not apply. That is precisely the tactic unanimously rejected by the Tennessee Supreme Court in *Ellithorpe* (which is also left unaddressed by the PSC).

In *Ellithorpe*, the plaintiffs argued "that because the acts alleged in their complaint [did] not require expert testimony by a medical professional, dismissal with prejudice under section 29-26-122(c) [was] not required."[82] The court disagreed, holding the plaintiff could not "couch their claims in the guise" of a claim not requiring expert testimony.[83] After determining the THCLA applied, the court concluded that the failure to file a certificate of good faith required dismissal with prejudice.[84] This Court has followed the same path as *Ellithorpe*, finding the THCLA applies, and now must apply the requirements of the Act.

The PSC cites several Tennessee cases holding that expert testimony was not required under the THCLA's predecessor statute, the Tennessee Medical Malpractice Act ("TMMA"), for various causes of action.[85] However, those cases found that the causes of

---

[81] Doc. 3027.
[82] *Ellithorpe v. Weismark*, 479 S.W.3d 818, 829 (Tenn. 2015).
[83] *Id.*
[84] *Id.*
[85] Doc. 3122 at 8, n. 18-20.

action did not fall within the old TMMA's coverage. The broader scope of the THCLA now covers virtually every cause of action against a health care provider for an injury that occurs in the medical setting, including these complaints.[86] *Ellithorpe* recognizes only one exception to the expert testimony requirement, the common knowledge exception, which does not apply here.[87] Moreover, the Court's August 2016 ruling establishes that the Plaintiffs' claims against SSC <u>do not</u> fall outside the THCLA. Thus, the opinions cited by the PSC are inapposite, and do not save the Branstetter Actions from dismissal.

**B. Despite the supposed "procedural catch 22" and conflict between Rule 8 and Tenn. Code Ann. § 29-26-122, eight (8) Plaintiffs filed suit against SSC alleging claims under both the TPLA and THCLA in compliance with § -122.**

Eight (8) of the twenty-four (24) Plaintiffs with suits against SSC filed original complaints alleging claims under both the TPLA and THCLA <u>and</u> contemporaneously filed the required certificate. This directly contradicts the PSC's claims that (1) a "procedural catch-22" prevented Plaintiffs from filing product liability claims but still complying with the THCLA, and (2) a conflict exists between Tenn. Code Ann. § 122 and FRCP 8.

**i. If there was actually a "procedural catch 22," none of the Plaintiffs with suits against SSC would have been able to comply with § -122 and file claims under the TPLA, but eight (8) SSC Plaintiffs did just that.**

The PSC argues that the TPLA's one-year statute of limitations and the THCLA's mandatory presuit notice requirement (which requires a plaintiff to wait 60 days after sending presuit notice to file suit, but also extends the one-year statute of limitations for

---

[86] *Ellithorpe*, 479 S.W.3d at 826; *see also*, *Osunde v. Delta Med. Ctr.*, No. W2015–01005–COA–R9–CV, 2016 WL 537075, at *7 (Tenn. Ct. App. Feb. 10, 2016) ("[I]t should not be surprising if most claims now <u>arising within a medical setting</u> constitute health care liability actions.") (emphasis added).

[87] *Ellithorpe*, 479 S.W.3d at 829 ("In health care liability actions, such as this one, expert proof is required to establish the recognized standard of acceptable professional practice in the profession, unless the claim falls within the 'common knowledge' exception that is not applicable here.").

THCLA claims by 120 days after presuit notice is sent) created a "procedural catch 22" in which the statute of limitations for the TPLA claims could expire before the THCLA's mandatory 60-day waiting period. The PSC claims the Branstetter Plaintiffs took the "conservative approach" by filing original complaints alleging only product liability before the TPLA's one-year statute of limitations expired, later amending the complaints to add THCLA claims after the 60-day waiting period.

The PSC is wrong on both points. The Branstetter Plaintiffs certainly did not take a "conservative approach," and there was no catch 22.

The "conservative approach" would have been to file both the TPLA and THCLA claims simultaneously with a certificate of good faith, as eight (8) of the SSC Plaintiffs did. To accomplish this, the Branstetter Plaintiffs just needed to send presuit notice sooner. Delaying service of presuit notice is anything but "conservative." Obscured in all the briefing on these issues is that bringing TPLA claims against a Tennessee health care provider was unprecedented under Tennessee law. Attempting to break new legal ground by experimenting with a new cause of action (risking the ability to bring a clearly viable cause of action) can hardly be considered "conservative."

Likewise, there was no catch 22. If there was, none of the SSC Plaintiffs would have been able to file TPLA claims while complying with § 29-26-122. But, eight (8) SSC Plaintiffs did just that. Any tension between the two statutes was a prison of the Branstetter Plaintiffs' own making; it is not inherent in the statutes themselves. They opted to gamble in bringing a novel claim against SSC and lost. The Defendants should not be punished for that.

22

Additionally, the Tennessee Court of Appeals has already rejected the PSC's argument that conflicting statutes of limitations excuse compliance with the THCLA.[88] In *Patterson*, the Court of Appeals held that the Tennessee Governmental Tort Liability Act's one-year statute of limitations did not excuse compliance with the THCLA's 60-day presuit waiting period, and dismissed the case for failure to comply with the THCLA.[89] The same reasoning applies here. The Branstetter Plaintiffs and the plaintiff in *Patterson* could have both avoided dismissal simply by sending presuit notice sooner.

### ii. There is no conflict between § -122 and FRCP 8, as evidenced by eight (8) SSC Plaintiffs' filing claims under both the TPLA and THCLA in compliance with § -122.

Next, the PSC claims that § -122 conflicts with FRCP 8 by restricting a plaintiff's right to plead alternative claims. However, eight (8) Plaintiffs pled TPLA and THCLA claims in the alternative without any conflict between Rule 8 and § -122. Any supposed conflict between the THCLA and Rule 8 was again artificially created by the Branstetter Plaintiffs' own choices.

While this issue has yet to be considered by the First or Sixth Circuits, the Seventh and Third Circuits agree that state laws requiring certificates or affidavits of merit in medical malpractice cases do not conflict with Rule 8.[90] The Illinois statute considered by the Seventh Circuit is most analogous to Tennessee's.[91] The Seventh Circuit reasoned, "Rule 8 governs the content and form of a complaint."[92] The Illinois statute, on the other

---

[88] *See Patterson*, 2015 WL 3882899, at *4.

[89] *Id.*

[90] *Hahn v. Walsh*, 762 F.3d 617, 631 (7th Cir. 2014); *Chamberlain v. Giampapa*, 210 F.3d 154, 160 (3d Cir. 2000).

[91] The New Jersey statute requires a certificate of merit *after* the complaint is filed.

[92] *Hahn*, 762 F.3d at 631.

hand, "says nothing about the contents of the actual complaint; it is only concerned with presuit consultation <u>and related attachments to the complaint</u>."[93]

The same is true for § -122. There is no conflict with Rule 8 because § -122 says nothing about the form or content of the complaint. Thus, Rule 8 and § -122 can "comfortably exist side by side."[94]

* * * * * * *

Nothing prevented the Branstetter Plaintiffs from testing a novel theory of law by bringing TPLA claims against a health care provider. In doing so, however, the Branstetter Plaintiffs took that gamble one step further in choosing not the file their THCLA claims with a certificate of good faith at the same time as the TPLA claims. That was the proper path chosen by eight (8) SSC Plaintiffs.

The Court's August 2016 ruling that the THCLA governs proved this gamble a loser, and *Ellithorpe* prohibits the Plaintiffs from now disclaiming application of the THCLA to their original complaints. The THCLA applies, and it required certificates of good faith to be filed with the original complaints or face dismissal with prejudice. The statutory mandate is clear; the Branstetter Actions must be dismissed.

<u>**CONCLUSION**</u>

The THCLA indisputably required the Plaintiffs to file a certificate of good faith with their complaints against SSC or face dismissal. Eight (8) Plaintiffs with suits against SSC did so without issue. These other fifteen (15) Plaintiffs failed. Disregarding the Court's unequivocal statement that the THCLA applies to the Plaintiffs' claims against SSC, the

---

[93] *Id.* (emphasis added).
[94] *Id.*

PSC continues to try to avoid application of the THCLA by referring back to the TPLA, an issue already decided.

Even if the Court accepted this excuse, it would do nothing to save the Remaining Actions and Cain Actions from dismissal. In those two categories, the Plaintiffs filed complaints alleging ordinary negligence and failure to warn (separate and apart from their claims under the TPLA) without a certificate of good faith. The Court ruled more than two years ago that (1) claims for ordinary negligence and failure to warn are subject to the THCLA, and (2) complaints subject to the THCLA must comply with Tenn. Code Ann. § 29-26-122. The Remaining Actions and Cain Actions lacked certificates when they brought these THCLA claims. Accordingly, these actions must be dismissed with prejudice. Neither amendment nor the extraordinary cause analysis changes that result.

The Branstetter Actions require a different analysis, but the outcome is the same. The Court's August 2016 Order, holding that the THCLA governs, mandates application of § -122. Thus, the Branstetter Plaintiffs were required to file certificates of good faith with their original complaints just like the eight (8) Plaintiffs who successfully complied with § -122 while simultaneously alleging product liability claims in the alternative. The Branstetter Plaintiffs' excuses for failing to file a certificate are irreconcilable with the August 2016 Order and proper procedure followed by the other eight (8) Plaintiffs. The Branstetter Actions must also be dismissed with prejudice.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

AND

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**

*/s/* Parks T. Chastain
**PARKS T. CHASTAIN****
**KENT E. KRAUSE****
**ASHLEY E. GENO****
P. O. Box 23890
Nashville, TN 37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (fax)
pchastain@bkblaw.com
kkrause@bkblaw.com
ageno@bkblaw.com

*Attorneys for the SSC Defendants*

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 21st day of October, 2016.

/s/ Chris J. Tardio
**Chris. J. Tardio**