1
2                    UNITED STATES DISTRICT COURT
                      DISTRICT OF MASSACHUSETTS
3

4
   IN RE:  NEW ENGLAND COMPOUNDING    )  MDL NO. 13-02419-RWZ
5  PHARMACY CASES LITIGATION          )
                                      )
6                                     )
                                      )
7                                     )
                                      )
8                                     )

9           BEFORE:  THE HONORABLE RYA W. ZOBEL AND
                      THE HONORABLE JENNIFER C. BOAL
10

11

12
                       **STATUS CONFERENCE**
13                            **AND**
                        **MOTION HEARING**
14

15

16

17        John Joseph Moakley United States Courthouse
                      Courtroom No. 12
18                    One Courthouse Way
                      Boston, MA 02210
19

20                    September 28, 2016
                        11:30 a.m.
21

22
               Catherine A. Handel, RPR-CM, CRR
23                  Official Court Reporter
          John Joseph Moakley United States Courthouse
24            One Courthouse Way, Room 5205
                      Boston, MA 02210
25             E-mail: hhcatherine2@yahoo.com

APPEARANCES:

For The Plaintiffs:

     Hagens, Berman, Sobol, Shapiro LLP, by THOMAS M. SOBOL, ESQ., KRISTEN A. JOHNSON, ESQ., and EDWARD NOTARGIACOMO, ESQ., 55 Cambridge Parkway, Suite 301, Cambridge, Massachusetts 02142;

     Branstetter, Stranch & Jennings, PLLC, by J. GERARD STRANCH, IV, ESQ., 227 Second Avenue North, Nashville, Tennessee 37201-1631;

     Ellis & Rapacki LLP, by FREDRIC L. ELLIS, ESQ., 85 Merrimac Street, Suite 500, Boston, Massachusetts 02114;

     Lieff Cabraser Heimann & Bernstein, LLP, by ANNIKA K. MARTIN, ESQ., 250 Hudson Street, 8th Floor, New York, New York 10013-1413;

     Janet, Jenner & Suggs, LLC, by JUSTIN BROWNE, ESQ., 1777 Reisterstown Road, Suite 165, Baltimore, Maryland 21208 (appearing telephonically);

     Crandall & Katt, by PATRICK THOMAS FENNELL, ESQ., 366 Elm Avenue, SW, Roanoke, Virginia 24016 (appearing telephonically);


 FOR PAUL D. MOORE, IN HIS CAPACITY AS CHAPTER 11 TRUSTEE OF NECP, INC.:

     Duane Morris LLP by MICHAEL R. GOTTFRIED, ESQ., 100 High Street, Suite 2400, Boston, Massachusetts 02110-1724;


 FOR THE DEFENDANTS:

     Gideon, Cooper & Essary, PLC, by CHRIS J. TARDIO, ESQ., C.J. GIDEON, ESQ., and MATTHEW CLINE, ESQ.;

     (Appearances are continued on the next page.)

APPEARANCES (Cont'd):


FOR THE DEFENDANTS: (Cont'd)


    Fulbright & Jaworski, LLP, by MARCY H. GREER, ESQ., 98 San Jacinto Boulevard, Suite 1100, Austin, Texas 78701;


    McGuire Woods LLP, by STEPHEN D. BUSCH, ESQ., One James Center, 901 East Cary Street, Richmond, Virginia 23219-4030 (appearing telephonically);


    Pessin Katz Law, P.A., by GREGORY K. KIRBY, ESQ., 901 Dulaney Valley Road, Suite 500, Towson, Maryland 21204;


    Donoghue, Barrett & Singal, P.C., by BRUCE A. SINGAL, ESQ., One Beacon Street, Boston, Massachusetts 02108-3106;


    Arnett, Draper & Hagood, LLP, by PAUL WEHMEIER, ESQ., P.O. Box 300, 2300 First Tennessee Plaza, Knoxville, Tennessee 37901-0300 (appearing telephonically);


    Law Offices of Peter G. Angelos, P.C., by SHARON L. HOUSTON, ESQ., and PATRICIA J. KASPUTYS, ESQ., 100 North Charles Street, 20th Floor, Baltimore, Maryland 21201 (appearing telephonically);



FOR THE UNITED STATES IN THE CRIMINAL CASE:


    United States Attorney's Office, by AUSA GEORGE VARGHESE, John J. Moakley Courthouse, One Courthouse Way, Suite 9200, Boston, Massachusetts 02210;

```
 1                   P R O C E E D I N G S

 2        (The following proceedings were held in open court before

 3   the Honorable Rya W. Zobel, United States District Court Judge,

 4   and the Honorable Jennifer C. Boal, Magistrate Judge, United

 5   States District Court, District of Massachusetts, at the John J.

 6   Moakley United States Courthouse, One Courthouse Way, Boston,

 7   Massachusetts, on September 28, 2016.)

 8             JUDGE ZOBEL:  Good morning.  Please be seated.

 9             COURTROOM DEPUTY CLERK URSO:  This is In Re: 13-2419,

10   New England Compounding.

11             JUDGE ZOBEL:  All right.  Ms. Johnson, are you it?

12             MS. JOHNSON:  I think I'm it, your Honor.  Good

13   morning.  Kristen Johnson for the Plaintiffs' Steering

14   Committee.

15             This morning we have one argument -- one motion that

16   is ready for argument and that is the motion to request

17   approval from the Court to access the PSC's repository by

18   Barry Cadden.  I believe Mr. Singal is here to address that

19   motion.

20             JUDGE ZOBEL:  I'm sorry.  Who is here on behalf of

21   Mr. Cadden?

22             MR. SINGAL:  Bruce Singal.

23             JUDGE ZOBEL:  How are you?

24             MR. SINGAL:  I'm good, thank you.  And thank you for

25   having us.
```

```
1              JUDGE ZOBEL:  Why don't you find a microphone
2     somewhere and -- we have a lot of people on the telephone and
3     they can't hear unless people speak into the microphone.
4              Ms. Johnson, I have read the papers in this case.
5     Does the PSC or, for that matter, do any of the remaining
6     defendants in the case have objection to Mr. Cadden's request?
7              MS. JOHNSON:  The PSC does, your Honor, and we
8     filed --
9              JUDGE ZOBEL:  Based on the failure or at the moment
10    not paying for it, or what?
11             MS. JOHNSON:  We expressed two concerns.  The first
12    is that the repository was created in order to aid civil
13    litigation in this case.  It was not created for the purpose
14    of helping the criminal defendants, and we're also mindful of
15    the government's point of view, which is that Mr. Cadden has
16    had ample opportunities to conduct discovery through the
17    criminal process.  In our view, reading Mr. Cadden's
18    submission, he has not made the case for needing access to
19    that repository.
20             The second point is one of cost, your Honor, which is
21    it is very expensive to maintain this repository.  It's a
22    repository that's cost has been borne by the Plaintiffs'
23    Steering Committee, which is supplemented then by some user
24    fees.  The cost, I would say, is really sort of a second issue
25    here, your Honor.  If the Court were to decide that Mr. Cadden
```

1    should have access, we're confident that we could work out the

2    user fee or cost issue directly with Mr. Cadden's counsel.

3        JUDGE ZOBEL:  Well, if he gets access, I would assume

4    that there might be also some privacy issues that need to be

5    addressed, and then I would ask counsel for plaintiff and to

6    some extent, I guess, the defendants as well, to work out a

7    protocol, but we're not there yet.

8        MS. JOHNSON:  Just to clarify on that point, your

9    Honor.  It should not be the case that there is any protected

10   health information in that repository.  There's a separate

11   repository to which anything containing HIPAA or otherwise

12   protected information was --

13       JUDGE ZOBEL:  That is already the case?

14       MS. JOHNSON:  That is already the case.  Now, I'm

15   saying that.  I cannot represent to the Court and I won't

16   represent to anyone that there's nothing in there that has

17   slipped through the cracks or that does, in fact, contain

18   that, but that was the plan from the beginning, your Honor.

19       JUDGE ZOBEL:  Okay.  I'll hear you.

20       MR. SINGAL:  Thank you, your Honor.

21       JUDGE ZOBEL:  Why don't you remain seated and then

22   speak into the microphone.  We have yet to get tall enough

23   microphones.

24       MR. SINGAL:  Thank you, your Honor.

25       JUDGE ZOBEL:  Especially for you.

```
 1              MR. SINGAL:  I feel a little like an interloper here,
 2      your Honor, but thank you for having us.
 3              JUDGE ZOBEL:  You're welcome.
 4              MR. SINGAL:  The reason we're here is that we have a
 5      criminal trial scheduled for January 5th, 2016 (sic).  There
 6      are some what I would describe as ambiguities, at best, as to
 7      our ability to use some of the information gleaned from this
 8      civil case, and we want to ensure that those ambiguities are
 9      eliminated and that there is no open question.  So that when
10      we go to offer evidence that we have already properly obtained
11      in the civil deposition or, if given permission, obtained in
12      the future from the civil depositions and other discovery,
13      that, frankly, the government not be able to point to this --
14      to the pending protective order of confidentiality that covers
15      at least some of those materials.  So, the government, your
16      Honor --
17              THE COURT:  Wait a minute.  Is access not the issue
18      at all?  Are you simply seeking the use of documents that you
19      already have?
20              MR. SINGAL:  We're seeking permission with respect to
21      two different categories, your Honor.  One is that we have
22      already properly accessed a large amount of information during
23      the time we were parties in the civil case, and we want to
24      ensure that we are able to use that information in the
25      criminal case.
```

1          Secondly, once our access was stopped, actually

2     voluntarily, after Magistrate Judge Boal's order in January,

3     on a related but different motion, we are asking for

4     resumption of the access so that we have access to new

5     information that has been added to the repository since that

6     time.  So, let me address those two categories in turn.

7          The government, essentially, suggests that -- accuses

8     us of making an end-run around the criminal discovery rules,

9     and to some degree I would plead guilty to that, unlike my

10    client who is not guilty of his charges, but I say we plead

11    guilty to it in the sense that it is the only proper and

12    sensible way to handle the situation under the circumstances.

13         So, what I mean by that is that as a party in the

14    civil case, we're permitted access to the repository of

15    information, not the so-called Rust repository, which has the

16    protected health information and which we do not seek access

17    to, but to the remainder of the information that's non-

18    protected health information.

19         And by way of context -- and I know you have a busy

20    schedule.  I will be brief, but we are defending a 97-count --

21         THE COURT:  I always worry when counsel tell me

22    they're going to be brief.

23         MR. SINGAL:  I think I mean it.  I'm trying to mean it.

24         But, in any event, to make it short, we have 97

25    counts against us.  One of those is a RICO count with 78

1    racketeering acts.  25 of those racketeering acts are second

2    degree murder counts, racketeering acts, and the government

3    has said explicitly how overwhelming their evidence is.  They

4    have said, "We believe" -- and I'm quoting now, "We believe

5    the evidence leads to the inescapable conclusion that Mr.

6    Cadden," my client, "and Mr. Chin," who is also going to trial

7    in January, "will likely face the rest of their lives in

8    prison."

9            And they have then also gone on to say that -- and

10   this is from the detention hearing -- that the -- they

11   describe, "The enormity of offenses these two men are facing

12   and the sentences that will come when they are convicted."

13           Well, it sounds like the victory lap is about to

14   begin and we shouldn't even bother showing up, but part of the

15   reason that we need to be clear on this point is that in light

16   of what the government characterizes as, "The overwhelming and

17   draconian evidence," which is virtually certain to result in

18   our client spending the rest of his life in jail, let's look

19   at what we're asking for.

20           We're asking just to use -- largely, just to use

21   material we already have access to, and these are not state

22   secrets.  These are deposition transcripts, for God's sake.

23   They are discovery in the civil case, and we are simply asking

24   the Court, out of an abundance of caution, to say under

25   Paragraph 6 of the protective order that we can use these with

1    the approval of the Court in the criminal case.  The provision

2    in question only applies, I must add, to confidential

3    discovery material, but because some of the discovery material

4    that we want to use may well be deemed confidential, we don't

5    want to have any question about that.

6          So, we are asking the Court to use its authority for

7    the reason contemplated in this provision, that there be other

8    purposes allowed, and certainly, given the way the government

9    has characterized the overwhelming weight of evidence and the

10   certainty of conviction and sentence, it doesn't seem to be a

11   lot to ask to be given access to this.

12         Now, the second category is -- when I say, "given

13   access to it," I mean to use what we already have.  The

14   alternative, I suppose, which is why they call it an end-run,

15   would be instead of just using what we already have properly

16   obtained, to re-subpoena it from either the PSC or the parties

17   who originally provided it and then go through the subpoena

18   process, which seems ludicrous to me, frankly, and

19   inefficient, wasteful, and designed, frankly, by the

20   government's intent just to obstruct our efforts to use

21   information we are entitled to.

22         Secondly, we are asking that we resume -- be given

23   renewed access to the materials so that we can access and use

24   materials that have been added to the repository since the

25   time we stopped accessing it.  We were told our access has

1    been cut off.  We haven't checked that because we haven't

2    tried to get into it because we're trying to ensure that we're

3    in compliance with the order.

4            And so, we simply want to be able to continue getting

5    access to the same types of materials we have had access to

6    properly all along and have the Court rule that we can use

7    those in the criminal trial, all of which, of course, is going

8    to end up being subject to Judge Stearns' rulings on

9    admissibility, but we don't want there to be an artificial

10   obstacle in the way of that.

11           So, we have proposed an order.  I'm sorry that this

12   was not included as part of our written materials, but we have

13   proposed an order for your consideration, which captures what

14   we believe we are entitled to in order to defend ourselves

15   against these draconian criminal charges.

16           JUDGE ZOBEL:  Is the government represented?

17           MR. VARGHESE:  Yes, your Honor.

18           JUDGE ZOBEL:  You are?

19           MR. VARGHESE:  George Varghese for the United States.

20           JUDGE ZOBEL:  George?

21           MR. VARGHESE:  Varghese for the United States, your

22   Honor.

23           JUDGE ZOBEL:  Why does the government object?

24           MR. VARGHESE:  Your Honor, the government doesn't

25   object to Mr. Cadden having access to documents.  The point

1    is, your Honor, that there's the Rules of Federal Criminal

2    Procedure.  He can have any documents he wants.  He just has

3    to use the Criminal Procedure Rules that are in place to get it.

4            THE COURT:  Why?

5            MR. VARGHESE:  The reason why we --

6            JUDGE ZOBEL:  If he already has them, why does he

7    have to go through the process --

8            MR. VARGHESE:  Well, your Honor, there's two things

9    on that point, your Honor.  First, with respect to what he has

10    and what he doesn't have, Magistrate Judge Boal specifically

11    ruled in January of 2016 that he wasn't entitled to continue

12    to attend depositions because he was a settling defendant.  He

13    was sitting in --

14            JUDGE ZOBEL:  That's a different issue.

15            MR. VARGHESE:  No.  He wants to get the deposition

16    transcript that he was not allowed to sit in on.  And so, we

17    don't understand why, when the Court issues an order saying

18    you're not entitled to attend these depositions and now he's

19    coming back to this Court and saying, Well, we want to have

20    access to them, even though you previously told us we couldn't

21    sit in on them.

22            JUDGE ZOBEL:  What's the difference between

23    participating in a process and then getting the fruits of that

24    process?

25            MR. VARGHESE:  Your Honor, with all due respect,

1   though --

2           JUDGE ZOBEL:  I think --

3       MR. VARGHESE:  With all due respect, your Honor, he's

4   trying to get something which the Court has already said

5   previously that he shouldn't have been able to sit in on and

6   he filed an emergency motion and it was denied.

7           JUDGE ZOBEL:  Okay.

8       MR. VARGHESE:  And so, your Honor, if the Court wants

9   to go down this route and give him access to all of it, what

10  the government is asking for is that the government also have

11  access to it as well as the eleven other criminal defendants.

12          JUDGE ZOBEL:  Why?

13      MR. VARGHESE:  Because, your Honor, we don't think

14  it's fair to give one person access and not the rest of the

15  parties in the criminal matter.  There's a criminal discovery

16  process in place, your Honor.  There's discovery that's been

17  provided to the defendant, more than 12 million pages.  We

18  don't understand why defendant Cadden gets to access all of

19  these depositions that are primarily -- that were solely for

20  the litigation in this MDL and the bankruptcy proceeding.  Why

21  does he get to look at all of these depositions and the

22  government and the other eleven defendants not?

23          So, the rule either has to be that nobody should be

24  able to use that or if they are going to be able to use it,

25  that everybody be allowed to use in interest of fairness, your

```
1    Honor.  We don't think he should be allowed to use it, because
2    people contributed to this repository, your Honor, for the
3    MDL.  All of these parties, all of these third-party vendors,
4    all of these settling parties contributed because --
5            JUDGE ZOBEL:  He contributed, too.
6            MR. VARGHESE:  He didn't.
7            JUDGE ZOBEL:  Because of the criminal case?
8            MR. SOBOL:  I don't want to interrupt any of them,
9    but I do want to be heard on this at some point.
10           MR. SINGAL:  I'm not sure I can point to discovery we
11   contributed.  What we merely contributed, your Honor, was $22
12   million towards the civil settlement.
13           MR. VARGHESE:  That's a separate process, your Honor.
14           JUDGE ZOBEL:  Yes, that is separate.
15           MR. SINGAL:  And I will say that -- I'm sure Mr.
16   Varghese has read our reply where we made it clear that if the
17   Court deems it appropriate, we have no objection to the
18   government and the other defendants having access to this
19   information.
20           MR. VARGHESE:  But the point is, your Honor, they
21   didn't contribute anything.  They never -- they sat in on
22   depositions for the sole purpose of trying to glean
23   information for the criminal case.  This whole process that
24   defendant Cadden has been undertaking with respect to this MDL
25   discovery process has been to prepare for the criminal case,
```

1    your Honor, and we object to that.  There is a criminal

2    procedure in place.  That's the way the system is supposed to

3    work and we don't think that this is an appropriate way of

4    doing it, but if the Court wants to entertain it, we would

5    say, fine, then open it up to everybody, but, again, then

6    we're talking about cost issues and the PSC has objections to

7    that.

8            But let's be clear about it, your Honor.  They did

9    not contribute anything to this repository.  They didn't ask

10   any deposition questions.  They just sat in and listened and

11   gleaned from these transcripts what they could to help them in

12   the criminal case.  This whole -- this whole participation in

13   the MDL discovery process has been about the criminal case.

14           JUDGE ZOBEL:  Well, I can understand that if you're

15   charged with 98 different counts.

16           MR. VARGHESE:  We have also provided discovery as

17   we're entitled -- as we're obligated to under the rules, and

18   he is obligated to follow the rules as well.  If he wants

19   documents, he can file a Rule 17 subpoena, like every other

20   criminal defendant.

21           MR. SOBOL:  If I may, your Honor?

22           JUDGE ZOBEL:  Mr. Sobol.

23           MR. SOBOL:  I think it's important to understand that

24   from the PSC's perspective, the question is where should this

25   decision be made, here or in front of Judge Stearns.  We think

1    it should be done in front of Judge Stearns, with all respect,

2    and here's the reason why.

3           When this outbreak occurred in the fall of 2012, the

4    CDC determined that there were many people who had been killed

5    or injured by reason of what it is that came out of NECC.

6    This MDL was a result of trying to determine the civil

7    liability and compensation for victims, and that process ought

8    not turn out to be a vehicle for Mr. Cadden to defend his

9    murder charges.

10          So, at the very outset, when this MDL got formed, the

11   PSC wanted to take discovery of Mr. Cadden and Mr. Chin and

12   Mr. Doug Conigliaro and all the rest of them of the Insiders.

13   We wanted to be able to take depositions of them.  We wanted

14   to have them contribute their personal documents, and if they

15   wanted to take the Fifth, we wanted them in front of a camera

16   taking the Fifth so we could use that in the civil proceeding

17   later.

18          They adamantly opposed that for the two years that it

19   took us to negotiate a settlement.  They didn't want to

20   contribute any documents.  They wouldn't sit in front of a

21   camera and take the Fifth.  They wouldn't answer any

22   questions.  They didn't put anything in the repository.

23          Their position was we're going to settle in the

24   bankruptcy.  We're going to contribute some money.  We're not

25   going to do anything else for you.  If you try to come after

1    us for it, you shouldn't be doing that, and so we didn't.

2           Now, I was perplexed why it is during that whole time

3    that Mr. Cadden was, in fact, participating, but taking --

4    getting access to the information that was being provided into

5    the repository, because his position was he shouldn't be a

6    part of any discovery.  We're negotiating a deal.  So, if

7    we're negotiating a deal, why are you participating?  I always

8    sensed that it was probably to defend some eventual criminal

9    charges.

10          He was shut down appropriately by Judge Boal earlier

11   this year from participating in those depositions because then

12   we knew at that point that he had settled, that what he was

13   doing was sitting around trying to use this process, taint

14   this MDL, as a vehicle for him to defend his murder charges,

15   and that wasn't right, and we don't think it should be done

16   now.

17          Now, if there's a subpoena served on us by Judge

18   Stearns, we'll respond to it in kind, and he can sit on it and

19   make a decision at that point in that vehicle as to whether or

20   not fruits that were -- of this proceeding should be used for

21   that criminal process, but I don't think it's appropriate,

22   with all due respect -- I mean that in no hidden way -- for

23   this Court to have to make a decision about whether or not

24   this -- these proceedings should be used one way or another

25   for Mr. Cadden to defend his RICO murder charges.

```
1              MR. SINGAL:  Your Honor, I -- just very briefly.

2              Mr. Sobol filed a one-page opposition that was

3    confined to cost issues, which are easily resolvable.  There

4    were very little cost issues because, again, the bulk of what

5    we are asking to use we already have, and I understand the

6    faced with what the government says will put our client in

7    jail for life, we've had the temerity to exercise

8    constitutional rights and we have had the temerity to look to

9    see whether civil depositions and other discovery might

10   provide some exculpatory information to defend against the

11   overcharges we're confronted with.

12             And so, to sit and listen to this notion that we are

13   undermining the criminal justice system in some way when we

14   are simply trying to use information we properly obtained as

15   parties in this case and that we are entitled to properly use

16   and continue to gain access to just really is a disconnect

17   between the seriousness of the criminal charges and, frankly,

18   the triviality of the objections.

19             JUDGE ZOBEL:  We will take the papers.  We have not

20   decided as between us who will decide.  One of us will.  Thank

21   you all very much.

22             MR. VARGHESE:  Thank you, your Honor.

23             MR. SINGAL:  Thank you.

24             JUDGE ZOBEL:  Ms. Johnson, I think you have the floor

25   again.
```

```
 1              MS. JOHNSON:  Thank you, your Honor.

 2              That brings us to Item B on the agenda, report to the

 3   Court.  Up first on the status of the bankruptcy, we have an

 4   update on the payments from the trust fund.

 5              JUDGE ZOBEL:  I saw your motion, your note.  I guess

 6   that's a report.

 7              MS. JOHNSON:  Yes.

 8              JUDGE ZOBEL:  That's good work.  Is the government

 9   represented on the telephone today?

10              (No response.)

11              JUDGE ZOBEL:  No.

12              MS. JOHNSON:  I do not believe so, your Honor.

13              JUDGE ZOBEL:  Do we need them?

14              MS. JOHNSON:  I don't think so, no.  Things are

15   coming along just fine.

16              JUDGE ZOBEL:  Good.

17              MS. JOHNSON:  There have been a total of about 2,339

18   claims filed by victims.  As of this week --

19              JUDGE ZOBEL:  Against Medicare?

20              MS. JOHNSON:  No, your Honor.  I'm sorry.  I'm

21   speaking of claims generally filed in the bankruptcy on behalf

22   of the tort victims.

23              JUDGE ZOBEL:  These are people who want to get into

24   the trust?

25              MS. JOHNSON:  Correct.  These are people that very
```

1    much want their checks, understandably.

2           So far -- I'm sorry.  In total, there have been about

3    2,339 claims filed by tort victims.  As of this week, about 90

4    percent of those claims have been finally adjudicated by the

5    claims administrator.  Meaning, they're done.  That number is

6    comprised of about 85 percent that were allowed, in whole or

7    in part, and to which there's been no objection, and five

8    percent where there were denials issued and there's been no

9    appeal.  About ten percent of those claims remain pending.

10   That includes about seven percent --

11          JUDGE ZOBEL:  Ten percent of the denials or ten

12   percent of the total?

13          MS. JOHNSON:  Ten percent of the total, your Honor,

14   remain pending.  That includes about seven percent that

15   receives an initial determination, but which is still under

16   review by the claims administrator, often at the victim's

17   request that it still be under review, and then about three

18   percent are claims that were denied, in whole or in part, and

19   are on appeal.

20          Speaking with Mr. Ellis this morning, I understand

21   that the universe of the appeal is about 68 individual claims,

22   and I understand that that is a sufficient amount for Judge

23   Nieman, who is the appeals administrator, to process and

24   continue working through.  So, it is believed that there will

25   be no problems with that appellate process in dealing with

1    those appeals in a timely manner.

2        As to the approved claims, the tort trustee is

3    continuing to receive information from Medicare and state

4    Medicaid agencies on behalf of the victims.  As she receives

5    that information, she then issues lien letters to the victims

6    or the victim's attorney, depending on whether they're pro se.

7    Those letters then require a response from the attorney of the

8    victim, and once that response is received, then checks can be

9    sent out.

10        JUDGE ZOBEL:  In the full amount of the claim or

11   partial?

12        MS. JOHNSON:  These are initial payments only, your

13   Honor, that we're talking about.  We do expect there to be

14   later payments down the road, in part, because of the tax

15   refunds, some of which have made their way into the tort

16   trust, but some of which we expect well in the future.

17        The first checks to victims went out in August.

18   Further checks continue to be issued on a weekly basis, and it

19   is our --

20        JUDGE ZOBEL:  You beat your initial aim by at least

21   three months, haven't you, maybe four?  Initially it wasn't

22   anticipated until -- the checks would go out in the December.

23   Wasn't that right?

24        MS. JOHNSON:  I think at some point, your Honor, yes,

25   that was our projection.  I think more recently we had

1    targeted August for the first payments to go out.  We now

2    expect, given the way that the process has played out, that

3    all or virtually all claimants will receive checks by

4    year-end, and we continue to do everything that we can to

5    expedite that process.  And when I say "we," I should be

6    clear.  In large part, it's the tort trustee who is charged

7    with all of this.  The PSC and others, including Mr. Ellis,

8    have helped to facilitate that process.

9             So, unless there are any questions, your Honor, about

10   status of the payments, we can move on.

11            JUDGE ZOBEL:  Thank you.

12            MS. JOHNSON:  That brings us to Item 2, the status of

13   the insurance declaratory judgment actions, which Mr. Stranch

14   will discuss.

15            MR. STRANCH:  Good morning, your Honor.

16            Just this week we received notice that the Supreme

17   Court denied the request to take the certified question.  So,

18   it is not being taken by the Tennessee Supreme Court.

19            JUDGE ZOBEL:  So, what does that mean?  Where does it

20   go from here?

21            MR. STRANCH:  That means we return back to the

22   District Court and the litigation will commence from there.

23            JUDGE ZOBEL:  Here?

24            MR. STRANCH:  No.  In the District Court in Tennessee

25   where it's pending.

```
 1              JUDGE ZOBEL:  Okay.

 2              MS. JOHNSON:  Item 4, status of the litigation track.

 3    4(a) is the suggestion of remand.  To inform the Court and

 4    those listening by phone, the JPML has entered the Court's

 5    suggestion of remand and 66 cases have now been remanded or in

 6    the process of being remanded to their original transfer or

 7    districts.

 8              4(b) addresses Specialty Surgery Center matters and,

 9    again, Mr. Stranch will address that.

10              MR. STRANCH:  I'm not going to say a "brief"

11    background because I know you hate the word "brief."  So, I'll

12    take my time and explain it.

13              (Laughter.)

14              THE COURT:  "Brief" has many meanings.

15              MR. STRANCH:  Yes.  If the Court recalls, we had some

16    motion practice against a third party for computers that had

17    been transferred from the defendant to a third party.  The

18    litigation over whether that was to be produced and what was

19    to be produced from it has now been resolved, but we're in the

20    production process and it's taking longer than what the

21    parties anticipated.

22              And so, there's competing motions.  There's motions

23    that have been filed to modify portions of the schedule, but

24    the problem is, just from a practical point, the amount of

25    time that it's going to take for third parties to get all the
```

```
1    documents reviewed and produced to the defendants so the
2    defendant can then do the privilege review that they've
3    allowed to do and produce it to us is going to mean that we're
4    going to blow other deadlines in the case and they won't be
5    able to be met.
6            So, what we would propose to the Court, because
7    there's multiple motions pending on this and some of the stuff
8    has changed since the initial motions were filed, is that we
9    get together with the defendants and work out exactly what
10   they need, which we think we know now, and how that impacts
11   the rest of the schedule.
12           For example, our deposition cut-offs will be before
13   we receive the documents, just as an example.  So, we're going
14   to need to move certain dates around to accomplish that, and I
15   will represent to the Court that it's the PSC's intention to
16   keep those dates as tight as possible, but also not to make it
17   impossible for the defendants to be able to get the documents
18   to us.  That's how I propose resolving this if that works for
19   the Court.
20           JUDGE BOAL:  Sounds sensible.  When do you think
21   you'll submit the new proposal?
22           MR. STRANCH:  Say, ten days?
23           MR. TARDIO:  Your Honor, Chris Tardio for the
24   Specialty Surgery Center defendants.
25           Yes, I think we can submit a proposed schedule and I
```

1    hope that it will be agreed upon.  I don't know whether Mr.

2    Stranch anticipates or that the Court will rule on Cumberland

3    Medical Center's motion for more time to review the documents,

4    because if the Court grants Cumberland Medical Center's motion

5    through, I believe, October 10th to review the documents, that

6    will allow us to go from October 10th forward with the rest of

7    the deadlines.  If the Court were going to deny it, then that

8    would impact what we agreed upon.

9         MR. STRANCH:  Your Honor, to be perfectly frank, I'm

10   working under the assumption that it's going to be granted

11   because they simply can't do it before then.

12        MR. TARDIO:  I agree.

13        JUDGE BOAL:  Assuming this was before me, I was

14   intending to grant it and then work with you all, and I have

15   read your response.

16        MR. WEHMEIER:  Your Honor?

17        JUDGE BOAL:  Yes.

18        MR. WEHMEIER:  Paul Wehmeier for Cumberland Medical

19   -- representing Cumberland Medical Center.

20        JUDGE ZOBEL:  You're on.

21        (Pause.)

22        JUDGE ZOBEL:  Are you there?

23        MR. WEHMEIER:  Yes.  I'm sorry.  I'm having a very

24   difficult time hearing you.

25        I just wanted to make clear that we are on the line,

happy to answer questions.  The deadline was premised upon the

ediscovery review that we had undertaken.  Since the filing of

our motion, your Honor, there has been also some documents

identified as part of the forensic review which are relatively

sizable as far as number of emails.

For example, there's a PDF file, your Honor, that has

been identified for further review that has just in two sub-

folders of the email file over a thousand messages and, as I

understand it, those messages may or may not have come up in

the ediscovery review.  So, there are additional documents

that we are still trying to work with the PSC on and Logic

Force, the third-party provider, that we haven't really even

considered with respect to our October 10 deadline.

We're certainly happy on the ediscovery side to get

that additional time and we believe we can complete our review

of the ediscovery documents within that time, but we're still

a little bit without information with respect to this forensic

review portion.

JUDGE BOAL:  So, why don't I -- in the first

instance, I grant Cumberland's motion at Docket 3097, and then

I suppose I could grant the motion at Docket 3096, but not set

specific dates and wait to get a proposal from you all as well

as Cumberland's attorney, and understanding that you're going

to submit it in ten days' time.

MR. STRANCH:  That works for us, your Honor.

```
 1            MR. TARDIO:  Thank you, your Honor.
 2            MS. JOHNSON:  That brings us to Item 4(c), addressing
 3     the Box Hill cases, and I believe Ms. Sharon Houston and Patty
 4     Kasputys are on the phone to address those for the plaintiffs.
 5            MS. HOUSTON:  Good morning, your Honor.
 6            JUDGE ZOBEL:  Good morning.
 7            MS. HOUSTON:  This is Sharon Houston.  All three
 8     issues have been resolved.  One, the notice by the
 9     consolidated plaintiffs for the request of extension of time
10     was granted.
11            (Pause.)
12            JUDGE ZOBEL:  Are you there?
13            MS. HOUSTON:  And the motion for remand or transfer
14     the Box Hill cases to Maryland was denied, and the notice for
15     the consolidated plaintiffs for common issue expert report was
16     -- those reports were served on 9/15, and in line with the
17     amended discovery deadline, the defendants' common issue
18     expert reports will be due October 17th.
19            JUDGE ZOBEL:  So, that's all on Box Hill, right?
20            MS. HOUSTON:  That's correct.
21            JUDGE ZOBEL:  And it is progressing neatly?
22            (No response.)
23            JUDGE ZOBEL:  Thank you.
24            MS. HOUSTON:  I'm sorry, I didn't hear you.
25            JUDGE ZOBEL:  It's okay.
```

1          MS. JOHNSON:  That brings us, then, your Honor, to

2     4(d), the status of cases not objecting to remand.  Many of

3     those were resolved by the JPML remanding cases.  So, I'm not

4     sure there's anything else to address there.

5          JUDGE ZOBEL:  What about the California case, Roman

6     IV?  It says it's in arbitration, binding arbitration.

7          MS. JOHNSON:  Yes.  So, I believe that case, your

8     Honor -- I understand it's listed under cases not objecting to

9     remand.  That's actually part of a group of cases where

10    objections to remand were filed.

11         JUDGE ZOBEL:  The status --

12         MS. JOHNSON:  Well, I'm not sure, but those cases are

13    all represented by Ms. Dougherty, and Justin Browne from her

14    firm, I believe, is on the phone to address those cases.  So,

15    he may be able to answer your question.

16         MR. BROWNE:  This is Justin Browne.  I am on the

17    phone and I would be happy to answer any questions.  However,

18    I did not hear the question.

19         JUDGE ZOBEL:  The question was what the status is of

20    the California case.  I gather, there's only one California

21    case which is in the process of binding arbitration.

22         MR. BROWNE:  Okay.  The California case, which is --

23    the plaintiff's last name is Jeffries.  In that case, your

24    Honor, after a long period of time of being unable to reach

25    our client and otherwise resolve the matter, we have done so

1    and we believe we will have a final resolution within the next

2    30 days, if not sooner.

3           I spoke with defense counsel via email as recently as

4    yesterday.  He's graciously agreed to give us that time to

5    wrap things up, with the Court's indulgence, of course, and

6    with the understanding that defendant is retaining its right

7    to be heard on the matter if something falls through, but we

8    anticipate being able to wrap that up very quickly, your

9    Honor.

10          JUDGE ZOBEL:  Well, that's good.

11          Are there any -- is it necessary for us, the Court,

12   to make any decision as to any of these cases or is there

13   agreement as to all, all of the remands that are listed here?

14          MR. BROWNE:  Your Honor, if I may.  We have three

15   categories of cases that I'm prepared to discuss with you

16   today, one of which you have already resolved.  So, that will

17   leave two.

18          In the first group of cases -- there are five of

19   them -- we will be filing dismissals.  We worked out the

20   language with defense counsel and I think there's just a

21   couple of things to -- some t's to cross and i's to dot, but

22   we will be filing dismissals in the following cases:  Last

23   name Montee, M-o-n-t-e-e, and I'll give you case numbers, if

24   you would like, your Honor.  Just let me know.  I'm going to

25   be mindful of everyone's time.  Would you want that?

1          JUDGE ZOBEL:  Montee, and there were several cases

2     that -- I can't find them.  They were listed somewhere in this

3     document.  I can't find it anymore.  So, Montee, I remember

4     they were Massachusetts cases, I thought, were they not?

5          MS. JOHNSON:  There are some direct-filed cases, your

6     Honor, in Massachusetts.  That's a separate category from what

7     I believe Mr. Browne is addressing.

8          JUDGE ZOBEL:  Is Montee one of them?

9          MS. JOHNSON:  Let me check, your Honor.

10         (Pause.)

11         MS. JOHNSON:  No, your Honor.  The list of directly-

12    filed cases in Massachusetts, just for the Court's reference,

13    is an ECF No. 3065.

14         JUDGE BOAL:  Can I ask about those cases?  My

15    understanding is discovery was stayed in those cases, perhaps

16    until today.  So, what should we be entering a schedule for

17    those cases at this point?

18         MS. JOHNSON:  I believe what we discussed last time

19    -- at the last status conference, your Honor, is that we would

20    stay discovery until today, at which point we hope to

21    understand what was going on in the cases to which objections

22    to remand have been filed, and my understanding is Mr. Browne

23    has just updated the Court verbally about what's going on in

24    those cases.

25         I might suggest that he file a short status report

1    with the Court that has the docket numbers and the plaintiffs'

2    names.  So that there may be easier.

3            JUDGE ZOBEL:  I accept Ms. Johnson's suggestion.  We

4    both do.

5            MS. JOHNSON:  Thank you, your Honor.

6            JUDGE ZOBEL:  That doesn't mean, Mr. Browne, you need

7    to stop talking.

8            MS. JOHNSON:  Right.  And, Mr. Browne, I don't mean

9    to speaking over you, but to address the directly-fileds.

10           My suggestion would be, once we understand what's

11   going on with the objections to remand, it may make sense to

12   impose either the same or staggered schedules, but it may be

13   helpful to -- as we're plotting the course for trials forward,

14   it may be helpful to understand what other cases, if any,

15   would be staying here and worked up.

16           So, my short-term suggestion, your Honors, would be

17   that we extend that stay of discovery until the next status

18   conference, and before the next status conference the

19   plaintiffs in all of these cases, including the directly-filed

20   and those to which there remain objections to remand for

21   propose of the schedule or schedules, preferably in

22   conjunction with the defendants, that they think makes sense

23   for getting these cases to trial.

24           JUDGE ZOBEL:  Did you hear that, Mr. Browne?

25           MR. BROWNE:  Yes.  And I'm happy to do that, your

1    Honor.

2              JUDGE ZOBEL:  Well, that would be good, but we're

3    perfectly happy to hear you with any further discussion,

4    further report.  Is that it?

5              (No response.)

6              JUDGE ZOBEL:  I guess it is.  So, that takes care of

7    Part E.

8              MS. JOHNSON:  Yes, it does, your Honor.

9              So, that brings us to five, the Saint Thomas cases,

10   which Mr. Stranch will address.

11             JUDGE ZOBEL:  Well, there's one motion which is

12   assented to and allowed, Docket No. 3085.

13             MR. STRANCH:  Good.  And I have the privilege of

14   letting the Court know that we have finally finished papering

15   the settlement and the parties have signed and we are now

16   working through the terms of the settlement and doing what

17   we're required to do.

18             JUDGE ZOBEL:  Thank you.  Pro se.

19             MS. MARTIN:  Yes, your Honor.  Since the last report,

20   we've had a handful of phone calls, perhaps four, just some

21   questions on forms and one question on a lien letter, which we

22   have handled and answered any questions that they've had and

23   sent them on their way.  So, that's the report, four calls.

24             JUDGE ZOBEL:  Thank you.

25             MS. JOHNSON:  That brings us to C(1), which the Court

1    has already addressed.  C(2) The Court has also already heard

2    argument on this morning, which brings us to (3), the

3    petitions for final approval of settlement distributions from

4    two of the Virginia wrongful death cases.

5         JUDGE ZOBEL:  I have those and I will be happy to

6    sign them.  They're here somewhere.

7         MS. JOHNSON:  With the understanding, as your Honor

8    just said, that you'll be signing those, I don't know whether

9    counsel on the telephone, either Mr. Busch or Mr. Fennell,

10   wanted to be heard.

11        JUDGE ZOBEL:  I have two final orders approving

12   wrongful death distributions.  That's what you're talking

13   about, right?

14        MS. JOHNSON:  Yes, your Honor.  It would be Docket

15   No. 3094.

16        JUDGE ZOBEL:  And 3095.

17        MS. JOHNSON:  And 3095, yes.  Thank you, your Honor.

18        JUDGE ZOBEL:  Thank you.

19        MS. JOHNSON:  That brings us, then, to D, briefing in

20   progress, and one topic to just bring the Court's attention to

21   is that the -- D(2) is the Plaintiffs' Steering Committee's

22   motion for distribution of common benefit fees and expenses.

23         The PSC has filed that motion making a recommendation

24   to the Court.  The briefing schedule has already been set,

25   such that objections, if any, are due October 24th and the

1   PSC's reply, if any, is due November 21st, which means that

2   the motion as -- under the current schedule will not be ready

3   for decision until late November or December.

4          Other than that, we have Item E, motions stayed

5   temporarily.  Those all relate to the Saint Thomas settlement.

6   I think there's nothing to address there, thankfully.

7          JUDGE ZOBEL:  The long list of these cases makes me

8   think that the order was a confidential order.

9          (Laughter.)

10          MS. JOHNSON:  Agreed, your Honor.

11          And then that brings us to F, future status

12   conferences.  And we had a November 3rd date set, but I

13   understand that's the same day that Congress is hearing

14   testimony about proposed changes to the Federal Rules and that

15   multiple attorneys, at least on the plaintiffs' side, may be

16   participating in that hearing now.  So, we wondered if the

17   Court could possibly move the hearing to either November 1st

18   or 2nd instead of the 3rd.

19          COURTROOM DEPUTY CLERK URSO:  Yes, Judge.  The 2nd is

20   -- let me just see.  I think it's the other MDL case we have.

21   We have the other MDL case, Judge, on that day.  We have

22   Prograf on that day, Judge, at 2:00.

23          (Discussion off the record at the Bench.)

24          UNIDENTIFIED SPEAKER:  Hello.

25          JUDGE ZOBEL:  Hello.  We are checking our calendars

```
 1   to find out whether we can accommodate counsel on either
 2   November 1st or 2nd instead of 3rd.
 3               COURTROOM DEPUTY CLERK URSO:  Judge, you have an
 4   11:00, 11:15 and 11:30 on that day, criminal.
 5               JUDGE ZOBEL:  On the 1st?
 6               COURTROOM DEPUTY CLERK URSO:  On the 1st.  Judge Boal
 7   has two statuses and a telephone conference starting at 11:00.
 8               JUDGE BOAL:  We can move that.
 9               COURTROOM DEPUTY CLERK URSO:  Okay.
10               JUDGE ZOBEL:  So, November 1st in the morning,
11   because the first Tuesday of the month -- is it Tuesday?
12               COURTROOM DEPUTY CLERK URSO:  Yes.
13               JUDGE ZOBEL:  -- is the Court meeting in the
14   afternoon.
15               COURTROOM DEPUTY CLERK URSO:  So, what time would --
16   what time would counsel be --
17               MS. JOHNSON:  Plaintiffs can make any time work.  I
18   think we've traditionally done 11:30, but whatever works for
19   the Court.
20               JUDGE ZOBEL:  Well, it depends.  Some people have to
21   travel.
22               MR. KIRBY:  That's fine with Box Hill.
23               COURTROOM DEPUTY CLERK URSO:  Do you want to do --
24               MS. GREER:  Your Honor?
25               JUDGE ZOBEL:  Yes.
```

```
1          MS. GREER:  I don't know if we're going to be here at
2    that point and I don't have -- Marcy Greer for the Saint
3    Thomas Entities.  But the night before is Halloween and I have
4    a nine-year-old and if there's any way we can do it in the
5    afternoon, I'd be happy to fly up on the first flight that
6    morning.
7          JUDGE ZOBEL:  We can't do it in the afternoon.  What
8    time do you get in?
9          MS. PUIG:  Or would the Court consider the 2nd of
10   November?  Yvonne Puig.
11         MS. GREER:  Yvonne Puig, my colleague, is asking if
12   we could do it on the 2nd.
13         JUDGE ZOBEL:  Well, the 2nd we have already another
14   MDL settlement hearing, which may or may not be major.  I
15   don't know.
16         MR. STRANCH:  Your Honor, Gerard Stranch.  I'm
17   actually one of the lawyers in the Prograf case, and we have
18   no objections to the settlement.  And so --
19         JUDGE ZOBEL:  Does anybody have any objection?
20         MR. STRANCH:  No, your Honor.
21         JUDGE ZOBEL:  What time is that scheduled?
22         MR. STRANCH:  2 o'clock.
23         DEPUTY COURTROOM CLERK URSO:  2 o'clock.
24         JUDGE ZOBEL:  So, we could do this at 2:30?
25         MR. STRANCH:  I assume so.
```

```
1              COURTROOM DEPUTY CLERK URSO:  Hold on.

2              JUDGE ZOBEL:  This would be on the 1st -- no.  The 2nd.

3              MR. KIRBY:  Your Honor, not to throw a cog in the --

4    Greg Kirby for the Box Hill defendants.

5              I just have something mandatory that I have to go to

6    at the end of the day on the 2nd.  It's already on my

7    calendar.  So, depending on what it is, I could do it, but if

8    it's too late in the day, I can't do it.

9              JUDGE ZOBEL:  How about the morning of the 2nd, can

10   you do it then?

11             MR. KIRBY:  Yes, I could.

12             COURTROOM DEPUTY CLERK URSO:  We don't have anything

13   in the morning.

14             JUDGE ZOBEL:  How about Judge Boal?

15             COURTROOM DEPUTY CLERK URSO:  She has a -- Judge, you

16   have a few conferences and motion hearings starting at 11:00,

17   three conferences and then a motion hearing at 11:30, and then

18   a status and a Rule 11 at 2:00 on that day.  So, we could do

19   the morning.

20             JUDGE ZOBEL:  We'll do it on the morning of November

21   2nd.  How about 10 o'clock?  Is that time enough to get the

22   early flight?

23             MR. KIRBY:  Yes, your Honor.

24             JUDGE ZOBEL:  So, 10 o'clock on the 2nd.

25             COURTROOM DEPUTY CLERK URSO:  Okay.
```

1          JUDGE ZOBEL:  And we will stick with December 8th at

2     the usual time, 2 o'clock, right?

3          MR. KIRBY:  As for December 8th, is there any way to

4     do that in the morning?

5          JUDGE ZOBEL:  I don't know.

6          COURTROOM DEPUTY CLERK URSO:  We have -- Brigham &

7     Women's is coming in on the 5th for a trial.

8          JUDGE ZOBEL:  We're on trial?

9          COURTROOM DEPUTY CLERK URSO:  We're on trial that

10    week.  So, we could only do it in the afternoon on the 8th.

11         MR. KIRBY:  Any chance you could change it to the 6th?

12         JUDGE ZOBEL:  To when?

13         MR. KIRBY:  December the 6th.

14         COURTROOM DEPUTY CLERK URSO:  No.  We're on trial

15    that week.

16         MR. KIRBY:  I'm sorry.

17         JUDGE ZOBEL:  We start that Monday.  It's a patent

18    case, isn't it?

19         COURTROOM DEPUTY CLERK URSO:  Yes, Judge.  So, I

20    think it's going to go.  So, we have trial from 9:00 to 1:00

21    that week.

22         MR. KIRBY:  Every day that week?

23         JUDGE ZOBEL:  We sit every day.

24         COURTROOM DEPUTY CLERK URSO:  Yes, we do.

25         MR. KIRBY:  Is there an objection to doing it on the

```
1    9th in the afternoon?
2              MS. JOHNSON:  That's fine with the plaintiffs, your
3    Honor.
4              (Discussion off the record at the Bench.)
5              JUDGE ZOBEL:  That won't work for us.  The 9th
6    doesn't work for us.
7              MR. KIRBY:  Okay.  Well, we'll just keep it where it
8    is on the 8th.  I'll see what I can do.
9              JUDGE ZOBEL:  On the 8th, at 2:00.
10             COURTROOM DEPUTY CLERK URSO:  Yes, Judge.
11             JUDGE ZOBEL:  That's the most complicated part of the
12   hearing.
13             MS. JOHNSON:  Usually, your Honor, I would suggest we
14   pick a date in January, but maybe we can wait on that.
15             JUDGE ZOBEL:  And go through this the next time
16   around?
17             MS. JOHNSON:  At the Court's preference.
18             JUDGE ZOBEL:  All right.  So, then everybody agrees
19   that we live with only two future meetings for the moment.
20   Thank you all very much -- wait a minute.
21             Is there anything else we need to do?  Does anybody
22   have any other issues, telephone, or otherwise?
23             (No response.)
24             JUDGE ZOBEL:  Thank you.  The meeting is adjourned.
25             MR. STRANCH:  Thank you, your Honor.
```

1          MS. JOHNSON:  Thank you, your Honor.

2          (Adjourned, 12:19 p.m.)

3

4

5               C E R T I F I C A T E

6          I, Catherine A. Handel, Official Court Reporter of the

7     United States District Court, do hereby certify that the

8     foregoing transcript, from Page 1 to Page 40, constitutes to the

9     best of my skill and ability a true and accurate transcription of

10    my stenotype notes taken in the matter of No. 13-md-2419-RWZ, In

11    Re: New England Compounding Pharmacy, Inc., Products Liability

12    Litigation.

13

14    October 28, 2016          /s/Catherine A. Handel
      Date                      Catherine A. Handel RPR-CM, CRR
15

16

17

18               C E R T I F I C A T E
19         I, Catherine A. Handel, Official Court Reporter of the
      United States District Court, do hereby certify that the
20    foregoing transcript, from Page 1 to Page 39, constitutes to the
      best of my skill and ability a true and accurate transcription of
21    my stenotype notes taken in the matter of Multidistrict
      Litigation No. 13-02419-RWZ, In Re: New England Compounding
22    Pharmacy Cases Litigation.

23

      October 6, 2016          /s/Catherine A. Handel
24    Date                      Catherine A. Handel, RPR-CM, CRR

25