UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419<br>Master Dkt. 1:13-md-02419-RWZ |
| THIS DOCUMENT RELATES TO:<br><br>All Actions | |

[PROPOSED] AMENDED QUALIFIED PROTECTIVE ORDER FOR THE
PRODUCTION OF CERTAIN INFORMATION
<u>MAINTAINED BY THIRD PARTY PAYORS</u>

WHEREAS, providers of health care insurance, including fully insured health plans, self-funded health plans, and sponsors of Medicare Part C program ("hereinafter "Third Party Payors" or "TPPs"), maintain records concerning the medical treatment and payment for medical treatment of victims of the 2012 fungal meningitis outbreak (the "Outbreak");

WHEREAS, the information maintained by TPPs contains protected health information and individually identifiable health information, some of which may be protected from disclosure pursuant to the Health Insurance Portability and Accountability Act of 1996 (42 USC §1320d *et seq*.) and the regulations promulgated thereunder (45 CFR §§160,164 *et seq*.) ("HIPAA").

WHEREAS, on May 20, 2015 (the "Confirmation Date"), the United States Bankruptcy Court for the District of Massachusetts, Eastern Division, in the New England Compounding Pharmacy's Chapter 11 bankruptcy proceeding, Case No. 12-19882 (the "Bankruptcy Proceeding") entered an order, dated May 20, 2015 (the "Confirmation Order"), confirming the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. (the

"Plan") filed jointly by Paul D. Moore, in his capacity as Chapter 11 Trustee, and the Official Committee of Unsecured Creditors.

WHEREAS, the Plan establishes a claims process and, as part of that process, the Tort Trustee is responsible for ensuring that all public and private liens asserted against recoveries by victims of the Outbreak are resolved before payments are made (as defined in the Confirmation Order);

WHEREAS, the Court recognizes that receipt of certain information maintained by TPPs asserting a potential lien against recovery from the Tort Trust by their insureds will aid the Tort Trustee in the administration of the claims process as set forth in the Plan;

IT IS HEREBY ORDERED that:

1.  "Personal Health Information," and "individually identifiable health information" protected under HIPPA may only be disclosed by TPPs in this proceeding and shall only be accessed in accordance with this Order.

2.  Any TPP asserting a lien against recovery from the Tort Trust of a victim of the Outbreak, and from which HIPAA protected information has been requested by the Tort Trustee, shall transmit the information (the "TPP Lien Information") to the vendor, Rust Consulting/Omni Bankruptcy, as defined by the Court's previous Qualified Protective Order, (Dkt. No. 191 and 237) (the "First Qualified Protective Order").

3.  The vendor, Rust Consulting/Omni Bankruptcy, shall maintain the TPP Lien Information in full accordance with the terms of the First Qualified Protective Order and HIPAA.

4.  The Tort Trustee and Lead Counsel for the PSC, as defined in the Confirmation Order, shall have access to the TPP Lien Information and the Tort Trustee and Lead Counsel for the PSC shall have access to the TPP Lien Information for the sole purpose of facilitating the

claims resolution process as outlined in the Plan or any other settlement agreements involving injuries resulting from the Outbreak. Additionally, and to the extent that Lead Counsel for the PSC believes necessary, additional members of the Plaintiffs' Steering Committee and the Claims Administrators identified in any other settlement agreement may be given access to the TPP Lien Information to facilitate the claims resolution process for any other settlement agreements involving injuries resulting from the Outbreak.

5. This Court's Order Permitting Access to the Rust/Omni Database by Litigating Parties dated January 29, 2016 (Dkt. No. 2619) shall not apply to the TPP Lien Information produced by TPPs pursuant to this Order and nothing herein shall entitle litigating parties to TPP Lien Information.

6. TPPs producing such information pursuant to this Order shall be deemed to fall within the safe harbor of HIPAA for court-ordered production of personal health information, 45 C.F.R. § 164.512(e)(1), and similar provisions of State law, if any, and shall have no liability under HIPAA or other federal or state statute, regulation, or other requirement related to protected health information, for supplying the TPP Lien Information to the vendor.

7. Furthermore, because the TPP Lien Information will only be provided to the vendor, Rust Consulting/Omni Bankruptcy, and made available for review by the Tort Trustee and Lead Counsel for the PSC (or members of the Plaintiffs' Steering Committee to the extent necessary to facilitate other settlements stemming from the Outbreak), the TPP Lien Information is not and will not be a part of this or any other court record.

8. At the conclusion of the administration of the Tort Trust (as defined in the Tort Trust Agreement), the Vendor, Lead Counsel, and/or any member of the PSC that has been given

access shall ensure that all copies, electronic or otherwise, of the TPP Lien Information is either returned to the producing TPP or is destroyed.

9.  Nothing in this Order is meant to alter or amend the First Qualified Protective Order, as previously amended, which shall remain in full force and effect.

10. Nothing in this Order is meant as a determination that a TPP asserting a lien is subject to the requirements of HIPAA.

11. The Court understands that some Clinic Defendants have raised the concern that the information produced by the TPPs may include substantive information relevant to the pending lawsuits and that they are therefore entitled to such information when produced by the TPPs.  The Court also understand that the Tort Trustee and Lead Counsel disagree that Clinic Defendants are entitled to this information.  However, at this point, the precise character of the information to be produced by the TPPs is unknown.

12. Accordingly, within ninety (90) days of the receipt of new lien information from the TTPs which identifies the existence of liens for specific patients or lien amounts for specific patients, Lead Counsel shall inform counsel for the Clinic Defendants of the receipt of such information, without revealing any protected information regarding a specific Plaintiff.

13. This Order is without prejudice to any party's right to file a subsequent motion seeking an order permitting them access to the TPP Lien information produced pursuant to this Order. Therefore, once the Clinic Defendants are informed of the character of the information produced by the TPPs, they may seek to modify this Order to permit them to access the information produced by the TPPs and the issue will be briefed by all interested parties for consideration by the Court.

BY THE COURT:

DATED:

_____
Hon. Jennifer C. Boal
United States Magistrate Judge