IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>This Document Relates to:<br>    All Cases<br>_____ | )<br>)<br>)<br>)  MDL Docket No. 2419<br>)<br>)<br>)<br>) |
| IN RE:  NEW ENGLAND COMPOUNDING PHARMACY CASES<br><br>This Document Relates to:<br>All Cases | )<br>)<br>)<br>)  Master File No. 1:13-MD-2419 (RWZ)<br>)<br>)<br>)<br>) |

MOTION FOR RELIEF REGARDING DISTRIBUTIONS FROM THE NECC TORT TRUST

The undersigned counsel represent numerous fungal meningitis victims in Tennessee, Virginia, Indiana, Kentucky and Michigan respectively.  The undersigned respectfully move this Court for entry of an order addressing the inordinate delay in settlement payments from the NECC Tort Trust.

The undersigned request an order requiring the Tort Trustee and the PSC to file transparent monthly reports specifying:  (a) the current amount and percentage of total settlement funds distributed to tort victims and (b) the current number and percentage of tort victims in each injury category (Categories I-VII) who have received a settlement distribution.  In addition, the undersigned respectfully request that this Court insure that lawyers are not paid before injured victims.  Any order entered regarding disbursement of common benefit fees and expenses should expressly provide that disbursement shall not occur until the Tort Trustee certifies that 90% of the approved tort claimants have received an initial distribution from the NECC Tort Trust.

As grounds for this motion, the undersigned respectfully state:

1.      It has been more than four years since meningitis victims died or were injured after receiving injections of contaminated steroids manufactured by NECC.

2.     The United State Bankruptcy Court for the District of Massachusetts, Eastern Division confirmed the Third Amended Joint Chapter 11 Plan of New England Compounding Pharmacy, Inc. on May 20, 2015, more than eighteen months ago.[1] According to the PSC, the NECC bankruptcy estate includes settlement funds contributed by the National Defendants of between $130 Million and $157 Million.[2]

3.     On November 1, 2016, the Tort Trustee filed a Status Report (Doc. 3155) regarding payments to victims.  The Status Report, although detailed, was not completely transparent.  It did not indicate the current percentage of claimants who had received settlement payments nor did it specify the current percentage of total settlement funds distributed.

4.     Despite the opaque nature of the November 1, 2016 Status Report, a careful review of that report reveals that only 14% of approved claimants had received an initial distribution from the Tort Trust as of that date.[3] Moreover, only 3% to 4% of the Tort Trust funds had been distributed.[4] The average size of a settlement distribution was only $19,780 as of November 1, 2016, indicating that the Tort Trustee is processing smaller injury claims before claims of those who died or were seriously injured.[5]

5.     On September 27, 2016, the PSC filed a Motion for Distribution of Common Benefit Fees and Expenses (Doc. 3105).  In that motion, the PSC expressly acknowledged that lawyers should not be paid before injured tort victims. Specifically, the PSC stated as follows:

> While the PSC files this motion now, as a practical matter we expect that counsel will not be paid, nor have their expenses reimbursed, until initial payment process

---

[1] (*See* Doc. 1355 in Bankruptcy Case No. 12-19882-HJB).
[2] (*See* Chart of national settlement payments – page 5 of Doc. 2914-1).
[3] According to the Status Report, a total of 1,979 claimants have been approved to receive payments from the NECC Tort Trust.  Two hundred seventy-five (275) of those claimants have received payments, which is approximately 13.8%.  (Doc. 3155).
[4] According to the PSC, settlement funds from the National Settling Defendants total between $130,100,000 and $157,350,000.  (*See* Chart of national settlement payments – page 5 of Doc. 2914-1).  According to the Tort Trustee's November 1, 2016 Status Report, $5,439,512 has been paid to victims, which is between 3% and 4% of the total settlement funds.  (*See* Doc. 3155).
[5] $5,439,512 in payments to 275 victims equates to an average payment of $19,780.

is concluded (or nearly so). Virtually all claimants will have first received their first payments by the time the Court approves an allocation.[6]

6. Given the slow pace of settlement payments, it seems very unlikely that "virtually all claimants will have first received their first payments"[7] by the time the PSC's motion to disburse common benefit funds is heard during the December 8 status conference.

7. The undersigned do not oppose, and in fact support, the PSC's request for distribution of common benefit fees and expenses. However, the undersigned respectfully suggest that no common benefit fees and expenses should be paid until at least 90% of the approved claimants receive their first payments from the NECC Tort Trust.

8. Paying common benefit lawyers before injured tort victims would be unwise for several reasons. Such would offend innocent victims, undermine public confidence in these proceedings, and remove the PSC's financial incentive to solve problems and facilitate settlement payments. Removing that incentive would further retard the already lethargic pace of settlement payments.

Accordingly, Movants request entry of an order providing: (1) that the Tort Trustee and PSC shall file monthly status reports specifying the amount and percentage of total settlement funds distributed to tort victims as well as the number and percentage of tort victims in each injury category (Categories I-VII) who have received a settlement distribution; and (2) providing that common benefit fees and expenses will not be distributed until the Trust Trustee certifies that 90% of approved claimants have received an initial distribution from the NECC Tort Trust.

---

[6] Plaintiffs' Steering Committee's Motion for Distribution of Common Benefit Fees and Expenses (Doc. 3105).
[7] *Id.*

Respectfully submitted,

/s/ George Nolan
William D. Leader (B.P.R. No. 09531)
George Nolan (B.P.R. No. 14974)
LEADER, BULSO & NOLAN, PLC
414 Union Street, Suite 1740
Nashville, TN  37219
(615) 780-4111
gnolan@leaderbulso.com


/s/ Daniel L. Clayton
Daniel L. Clayton (B.P.R. 12600)
KINNARD, CLAYTON & BEVERIDGE
127 Woodmont Boulevard
Nashville, TN 37205
(615) 297-1007
dclayton@KCBattys.com


/s/ Rebecca C. Blair
Rebecca C. Blair (B.P.R. 17939)
THE BLAIR LAW FIRM
1608 Westgate Circle, Suite 100
Brentwood, TN 37027
(615) 953-1122
rblair@blair-law.com


/s/ Douglas E. Jones
Douglas E. Jones (B.P.R. 04324)
SCHULMAN, LEROY & BENNETT PC
501 Union Street, Suite 701
P.O. Box 190676
Nashville, TN 37219-0676
(615) 244-6670
djones@slblawfirm.com


/s/ Jason G. Denton
Jason G. Denton (B.P.R. 22759)
ROCHELLE, MCCULLOCH & AULDS, PLLC
109 Castle Heights Avenue North
Lebanon, TN 37087
(615) 443-8772
jdenton@rma-law.com

      /s/ J. Scott Sexton
_____
J. Scott Sexton (VSB No. 29284)
GENTRY LOCKE RAKES & MOORE
PO BOX 40013
ROANOKE, VA 24022-0013
(540) 983-9379
sexton@gentrylocke.com


      /s/ Douglas D. Small
_____
Douglas D Small
FOLEY & SMALL LLP
1002 E Jefferson Blvd
South Bend, IN 46617
(574) 288-7676
dsmall@foleyandsmall.com


      /s/ J. Kyle Roby
_____
J. Kyle Roby
ENGLISH, LUCAS, PRIEST & OWSLEY, LLP
1101 College Street
P.O. Box 770
Bowling Green, KY 42102-0770
(270) 781-6500
kroby@elpolaw.com


## CERTIFICATE OF SERVICE

    I, George Nolan, hereby certify that on November 22, 2016, I caused a copy of the foregoing to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

      /s/ George Nolan
_____
George Nolan