**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br>        Plaintiffs, | MDL No. 2419<br><br>Docket No. 1:13-md-2419 (RWZ) |
| This document relates to: | |
| Armetta, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14022-RWZ | |
| Bowman, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14028-RWZ | |
| Davis, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14033-RWZ | |
| Dreisch, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14029-RWZ | |
| Farthing, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14036-RWZ | |
| Kashi, et al. v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14026-RWZ | |
| Torbeck, et al. v. Box Hill Surgery Center, LLC, et al.,<br>No. 1:14-cv-14023-RWZ | |
| Handy v. Box Hill Surgery Center, LLC, et al.<br>No. 1:14-cv-14019-RWZ | |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION TO CONSOLIDATE FOR THE PURPOSE OF TRIAL**

Plaintiffs in the eight above-captioned cases ("Box Hill Plaintiffs" or "Plaintiffs"), by and through their respective undersigned counsel, Law Offices of Peter G. Angelos, P.C. and Cohen, Placitella & Roth, P.C., submit the following Memorandum of Law in Support of their Motion to Consolidate for the Purpose of Trial.

**I.  INTRODUCTION**

The eight captioned Box Hill cases are part of Multidistrict Litigation ("MDL") No. 2419 and all arise from bodily injuries sustained in the national outbreak of fungal meningitis and other fungal infections caused by the administration of contaminated preservative free methyl-prednisone acetate (hereinafter "MPA") compounded, sold and dispensed in the spring and summer of 2012 by the New England Compounding Center ("NECC"). Formerly located in Framingham, Massachusetts the now defunct NECC compounding pharmacy was licensed and regulated by the Massachusetts Board of Registration in Pharmacy. In these cases NECC combined and mixed ingredients to create specific formulations of pharmaceutical products. In the fall of 2012, health officials connected a number of cases of fungal meningitis to injections of MPA that had been manufactured by NECC and sold to health care facilities across the nation, including Box Hill Surgery Center, LLC ("Box Hill").

As a state regulated compounding pharmacy, and not a Food & Drug Administration (FDA) registered drug manufacturer, NECC was not legally authorized and able under Massachusetts law to compound, sell and dispense prescription drugs such as MPA both within and outside the Commonwealth of Massachusetts without patient specific prescriptions.[1]

---

[1]  In 2012, Massachusetts prescription law required compounded prescription medication such as MPA be dispensed by Massachusetts pharmacies only pursuant to patient specific prescriptions and when dispensed labeled with the name of the patient the medication was prescribed for. Mass. Gen. Laws ch. 94C §§19, 21 (2012). See also testimony of Samuel J. Penta on behalf of Massachusetts' Pharmacy Board in which he acknowledged

Maryland pharmacy laws are the same on this issue, requiring patient specific prescriptions when compounded medication such as MPA is dispensed.[2]

Defendant Box Hill Surgery Center, LLC is an ambulatory surgical center located in Harford County, Maryland, which is outside of Baltimore. Box Hill is owned and operated by co-defendant Ritu T. Bhambhani, M.D. ("Dr. Bhambhani"), an anesthesia/pain medicine specialist. In the summer and early fall of 2012, Dr. Bhambhani administered fungal tainted preservative free MPA to, among others, the following eight patients whose injuries or deaths are before the Court: Brenda Rozek (deceased), John Millhausen (deceased), Linda Torbeck, Bahman Kashi (deceased), Edna Young (deceased), Belinda Dreisch, Teresa Davis, and Angela Farthing. As a result of being injected with fungal tainted preservative free MPA, all eight of these patients suffered serious injuries (fungal infections) and four died after their infections progressed to meningitis. Plaintiffs (on behalf of themselves or their decedents) filed complaints against a number of defendants alleging, *inter alia*, negligence, lack of informed consent, violation of Massachusetts consumer protection laws, and loss of consortium.[3] Plaintiffs further alleged that this fungal tainted preservative free MPA was obtained from NECC by mail in violation of Massachusetts' pharmacy

---

Massachusetts' patient specific prescription requirement and the existence of NECC's and its clinic customers' failure to comply with this health and safety law.  Deposition of Samuel J. Penta, 9/4/15 at 68:14-69:20; 100:14-101:1; 313:3-11, 316:1-20.  Excerpts attached as Exhibit "1". Mr. Penta was the Pharmacy Board's designated representative to testify on its behalf in response to a Rule 30(b)(6) deposition notice.

[2] Deposition of Yuzon Wu 7/26/16, at 90:15-22; 98:1-16; and 8/29/16 at 200:22-201:6; 204:6-15. Excerpts attached as Exhibit "2".  Ms. Wu was produced by the Maryland Board of Pharmacy in response to the Box Hill Defendants' notice of deposition as its Rule 30(b)(6) designated representative. Ms. Wu repeatedly testified that in Maryland prescription drugs, including compounded medication such as NECC's MPA, could only be legally dispensed for Maryland patients pursuant to patient specific prescriptions. She explained a patient specific prescription to be: "a prescription that is issued by a licensed practitioner, a physician, would have to have the patient's name on that prescription and then the dosage and the strength.  So that prescription needs to be to a specific patient; not compounded for office use, for example.  It has to be geared towards that specific patient." *Id*. at 205:9-15.

[3] Plaintiffs alleged additional causes of action in their respective complaints, however, for the purpose of this motion, Plaintiffs only enumerate those causes of action that have not been dismissed.

2

laws, which required patient specific prescriptions.[4] The only remaining defendants in the eight above-captioned cases are Box Hill, Dr. Bhambhani, and Ritu T. Bhambhani, M.D., L.L.C. (collectively the "Box Hill Defendants").

With the exception of the degree of resulting damages, which differ only as to severity and not cause, the liability and generic scientific issues are all common and can be resolved in one trial for all eight cases. The following chart summarizes the injuries.

| Plaintiff | Injuries |
|---|---|
| Armetta (PR of Estate of John Millhausen), et al. | Wrongful death and survival action based on the death of John Millhausen, an 83 year old male who was injected with NECC MPA by Dr. Bhambhani at Box Hill on August 24, 2012. Mr. Millhausen was diagnosed with fungal meningitis, which required hospitalization for over 30 days, and hospice care for five days, His suffering included acute kidney injury from anti-fungal drugs, toxic encephalopathy, and hospital-acquired pneumonia. Mr. Millhausen died from fungal meningitis on November 15, 2012, and is survived by his loved ones, including three adult children. |
| Bowman, PR of Estate of Edna Young), et al. | Wrongful death and survival action brought by Personal Representative and the daughter of Edna C. Young, who was injected with NECC MPA by Dr. Bhambhani at Box Hill on 6/13/12, 7/20/12 and 8/24/12. Ms. Young was diagnosed with fungal meningitis, was hospitalized three times, and died at age 97 on 12/31/12. |
| Davis | Teresa Davis was injected with NECC MPA on 7/20/12 and 8/17/12. At age 55, she was diagnosed with fungal meningitis, underwent painful and invasive medical treatment, and was administered anti-fungal medications for 90 days. |

---

[4] Mass. Gen. Laws ch. 94C §§ 17, 19, 21 and 22.

The deposition testimony of Box Hill defendants and other witnesses, such as Mr. Penta and Ms. Wu, *supra* notes 1 and 2, factually support Plaintiffs' claims. Box Hill's Nursing Director/Administrator, Andrew Vickers, R.N., testified Box Hill routinely used the names of past patients treated at Box Hill on NECC Prescription Order Forms to prescribe and obtain preservative free MPA from NECC for administration to different, upcoming Box Hill patients. Deposition of A. Vickers, 2/28/16, at 115-17. (Excerpts attached as Exhibit "3"). NECC's MPA was dispensed via UPS or Federal Express packed in foil pouches which contained five vials of MPA. *Id*. at 124-25. Each pouch came with a label bearing the name of a former Box Hill patient Box Hill used to obtain the five vials dispensed in the pouch. *Id*. The MPA was then administered to other Box Hill patients, including the eight plaintiffs (or their respective decedents) before the Court.
.

3

| Plaintiff | Injuries |
|---|---|
| Dreisch | Belinda Dreisch was injected with NECC MPA by Dr. Bhambhani at Box Hill on 7/13/12 and on 8/24/2012. At age 56, she was diagnosed with meningitis and became permanently disabled. Ms. Dreisch was hospitalized multiple times, was on anti-fungal medications for 390 days, and spent 30 days in a rehabilitation facility. She has endured 13 lumbar punctures as well as other painful and invasive diagnostic procedures and has suffered complications, including acute kidney failure, liver toxicity, hair loss, cellulitis, and arachnoiditis, |
| Farthing | Angela Farthing received NECC MPA injections administered by Dr. Bhambhani at Box Hill on 6/29/12 and 8/31/12. At age 41, she was diagnosed with fungal meningitis and continues to suffer from permanent, incurable arachnoiditis. Ms. Farthing has been hospitalized and has required rehabilitation, physical therapy, and home health care for functional limitations and weakness. She was on anti-fungal medication for 230 days. Complications she has endured include brain aneurysm, stroke, spinal abscesses, requiring surgical procedures, and acute kidney injury. |
| Handy (PR of Estate of Brenda Rozek) | Wrongful death and survival action predicated upon Plaintiff's deceased mother, Mrs. Brenda Rozek, contracting fungal meningitis which caused her death on September 16, 2013 at age 51. Mrs. Rozek, is survived by her husband, two daughters, and her parents, each of whom may claim damages under Maryland wrongful death causes of action. Ms. Handy is personal representative of Mrs. Rozek's estate. NECC MPA was administered to Ms. Handy by Dr. Bhambhani at Box Hill on 8/31/12. |
| Kashi (PR of Estate of Bahman Kashi), et al. | Wrongful death and survival action brought on behalf of the Estate of Bahman Kashi, and his wife and 4 adult children. Mr. Kashi was a 75 year old male who Dr. Bhambhani injected with NECC MPA on 9/5/12 at Box Hill. He was diagnosed with fungal meningitis, hospitalized for 92 days and suffered multiple complications, including cerebrovascular accident, sepsis, pneumonia, liver damage and DVTs. Mr. Kashi died as a result of fungal meningitis on 1/28/13. |
| Torbeck | Linda Torbeck was injected with NECC MPA by Dr. Bhambhani at Box Hill on 8/31/12. At age 66, she was diagnosed with fungal meningitis, requiring two hospitalizations, painful and invasive medical treatments, and physical therapy. Ms. Torbeck required antifungal medication for 416 days. She suffered complications, including arachnoiditis, acute kidney injury, and anemia. |

Accordingly, Plaintiffs move to consolidate the eight above-captioned cases for the purpose of trial.

4

## II. ARGUMENT

Pursuant to Federal Rule of Civil Procedure 42(a), a district court has broad discretion to consolidate actions that "involve a common question of law or fact" for trial. Fed. R. Civ. P. 42(a). Rule 42(a) was designed and intended to encourage consolidation wherever possible. *United States v. Knauer*, 149 F.2d 519, 520 (7th Cir. 1945), *aff'd*, 328 U.S. 654 (1946). In deciding whether to consolidate a number of actions for trial, district courts engage in a two-step analysis. First, the court determines whether the proceedings involve a common party and common issues of law and fact. *Seguro de Servicio de Salud v. McAuto Sys. Grp., Inc.*, 878 F.2d 5, 8 (1st Cir. 1989). If the court answers these questions in the affirmative, the court then exercises its broad discretion in deciding whether consolidation is appropriate by weighing the costs and benefits of consolidation. *Id.*

During this cost-benefit analysis the proper considerations include judicial economy, savings in time, the convenience or inconvenience to the parties, effort or expense, and whether confusion, delay, or prejudice may result from consolidation. *Messere v. Spencer*, No. 11-11705-MLW, 2013 U.S. Dist. LEXIS 48934, at *5 (D. Mass. Mar. 29, 2013) (citations omitted). "The fact that one or all of the parties object…is not dispositive." *Gonzalez-Quiles v. Cooperativa De Ahorro Y Credito De Isabela*, 250 F.R.D. 91, 93 (D.P.R. July 18, 2007) (citing *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013 (5th Cir. 1977) (court can order consolidation despite the opposition of all parties). Rather, "[t]he important question is whether the cases involve a common question of law or fact." *Id.*

In the present Box Hill cases, the court must first determine whether the proceedings involve a common party and common issues of law or fact. *Seguro de Servicio de Salud*, *supra*;

*Gonzalez-Quiles*, *supra*. They undoubtedly do. In this regard, this Court in the past has ordered consolidation where several cases are essentially the same case against a common set of defendants, reasoning "[o]nly the named plaintiffs differ" in each of five complaints filed that were "in essence the same complaint" against the same named defendants in the interest of "fair and efficient adjudication on the merits without wasteful duplicative proceedings." *In re PRI Automation, Inc. Secs. Litig.*, 145 F. Supp. 2d 138, 140 (D. Mass. June 15, 2001); *see also Howard Gunty Profit Sharing Plan v. CareMatrix Corp.*, 354 F. Supp. 2d 18, 22 (D. Mass. 2000) (finding consolidation appropriate where the allegations and claims in thirteen complaints were identical except for the description of the plaintiffs). Further, consolidation is "a particularly appropriate tool that should be seriously considered in modern-day multidistrict litigation" because it has already been determined that cases referred to a district court by the Judicial Panel on Multidistrict Litigation involve common questions of law and fact. *In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, 2010 U.S. Dist. LEXIS 18910, at *8-9 (M.D. Ga. Mar. 3, 2010).[5]

A consolidated trial is appropriate for the eight Box Hill cases because there are common defendant parties and common issues of law and fact. The same Box Hill Defendants are defendants in all eight actions and are the only remaining defendants in all eight actions. Any effort by Box Hill to deflect or distribute blame onto other parties who have settled or even who have not been sued (*i.e,* NECC who could not be sued due to its Chapter 11 Bankruptcy) would also be

---

[5] One of the more recent examples of consolidating MDL cases for trial can be seen in the ongoing metal hip prosthesis litigation, *In Re: Depuy Orthopaedics, Inc. Pinnacle Hip Implant Products Liability Litigation*, MDL Docket No. 3:11-MD-2244-K, which is currently pending in the United States District Court for the Northern District of Texas (Dallas) before the Honorable Ed Kinkeade. In the Pinnacle MDL there has already been a consolidated bellwether trial of five plaintiffs which has tried to verdict. A second consolidated bellwether trial is currently ongoing for seven plaintiffs. Apparently, the consolidated bellwether trials are progressing smoothly enough that Judge Kinkeade recently, during the ongoing trial, has issued an Order for the next consolidated multi-plaintiff bellwether trial which is set for September 5, 2017. *See* attached Orders, Exhibits "4", "5" and "6".

the same in all of the Box Hill cases. It is important to note that the Judicial Panel on Multidistrict Litigation referred these cases to this District Court for coordinated and consolidated pretrial proceedings in February 2013 because they share common questions of law and fact. [Dkt. 119]; *see In re Mentor Corp. Obtape Transobturator Sling Prods. Liab. Litig.*, *supra*. Further, Plaintiffs' claims against the Box Hill Defendants are almost identical. They each allege negligence, lack of informed consent, violation of Massachusetts consumer protection laws, conspiracy and derivative claims, such as damages for loss of consortium or wrongful death. Plaintiffs in all eight cases will be held to the same standards of proof and will be required to prove the same elements against Box Hill Defendants in order to prove liability. Likewise, the operative facts in all eight cases are almost identical and include (but are not limited to) the following:

- All eight Plaintiffs or their decedents were patients at Box Hill Surgery Center.
- All eight Plaintiffs or their decedents were patients of Dr. Bhambhani.
- All eight Plaintiffs or their decedents were administered preservative free MPA manufactured by NECC and dispensed to Box Hill.
- Dr. Bhambhani administered the preservative free MPA to all eight Plaintiffs or their decedents at Box Hill.
- All eight plaintiffs or their decedents were not informed about the nature or source of the MPA prior to the procedures.
- None of the eight plaintiffs or their decedents were administered NECC dispensed compounded MPA pursuant to a patient specific prescription relating specifically to them.
- The preservative free MPA administered to all eight Plaintiffs or their decedents was tainted with fungus.

7

- All eight Plaintiffs or their decedents contracted serious fungal infections after being administered preservative free MPA by Dr. Bhambhani at Box Hill.

- All eight Plaintiffs' or their decedents' fungal infections were caused by the fungal tainted preservative free MPA.

- Four of the Plaintiffs' decedents died after their fungal infections progressed to fungal meningitis.

- The fungal tainted preservative free MPA that Box Hill obtained from NECC and that Dr. Bhambhani administered to all eight Plaintiffs or their decedents was obtained in contravention of Massachusetts pharmacy laws. Specifically, Box Hill submitted to NECC past patient names in order to obtain office supplies of preservative free MPA drugs from NECC in violation of Massachusetts' controlled substances and pharmacy laws and regulations, which required patient specific prescriptions.

The scientific and medical principles Plaintiffs will rely on to prove the elements of their claims, including but not limited to Defendants' violations of the standard of care and causation, are also the same. Finally, the Plaintiffs in these cases share common counsel: two firms that worked together to develop the record for this MDL as to the Box Hill clinical patients.

While here the common parties, common issues of law, and common issues of fact are overwhelming, the Court nonetheless must also exercise its broad discretion in weighing the costs and benefits of consolidation. Here, the benefits far outweigh the costs.

Consolidating the eight above-captioned cases for trial will allow Plaintiffs, Defendants, and all parties' witnesses (who overlap in all eight cases) to travel (if need be) and testify once, rather than multiple times. *See De Figueiredo v. Trans World Airlines, Inc.,* 55 FRD 44, 46

(S.D.N.Y. 1971) (finding consolidation is particularly appropriate and will serve purpose of trial convenience and economy, where substantially same witnesses will testify in two cases arising from same operative facts). Further, having one trial for all eight cases will undoubtedly serve judicial economy and Defendants will not be prejudiced as the evidence and arguments in all eight cases are largely the same as discussed *supra*. *Messere, supra.*

Plaintiffs anticipate that Box Hill Defendants will object to consolidation. However, the fact that a party objects is not dispositive, the important question is whether there are common issues of law and fact. *Gonzalez-Quiles*, *supra*. As discussed throughout this memorandum of law, common issues of law and fact are abundant in all eight of the above-captioned cases. As a result, consolidation is appropriate and Plaintiffs' motion should be granted. *Seguro de Servicio de Salud*, *supra*; *see Knauer*, *supra* (Rule 42(a) was designed and intended to encourage consolidation wherever possible).

### III. CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court grant their Motion to Consolidate for the Purpose of Trial.

Respectfully Submitted,

/s/ Patricia J. Kasputys
Patricia J. Kasputys, Esq. (*Pro hac vice*)
Jay D. Miller, Esq. (*Pro hac vice*)
Glenn E. Mintzer (*Pro hac vice*)
Sharon L. Houston, Esq. (*Pro hac vice*)
**Law Offices of Peter G. Angelos, P.C.**
One Charles Center
100 North Charles Street
Baltimore, Maryland 21201
(410) 649-2000
(410) 649-2101 (Fax)
*Attorneys for Plaintiffs Armetta, Bowman, Davis, Dreisch, Farthing, Kashi and Torbeck*

/s/ Harry M. Roth
Harry M. Roth, Esq. (*Pro hac vice*)
Michael Coren, Esq.
**Cohen, Placitella & Roth PC**
Two Commerce Square
2001 Market Street, Suite 2900
Philadelphia, PA 19103
(215) 567.3500
(215) 567-6019 (Fax)

*Attorneys for Plaintiff Handy*

9

**CERTIFICATE OF SERVICE**

    I, Michael Coren, hereby certify that a copy of the foregoing document, filed through the CM/ECF system will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF), including the attorneys representing the defendants in the above-referenced individual cases, and will be sent to these parties by operation of the CM/ECF system.

Dated: December 1, 2016                        /s/ Michael Coren
                                                         Michael Coren