# EXHIBIT C

# BRANSTETTER, STRANCH & JENNINGS, PLLC

CECIL D. BRANSTETTER, SR., 1920-2014
KARLA M. CAMPBELL
BEN GASTEL *
TRICIA HERZFELD *****
R. JAN JENNINGS *
JOE P. LENISKI, JR.
DONALD L. SCHOLES
MIKE STEWART
JAMES G. STRANCH, III
J. GERARD STRANCH, IV
MICHAEL J. WALL

THE FREEDOM CENTER
223 ROSA L. PARKS AVENUE
SUITE 200
NASHVILLE, TENNESSEE 37203
TELEPHONE (615) 254-8801
FACSIMILE (615) 255-5419

ASSOCIATES:
GABRIEL G. GALLETTI ***
CALLIE K. JENNINGS
SEAMUS T. KELLY
ISAAC MILLER ******
ANTHONY A. ORLANDI ****
K. GRACE STRANCH

OF COUNSEL:
ROBERT E. RICHARDSON, JR. **

November 23, 2016

**VIA ELECTRONIC MAIL:**

Matthew H. Cline
Gideon Cooper & Essary, PLC
315 Deaderick St., Suite 1100
Nashville, Tennessee 37238

    Re:    New England Compounding Center Litigation, MDL No. 2419

Dear Matt:

    I write concerning our review of files on the computers that the SSC Defendants sold to Cumberland Medical Center ("Cumberland") in June 2013.

    As you know, on January 29, 2016, the Plaintiffs' Steering Committee ("PSC") served a subpoena on Cumberland, seeking to examine these computers. On May 3, 2016, the PSC and Cumberland moved for a qualified protective order concerning the review of files on those computers.[1] On May 23, 2016, the SSC Defendants filed a Response in opposition to Motion for Qualified Protective Order[2] and filed their own Motion for Protective Order,[3] demanding that they be allowed to conduct a full privilege review for (1) peer review and quality improvement privileges; (2) attorney work product; and (3) attorney-client privilege. In the Memorandum in support, the SSC Defendants contended that Jean Atkinson maintained an "*independent*

---

[1] Dkt. No. 2841.
[2] Dkt. No. 2905.
[3] Dkt. No. 2906.



\* ALSO ADMITTED IN GA
\*\* ONLY ADMITTED IN OH
\*\*\* ALSO ADMITTED IN NY
\*\*\*\* ALSO ADMITTED IN MA
\*\*\*\*\* ALSO ADMITTED IN WV AND FL
\*\*\*\*\*\* ALSO ADMITTED IN CA

*Letter to Matthew H. Cline*
*November 23, 2016*
*Page 2*

attorney-client privilege" that "involve communications *that are strictly between Ms. Atkinson and counsel, and that do not copy the other employees of SSC, or SSC's owners.*"[4]

On July 28, 2016, the Court ruled on the pending motions.[5] With respect to issue of a privilege review, the Court ruled that the SSC Defendants waived attorney-client privilege and that all work product protections had also been waived. The Court permitted the SSC Defendants to review only for one narrow purpose: the Tennessee Peer Review Privilege and Quality Improvement Committee Privilege. The Court also permitted Jean Atkinson to review the documents for information protected by her "personal attorney-client and work product privileges." It apparent that, relative to Ms. Atkinson, the Court permitted the specific relief requested in the SSC Defendants' Memorandum: protection over communications strictly between Ms. Atkinson and her attorneys, and on which no one else was copied.

The Court also ordered the parties to submit a revised qualified protective order reflecting these rulings by August 4, 2016. The parties did so.[6] As reflected in that QPO,[7] the SSC Defendants were permitted to review for the PRP/QIPC only, and Ms. Atkinson was permitted to review for documents protected by her personal attorney-client privilege and work product privileges only.

After agreed extensions of time for the parties to complete the review process, the PSC began receiving rolling productions relating to approximately 18,000 documents. The Defendants completed their review of the remaining documents on November 11, 2016, relating to approximately 6,700 files. However, because of an issue raised by the Defendants concerning certain spreadsheets and some coding discrepancies in the SSC Defendants' coding of the record, the PSC was not granted access to these materials until the afternoon of Thursday, November 17, 2016.

On November 17, 2016, the PSC inquired as to when it would receive a privilege log reflecting documents redacted or withheld. The Defendants conceded that, under the QPO, a privilege log should be provided within five business days (which would have been November 18), but indicated that it would need until November 23 to provide the privilege log. For the first time, the Defendants complained that producing a privilege log would be too burdensome, and proposed that the PSC identify particular redacted documents and request more information from the Defendants about each document. The Defendants also stated that for files it was "withholding entirely", it would only indicate that entire categories of records were withheld on some basis, such as "emails between Atkinson and counsel." The PSC responded that it would

---

[4] Dkt. No. 2907 at p. 5.
[5] Dkt. No. 3015.
[6] Dkt. No. 3024.
[7] Dkt. No. 3030.

not accept this proposal and demand a line-by-line privilege log. The PSC also provided an example of the SSC Defendants making inappropriate redactions. The PSC did not receive a response.

As of this afternoon, the PSC has not yet received a privilege log, although it has been able to review many of the records produced in the most recent (and final) production wave. Having reviewed the three production waves, it is clear that the vast majority of attorney-client communications (and associated redactions) were part of this final wave of records.

## REDACTIONS

With limited exceptions, the vast majority of the Defendants' redactions do not specify the basis for the redactions. Also, in many instances, the basis for the redactions is not self-evident, particularly given the narrowness of the privilege review authorized by the Court.

Nevertheless, it is apparent that the SSC Defendants have redacted material that the Court expressly found had been waived. In particular, the production contains numerous redacted communications with defense counsel that either (a) include non-attorneys *other than Jean Atkinson*, or (b) *do not include Jean Atkinson at all*. Attached as collective **Exhibit A** hereto are a representative sample of these records. For example, on October 10, 2012, attorney Cline emailed numerous recipients, including insurer representatives, St. Thomas Neurosurgical representatives, Howell Allen representatives, and Kim Bowlin – followed by multiple emails between Mr. Cline and Ms. Bowlin. That email does not fall under either of the types of privilege review authorized by the Court. On October 8, 2012, CJ Gideon emailed numerous recipients, including Kim Bowlin, Calishers, and what appears to be the entire Executive Committee of SSC, and Kim Bowlin responded. These attorney-client emails have been redacted, even though *Jean Atkinson does not appear on them*. These are a handful of examples among many. These redactions facially violate the Court's ruling.

Other redactions ostensibly were made under the PRP/QICP, but are untenable. *See* Collective **Exhibit B** hereto. For example, the text of an October 6, 2012 email relating to Bill Steinbach, MD, a potential consulting expert for the Defendants, has been produced (appropriately), but the attachment – which appears to be Mr. Steinbach's *curriculum vitae*, has been redacted on the basis of the QICP. It is inexplicable how a litigation consulting expert's CV would be protected by the QICP. The defendants have also redacted information that cannot possibly be protected by the QIC, such as the "sender" or "recipient" of a communication and the entire text. *See* Collective **Exhibit C** hereto.

Certain other unspecified redactions are mystifying. For example, it is apparent that SSC circulated daily updates on certain matters, including updates during the time frame in which it chose to purchase MPA from NECC. *See* **Exhibit D** hereto. For reasons that are not clear,

certain of these updates contain redactions that do not match either of the grounds permitted by the Court. For example, a July 12, 2016 update – during the time frame in which the SSC Defendants decided to purchase from NECC, the "Equipment/Supplies" section is redacted, even though it is not redacted in other updates. Similarly, on a July 23, 2016 update, what appears to be a large amount of text has been redacted under the hearing "Daily meeting with Jean." SSC has also redacted information from a liability insurance certificate on the basis of the "Peer Review" privilege. *See* **Exhibit E** hereto. At least in part, these redactions are not appropriate, and the PSC is left to guess at the content of these records.

These examples are merely representative.

## **RELIEF**

The SSC Defendants must immediately make all records available to the PSC that do not fall within the Court's Order to redact or withhold records only the basis of (1) the PRP/QICP, and (2) a personal privilege and work product protection held by Ms. Atkinson. With respect to the latter, to the extent that ***anyone*** other than Ms. Atkinson was privy to a communication with counsel (whether included or the original communication or forwarded), the communication must be produced without redaction.

The timing of these issues is intensely prejudicial to the PSC. The current fact discovery deadline is December 9, 2016, and the parties have agreed to conduct the deposition of Ms. Pick and Mr. Simpson on December 2, 2016 and of Jean Atkinson and Dr. Lister on December 15 and 16 (after the deadline). Those depositions are predicated on the PSC's access to the documents ordered by the Court. The SSC Defendants have made inappropriate redactions, at least some of which facially violate the Court's Order. Some of the communications are perhaps the "hottest" documents, particularly communications between counsel and the SSC Defendants that would be the subject of questioning at deposition. Moreover, the timing of this issue overlaps with the Thanksgiving holiday, limiting the PSC's ability to address these issues in advance of the upcoming depositions.

Finally, the PSC is in the difficult position of making privilege challenges without the benefit of privilege log. That is unfair, and it is not the PSC's burden to locate redactions, ask for the basis for privilege, and then challenge it. Indeed, the Defendants have suggested that there are some records being withheld completely of which the PSC is not even aware, including communications with Ms. Atkinson. If those withheld communications involve any non-attorney other than Ms. Atkinson, there will be similar issues to address. The PSC is also still in the process of reviewing the last batch of records and expects that this review uncover additional redaction-related concerns.

*Letter to Matthew H. Cline*
*November 23, 2016*
*Page 5*

The PSC hereby demands that the Defendants make available by Monday, November 28 unredacted versions of records that do not fall within the specific parameters authorized by the Court. The PSC also requests that the Defendants pay all costs associated with making those records available to the PSC through the document vendor. If the Defendants refuse to agree to those conditions, the Defendants will be forced to seek immediate relief from the Court, including but not limited to a Motion for Contempt for violating the Court's Order with respect to the privilege designations on all communications that include anyone other than Jean Atkinson. Furthermore, under the circumstances, it is unclear that the PSC will be able to take the depositions on the scheduled dates, unless the Defendants are willing to make those deponents available for another round of depositions after all privilege issues are resolved.

Sincerely,

BENJAMIN A. GASTEL