# EXHIBIT I

# GIDEON, COOPER & ESSARY
A PROFESSIONAL LIMITED LIABILITY COMPANY

315 DEADERICK STREET, SUITE 1100
NASHVILLE, TENNESSEE 37238
(615) 254-0400
FAX (615) 254-0459
www.gideoncooper.com

C. J. GIDEON, JR.[1]
DIXIE W. COOPER[2]
BRYAN ESSARY[3]
CHRIS J. TARDIO[4]
CHRISTOPHER A. VRETTOS
ALAN S. BEAN
JOSHUA R. ADKINS
KIM J. KINSLER[5]
RANDA V. GIBSON
J. BLAKE CARTER[1]
MATT H. CLINE
MATTHEW J. NATHANSON
KAYCEE L. WEETER
LEE T. NUTINI

[1] LICENSED IN TN & FL
[2] LICENSED IN TN, AL & TX
[3] LICENSED IN TN & GA
[4] LICENSED IN TN & KY
[5] LICENSED IN TN & WI

Matthew H. Cline
matt@gideoncooper.com

November 29, 2016

**Via Email Only: beng@bsjfirm.com**
Ben Gastel
Branstetter, Stranch & Jennings, PLLC
The Freedom Center
223 Rosa L. Parks Ave.
Suite 200
Nashville, TN  37203

RE:   **Meningitis Litigation – CMC Document Production**

Dear Ben:

I write in response to your November 23, 2016 letter. I will try to ignore the incendiary language and accusations and skip to the supposed discovery disputes.

**Privilege Log**

First, your letter repeatedly complains that you had not received a privilege log from us for the CMC documents. I told Tony (and you) on November 17 that, even though the CMC review protocol did not explicitly require it, we would provide a privilege log by close of business on November 23. Less than 90 minutes after we received your letter, we produced a 40+ page privilege log[1] that identifies the privilege(s) applicable to the documents we redacted and withheld.

---

[1] Your letter references the fact that we had some tagging issues with the CMC documents that required a few extra days to make the documents available to you and produce a privilege log. You may not know this, but CMC ran into similar issues when making the documents available to us, which caused them to exceed their deadline for production. Taking CMC's delay into account, we completed our production in the amount of time allotted by our agreed scheduling order, and we produced our privilege log five business days later. If you intended to suggest some unnecessary delay on our part, you could not be further from the truth.

**Attorney-Client Emails**

It seems a major thrust of your letter is a complaint about our redaction or withholding of communications made between counsel and common clients.

There has never been a ruling, nor even a suggestion, that STOPNC/Howell Allen or Dr. Jones (just like Jean Atkinson) waived their attorney-client/work product privileges. Thus, we redacted or withheld from production communications between our office and our clients (1) Jean Atkinson, (2) STOPNC/Howell Allen, and (3) Dr. Jones.

Whether these communications are to co-clients subject to attorney-client/work product protection directly or subject to the community of interest/joint defense privilege, the principle is the same: a disclosure by one party to a joint privileged communication does not operate to waive privilege for all parties.[2] Most courts cite the Restatement for this rule:

> If two or more persons are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged under §§68-72 and relates to matters of common interest is privileged as against third persons, and any co-client may invoke the privilege, unless it has been waived by the client who made the communication.[3] [4]

The rule applies here. SSC's waiver of privilege does not waive privilege for Ms. Atkinson, STOPNC/Howell Allen, or Dr. Jones. If you have case law you believe establishes otherwise, please send it to me so I can review and consider it without further having to involve the Court.[5]

---

[2] *In re: Teleglobe Communications Corp.*, 493 F.3d 345, 363, 379-80 (3d Cir. 2007) (quoting Restatement (3d) of the Law Governing Lawyers § 75); *John Morell & Company v. Local Union 304A of the United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 556 (8th Cir. 1990) ("It is fundamental that the joint defense privilege cannot be waived without the consent of all parties to the defense.") (internal quotation and citation omitted); *In re: Auclair*, 961 F.2d 65, 71 (5th Cir. 1992) (finding client could continue to assert attorney-client privilege despite waiver of privilege by co-client); *In re: Grand Jury Subpoenas, 89-3 and 89-4, John Doe 89-129*, 902 F. 2d 244, 249-50 (4th Cir. 1990) (joint defense privilege cannot be waived unilaterally by one party to the defense).

[3] Restatement (3d) of The Law Governing Lawyers, § 75.

[4] Tennessee courts look to the Restatement (3d) of The Law Governing Lawyers to answer similar questions. *See Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 215 (Tenn. Ct. App. 2002) (citing Restatement (3d) of The Law Governing Lawyers, § 76.

[5] Your firm took the same position in the Middle District, in *Anderson v. Clarksville Montgomery County School Bd. & School Dist.*, 229 F.R.D. 546, 546-48 (M.D. Tenn. 2005). There, your firm represented multiple plaintiffs in a set of related actions. Some of the plaintiffs disclosed confidential communications sent to all plaintiffs. Correctly, the court held that disclosure of the communications by some of your clients did not waive the privilege over the communications for <u>all</u> of your clients because "when parties jointly are holders of the same privilege, neither of them may unilaterally waive the privilege for the other[.]"

2

**Redactions in Documents with Your Letter**

**Exhibit A:**

Pages 0140147-48: This is an attorney-client communication with STOPNC/Howell Allen and Dr. Jones, explained above.

Pages 0145180-81: These communications among SSC's executive committee members are likely covered by the Quality Improvement/Peer Review privilege. However, we decided to go ahead and produce an unredacted version of these communications to hopefully eliminate more unnecessary litigation over irrelevant documents. We did not go through and remove the redactions for the duplicates, given our time constraints and the size of the production. You have the unredacted versions at 0145178-79.

Page 0145185: As with the previous pages, these communications are likely covered by the Quality Improvement/Peer Review privilege, but we decided to go ahead and produce an unredacted version. You have it at page 0140589. However, it looks like Kim Bowlin's last email was not actually part of the unredacted email chain. This was an oversight in the tens of thousands of pages we were dealing with in this production. We will direct LogicForce to produce an unredacted version of page 0145185.

Page 0145202: This is another attorney-client communication to STOPNC/Howell Allen and Dr. Jones.

Pages 0145254-56: This is an attorney-client communication with Jean Atkinson.

Page 0145298: Starting from the bottom of the page, the first email in the chain is an attorney-client communication with Jean Atkinson. In the second and third emails, Kim Bowlin is conveying information to counsel on behalf of Jean Atkinson because Jean's computer was not working. In this limited instance, Ms. Bowlin was acting as Ms. Atkinson's agent to relay information to counsel. Thus, the communications are protected by Ms. Atkinson's personal privilege.[6]

Page 0145647: Starting from the bottom again, the first email is an attorney-client communication from Ms. Atkinson to counsel. The portion of the second email we redacted conveys the substance of a conversation between Ms. Atkinson and counsel covered by her personal privilege.

---

[6] See cmt. to Restatement (3d) of The Law Governing Lawyers, §75 (communication subject to the privilege for co-clients can be made through the client's agents for communication and a lawyer's agent for communication).

3

**Exhibits B, C, E:**

These redactions are all from CMC. As I have now told you several times, our redactions were done using a white box with a black X through it (as you can see in Exhibits A and D). You will have to ask CMC about the reasons for the "inexplicable" redactions in Exhibits B, C, and E.

**Exhibit D:**

Page 0179146: The redaction under "Equipment/Supplies" is for the Quality Improvement/Peer Review privilege. It is a discussion about an equipment malfunction during an endoscopy procedure and corrective action. The other redactions are for financial information (revenue/income).

Page 0181022: The redaction under "Daily Meeting with Jean" is for the Quality Improvement/Peer Review privilege. It is a discussion about an issue involving a patient losing a hearing aid during an endoscopy procedure and corrective action. The other redactions are for financial information (revenue/income).

**Next Steps**

At this point, only 13 cases remain against SSC. Yet, we continue to spend hundreds and hundreds of attorney hours and many thousands of dollars on document production, mostly now related to this enormous CMC document production. Despite what you repeatedly try to pitch to the Court, there is no "hide the ball" here, and no important information left uncovered. At some point, the proportionality provisions of Rule 26, and common sense, have to kick in. We have spent more than enough time down this rabbit hole looking for a smoking gun that simply does not exist. Let's move on and start preparing these cases for trial.

**That being said, please let us know today whether you want to cancel the depositions of Dr. Pick and Dr. Simpson with the latest issues you raise.**

I am out of the office with virtually no internet access November 28-30. I am available to discuss December 1-2, or in the afternoon of November 30 while I am on the road driving for several hours. Please let me know as soon as possible (1) when you would like to discuss these issues and (2) whether you want to postpone the depositions of Drs. Pick and Simpson scheduled for December 2. Also, if you have more questions about specific documents we withheld or redacted, please do not hesitate to contact us. As we have done from the get-go, we will answer any questions as promptly as possible.

Thank you.

4

Sincerely,

***/s/ Matthew H. Cline***
Matthew H. Cline

Cc (via email): Chris Tardio, C.J. Gideon, Kent Krause, Mark Chalos, Annika Martin, Gerard Stranch