# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PROCUCTS LIABILITY LITIGATION | )<br>)<br>) MDL No.:  2419<br>) Master Docket No.: 1:13-md-2419 |
| THIS DOCUMENT RELATES TO: | )<br>) |
| All Actions Against Specialty Surgery Center and Dr. Kenneth Lister | )<br>)<br>) |

## MEMORANDUM IN SUPPORT OF MOTION FOR SANCTIONS AND FOR ORDER TO SHOW CAUSE

The parties have completed the initial review and production of files on seven hard drives subpoenaed by the Plaintiffs' Steering Committee (the "PSC") from third party Cumberland Medical Center ("Cumberland"), subject to the terms of a qualified protective order previously entered by the Court.  (Dkt. No. 3030).  In violation of that order, counsel for the SSC Defendants,[1] Ms. Atkinson, and multiple third parties have improperly redacted or withheld hundreds of records on grounds not authorized by the Court, and have otherwise not substantiated their claims of privilege over these records.  The PSC therefore moves for sanctions under Rule 37 to compel the immediate production of these records without redaction and for an order to show cause why the SSC Defendants, Ms. Atkinson, and these third parties should not be held in contempt for exceeding the Court's prior order.

## OVERVIEW

The SSC Defendants, Ms. Atkinson, and (unbeknownst to the PSC) multiple third parties have withheld information from Cumberland's computers in violation of the Court's Rule 26(c) protective order.  The Court should enforce the terms of its prior ruling, require production of the

---

[1] The "SSC Defendants" include Specialty Surgery Center PLLC, Dr. Kenneth Lister, MD, and Dr. Kenneth Lister, MD, PC.

improperly withheld records immediately, and should find contempt under Rule 37(b) and/or issue an order to show cause why the SSC Defendants, Ms. Atkinson, and these third parties should not be held in contempt.  Even if the Court were inclined to evaluate the substance of the asserted privileges, they have not been substantiated with a compliant privilege log or otherwise, and it would be manifestly unfair and prejudicial to the PSC to permit counsel for the SSC Defendants, Ms. Atkinson, and additional third parties to get yet another bite at the apple to withhold Cumberland's records from the PSC at this advanced stage of the proceedings.

## BACKGROUND

**I.**     **The Cumberland Computers and the Original Competing Motions for Protective Order with Respect to Those Computers.**

In June 2013, SSC sold all of its assets to Cumberland, including seven computers (the "Cumberland Computers").[2]  On January 29, 2016, the Plaintiffs' Steering Committee ("PSC") served a subpoena on Cumberland, seeking to examine these computers.  On May 3, 2016, the PSC and Cumberland moved for a qualified protective order concerning the review of files on those computers in response to the PSC's subpoenas.[3]  On May 23, 2016, the SSC Defendants filed a Response in Opposition to the Motion for Qualified Protective Order,[4] and contemporaneously filed their own Motion for Protective Order.[5]   The SSC Defendants demanded that they be allowed to conduct a full privilege review of records on the computers to remove or redact materials based (1) the Tennessee statutory Peer Review Privilege or the Tennessee Quality Improvement Committee Privilege (collectively, the "PRP/QICP"); (2)

---

[2] The PSC has already briefed in detail the circumstances related to the sale of these computers, which the Court summarized in its July 28, 2016 ruling.  (Dkt. No. 3015.)  Accordingly, the PSC incorporates those descriptions by reference and will not repeat them here.
[3] Dkt. No. 2841.
[4] Dkt. No. 2905.
[5] Dkt. No. 2906.

attorney work product; and (3) attorney-client privilege.  In the Memorandum in Support of their Motion, the SSC Defendants contended that Jean Atkinson maintained an "independent attorney-client privilege" that "involve[s] communications *that are strictly between Ms. Atkinson and counsel, and that do not copy the other employees of SSC, or SSC's owners*."[6]

## II.   The Court's Ruling

On July 28, 2016, the Court ruled on the pending motions.[7]  With respect to the issue of a privilege review, the Court ruled that the SSC Defendants waived attorney-client privilege and that all work product protections had also been waived.[8]  However, the Court permitted only the following requested relief:

- The SSC Defendants could review only for one narrow purpose: the PRP/QICP.

- Jean Atkinson could review the documents for information protected by her "personal attorney-client and work product privileges."

The Court denied all other relief requested by the SSC Defendants and Ms. Atkinson.  The Court did not authorize review of the records by anyone else or for any other purpose.

On August 5, 2016, the Court entered a qualified protective order ("QPO") reflecting its ruling.[9]  (*See* **Exhibit A** hereto.)  The QPO incorporated by reference a set of "Joint Protocols for Review of Certain Responsive Hard Drives in Cumberland's Possession."[10]  As set forth therein, Cumberland possessed the computers, and therefore was given the opportunity to conduct an exclusive first line review for privilege, confidentiality, and HIPAA protections

---

[6] Dkt. No. 2907 at p. 5 (emphasis added).

[7] Dkt. No. 3015.

[8] Dkt. No. 2015 at pp. 5-6 ("[T]he SSC Defendants voluntarily disclosed any privileged information to a third party and, therefore, waived the attorney-client privilege.") and p. 9 ("[T]he Court finds that any work product protection was also waived by the disclosure to Cumberland.")

[9] Dkt. No. 3030.

[10] *Id.* (Exhibit 1 thereto).

without limitation.  By contrast, consistent with the Court's ruling, the QPO specified that the SSC Defendants were permitted to review for the PRP/QIPC only, and that Ms. Atkinson was permitted to review for documents protected by her personal attorney-client privilege and work-product privileges only.

The SSC Defendants also filed a Motion for Partial Reconsideration of the July 28, 2016 Order, which the Court summarily denied.[11]

### III.    The Records Review

Because of the volume of the production, the parties requested and obtained extensions of the discovery and pretrial schedule to complete the review.  The Court set a December 9, 2016 deadline for the completion of fact discovery.  Following a rolling initial review by Cumberland, counsel for the SSC Defendants and Ms. Atkinson completed their review of the remaining documents on November 17, 2016, relating to approximately 6,700 files.[12]  During this time frame, the PSC tentatively scheduled the depositions of two former owners of SSC for December 2, 2016, and re-depositions of Ms. Atkinson and Dr. Lister for December 14 and 15, 2016, respectively.[13]

On November 17, 2016, the PSC inquired as to when it would receive a privilege log reflecting documents redacted or withheld.[14]  The SSC Defendants indicated that they would

---

[11] *See* Dkt. Nos. 3031 and 3074.

[12] Because of an issue raised by counsel for the SSC Defendants concerning certain spreadsheets and some coding discrepancies in the SSC Defendants' coding of the record, the PSC was not granted access to these materials until the afternoon of Thursday, November 17, 2016, which was 6 days after the deadline set forth in the governing case management order.  The PSC is not suggesting that the SSC Defendants improperly took those six additional days.  The PSC is merely indicating that it did not actually receive access to the records at issue until November 17, 2016.

[13] The parties tentatively agreed to conduct the depositions of Ms. Atkinson and Dr. Lister approximately within one week of December 9, 2016.

[14] *See* **Exhibit B** hereto (email string).

need until November 23 to provide a privilege log.  For the first time, the SSC Defendants complained to the PSC that producing a privilege log would be too burdensome, and proposed that the PSC identify particular redacted documents and request more information from the SSC Defendants about each document.  The SSC Defendants also stated that for files it was "withholding entirely", it would only indicate that entire categories of records were withheld on some basis, such as "emails between Atkinson and counsel."  The PSC responded that it would not accept this proposal and requested a line-by-line privilege log so that it could evaluate all claims of privilege.  The PSC also reiterated that it expected a log reflecting only the two types of privilege assertions authorized by the Court.  The PSC did not receive a response.

On November 23, 2016, the PSC sent a letter to Mr. Cline indicating that the SSC Defendants and Ms. Atkinson had made improper redactions and improperly withheld records on grounds not authorized by the Court.[15]  The PSC sent that letter based on its ongoing review and without the benefit of a privilege log.  At 4:30 P.M. that afternoon (the day before Thanksgiving), the PSC received a letter and a privilege log from Mr. Cline.[16]

## IV.    The SSC Defendants' Privilege Designations

Based on the Court's ruling and the QPO terms, the PSC should have received an itemized privilege log reflecting redactions for privilege only on the following two grounds: (1) the PRP/QICP; and (2) a personal privilege for Jean Atkinson relative to communications strictly between her and counsel on which no one else was copied.  Instead:

- Gideon, Cooper & Essary PLC ("Gideon Cooper") indicated that it made redactions or withheld records on *additional grounds not authorized by the Court*, including a "common interest/joint defense privilege" for email

---

[15] *See* **Exhibit C** hereto (11/23/2016 Ltr. from B. Gastel to M. Cline).
[16] *See* **Exhibit D** (11/23/16 Ltr. from M. Cline to B. Gastel), and **Exhibit E** (Privilege Log).

communications that involve Dr. Donald Jones or any of the St. Thomas Neurosurgical Defendants separately named in other MDL cases.[17]

- Ms. Atkinson asserted a "personal privilege" over communications to or from her attorneys *on which people other than her attorneys were copied*. Some examples are attached as **Collective Exhibit F** hereto.[18] For example, she claims privilege over a February 8, 2013 email from Mr. Cline to her, Kim Bowlin, and Dr. Lister.

More generally, the log does not identify the date, sender, or subject matter of any particular communication, making it impossible for the PSC (or the Court) to evaluate and approve each claim of privilege. Furthermore, some documents in the production that have been redacted are not even listed on the log.[19]

## V.  Additional Clients Who Intervened via Gideon Cooper Without Authorization from the Court

The law firm of Gideon Cooper serves as counsel for three sets of defendants in MDL 2419 matters: (1) the SSC Defendants, who operated a clinic in Crossville, Tennessee; (2) the St. Thomas Neurosurgical Defendants,[20] who operated a clinic in Nashville, Tennessee; and (3) Dr.

---

[17] Table 1 of the Privilege Log identifies documents that have been redacted on the basis of privilege. Table 2 of the Privilege Log identifies documents that have been withheld entirely on the basis of privilege.

[18] Table 1 of the privilege logs identifies 29 redacted emails "between Jean Atkinson and counsel." That characterization by Gideon Cooper is misleading. In fact, most of those emails involve communications with counsel on which other non-attorneys are copied. *See, e.g.*, **Collective Exhibit F** (filed under seal), containing CMC Subpoena Response E-Discovery (hereinafter "Bates No.") 0145254-56 (Email from Atkinson to Bowlin and Cline, and response email from Cline to Bowlin and Atkinson); 0145253 (Email from Cline to Bowlin and Atkinson, forwarded to Dr. Lister, Calishers, and Executive Committee of SSC), 0140406 (email between Atkinson, Bowlin, Cline, and Calishers); 0140393 (email from M. Cline to Bowlin, Dr. Lister, Calishers, and Atkinson).

[19] *See, e.g*, Collective **Exhibit G** (filed under seal), containing Bates No. 0140585-6 and 0140587-88 (redactions to October 8, 2016 emails with the Executive Committee, Calishers, Dr. Lister, and Bowlin).

[20] St. Thomas Outpatient Neurosurgical Center, John Culclasure, M.D., Debra Schamberg, RN, CNOR and Howell Allen Clinic (collectively, "St. Thomas Neurosurgical Defendants").

Donald Jones and Total Healthcare Consultants, PLLC d/b/a PCA Pain Clinic in Oak Ridge, Tennessee.[21]

Aside from the fact that these three clinics in 2012 injected patients with contaminated MPA produced by NECC, the relevant facts related to these clinics vary dramatically.  Each clinic independently decided to purchase MPA compounded by NECC, and did so for clinic-specific reasons, at different times, through different decision-makers.  Each serves a different geographic area and treated different patients.  Dr. Jones and the St. Thomas Neurosurgical Defendants are not defendants in any case against SSC, nor, to the best of the PSC's knowledge, did any patient who received a contaminated MPA injection SSC ever notice a potential claim against Dr. Jones or the St. Thomas Neurosurgical Defendants.  Dr. Jones and the St. Thomas Neurosurgical Defendants are not alleged to have had any involvement whatsoever at SSC during the relevant time frame. They are not identified by any party as potential witnesses in any case against SSC.

Nevertheless, as is evident from the production, in October 2012 Gideon Cooper sent emails that copied the SSC Defendants, St. Thomas Neurosurgical, and Dr. Jones together.[22] Some examples of redacted records reflecting these communications are attached as **Exhibit H** (filed under seal) hereto.

Gideon Cooper also claims to serve as counsel for Ms. Atkinson individually.  Ms. Atkinson is not named as a defendant in any case against SSC or, for that matter, in any case consolidated into MDL 2419.  The PSC is not aware of any separate retention agreement

---

[21] *See, e.g.*, *Daugherty v. Total Healthcare Consultants, PLLC¸ et al.*, 1:14-cv-10430-RWZ (filed Feb. 26, 2014) (related to MDL 2419); and *Seiber v. Ameridose, LLC et al.*, 1:14-cv-11868-RWZ (filed Feb. 6, 2014).

[22] As best the PSC can discern from the files available to it, these joint communications only occurred in October 2012.

between Ms. Atkinson and her attorneys or of any separate insurance policy (distinct from SSC's insurers) under which Ms. Atkinson obtained coverage against potential claims relative to the fungal meningitis catastrophe.

## LOCAL RULE 37.1 CERTIFICATION

The PSC worked through the Thanksgiving holiday weekend to complete its review of the records expeditiously and on November 29, 2016, received a letter from Gideon Cooper responding to the PSC's November 23, 2016 letter.[23]   The parties also sent emails to each other concerning these issues.[24]   In the course of these emails, Gideon Cooper acknowledged that it had intervened on behalf of Dr. Jones and St. Thomas Neurosurgical, but offered no explanation as to how that unilateral and previously undisclosed intervention did not violate the QPO. Similarly, it refused to produce emails with Jean Atkinson on which other individuals were copied.  These issues relate to approximately 200 or more documents that have been redacted or withheld entirely.   After these meet and confer efforts, the PSC believes it in good faith attempted to narrow the issues presented by this motion, but reasonably believes the parties are at an impasse.  Accordingly, the PSC certifies that it has complied with Local Rule 37.1.

Also, because there was no reasonable prospect of resolving these issues without Court intervention, the PSC was forced to cancel depositions of Dr. Lister and Ms. Atkinson that tentatively had been scheduled for December 14 and 15, 2016.

## STANDARD FOR SANCTIONS AND CONTEMPT

The Court issued its Qualified Protective Order under Rule 26(c) after considering the parties' cross-motions under Rule 26(c).  Federal Rule of Civil Procedure 37(b) grants federal courts wide discretion to fashion sanctions for a party's failure to comply with discovery

---

[23] *See* **Exhibit I** (11/29/16 Letter from M. Cline to B. Gastel).
[24] **Exhibit J** (Email String).

8

orders.[25]   Under Rule 37(b)(2)(A), the Court may issue any "just order," including but not limited to a finding of contempt under Rule 37(b)(2)(A)(vii).

More generally, independent of any statute or rule, a trial court has the power to sanction for contempt.[26]   Civil contempt must be established by clear and convincing evidence and the violated order must be clear and unambiguous in its terms.[27]   The trial court has broad discretion in fashioning sanctions for failure to comply with court orders.[28]

## ANALYSIS

I. **The Court Should Order the Immediate Production of All Records Redacted or Withheld in Violation of the QPO and Should Issue Sanctions or a Show Cause Order for those Violations**

A. **The Records at Issue are Cumberland's Property, and the QPO Defined the Only Grounds for Withholding Information and the Only Parties Authorized to Do So.**

As a threshold matter, the files at issue in this motion are ***the property of Cumberland***. The SSC Defendants sold those records to Cumberland in fee simple without any reservation of rights.  As the Court previously and appropriately ruled, the SSC Defendants waived all attorney-client privilege and work product protections over those records.   The Court nevertheless permitted the SSC Defendants a limited opportunity to review records in Cumberland's

---

[25] *See Poliquin v. Garden Way*, 154 F.R.D. 29, 31 (D. Me. 1994); *Spencer Cos. v. Agency Rent-a-Car, Inc.*, Civil Action No. 81-2097-S, 1982 U.S. Dist. LEXIS 10398, at *9  (D. Mass. Jan. 4, 1982) ("Violation of an order entered under Rule 26(c) brings the sanctions of Rule 37(b) to bear," including contempt); *see also Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 488-89 (5th Cir. 2012) (affirming sanctions issued under Rule 37(B)(2) for failure to comply with protective order); *Jay v. Spectrum Brands Holdings, Inc.,* 13 Civ. 8137, 2015 U.S. Dist. LEXIS 144361, at *14-15 (S.D.N.Y. Oct. 20, 2015) (stating that protective orders issued under Rule 26(c) can be enforced through Rule 37(b)(2)).
[26] *Trs. of the National Elevator Indus. Pension v. AFCO Lift & Equipment Corp.*, Miscellaneous No. 11-91031NMG, 2013 U.S. Dist LEXIS 170191, at *7 (D. Mass. July 11, 2013) (Boal, M.J.).
[27] *Id.*  at *7-8 (citing *Gemco Latinoamerica v. Seiko Time Corp.*, 61 F.3d 94, 98 (1st Cir. 1995)).
[28] *National Elevator*, 2013 U.S. Dist. LEXIS 170181, at *8 (citing *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 344 F.3d 16, 20 (1st Cir. 2003)).

possession only for one specific purpose: to identify material on those computers protected by the PRP/QICP. The Court also permitted Jean Atkinson to review records in Cumberland's possession only for one specific purpose, to identify records subject to a "personal privilege", namely records strictly between her and counsel. The Court entered a QPO that reflected these limited forms of relief in favor of the SSC Defendants and Ms. Atkinson. It denied all other forms of relief requested by the SSC Defendants and Dr. Lister, and *it did not grant Gideon Cooper or any third parties the right to review those records or otherwise to assert privilege for any purpose*.

### B. Dr. Jones and St. Thomas Neurosurgical Had No Right to Review the Records for Privilege and to Withhold or Redact Records, and Ms. Atkinson Had No Right to Assert Privilege on Grounds Not Specifically Authorized by the Court

The PSC learned for the first time on November 23, 2016 that Gideon Cooper was unilaterally asserting additional grounds for privilege not authorized by the Court and not allowed by the QPO relative to other third parties.

First, Gideon Cooper asserted a "joint defense" or "common interest" privilege for communications involving Dr. Jones or St. Thomas Neurosurgical. According to Table 2 of its log, over 100 documents have been withheld on this unauthorized basis, and according to Table 1 to its privilege log, it has redacted numerous records on the same grounds.[29] Gideon Cooper has admitted that it reviewed and redacted Cumberland's records *on behalf of Dr. Jones and St. Thomas Neurosurgical*. Neither Dr. Jones nor St. Thomas Neurosurgical (nor Gideon Cooper as their counsel) had any right to access third-party Cumberland's property for these purposes. To do so, they would have required relief from the Court, which they never sought, let alone

---

[29] Similarly, it has withheld at least 30-40 other records involving Ms. Atkinson, for which it claims some of type "joint defense/common interest" privilege."

obtained.  They are not parties to the QPO or the protections embedded in it.  This raises serious concerns, because the production contained information confidential to SSC, as well as confidential patient-specific information for patients of SSC, all of whose data apparently has been exposed to Dr. Jones and St. Thomas Neurosurgical without authorization.

Second, the SSC Defendants are flagrantly abusing their authorization to review for Ms. Atkinson's "personal privilege," either by improperly exceeding their own definition of that privilege or by asserting a distinct "joint defense privilege" that the Court never authorized Ms. Atkinson to assert.   When Ms. Atkinson previously requested relief from the Court, her attorneys represented that they sought to conduct a review for her "personal privilege" over communications "strictly" between Ms. Atkinson and counsel "on which no one else was copied."   Nevertheless, as reflected in the examples attached as **Exhibit F** hereto, they have redacted records that do not fit this definition, including communications to or from Ms. Atkinson and her counsel on which other people *are* copied.[30]  She never sought or received

---

[30] To date, the defendants' only counter-argument on this issue is to point out that the Court's July 28, 2016 Order references a "personal privilege" held by Ms. Atkinson, without imposing a limiting construction on that term.  Ms. Atkinson seems to be suggesting that the Court's ruling granted her broader relief than she actually sought.  However, as the Court will see from a review of the record, it is clear that the Court was simply utilizing the same phrase – a "personal privilege" held by Ms. Atkinson – that the SSC Defendants and Ms. Atkinson had utilized in their brief, which they had defined as communications between Jean Atkinson and counsel on which no one else was copied.  *Compare* Dkt. No. 2907, Defs. Memorandum in Support of Motion for Protective Order, at pp. 11 ("There are likely communications between Jean Atkinson, RN and counsel that implicate her independent attorney-client privilege.  The latter category of communications would involve communications that *are strictly between Ms. Atkinson and counsel, and that do not copy the other employees of SSC, or SSC's owners*.") and 16 (arguing that any contention of waiver was "even weaker with respect to Ms. Atkinson's *personal attorney-client privilege*"), *with* Dkt. No. 3015, July 28, 2016 Order, at p. 12 ("Ms. Atkinson may review the information for documents protected by her *personal attorney-client and work-product privileges*") (emphases added).  There is no reason to believe that the Court's Order granted relief that had not been requested.

authorization to claim privilege over those records.  Therefore, the withholding of this information violates the QPO.

The Court already gave all interested parties a full and fair opportunity to intervene with respect to the Cumberland Computers for any purpose.  All MDL parties were one notice via the electronic filing system (in addition to actual notice via Gideon Cooper on behalf of all its clients) of the briefing, the Court's hearing, the Court's ruling, and the QPO.  After due consideration, the Court ruled, and the QPO defined the scope of the permissible review of Cumberland's records.  The Court has ***already ruled on these issues*** and there is no reason to revisit them now.

Neither Gideon Cooper nor its clients had any right to intervene in the production process to assert additional grounds for privilege without obtaining leave of court.  The Court should simply enforce the terms of the QPO, find that all documents withheld on grounds not previously authorized by the Court are invalid, and direct the immediate production of all information previously withheld on those grounds.  For the same reasons, the Court should hold the SSC Defendants, Ms. Atkinson, Dr. Jones, and the St. Thomas Neurosurgical Defendants in contempt for violating the QPO or should issue an order to show cause why they should not be held in contempt.

II.     **The Failure of Dr. Jones, St. Thomas Neurosurgical, and Ms. Atkinson to Seek Timely Relief from the Court Constitutes Waiver or Otherwise Requires Disclosure as a Sanction**

Dr. Jones, St. Thomas Neurosurgical, and Ms. Atkinson may argue that the Court should consider their unauthorized privilege assertions now and retroactively authorize their review of Cumberland's records in violation of the QPO.  There would be no reason to grant that relief now.

With respect to Dr. Jones and St. Thomas Neurosurgical, everyone privy to those communications – including Gideon Cooper, SSC, Ms. Atkinson, Dr. Lister, Dr. Jones, St. Thomas Neurosurgical, and Howell Allen – was aware earlier this year that the Cumberland Computers contained potentially privileged communications involving Dr. Jones and St. Thomas Neurosurgical.  Nevertheless, no one other than the SSC Defendants and Ms. Atkinson moved for relief to prevent Cumberland from producing information on the Cumberland Computers to the PSC.  Rather than seeking relief from the Court, Gideon Cooper, on behalf Dr. Jones and St. Thomas Neurosurgical, chose instead to violate the QPO by making unauthorized redactions. They never notified the PSC or the Court of this improper course of action.  Instead, they waited until the afternoon before Thanksgiving – just two weeks before the close of fact discovery – to disclose that they were inappropriately withholding records on these grounds.  Even at that, despite the PSC's explicit request, it provided a non-itemized "privilege log" that makes it functionally impossible to untangle the grounds for privilege asserted as to particular documents, many of which have been withheld entirely.  This is the height of sand-bagging.

Even under the most generous construction of the timeline, Dr. Jones and St. Thomas Neurosurgical have been on notice of these issues since at least May 2016, when their counsel elected not to seek any relief on their behalf[31] – and they likely have been on notice since January 2016, as the Court previously found relative to the SSC Defendants.[32]  Moreover, Gideon Cooper in fact reviewed and identified hundreds of documents involving Dr. Jones and St. Thomas Neurosurgical as potentially privileged, yet still did not seek relief from the Court. There is no reasonable justification why they never brought this matter to the attention of the

---

[31] Indeed, in support of its Reply brief concerning its Motion for Protective Order, Gideon Cooper identified a document on which Dr. Jones was copied.  *See* Dkt. No. 2938-1.
[32] *See* Dkt. No. 3015 at p. 6.

PSC and the Court **months ago** – at least in May as 2016 – if not before.  They were obligated to raise these up issues front, not six months later on the cusp of the fact discovery deadline.  Instead, they conducted a clandestine review that the Court did not authorize.

The unjustified delay has caused substantial prejudice to the PSC.  First, it made it impossible for the PSC to receive a complete production by the Court's December 9, 2016 fact discovery deadline.  This means that the existing common issue discovery deadlines will need to be reset, and the issue could impact the trial date and other pretrial deadlines depending on how long it takes to resolve.  Second, the delay has also caused the PSC to spend significant time and effort addressing privilege-related issues, which detracts from the PSC's ability to prepare for depositions, finish discovery, and prepare experts.  Third, these issues necessitate additional charges by the third-party vendor, which must devote time to handling redaction and withholding requests from the SSC Defendants and for hosting the documents.

As articulated in its correspondence with the PSC, the position of Gideon Cooper, Dr. Jones, and St. Thomas Neurosurgical seems to be that it is "better to ask for forgiveness than permission."  This is a cavalier approach to an Order of the Court.  There is no reason for the Court to condone violating the QPO, failing to seek timely relief (or any relief, for that matter) from the Court to review the records on behalf of Dr. Jones and St. Thomas Neurosurgical, and substantially prejudicing the PSC and the plaintiffs without good cause.  Accordingly, the Court should hold that Gideon Cooper, St. Thomas Neurosurgical, and Dr. Jones have waived the right to assert a "joint defense/common interest" privilege.  In the alternative, the Court should order complete disclosure of the materials as a sanction for their discovery misconduct.[33]

_____

[33] Finally, even if the Court were inclined to permit Dr. Jones and St. Thomas Neurosurgical retroactive relief despite violating the QPO, the Court should still impose other curative sanctions requested by the PSC, including an award of attorney's fees associated with the PSC's

For substantially the same reasons, the Court should find that Ms. Atkinson waived any right to assert additional grounds for privilege review by failing to raise them earlier, or that disclosure should otherwise be ordered as a sanction for failing to bring this matter to the Court's attention in May 2016. There is no reason to reward Ms. Atkinson for requesting a limited form of relief in May 2016 and then, unilaterally and without notice to the PSC or the Court, undertaking to prevent the PSC from accessing information in Cumberland's possession on grounds not authorized by the Court.

## III.   The Defendants Have Not Substantiated Any Claim of Privilege

Even if the Court were inclined to consider the new claims of privilege by Ms. Atkinson, Dr. Jones, and St. Thomas Neurosurgical in violation of the QPO at this late stage, they have not substantiated their claims of privilege.

### A.  Legal Standard for Asserting Privilege

A person claiming privilege bears the burden of establishing that (1) privilege applies to the communications at issue, and (2) that the privilege has not been waived.[34]  The person asserting privilege must meet both of these burdens by the preponderance of the evidence.[35]  As the First Circuit has stated, the person asserting a privilege must do so "in a timely and proper manner" that is "accompanied by sufficient information to allow the court to rule intelligently on

---

review of the privileged records, the meet and confer efforts related to those records, and litigating the instant Motion.

[34] *Gail v. New England Gas Co.*, 243 F.R.D. 28 (D.R.I. 2007) (citing *XYZ Corp. v. U.S. (In re Keeper of the Records)*, 348 F.3d 16, 22 (1st Cir. 2003)); *see also United States v. Bay State Ambulance & Hosp. Rental Serv.*, 874 F.2d 20, 28 (1st Cir. 1989); *Harpel v. Nicholson*, 2013 U.S. Dist. LEXIS 141684, at *2 (D. Mass. Oct. 1, 2013); *State ex rel Flowers v. Tenn. Trucking Ass'n Self Ins. Grp. Trust*, 209 S.W.3d 602, 616 (Tenn. Ct. App. 2006).

[35] *Amgen, Inc., v. Hoechst Marion Roussel, Inc.*, 190 F.R.D. 287, 289 (D. Mass. 2000).

the privilege claim."[36]  "The 'universally accepted means' of claiming that requested documents are privileged is the production of a privilege log."[37]  The privilege log should identify each document and the individuals who are parties to the communications, providing sufficient detail to permit a judgment as to whether the document is at least potentially protected from disclosure.[38]  The log, therefore, must include a detailed description of the documents to be protected with precise reason given for the particular objection to discovery.[39]  A failure by the party claiming privilege to adequately describe the documents at issue, to sufficiently explain the basis for the privilege, or to assert the privilege in a timely manner, may be grounds for rejecting the claim.[40]  A blanket assertion of privilege is generally insufficient.[41]

## B.  The Privilege Log is *Per Se* Inadequate

The privilege log does not and cannot substantiate the asserted claims of privilege by a preponderance of the evidence.  The descriptions are made at a high level of generality that does not justify invocation of the privileges asserted.  For example, Jean Atkinson has withheld *36 emails* collectively because they constitute "emails between Jean Atkinson and counsel containing advice or information from counsel, seeking advice or information from counsel, *or*

---

[36] *Marx v. Kelly, Hart & Hallman, P.C.*, 929 F.2d 8, 12 (1st Cir. 1991).  The PSC notes that although Tennessee law may provide the substantive basis for a claim of privilege, federal procedure, including Rule 26, governs the means by which a party may assert an underlying state law privilege.

[37] *Gail*, 243 F.R.D. at 33 (quoting *In re. Grand Jury Subpoena*, 274 F.3d 563, 576 (1st Cir. 2001)); *see also* Fed. R. Civ. P. 26(b)(5)(A)(ii) (party invoking privilege must "expressly make the claim").

[38] *Id.*

[39] *Id.*

[40] *Id.* (collecting cases); *see also Neelon v. Krueger*, Civil Action No. 12-cv-11198-IT, 2015 U.S. Dist LEXIS 29146 (D. Mass. Mar. 10, 2015) (upholding Magistrate Judge's ruling that categorical privilege log was inadequate and constituted waiver relative to putatively privileged documents); *Harpel v. Nicholson*, Civil Action No. 12-10280-RWZ, 2013 U.S. Dist. LEXIS 141684 (D. Mass. Oct. 1, 2013).

[41] *In re Grand Jury Subpoena (Mr. S.)*, 662 F.3d 65, 71 (1st Cir. 2011).

providing information to counsel for the purpose of obtaining advice from counsel, *or* emails containing information prepared in anticipation of litigation."[42]   The "Senders/Recipients" are listed as "Jean Atkinson, counsel, Kim Bowlin, SSC members, Calisher & Associates, STOPNC/Howell Allen, ***and/or*** Dr. Jones."  The "Privilege Asserted" is listed as "attorney-client privilege; work product doctrine; common interest/joint defense privilege." From this log, it impossible to know who sent or received a given email, the subject matter of that particular email, the date on which it was sent, and the specific privilege (or privileges) being asserted with respect to it.  The log suggests that some of the emails may not even have counsel copied on them.

Most of the emails referenced in both tables are similarly inadequate.  For the reasons explained above, the Court should not permit the SSC Defendants, Ms. Atkinson, St. Thomas Neurosurgical, or Dr. Jones any further opportunities to attempt, yet again, to substantiate their claims of privilege.  The Court should find that the privilege log is insufficient, that these entities have not met their burden to show that a privilege attaches to each communication by a preponderance of the evidence, and that complete production of these materials is therefore warranted.

### C.  Even on the Merits, the Privilege Assertions Fails.

#### 1.   The Common Interest Exception to Waiver Does Not Apply

Even if there were a basis to address the substance of these joint defense/common interest assertions – which there is not – the SSC Defendants' position is wrong as a matter of substance.

The SSC Defendants, St. Thomas Neurosurgical, and Dr. Jones contend that a "common interest/joint defense privilege" applies.  The seminal Tennessee case on this issue is *Boyd v.*

---

[42] Table 2, p. 35 of Privilege Log (emphases added)

*Comdata Network*, in which the Tennessee Court of Appeals looked to the Restatement (3d) of the Law Governing Lawyers, § 76 and the law in other jurisdictions adopting similar doctrines.[43] Under the Restatement, a "community of interest" privilege, often referred to as a "common interest privilege," applies to matters in which entities with a "common interest" are "represented by separate lawyers."[44]   Under that scenario, the clients or their respective attorneys can exchange information that otherwise qualifies as privileged without breaking attorney-client privilege relative to third parties other than the other client to whom the disclosure is made.[45] Accordingly, the common interest privilege is not actually an independent basis for privilege; rather, it is an exception to the general rule that the attorney-client privilege is waived when privileged information is disclosed to a third party.[46]   Any client to the communication may invoke the privilege, unless it has been waived by the client who made the communication.[47]

Here, the common interest privilege in *Boyd* cannot apply because Dr. Jones and St. Thomas Neurosurgical were not separately represented.   At least on the redacted communications for which the PSC has identified a sender and recipient, Gideon Cooper served as counsel for both clients.  The Court need not consider the issue any further.

Regardless, Gideon Cooper has not shown why the common interest exception otherwise would apply to its clients.   The privilege applies only to communications "intended and

---

[43]*Boyd*, 88 S.W.3d at 213-215.

[44] *See* Restatement 3d of the Law Governing Lawyers, § 76; *see also* cmt a: "This rule differs from the co-client rule § 75 in that the clients are represented by separate lawyers."); *Max-Planck-Gesellschaft v. Whitehead Inst. For Biomed. Research*, Civil Action No. 09-11116-PBS, 2010 U.S. Dist. LEXIS 50947 at *14 (D. Mass. May 20, 2010).

[45] *Id.*

[46] *Boyd*, 88 S.W.3d at 214 n.15; *see also Ken's Foods, Inc. v. Ken's Steak House*, 213 F.R.D. 89, 93 (D. Mass. 2002) (stating that the privilege "allows attorneys facing a common litigation opponent to exchange privileged communications and attorney work product in order to prepare common defense without waiving either privilege") (internal quotation and brackets omitted)..

[47] Restatement at § 76(1).

reasonably believed to be part an on-going and joint effort to set up a common legal strategy."[48]
The party asserting common interest protection must also show that (1) the otherwise privileged
information was disclosed to due to actual or anticipated litigation, (2) that the disclosure was
made for the purpose of furthering a common interest in the actual or anticipated litigation, (3)
that the disclosure was made in a manner not inconsistent with maintaining its confidentiality
against adverse parties, and (4) that the person disclosing the information has not otherwise
waived its attorney-client privilege for the disclosed information.[49]

As a threshold matter, no one has put forward evidence that any of the communications at
issue were part of an "on-going and joint effort to set up a common legal strategy."  As discussed
above, St. Thomas Neurosurgical, Dr. Jones, and the SSC Defendants have been sued separately
by separate plaintiffs in separate lawsuits.  The facts relative to each clinic vary dramatically
based on clinic-specific purchasing decisions by different people at different times for different
reasons.  If cases against each clinic are tried to a jury, they will be tried separately, and Dr.
Jones and St. Thomas Neurosurgical will have no role whatsoever to play in the trial of any SSC
matter.  Furthermore (and not surprisingly), there is no indication that these parties entered into a
joint defense agreement, or that these parties typically communicated with counsel jointly rather
than separately.  The privilege log, which contains only generalized assertions of privilege, is
insufficient to establish privilege on a document-by-document basis, which is what the present
circumstances would require.  It is not even clear from the log who was privy to a particular
communication.  The blanket assertion of privilege does not meet the burden and the Court
should therefore order disclosure on that basis as well.

---

[48] *Boyd*, 88 S.W.3d at 214
[49] *Id.* at 214-15.

Regardless, the court has *already* found that the SSC Defendants waived all claims of privilege over these records, which means that they cannot demonstrate the fourth element under *Boyd*.   Indeed, in *Boyd*, the Tennessee Court of Appeals considered whether Comdata could assert a "common interest" privilege over communications with third party IPS, with whom Comdata had considered into a joint defense agreement.   In finding that defendant Comdata could assert the privilege, as to the waiver element, the court looked to whether "Comdata had waived its privilege" with regard to the communications at issue, indicating that the possibility of waiver by IPS was not relevant to the Court's determination.[50]   Similarly, here, the Court should focus on whether the SSC Defendants waived privilege over the communications, and should therefore find that the PSC may access those communications with respect to the SSC Defendants because of SSC's waiver.

Again, the privilege log does not even approach justifying invocation of this privilege relative to any particular document.

## 2.   The Co-Client Privilege Does Not Apply or Has Been Waived

St. Thomas Neurosurgical, Dr. Jones, and (it appears) Jean Atkinson contend that they are entitled to assert privilege as co-clients with the SSC Defendants.   As a starting point, it does not appear that Tennessee has adopted the Restatement approach with respect to co-clients, nor has the PSC identified Tennessee case law specifically addressing this issue.   If the Court were to adopt the Restatement approach (set forth at § 75 of the Restatement), it indicates that if two or more people are jointly represented by the same lawyer in a matter, a communication of either co-client that otherwise qualifies as privileged and relates to matters of common interest is

---

[50] *Boyd*, 88 S.W.3d at 217.

privileged as against third persons.[51]  Any co-client may invoke the privilege, unless it has been waived by the client who made the communication.[52]

     In determining whether two clients of a lawyer are co-clients, the Court must examine whether the clients have expressly or impliedly agreed to common representation in which confidential information will be shared.[53]  However, the mere fact that clients of the same lawyer may share a common interest does not necessarily mean that they are co-clients.[54]  Whether a co-client relationship existed is essentially a matter of contract (express or implied), and the Court may examine all relevant factors, such as, *inter alia*, the conduct of those clients relative to each other, the terms of any contractual relationship they may have had, whether the parties generally communicated privately with the lawyer on a separate basis, whether the parties reasonably expected that they could access separate communications between the other party and counsel, and the relationship between common interests and the communications at issue.[55]

     Here, the SSC Defendants have not substantiated why they should be treated as "co-clients" of any other entity with respect to any of the communications at issue.  As discussed in the previous section, Dr. Jones, St. Thomas Neurosurgical, and the SSC Defendants operated separate clinics that treated separate patients and made separate and independent decisions to purchase MPA from NECC at different times for different reasons.  They share no corporate relationships, they are not sued together in any case against the SSC Defendants, and there was never any prospect that they would be sued by the same plaintiff.  No plaintiff has alleged (nor is the PSC aware of) any factual connection among them.  Neither Dr. Jones nor the St. Thomas

---

[51]  *See* Restatement 3d of the Law Governing Lawyers, § 75.
[52]  *Id.*
[53]  *See* cmt b. to Restatement § 75.
[54]  *Id.*
[55]  *Sky Valley Ltr. P'ship v. ATX Sky Valley*, 150 F.R.D. 648, 652-53 (N.D. Ca. 1993).  The PSC has not identified Tennessee authority specific to this issue.

Neurosurgical Defendants will have any role to play at a trial of the SSC Defendants (and vice-versa).  Simply put, the cases against these entities are factually distinct.  Furthermore, the PSC is unaware of any joint defense agreement or explicit contractual agreement as among Dr. Jones, SSC, and St. Thomas Neurosurgical with regard to attorney communications.  The SSC Defendants have not shown that they reasonably expected to be privy to St. Thomas Neurosurgical's communications or to Dr. Jones' separate communications with Gideon Cooper regarding the fungal meningitis catastrophe and subsequent lawsuits that were filed.  Dr. Jones, St. Thomas Neurosurgical, and the SSC Defendants are not, never were, and never expected to be co-clients in any fungal meningitis lawsuit.

More broadly, it is not enough for the SSC Defendants to claim blanket privilege over all attorney communications that involve Dr. Jones and St. Thomas Neurosurgical.  They also need to show, on a document-by-document-basis, why each communication relates to a common interest and why each client would have had a reasonable expectation that the subject matter of the communication would be shared among all of them.  Plainly, they have not done so, and the Court should therefore order a complete production.

Finally, as to Ms. Atkinson, it is non-sensical that Ms. Atkinson could hold a "personal privilege" over communications on which other people are copied.  If additional individuals are copied on a given communication, those communications are not "personally privileged."  She or the person sending the email broke any personal privilege by including a non-attorney other than her on the communication.  Furthermore, Ms. Atkinson has not demonstrated, and presumably will not be able to demonstrate, that she held some type of "co-client" or "joint defense" privilege in communications on which others were copied.  She was never sued individually in any fungal meningitis case.  Furthermore, there is no indication that she had any

separate contractual arrangement with Gideon Cooper, that she was covered by (or represented under) any separate policy of insurance other than those applicable to SSC as a whole, or that any of the communications at issue actually involved some legal issue that was specific to her rather than to SSC's operations generally.

Again, a blanket assertion of privilege is plainly insufficient to meet her burden. Accordingly, even if the Court were inclined to reach the merits of Ms. Atkinson's position, the Court should order production of all communications with Ms. Atkinson over which she has asserted an unsubstantiated claim of privilege.

### IV.    Documents Not Identified on the Privilege Log

The Court should also hold that any redactions not identified on the privilege log must be produced in un-redacted form.  This at least includes the documents attached as **Exhibit G** hereto.  The failure to assert privilege and to substantiate the claim of privilege requires the disclosure of these records without further analysis.  Regardless, as reflected in the documents, they involve communications with the Executive Committee, Kim Bowlin, and the Calishers, and therefore do not qualify as privileged on either of the grounds authorized by the Court.

### V.    Additional Sanctions and Alternative Relief

The PSC maintains that the Court should order immediate production of all communications withheld on unauthorized grounds.  However, to the extent that any communications are not otherwise ordered to be produced immediately, the Court should order Gideon Cooper to produce the documents for *in camera* inspection as to whether the documents meet either of the two grounds for withholding that the Court has allowed.  The Court should also order, as a sanction, the payment of the PSC's reasonable attorney's fees and expenses in having to bring this motion.

## CONCLUSION

For the reasons stated herein, the Motion for Sanctions and for Order to Show Cause should be granted, all documents at issue should be produced to the PSC in un-redacted form, and the Court should award reasonable fees and expenses to the PSC.

Date:  December 15, 2016                Respectfully submitted:

**/s/ J. Gerard Stranch, IV**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@bsjfirm.com
beng@bsjfirm.com
aorlandi@bsjfirm.com
*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Annika K. Martin
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
250 Hudson Street, 8th Floor
New York, NY  10013
Telephone:  212/355-9500
Facsimile:  212/355-9592
akmartin@lchb.com

mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone:  404/451-7781
Facsimile:  404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone:  540/342-2000
Facsimile:  540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## <u>CERTIFICATE OF SERVICE</u>

I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system on December 15, 2016, and that a copy of this document has been re-filed electronically on December 16, 2016 pursuant to the Notice of Stipulation Concerning Extension of Page Limit.  Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   December 16, 2016

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV
