# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC., PROCUCTS LIABILITY LITIGATION | ) ) ) |
| | ) MDL No.:  2419 |
| | ) Master Dkt No.: 1:13-md-2419-RWZ |
| | ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| *Bray v. Ameridose, LLC, et al.*, No. 1:13-cv-12596; | ) |
| *Collins v. Ameridose, LLC, et al.*, No. 1:13-cv-12580; | ) |
| *Graham v. Ameridose, LLC, et al.*, No. 1:13-cv-12581; | ) |
| *Savercool v. Ameridose, LLC, et al.*, No. 1:13-cv-12583; | ) |
| *Willis v. Ameridose, LLC, et al.*, No. 1:13-cv-12597. | ) |
| | ) |

## PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO THE SSC DEFENDANTS' MOTION TO AMEND AND CERTIFY ORDER OF INTERLOCUTORY APPEAL

The Plaintiffs' Steering Committee ("PSC") hereby files this Response in Opposition to Specialty Surgery Center, PLLC, Dr. Kenneth Lister, and Kenneth Lister, MD, PC's (collectively, the "SSC Defendants") Motion to Amend Order on Motion to Dismiss for Failure to State a Claim (Dkt. No. 3217) (the "Motion").  In the Motion, the SSC Defendants ask the Court to amend its opinion to include language authorizing a request for interlocutory appeal of the Court's November 17, 2016 Order.  The Motion should be denied because the Court's November 17, 2016 Order does not meet the requirements for interlocutory appeal under 28 U.S.C. § 1292(b).

## BACKGROUND

### I.    The Court's Earlier Orders Relating to the Branstetter Actions

The Motion pertains to five cases in which the plaintiffs originally filed complaints asserting only claims under the Tennessee's Product Liability Act, Tenn. Code Ann. § 29-29-101 *et seq.* ("TPLA") and subsequently filed amended complaints to add claims under the Tennessee

1

Health Care Liability Act ("THCLA") that included certificates of good faith.  The parties have referred to these five cases as the "Branstetter Actions."[1]

On January 10, 2014, the SSC Defendants moved for dismissal of the Branstetter Actions (among others), contending that the THCLA obligated those plaintiffs to file a certificate of good faith with the original complaint.[2]  The parties briefed that issue extensively.[3]  On August 29, 2014, the Court held that the THCLA did not require dismissal of cases in which the plaintiffs filed an initial complaint alleging only products liability claims and later filed a complaint that added a THCLA claim and included a certificate of good faith.[4]  Essentially, the Court ruled that the Branstetter Actions were not subject to dismissal relative to the THCLA's good faith certificate requirement.

Undaunted, on September 12, 2016, the SSC Defendants filed a Rule 12(b)(6) Motion to Dismiss,[5] seeking dismissal of 15 of the 24 pending cases against it, including the five Branstetter Actions, for failure to comply with the good faith certificate requirement.  In most relevant part, the motion sought dismissal of the five Branstetter Actions on the same grounds previously rejected by the Court in its August 29, 2014 ruling.  The parties briefed this issue extensively yet again.[6]  On November 17, 2016, the Court held, in relevant part, that it was the law of the case that the THCLA did not require plaintiffs in the Branstetter Actions to file a

---

[1] Those five cases are *Bray v. Ameridose, LLC, et al.*, No. 1:13-cv-12596; *Collins v. Ameridose, LLC, et al.*, No. 1:13-cv-12580; *Graham v. Ameridose, LLC, et al.*, No. 1:13-cv-12581; *Savercool v. Ameridose, LLC, et al.*, No. 1:13-cv-12583; and *Willis v. Ameridose, LLC, et al.*, No. 1:13-cv-12597.
[2] *See* Dkt. No. 770.
[3] *See* Dkt. Nos. 771, 772, 1040, 1112, and 1254.
[4] Dkt. No. 1360 at pp. 16-21.
[5] Dkt. No. 3086.
[6] *See* Dkt. Nos. 3087, 3100, 3121, 3122, 3137, 3168, and 3183.

certificate of good faith with the original complaint.[7]   Although the Court ruled that the Branstetter Actions could therefore proceed, the Court also held that the other 10 actions subject to the motion should be dismissed.

Following the Court's ruling, 14 cases against the SSC Defendants remain, including the five Branstetter Actions and another nine cases on which the SSC Defendants did not move for dismissal.

## II.   The Relationship Between the Court's November 17, 2016 Order and the Bellwether Trial Process

Under the bellwether selection process ordered by the Court, the parties were ordered to select eight bellwether trial cases on August 29, 2016 (four each), to exercise strikes of four of those eight cases (two each) on September 13, 2016, and to agree upon (or brief) which two of the four remaining cases should be tried.[8]  After designations and strikes, three cases remained in the bellwether pool, including *Savercool*, *Smith*, and *Nealon*.[9]   The *Savercool* case is a Branstetter Action that the Court's November 17, 2016 Order has allowed to proceed.  The *Smith* case was not subject to the SSC Defendants' Rule 12 motion and, therefore, is also proceeding. The *Nealon* case is among the 10 cases that the Court dismissed in its November 17, 2016 Order.

Under the bellwether selection schedule, by process of elimination, both *Savercool* and *Smith* now necessarily will serve as the two bellwether trial cases following the dismissal of *Nealon*.  *Savercool* is a confirmed fungal meningitis case, whereas *Smith* involves infections

---

[7] Dkt. No. 3188.
[8] Dkt. No. 3016.
[9] *See* Dkt. Nos. 3080, 3081, 3090, and 3091.  The Defendants identified the *Nealon*, *Norris*, *Smith*, and *Willis* matters as bellwether candidate cases.  The Plaintiffs identified the *McDavid*, *Bumgarner*, *Smith*, and *Savercool* matters as bellwether candidate cases.  The SSC Defendants and the Calisher defendants jointly struck *McDavid* and *Bumgarner*, while the PSC struck *Norris* and *Willis*.  Because both parties designated *Smith*, there were only seven distinct cases in the pool, four of which were stricken, leaving three cases (*Savercool*, *Smith*, and *Nealon*) as potential bellwether trial candidates.

other than fungal meningitis.  Thus, *Savercool* is the only bellwether trial case that will involve a confirmed fungal meningitis infection.  The parties are actively engaged in case-specific discovery in both cases, with a current fact discovery deadline of January 20, 2017, expert disclosure deadlines that conclude on April 28, 2017,[10] and an anticipated trial date in mid-2017.

## LEGAL STANDARD

Before an order can be certified for possible interlocutory appeal under § 1292(b), "(1) an order must involve a controlling question of law, (2) as to which there is substantial ground for difference of opinion, and (3) immediate appeal from the order may materially advance the ultimate termination of the litigation."[11]

Certifications under § 1292(b) are not looked upon with favor by the First Circuit.[12]  The First Circuit has indicated that "[o]nly rare cases qualify" for interlocutory appeal under § 1292(b) and that it should therefore be "used sparingly and only in exceptional circumstances[.]"[13]  Accordingly, "the instances where section 1292(b) may appropriately be utilized will, realistically, be few and far between."[14] Furthermore, the First Circuit has stated

---

[10] *See* Dkt. No. 3128.
[11] *United States ex rel. Banigan v. Organon USA, Inc.*, Civil Action No. 07-12153-RWZ, 2012 U.S. Dist. LEXIS 127421, at *8 (D. Mass. Sept. 7, 2012) (Zobel, J.) (internal quotation marks omitted) (denying request for interlocutory appeal); *see also Smith v. Morbark Indus., Inc.*, 733 F. Supp. 484 (D.N.H. 1990) ("[N]either the fact that appreciable trial time may be saved, nor that the issue sought to be raised involves denial of a motion to dismiss . . . provides sufficient reason for certification of an interlocutory appeal pursuant to 28 U.S.C. § 1292(b).  Considerably more by way of exceptional circumstances is required."); *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64, 70 (D.R.I. Oct. 14, 1988) (finding that certification of state law issue was not justified because First Circuit was in no better position than the district court to adjudicate the issue).
[12] *Lawson v. FMR LLC*, 724 F. Supp. 2d 167, 168 (D. Mass. 2010).
[13] *In re San Juan Dupont Plaza Hotel Fire Litig.*, 859 F. 2d 1007, 1010 n.1 (1st Cir. 1988).
[14] *Id.*

4

that it employs "a general rule prohibiting interlocutory appeals from the denial of a motion to dismiss.[15]

When deciding whether to authorize an interlocutory appeal under § 1292(b), district courts should remember that a "difference of opinion" over "a controlling question of law" does not arise every time a court is asked to apply a particular legal principle to a novel fact pattern.[16] Rather, "the issue must relate to the actual legal principle itself, not the application of that principle to a particular set of facts."[17]

## APPLICATION

Neither of the criteria for an interlocutory appeal is met here.

## I.      There is Not a Substantial Ground for Difference of Opinion

The Motion seeks to re-litigate an issue that this Court already adjudicated definitively and on which there is no substantial ground for difference of opinion.  As it related to the Branstetter Actions, the Court's August 29, 2014 opinion was well-reasoned and consistent with decisions of Tennessee and federal courts that have applied the THCLA (or its predecessor) under similar factual and procedural circumstances.  Citing (appropriately) to Tennessee Court of Appeals precedent, the Court recognized that the THCLA did not require dismissal of the Branstetter Actions on the grounds urged by the defendants.[18]  In their motion, the SSC Defendants simply reiterate some of the same substantive arguments that the Court has now

---

[15] *Caraballo-Seda v. Municipality of Hormigueros*, 395 F.3d 7, 9 (1st Cir. 2005) (citing *McGillicuddy v. Clements*, 746 F.2d 76, 76 n.1 (1st Cir. 1984)).

[16] *United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 92 (D. Mass. 2010).

[17] *Id.*

[18] *See* Dkt. No. 1360 at pp. 16-20 (citing, *inter alia*, *Parker v. Portland Nursing & Rehab.*, No. M201-02633-COA-R9-CV, 2012 WL 4776800, at *1-*2 (Tenn. Ct. App. Aug. 30, 2012), *Barnett v. Elite Sports Medicine*, No. M2010-00618-COA-R3-CV, 2010 WL 5289669, at *5 (Tenn. Ct. App. 2010); *Truth v. Eskioglu*, 781 F. Supp. 2d 630, 635 n. 10 (M.D. Tenn. 2011); and *Fleming v. Saini*, No. W2013-01540-COA-R3-CV, 2014 WL 2592548, at *5 n.7 (Tenn. Ct. App. June 10, 2014).)

rejected twice, without identifying any controlling authority or even any persuasive authority to show why the Court got this issue wrong.  As a matter of substance, there is no need to certify this issue because there are not substantial grounds for a difference of opinion.

## II.  Certification Would Not Materially Advance the Litigation

Certification will not materially advance the termination of this litigation.[19]  To the contrary, it will unfairly delay justice for plaintiffs in the Branstetter Actions indefinitely, upend the Court's bellwether trial schedule, and prolong the MDL.

The Branstetter Actions have been pending since 2013 – nearly four years.  An interlocutory appeal will likely tie those cases up for at least another year (or more).  If the Plaintiffs prevail on appeal, the case will remanded to this Court and the cases will have to pick up where they left off, delaying adjudication of the merits of their claims even further.

Furthermore, the *Savercool* matter is now a bellwether trial case in which the parties are actively engaged in case-specific discovery, including fact discovery and expert discovery.  If the Court were to certify an interlocutory appeal, it could waste all of the case-specific discovery and associated attorney time and expense that has been incurred to prepare that matter for trial.   It would also throw a wrench into the bellwether trial schedule by effectively staying one of the two bellwether trial cases indefinitely pending appeal.  The parties therefore would be left to try only *Smith*, which does not involve a confirmed fungal meningitis infection.  Trying only one case in a single category would frustrate a key function of the bellwether trial mechanism: to provide guidance concerning the merits of particular cases (including confirmed fungal infection cases) and to provide a metric for valuing particular classes of cases.

---

[19] The SSC Defendants' brief seems to be predicated on the assumption that the Court will stay the five Branstetter Actions.  The SSC Defendants contend that an appeal will allow the parties to know which cases are "live SSC cases," and that dismissal "will avoid using significant time and resources litigating these cases."

Also, if the Court were to stay the Branstetter Actions pending an interlocutory appeal, there would still be nine cases against the SSC Defendants left to adjudicate, including one bellwether trial matter.  It would be remarkably inefficient to create a disjoint between the five Branstetter Actions and those nine cases.  If the First Circuit refuses certification or takes the issue but rules (as it should) in favor of the Plaintiffs in the Branstetter Actions, this would splinter the MDL proceedings relative to the cases against the SSC Defendants.  The Court would be left to adjudicate one set of cases against the SSC Defendants now and another set of cases (the Branstetter Actions) later.

Even if the Branstetter Actions were not initially stayed pending appeal, there would be substantial prejudice to Ms. Savercool, the other plaintiffs in Branstetter Actions, and the remaining plaintiffs.  During the discovery phase and trial preparation phase, the PSC and Ms. Savercool's attorneys would be forced to devote substantial time and resources to the petition for interlocutory appeal and the underlying appeal itself.  This would detract from their trial preparation at the most crucial juncture, causing prejudice both to Ms. Savercool and to the plaintiffs in non-bellwether cases, who are looking to *Savercool* for guidance concerning the merits of their own cases.  These circumstances could result in a delay of the *Savercool* trial, which would prolong the MDL and delay justice for Ms. Savercool and the remaining plaintiffs.  Moreover, it would not save the parties any time and expense to certify an appeal – to the contrary, it would multiply the proceedings by forcing the PSC and Ms. Savercool to fight on two fronts simultaneously.  Similarly, plaintiffs in the Branstetter Actions also would be forced to litigate on two fronts, particularly when the Court orders case-specific discovery and sets a trial date in those matters.

Remarkably, the SSC Defendants' brief addresses this crucial element of certification only in cursory fashion.  The SSC Defendants do not even acknowledge that *Savercool* is a bellwether case, let alone address the detrimental impact of granting an interlocutory appeal on the bellwether schedule.  They are left to argue that a ruling from the First Circuit dismissing the five Branstetter Actions with prejudice on appeal (an unlikely result) would "avoid using significant time and resources litigating these cases" because it "obviously" would "end the actions."  But that bare justification is an argument that could be made with respect to the denial of ***any*** motion to dismiss.  That is precisely why the First Circuit has a general rule against permitting appeals from Rule 12 motions in all but exceptional circumstances – otherwise, the exception would swallow the rule.  The SSC Defendants do not even argue that this case presents an exceptional circumstance.  Therefore, they have offered the Court no valid basis – nor is there one – on which to certify an appeal from the Court's November 17, 2016 Order as it relates to the Branstetter Actions.

In light of these considerations, there is no need to upend both the bellwether trial process and the MDL to give the SSC Defendants a third bite at the apple.  The far more sensible and efficient approach is to keep the bellwether trial process in place, to allow both *Savercool* and *Smith* to proceed to bellwether trials, and more generally to permit the 14 remaining cases to proceed together within the MDL.  There are no exceptional circumstances for engaging in piecemeal litigation here – nor have the Defendants offered any valid justification for doing so.  Thus, there is no reason for this Court to abrogate the general rule within the First Circuit that an interlocutory appeal of a motion to dismiss is inappropriate, and the Motion should be denied.

## CONCLUSION

For the reasons stated herein, the SSC Defendants' Motion should be denied.

Date:  December 21, 2016          Respectfully submitted,

**/s/ J. Gerard Stranch, IV**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@bsjfirm..com
beng@bsjfirm.com
aorlandi@bsjfirm.com

*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415/956-1000
Facsimile:  415/956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW

9

18930 W. 10 Mile Road
Southfield, MI 48075
Telephone: 248/557-1688
Facsimile: 248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone: 617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor
Atlanta, GA 30328
Telephone: 404/451-7781
Facsimile: 404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com

*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, J. Gerard Stranch, IV, hereby certify that I caused a copy of the foregoing document to be filed electronically via the Court's electronic filing system. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of the Court's electronic filing system.

Date:   December 21, 2016.

/s/ J. Gerard Stranch, IV
J. Gerard Stranch, IV