UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | |
| | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Suits Naming Specialty Surgery Center, Crossville, PLLC | ) ) | |
| | ) | |

**TENNESSEE CLINIC DEFENDANTS' <u>OPPOSITION</u> TO**
*PSC'S MOTION FOR SANCTIONS AND*
*FOR ORDER TO SHOW CAUSE [DOC. 3232]*

Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"); Howell Allen Clinic, a Professional Corporation; John Culclasure, MD; Debra Schamberg, RN, CNOR; Specialty Surgery Center, PLLC ("SSC"); Kenneth Lister, MD, PC; Kenneth R. Lister, MD; Jean Atkinson, RN; and Donald Jones, MD (collectively "the Tennessee Clinic Defendants") submit this <u>Opposition</u> to the *PSC's Motion for Sanctions and for Order to Show Cause* [Doc. 3232].

## INTRODUCTION

The PSC presents two issues for the Court to decide:

1. Does the waiver of attorney-client privilege by one client (SSC) also waive privilege for SSC's co-clients (STOPNC, Howell Allen, Dr. Jones, and Jean Atkinson)?

2. Should the Court sanction STOPNC, Howell Allen, Dr. Jones, and Jean Atkinson (or their lawyers) for asserting privilege over joint attorney-client communications?

The first question is a matter of law for the Court to decide, applying the commentary and case law. The only Tennessee court to squarely consider this issue held that waiver of privilege by one client <u>does not</u> operate to waive privilege for co-clients.[1] This is the "prevailing" position adopted by numerous courts and the Restatement.[2] It is the position the Defendants followed in asserting privilege during this document production. Simply put, the law supports the Defendants' position on the first question.

The second question asks whether the parties were "substantially justified" in asserting privilege over these documents.[3] "When a dispute involves differing interpretations of the governing law, opposition is substantially justified unless it involves an unreasonable, frivolous or completely unsupportable reading of the law."[4] If the Court answers the first question in favor of the Defendants, the position was substantially justified (and correct). Either way, their position is reasonable, not frivolous, and supported by law. The below recitation of the law establishes that. Even if the Court disagrees with the Defendants' position on privilege, sanctions are certainly inappropriate.

---

[1] *Anderson v. Clarksville Montgomery Cty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546, 547 (M.D. Tenn. 2005).
[2] *In re Teleglobe Communications Corp. v. BCE Inc.*, 493 F.3d 345, 362-63 (3d Cir. 2007) ("[W]aiving the joint-client privilege requires the consent of all joint clients.") (citing Restatement (Third) of the Law Governing Lawyers §75); *F.D.I.C. v. Ogden Corp.*, 202 F.3d 454, 461 (1st Cir. 2000); *see also ZVI Const. Co., LLC v. Levy*, 60 N.E.3d 368, 379 (Mass. Ct. App. 2016) (noting this is the prevailing view).
[3] *See* FED. R. CIV. P. 37.
[4] *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 265 (S.D.N.Y. 1995) (internal citations omitted).

1

## BACKGROUND

This motion is the latest effort by the PSC to uncover a "smoking gun" document that does not exist.[5] The PSC believes (or hopes) that SSC conspired with its lawyers to update its formulary in 2013 to cover the fact that Depo-Medrol was not on it at the time of the outbreak. Putting aside the fact that this has zero to do with the decision to purchase from NECC – the central issue in the case – there simply is no smoking gun in the documents produced to-date or withheld for privilege.[6]

Instead of finding a smoking gun, the search has extended the "common" fact discovery deadline more than 18 months, required additional depositions, hundreds of attorney hours, tens of thousands of pages of additional document review, and a dozen briefs on formulary-related issues. After all of this, the PSC has uncovered nothing to support this conspiracy theory.

Below is the background to this most recent dispute.

### Subpoena to CMC and Privilege Dispute

On January 29, 2016, the PSC issued a subpoena to Cumberland Medical Center ("CMC") for information on computers SSC sold to CMC.[7] After receiving the subpoena, counsel for SSC promptly contacted CMC to ask whether the computers contained any

---

[5] To the extent the Court believes it would be helpful, the Defendants have no objection to an *in camera* review of the disputed documents. This will demonstrate not only the clear application of privilege, but the lack of true relevance (or admissibility) of the documents at issue.

[6] For one thing, for the PSC's belief to be true, SSC's counsel would have had to discover the 2012 formulary did not contain Depo-Medrol, conspire with SSC and Atkinson/Lister to modify it secretly and without documentation, intentionally withhold the old formulary from production, knowingly manipulate the litigation hold procedures in an attempt to avoid detection, and tell everyone to lie about it under oath. Or, maybe the PSC believes SSC's staff (including Lister and Atkinson) did this all on their own, and their lawyers were none the wiser. Both theories are ludicrous, and continue to be a waste of everyone's time and money.

[7] Doc. 2617.

communications between SSC and counsel.[8] Counsel for CMC eventually confirmed the computers <u>did</u> contain communications between SSC and counsel but would not provide information like the identity of the senders and recipients, leaving counsel stuck knowing that privileged communications existed on the computers but not knowing anything else about them.[9]

Recognizing attorney-client communications were on the computers, the PSC first *agreed* SSC *could* review the information on the computers for privilege before production.[10] The PSC later reversed course and took the position that SSC waived privilege by selling the computers.[11] [12] Left with computers that had attorney-client communications on them but without knowing specifics, SSC prophylactically moved for a protective order, asking the Court to find that SSC and Ms. Atkinson had not waived privilege with the sale.[13] That led to extensive briefing on whether the sale constituted waiver.[14]

Pertinent here, in briefing the waiver issue, SSC noted:

> **Many of the attorney-client communications at issue are not strictly between SSC and its attorneys.** Examples are included with Exhibit 1. Counsel for SSC also represents Ms. Atkinson and Dr. Lister. **Many courts agree that, in instances of joint representation, waiver of attorney-client privilege by one client *does not* waive the privilege as to *all* clients.** *E.g.*, *In re: Teleglobe Commc'ns Corp.*, 493 F.3d 345, 379-80 (3d Cir. 2007). Thus, even if the Court finds that SSC has waived attorney-client

---

[8] *See* affidavit of Kent Krause at Doc. 2938-8.
[9] *See* email exchange between counsel for SSC and counsel for CMC at Doc. 2938-5; Cline Affidavit ¶ 7 attached as Exhibit 1.
[10] *See* affidavit of Kent Krause at Doc. 2938-8.
[11] *See* affidavit of Kent Krause at Doc. 2938-8.
[12] Important to this response, STOPNC, Howell Allen, and Dr. Jones had no role in the sale of SSC's computers to CMC, and the PSC never asserted that SSC's waiver of privilege operated to waive privilege for STOPNC, Howell Allen, or Dr. Jones. Cline Aff. ¶ 9 (Ex. 1); *see also* affidavits of Dr. Jones and Scott Butler attached as Exhibits 2 and 3.
[13] Doc. 2906.
[14] Docs. 2905, 2906, 2907, 2920, 2921, 2941, 2938.

privilege, Dr. Lister and Ms. Atkinson can continue to assert the privilege.[15,16]

## The Protective Orders

The Court found that SSC waived attorney-client privilege and work-product protection when it sold the computers to CMC.[17] But, the Court ruled that Jean Atkinson had <u>not</u> waived her privileges because she had no role in the sale of the computers.[18] The Court also ruled that SSC had <u>not</u> waived the peer review or quality improvement privileges.[19] **Nothing in the order addressed what would happen if communications copying SSC's co-clients in the MDL arose during review of the CMC materials.** The parties entered into an agreed-upon qualified protective order.[20] The qualified protective order also did not address communications copying SSC's co-clients.

The document production ensued with SSC and Jean Atkinson (through counsel) reviewing the materials on the CMC computers before production to the PSC.

## Review of Materials on CMC Computers

The search terms chosen by the PSC to search the CMC computers returned tens of thousands of pages of documents.[21] This required extending the deadlines for completing review.[22] CMC produced documents to the Tennessee Clinic Defendants for

---

[15] Doc. 2955 at 15 (emphasis added).
[16] The PSC's motion quotes a single sentence from the original briefing on Ms. Atkinson's personal privilege to advocate that the Tennessee Clinic Defendants never mentioned that her "personal privilege" may extend to communications with her that copied others, and completely ignores this paragraph.
[17] Doc. 3015 at 5-9.
[18] Doc. 3015 at 11.
[19] Doc. 3015 at 9-11.
[20] Doc. 3030.
[21] There were actually well in excess of 200,000 pages of documents for review. The parties were able to agree to exclude much of this to get the review down to about 70,000 pages, but excluding the pages took a significant amount of work in and of itself. Cline Aff. ¶ 11 (Ex. 1).
[22] *See* Docs. 3096 and 3097.

review on a rolling basis in three batches. The first two batches <u>did not</u> contain any attorney-client communications.[23]

The third (and last) batch came to the Defendants for review on October 21, 2016.[24] [25] **This was the first time the Tennessee Clinic Defendants learned that the computers had attorney-client communications with STOPNC, Howell Allen, and Dr. Jones, which also copied SSC.**[26]

Counsel researched this issue and deliberated on what to do, and ultimately counsel concluded that SSC's waiver of privilege <u>did not</u> waive privilege for STOPNC, Howell Allen, and Dr. Jones.[27] Faced with privileged communications not addressed in the briefing or orders, counsel considered whether it was necessary to file some sort of motion to assert privilege on behalf of STOPNC, Howell Allen, and Dr. Jones but found no law, rule, or standing order addressing this situation.[28] So, counsel followed the normal course and included these privileged communications on the privilege log.[29]

The Tennessee Clinic Defendants completed review of the third and final batch of documents and made them available to the PSC on November 17. [30] [31] The Tennessee Clinic Defendants produced a detailed 40+ page privilege log four business days later.[32],[33]

---

[23] Cline Aff. ¶ 11 (Ex. 1).
[24] Cline Aff. ¶ 11 (Ex. 1).
[25] This was actually about eight days later than required by the scheduling order entered by the Court. Doc. 3128.
[26] Cline Aff. ¶ 12 (Ex. 1).
[27] Cline Aff. ¶ 13 (Ex. 1).
[28] Cline Aff. ¶ 14 (Ex. 1).
[29] Cline Aff. ¶ 14 (Ex. 1).
[30] Cline Aff. ¶ 15 (Ex. 1).
[31] This review was completed in the <u>amount</u> of time allotted by the Court's scheduling order, but it was completed after the deadline due to the extra time CMC required in producing the final batch of documents to the Defendants.
[32] Cline Aff. ¶ 16 (Ex. 1).
[33] It is not even clear a log was required. The agreed review protocol only required a privilege log for the forensic review portion of the CMC document review (five business days after completing production). Doc. 3030 at 7. The portion of the protocol governing the e-discovery (search term) review does not specifically

**The Present Dispute and Meet and Confer**

The PSC takes issue with (1) Jean Atkinson's assertion of privilege over privileged communications that copy others[34], (2) STOPNC, Howell Allen, and Dr. Jones' assertion of privilege over communications that include them[35], and (3) the Defendants' privilege log.[36] Counsel for the Tennessee Clinic Defendants tried to reach the PSC by phone to discuss the privilege dispute and requested a phone call multiple times.[37] The PSC never returned the call and never agreed to a call, instead declaring an impasse via email and moving for sanctions.[38]

## LAW AND ARGUMENT

Looking past the incendiary language, two ripe legal issues remain:

1. Does the waiver of attorney-client privilege by one client (SSC) also waive privilege for SSC's co-clients (STOPNC, Howell Allen, Dr. Jones, and Jean Atkinson)?

2. Should the Court sanction STOPNC, Howell Allen, Dr. Jones, and Jean Atkinson (or their lawyers) for asserting privilege over joint attorney-client communications?

Conduct is not sanctionable under Fed. R. Civ. P. 37 if the legal position taken is "substantially justified."[39] Thus, the Court can start with the first question (is the assertion of privilege proper or, at minimum, reasonable and not frivolous?), and in doing so resolve the second.

---

require a privilege log. Regardless, the Tennessee Clinic Defendants provided one at the request of the PSC. CMC, on the other hand, did not submit a privilege log for the search term review.

[34] These communications can be thought of generally as: Counsel ←→ Atkinson (copying others).

[35] These communications can be thought of generally as: Counsel ←→ STOPNC, HA, Jones (copying the waiving party, SSC).

[36] *See* email exchange between PSC and GCE at Doc. 3238-10.

[37] Cline Aff. ¶¶ 17-18 (Ex. 1); email exchange between PSC and GCE at Doc. 3238-10 (repeatedly requesting a call and noting attempt to reach the PSC by phone). In these cases, not surprisingly, phone calls have often been more productive than curt email exchanges.

[38] *See* email exchange between PSC and GCE at Doc. 3238-10.

[39] *See* FED. R. CIV. P. 37.

## I. The materials withheld are privileged.

Before going about *how* to assert the privilege, counsel first had to decide *whether* the communications copying other parties were privileged. The law says they are. Thus, the materials withheld on the log are privileged. The first question is answered in the Defendants' favor for both categories of communications[40].

### a. Communications between counsel and co-clients are privileged unless all clients waive privilege.

The PSC's motion misleadingly suggests there is no Tennessee law on the issue. In fact, the lawyers for the PSC who filed the instant motion for sanctions <u>successfully invoked</u> the co-client privilege on similar facts in *Anderson v. Clarksville Montgomery Cty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546 (M.D. Tenn. 2005). Counsel for the Defendants relied on this case, in part, in asserting privilege over these communications.[41]

In *Anderson*, multiple plaintiffs represented by the same lawyers sued a school board.[42] One of the plaintiffs disclosed privileged communications to the defendants.[43] The Branstetter firm filed a motion asking the court to rule that the disclosed communications retained privilege because all plaintiffs (all co-clients) had not waived the privilege.[44] The U.S. District Court for the Middle District of Tennessee (where the SSC cases were originally filed) agreed, holding that "it is inappropriate for a single plaintiff to be allowed to waive the attorney-client privilege for all plaintiffs through his act of disclosing attorney-client communications to the other side, even though his act may have

---

[40] *I.e.*, (1) emails between Atkinson and counsel copying others, and (2) emails between STOPNC, HA, and Dr. Jones and counsel, copying others.
[41] Cline Aff. ¶ 13 (Ex. 1).
[42] *Anderson*, 229 F.R.D. at 546.
[43] *Id.* at 546.
[44] *Id.* at 546.

7

been deliberate."[45] The court recognized that having a single attorney represent multiple parties serves the interests of "[j]udicial economy and common sense."[46]

The Restatement – which Tennessee courts routinely follow[47] – says the same. Under the Restatement, a communication to co-clients remains privileged unless the person making the communication waives it.[48] In other words, one co-client (here, SSC) cannot waive the privilege for everyone. The Restatement (like the *Anderson* court) "recognizes that it may be desirable to have multiple clients represented by the same lawyer."[49] But, it does not bind all co-clients when one waives privilege.

Moreover, this is the "prevailing" approach adopted by numerous courts, including the Third Circuit, Fifth Circuit, and this Court.[50] The First Circuit and Sixth Circuit recognize the co-client privilege but have not yet specifically considered the question of waiver in this context.[51]

So, the law is clear that waiver does not occur unless all co-clients waive it or the person actually making the communication waives it. Applied here, Ms. Atkinson,

---

[45] *Id.* at 547.

[46] *Id.*

[47] *See, e.g., Davis v. Komatsu American Indus. Corp,* 42 S.W.3d 34, 43 (Tenn. 2001) (adopting § 5(b) and comment (e) to § 5 of the *Restatement (Third) of Torts: Production Liability)*; *West v. Media Gen. Convergence, Inc.,* 53 S.W.3d 640, 648-49 (Tenn. 2001); *Robinson v. Omer,* 952 S.W.2d 423, 426-27 (Tenn. 1997).

[48] Restatement (Third) of the Law Governing Lawyers § 75(1).

[49] *Id.* § 75, cmt. b.

[50] *In re Teleglobe Communications Corp. v. BCE Inc.,* 493 F.3d 345, 362-63 (3d Cir. 2007) ("[W]aiving the joint-client privilege requires the consent of all joint clients.") (citing Restatement (Third) of the Law Governing Lawyers §75); *In re Auclair,* 961 F.2d 65, 70 (5th Cir. 1992) (holding that one co-client could continue to assert attorney-client privilege despite co-client's waiver*); Calandro v. Sedgwick Claims Mgmt. Servs., Inc.,* No. CV 15-10533-PBS, 2015 WL 8082419, at *3 (D. Mass. Dec. 7, 2015); *see also ZVI Const. Co., LLC v. Levy,* 60 N.E.3d 368, 379 (Mass. Ct. App. 2016) (noting this is the prevailing view).

[51] *F.D.I.C. v. Ogden Corp.,* 202 F.3d 454, 461 (1st Cir. 2000); *Grand Trunk W. R. Co. v. H.W. Nelson Co.,* 116 F.2d 823, 835 (6th Cir. 1941).

STOPNC, Howell Allen, and Dr. Jones can still assert privilege even though SSC waived privilege, so long as they are co-clients.[52]

### b. A co-client relationship exists between Gideon, Cooper & Essary and SSC, Ms. Atkinson, Dr. Lister, STOPNC, Howell Allen, and Dr. Jones.

The rule applies here because Gideon, Cooper & Essary ("GCE") has represented all the Tennessee Clinic Defendants as co-clients since long before the litigation's outset. The record clearly establishes a co-client relationship exists between GCE and SSC, Dr. Lister, Ms. Atkinson, STOPNC, Howell Allen, and Dr. Jones (the Tennessee Clinic Defendants).

"[W]hen a lawyer represents multiple clients having a common interest, communications between the lawyer and any one (or more) of the clients are privileged as to outsiders."[53] "The proponent of [the privilege] must establish cooperation in fact toward the achievement of a common objective."[54] Courts may look to a variety of factors to determine whether a co-client relationship exists, including payment arrangements, requests for advice, and the frequency and content of correspondence.[55]

---

[52] A number of the withheld emails were either sent directly to or forwarded to SSC's management company, Calisher & Associates. The Defendants asserted the joint defense/common interest privilege, in addition to attorney-client privilege and work product, with respect to these communications. At the time of the emails, Calisher & Associates either shared a common legal interest with the Defendants (as a future co-defendant of SSC and Dr. Lister), such that the joint defense/common interest privilege would apply; *See Boyd v. Comdata*, 88 S.W.3d 203 (Tenn. Ct. App. 2002). This would create a joint defense with all of the Tennessee Clinic Defendants, such that all would have to waive the joint defense privilege for there to be a waiver. Or, Calisher & Associates was acting as SSC's agent for the limited purpose of communicating with SSC's counsel. *See* Restatement (Third) of the Law Governing Lawyers, § 75 cmt. a ("A communication subject to the privilege for co-clients may be made through a client's agents for communication and a lawyer's agents for communication and other agents."). Either way, SSC's waiver of privilege cannot destroy the privilege absent waiver by the other Tennessee Clinic Defendants. *Anderson v. Clarksville Montgomery Cty. Sch. Bd. & Sch. Dist.*, 229 F.R.D. 546 (M.D. Tenn. 2005) (holding that one client's waiver of attorney-client privilege does not waive privilege for co-clients); *John Morell & Company v. Local Union 304A of the United Food and Commercial Workers, AFL-CIO*, 913 F.2d 544, 556 (8th Cir. 1990) ("It is fundamental that the joint defense privilege cannot be waived without the consent of all parties to the defense.").
[53] *F.D.I.C.*, 202 F.3d at 461.
[54] *Id.*
[55] *Id.*

The attached affidavits of Ms. Atkinson, Dr. Lister (on behalf of SSC), Scott Butler (on behalf of Howell Allen and STOPNC), Dr. Jones, and counsel establish the existence of a co-client relationship.[56] GCE represented all the clients collectively, advancing their interests in the MDL in a common fashion, and both defending the "negligent purchasing" claim and asserting comparative fault defenses on a predominantly joint basis.[57]

The affidavit testimony satisfies the factors for determining whether a co-client relationship exists:

- State Volunteer Mutual Insurance Company retained GCE to represent the Tennessee Clinic Defendants on a collective basis, with the expectation that the defense would be developed most efficiently with one set of lawyers representing all Tennessee Clinic Defendants.[58]

- GCE received payment from a single source for the legal services rendered in carrying out the joint representation.[59]

- GCE routinely and frequently communicated with the Tennessee Clinic Defendants collectively because the issues were common all clients. This included frequently giving advice to all clients collectively, often in emails, because the advice often applied equally to all clients.[60]

- GCE's clients intended and expected communications with GCE, even when they copied other clients, to be kept confidential.[61]

- GCE routinely advanced common positions at hearings on behalf of their collective clients.[62]

- The Tennessee Clinic Defendants have staked out identical positions on virtually all issues in the MDL, indicating a cooperation toward the common objective of winning the cases against them.[63] This has included taking common positions on discovery issues,  comparative fault discovery issues,

---

[56] *See* affidavits of Attorney Cline, Scott Butler, Dr. Jones, Ms. Atkinson and Dr. Lister attached as Exhibits 1-5.
[57] Cline Aff., ¶¶ 3-6 (Ex. 1).
[58] *See* Exhibits 1-5.
[59] Cline Aff. ¶ 3 (Ex. 1).
[60] *See* Exhibits 1-5.
[61] *See* Exhibits 2-5.
[62] Cline Aff. ¶ 6 (Ex. 1).
[63] Cline Aff. ¶ 6 (Ex. 1).

retaining experts, and various issues of law along the way.[64] GCE has filed dozens of papers on behalf of <u>all</u> the Tennessee Clinic Defendants. For instance, the Tennessee Clinic Defendants jointly moved to dismiss the Plaintiffs' claims;[65] jointly conducted discovery of various individuals and entities, such as NECC and the MSM salesperson with whom they all dealt, Mario Giamei;[66] and jointly briefed legal issues such as bellwether selection and choice of law.[67]

- The Tennessee Clinic Defendants had identical legal interests in investigating the outbreak (*e.g.,* monitoring the status of the government's investigation of the cause of the outbreak); responding to the outbreak (including ensuring all patients were notified in accordance with instructions from various government agencies); and preparing for and defending litigation associated with the outbreak (such as developing proof of fault by NECC, ARL, and UniFirst and developing proof that purchasing from NECC complied with the standard of care).[68]

If it was not already obvious from how this MDL has unfolded for years that the Tennessee Clinic Defendants operated in concert as co-clients of GCE, it is now beyond dispute with the affidavits in the record.

Indeed, even the PSC has repeatedly emphasized the common characteristics of the cases naming the Tennessee Clinic Defendants, lumping them together in the Master Complaint,[69] serving "common" initial disclosures addressing all cases pending against Tennessee clinics,[70] and combining briefing on legal issues for all Tennessee cases, such as choice of law.[71] The PSC cannot now reverse course and say the Defendants in those cases do not share a common legal interest. It makes no sense.

\* \* \* \* \* \* \*

---

[64] Cline Aff. ¶¶ 3, 6 (Ex. 1).
[65] Doc. 771.
[66] Docs. 1773 and 2190.
[67] Docs. 1871 and 1942.
[68] See Exhibits 1-5.
[69] Doc. 545 at "Count IX – Tennessee Product Liability Claims (Against Tennessee Clinic Related Defendants)".
[70] Attached as Exhibit 6.
[71] Doc. 2097.

In its motion, the PSC argues that SSC, Ms. Atkinson, STOPNC, Howell Allen, and Dr. Jones cannot be co-clients because they are not named as co-*defendants* by any single plaintiff. This does not survive even passing scrutiny. First, the PSC has cited no law for this argument. Second, individuals and entities routinely employ counsel completely outside of litigation. Indeed, one of the purposes for which GCE was retained was to assist the Defendants in notifying patients and investigating the cause of the outbreak long before any suit was filed.[72] So, the absence of a "co-defendant" relationship means nothing to the co-client analysis.

* * * * * * *

The Tennessee Clinic Defendants have more than carried the burden to establish GCE jointly represents them. SSC cannot waive the privilege for all co-clients.

### c. Ms. Atkinson, STOPNC, Howell Allen, and Dr. Jones can continue to assert privilege over joint communications despite SSC's waiver.

The waiver of privilege by SSC does nothing to the privileges held by Ms. Atkinson, STOPNC, Howell Allen, and Dr. Jones.

With regard to Ms. Atkinson, the Court held this explicitly.[73] SSC's waiver of privilege did not serve to waive any privilege Ms. Atkinson held because she had no role in selling the computers.[74]

The same is true for STOPNC, Howell Allen, and Dr. Jones. They had no involvement in sale, let alone a desire to waive confidentiality over jointly-privileged

---

[72] *See* Exhibits 1-5.
[73] Doc. 3015 at 11.
[74] Doc. 3015 at 11.

communications.[75] And, unlike SSC, they did not disclose privileged communications to CMC, voluntarily or inadvertently, sufficient to support an independent finding of waiver.[76]

Thus, like Atkinson, STOPNC, Howell Allen, and Dr. Jones have not waived privilege.

> **d. Communications that copied co-clients did not lose privilege, even if SSC was copied, because the other co-clients have not waived privilege.**

As explained above, the record and case law establish that (1) one co-client (SSC) does not waive privilege for all co-clients; (2) SSC, Atkinson, Lister, STOPNC, Howell Allen, and Jones are all co-clients of GCE; and (3) STOPNC, Howell Allen, nor Jones waived privilege. Where does that leave us for the present dispute? Applied to the subset of communications in the document production at issue here:

1. Any communications between GCE and Atkinson that copy other co-clients remain privileged because Atkinson has not waived her privilege.

2. Any communications between GCE and STOPNC, Howell Allen, or Jones, remain privileged, even if they copy each other or copy SSC, because STOPNC, Howell Allen, nor Jones have waived privilege.

The Tennessee Clinic Defendants have asserted privilege over communications consistent with (1) and (2), based on the clear case law recounted here.

## II.   No matter the ruling on the merits of the privilege assertions, the Defendants' conduct is nowhere near sanctionable.

The PSC asks the Court to sanction Ms. Atkinson, STOPNC, Howell Allen, and Dr. Jones, plus their lawyers. Ms. Atkinson allegedly acted beyond the letter of the Court's order at Doc. 3015 by asserting privilege over documents that copy co-clients. STOPNC,

---

[75] *See* Exhibits 2, 3.
[76] *See* Exhibits 2, 3.

Howell Allen, and Dr. Jones allegedly should have filed a motion before any privilege was asserted on their behalf.[77]

Ultimately, the Court may disagree with the Tennessee Clinic Defendants' position on the privilege issues. The Court may even find that the lawyers should have filed another motion before asserting privilege on behalf of STOPNC, Howell Allen, and Dr. Jones. However, taking a reasonable legal position later found to be incorrect is a far cry from sanctionable conduct.

In asking for sanctions, the PSC spends little time examining what must actually occur to warrant sanctions under Fed. R. Civ. P. 37 or a finding of civil contempt. There is absolutely no basis to impose sanctions under either standard.

> ### a. Civil contempt requires a finding that the party or lawyers egregiously violated a clear and unambiguous proscription without any effort to substantially comply.

The PSC requests a show cause order, advocating that the Tennessee Clinic Defendants be held in contempt. The PSC takes issue with Ms. Atkinson's interpretation of the Court's order and the failure of parties represented by the same lawyers to take a procedural step before invoking privilege. **While reasonable minds may differ on whether the law allows the former or the rules require the latter, no reasonable**

---

[77] When SSC filed its initial motion, counsel had generic confirmation that the computers contained communications between SSC and counsel. Cline Aff. ¶ 7 (Ex. 1). STOPNC, Howell Allen, and Dr. Jones, on the other hand, had no such confirmation. Cline Aff. ¶ 7 (Ex. 1) (noting that counsel for CMC would not identify senders or recipients of the attorney communications). Notably, when SSC filed its original motion for protective order on the privilege issue, the PSC argued that SSC filed their motion too *early*, saying SSC could not establish the privilege because it did not know whether the computers contained any privileged information. Doc. 2920 at 8 ("All of their arguments are therefore largely speculative and should be denied on that basis alone."). The PSC now claims the opposite – that STOPNC, Howell Allen, and Dr. Jones have asserted privilege too *late* (and deserve sanctions), that they should have filed a motion with even *less* information than SSC had at the time it filed its motion. If the PSC is correct, there is literally no proper time to assert privilege on these issues.

mind would say the Defendants' position should lead to "the highest level of censure" against a lawyer (or party).[78]

Courts utilize civil contempt sanctions to "protect[ ] the due and orderly administration of justice and…maintain[ ] the authority and dignity of the court."[79] To find civil contempt, the court must determine (1) by clear and convincing evidence (2) that the party violated a lucid, clear, definite, and unambiguous order.[80] The prohibited conduct must be clearly described within the "four corners" of the order[81], leaving no doubt as to the required behavior[82]. The court must construe any uncertainty in how to carry out the order in the light most favorable to the person charged with contempt.[83]

Even if a court finds by clear and convincing evidence that a party has violated a clear court order with no reasonable room for interpretation, the court still does not have to find contempt if the interest of justice does not call for it.[84] For example, when the party acts diligently to substantially comply with an order, contempt may not be appropriate.[85]

Most importantly, civil contempt is a "forward-looking penalty."[86] Sanctions are designed to coerce compliance, not punish past noncompliance.[87]

There is nothing here to warrant a finding of civil contempt.

---

[78] *Romero-Lopez*, 661 F.3d 106, 108 (1st Cir. 2011) (citing *United States v. Kouri-Perez*, 187 F.3d 1, 8 (1st Cir. 1999)).
[79] *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 764 (1980).
[80] *United States v. Saccoccia*, 433 F.3d 19, 27 (1st Cir. 2005); *Porrata v. Gonzalez-Rivera*, 958 F.2d 6, 7 (1st Cir. 1992).
[81] *Saccoccia*, 433 F.3d at 27.
[82] *In re Grand Jury Investigations*, 545 F.3d 21, 25 (1st Cir. 2008).
[83] *Id.*
[84] *Id.*
[85] *Accusoft Corp. v. Palo*, 237 F.3d 31, 47 (1st Cir. 2001).
[86] *Hawkins v. Dept. of Health & Human Servs.*, 665 F.3d 25, 32 (1st Cir. 2012).
[87] *Id.*

First, the Court ruled that Ms. Atkinson did not waive attorney-client privilege. More importantly, nothing in the order at Doc. 3015 prohibited Jean Atkinson from asserting privilege over attorney-client communications that involved other co-clients. In the briefing leading up to the order, the SSC Defendants even pointed out this possibility.[88] Ms. Atkinson did not do something that an order clearly prohibited.[89] At worst, she asserted privilege over communications not specifically addressed by the order, with a reasonable basis for doing so.[90] That is not sanctionable.

Likewise, the assertion of privilege by STOPNC, Howell Allen, and Dr. Jones (through counsel) without filing a "motion to intervene" does not support a finding of contempt. The PSC has cited nothing – no case, statute, or rule – that required STOPNC, Howell Allen, or Dr. Jones to file a motion before asserting privilege. **In fact, even though the PSC disagrees with the substance of the privilege assertion, the PSC admits the Defendants took the reasonable course in their own briefing, saying: "The 'universally accepted means' of claiming that requested documents are privileged is the production of a privilege log."**[91] That is *exactly what the Defendants did*. To make this statement and then request sanctions for doing it, exposes the PSC's overreach.

---

[88] "Many of the attorney-client communications at issue are not strictly between SSC and its attorneys. Examples are included with Exhibit 1. Counsel for SSC also represents Ms. Atkinson and Dr. Lister. Many courts agree that, in instances of joint representation, waiver of attorney-client privilege by one client does not waive the privilege as to all clients. *E.g., In re: Teleglobe Commc'ns Corp.*, 493 F.3d 345, 379-80 (3d Cir. 2007). Thus, even if the Court finds that SSC has waived attorney-client privilege, Dr. Lister and Ms. Atkinson can continue to assert the privilege." Doc. 2955 at 15 (emphasis in original).

[89] The PSC also miscasts joint defense communications as some new privilege that Ms. Atkinson dreamed up in explicit contravention of the Court's order. The joint defense "privilege" is simply an aspect of the attorney-client privilege. If Ms. Atkinson did not waive attorney-client privilege, she also did not waive the joint defense privilege, which is a sub-part of the attorney-client privilege.

[90] Even if the Court believes Ms. Atkinson's assertion of privilege violated the order, she substantially complied with the order by withholding only a small fraction of the ~70,000-page production. This weighs against finding her in contempt.

[91] Doc. 3238, p. 16. (cites omitted).

Certainly, the Court's order did not require STOPNC, Howell Allen, or Dr. Jones to do anything they failed to do, and it did not prohibit them from taking any action they took. The order simply did not address this contingency. For that reason alone, there was no violation of the terms of an order, and thus can be no finding of civil contempt.[92]

Lastly, the purpose of civil contempt sanctions is to coerce action or compliance. Sanctions are not required to accomplish this. If the Court disagrees with the Tennessee Clinic Defendants' position, the Defendants will produce the documents. Sanctions are unnecessary to coerce compliance here.[93]

### b. Sanctions are not warranted under Rule 37 because the position taken by the Tennessee Clinic Defendants is substantially justified.

The PSC asks for sanctions under Federal Rule of Civil Procedure 37(b).[94] Admittedly, Rule 37 allows the Court to order sanctions for violation of a discovery order.[95] Sanctions under Rule 37 are intended to penalize misconduct and deter others.[96] *However*, two important exceptions apply here: (1) where the failure to follow the order was substantially justified or (2) where an award of expenses is unjust under the circumstances.[97]

---

[92] Also, like Ms. Atkinson, the assertion of privilege by STOPNC, Howell Allen, and Dr. Jones covers a small subset of the production. The production of the vast majority of the documents at issue constitutes substantial compliance with the order, which counsels against a finding of contempt.

[93] The PSC's claim that the Defendants should be sanctioned for the delay caused by this privilege dispute *is* frivolous. First, the PSC served "common" written discovery on Calisher & Associates the day before the common fact discovery deadline expired (12/8/16), which required an extension of the deadline irrespective of the privilege dispute. Second, the PSC knew in November **2014** that SSC sold its computers to Cumberland Medical Center but waited until January **2016** to issue a subpoena for the computers. This dispute would have been resolved long ago if the PSC had not waited more than a year to issue the subpoena. The Defendants have acted in good faith and timely in raising these issues.

[94] Doc. 3232 at 1, 2.

[95] Fed. R. Civ. P. 37.

[96] *Afreedi v. Bennett*, 517 F. Supp. 2d 521, 526 (D. Mass. 2007).

[97] *Ins. Recovery Group, Inc.*, 977 F. Supp. 2d at 27.

17

"Substantially justified" simply means that a reasonable person would be satisfied with the explanation for the conduct.[98] Where a party has staked a position in a genuine dispute over the issue, the party has acted with substantial justification.[99] **The Court should not award sanctions unless the party has taken a position that is unreasonable, frivolous, or completely unsupportable under the law.**[100] "If there is an absence of controlling authority, and the issue presented is one not free from doubt and could engender a responsible difference of opinion among conscientious, diligent but reasonable advocates, then the opposing positions taken by them are substantially justified."[101] This lenient standard is necessary to allow attorneys to advocate for their clients and deal with areas of the law not fully decided.[102]

When looking at the appropriateness of sanctions, district courts should look at (1) the severity of the violation; (2) the legitimacy of the party's excuse; (3) whether violations have repeated; (4) the deliberateness of the misconduct; (5) mitigating excuses; (6) prejudice to the other side; and (7) whether lesser sanctions are adequate. [103] The trial court should also consider the party's conduct in the context of the party's overall behavior in the case.[104] **"[A] party acting in good faith, attempting to work within the rules, will not face a harsh sanction."**[105]

---

[98] *Id.*

[99] *Bowne of N.Y. City, Inc. v. AmBase Corp.*, 161 F.R.D. 258, 265 (S.D. N.Y. 1995).

[100] *Id.* (referring to Committee Notes and citing other cases for same principle).

[101] *Athridge v. Aetna Cas. & Sur. Co.*, 184 F.R.D. 200, 205-06 (D.D.C. 1998) (additional cites omitted).

[102] *Bowne of N.Y. City, Inc.*, 161 F.R.D. at 265.

[103] *Angiodynamics, Inc. v. Biolitec AG*, 991 F. Supp. 2d 283, 290 (D. Mass. 2014).

[104] *Id.*

[105] *Id.* at 292.

This district has reserved Rule 37 sanctions for conduct like: "irresponsible, unproductive, and unbecoming conduct" in the face of warnings by the court[106]; failing to serve discovery responses and initial disclosures multiple times after multiple warnings by the court[107]; missing clearly-established deadlines while (mis)representing to the court they had met the deadlines[108]; intentionally deleting financial records while lying to the court about it[109]; and "outrageous misconduct" in refusing to participate in discovery at all[110].

Here, Rule 37 sanctions are not in order for Ms. Atkinson, STOPNC, Howell Allen, or Dr. Jones. Their conduct was not irresponsible, outrageous, intentional, or dishonest, nor was it in obvious contravention of a clear discovery order. For Ms. Atkinson, the order expressly allowed her to assert privilege. It did not address communications that copied co-clients. Even if the Court finds Ms. Atkinson to have gone beyond the order's intent, she did not take a position that is frivolous, unreasonable, or unsupportable by the law.

Similarly, STOPNC, Howell Allen, and Dr. Jones did not violate the Court's Order. The order did not address what these parties, or their lawyers (the same lawyers reviewing the same documents for Ms. Atkinson's privilege[111]), were to do if they discovered their privileged communications. It definitely did not *prohibit* assertion of valid (and unwaived) privilege. The choice by STOPNC, Howell Allen, or Dr. Jones, or their lawyers, to assert the privilege without formally moving the Court for permission to assert

---

[106] *Irwin Indus. Tool Co. v. Bibow Indus., Inc.*, No. CIV.A. 11-30023-DPW, 2014 WL 1323744, at *6, *7 (D. Mass. Mar. 31, 2014).
[107] *Afreedi v. Bennett*, 517 F. Supp. 2d 521, 524-26 (D. Mass. 2007).
[108] *Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 26 (1st Cir. 2006).
[109] *Global Naps, Inc. v. Verizon New England, Inc.*, 603 F.3d 71, 94-95 (1st Cir. 2010).
[110] *Angiodynamics, Inc.*, 991 F.Supp.2d at 288-97.
[111] The PSC makes the ludicrous statement in its motion that confidential data "apparently has been exposed to Dr. Jones and STOPNC without authorization." Doc. 3238 at 11. The PSC knows full well that the clients themselves did not do the privilege review. The lawyers did.

privileges they had not waived, was not frivolous, unreasonable, or unsupportable by law. It was a judgment call. The PSC has cited nothing to support the claim that STOPNC, Howell Allen, or Dr. Jones needed to file a motion, much less that the failure to do so is egregious enough to warrant sanctions.

Looking specifically at the factors, not one supports a finding of sanctions here:

(1) The severity of the violation

At worst, Ms. Atkinson asserted privilege over communications not expressly addressed in the order, but communications that are privileged by a reasonable reading of the applicable law. And, the assertion came after careful deliberation and review of the case law and commentary.

STOPNC, Howell Allen, and Jones, at worst, asserted privilege over documents with a reasonable basis in the law, but without following an unidentified "rule" to file a "motion to intervene." This, too, came after careful deliberation by counsel, supported by their interpretation of the case law and Restatement, in the absence of any rule or case addressing the procedural posture in which this arose.

(2) The legitimacy of the party's excuse

This is not the situation where an order clearly proscribed an action, and the party did it anyway. The involved parties and counsel have laid out in the briefing above and the affidavit testimony their decision-making in asserting privilege the way they did. Further, as the PSC concedes, invoking privilege on a privilege log (*i.e.*, without a formal motion first) is the universal way to do it.

(3) Whether violations have repeated

There have been no previous sanctions and certainly no pattern of misconduct warranting heightened awareness of these parties' and lawyers' conduct.

(4) The deliberateness of the misconduct

There was no "deliberateness" in circumventing any order of the Court. Instead, as evidenced by the briefing and affidavit testimony, there was the utmost effort to comply with the orders and maintain consistency with the law.

(5) Mitigating excuses

Some aspects of this dispute are literally unprecedented. Others have very little case law to guide the parties. Further, with multiple parties, numerous privileges, several applicable court orders, and unexpected contingencies, the complexity of these issues mitigates against finding a clear violation of a court order.

(6) Prejudice to the other side

The PSC has offered no proof of prejudice.

(7) Whether lesser sanctions are adequate.

No sanctions are necessary at all. If the Court orders the documents produced, they will be produced.

(8) The party's conduct in the context of the party's overall behavior in the case

The Tennessee Clinic Defendants have carried themselves with the utmost professionalism in this Court and throughout these discovery disputes. There has not been a hint of anything but deference to the Court and professionalism with the lawyers, in a long, complicated, and fiercely-contested piece of litigation.

### c.  The Defendants' privilege log is not sanctionable.

Finally, the PSC argues that the Court should sanction the Defendants because their privilege log did not contain sufficient detail. This is without merit.

### i.  A privilege log was not required, and, in any event, the PSC did not comply with its meet and confer obligation before filing its motion for sanctions.

As a practical matter, the order governing review of the CMC information (jointly submitted by the PSC, CMC, and the Defendants) did not even require a privilege log for the e-discovery (search term) portion of the review.[112] Likewise, the Court's original order on common discovery did not require privilege logs to include attorney-client

---

[112] *Compare* Doc. 3030 at 8 (requiring privilege log for forensic review) *with* Doc. 3030 at 8-9 (no privilege log requirement for search term review).

communications after September 20, 2012.[113] Thus, applying the PSC's own hyper-technical reading of the Court's orders, the Defendants were not even required to include the documents at issue on a privilege log.[114]

Additionally, the PSC did not satisfy its meet and confer obligation with respect to the privilege log. Counsel for the Defendants repeatedly asked the PSC to specify what was deficient about the log.[115] Counsel for the Defendants attempted to call the PSC to discuss these issues and repeatedly, unsuccessfully requested a return call.[116] It was not until the PSC filed its motion for sanctions that the PSC finally divulged their specific complaints about the log.

Despite this, the Defendants have now served a supplemental privilege log to put this issue to rest.[117] This log goes above and beyond any reasonable measure of what a log must have.

### ii. The privilege log does not satisfy the standard for finding waiver as a sanction.

To the extent the Court intends to consider sanctions for the original privilege log, waiver based on the log is clearly not warranted under the circumstances. "Privilege logs do not need to be precise to the point of pedantry."[118] "[W]aiver – the most extreme sanction – should be used rarely."[119] "Minor procedural violations, good faith attempts at compliance, and other such mitigating circumstances militate against finding waiver."[120]

---

[113] Doc. 1425 at 4.
[114] Notably, the PSC did not require Cumberland Medical Center to produce a privilege log.
[115] Cline Aff. ¶¶ 17-18 (Ex. 1); Docs 3238-9, 3238-10.
[116] Cline Aff. ¶¶ 17-18 (Ex. 1); Docs 3238-9, 3238-10.
[117] *See* Exhibit 7.
[118] *Stamps v. Town of Framingham*, 38 F. Supp. 3d 134, 142 (D. Mass. 2014) (internal citations and quotations omitted).
[119] *Id.*
[120] *Id.*

Waiver is reserved for cases where a responding party's conduct "evinces a deliberate pattern of delay and is egregious."[121]

In considering whether to find waiver, courts conduct a "holistic reasonableness analysis" and consider: (1) the degree to which the assertion of privilege enables the opponent to evaluate whether the documents withheld are privileged, (2) the timeliness of the objection, (3) the magnitude of the document production and circumstances of the litigation that make responding to discovery unusually hard, and (4) prior dealings between the parties.[122] "Waiver should only be found in the absence of mitigating considerations that favor the [producing] party."[123]

The Court should not find waiver for a number of reasons (in addition to the fact that a privilege log was not required).

First, the Defendants' timely produced a detailed 40+ page privilege log in good faith four business days after completing a ~70,000-page document production.[124] It identified the documents sufficiently for the PSC immediately started complaining about the assertions of privilege. The PSC's claim that the Defendants have not identified the senders and recipients of the withheld attorney-client communications is specious. The Defendants explained in the letter enclosing the privilege log that:

> [W]e did not identify every combination of email sender/recipient(s) for attorney-client emails because we already did so with our last privilege log. Most, if not all, of the attorney-client emails in the CMC documents were captured by prior searches and are included on our last privilege log(s). If you believe privilege does not apply to a combination of sender/recipient(s)

---

[121] *Id.*

[122] *In re Dep't of Justice Subpoenas to ABC*, 263 F.R.D. 66, 71 (D. Mass. 2009) (internal citations omitted).

[123] *Id.*

[124] By comparison, the Court's original order on common discovery required a privilege log to be served 30 days after substantial completion of document productions. *See* Doc. 1425 at 4.

and we agree (or if the Court orders us to produce them), we will, of course, produce all emails with that sender/recipient(s) combination.[125] [126]

These facts establish factors #1 and #3 in favor of the Defendants.

Moreover, the PSC's motion completely ignores the prior dealings between the parties. The privilege log at issue looked virtually the same as the Defendants' prior privilege logs, received without objection from the PSC.[127] Factor #4 weighs toward the Defendants.

As with the substantive assertion of privilege, the privilege log cannot support a finding of waiver as a sanction. Even if the Court believes the original privilege log is deficient, there are certainly mitigating circumstances that favor the Defendants.[128] [129]

### III. The Tennessee Clinic Defendants will file the communications at issue with the Court ahead of the hearing if the Court desires.

The Tennessee Clinic Defendants have no objection to the Court conducting an *in camera* review of the disputed documents if the Court wishes. This will establish the documents are clearly privileged (and largely irrelevant or at least inadmissible). The Defendants can overnight them to the Court via CD with a few days' notice.

---

[125] Doc. 3238-4.

[126] The prior privilege log referenced in this letter is attached as Exhibit 8.

[127] *See, e.g.*, Ex. 8.

[128] *In re Dep't of Justice Subpoenas to ABC*, 263 F.R.D. at 71 ("Waiver should only be found in the absence of mitigating considerations that favor the [producing] party.").

[129] The same is true for the documents attached to the PSC's motion as Exhibit G. Doc. 3238-7. The PSC asks the Court to find privilege is waived for any redacted documents not included on the privilege log. This is clearly uncalled for. The PSC already had unredacted versions of the Exhibit G documents in this production (Bates-numbered 0145178-80). If the PSC locates any other redacted documents omitted from the log, the Defendants should be permitted the opportunity to supplement their privilege log given the size of the production and number of documents on the privilege log (over 500). The Court must remember that these are not key documents in the case, and likely not even admissible. These communications from counsel pre-suit have nothing to do with the decision to buy from NECC.

## **CONCLUSION**

The PSC's motion for sanctions overreaches. STOPNC, Howell Allen, Ms. Atkinson, and Dr. Jones carried their burden of establishing that a co-client relationship exists and that they have not waived the co-client privilege. There is more than enough proof in the record for the Court to reach this conclusion. Once the co-client relationship is established, all the assertions of privilege are consistent with the applicable law.

Moreover, the position taken by the Tennessee Clinic Defendants is one taken in good faith. They have done nothing expressly prohibited by a court order or failed to do something expressly required by a court order. No rule or statute required them to file a motion before asserting any of the privileges. Even if the Court ultimately disagrees, the actions of the Tennessee Clinic Defendants (and the actions of their lawyers) clearly do not rise to the level of egregious conduct necessary to support an imposition of sanctions.

The Court should deny the PSC's motion in its entirety and find that STOPNC, Howell Allen, Dr. Jones, and Ms. Atkinson appropriately asserted, and may continue to assert, privilege over co-client communications irrespective of SSC's waiver of privilege.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

*/s/ Chris J. Tardio*
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the Tennessee Clinic Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice*.


## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 9th day of January, 2017.

*/s/ Chris J. Tardio*
**Chris J. Tardio**