# EXHIBIT 5

## Affidavit of Dr. Lister
(on behalf of himself and SSC)

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION _____ This Document Relates to: Suits Naming Specialty Surgery Center, PLLC | ) ) MDL No. 2419 ) Dkt. No. 1:13-md-2419-RWZ ) ) ) ) ) ) ) ) |

**Affidavit of Kenneth Lister, MD**

STATE OF TENNESSEE
COUNTY OF KNOX

Kenneth Lister, MD, after first being duly sworn, states as follows:

1. I am over 18 years of age, have personal knowledge of the facts contained herein, and I am competent to testify. I was a member of Specialty Surgery Center, PLLC ("SSC") until its administrative dissolution.

2. I am executing this affidavit on behalf of myself as well as SSC.

3. The law firm of Gideon Cooper & Essary, PLLC ("GCE") has represented SSC and me in matters related to the fungal meningitis outbreak since October 2012.

4. State Volunteer Mutual Insurance Company retained GCE to provide legal assistance in:

    a. Investigating the cause of the outbreak and injuries to patients and providing legal assistance in monitoring the government's investigation of the outbreak (including dealing with state and federal government investigations and reporting obligations).

    b. Providing legal assistance related to our response to the outbreak, such as notifying patients, restarting pain management procedures, responding to media inquiries, cooperating with governmental agencies, and other similar activities.

    c. Preparing for and defending lawsuits associated with the outbreak, (including responding to medical records requests from potential future

Plaintiffs, responding to subpoenas and requests for information from various government agencies, and preparing for and defending the civil suits against us directly, like developing the case against NECC and its cohorts and defending our actions).

5. I know that GCE jointly represents (along with SSC and me) Jean Atkinson, RN, Saint Thomas Outpatient Neurosurgical Center, LLC ("STOPNC"), Howell Allen Clinic, a Professional Corporation, and Donald Jones, MD with respect to these activities. These are other similarly-situated Tennessee health care providers facing virtually the same legal issues we faced.

6. GCE routinely communicated with all clients collectively with respect to these activities, primarily in the form of emails exchanged with us as a group. I expected the communications from GCE, and any responses to GCE (whether from me or GCE's other clients) to be kept confidential from third parties.[1]

7. GCE routinely copied Ms. Atkinson and me on confidential reports about important developments in the cases against STOPNC and Dr. Jones. Likewise, GCE routinely copied STOPNC and Dr. Jones on confidential reports about important developments in the cases against SSC. These developments, and the advice provided often applied equally to all sets of Tennessee health care providers. They mostly covered issues common to all of us.

8. I felt comfortable communicating with GCE in the presence of GCE's other clients (via email) about issues related to GCE's representation. I assumed GCE's other clients involved in the litigation would have access to communications between us and GCE in order to advance our collective interests. I believed that I would be provided with communications between GCE and GCE's other clients involved in the outbreak if I requested them.

---

[1] The one exception to this general belief would be that I expected some of the information from GCE to be conveyed to Calisher & Associates. Given Calisher & Associates' role as SSC's management company, they were involved (or at least needed to be aware of) SSC's activities in investigating and responding to the outbreak, and preparing for potential future litigation.

*[signature]*

Sworn to and subscribed by me on this 6th day of January, 2017.

_____
(Notary Public)

My Commission Expires: 3/24/18



3