UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) ) | |
| | ) | MDL No. 2419 |
| | ) | Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) | |
| | ) | |
| Suits Naming Specialty Surgery Center, Crossville, PLLC | ) ) | |
| | ) | |

**SSC DEFENDANTS' OPPOSITION TO**
***PSC'S MOTION FOR JUDGMENT ON THE PLEADINGS***
***REGARDING COMPARATIVE FAULT DEFENSES ATTRIBUTING***
***FAULT TO GOVERNMENTAL ENTITIES [DOC. 3249]***

Specialty Surgery Center, Crossville, PLLC ("SSC"), Kenneth R. Lister, MD ("Dr. Lister"), and Kenneth Lister, MD, PC ("Dr. Lister's Practice") (collectively the "SSC Defendants") oppose the Plaintiffs' Steering Committee's ("PSC") *Motion for Judgment on the Pleadings Regarding Comparative Fault Defenses Attributing Fault to Governmental Entities* [Doc. 3249] (the "Motion"). The Motion is without merit as a matter of law, and should be denied.

## I.    Introduction on Relevant Framework of Tennessee Law

*None* of the cases identified by the PSC support the relief sought in their Motion.[1] The well-established principle that *the plaintiff* in a personal injury claim must demonstrate a duty owed *by a defendant* does not justify striking the SSC Defendants' detailed comparative fault defenses concerning governmental *non-parties* to these proceedings.

Tennessee law allows defendants in tort actions to assert and prove that non-parties, even immune non-parties against whom the plaintiff has no cause of action, caused or contributed to the injury.[2] In a deliberate policy choice to ensure that defendants are only liable for the share of the injury they caused, juries are allowed to allocate fault to any party or non-party that "caused or contributed to the plaintiff's injury."[3]

In their Master Answer, the SSC Defendants defended these cases, in part, by asserting that other persons and entities caused or contributed to the injuries, including: the U.S. Food and Drug Administration ("FDA"); the Massachusetts Board of Pharmacy ("Mass. BoP"); the Tennessee Department of Health ("TDoH"); and the Tennessee Board of Pharmacy ("TBoP").[4] Specifically, the SSC Defendants asserted that the FDA and Mass. BoP engaged in reckless misconduct by failing to take decisive disciplinary action against NECC, despite direct knowledge of the grave risks posed by NECC.

Once a defendant asserts as a defense that a non-party caused or contributed to cause the plaintiff's injury, the plaintiff has the statutory right to add the non-party as a defendant within 90 days, regardless of the statute of limitation.[5] Despite the clear

---

[1] The PSC's supporting memorandum is at Doc. 3250.
[2] *Carroll v. Whitney*, 29 S.W.3d 14, 19-22 (Tenn. 2000).
[3] *Id.* at 21.
[4] Doc. 1456 at 66-111.
[5] TENN. CODE ANN. § 20-1-119.

invitation to do so, the PSC never sought to add these governmental entities or the responsible employees as defendants in these actions, nor pursued independent actions against these at-fault governmental entities or their employees. The bulk of the PSC's supporting memorandum offers an indirect explanation for inaction, asserting difficulty – with essentially no analysis – in evading application of Tennessee's public duty doctrine.[6]

Now, the PSC seeks to remedy the failure to hold those at-fault governmental entities liable by misapplying the public duty doctrine to the SSC Defendants' comparative fault defenses. Unmasked, the PSC's central argument is that unless the Plaintiffs could successfully sue each of the comparatively at-fault actors, the Defendants may not assert comparative fault. That premise is false as a matter of law.

The PSC's Motion must be denied for three (3) reasons:

1. While the public duty doctrine offers governmental entities immunity (with some exceptions) from direct liability, Tennessee law is clear that fault <u>can</u> be allocated to immune non-parties. Even if the public duty doctrine makes these governmental entities **immune** from liability, **fault** may be allocated to them because they caused or contributed to the Plaintiffs' injuries.

2. The public duty doctrine does not bar the comparative fault allegations against the FDA and Mass. BoP because the SSC Defendants allege reckless misconduct.

3. Well-settled policy behind Tennessee's comparative fault scheme – ensuring that tortfeasors do not pay more than their share of fault – supports the SSC Defendants' comparative fault allegations, especially when the PSC presents no pertinent precedent to support their position.

Each justification for denial is discussed separately below.

---

[6] *See* Doc. 3250.

## II.   Argument

### A.   The PSC misstates the public duty doctrine. It is an immunity from liability. The governmental entities may be immune from liability. However, Tennessee law is clear that juries *can* allocate fault to immune non-parties.

The public duty doctrine, a creature of common law, evolved as a rule of standing, by which private citizens did not have standing to sue their government.[7] **The public duty doctrine operates as an *immunity* to "shield" governmental entities from suit.**[8] In Tennessee, both the Governmental Tort Liability Act ("GTLA") and the public duty doctrine are affirmative defenses available to governmental entities <u>when they are named as defendants</u> in a suit:

> Both the GTLA and the public duty doctrine are affirmative defenses. Courts first look to the GTLA. If immunity is found under the GTLA, a court need not inquire as to whether the public duty doctrine also provides immunity. If, however, the GTLA does not provide immunity, courts may look to **the general rule of immunity under the public duty doctrine**.[9]

Essentially, the public duty doctrine gives governmental entities an "additional layer" of immunity from liability when sued.[10]

The PSC misrepresents Tennessee law by conflating "fault" and "liability."[11] The public duty doctrine does *not* eradicate the "duty" element of a prima facie case of negligence, which would eliminate a defendant's ability to assert comparative fault against

---

[7] *Cox v. State*, 844 S.W.2d 173, 175 (Tenn. Ct. App. 1992).

[8] *Ezell v. Cockrell*, 902 S.W.2d 394, 397 (Tenn. 2005); *see also Kemper v. Baker*, No. M2011-00407-COA-R3-CV, 2012 WL 1388371 *4 (Tenn. Ct. App. Apr. 19, 2012) ("Immunity under the public duty doctrine extends to government officials as well as government entities.").

[9] *Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998) (emphasis added).

[10] *Wells v. Hamblen Cnty.*, No. E2004-01968-COA-R3-CV, 2005 WL 2007197 *3 (Tenn. Ct. App. Dec. 19, 2005); *see also Ezell*, 902 S.W.2d at 401 (referring to the public duty doctrine as "the rule of no-liability").

[11] *See e.g.,* Doc. 3250 at 10. The PSC cites to *Kemper v. Baker* as a case applying the public duty doctrine "in a similar context as the one at issue in the present litigation." This is grossly inaccurate. In *Kemper*, a city and city employee were <u>named defendants</u>. There, the Court of Appeals held that the city and city employee were immune from the plaintiffs' claims because a special duty exception to the public duty doctrine did not apply. The PSC misleadingly states the *Kemper* court held that the city employee "could not be attributed any fault" when, more accurately, the court simply found that he was immune from a direct liability judgment. Notably, *Kemper* <u>never</u> discusses comparative fault, even in passing.

4

the government.[12] [13] Governmental entities and employees can still breach a duty, even if it is to the public.[14] The public duty doctrine simply makes a governmental entity *immune from liability* for injuries caused by its "breach of a <u>duty owed to the public at large</u>."[15]

The SSC Defendants agree with the PSC that, absent a finding that a special duty was owed,[16] the public duty doctrine probably makes the Tennessee governmental entities immune from a direct suit by the Plaintiffs. That is, the Tennessee governmental entities may be immune if the Plaintiffs try to sue them directly. But, that is not the issue here. The Plaintiffs did not sue them directly, nor have the Defendants brought a direct action against them. Instead, the Defendants assert (as a defense to the Plaintiffs' claims) that the governmental entities caused or contributed to the Plaintiffs' injuries.

The PSC offers nothing on-point to support their position that allocation of fault to an immune governmental agency is not allowed. In fact, the contrary is true. **Tennessee specifically allows the allocation of fault to immune non-parties that caused or contributed to cause the plaintiff's injuries**.[17] That is exactly what the SSC Defendants do here – assert as a defense that non-parties caused or contributed to the injuries. The

---

[12] *See Free v. Carnesale*, 110 F.3d 1227, 1231 (6th Cir. 1997) ("Because comparative fault is an affirmative defense, a defendant who raises the defense is required to prove a prima facie case of negligence against the non-party he contends was negligent.").

[13] It is well-settled that *all* persons, including governmental actors, have a general duty to exercise reasonable care. *See Gregory v. Metro. Gov't of Nashville*, No. M2011-02061-COA-R3-CV *4 (Tenn. Ct. App. Oct. 26, 2012).

[14] *Holt v. City of Fayetteville*, No. M2014-02573-COA-R3-CV, 2016 WL 1045537, *4 (Tenn. Ct. App. 2016) (characterizing public duty doctrine as an immunity available as a defense when the governmental entity breaches a duty to the public at large).

[15] *Chase*, 971 S.W.2d at 385.

[16] Discussed *infra* section II, B.

[17] *See Carroll*, 29 S.W.3d at 19 (holding that "when a defendant raises the non-party defense in a negligence action, a jury may generally apportion fault to immune non-parties."); *see also Dotson v. Blake*, 29 S.W.3d 26, 29 (Tenn. 2000) (holding that "to achieve the fairest result possible by linking liability with fault," defendants can assert fault against "effectively immune" non-parties); *see also Snyder v. LTG Lufttechnische GmbH*, 955 S.W.2d 252, 256 (Tenn. 1997) ("the jury may consider all evidence relevant to the event leading up to the incident that injured the plaintiff").

fact that the non-parties may be immune from liability does not strip the SSC Defendants

of that defense. The SSC defendants' assertion of comparative fault is unquestionably in

accord with the law of the forum state.

**B. The public duty doctrine <u>does not</u> apply to the allegations against the Massachusetts Board of Pharmacy and the FDA because the SSC Defendants' comparative fault defense alleges reckless conduct.**

In its review of Tennessee law, the PSC ignores the three (3) exceptions to the

public duty doctrine. Tennessee courts find a "special" duty and remove immunity under

the public duty doctrine in three (3) specific situations:

(1) When officials affirmatively undertake to protect the plaintiff, and the plaintiff relies upon the undertaking;

(2) When a statute specifically provides for a cause of action against an official or municipality for injuries resulting to a particular class of individuals, of which the plaintiff is a member, from failure to enforce certain laws; or

(3) When the plaintiff alleges a cause of action involving intent, malice, **or reckless misconduct**.[18] [19]

The third exception applies here. Recklessness occurs "when a person is aware

of, but consciously disregards, a substantial and unjustifiable risk of such a nature that its

disregard constitutes a gross deviation from the standard of care that an ordinary person

would exercise under all the circumstances."[20] That is exactly what the FDA and Mass.

BoP did – and what these Defendants allege they did – when they failed to take decisive

disciplinary action against NECC despite being aware of the risks NECC posed.

---

[18] *Ezell*, 902 S.W.2d at 402 (emphasis added).
[19] Notably, even the exceptions to the public duty doctrine emphasize the fact that the doctrine applies to **liability**, not **fault**, for governmental entities.
[20] *Brown v. Hamilton Cnty.*, 126 S.W.3d 43, 49 (Tenn. Ct. App. 2003).

The SSC Defendants' comparative fault defenses lay out specific facts and allegations that, if proven, could lead a reasonable juror to conclude that the FDA and Mass. BoP acted recklessly, removing public duty immunity:

➢ "The Defendants assert comparative fault against the FDA for proximately causing the alleged injuries and damages by negligently or **recklessly** failing to take action against NECC even though the FDA had authority to do so, as asserted in its October 31, 2008 letter to NECC…."[21]

➢ "The FDA proximately caused the alleged injuries and damages by negligently or **recklessly** failing to make publicly available all complaints, inspection reports, and information gathered during its serial investigations of NECC, described herein."[22]

➢ "The Defendants assert comparative fault against the FDA for proximately causing the alleged injuries and damages by negligently or **recklessly** failing to discipline or take action against NECC after issuing a Warning Letter to NECC on December 4, 2006, detailing numerous problems at NECC…."[23]

➢ "The Defendants assert comparative fault against the FDA for proximately causing the alleged injuries and damages by negligently or **recklessly** failing to discipline or take action against NECC despite knowledge that NECC had violated the FDA's Compliance Policy Guidance on Pharmacy Compounding...."[24]

➢ "The Defendants assert comparative fault against the FDA for proximately causing the alleged injuries and damages by negligently or **recklessly** failing to adequately inspect Analytical Research Laboratories, Inc. pursuant to the authority granted by 21 U.S.C. § 360(h), prior to November 8, 2012, when the FDA discovered multiple violations related to the testing of NECC medications…."[25]

➢ "The Mass. BoP proximately caused the alleged injuries and damages by negligently or **recklessly** failing to make publicly available all complaints, inspection reports, and information gathered during investigations regarding NECC, described herein."[26]

---

[21] Master Answer Aff. Def. ¶ 38.
[22] Master Answer Aff. Def. ¶ 40.
[23] Master Answer Aff. Def. ¶ 49.
[24] Master Answer Aff. Def. ¶ 54.
[25] Master Answer Aff. Def. ¶ 55.
[26] Master Answer Aff. Def. ¶ 58.

➢ "The Mass. BoP proximately caused the alleged injuries and damages by negligently or **recklessly** failing to discipline or take action against NECC after becoming aware of NECC's failure to comply with applicable state and federal laws and manufacturing guidelines…."[27]

➢ "The Defendants assert comparative fault against the Mass. BoP for proximately causing the alleged injuries and damages by negligently or **recklessly** failing to discipline or take action against NECC in February 2003 after issuing formal complaints against NECC identifying serious problems…."[28]

➢ "The Defendants assert comparative fault against the Mass. BoP for proximately causing the alleged injuries and damages by negligently or **recklessly** failing to shut down, or even inspect NECC, after receiving notice from the Colorado Board of Pharmacy on July 26, 2012, that NECC had violated a Cease and Desist Order issued by the Colorado Board of Pharmacy prohibiting NECC from selling medications in Colorado prior to receiving patient-specific prescriptions."[29]

Not only do the SSC Defendants' allegations reasonably support a conclusion that the FDA and Mass. BoP bear fault for the Plaintiffs' injuries, the evidence in the record establishes that the FDA and Mass. BoP <u>consciously disregarded a known, substantial risk</u>. That reckless conduct, as alleged, falls within the third express exception to immunity under the public duty doctrine.

These allegations of reckless conduct are not unsubstantiated.

With regard to the Mass. BoP, the Commissioner of the Massachusetts Department of Health all but admitted that the agency acted recklessly by consciously disregarding the risk that NECC posed. In 2012, she testified that the Mass. BoP exhibited "numerous, numerous episodes" of "poor judgment, missed opportunities, and a lack of appropriate action" that was "unacceptable" and "preventable" and constituted "significant

---

[27] Master Answer Aff. Def. ¶ 66.
[28] Master Answer Aff. Def. ¶ 67.
[29] Master Answer Aff. Def. ¶ 69.

irresponsibility."[30] She testified that NECC's large-scale operation and potential "nationwide problem" was "obvious."[31]

The same reckless conduct occurred at the FDA. The U.S. House of Representatives' Committee on Energy and Commerce completed a thorough investigation of the fungal meningitis outbreak to assess whether it could have been prevented, and found the same conscious disregard of a known risk:

> One of FDA's fundamental reasons for existence is to protect the public health by assuring the safety of our nation's drug supply. With respect to NECC and Ameridose, documents produced to the Committee raise serious questions about *whether **FDA repeatedly failed in its core mission**.* The documents also indicate that it was by sheer chance that NECC products caused these deaths and illnesses, as opposed to products produced and distributed by Ameridose. ***FDA employees were well aware of the link between these two companies. The agency's inaction in the face of years of complaints and red flags associated with the safety of both companies' products and underlying practices had a tragic ending***. While nobody could have fully anticipated the scope of this terrible outbreak, ***FDA was on notice that something like this might occur***.[32]

* * * * * * *

If the Defendants allege reckless conduct, a special duty arises, and the public duty doctrine does not apply. Further, as the PSC concedes, the Court must view the comparative fault allegations in the "light most favorable" to the SSC Defendants and must "draw all reasonable inferences" in the SSC Defendants' favor.[33] Viewing the SSC Defendants' comparative fault allegations of recklessness in their most favorable light warrants denial of the PSC's Motion.

---

[30] Transcript of Hearing of House of Representatives, Subcommittee on Oversight and Investigations, Committee on Energy and Commerce (Nov. 15, 2012) at 4, 9 (attached as **Exhibit 1**).

[31] *Id.* at 36.

[32] U.S. House of Representatives 113th Congress, Committee on Energy and Commerce, Preliminary Majority Staff Report: *FDA's Oversight of NECC and Ameridose: A History of Missed Opportunities?*, at 39 (Apr. 16, 2013) (emphasis added) (attached as **Exhibit 2**).

[33] Doc. 3250 at 4.

**C. The Court should not depart from the well-settled policy behind Tennessee's comparative fault scheme – to ensure that tortfeasors do not pay more than their share of fault – particularly when the PSC presents no law to support their position.**

> **i.      An absence of supportive authority warrants denial of the Motion.**

The PSC cannot point to – nor have the SSC Defendants uncovered – any Tennessee decision directly addressing the interplay of the public duty doctrine and comparative fault. Instead, the only Tennessee case (unmentioned in the PSC's brief) that specifically mentions allocating fault to a governmental entity counsels against the PSC's position.

In *Conley*[34], the trial court both allowed the defendant to amend its answer to assert comparative fault against the State of Tennessee and allowed the jury to allocate fault to the State. Although the jury apparently chose not to allocate fault to the government, the jury had that opportunity. On appeal, the Court of Appeals *affirmed* the trial court's decision allowing the defendant to amend its answer to assert comparative fault against the State. Because the jury allocated no percentage of fault to the State, the Court of Appeals found the issue of allocating fault to the State moot on appeal. Importantly, though, the Court of Appeals found "no error" in the trial court allowing the defendant to assert fault against the State.[35]

---

[34] *Conley v. Life Care Ctrs. of Am.*, 236 S.W.3d 713 (Tenn. Ct. App. 2007).
[35] *Id.* ("Plaintiff asserts on appeal that the trial court erred when it permitted Life Care to amend its Answer to identify the State as a comparative fault tortfeasor. It also asserts the trial court erred by including the State on the jury verdict form to allow the jury to assess fault against the State. We find both of these assertions to be without merit.")

*Conley* is the only Tennessee appellate case addressing allocation of comparative fault to a governmental entity and approving it. Other comparative fault jurisdictions with schemes similar to Tennessee's have also found that juries *can* allocate fault to immune non-party governmental entities:[36]

> ➢ In *Shand Min., Inc. v. Clay Cnty. Bd. Of Comm'rs*, the Indiana Court of Appeals held that a jury can consider the non-party governmental entity's negligence when allocating fault.[37]

> ➢ The New Hampshire Supreme Court held in *DeBenedetto v. CLD Consulting Engineers, Inc.* that the trial court properly allowed the jury to allocate fault to the New Hampshire Department of Transportation, an immune non-party to the suit.[38]

> ➢ In an MDL applying Colorado law, the District of Colorado allowed the defendants to designate the immune City and County of Denver, Colorado as a non-party to which fault could be allocated by the jury.[39]

> ➢ A New York appellate court held in *Artibee v. Home Place Corp.* that a jury could allocate fault to the State, even when the State was immune from liability.[40]

* * * * * * *

---

[36] *See McKinnie v. Lundell Mfg. Co., Inc.*, 825 F. Supp. 834, 840 (W.D. Tenn. 1993) (discussing the *McIntyre* Court's reliance on other comparative fault jurisdictions when it adopted the rule of comparative fault, and predicting that, "when confronted with issues of integrating comparative fault with other tort doctrines, the Tennessee Supreme Court would adhere to its analysis in *McIntyre* by examining the law of other comparative fault jurisdictions….").

[37] *Shand Min., Inc. v. Clay Cnty. Bd. Of Com'rs*, 671 N.E.2d 477 (Ind. Ct. App. 1996); *see also City of Vincennes v. Ruehl*, 672 N.E.2d 495, 498 (Ind. Ct. App. 1996) (holding that a jury may consider a governmental entity's negligence in its allocation of fault); *Bulldog Battery Corp. v. Pica Investments, Inc.*, 736 N.E.2d 333, 338 (Ind. Ct. App. 2000) (noting that "the non-party defense prevents defendants from bearing the financial burden of governmental immunities and other factors that might prevent the naming of a person or entity at fault as a defendant," and concluding that fault may be allocated to non-parties even when the non-party could not be liable to the plaintiff).

[38] *DeBenedetto v. CLD Consulting Eng'rs, Inc.*, 903 A.2d 969 (N.H. 2006).

[39] *In re Air Crash Disaster at Stapleton Intern. Airport, Denver, Colo., on Nov. 15, 1987*, 720 F. Supp. 1465 (D. Colo. 1989).

[40] *Artibee v. Home Place Corp.*, 132 A.D.3d 96 (N.Y. App. Div. 2015).

The Court recognized at Doc. 1360 that, in the absence of case law and "explicit support" for a party's argument, it is "loath to" disallow a claim not expressly prohibited by Tennessee law.[41] The Court should likewise refuse to accept the PSC's argument urged here in the absence of any supporting case law.

### ii.   Well-settled policy behind Tennessee's comparative fault scheme supports denial of the PSC's Motion.

In *McIntyre v. Ballentine*, the Tennessee Supreme Court abrogated joint and several liability, officially adopting comparative fault.[42] [43] To ensure that a defendant is only liable for the percentage of damages caused by its fault, the Supreme Court also adopted the "non-party defense," allowing defendants asserting comparative fault to assert that non-parties caused or contributed to the alleged injuries.[44] The Court did *not* require that a cause of action be available before the jury could apportion fault to a non-party.[45]

The policy behind the comparative fault non-party defense is grounded in fairness:

> In *McIntyre,* we rejected contributory negligence and joint and several liability in favor of comparative negligence to achieve a fairer and tighter fit between fault and liability. ***This "fair and tight fit" is lost, however, when some participants to an act of negligence are excluded from the apportionment of fault***. Pursuant to *Snyder,* under the present system of fault allocation, a jury is permitted to hear all evidence relevant to the injury-causing event. Yet the jury is not permitted to allocate fault to some of the participants, even though those participants may have contributed to the injury. Given these circumstances, ***the likelihood is great that the jury will allocate to a defendant fault that properly lies elsewhere. This***

---

[41] Doc. 1360 at 20.

[42] *McIntyre v. Ballentine*, 833 S.W.2d 52 (Tenn. 1992).

[43] *McKinnie*, 825 F. Supp. at 839 ("Emphasizing 'fault' rather than 'negligence' appears to have been a conscious decision of the *McIntyre* court…Negligence implies a breach of a duty of care, while fault refers merely to an act imposing liability…Unlike a negligence-based system, which limits liability to the narrow basis of a party's <u>breach of a duty of care</u>, the fault-based system adopted by the *McIntyre* court allows the fact-finder to weigh the relative conduct of the parties.") (emphasis added).

[44] *McIntyre*, 833 S.W.2d at 58 (holding that "fairness and efficiency require that defendants called upon to answer allegations in negligence be permitted to allege, as an affirmative defense, that a non-party caused or contributed to the injury or damages for which recovery is sought").

[45] *Carroll*, 29 S.W.3d at 17.

> ***result would hardly promote the policy of fairness that prompted this Court to adopt comparative fault.***[46] [47]

The *Carroll* Court concluded that juries could allocate fault to immune non-parties.[48]

Forcing a jury to allocate fault among parties not wholly responsible for an outcome, as the PSC attempts with the pending Motion, was squarely rejected by the Tennessee Supreme Court sixteen (16) years ago in *Carroll*, which is not mentioned – even in a footnote – in the PSC's Memorandum.[49] Consistent with controlling Tennessee authority, allowing the jury here to allocate fault to the FDA, Mass. BoP, and other (potentially) immune non-parties achieves the "fairest result possible by linking liability with fault."[50]

\* \* \* \* \* \* \*

Tennessee's comparative fault law allows a jury to allocate fault to parties and non-parties in percentages that align with their shares of fault, regardless of whether the plaintiff can maintain an action against them. Other than in *Conley*, Tennessee's appellate courts have not addressed the precise issue raised by the PSC. Given *Conley*, an absence of any "explicit support" for their position, and the general policy that Tennessee juries should be given the opportunity to allocate fault to any party or non-party that caused or contributed to the injuries, the PSC's Motion must be denied. The Court should

---

[46] *Id.* at 20.
[47] *See Volz v. Ledes*, 895 S.W.2d 677, 680 (Tenn. 1995) (holding, "We believe that a system wherein a particular defendant is liable only for the percentage of a plaintiff's damages that are caused by that defendant's fault is the system that best achieves our stated goal in *McIntyre v. Ballentine* of linking liability and fault. In keeping with this goal, we decline to adopt a rule…pursuant to which *the liability of a given defendant is enhanced beyond that defendant's percentage of fault if another culpable defendant is insolvent*. We do not believe that the goal of linking liability with fault is furthered by a rule that allows a particular defendant's liability to be determined by the happenstance of the financial wherewithal of other defendants.") (emphasis added).
[48] *Carroll*, 29 S.W.3d at 22.
[49] *See* Doc. 3250.
[50] *Dotson*, 29 S.W.3d at 29.

13

not depart from the clear policy of Tennessee, and should not preclude the jury from allocating the appropriate percentage of fault to these at-fault governmental entities, even if they are immune under the public duty doctrine.

## III.   Conclusion

The SSC Defendants respectfully request this Court deny the PSC's Motion, which is entirely unsupported by controlling Tennessee case law.

First, the PSC misstates the public duty doctrine. It provides governmental entities with *immunity* from liability when sued. It does *not* limit the jury's ability to allocate fault against immune non-party governmental entities. In fact, Tennessee law is clear that fault *can* be allocated to immune non-parties. The PSC cannot point to any Tennessee decision supporting their strained argument. Without "explicit support" for their position, this Court must deny the PSC's Motion.

Second, the Court need not go past the handful of leading cases on the public duty doctrine to know that the doctrine does not apply to the SSC Defendants' comparative fault allegations against the FDA and Mass. BoP because the SSC Defendants assert reckless misconduct. Accordingly, a "special duty" applies, removing the public duty doctrine's protection for the FDA and Mass. BoP.

Lastly, policy behind Tennessee's comparative fault scheme is well-settled: it ensures that tortfeasors do not pay more than their percentage of fault. To grant the PSC's Motion, the Court would have to depart from decades of sound policy supporting Tennessee's comparative fault law. Logic and law support denial of the PSC's Motion.

14

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

/s/ Chris J. Tardio
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (515) 254-0459
chris@gideoncooper.com

*Attorneys for the SSC Defendants*

AND

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**

/s/ Parks T. Chastain
**PARKS T. CHASTAIN****
**KENT E. KRAUSE****
**ASHLEY E. GENO****
P. O. Box 23890
Nashville, TN  37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (fax)
pchastain@bkblaw.com
kkrause@bkblaw.com
ageno@bkblaw.com

*Attorneys for the SSC Defendants*

* Admitted pursuant to MDL Order No. 1.
** Admitted *pro hac vice*.

## <u>CERTIFICATE OF SERVICE</u>

     I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 12th day of January, 2017.

                                          /s/ Chris J. Tardio