UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: )<br>)<br>NEW ENGLAND COMPOUNDING PHARMACY, INC.)<br>PRODUCTS LIABILITY LITIGATION, )<br>)<br>) | Multi-District Litigation<br>Case No. 1:13-md-2419-RWZ |

**FEBRUARY 2017 STATUS REPORT OF TORT TRUSTEE**

    Lynne F. Riley, Tort Trustee[1] under the Tort Trust dated June 4, 2015 created pursuant to the *Third Amended Joint Chapter 11 Plan of New England Compounding, Inc.* confirmed by the United States Bankruptcy Court for the District of Massachusetts on May 20, 2015, hereby submits a report on the status of claims processing, lien clearance and payments in the NECC National Settlement annexed hereto as <u>Exhibit A.</u>

                                         Respectfully Submitted,

                                         LYNNE F. RILEY, TORT TRUSTEE

                                         <u>/s/ Lynne F. Riley</u>

Dated: February 8, 2017

---

[1] Capitalized terms used, but not otherwise defined herein shall have the meanings ascribed to those terms in the *Third Amended Joint Chapter 11 Plan of New England Compounding, Inc.*

## CERTIFICATE OF SERVICE

      I, Lynne F. Riley, hereby certify that on the date set forth above I caused true copies of the foregoing document to be served through the Court's CM/ECF system upon all registered electronic filers appearing in this case.

                                                             /s/ Lynne F. Riley
                                                             Lynne F. Riley

# Exhibit A

**STATUS OF CLAIMS PROCESSING, LIEN CLEARANCE AND PAYMENTS IN THE NECC NATIONAL SETTLEMENT**

A. **Adjudication of Claims by the National Claims Administrator**.

A total of 2,352 claims have been filed with Epiq, the National Settlement Administrator. Of these, 2,005 claims have been fully or partially approved by Epiq and/or Judge Neiman, 310 claims have been fully denied by Epiq and/or Judge Neiman, 21 were invalid (typically a duplicate claim filed by a spouse), and 2 were withdrawn by the claimant. 53 of the claims that have been approved are awaiting receipt of final determination letters from Epiq, and 82 applied for and were approved under a new base point category and pursuant to the court approved procedures will receive a final determination letter after all other claims are resolved. Epiq anticipates that all remaining final determination letters will be sent by the end of February 2017.

B. **Status of Appeals to Judge Neiman.**

128 claimants originally filed appeals of their final determination with Judge Neiman, the Court-appointed Appeals Administrator. As of February 6, 2017, Judge Neiman issued decisions on 127 of the filed appeals and 1 appeal is still under consideration.

C. **The Tort Trustee's Efforts to Resolve Claims Asserted by Public and Private Entities for Reimbursement of Health Care Costs.**

   1. **Claims for health care cost reimbursement.**

As required under federal law, the Tort Trustee submitted the required information on proposed payments to approved claimants to the Center for Medicare Services ("CMS") who promptly returned Medicare eligibility information on each claimant. Information on each approved claimant was provided to the various state Medicaid agencies through a third party, the Garretson Resolution Group ("Garretson"), to determine if those agencies have claims for medical expenses involving these claimants. As of February 6, 2017, State Medicaid eligibility results have been received for over 97% of all approved claimants. In addition to receipt of lien information from Medicare and Medicaid, the Tort Trustee has also received claims for health care cost reimbursement from various private entities.

### 2. Lien packages were previously issued to 1,912 approved claimants and their attorneys

As previously reported, by December 1, 2016, the Tort Trustee, with the assistance of her staff, attorneys, and certain staff of members of the PSC, issued lien letter packages to all of the 1,912 claimants eligible to receive a lien package.  An identical lien package was sent to counsel for each represented claimant.

A lien package was issued for the 5% of finally approved claimants for whom the Tort Trustee had not yet received lien information from a state Medicaid agency. Those claimants were informed that, subject to their return of the properly executed certification and other forms, they would be sent their initial payment, and that if subsequent data from their state's Medicaid reporting agency indicated a claim for reimbursement, then the Medicaid lien would need to be satisfied through future settlement payments, or otherwise.

Of the 2,005 fully or partially approved claims, approximately 1,950 have received a lien package to date. The Tort Trustee anticipates sending lien packages to the remaining approved claimants by the end of February, 2017.

### 3. Update on Payments to Finally Approved Claimants Who Have Responded to the Lien Package.

As claimants return properly executed certifications and other forms, claims for reimbursement by public and private entities are thereby cleared.  Under the lien resolution agreement with Medicare, Medicare must then provide its final approval for the issuance of initial payments within 5 business days.  To date Medicare has typically provided its final approval within three to four business days.  Once Medicare sends its final approval to the Tort Trustee, checks are being issued for a claimant's initial payment, typically within 24 hours.

#### i. **Payments made to claimants to date**.

The Tort Trustee had previously represented to the Court that every effort would be made to send initial payment checks by December 31, 2016 to claimants who returned properly executed forms and certifications in response the lien packages to the Tort Trustee prior to December 15, 2016 and who did not opt-out of the lien resolution program with CMS or the participating lienholders.  Of the 1,912 claimants sent lien packages by the Tort Trustee through

2

December 1, 2016, approximately 1,126 claimants responded by returning materials to the Tort Trustee on or prior to December 15, 2016.  Of these, 901 claimants returned those materials fully and properly executed.  The remaining 225 claimants filed a notice opting out of the lien resolution programs, had some deficiency in the materials returned in response to the lien package, were subject to some data discrepancy or other hold on payment preventing issuance of a check from the Tort Trust.  To date, the Tort Trustee has followed up on deficient submissions and sent approximately 300 deficiency letters asking claimants to cure one or more defects in their response to the lien package.

As of today, the Tort Trust has mailed 1447 claim checks.  Of these, 134 checks were payments from one of the individual clinic settlements – meaning 134 individuals received both a check from the national settlement and from a clinic settlement.

The Tort Trustee continues to receive responses from claimants to the original lien letters as well as documents from claimants curing deficiencies in their original responses.

To date, funds disbursed to claimants by the Tort Trustee total $51,921,630.16.

> **ii.  Payments held pending resolution of issues regarding Rawlings/CMS split and BCBS TN Opt-out right [addressing Docket #3298: Motion to Ascertain Status of Payment by Tort Trustee and for Court Intervention to Set Deadline for Resolution of Issue(s) that is Causing Payments to be Withheld].**

**a.     Rawlings Issue**:  In late December 2016, an issue arose regarding a 50/50 split of the negotiated lien percentage as set forth in the CMS claim resolution agreement with regard to a proposed 50/50 split with Rawlings & Associates PLLC health insurance clients. The issue involved the level of proof CMS required to ensure that each Rawlings insurance plan was entitled to the proposed 50/50 split.  The Tort Trustee and counsel for the PSC worked with the parties to resolve this issue, and this morning CMS provided notice to the Tort Trustee that based upon recent correspondence from Rawlings, CMS will consider Rawlings a participating lienholder under the CMS claim resolution agreement, entitling claimants to the same 50/50 split provided for under the agreement with other participating lienholders. The Tort Trustee is submitting the names of claimants affected by this issue on her next list to CMS seeking approval of payments, which will be submitted to CMS tomorrow.  It is therefore expected that

checks to the affected claimants will be issued within the next 5 business days.  As of this date, the Tort Trustee estimates that approximately 30 claimants have been affected by this issue.[1]

        **b.**      **BCBS TN Issue**:  Under the SHP claim resolution agreement, BCBS TN has a right to opt-out of the agreement if more than 20% of the individuals in any given group of claimants notify the Tort Trustee of their intention to opt out.  For BCBS MI and for BCN (the other Blue Cross entities participating in the agreement), the Tort Trustee received enough lien waivers indicating participation to know that the 20% threshold would not be reached and initial payments to those participating claimants whose claims had been approved and liens had been cleared were made.  For BCBS TN, based on responses received as of 1/24/17, the 20% opt-out threshold was met for the two groups of allowed claimants. Based on this, on 1/24/17, the Tort Trustee provided notice to BCBS TN that in order to proceed with processing these payments the Tort Trustee needed to know whether BCBS TN would invoke its opt-out right or waive the opt-out.  Under the agreement, BCBS TN has 30 days to decide whether it will waive the opt out.  If BCBS TN will not waive its opt-out right, then those claimants that opted into the agreement will need to resolve their BCBS TN liens individually.  Communications between the Tort Trustee and a representative of BCBS TN are ongoing and the Tort Trustee is promptly providing all information requested to assist BCBS TN in its decision.  As of this date, approximately 12 claimants' payments are on hold due to this issue.[2]

---

[1] The Tort Trustee informed Attorney Clayton that of the 11 clients named in his Motion, 9 of his clients are impacted by this issue. The Tort Trustee also informed Attorney Clayton that of the remaining 2 clients, one received payment and the other is impacted by the BCBS TN issue, discussed in subsection b, below.

[2] As indicated in fn.1, one of Attorney Clayton's clients opted into the SHP claim resolution agreement and is therefore affected by this issue.

D. **Summary Chart**

For the Court's convenience, the pertinent numbers set forth above are summarized in the chart below:

| Adjudication of Claims | | |
|---|---|---|
| Total Claims Filed: | 2,341 | |
| Total Approved Claims to Date | 2,005 | |
| Total Claims Fully and Finally Denied | 310 | |
| Claims Withdrawn by the Claimant | 2 | |
| Invalid Claims | 21 | |
| Claims Still Under Consideration | 3 | |
| Claimants Awaiting Final Determination Letter | 138 | |
| Approved | 53 | Final determination letter anticipated by February 28, 2017 |
| Applied for and approved under different base category | 82 | Final determination letter anticipated by February 28, 2017 |
| Still under consideration by Epiq or Judge Neiman | 3 | |

| Lien Clearance and Initial Payments to Finally Approved Claimants | | |
|---|---|---|
| Number of Claimants eligible to receive lien package | 2,005 | |
| Number of Claimants Sent lien package | Approx. 1,950 | |
| Number of claimants mailed initial payments to date | 1,313 Nat'l<br>134 Clinic | |

5