UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION <br><br> THIS DOCUMENT RELATES TO: <br><br> *Cox v. Ameridose, LLC. et al.*, No. 1:13-cv-12918; <br> *Dingess v. Ameridose, LLC, et al.*, No. 1:13-cv-12490; <br> *Hubbard v. Ameridose, LLC, et al.*, No. 1:13-cv-12922; <br> *Jackson v. Ameridose, LLC, et al.*, No. 1:13-cv-12923; <br> *Johnson v. Ameridose, LLC, et al.*, No. 1:13-cv-12915; <br> *Lapiska v. Ameridose, LLC, et al.*, No. 1:13-cv-12914; <br> *Nealon v. Ameridose, LLC, et al.*, No. 1:13-cv-12491; <br> *Norris v. Ameridose, LLC, et al.*, No. 1:13-cv-12682; <br> *Palmer v. Ameridose, LLC, et al.*, , No. 1:13-cv-12688; <br> *Reed v. Ameridose, LLC, et al.*, No. 1:13-cv-12917; <br> *Keyes v. Special Surgery Ctr., et al.*, No. 1:13-cv-12998. | MDL No. 2419 <br> Master Dkt. 1:13-md-02419-RWZ |

**PLAINTIFFS' STEERING COMMITTEE'S RESPONSE IN OPPOSITION TO THE SSC DEFENDANTS' BILL OF COSTS [DKT NO. 3323]**

The Plaintiffs' Steering Committee ("PSC") hereby files this Response in opposition to the Bill of Costs [Dkt. No. 3323] filed by the Specialty Surgery Center ("SSC") and Dr. Kenneth Lister, MD (collectively, the "SSC Defendants"). The Bill of Costs should be denied on the merits or, at a minimum, denied as premature.

**BACKGROUND**

This multi-district litigation includes claims against clinics in multiple states who purchased contaminated Methylprednisolone Acetate ("MPA") from the New England Compounding Center ("NECC"), causing deaths and serious injuries to many of those clinics' patients. These include lawsuits related to patients of the St. Thomas Neurosurgical Center ("St. Thomas Neurosurgical) in Nashville, Tennessee and patients of the Specialty Surgery Center in

Crossville, Tennessee.  All of the 11 cases at issue were filed in *2013*.[1]

During the course of the MDL, defendants in the St. Thomas Neurosurgical and SSC matters all sought to place blame on others for their misconduct, including NECC, contractors of NECC, and even governmental entities such as the Food & Drug Administration and the Tennessee Board of Pharmacy.[2]  Discovery in the Saint Thomas Neurosurgical cases advanced ahead of the SSC matters both as to common-issue and case-specific/bellwether discovery, including expert disclosures.  In the SSC matters, the parties are still engaged in both common-issue and case-specific discovery and no party has yet made expert disclosures (on common issues or on case-specific issues).[3]

On September 12, 2016, approximately *three years* after the underlying cases were filed, the SSC Defendants moved to dismiss 15 of the 24 cases against them under Rule 12(b)(6) for failure to state a claim.[4]  The basis for the motion was a supposed technical requirement under the Tennessee Health Care Liability Act ("THCLA") on an issue of first impression under Tennessee law.  The motion concerned only the face of the pleadings and the procedural history of the case – it did not relate in any fashion to discovery taken in the SSC matters or the MDL more generally.  On November 17, 2016, the Court granted the motion in part, holding that ten of the 24 cases pending against SSC should be dismissed.[5]  On February 10, 2017, the Court dismissed an eleventh case (*Keyes*) on the same grounds, and entered final judgment in *Keyes* on

---

[1] *See, e.g.*, *Cox v. Ameridose*, 1:13-cv-12918 , Dkt. No. 1 thereto (filed Sept. 9, 2013).
[2] In the pending Motion for Judgment on the Pleadings (Dkt. No. 3249), the remaining plaintiffs in the SSC matters have moved for judgment on all claims of comparative fault with respect to public entities.
[3] Those deadlines have been continued pending resolution of the PSC's Motion for Sanctions.
[4] Dkt. No. 3086.
[5] Dkt. No. 3188.

2

February 16, 2017.[6]  Thus, approximately three years after each the 11 cases at issue were filed, the Court found that the face of the pleadings in those 11 cases was deficient for failure to attach a certificate of good faith.  The Rule 12 motion on which those judgments were premised were not supported by any discovery or any materials gathered in those cases.  Accordingly, the Court's ruling did not reference or otherwise rely upon any of the intervening discovery in the MDL, nor was the substance of that discovery at issue in the underlying motion.  The Court ultimately entered a separate order of final judgment in those ten matters on January 10, 2017.  Of those ten cases, plaintiffs in two cases (*Norris* and *Palmer*) have filed notices of appeal (*see* Dkt. Nos. 3234 and 3235).[7]  Plaintiffs in the remaining eight cases chose not to appeal.  In the eleventh case (*Keyes*), the Court entered final judgment on February 16, 2017 and the deadline for that plaintiff to appeal has not yet run.[8]

After filing a placeholder Motion for Discretionary Costs that the PSC contended was premature,[9] SSC filed the instant Bill of Costs with a supporting Memorandum.[10]  SSC seeks to recover costs for *pro hac vice* admission fees for the MDL generally (for obtaining certificates of good standing), deposition transcripts related to common issues (including, *inter alia*, experts deposed in non-SSC cases), and two hearing transcripts.[11]  SSC claims that these charges were

---

[6] MDL Dkt. No. 3312, *Keyes* Dkt. No. 27.

[7] Arguably, those plaintiffs filed notices of appeal before final judgment entered.  However, under Fed. R. App. P. 4(a)(2), those notices are treated as timely filed as of the date that final judgment entered on January 10, 2017.  *See Ortiz-Gonzales v. Fonovisa*, 277 F.3d 59, 64 n. 8 (1st Cir. 2002) ("A notice of appeal filed after the court announces a decision – but before the entry of the judgment or order – is treated as filed on the date of and after the entry.") (citing Fed. R. App. P. 4(a)(2)).

[8] *See* Fed. R. App. P. 4(a)(1) (giving 30 days to file notice of appeal).

[9] Dkt. Nos. 3247 and 3286, respectively.

[10] Dkt. No. 3234.

[11] In the SSC matters, the SSC Defendants are represented by two sets of insurance defense counsel under different insurance policies, one set retained by SVMIC (Gideon Cooper & Essary PLC) ("Gideon Cooper"), the other retained by State Farm (Brewer Krause Brooks Chastain &

3

"necessarily" incurred in its defense of the ten cases.  SSC argues that the Court should treat each of the 24 cases as having an "equal share" and therefore allocate 11/24th's of the total expenses to the eleven plaintiffs at issue.  SSC makes this argument without addressing the pending appeals, the indivisible nature of the common issue depositions, or the fact that the substance of those depositions never bore any relationship to the SSC Defendants' Rule 12 motion.

## LEGAL STANDARD

A prevailing party can recover certain costs, including for transcripts or copies of records "***necessarily*** obtained for use ***in the case***."[12]  The decision whether to award costs is a matter given to the sound discretion of the district court.[13]  As this Court has previously found, "once a non-prevailing party has raised specific objections to a bill of costs, the prevailing party must make some showing to establish that its costs are necessary and reasonable."[14]  Courts within this circuit routinely exercise the discretion not to award costs in whole or in part where, after a sufficient challenge, the prevailing's party's burden has not been met.[15]  With respect to deposition transcripts, this Court has held that transcripts that did not factor into the Court's dispositive ruling were not "necessarily obtained" for the use in the case and, therefore, should

---

Burrow) ("Brewer Krause").  In other MDL cases, Gideon Cooper also represented St. Thomas Neurosurgical and the PCA Pain Clinic, and participated on behalf those clients and/or SSC in the depositions and hearing at issue.  Here, it appears that all of the invoices are at issue were incurred only by the law firm of Brewer Krause.  To the extent that Gideon Cooper already had copies of these transcripts through its representation of clients in the Tennessee cases (SSC, St. Thomas Neurosurgical, and the PCA Pain Clinic), it was unnecessary for Brewer Krause to order transcripts separately – rather than simply to obtain a copy from Gideon Cooper.  If that is the case, it would therefore be unfair to charge the Plaintiffs at issue for those unnecessary charges.

[12] *Keurig, Inc. v. JBR, Inc.*, 2014 U.S. Dist. LEXIS 69631, at *3 (D. Mass. May 21, 2014) (citing 28 U.S.C.A. § 1920(2) (relating to electronically recorded transcripts).
[13] *Hillman v. Berkshire Med. Ctr., Inc.*, 876 F. Supp. 2d 122, 124 (D. Mass. 2012).
[14] 876 F. Supp. 2d at 125 (granting motion by non-prevailing party to deny bill of costs, where prevailing party failed to carry its burden to show that costs were necessary and reasonable).
[15] *See Hillman*, 876 F. Supp. 2d at 125; *Kenna v. U.S. Dep't of Justice*, 1991 U.S. Dist. LEXIS 12468, at *2-3 (D.R.I. July 16, 1991) (denying costs with respect to two of six depositions where court concluded that depositions "were not reasonably necessary for the resolution the case").

not be taxed against the non-prevailing party.[16]

## ARGUMENT

SSC's Bill of Costs is both premature and without merit.

### I. The Court Should Deny the Bill of Costs as Premature

#### A. It Would Be Premature for the Court to Tax Costs Against Plaintiffs with Pending Appeals (*Norris* and *Palmer*) or Who Still Have a Right to Appeal (*Keyes*)

As an initial matter, it would be unfair and unnecessary to tax costs against in the *Norris* and *Palmer* cases that are the subject of an appeal of the Court's underlying Order dismissing those cases. The appeals concern a matter of first impression on an issue of Tennessee law that no Tennessee court has ever addressed. If the appeals in *Norris* and *Palmer* are successful, the Court's dismissal ruling will be reversed and the cases will be remanded to proceed on the merits. It is within the Court's discretion to defer the taxation of costs while an appeal on the merits is pending, and the Court should exercise that authority here, particularly because the appeals involve a novel legal issue.[17]

Furthermore, the Court should not tax costs against the Plaintiff in *Keyes* unless and until the deadline for that Plaintiff to file an appeal expires without a timely notice of appeal.[18] The

---

[16] *Keurig*, 2014 U.S. Dist. LEXIS 69631, at *7-8 (denying request for cost as to sixteen deposition transcripts out nineteen requested, where sixteen transcripts did not relate to the dispositive summary judgment ruling).

[17] *See, e.g.*, *Lasic v. Moreno*, 2007 U.S. Dist. LEXIS 88608, at *2-3 (E.D. Cal. Nov. 21, 2007) (deferring consideration of bill of costs until disposition of the appeal, in the interest of judicial economy); *Leibovitz v. Paramount Pictures Corp.*, 1997 U.S. Dist. LEXIS 13243, at *1 (S.D.N.Y. Sept. 3, 1997) (deferring Rule 54 motion until resolution of appeal, where appeal concerned "novel issues of law").

[18] As the PSC has previously explained, the prevailing rule in this District is that motions for discretionary costs should be filed "within fifteen (15) days of the earlier of (i) the expiration of the time allowed for appeal of the final judgment or decree, or (ii) receipt by the Clerk of the Mandate of the Court of Appeals." *See Taxation of Costs,* U.S. Dist. Ct. for the D. Mass. (Jan. 18, 2017), available http://www.mad.uscourts.gov/resources/pdf/taxation.pdf.

SSC Defendants' Bill of Costs is premature as to *Keyes*, as it is the practice of this Court to await expiration of the time for filing an appeal before considering a motion for discretionary costs.

### B. It is Premature for the Court to Tax Costs Before the Remaining Cases, Claims, and Defenses are Resolved

More generally, it is premature for the Court to rule on the issue of discretionary costs until the remaining cases, claims, and defenses in the thirteen remaining cases are resolved.

For example, several of the deposition transcripts relate to depositions of representatives from public entities including the FDA, the Massachusetts Board of Pharmacy, and the Tennessee Board of Pharmacy.  As the SSC Defendants readily admit, they ordered those transcripts to support claims of comparative fault against public entities.[19]  However, if the Court grants the PSC's Motion for Judgment the Pleadings (Dkt. No. 3249) – which has been fully briefed and argued – those comparative fault defenses will be stricken.  Until the Court rules on that Motion, it is premature and unfair to tax costs against non-prevailing plaintiffs for transcripts that relate only to comparative fault defenses at issue in the Motion.

Essentially the same considerations hold true with respect to the other depositions specific to comparative fault defenses.  These include the depositions of (1) common-issue fact witnesses Mario Giamei, Jr., Cory Fletcher, Owen Finnegan, Belmira Carvalho, Annette Robinson, and Stephen Haynes (NECC), Edwin Cardona, Edgardo Camacho, Ricardo Dos Santos, and Suneela Mistry (UniFirst), Tommy Means (American Research Laboratories), Stephen O'Neill (Scientific Air Analysis), Francis McAteer, and Michael DeBeau (Victory Heating and Air Conditioning Company); and (2) common-issue experts Raymond Schneider, Laura Thoma, Robert Guardino, William Allen Mixon, Keith St. John, Brian Reisetter, Ian Wallis, and Phillip Austin.  The validity of the comparative fault defenses relative to the private

---

[19] *See* Dkt. No. 3323-5, Chastain Affidavit at ¶¶ 12 and 17.

entities will ultimately be tried to a jury in the remaining cases, including both bellwether cases. To the extent the jury allocates zero fault to one or more (or even all) of these other entities, the PSC will have a strong argument that no expenses related to those third parties should be taxed against any plaintiff because the SSC Defendants did not "prevail" as to its comparative fault defense in whole or in part. Furthermore, if the remaining plaintiffs prevail at trial against the SSC Defendants, it would be unfair to treat expenses for each deposition at this stage as taxable *against* certain plaintiffs (those at issue here), where expenses for the same transcripts will not be recoverable by the SSC Defendants later and may instead be taxed *in favor* of the plaintiffs who prevail at trial.

Accordingly, at a minimum, the Court should deny the Bill of Costs as premature. The Court should at least wait for resolution of the remaining cases before deciding whether to tax costs against the 11 plaintiffs at issue and in what amount.

### C. The Deposition Transcripts at Issue Were Not "Necessarily Obtained" for Use in the Dismissed Cases and Therefore Should Not Be Taxed Against the 11 Plaintiffs at Issue

Even if the SSC Defendants' Motion were not premature, the Court should deny the taxation of costs on the merits for multiple reasons.

First, the basis for the dismissals at issue is the Court's Order (Dkt. No. 3188) granting (in part) the SSC Defendants' Rule 12(b)(6) Motion to Dismiss (Dkt. No. 3086). The underlying briefing and the Court's ruling related only to the procedural history of the case and the allegations set forth in the plaintiffs' pleadings. The motion did not concern or rely upon *any* of the deposition or hearing transcripts for which the SSC Defendants now seek to recover costs. Indeed, in compliance with the Rule 12(b)(6) standard, the Court did not look outside the pleadings, meaning that all of the discovery transcripts for which the SSC Defendants now seek

7

reimbursement were necessary to obtain the judgments at issue. In *Keurig, Inc. v. JBR, Inc.*, this Court made clear that defendants should be not permitted to recover transcript-related costs where the transcripts did not play a part in the dispositive ruling at issue.[20]  Here, the Court should deny recovery of the costs of the deposition and hearing transcripts at issue for the same reason. The transcripts at issue have no relationship to the Rule 12 motion on which the Court awarded judgment to the SSC Defendants in the 11 cases at issue. Moreover, it is particularly unfair to tax costs against plaintiffs where the motion at issue relates only to the *face of the pleadings* – thus, all of the discovery for which the defendants seek costs were unnecessary to resolution of those cases and could have been decided without any discovery at all. The SSC Defendants have not offered any explanation as to why they waited until September 2016 to move for dismissal – presumably, they could have filed the motion and obtained a favorable ruling much earlier in this litigation. It would be manifestly unjust to hold these 11 plaintiffs responsible for costs that were unnecessary and could have been avoided by an earlier-filed motion.[21]

Second, even if the Court were to examine whether the transcripts were "necessarily obtained" to support SSC's defense of any particular case more generally, the Court should find that the SSC Defendants have failed to meet their burden. Of the numerous deposition transcripts for which the SSC Defendants seek recovery, *none of those transcripts involve case-specific discovery*. In fact, all but five transcripts (Jean Atkinson, Kimberly Bowlin, Ronald and Gina Calisher, and Larry Moore) involve common-issue discovery in other cases. Many of the

---

[20] 2014 U.S. Dist. LEXIS 69631, at *7-8 (denying costs for sixteen out of nineteen deposition transcripts, where defendant failed to show that the sixteen transcripts supported the defendant's motion for summary judgment).

[21] Indeed, it would create a perverse incentive for a defendant to refrain from filing Rule 12 motion, litigate a case for some time, move for judgment on the pleadings, obtain a judgment, and seek to hold the plaintiff for all intervening costs taxable under 28 U.S.C. § 1920.

deposition transcripts relate to experts disclosed by parties in the St. Thomas Neurosurgical cases (Schneider, Thoma, Guardino, Mixon, St. John, Reisetter, Wallis, and Austin) – ***to which the SSC Defendants are not a party***.  Other transcripts concerning depositions related to NECC, its contractors, and public entities that the SSC Defendants would have taken to defend itself regardless of the number of cases against it.  Similarly, the SSC Defendants would have incurred the same transcript expenses for the five depositions in the SSC matters regardless of the number of cases against it.

Under the relevant standard, the SSC Defendants can recover their costs only for transcript expenses "necessarily obtained" for use in each particular dismissed case.  The SSC Defendants have not made that showing.  To the contrary, the SSC Defendants seek to recover ***common*** litigation expenses that were ***not*** necessary to any particular dismissed case and that relate equally to thirteen non-dismissed cases (including the two bellwether cases) that are proceeding towards trial on the merits.  Although the SSC Defendants purport to seek an equitable allocation of expenses by "share," they cite no authority for the proposition that the Court should allocate common deposition expenses in this fashion.  Indeed, as a practical matter, SSC's interest in each deposition was not incurred "1/24th" because of any individual plaintiff – SSC would have taken each deposition (and participated in each hearing) regardless of the number of plaintiffs.  At any rate, it may be that the remaining Plaintiffs will prevail on the merits of their claims and/or with respect to the SSC Defendants' comparative fault defenses.  If so, it would be perverse to tax those costs against the earlier non-prevailing plaintiffs.

The situation might be different if any of the deposition transcripts at issue related to case-specific discovery in the dismissed SSC matters, rather than common issue discovery.  For example, if the SSC Defendants had deposed individual plaintiffs, fact witnesses, or case-

9

specific experts in *any* of the 11 cases at issue, they might have a colorable argument that the expense for a particular deposition transcript was "necessary" to that particular case. But none of that discovery took place in the 11 cases at issue. It is therefore unfair to force the 11 dismissed plaintiffs to pay for costs that were not specific to their case, particularly where the merits of the 13 remaining cases are unresolved and, by the SSC Defendants' own logic, will turn in some fashion on the deposition transcripts that it claims are necessary to litigate those 13 cases. In sum, there is no reason to foist common issue transcript costs – as opposed to case-specific transcript costs – onto the 11 dismissed plaintiffs.[22]

For all of these reasons, the Bill of Costs should be denied.

Dated: March 2, 2017

Respectfully Submitted,

**/s/ Benjamin A. Gastel**
J. Gerard Stranch, IV
Benjamin A. Gastel
Anthony A. Orlandi
BRANSTETTER, STRANCH &
JENNINGS, PLLC
223 Rosa L. Parks Ave., Suite 200
Nashville, TN 37203
Telephone:  615/254-8801
Facsimile:  615/255-5419
gerards@bsjfirm.com
beng@bsjfirm.com

---

[22] The Defendants also ostensibly seek $90 in fees for admission *pro hac vice*, reflecting the cost of obtaining certificates of good standing. As an initial matter, they provide no support for the notion that the cost of obtaining a certificate of good standing – as opposed to the *pro hac vice* admission fee itself – is recoverable as a cost. Moreover, the Defendants make no showing why the Plaintiffs should bear the cost of SSC's decision to use Tennessee counsel. The Plaintiffs did not select the District of Massachusetts as the venue for the MDL – instead, the JPML selected that venue and all related cases (including the 11 at issue) were transferred to this Court by operation of the JPMLs' decision. Also, counsel for SSC would have needed to obtain certificates of good standing regardless of the dismissal of these 11 cases. Under the circumstances, there is no reason to foist the fees for a certificate of good standing onto the 11 dismissed plaintiffs. Indeed, the only case that the Defendants cite in their brief related to this issue is *Keurig*, in which this Court *disallowed* fees for *pro hac* admission under analogous circumstances. *See Keurig*, 2014 WL 69631, at *2.

aorlandi@bsjfirm.com

*Plaintiffs' Steering Committee and TN Chair*

Thomas M. Sobol
Kristen Johnson Parker
HAGENS BERMAN SOBOL SHAPIRO, LLP
55 Cambridge Parkway, Suite 301
Cambridge, MA 02142
Telephone:  617/482-3700
Facsimile:  617/482-3003
tom@hbsslaw.com
kristenjp@hbsslaw.com

*Plaintiffs' Lead Counsel*

Elizabeth J. Cabraser
Mark P. Chalos
LIEFF CABRASER, HEIMANN & BERNSTEIN, LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone:  415/956-1000
Facsimile:  415/956-1008
ecabraser@lchb.com
mchalos@lchb.com

*Federal/State Liaison*

Marc E. Lipton
LIPTON LAW
18930 W. 10 Mile Road
Southfield, MI 48075
Telephone:  248/557-1688
Facsimile:  248/557-6344
marc@liptonlaw.com

Kimberly A. Dougherty
JANET, JENNER & SUGGS, LLC
31 St. James Avenue, Suite 365
Boston, MA 02116
Telephone:  617/933-1265
kdougherty@myadvocates.com

Mark Zamora
ZAMORA FIRM
6 Concourse Parkway, 22nd Floor

11

Atlanta, GA 30328
Telephone: 404/451-7781
Facsimile: 404/506-9223
mark@markzamora.com

Patrick T. Fennell (VSB 40393)
CRANDALL & KATT
366 Elm Avenue, S.W.
Roanoke, VA 24016
Telephone: 540/342-2000
Facsimile: 540/400-0616
pfennell@crandalllaw.com
*Plaintiffs' Steering Committee*

## CERTIFICATE OF SERVICE

I, Benjamin A. Gastel, hereby certify that on the March 2, 2017, the foregoing document was served via the Court's CM/ECF system on all counsel of record in the above-styled action.

**/s/ Benjamin A. Gastel**
Benjamin A. Gastel