UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) |
| | ) |
| | ) MDL No. 2419 |
| | ) Dkt. No 1:13-md-2419 (RWZ) |
| THIS DOCUMENT RELATES TO: | ) |
| | ) |
| Suits Naming Specialty Surgery Center, PLLC | ) |
| | ) |

**SSC DEFENDANTS' OPPOSITION TO**
***PSC'S MOTION FOR CONSOLIDATION OF BELLWETHER TRIALS* [Doc. 3331]**

Specialty Surgery Center, PLLC; Kenneth Lister, MD, PC; and Kenneth R. Lister, MD (collectively "the SSC Defendants") submit this <u>Opposition</u> to the *PSC's Motion for Consolidation of Bellwether Trials* [Doc. 3331].

**<u>Introduction</u>**

The Court should reject the PSC's third attempt to consolidate multiple cases into a single trial. The Court previously instituted a bellwether trial process for consecutive, single-plaintiff trials and specifically denied this same motion twice before. The bellwether process works, and the Court's prior decisions on the same issue are the law of the case. There is no reason to radically change the trial process now.

Moreover, the Plaintiffs' sudden interest in judicial economy must be viewed with skepticism in light of their continued insistence on trying these cases more than 1,000 miles from their home court. On the one hand, the PSC says the cases are too complicated to be sent home to the original court for trial. Now, on the other hand, the PSC claims they are so simple they can be lumped into a single trial without confusing the jury. The Court should not reward this duplicity. The simple fact is that the unavoidable confusion and prejudice resulting from consolidation far outweighs any minimal cost savings.

The Court should deny the motion to consolidate (again).

**<u>Background</u>**

The Court has twice rejected the PSC's requests to consolidate multiple cases into a single trial. First, in 2015, the PSC asked the Court to abandon the bellwether process and consolidate several STOPNC cases for trial.[1] The Court denied this request.[2] Then, in 2016, the PSC moved again to consolidate bellwethers, this time the Box Hill cases, for trial.[3] The Court denied this request with just a docket entry.[4]

---

[1] Doc. 1716.
[2] Doc. 2075.
[3] Doc. 3203.
[4] Doc. 3269.

Now, the PSC asks the Court – for the third time – to consolidate bellwether cases into a single trial, repeating the same already-rejected arguments. This third effort does not explain why the Court should revisit its orders denying the PSC's two prior motions to consolidate. And, this motion (like the first two) again ignores the certain jury confusion and prejudice that will result from trying multiple cases together.

On either ground – that the Court has already decided this exact issue or that, substantively, consolidation is inappropriate – the Court must deny the PSC's motion.

<u>**Argument**</u>

I.  **The Court has already decided this issue twice, and the PSC offers no reason the Court should abandon the law of the case.**

"The law of the case doctrine provides that a decision on an issue of law made at one stage of the case governs the issue during subsequent stages of the litigation except in unusual circumstances."[5]

Here, the PSC first asked the Court to abandon the bellwether process and consolidate six STOPNC cases for trial. The Court denied that motion. Later, the PSC asked the Court to abandon the Box Hill bellwether process and consolidate eight cases for trial. The Court denied that motion.

The instant motion presents the exact same issue and arguments, just in the SSC cases. Yet, the PSC makes no attempt to explain why the SSC cases present "unusual circumstances" warranting departure from the law of the case. For this reason alone, the PSC's motion should be denied.

---

[5] *Stark v. Advanced Magnetics, Inc.*, 894 F. Supp. 555, 557 (D. Mass. 1995) (citing *Commercial Union Ins. Co. v. Walbrook Ins. Co.*, 41 F.3d 764, 769 (1st Cir. 1994); *Abbadessa v. Moore Business Forms, Inc.*, 987 F.2d 18, 22 (1st Cir. 1993)).

**II.   Regardless, the Court should not abandon the bellwether plan in place, which calls for trying several single-plaintiff cases first.**

   **a.   Bellwether trials are the preferred method of achieving efficient and fair resolution of a large number of disparate personal injury cases.**

If the Court is inclined to entertain this repeat motion on its merits, it should be denied, again, for the same reasons. First and foremost, the bellwether process the Court has in place is the best way to resolve the entire lot of SSC cases.

"A bellwether trial is a test case that is typically used to facilitate settlement in similar cases by demonstrating the likely value of a claim or by aiding in predicting the outcome of tricky questions of causation or liability."[6] Bellwether trials have achieved "general acceptance" by the bench, bar, commentators, and treatises as the favored method of efficiently resolving large numbers of personal injury cases outside the class action setting.[7] "[T]he primary purpose of bellwether trials is to provide data points for settlement discussions with respect to the universe of cases…."[8]

In order to serve their intended function, bellwethers must provide the parties with "a <u>sufficient number</u> of representative verdicts and settlements to enable the parties and the court to determine the nature and strength of the claims, <u>whether</u> they can be fairly developed and litigated on a group basis, and what range of values the cases may have"[9]

---

[6] *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015).

[7] *In re Chevron U.S.A., Inc.*, 109 F.3d 1016, 1019 (5th Cir. 1997); *Manual for Complex Litigation (Fourth)* § 22.315 (2004); Eldon E. Fallon, *et al.*, *Bellwether Trials in Multidistrict Litigation*, 82 Tul. L. Rev. 2323, 2338 (2008).

[8] *In re: Gen. Motors LLC Ignition Switch Litig.*, No. 14-MC-2543 (JMF), 2016 WL 1441804, at *9 (S.D.N.Y. Apr. 12, 2016).

[9] *Manual for Complex Litigation (Fourth)* § 22.315 at 360 (2004) (emphasis added).

"The systemic urge to aggregate litigation must not be allowed to trump our dedication to individual justice, and we must take care that each individual plaintiff's – and defendant's – cause not be lost in the shadow of a towering mass litigation."[10]

Indeed, the PSC extolled the virtues of bellwether trials from the outset of this litigation and, with the support of the Defendants, requested that the Court institute a bellwether process.[11] The Court agreed and implemented a framework for selecting and trying bellwethers nearly two years ago.[12]

Since then, the Court repeatedly reaffirmed the use of bellwethers in spite of the PSC's attempts to unilaterally abandon the process.[13]

### b. A single consolidated trial undercuts the purpose of the bellwether process because it fails to provide multiple data points on liability and damages to predict the outcomes of the remaining cases.

The goal of trying the first two SSC bellwether cases is to obtain two data points (verdicts) on liability and two data points on damages to use to predict the outcome of the remaining dozen cases. However, consolidating these two cases into a single trial gives just one data point on liability and thus reduces the predictive value of the trial (the primary purpose of the bellwether).

---

[10] *In re Brooklyn Navy Yard Asbestos Litig.*, 971 F.2d 831, 853 (2nd Cir. 1992).

[11] *See* Doc. 1868 at 22 (advocating for a process to select STOPNC cases that "serve their bellwether purpose – which is to evaluate the 'strength and value of the larger pool of cases' thereby providing 'litigants with reference points or benchmarks that serve as a basis to discuss resolution of the litigation as a whole.'"); Doc. 838 at 9-14 (waxing at length on the overriding importance of selecting a small number of "carefully selected" and truly "representative" cases for trial that include each of the "important variables associated with the universe of included cases.").

[12] Docs. 1425, 2075.

[13] *Compare* Docs. 1716, 1882, 2342, 3203 (various motions and proposed orders filed by the PSC seeking to depart from the bellwether process after it had been in place for months) *with* Docs. 2075, 2309, 2435, 2828, 3269 (orders entered by the Court rejecting unilateral attempts by the PSC to abandon the bellwether process).

To be effective, bellwether trials must provide a <u>sufficient number</u> of verdicts on <u>liability **and** damages</u> so that the parties can extrapolate these verdicts to the remaining cases.[14] The PSC's proposal for a multi-Plaintiff trial would end up with single verdict on liability (did SSC deviate from the standard of care?) and two verdicts on damages (what are the monetary values of Ms. Smith and Ms. Savercool's injuries, assuming the jury finds SSC liable?). A single verdict on liability in a multi-Plaintiff case does little to predict the outcome in the remaining cases because the losing side can dismiss the verdict as an outlier. That is why the bellwether process implemented by the Court contemplates multiple bellwether trials. Multiple verdicts on liability will be far more useful than one in attempting to value the remaining cases.

While a consolidated trial would provide two verdicts on damages, this would be of limited practical value because damages is not a hotly contested issue in these cases. The parties already have a pretty good idea of the range damages due to two unique components of Tennessee law. First, Tenn. Code Ann. § 29-39-102 limits recovery of non-economic damages to $750,000. Second, Ms. Smith and Ms. Savercool's only meaningful economic damages are medical expenses[15], which Tennessee law limits to those actually paid or payable (as opposed to the full "charge" on the medical bill, an amount generally never actually paid).[16]

---

[14] *Briggs*, 796 F.3d at 1051; *Manual for Complex Litigation (Fourth)* § 22.315 at 360.
[15] By way of reference, Ms. Smith appears to have less than $20,000 in medical expenses.
[16] TENN. CODE ANN. § 29-26-119.

In other words, damages are much more predictable in these cases. The variable for which the parties need multiple data points (verdicts) is liability (whether SSC deviated from the standard of care), but a consolidated trial will only provide one data point on this issue, despite the time and expense incurred in preparing and trying <u>two</u> cases.

* * * * * * *

The Court should not abandon the bellwether process. It is in place for a reason. It is the best method for obtaining multiple data points on the most important issues, and it will move these cases toward a fair and efficient resolution.

### III.   Consolidation is inappropriate under the Fed. R. Civ. P. 42 standard.[17]

#### a. Cases should not be consolidated if it will confuse the jury or prejudice a party.

The party proposing consolidation bears the burden of showing that consolidation would promote judicial convenience and economy.[18] Even when common questions of law and fact are present, FRCP 42(a) does not require the court to order consolidation.[19] "If there are [common] issues, the court should 'weigh the prospective benefits of consolidation, in terms of convenience to the parties and judicial economy against the extent of any <u>confusion</u>, delay or <u>prejudice</u> that might result from consolidation.'"[20]

---

[17] Notably, none of the cases cited by the PSC in support of consolidation involve a remotely similar procedural posture, that is, multiple plaintiffs attempting to consolidate personal injury cases where the defendants do not consent to consolidation.

[18] *Powell v. Nat'l Football League*, 764 F. Supp. 1351, 1359 (D. Minn. 1991).

[19] *Arroyo v. Chardon*, 90 F.R.D. 603, 605 (D.P.R. 1981).

[20] *Data Gen. Corp. v. Grumman Sys. Support Corp.*, 834 F. Supp. 477, 487 (D. Mass. 1992) (quoting *Spirit v. Teachers Ins. & Annuity Ass'n*, 93 F.R.D. 627, 639 (S.D.N.Y. 1982)) (emphasis added).

Consolidation is inappropriate if it causes prejudice to a party.[21] When evaluating prejudice, courts must consider the amount of evidence that would overlap if the cases were consolidated, and the attendant confusion.[22] Moreover, the risk of prejudice to a party must be viewed with even greater scrutiny if the savings to the judicial system are slight.[23]

> **b.  Consolidation here is inappropriate because it will confuse the jury and prejudice the Defendants.**

>> **i.  Consolidation of the SSC cases into a single trial will confuse the jury.**

The PSC says offhandedly, as if non-controversial, that the *Savercool* and *Smith* cases are identical.[24] They clearly are not. There are different factual and legal issues in each case that, if presented in a mishmash of proof, will confuse the jury. For example:

- The cases have different legal claims and issues, with different elements and jury instructions, which will confuse the jury.

  - *Savercool* includes a claim of joint and several liability against SSC under a theory that SSC had a "special duty" to protect the Plaintiff.[25] *Smith* does not include this claim.[26] Thus, if this claim is tried to the jury, the Court will instruct the jury that the defendant can be found jointly and severally liable in one case (with certain elements of proof) but will instruct the jury just the opposite in the other case (that fault must be allocated amongst the at-fault parties and nonparties pursuant to the doctrine of comparative fault). There can be little

---

[21] *See Pino-Betancourt v. Hosp. Pavia Santurce*, 928 F. Supp. 2d 393, 395 (D.P.R. 2013); *see also Arnold v. Eastern Air Lines, Inc.*, 712 F.2d 899, 906 (4th Cir. 1983) ("considerations of convenience may not prevail where the inevitable consequence to another party is harmful and serious prejudice"); *Baker v. Waterman S.S. Corp.*, 11 F.R.D. 440, 441 (S.D.N.Y. 1951) (finding "a fair and impartial trial to all litigants" is the most important concern when deciding on consolidation).

[22] *Gilliam v. Fid. Mgmt. & Research Co.*, No. CIV.A. 04-11600NG, 2005 WL 1288105, at *4 (D. Mass. 2005) (denying trial consolidation due to likelihood of jury confusion); *Figueroa v. DiNitto,* No. CIV.A. 03-186 ML, 2003 WL 23142193, at *3 (D.R.I. 2003) (refusing to consolidate plaintiff's multiple suits because second action added new defendants and brought different claims for relief); *Liberty Lincoln Mercury, Inc. v. Ford Marketing Corp.*, 149 F.R.D. 65, 81 (D.N.J. 1993) ("[w]here the evidence in one case is not relevant to the issues in the other, consolidation would create a likelihood of prejudice by confusing the issues").

[23] *Cantrell v. GAF Corp.*, 999 F.2d 1007, 1011 (6th Cir. 1993).

[24] Doc. 3332 at 4 ("The trials of *Savercool* and *Smith* therefore will involve the same claims under Tennessee law against identical sets of defendants….").

[25] *Savercool* First Am. Short Form Compl. at ¶¶ 19-23. Doc. 32, Case No. 1:13-cv-12583.

[26] *See Smith* First Am. Short Form Compl. Doc. 48, Case No. 1:13-cv-12684.

doubt that these jury instructions – with instructions on joint and several liability for the *Savercool* case but contrary instructions for the *Smith* case – will be confusing to the jury.

o   There are potential issues with spoliation of evidence present in the *Smith* case not present in the *Savercool* case. Ms. Smith conceded at her deposition on March 7, 2017, that, just a couple of months ago, she deleted an email account she used in 2012 without taking any steps to search for relevant information.[27] Again, this jury instruction will come in one case but not the other, likely creating confusion for the jury.

o   Likewise, the cases name different Defendants. Only one of the two cases names Kenneth Lister, M.D., P.C.[28] While it is unclear at this juncture what role this Defendant will play at trial, if any, this is just another complication that may confuse jurors.

- <u>Even some of the claims present in both cases will require the jury to evaluate them separately for each case, applying different facts.</u>

o   Both Plaintiffs allege that Dr. Lister failed to properly obtain informed consent before administering the NECC steroid. Even though both Plaintiffs bring this claim, the jury must, confusingly, conduct a specific inquiry into the consent discussion of each Plaintiff and separately analyze the adequacy of each consent discussion. Moreover, the jury must determine whether a reasonable patient in the Plaintiff's position would have refused the NECC MPA, including considering the specific Plaintiff's idiosyncrasies, fears, age, religious beliefs, medical condition, and the impact of refusal on the Plaintiff's health.[29] As a result, the jury will have to conduct two separate evaluations of the adequacy of the consent discussion, two mini-trials within the trial, which lends itself to confusion.

---

[27] Paula Smith Dep. Tr. at 22:9-18; 23:3-6; 111:23-113:7 (Excerpts attached as Exhibit 1).
[28] *Compare Savercool* First Am. Short Form Compl. (Doc. 32, Case No. 1:13-cv-12583) *with Smith* First Am. Short Form Compl. (Doc. 48, Case No. 1:13-cv-12684).
[29] Tenn. Pattern Jury Instructions - Civil 6.25 Informed Consent ("In this case, plaintiff has the burden of proving…that a reasonable patient in plaintiff's position would have [refused the treatment/procedure] if properly advised of the risks of the [treatment] [procedure] [chosen an alternative treatment/procedure]. In determining how a reasonable patient would have acted under the circumstances, you should consider the testimony of the [patient] [plaintiff], the plaintiff's [idiosyncrasies], [fears], [age], [medical condition], [and] [religious beliefs], the presence or absence of alternative [procedures] [treatments] and the potential risks and benefits thereof, and the impact of no [treatment] [procedure] on plaintiff's health." (brackets in original)); *see also White v. Beeks*, 469 S.W.3d 517, 529 n. 9 (Tenn. 2015) (noting trial court's use of Tenn. Pattern Jury Instructions - Civil 6.25 Informed Consent).

- o Both Ms. Smith and Ms. Savercool claim that SSC did not promptly notify them of their exposure to the contaminated medication and make timely recommendations for treatment.[30] These claims – like the informed consent claims – will require separate analyses for each Plaintiff, which will differ depending on when they were notified, what information they received, how they reacted, and whether any purported delay caused any further injury. The facts and analysis for each will be different.

- <u>There are relevant differences on the medical issues in the two cases that will confuse the jury.</u>

  - o Ms. Savercool received <u>epidural</u> steroid injections, while Ms. Smith received <u>facet joint</u> injections. These are two different anatomical locations, with different surgical techniques, different risks and benefits (relevant to the informed consent claims), and potentially different ways that the contaminated medication affected the Plaintiff because of the injection location.

  - o Ms. Savercool claims she suffered from fungal meningitis. However, Ms. Smith suffered from just a local infection. The PSC says that both cases were "confirmed,"[31] but this is (again) wrong. Only Ms. Savercool had laboratory confirmation of fungus. Ms. Smith never even had a test to <u>try</u> to confirm the presence of fungus.[32] So, in one case there may be significant proof regarding the importance of the lack of confirmation of the fungal infection (*Smith*), while, in the other case, there should be little disagreement about fungal infiltration (*Savercool*).

* * * * * * *

In its motion to consolidate, the PSC tells the Court: "Aside from differences in the precise injuries suffered, *Savercool* and *Smith* both involve the [*sic*] essentially the same facts, the same claims, the same legal theories, and the same defenses by the same Defendants."[33] As demonstrated above, the PSC is wrong on virtually every count.

---

[30] Master Compl., ¶ 234(v).
[31] Doc. 3332 at 2.
[32] Paula Smith Dep. Tr. 107:2-108:1 (Excerpts attached as Exhibit 1).
[33] Doc. 3332 at 2.

These two cases vary a great deal on questions key to both liability and damages. They name different Defendants, involve different claims and defenses, and are factually different. The cases are complicated enough for the jury to understand and decide singularly. Forcing the jury to parse out certain facts and legal issues applicable to one case but not the other, and doubling the medical evidence will not help; it will almost certainly confuse the jury.[34]

> ### ii. Presenting a single jury with two trials' worth of damages proof will virtually assure that sympathy will impact the verdict, resulting in prejudice to the Defendants.

The real reason the PSC continues to propose consolidation is that presenting two (or more, as they proposed in previous motions) survivor stories to the jury doubles the sympathetic proof the jury hears. This significantly prejudices the SSC Defendants, just like overloading the jury with photos of a crime victim. Indeed, Judge Stearns limited the Government's proof of injuries to victims in the criminal trial of NECC's head pharmacist for just this reason.[35] The Court should not countenance this thinly-veiled attempt to influence the jury with double damages testimony, particularly in light of the marginal benefits of consolidation.

---

[34] Additionally, the Court has to remember that this is *the first* bellwether trial of the MDL. There is a lot riding on this single trial for predictive value for the rest of the MDL. Risking confusing the jury and not obtaining a reliable verdict in order to achieve minimal cost savings seems short-sighted.
[35] *See* Doc. 897, Dkt. No. 1:14-cr-10363.

### iii. An award of punitive damages (which the Plaintiffs continue to pursue despite the lack of merit) in a consolidated trial would likely violate the Defendants' right to due process.

In *Philip Morris USA v. Williams*[36], the Supreme Court held that imposing punitive damages on a defendant for harm caused to a nonparty violates the defendant's right to due process.[37]

Here, if the Court consolidates the *Smith* and *Savercool* cases, the jury deciding whether to impose punitive damages in the *Smith* case will necessarily hear evidence of alleged harm to a nonparty, Ms. Savercool, and vice versa.[38] [39] Thus, any award of punitive damages will likely be imposed, at least in part, for harm caused to the Plaintiff in the other case (*i.e.*, a nonparty). This potentially violates the SSC Defendants' right to due process and most certainly constitutes prejudice.[40]

## IV. The PSC's sudden interest in judicial economy is suspect, as demonstrated by its position on similar issues.

The PSC spends most of its motion arguing that consolidation serves judicial economy. The Court must view these claims with skepticism given the PSC's prior actions.

---

[36] 549 U.S. 346 (2007).

[37] *Id.* at 353-57.

[38] *Stacey v. Charles J. Rogers, Inc.*, 756 F.2d 440, 442 (6th Cir. 1985) ("Consolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another." (internal citations and quotations omitted)).

[39] *Savercool* Compl. at ¶ 191. Doc. 1, Case No. 1:13-cv-12583; *Smith* Compl. ¶ 166. Doc. 1, Case No. 1:13-cv-12684.

[40] Given the lack of authority on this precise point (punitive damages in a consolidated case), an award of punitive damages will almost certainly result in an appeal, eliminating any efficiencies to judicial economy gained by consolidation.

First, if the PSC was truly concerned with preservation of judicial resources, it would not be forcing the Court to rule on the issue of consolidation for a third time. This is hardly an economical use of the Court's time.

Second, the Middle District of Tennessee is a far more economical venue for trial. Yet, the PSC continues to advocate for trials in Boston despite the obvious cost savings associated with remand at the conclusion of common discovery. If the PSC was sincerely interested in judicial economy, it would have joined the SSC Defendants in suggesting remand of these cases months ago. Instead, the parties continue to bear the costs of trips to Boston. The PSC even has the gall to cite the burden of trying the cases in Boston as a basis for consolidation.[41] The Court should not give credence to this hypocrisy.

Judicial economy would be best served by remanding these cases to Tennessee for further proceedings and trial, as required by the MDL statute, 28 U.S.C. § 1407. The efficiencies of litigating in Tennessee are manifest:

- Travel and housing expenses would be reduced or eliminated entirely as most of the parties, witnesses, experts, and lawyers are located in Tennessee or a contiguous state.

- Parties and counsel, including the "PSC's Tennessee Chair", would not need to be away from their families and patients/clients for an extended period of time.[42]

- While this Court must effectively learn a new area of Tennessee law almost every time a motion is filed, a Tennessee judge's background in Tennessee law would render this unnecessary. This Court has probably been forced to spend dozens, if not hundreds, of hours on areas of Tennessee law it is unlikely to encounter ever again, time which could have been devoted to other parties and their cases.

---

[41] Doc. 3332 at 5-6 ("Furthermore, particularly because both the SSC Defendants' counsel and the PSC's Tennessee Chair are located in Tennessee, it will save substantial attorney time and expense to have a single trial in Boston rather than two trials.").
[42] For example, Dr. Lister and his wife are the primary caregivers for several minor grandchildren, and Dr. Lister continues to see patients in Crossville.

Third, consolidation of two SSC cases actually provides minimal benefit, and is even less economical than consolidation of the STOPNC and Box Hill cases, which the Court concluded was inappropriate. If tried separately as currently planned, the two SSC cases will each require proof of liability and proof of damages. So, in two separate trials, there would be roughly four total counterparts to the trials (two sets of proof on liability and two sets of proof on damages). Consolidating two cases would shave just one of the counterparts (one set of proof of liability), and maybe a day or two of trial time, when compared to trying the cases consecutively. This overall savings is insignificant when weighed against the confusion and prejudice.[43]

By comparison, the PSC proposed trying <u>eight</u> Box Hill cases simultaneously. Thus, instead of having 16 total counterparts to try, there would have been just nine (one set of proof of liability and eight sets of proof of damages). This would have been even more economical than consolidating the SSC cases, but the Court <u>still</u> (correctly) determined consolidation to be inappropriate.

* * * * * * *

If the Plaintiffs were truly concerned with judicial economy, they have had ample opportunity to alleviate the burden of this litigation on the Court and the parties. Even the proposed consolidation could be more efficient. The PSC could have proposed consolidating *Smith* and *Savercool* for a <u>bifurcated</u> trial, with a trial on liability to bind both cases and – if needed – a subsequent trial on case-specific causation/damages. That way, if there is a defense verdict (as there was in the only case against a clinic tried so

---

[43] *Cantrell*, 999 F.2d at 1011 ("[I]f the savings to the judicial system are slight, the risk of prejudice to a party must be viewed with even greater scrutiny.").

far in this outbreak), there would be no need to waste time hearing extensive proof on causation and damages.

However, economy is not the PSC's real goal; the goal is to prejudice the Defendants with double the proof of damages in the hopes of obtaining a verdict through sympathy. The Court should not validate this improper use of consolidation.

<u>Conclusion</u>

The Court should deny the PSC's renewed request to abandon the bellwether process that the Court put in place years ago and repeatedly reaffirmed since. The PSC offers no explanation for why the SSC cases should be treated any differently than the STOPNC and Box Hill cases. Even if the Court were inclined to consider abandoning the bellwether process and lump the SSC bellwethers into a single trial, consolidation of the *Smith* and *Savercool* cases is inappropriate under the Fed. R. Civ. P. 42 standard. There are simply too many differences between the two cases, which will unavoidably confuse the jury, and the cumulative proof of damages will unduly prejudice the Defendants. Moreover, the Plaintiffs' sudden interest in judicial economy is nothing more than a convenient argument, as demonstrated by their continued insistence on litigating the cases in the significantly more expensive venue of Boston.

In any event, there are only 13 cases against SSC.[44] Trying all 13 is not the impossible task presented by mass tort cases. The parties could try all 13 cases concurrently and finish in less time than the MDL has existed. Consolidation is unnecessary and inappropriate. The PSC's motion to consolidate should be denied.

---

[44] The PSC's motion incorrectly states that there are 14 cases against SSC. There are only 13. Plaintiff Wilma Carter has two identical suits pending against the SSC Defendants, Case Nos. 1:13-cv-12187 and 1:14-cv-10041.

Respectfully submitted,

**GIDEON, COOPER & ESSARY, PLC**

*/s/ Chris J. Tardio*
**C.J. Gideon, Jr.***
**Chris J. Tardio***
**Alan S. Bean****
**Matthew H. Cline***
315 Deaderick Street, Suite 1100
Nashville, TN 37238
Ph: (615) 254-0400
Fax: (615) 254-0459
chris@gideoncooper.com

***Attorneys for the SSC Defendants***

AND

**BREWER, KRAUSE, BROOKS & CHASTAIN, PLLC**

*/s/* Parks T. Chastain
**PARKS T. CHASTAIN****
**KENT E. KRAUSE****
**ASHLEY E. GENO****
P. O. Box 23890
Nashville, TN 37202-3890
(615) 256-8787 (PTC)
(615) 256-8985 (fax)
pchastain@bkblaw.com
kkrause@bkblaw.com
ageno@bkblaw.com

***Attorneys for the SSC Defendants***

\* Admitted pursuant to MDL Order No. 1.
\*\* Admitted *pro hac vice.*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that this document filed through the CM/ECF system will be served electronically to the registered participants identified on the Notice of Electronic Filing and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 24th day of March, 2017.

*/s/ Chris J. Tardio*
**Chris J. Tardio**