DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION ) ) ) ) ) THIS DOCUMENT RELATES TO: ) ) Suits Naming Box Hill Surgery Center, LLC ) ) | MDL No. 2419<br>Dkt. No 1:13-md-2419 (RWZ) |

## MOTION FOR RECONSIDERATION OF SUGGESTION OF REMAND OR TRANSFER OF BOX HILL CASES TO MARYLAND AND TO ESTABLISH VENUE IN MARYLAND VIA §157(B)(5) OR §1404(A)

Defendants Box Hill Surgery Center, LLC, Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., LLC (collectively, the "Defendants" or "Box Hill Defendants") file this Motion for Reconsideration of its [Dkt. 3056] Suggestion to Remand the Box Hill Cases to Maryland and to Establish Venue in Maryland because conditions for the Box Hill cases have changed, the landscape in the MDL has changed, and because the Court's recent comments regarding remand appear to contradict earlier Orders on the issue of remand. In the alternative, the Defendants seek guidance as to when this Court intends to remand the Box Hill cases, similar to the guidance provided to other health care provider defendants in Dkt. 2309. The Court is referred to the Box Hill Defendants' Memorandum of Law found at Docket No. 3056-1. In further support, the Box Hill Defendants state as follows:

1. The Defendants are health care providers in Maryland named as defendants by 34 patient Plaintiffs (or their representatives) in lawsuits related to this outbreak. Counsel for those

patient plaintiffs all filed actions in Maryland state court—the Circuit Court for Baltimore County, Maryland,[1] and the Circuit Court for Harford County, Maryland.[2]

2. Eight of those 34 cases—the ones at issue in this MDL—were removed to the U.S. District Court for the District of Maryland by Ameridose, a co-Defendant and sister company of the New England Compounding Center ("NECC") that later settled and was dismissed from all cases. All other National Defendants and NECC-related Defendants were also dismissed after they settled all claims against them. The Box Hill Defendants are the only remaining defendants in all 34 cases.

3. In October 2014, eight specific Box Hill lawsuits were transferred to this multidistrict litigation ("MDL") by the Judicial Panel on Multidistrict Litigation ("JPML") for purposes of consolidated pretrial discovery, pursuant to 28 U.S.C. §1407 as tag along cases.[3] The remaining Box Hill cases were left in the Circuit Court for Harford County, Maryland.

---

[1] The aforementioned lawsuits filed against Box Hill in Baltimore County, Maryland include all of the now Box Hill MDL actions: *Handy v. Box Hill Surgery Center, LLC, et al.* No: 1:14-cv-14019-RWZ; *Armetta v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14022-RWZ; *Torbeck v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14023-RWZ; *Kashi v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14026-RWZ; *Bowman v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14028-RWZ; *Dreisch v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14029-RWZ; *Davis v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14033-RWZ; *Farthing v. Box Hill Surgery Center, LLC, et al.* No. 1:14-cv-14036-RWZ.

[2] The aforementioned lawsuits filed against Box Hill in Harford County, Maryland include the following: *George Adee, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000030); *Eric Arnold v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000025); *Cynthia Bradshaw-Blum, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000026); *Joanne Ebanks-Alger, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000033); *Judy Everhart, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000034); *Mark Gerber, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000036); *Edith Griffith v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000035); *Christopher Itnyre v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000031); *Carl Kramer v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000032); *James V. McClung, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000027); *Phyllis K. Schoppert, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000028); *Gregory Vogt, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000029); *Lori Tillery, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-1389); *Roberta Day, et al. v. Box Hill Surgery Center, LLC, et al.* (12-C-16-1390); *Tony Earl Smith v. Box Hill Surgery Center, LLC, et al.* (12-C-16-000015 MM); and Case No.: 12-C-16-000017 for *Craig Richard Bierly, et al. v. Box Hill Surgery Center, LLC, et al.*; *Jeanne Colburn, et al. v. Box Hill Surgery Center, LLC, et al.*; *Kenneth Cuthbert, et al v. Box Hill Surgery Center, LLC, et al.*; *Brenda Davenport, et al. v. Box Hill Surgery Center, LLC, et al.*; *Theresa Filipowicz, et al v. Box Hill Surgery Center, LLC, et al.*; *Linda Hall, et al. v. Box Hill Surgery Center, LLC, et al.*; *John Jackson, et al. v. Box Hill Surgery Center, LLC, et al.*; *Joseph Katzenberger, et al. v. Box Hill Surgery Center, LLC, et al.*; *Susan Norman, et al. v. Box Hill Surgery Center, LLC, et al.*; *Frederick Ramsey, et al. v. Box Hill Surgery Center, LLC, et al.*; *Louis Yowell, et al v. Box Hill Surgery Center, LLC, et al.*

[3] Dkt. 1507.

Despite involving the same common issues, Plaintiffs' counsel in those actions only ever sued the Box Hill Defendants. It is uncontroverted that this Court has ruled previously that it would not assume authority over any cases in which Plaintiffs only brought actions against health care provider defendants.[4] Accordingly, despite the fact that all common issue facts and circumstances are identical in all of the Box Hill Defendants' 34 cases, eight are in the MDL and 20-plus cases[5] remain in the Circuit Court for Harford County, Maryland.

4.      Since these cases have been filed, the Box Hill parties have actively participated in discovery in both the federal and state court actions, and accomplished substantial common issue fact and expert discovery. This Court's Fourth Amended Protective Order of Confidentiality[6] permits parties in any state court case related to the issues in this MDL to access and use discovery conducted in this MDL.

5.      After significant discovery had occurred, a Conditional Remand Order issued by this MDL Court in September 2016 remanded 66 other MDL cases to their home jurisdictions, where they had been initially filed, including but not limited to, 52 MDL cases against Premier Orthopedics, a New Jersey health care provider.[7] In its endorsement of the Plaintiffs' reasoning for seeking remand, memorialized at Dkt. 3076, the MDL Court determined that the purpose of the MDL had run its course for those cases. In that Order, the MDL Court specifically explained:

> Under 28 U.S.C. § 1407(a), <u>remand of a member action is required</u> 'at or before the conclusion of' consolidated or coordinated pretrial proceedings. In addition, under the JPML's Rules of Procedure, a transferee court may recommend to the JPML that it remand a member action 'at any time by filing a suggestion of remand with the Panel.' R.P.J.P.M.L. 10.1(b). 'A judge should make such a suggestion when he or she perceives his or her role in the case has ended.' In re

---

[4] *See, e.g.,* Dkt. 3084 at 9.

[5] Plaintiffs' counsel has voluntarily dismissed or withdrawn as counsel in several cases since the original filing of these lawsuits.

[6] Dkt. 3035 and 3036.

[7] Dkt. 3084. The Premier defendants and the Box Hill Defendants were on the same identical discovery path and governed by the same discovery deadlines at the time that the Premier (NJ) defendants were remanded back to their home jurisdictions by this MDL Court.

3

Integrated Res., Inc. Real Estate Ltd. P'ships Sec. Litig., 851 F.Supp 556, 562 (S.D.N.Y. 1994).[8]

This Court then offered an example:

> For instance, the JPML may decide to remand when 'everything that remains to be done is case-specific.' In re Bridgestone/Firestone, Inc., ATX, ATX II, & Wilderness Tires Prods. Liab. Litig., 128 F. Supp. 2d 1196, 1197 (S.D. Ind. 2001)...(and) In re Patenaude, 210 F.3d 135, 145 (3d Cir. 2000).[9]

In fact, that was the very reasoning Judge Zobel offered in support of remand of those 66 cases in August 2016, as memorialized in the forefront of the Conclusion section:

> **Because only case-specific discovery remains** for the 66 cases listed above, the Court perceives **its role in these cases has ended** [and] suggests these 66 cases be remanded or transferred to their courts of origin for further proceedings, pursuant to § 1407.[10]

6. Similarly, the Box Hill common fact and expert discovery deadlines have now passed and common issue discovery has been completed. The only remaining discovery is case-specific. Like the Court's determination to suggest remand in the other 66 MDL cases discussed above in August 2016, these 8 Box Hill MDL actions should also be remanded. In doing so, these 8 MDL Box Hill actions would then reasonably join all of the remaining Box Hill cases currently pending and consolidated for trial in Maryland.

7. Since the stated purpose of this MDL all along has been to accomplish consolidated proceedings for the benefit of the parties, remanding these lone 8 MDL cases back to Maryland to be consolidated and litigated with the other 20-plus Box Hill cases referenced above would be reasonable and prudent. It would also be fair to the Box Hill Defendants, who

---

[8] Dkt. 3076 at 10-11 (emphasis added).
[9] Dkt. 3076 at 11.
[10] *Id.* (emphasis added).

4

are currently litigating these cases, involving identical common issues, on multiple fronts in two different jurisdictions. That simply makes no sense.

8. Plaintiffs' counsel in the MDL cases are also involved in the state court Box Hill cases, except for one case. However, this Court and all parties agreed at the April 20, 2017 Status Conference that case-specific discovery would not move forward on the *Rozek* action—the only MDL Box Hill case in which Plaintiffs' attorneys are not located in Maryland. Nevertheless, those attorneys chose to file the *Rozek* action in Maryland.

9. In addition, it appears from recent filings that even actions directly filed in this Court against unrelated health care provider defendants (and not subject to mandatory remand) are being transferred out of this MDL and sent to the parties' local jurisdictions for continued discovery and trial.[11] As such, common sense dictates remanding these Box Hill cases in which only case specific discovery is necessary, since these 8 MDL actions are the only ones left in this MDL, other than 13 Specialty Surgery Center cases that are scheduled to be mediated.[12] The fact that in the Box Hill cases the remaining parties are in Maryland, the medical care at issue occurred in Maryland, and the Plaintiffs chose to file these actions in Maryland state court, further reasonably supports remand.

10. Furthermore, the Plaintiffs' Steering Committee indicated to the Court at the April 20, 2017 Status Conference that it essentially sees the usefulness of the MDL waning and having run its course because of the few remaining cases, the upcoming mediation of the Specialty Surgery Center cases, and the fact that the National Tort Trust payouts are nearing the end. It appears that a July or August timeframe has been suggested to revisit the existence of the PSC at that point. As an aside, the PSC has had little to no involvement with Box Hill common issue

---

[11] Dkt. 3371.
[12] At the April 20, 2017 Status Conference, the PSC indicated optimism that the Specialty Surgery Center cases would settle at or following their June 2017 mediation.

5

discovery, and no involvement whatsoever with the case-specific discovery. All of the discovery has been done and coordinated by Plaintiffs' local counsel. As such, there is no need for a PSC or an MDL in the 8 Box Hill MDL actions that remain, as local counsel has carried that burden for some time now.

11. It is presumed that Plaintiffs' counsel will oppose transfer as they have done previously. Plaintiffs continue to ignore the fact that their desire to object to remand does not *per se* entitle them to a trial in the MDL Court. Rather, the inverse is true. Both parties must agree to a trial in the MDL Court for that to automatically be the case. Defendants have made it clear that they do not agree to a trial in the MDL Court. The Box Hill Defendants will not again analyze the Court's obligation to remand these cases pursuant to *Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26 (1998), and the JPML Rules, as has previously been done extensively. In fact, the Court itself has already acknowledged its obligation to do so multiple times and noted that **each** action transferred to the MDL **must be remanded**.[13]

12. Similar to the question before this Court, the Minnesota District Court addressed this issue in *In re Activated Carbon-Based Hunting Clothing Marketing*. There, the Minnesota District Court presided over an MDL with nine (9) consolidated consumer protection cases, pending for four (4) years, governed by the law in nine (9) different states.[14] The claims involved alleged misrepresentations pertinent to clothing worn by hunters.[15] The Minnesota court managed the cases, including class certification efforts, deciding summary judgment motions (including one appealed to the Eighth Circuit), and discovery, for several years.[16] Pertinent to this instant pending motion, the district court framed the question:

---

[13] *See, e.g.* Dkt. 3706 (discussed, *supra*, at ¶¶ 4-6); *see also* Dkt. 2309 at 21 (emphasis added); Dkt. 3056-1.
[14] *In re Activated Carbon-Based Hunting Clothing Mktg.*, 840 F. Supp. 2d at 1194.
[15] *Id.*
[16] *Id.* at 1194-96.

6

> The question, then, is at what point suggestion of remand becomes appropriate in a multi-district litigation....Generally speaking, whether to remand "turns on...whether the case will benefit from further coordinated proceedings as part of the MDL." In the undersigned's view, the Related Actions have passed the point where they will continue to benefit from coordinated proceedings in this Court.[17]

The court noted that completion of common discovery was the "key factor" in the decision to remand. Because the primary purpose of multi-district litigation is to coordinate discovery, the Minnesota court's coordinated action had served its purpose.[18]

> The parties fully litigated several discovery disputes in this Court, each of which has been resolved. Discovery in [a lead case] was made available for use in each of the Related Actions, and the discovery period in all cases has closed. The "primary purpose" of consolidation, therefore, has been achieved.[19]

The Minnesota District Court identified other objective factors weighing in favor of transfer: the scope of the transferred claims had narrowed because some defendants had settled; the remaining cases were "simple" single-plaintiff cases; and global settlement appeared unlikely.[20] Finally, the Minnesota court emphasized that the remaining claims, while some repetition existed, were all state law claims.[21]

13. Even lack of resolution of all pending motions did not prevent recommendation of remand because the original forum courts were well-equipped to handle the pending state law issues.[22] While some limited pre-trial work remained, that was not a bar to remand – the district court reasonably determined that the original transferor court would get "up to speed" by ruling on the pending state-law-specific motions.[23] Notably, this Court must have agreed with the Minnesota District Court because this Court did the same thing when it remanded the Premier

---

[17] *Id.* at 1198 (internal citations omitted).
[18] *Id.* (citing cases for proposition that, when discovery and depositions are completed, the cases should be remanded; also noting that legislative history of statute supports this).
[19] *Id.*
[20] *Id.* at 1198-99.
[21] *Id.* at 1199 (noting that the transferor courts are better equipped to consider state law issues).
[22] *Id.*
[23] *Id.*

7

cases,[24] which were at the same exact procedural posture and stage of discovery as the Box Hill cases when they (the Premier cases) were remanded.

14. Certainly, efficiency would be better served in Maryland where many more common issues exist between the 8 Box Hill MDL cases, cases against Box Hill by 25 other patient plaintiffs in state court, and even claims by other plaintiffs against a different health care provider defendant (Harford County Ambulatory Surgery Center) in the same Maryland state court as the remaining Box Hill cases. Further, case-specific discovery can continue and the Box Hill cases can proceed to trial as a group, instead of Plaintiffs' selective splintering of the cases between federal court in Massachusetts and state court in Maryland. Moreover, there is no need for a PSC or consolidated discovery in only 8 cases (of which only two cases are designated for case-specific discovery). If the Court still believes its involvement can persuade the Box Hill Defendants to settle, the dialogue with the Court and the parties at the March and April 2017 Status Conferences, and the report of discussions held by the Box Hill Defendants with Mr. Eric Green, should change that belief.

15. Whether or not 157(b)(5) applies or not,[25] the Box Hill cases are proper for remand to Maryland under §1407. An "MDL seeks to promote judicial economy and litigant efficiency by allowing the transferee court to preside over matters *common to all cases.*"[26] The Minnesota court determined that the MDL had run its course and remanded the cases. Following the same logic, the Box Hill cases are best suited in Maryland and should be remanded to their home state at this time since common issue discovery is complete. Moreover, as discussed at length above, this very Court has already determined previously that it was appropriate to

---

[24] Dkt. 3084.
[25] The Box Hill Defendants do not believe that 157(b)(5) applies to choosing the best venue for 8 lone Box Hill cases remaining in this MDL, nor do they waive their right to argue the same. Nevertheless, for purposes of this motion, they will not rehash that argument, nor should it matter.
[26] *Id.* (emphasis in original).

8

transfer cases against other healthcare provider defendants—both with fewer as well as more pending cases against it—at the very same stage of litigation that the Box Hill cases now find themselves.[27] That is, common issue discovery has passed, and case-specific discovery is occurring.[28]

16.     While the MDL Court has previously indicated a potential desire for bringing back any NECC MDL cases for trial that it actually remands, pursuant to the Court's authority in 157(b)(5), the MDL Court has also acknowledged that it still must remand the cases to the transferor court first.[29] This Court also previously recognized that it cannot unilaterally pull those cases back to the MDL Court for trial without a motion filed by the Post-Confirmation Officer or a Plaintiff, which would then be subject to an opposition by Defendants.[30] This Court also previously stated that a defendant is entitled to due process and a hearing before any determination of venue is (finally) made.[31] As an aside, it would be disingenuous for the Post-Confirmation Officer or a Plaintiff to suggest that pushing the Box Hill parties to trial in the MDL would be for the good of protecting the bankruptcy, when nearly a hundred other cases have already been remanded back to their home jurisdictions for trial and there has been no concern from anyone that trying those other cases in their home states would undermine the bankruptcy process or any remaining money in trust, if any. Again, there is nothing distinct about the Box Hill cases.

17.     If the Court does not intend to remand these Box Hill cases at all, despite the previous law of the case, or it intends to remand them and then bring them back, despite the previous procedural history of the cases in this MDL, it would be judicially efficient to indicate

---

[27] *See* Dkt. No. 3076 and 3084.
[28] *Id.*
[29] *See* Dkt. 2309 at 21-23.
[30] *Id.*
[31] *Id.*

9

the same, before the eve of trial. The Court has previously cited judicial efficiency in trying MDL cases in this Court, but has acknowledged that assigning venue to this Court would give rise to a "final" ruling on venue,[32] subject to appeal, which would occur on the eve of trial.

18. Nevertheless, in light of clear statutory and case law, the discussion and examples offered above, as well as this Court's aforementioned rulings and decision to remand MDL cases against other health care provider defendants,[33] Plaintiffs have offered no rational distinction as to why the Box Hill cases should be treated any differently.

19. Moreover, while jurisdiction may establish the power to adjudicate, venue calls on the court to determine the most convenient and reasonable place for the litigants to litigate.[34] "[S]imply because a court has jurisdiction over a case does not mean that it is the appropriate venue for the case to be heard."[35] A detailed §1404 analysis is clear that Maryland is the proper venue based on the totality of the circumstances. The parties are located in Maryland, the Plaintiffs originally selected Maryland as the venue, and the fact witness are in Maryland. Plaintiffs cannot make a genuine or credible argument to support venue in Massachusetts for the most important factor, convenience to the parties and witnesses, which is paramount and merits venue in Maryland.[36]

20. In fact, the only Plaintiffs' attorneys actively litigating any of these Box Hill cases are local counsel who filed the lawsuits in Maryland, not members of the Plaintiffs' Steering Committee. As such, it appears that the supposed "coordinated" discovery in the MDL has run its course.

---

[32] *Id.* at 22-23.
[33] This includes the Premier defendants, where 52 cases were remanded back to New Jersey, following the conclusion of common issue discovery.
[34] *Still v. Rossville Crushed Stone Co.*, 370 F.2d 324, 325 (6th Cir. 1966).
[35] *In re Harnischfeger Indus., Inc.*, 246 B.R. 421, 432 (Bank. N.D. Ala. 2000).
[36] Generally, the plaintiff's choice of forum is given great weight. *Momenta v. Amphastar Pharmaceuticals, Inc.*, 841 F. Supp. 2d 514, 522 (D. Mass. 2012). Here, every Plaintiff initially filed in Maryland.

21. It is notable that Maryland Plaintiffs' counsel continues to appear for hearings and status conferences by telephone, stating in their motions for leave to appear by telephone that because Plaintiffs' counsel is located in Maryland, it would be an undue burden to appear in Massachusetts in person.[37] That would also be the case for all parties at a trial in Massachusetts.

22. Trial in Massachusetts also places an unnecessary burden on the court in Massachusetts and potential jurors from Massachusetts. The liability question in the Box Hill cases will relate to Dr. Bhambhani and Box Hill, a healthcare provider in Maryland. Furthermore, the damages question will relate to Maryland residents. Although the actions of NECC are significant to the liability picture, NECC settled its civil obligations. Plaintiffs already received some sort of payment from the Tort Trust based on NECC's substantial settlement. NECC's owners and employees are also already being handled criminally. NECC itself is dissolved and not a party to this civil action. The only remaining parties are in Maryland, and as such, the interests of the Defendants and Plaintiffs should rest with a jury of their peers in Maryland.

23. A jury pool from Maryland will also have fewer preconceived notions regarding NECC and the actions of NECC employees and agents, whose criminal trials have been widely publicized in Massachusetts. Potential jurors in Massachusetts are more likely to have encountered NECC in the news, among their peers and colleagues, in their daily lives traveling from work or school, and perhaps witnessing the criminal proceedings unfold in the local media. Potential Maryland jurors are far removed (400 plus miles) from the daily minutia of the NECC criminal proceedings and bankruptcy. As such, potential jurors in Maryland will be less influenced by the collateral issues relating to NECC. Establishing venue in Maryland will aid in efficiently seating a neutral jury and without having to use an even larger jury pool to find

---

[37] *See, e.g.,* Dkt. Nos. 3140, 3209, 3255, 3257, 3258, 3259, 3302, 3303, 3304, 3364, and 3365.

neutral jurors as would be the case in Massachusetts. Maryland will also obviate the unnecessary burden on a Massachusetts court and a Massachusetts jury addressing the question of liability among parties located entirely in Maryland. Such a factor favors venue in Maryland.

24. Due to the resolution of the NECC bankruptcy, Massachusetts has only a collateral connection to the issues in the Box Hill cases. Again, any relation to the bankruptcy was not raised as an issue in any of the other cases that were remanded. If it was, the Post-Confirmation Officer and the PSC later chose to ignore any relation. The bankruptcy, therefore, should not now suddenly become an issue just for the Box Hill Defendants. The conduct at issue – the decision to purchase product from NECC – occurred in Maryland. The primary issue to be decided – whether Box Hill and Dr. Bhambhani negligently purchased from NECC – is most connected to Maryland. The jury will be asked to determine whether a Maryland physician breached standards of care in evaluating that conduct. The Court did not have an issue when remanding health care providers to other states when the same or similar actions were taken. The Plaintiffs had previously been treated in Maryland and in most instances sought subsequent treatment for their alleged injuries in Maryland. Subsequent medical care certainly did not occur in Massachusetts.

25. The issues remaining in the Box Hill cases for trial have near universal connection to Maryland. The only connection to Massachusetts is the jury's consideration of joint tortfeasor liability attributed to non-parties like NECC. Pursuant to Maryland law, those non-parties are not required to attend trial or defend themselves, nor are they subject to a judgment. The jury simply assesses the facts as they relate to non-parties and makes a determination under Maryland law. Moreover, Plaintiffs' experts have largely already acknowledged fault by NECC.

26. Not only do the injured parties reside in Maryland, but the health care providers also reside and practice medicine in Maryland. Maryland has the only interest in determining whether Maryland health care providers breached the standard of care, causing injury to Maryland citizens.[38] The public's interest in its right to hear the facts of a civil complaint, assess liability, and make a determination rests at the core of a personal injury claim.

27. In short, the Court should not be forced to search for a thread connecting the Box Hill cases to trial in this Court, including due to the bankruptcy, especially since the Court did not find reason to connect any other since-remanded cases. This Court accomplished its goal of streamlining the NECC MDL, but must now let go. Ignoring the overwhelming weight of evidence favoring trial in Maryland over trial in Massachusetts creates a substantial burden when the MDL is intended to create judicial efficiency. Accordingly, the Box Hill Defendants respectfully request an Order recommending to the JPML that the Box Hill cases are proper for remand, and then refrain from further involvement. The Court has already acknowledged its obligation to remand. If the Court is unwilling to directly divest itself of involvement, then remand will offer an opportunity for Plaintiffs to petition this Court to regain jurisdiction/venue, if they still wish to do so. The Court can then perform a case-specific, individualized §157(b)(5)/§1404 analysis and remand pursuant to §1404. Depending on the outcome, any necessary appeals can be made in due course and not on the eve of trial. Based on that analysis and the factors cited herein, the Court must reach one logical conclusion: Trial of the Box Hill cases in Maryland is either required, or is the most convenient, efficient, practical, and fair approach for the litigants.

---

[38] Dr. Bhambhani is a licensed health care provider in Maryland and subject to Maryland's licensing boards. Massachusetts has no interest in regulating her practice.

13

WHEREFORE, following remand to Maryland, the Court should either (1) not act on venue so as to allow the cases to proceed to trial in Maryland, or (2) set venue pursuant to §157(b)(5) in Massachusetts and then transfer the cases to Maryland via 28 USC §1404. Both mechanisms result in the most logical, convenient, and cost-efficient venue for these cases: Maryland. In the alternative, Defendants seek guidance similar to this Court's Order at Docket 2309 as to when the Court intends to remand these cases as it has stated it is required to do so that proper action can be taken.

Respectfully submitted,

/s/ Gregory K. Kirby
Catherine W. Steiner
Gregory K. Kirby
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
*Attorneys for Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C.*

## CERTIFICATE OF SERVICE

I, Gregory K. Kirby, hereby certify that a copy of the foregoing, filed through the CM/ECF system, will be accessible to those attorneys who are registered with the Court's electronic filing system and Notice of Electronic filing (NEF), including the attorneys representing the plaintiffs in the individual cases, and will be sent to these parties by operation of the CM/ECF system and copies will be e-mailed or mailed via regular U.S. mail to those participants identified as unregistered this 12th day of May, 2017.

Dated: May 12, 2017

/s/ Gregory K. Kirby
Catherine W. Steiner
Gregory K. Kirby
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland 21204
(410) 938-8800
***Attorneys for Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C.***