UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All actions | MDL No. 2419<br>Dkt. No. 1:13-md-2419 (RWZ) |

**RESPONSE OF PAUL D. MOORE,
POST-CONFIRMATION OFFICER OF NEW ENGLAND
COMPOUNDING PHARMACY, INC., TO THE
PLAINTIFFS' STEERING COMMITTEE'S STATUS REPORT [Dkt. No. 3397]**

Paul D. Moore, the Post-Confirmation Officer (the "Post-Confirmation Officer") of New England Compounding Pharmacy, Inc. d/b/a New England Compounding Center ("NECC") or the "Debtor"), hereby responds to the Status Report (the "Status Report") of the Plaintiffs' Steering Committee (the "PSC") [Dkt. No. 3397] as follows:

**I.     The Status Report, the Post-Confirmation Officer and NECC's Post-Confirmation Estate**

The PSC proposes that the Post-Confirmation Officer file with the Court: (a) a statement of unpaid fees and expenses, and (b) a reasonable estimate of future fees and expenses to be held in reserve. The PSC then proposes that this Court determine the amount of allowable unpaid fees and expenses. Any funds held by the Post-Confirmation Officer in excess of the amount of: (a) allowable unpaid fees and expenses, and (b) estimated future fees and expenses would then be transferred to the Tort Trustee for a distribution to "national claimants," which the PSC represents will occur "before the end of the summer." Status Report at 4-5. This request is unreasonable in light of the current status of the NECC post-confirmation estate and the provisions of the Plan.

A. **The Post-Confirmation Estate's Payment of Fees and Expenses**

Other than any that may have accrued during July and remain unbilled and unpaid, there are no unpaid fees and expenses of the NECC post-confirmation estate. Since the Effective Date[1], June 4, 2015, the Post-Confirmation Officer has paid his professionals' fees and expenses monthly in accordance with the terms of NECC's Plan. The amounts of these fees and expenses have been provided monthly to the Tort Trustee, who has included these amounts in the Monthly Operating Reports that are filed with the Bankruptcy Court.

The estate will continue to accrue fees and expenses. However, the Plan, which was heavily negotiated by all constituents, including the PSC, provides that the Post-Confirmation Officer and his professionals may be paid "for services rendered and expenses incurred . . . without any need for filing fee applications under the Bankruptcy Code or approval of any court." Plan at Section 6.01(ii) and (vi). At the confirmation hearing, no party objected to these plan provisions, and they were approved as part of the Confirmation Order.

B. **The Continuing Administration of the Post-Confirmation Estate and the Related Reserves**

The Plan effected a number of settlements which resulted in payments to date of approximately $180 million to the NECC estate including those transferred directly to the Tort Trustee by the Post-Confirmation Officer as well as those ultimately transferred from the Expense Fund consisting of funds previously forwarded to that fund by the Post-Confirmation Officer.

---

[1] Unless otherwise defined herein, capitalized terms have the same meaning as ascribed to them in the Plan.

The Post-Confirmation Officer also is holding federal tax refunds in the aggregate approximate amount of $12 million in an escrow account, pending expiration of the four-year period during which the Internal Revenue Service may challenge those refunds.  The Post-Confirmation Officer is responsible for responding to any such challenge.  At the expiration of the escrow period, the balance of the funds held in escrow also will be paid to the Tort Trustee for distribution to tort claimants as provided by the Plan.

As such, the only other funds currently held by the Post-Confirmation Officer consist of $274,984 ($252,482 in a money market account and $22,502 in a checking account). The Expense Fund Administrator also is holding another $103,564 in a separate account in his name.[2]

### C. The Amounts Currently Being Held in the Post-Confirmation Estate Are Likely to be Insufficient to Administer the Estate and This Court Should Not Order That Any Such Amounts Be Transferred to the Tort Trust

The Post-Confirmation Officer believes that the amounts being held by the Post-Confirmation Officer and the Expense Fund Administrator are the minimum necessary to be held in reserve to administer the Plan.  Continued administration of the estate will include, among other things: (a) preparation of tax returns and filing of tax returns; (b) monitoring this multi-district litigation; (c) opposing any Internal Revenue Service challenge to the approximately $12 million in tax refunds which the Post-Confirmation Officer is currently holding in escrow; and

---

[2] Section 6.04 of the Plan states that:

> To the extent that a portion of the Expense Fund is not disbursed, or otherwise held in reserve to fund the costs and expenses described herein, in the sole judgement of the Expense Fund Administrator, such portion shall be transferred to the Tort Trust, and shall be subject to the terms hereof.

> The amounts being held in the Expense Fund are being "held in reserve to fund the costs and expenses" described in the Plan.  There is no legal or factual basis to transfer these funds to the Tort Trustee.

3

(d) any other unanticipated tasks likely to arise during the course of final administration of the estate.

Indeed, these amounts may be insufficient. As stated above, the Post-Confirmation Officer and the Expense Fund Administrator collectively hold $378,548. Recently, three creditors filed motions seeking allowance of their claims in the aggregate amount of $229,013.77, despite their late submission of their IRS Form W-9. The Post-Confirmation Officer has determined that he will not oppose these motions. If these claims are allowed, the distributions to the moving creditors will be $206,112.39.[3]

If the Post-Confirmation Officer were to pay these claims out of NECC's post-confirmation estate, the balance of funds collectively held by the Post-Confirmation Officer and the Expense Fund Administrator would be reduced to $172,435.61. This amount would be an inadequate reserve. For this reason, the Post-Confirmation Officer has requested that the Tort Trustee pay these claims, if allowed, pursuant to Section 5.17 of the Plan, which states:

> 5.17 *Payments to Post-Effective Date Debtor*. The Post-Confirmation Officer may from time to time request that monies be transferred to the Post-Effective Date Debtor from the Tort Trust for use and distribution as he deems appropriate in accordance with this Plan, <u>and the Tort Trustee shall promptly comply with any and all such request(s)</u>.

No purpose would be served in requiring the Post-Confirmation Officer's turn over of all or any portion of the funds held by him or in the Expense Fund, since the Tort Trustee would have to reserve funds pursuant to Section 5.17 of the Plan sufficient to fund any resulting shortfall in funds available to pay the remaining expenses of the Post-Confirmation Officer in completing the administration of the estate.

---

[3] General unsecured creditors receive a distribution of 90%.

The Post Confirmation Officer continues to incur fees and expenses in performing his administrative duties, as outlined above, and is not holding excess amounts that should be transferred to the Tort Trustee.  The Plan does not require the Post-Confirmation Officer to turn over any funds to the Tort Trustee prior to the completion of the administration of the post-confirmation estate.  To the contrary, it provides that the Post-Confirmation Officer can hold such amount of funds in reserve as he determines to be necessary in his sole discretion.

**II.**     **Conclusion**

The funds currently held in the NECC post-confirmation estate are necessary for the future administration of the estate.  Those funds are likely inadequate, and the Post-Confirmation Officer, pursuant to the Plan, has requested that the Tort Trustee transfer funds to the NECC Post-Confirmation estate.  Assuming that those funds are so transferred, the estate may still be inadequately funded in light of, among other things, potential litigation (*e.g.*, an Internal Revenue Service challenge to the tax refunds).

The Bankruptcy Court determined that the Post-Confirmation Officer and his professionals should not be required to file post-confirmation fee applications.  This Court should reject the PSC's attempt to re-visit this issue more than two years after the entry of the Confirmation Order to require the Post-Confirmation Officer to incur the effort and expense of filing applications for payment out of the limited remaining funds available.

Finally, to the extent that the Tort Trustee makes a second distribution this summer, that distribution will not be the final distribution.  If the Internal Revenue Service does not challenge (or unsuccessfully challenges) the tax refunds, approximately $12 million will be distributed to national claimants.  There is no current need for a judicial determination of the amounts needed by the Post-Confirmation Officer and the Tort Trustee to fulfill their duties under the Plan, nor

will the relatively modest amount of funds held in reserve by the Post-Confirmation Officer have a meaningful effect on the Tort Trustee's second distribution.

| | |
|---|---|
| Dated:  July 19, 2017 | DUANE MORRIS LLP |
| | |
| | */s/ Michael R. Gottfried*  <br>Michael R. Gottfried (BBO #542156)  <br>100 High Street, Suite 2400  <br>Boston, MA 02110-1724  <br>Tel:  (857) 488-4212  <br>Fax:  (857) 488-4201  <br>Email:  mrgottfried@duanemorris.com  <br><br>*Counsel for Paul D. Moore, Post-Confirmation Officer of New England Compounding Pharmacy, Inc.* |

### Certificate of Service

I, Michael R. Gottfried, hereby certify that on July 19, 2017, I caused a copy of the foregoing document and the attachment thereto, which was filed using this Court's ECF system, to be served electronically upon those parties registered to receive ECF service in the above-captioned proceeding.

*/s/ Michael R. Gottfried*  
Michael R. Gottfried