# EXHIBIT 10

## In the Matter Of:

NEW ENGLAND COMPOUNDING PHARMACY INC. PRODUCTS LIABILITY

## DEPOSITION OF

## LLOYD R. SABERSKI, M.D.

*January 12, 2017*



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999

```
 1            IN THE UNITED STATES DISTRICT COURT
 2                 DISTRICT OF MASSACHUSETTS
 3
 4   IN RE NEW ENGLAND COMPOUNDING      | MDL NO. 02419
 5   PHARMACY, INC. PRODUCTS LIABILITY  | DOCKET NO.
 6   LITIGATION                         | 1:13-MD-2419-RWZ
 7   THIS DOCUMENT RELATES TO:
 8   All Actions
 9
10           Deposition of LLOYD R. SABERSKI, M.D.
11                     Baltimore, Maryland
12                  Thursday, January 12, 2017
13                          10:00 a.m.
14
15
16
17
18
19
20   Reported by:  Angela McKinney, Court Reporter
21
22
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com
Nationwide Coverage

Page 62

1   A   I don't know how they come up with the
2   ratings, but it sounds appropriate that Yale is on the
3   list.
4   BY MR. KIRBY:
5   Q   They are reputable institutions?
6   A   Those are hospitals.
7   Q   Would it surprise you if all of them were on
8   the customer list that we looked at on 1585-12.
9       MR. COREN: Objection to form.
10  A   Doesn't surprise me one bit. They are on a
11  customer list.
12  BY MR. KIRBY:
13  Q   Have you ever done business with NECC?
14  A   Business?
15  Q   Have you ever had any interaction whatsoever
16  with the New England Compounding Center?
17  A   Yes.
18  Q   Describe that.
19  A   A sales rep came to my office in the early
20  2000s suggesting that we purchase compounded steroids
21  from them. His marketing pitch was it was preservative
22  free and it was cheaper. And I engaged him in a

Page 63

1   conversation as to why I would want to do that, given
2   there are commercially-available products that are
3   perfectly fine.
4   Q   Did you ask him why they were selling -- did
5   you ask him why they were selling preservative-free
6   products as a compounder if there were other
7   commercially-available products available?
8   A   I did either directly or indirectly, but he
9   was a salesperson who knew nothing. Essentially my
10  office would have nothing to do with NECC because they
11  were offering a product that was readily available.
12  Q   So in your estimation, that was improper to
13  do, correct?
14  A   Yes.
15  Q   And did you ever report NECC to the
16  Connecticut Board of Pharmacy?
17  A   I did not.
18  Q   Or the Massachusetts Board of Pharmacy or
19  the FDA?
20  A   I did not.
21  Q   No one. Okay. Is there a reason why you
22  didn't report them if you thought they were doing

Page 64

1   something improper?
2   A   I really didn't understand the gravity of
3   what I was saying no to. I think if I had to do it all
4   over again, I certainly would have called up the
5   appropriate authority. Clearly they were in the wrong
6   and we at my office knew that it was wrong.
7   Q   Can we agree that NECC caused the
8   contamination of the MPA?
9   A   Yes.
10  Q   We can agree that Dr. Bhambhani didn't cause
11  the contamination?
12  A   No.
13      MS. STEINER: Yes, you can agree that, no,
14  she did not?
15  A   Yes.
16  BY MR. KIRBY:
17  Q   Sorry. I thought we were having a moment.
18  I understood.
19      MS. STEINER: Just clarify that.
20  BY MR. KIRBY:
21  Q   So we can agree that Dr. Bhambhani did not
22  cause the contamination, right?

Page 65

1   A   Yes, we can agree.
2   Q   Can we agree that NECC had a duty to its
3   customers to provide safe products?
4   A   Yes.
5   Q   They had a duty to provide -- strike that.
6       That they had a duty to accurately represent
7   the safety and quality of its products to customers and
8   potential customers?
9   A   Yes.
10  Q   Can we agree that in the summer and fall of
11  2012 that NECC failed in its duty to do all those
12  things that we just discussed?
13  A   I believe so.
14  Q   Do you believe that NECC violated the law in
15  these cases?
16      MR. COREN: Objection to form.
17  A   I'm not a lawyer. However, I believe they
18  did.
19  BY MR. KIRBY:
20  Q   I think I know your answer, but just to be
21  clear, when you say you think they did, do you have any
22  statutes or laws or regulations in mind from --


DISCOVERY
LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com