# EXHIBIT 11

# In the Matter Of:

## NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY

## DEPOSITION OF

## DAVID CHASON

*December 21, 2016*



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999

```
 1    UNITED STATES DISTRICT COURT fOR THE EASTERN DISTRICT
                        OF MASSACHUSETTS
 2

 3
      -------------------------------X
 4                                    :
      IN RE:  NEW ENGLAND             :
 5    COMPOUNDING PHARMACY, INC.      :
      PRODUCTS LIABILITY LITIGATION:  MDL NO. 2419
 6                                    :
                                      :
 7    This Documents Relates to:      :  Master Docket
                                      :  1:13-MD-02419-RWZ
 8    All Cases against the Box       :
      Hill Defendants
 9                                    :
      -------------------------------X
10

11
                  DEPOSITION OF DAVID CHASON
12

13            WEDNESDAY, DECEMBER 21, 2016
                       10:00 a.m.
14

15          Law Office of Peter G. Angelos
                  One Charles Center
16              100 North Charles Street
                       Suite 2200
17               Baltimore, MD   21201

18

19

20

21

22

23

24

25    Before:   Linda Bahur, RPR
```



**Page 118**

1  cetera.
2  Q   So when you said earlier that you didn't
3  look into that or didn't have information related to
4  that in answer to some of my questions, that wasn't
5  entirely accurate, correct?
6      MR. COREN: Objection to form.
7      MR. MINTZER: Objection to form.
8  A   No. Your references were during the time
9  that I was on the board, and this was during the time
10 I was doing research regarding this assessment.
11 Q   Can we agree that NECC caused the
12 contamination at issue here? You say that directly
13 in your first paragraph, right?
14 A   I do.
15 Q   And there are a couple -- few other quick
16 things I think we can probably agree to, but let me
17 run through them.
18     Can we agree that NECC had a duty to its
19 customers to provide safe products?
20     MR. COREN: Objection to form. You can
21 answer.
22 A   Yes.
23 Q   Can we agree that NECC had a duty to
24 provide safe products so that patients could also be
25 safe?

**Page 119**

1      MR COREN: Objection to form. You can
2  answer.
3  A   Yes.
4  Q   Can we agree that NECC had a duty to
5  accurately represent the safety and quality of its
6  products to customers and potential customers?
7      MR. COREN: Objection to form. You can
8  answer.
9  A   Yes.
10 Q   Can you agree that in producing the
11 recalled lots of steroids, the contaminated lots of
12 steroids in the summer and fall of -- summer or fall
13 of 2012, that NECC fell below the standard of care
14 applicable to them --
15     MR. COREN: Objection.
16 Q   -- as a compounding pharmacist --
17 compounding pharmacy?
18     MR. COREN: Objection as to form. You can
19 respond.
20 A   Please reask that question.
21 Q   Sure. No problem.
22 A   There was enough going on that I really am
23 not sure I understood the question.
24 Q   Can we agree -- and this is kind of based
25 on the other agree questions that I asked.

**Page 120**

1  A   Right. Yeah.
2  Q   But can we agree that in producing these
3  three lots of contaminated steroids that were at
4  issue in the summer of 2012, that based on that, that
5  NECC fell below the standard of care applicable to
6  them?
7      MR. COREN: Objection as to form. You can
8  respond to that.
9  A   Yes.
10 Q   And can we agree that in the summer and
11 fall of 2012, when this all happened, NECC failed in
12 its duty to do all the things we just discussed?
13     MR. COREN: Objection as to form.
14 A   Why are you asking the same question and
15 then asking for a summary of the same question?
16 Q   I don't think I am, but I can strike that
17 one because that may be redundant.
18 A   Yeah.
19 Q   Can we agree that NECC violated the law in
20 these cases?
21     MR. COREN: Objection as to form. You can
22 respond.
23 A   Yes.
24 Q   Can we agree that NECC was not acting as a
25 true traditional compounder, even though they called

**Page 121**

1  themselves a compounder, they were acting as a
2  manufacturer?
3      MR. MINTZER: Objection to form.
4      MR. COREN: You can answer.
5  A   Yes.
6  Q   And can we agree that NECC's conduct in
7  these ways caused injury to the patients in these
8  cases?
9      MR. MINTZER: Same objection.
10     MR. COREN: Objection as to form.
11 A   Yes.
12 Q   I want to talk briefly about an entity
13 called Medical Sales Management. Are you familiar
14 with Medical Sales Management?
15 A   No.
16 Q   Okay. So there's been testimony in this
17 case about Medical Sales Management. So I want you
18 to assume, because it's supported in the evidence
19 that -- it's also a fact -- that Medical Sales
20 Management was also a part of the NECC cadre of
21 companies all owned and operated by the same people,
22 the Caddens and the Conigliaros.
23     Can you assume that? It's a hypothetical
24 question.
25     MR. COREN: No, you can't. If you've got


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com