# Exhibit 10

## In the Matter Of:

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY

## DEPOSITION OF

## DAVID CHASON

*December 21, 2016*



**DISCOVERY LITIGATION SERVICES**
Court Reporting • Videography • Trial Presentations

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999

```
 1    UNITED STATES DISTRICT COURT fOR THE EASTERN DISTRICT
                         OF MASSACHUSETTS
 2

 3
       -------------------------------X
 4                                     :
      IN RE:   NEW ENGLAND             :
 5    COMPOUNDING PHARMACY, INC.       :
      PRODUCTS LIABILITY LITIGATION:   MDL NO. 2419
 6                                     :
                                       :
 7    This Documents Relates to:       :  Master Docket
                                       :  1:13-MD-02419-RWZ
 8    All Cases against the Box        :
      Hill Defendants                  :
 9                                     :
       -------------------------------X
10

11
                   DEPOSITION OF DAVID CHASON
12

13              WEDNESDAY, DECEMBER 21, 2016
                         10:00 a.m.
14

15           Law Office of Peter G. Angelos
                    One Charles Center
16              100 North Charles Street
                         Suite 2200
17                Baltimore, MD   21201

18

19

20

21

22

23

24

25    Before:   Linda Bahur, RPR
```



1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

Nationwide Coverage

**Page 114**

1  was Exhibit 3. Okay. I'm looking at the bottom of
2  page 1 on 1619-3, which is your report. And in your
3  conclusions, you say -- right under conclusions, the
4  first sentence, "My review of depositions and related
5  documents was conducted from the perspective of a
6  pharmacist."
7           Do you see that?
8     A    Correct.
9     Q    And you have no experience running an
10 ambulatory surgery center, just to be clear, right?
11    A    Correct.
12    Q    You're not permitted, pursuant to your
13 license, to order or prescribe any drugs in the same
14 capacity that a physician would, right?
15    A    Correct.
16    Q    Okay. And then I'm skipping down to
17 the -- a little further in the middle of that
18 paragraph, on the right side it says, "I have
19 additional experience."
20          Do you see that?
21    A    Correct.
22    Q    It says, "I have additional experience in
23 the development and administration of regulations and
24 training of state inspectors" -- which we talked
25 about -- "for sterile compounding resulting from your

**Page 115**

1  eight years of service as a commissioner on the
2  Maryland Board of Pharmacy."
3           So that experience was gained across the
4  course of your time as a pharmacist and with the
5  Maryland Board of Pharmacy, right?
6     A    Correct.
7     Q    With regards to -- because it says
8  "additional experience," and mentions the training of
9  state inspectors for sterile compounding, would you
10 have had that before 2012 or would that have been
11 something that was related to your role as an
12 independent consultant -- as an independent
13 consultant and trainer for sterile compounding? That
14 was 2014-2015.
15    A    There may have been some activity when the
16 USP-797 regulations were being written and having
17 meetings with staff regarding the development of
18 regulations.
19    Q    Okay. Some of it might have been but
20 there might have been some overlap?
21    A    Yeah.
22    Q    The training of state inspectors for
23 sterile compounding aspect of that, you'd agree that
24 that's experience that Dr. Bhambhani doesn't have,
25 right?

**Page 116**

1     A    Correct.
2     Q    You'd agree that most physicians wouldn't
3  have that type of specific experience, right?
4     A    They wouldn't. They would have experience
5  in handling sterile products. And physicians do some
6  degree of compounding in their practices. So I
7  wouldn't say that that was a true statement.
8     Q    All I'm trying to get at is she doesn't
9  have the experience that you do, with regards to
10 that, and certainly she wouldn't have experience or
11 expertise regarding the training of state inspectors
12 for sterile compounding?
13    A    Right. But she still has a responsibility
14 in her role as a physician handling these products to
15 have an adequate knowledge.
16    Q    Understood. And my question was simply
17 regarding training of state inspectors for sterile
18 compounding. She wouldn't have that experience? You
19 wouldn't expect her to, right?
20    A    Correct.
21    Q    Okay. And I'm jumping over to page 2, the
22 first paragraph. It starts out, "It is clear that
23 operational failures."
24          Do you see that?
25    A    I do.

**Page 117**

1     Q    So the paragraph there reads "It is clear
2  that operational failures at New England Compounding
3  Center were the cause of the methylprednisolone
4  acetate contamination involved in the 2012 fungal
5  infection outbreak and that NECC's practices
6  facilitated the appearance that it was closely
7  regulated and operated as safely as a manufacturer."
8           Did I read that correctly?
9     A    You did.
10    Q    So that's in your report. And I guess a
11 couple follow-up questions to that. You mentioned
12 earlier, I think, that you said you didn't research
13 information about NECC and the recall.
14          So if you didn't do that, on what did you
15 rely for the statement that we just read, that it is
16 clear that operational failures at NECC were the
17 cause of the outbreak and that NECC's practices
18 facilitated the appearance that it was closely
19 regulated and operated safely as a manufacturer?
20 What's your basis for that?
21    A    Some of that came from the information
22 that was provided in the -- in all the documentation
23 I received. And some of it was -- at that time I
24 started looking at NECC's activities, you know, on
25 the Internet to see what the CDC was saying, et


DISCOVERY LITIGATION SERVICES
Court Reporting • Videography • Trial Presentations
Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com

NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY
DAVID CHASON on 12/21/2016

DEPOSITION OF
Pages 118..121

Page 118

1  cetera.
2  Q  So when you said earlier that you didn't
3  look into that or didn't have information related to
4  that in answer to some of my questions, that wasn't
5  entirely accurate, correct?
6      MR. COREN: Objection to form.
7      MR. MINTZER: Objection to form.
8  A  No. Your references were during the time
9  that I was on the board, and this was during the time
10 I was doing research regarding this assessment.
11 Q  Can we agree that NECC caused the
12 contamination at issue here? You say that directly
13 in your first paragraph, right?
14 A  I do.
15 Q  And there are a couple -- few other quick
16 things I think we can probably agree to, but let me
17 run through them.
18     Can we agree that NECC had a duty to its
19 customers to provide safe products?
20     MR. COREN: Objection to form. You can
21 answer.
22 A  Yes.
23 Q  Can we agree that NECC had a duty to
24 provide safe products so that patients could also be
25 safe?

Page 119

1      MR COREN: Objection to form. You can
2  answer.
3  A  Yes.
4  Q  Can we agree that NECC had a duty to
5  accurately represent the safety and quality of its
6  products to customers and potential customers?
7      MR. COREN: Objection to form. You can
8  answer.
9  A  Yes.
10 Q  Can you agree that in producing the
11 recalled lots of steroids, the contaminated lots of
12 steroids in the summer and fall of -- summer or fall
13 of 2012, that NECC fell below the standard of care
14 applicable to them --
15     MR. COREN: Objection.
16 Q  -- as a compounding pharmacist --
17 compounding pharmacy?
18     MR. COREN: Objection as to form. You can
19 respond.
20 A  Please reask that question.
21 Q  Sure. No problem.
22 A  There was enough going on that I really am
23 not sure I understood the question.
24 Q  Can we agree -- and this is kind of based
25 on the other agree questions that I asked.

Page 120

1  A  Right. Yeah.
2  Q  But can we agree that in producing these
3  three lots of contaminated steroids that were at
4  issue in the summer of 2012, that based on that, that
5  NECC fell below the standard of care applicable to
6  them?
7      MR. COREN: Objection as to form. You can
8  respond to that.
9  A  Yes.
10 Q  And can we agree that in the summer and
11 fall of 2012, when this all happened, NECC failed in
12 its duty to do all the things we just discussed?
13     MR. COREN: Objection as to form.
14 A  Why are you asking the same question and
15 then asking for a summary of the same question?
16 Q  I don't think I am, but I can strike that
17 one because that may be redundant.
18 A  Yeah.
19 Q  Can we agree that NECC violated the law in
20 these cases?
21     MR. COREN: Objection as to form. You can
22 respond.
23 A  Yes.
24 Q  Can we agree that NECC was not acting as a
25 true traditional compounder, even though they called

Page 121

1  themselves a compounder, they were acting as a
2  manufacturer?
3      MR. MINTZER: Objection to form.
4      MR. COREN: You can answer.
5  A  Yes.
6  Q  And can we agree that NECC's conduct in
7  these ways caused injury to the patients in these
8  cases?
9      MR. MINTZER: Same objection.
10     MR. COREN: Objection as to form.
11 A  Yes.
12 Q  I want to talk briefly about an entity
13 called Medical Sales Management. Are you familiar
14 with Medical Sales Management?
15 A  No.
16 Q  Okay. So there's been testimony in this
17 case about Medical Sales Management. So I want you
18 to assume, because it's supported in the evidence
19 that -- it's also a fact -- that Medical Sales
20 Management was also a part of the NECC cadre of
21 companies all owned and operated by the same people,
22 the Caddens and the Conigliaros.
23     Can you assume that? It's a hypothetical
24 question.
25     MR. COREN: No, you can't. If you've got


Nationwide Coverage

1201 West Peachtree Street
Suite 2300
Atlanta, GA 30309
404.847.0999
www.DiscoveryLit.com