UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MDL No. 13-02419-RWZ

IN RE: NEW ENGLAND COMPOUNDING PHARMACY, INC.,
PRODUCTS LIABILITY LITIGATION

THIS DOCUMENT RELATES TO:
Case No. 1:14-cv-13509-RWZ

## ORDER FOR DISTRIBUTION OF WRONGFUL DEATH SETTLEMENT PROCEEDS RECEIVED BY THE ESTATE OF SARA D. CULP

December 14, 2017

ZOBEL, S.D.J.

Tosha Andrews (hereafter "Tosha"), as the personal representative and duly qualified Administrator of the Estate of Sara D. Culp (hereafter "Sara"), also known as Sara D. Andrews, requests an order allocating for final distribution the proceeds of a settlement which this court had previously approved. After payment of liens of Medicare and Virginia Medicaid, approval of the attorneys' fees and expenses, approximately $512,520.00 remain in the estate for distribution to statutory beneficiaries. Under Virginia law, the statutory beneficiaries include all living children of the deceased and the children of any deceased child. Attached, as Exhibit A, is a chart that depicts all statutory beneficiaries in this case. It includes one son, William Dale Andrews, Jr., who, despite counsel's extensive search, was not found. Thus, the claimants are three living children of Sara and nine of her grandchildren.

In accordance with Va. Code § 8.01-55, the court held hearings simultaneously

in Boston and, by video, in Roanoke, Virginia. Everyone in both courtrooms who wished to speak was heard. Two of Sara's children, Roger and Joseph, came to Boston. Roger also provided a written statement, as did Charles, who was not able to be present at either venue. Two groups of grandchildren presented claims, the children of Debbie Denise Andrews and those of James Kevin Andrews. From the first group, only Tosha Andrews appeared in Boston with counsel in her capacities as administratrix of Sara's estate and as beneficiary. She testified and also provided a written statement. Brandon and Rodney Andrews were represented by their respective Guardians *ad litem*, Timothy Dooley and John D. Eure, in Roanoke and both made written submissions. Nina Andrews appeared in Roanoke and testified. Four children of James, namely Alexis Andrews, as well as Laura, Cassandra and Corey Jennings, participated from Roanoke. All, individually or jointly with others, also submitted written statements. Michael Gilmer only recently recorded his interest.

Based on the evidence presented, the court must determine the amount to be distributed to each of these statutory beneficiaries and it must do so in accordance with the criteria set forth in the statute, Va. Code § 8.01-52. Thus, the amount to be awarded to any beneficiary shall be based on that person's "sorrow, mental anguish, and solace which may include society, companionship, comfort, guidance, kindly offices and advice of decedent." It may also include "compensation for reasonably expected loss of (i) income of the decedent and (ii) services, protection, care and assistance provided by the decedent." The statute does not provide for compensation to any beneficiary for wrongs allegedly committed by, or at the instance of, other members of the family.

Sara's family was large, complicated, and often contentious. I address first the claims of the three surviving and known children.

## CHILDREN OF SARA

<u>Roger Eugene Culp</u> is the eldest son of Sara. He writes that his only parental connection was with his mother, Sara; he does not know the identity of his father. The death of his mother was therefore "devastating." At the hearing he was noticeably emotional when testifying about his loss. He also testified that he visited Sara in the hospital when she was sick but that, as a result of a disagreement with Tosha about Sara's medication, he left and never returned because he could not deal with the constant family strife. His written submission says that he offered to handle Sara's wrongful death suit but that Tosha "insisted on acting as administrator in lieu of myself...." Since he "was working full time, raising a family and lived 5 hours away [he] agreed." However, in his statement he writes at some length about his disagreements with the manner in which Tosha managed the estate and the process of distributing it to the statutory beneficiaries. Finally, he hopes and requests that the "monetary awards be equally distributed among the first lineal statutory beneficiaries," that is, "among myself and my siblings...."

<u>Joseph Andrews</u>, Joey, was, by all accounts, very close to his mother. He was the baby of the family and, as a result, knew Sara best. He greatly feels her loss. She took care of him when he was homeless and needed a place to stay; indeed, she would do anything for him. He also testified that when Sara became ill, he and Tosha took care of her. When she died, he helped Tosha with the arrangements and even contributed $200 for the costs of the funeral.

3

Charles E. Andrews, the third living son of Sara, was unable to attend but wrote that he wanted the courts to understand that he loves and misses his mother. He asks not to be counted out and the letter concludes: "I did love my mother and it hurts my (sic) greatly every day knowing she suffered greatly when she passed away."

## GRANDCHILDREN OF SARA

All but one of the children of Sara's deceased children (Michael Gilmer) submitted claims as noted above.

### Debbie Andrews' Children

All of the children of Debbie had some connection and shared some relationship with their grandmother, Sara. All, in varying degrees, describe their love for her and the loss they feel from her death.

Brandon Andrews talks about the time he spent with his grandmother when he was little. He also describes his very difficult times in foster homes and his feeling that "the family just threw him away as a child." He states that he is mentally disabled and presently incarcerated.

Nina Andrews testified that she was not close to Sara, but that she did see her from time to time. When Sara died, she felt empty because she never had any mother or grandmother and she never got to know Sara, and now she is sad because she will never have the chance to experience either.

Rodney Andrews grew up around Sara until he was about 12 years old. Thereafter he was raised by his father's parents but would still talk with and see Sara from time to time. He loves and misses his grandmother dearly. He remembers how she would cook for him and his brother and sisters and "make sure we ate everything

on our plates. Grandma did not 'play.' She would tell you like it was, but she had a kind and sweet side. She will be missed." Rodney was incarcerated at the time of Sara's illness and death and gives fulsome credit to Tosha for her care of Sara at that time.

Tosha Andrews. Because her daughter, Debbie, was incapacitated by addiction Sara raised Debbie's daughter Tosha "as her own daughter from her birth through adulthood...." That is, this relationship continued after Debbie's death when Tosha was 17 years old. Sara provided her the "support of a natural mother," and Tosha always referred to Sara as "Mom." When Sara became ill, Tosha became her grandmother's primary caretaker. She helped Sara get out of bed, get dressed and bathed. She ensured that Sara took her medications and got to her medical appointments. When Sara came to need more clinical care, Tosha arranged for skilled home health care and eventually nursing home and ultimately hospital care. Tosha and Sara remained close until Sara died in December 2013. She was solely responsible for end of life decisions and suffered great pain watching her grandmother die. She, with help of her uncle Joey, arranged Sara's funeral.

Finally, Tosha managed Sara's finances during her illness, including the prosecution of this law suit. Sara's view of their relationship is to some extent reflected in Sara's will in which Tosha is named as executor and sole beneficiary.

In her written statement Tosha describes all the ways in which she misses her "Mom," just to call her and "hear her tell me everything is going to be alright," "how she made me feel like I was the most beautiful, intelligent woman on the planet," "the way she smelled," her "funny humor," her "hugs and kisses and us spending time together,"

"being able to be there for her and doing things for her." "I miss everything ... I've lost my mom."

After the onset of Sara's illness when it became clear that it may have been caused by her steroid injections, Tosha brought a personal injury suit on behalf of Sara. She did so in hopes that any recovery of damages would assist Sara to manage the costs of treatment and care.

### James Andrews' Children

These claimants, through no fault on their parts, had little opportunity to know and love their grandmother. Their sadness derives from the knowledge that they can never capture what they lost. That loss is encompassed by the statute, and I will address their statements.

### Alexis Andrews

Alexis introduces herself as a 16-year old junior at Craig County High School. She lost her father in March 2012, which made her very sad because he would never see the important events in her life and he had apparently been a conduit to the rest of the family. Sara was her second means of communication with the family, which then was also broken upon her death in December 2013. Alexis acknowledges that she was never too close to Sara and regrets that she will never be able to create a relationship with her.

### Corey, Cassandra and Laura Jennings

In their joint statement, Corey, Cassandra and Laura acknowledge that they were not "super close to our Grandmother Sara." This was not by their choice. Their father had started another family and was not involved with these children. Later, not

6

many years before his death, he attempted to reconnect with them and establish a more meaningful relationship. By this time Sara was already sick which made any rapprochement with her difficult. The Jennings children are sad "because of the suffering she endured related to her health and this case." They wish they had had more time with her to build a stronger bond, and they regret that such is no longer possible.

<u>Michael Gilmer</u> apparently did not understand his right to file a claim and thus failed to do so. He did, however, express his interest to counsel and is appropriately included in this distribution.

## **Allocation of the Settlement Funds**

Given the circumstances of this case and the many different relationships the several claimants had with Sara, limiting any distribution to Sara's three children does not accord with my reading of the statute. The statute, Va. Code § 8.01-53, lists the primary beneficiaries in section A(i) as "the surviving spouse, children of the deceased and children of any deceased child of the deceased." Accordingly, the allocation will include all claimants, albeit in varying amounts, based on their relationships with Sara and the loss that each suffered as a result of her death.

The three children, Roger, Joseph and Charles, by virtue of being her children had special feelings for their mother even though each clearly had his own relationship with her. Each had different abilities and opportunities to express his feelings to his mother in words and deeds. I am persuaded that the loss each suffered is appropriately expressed by allocating to each the same amount of money.

Debbie's children were more involved with their grandmother than were the

children of James. However, only Tosha among all the claimants had a long-term, ongoing, active, and mutually recognized and appreciated relationship with Sara. The nature of that relationship also supports the conclusion that Tosha suffered particular loss of society, companionship, guidance, kindly offices and assistance when Sara died. See Va. Code § 8.01-52. Tosha also was far more involved in the care of Sara in all aspects of the latter's life, from her health to her finances and, of course, this law suit than any other claimants with the exception of Joseph.

James' children hardly knew their grandmother. Nonetheless, their claim of sorrow for losing a relationship that might have been and never being able to achieve it, gives rise to sorrow for the loss of that opportunity.

In light of all of these considerations I award to each of the children, Roger, Joseph and Charles the sum of $75,000.00, to each of the grandchildren except Tosha the sum of $5,000.00 and to Tosha the sum of $245,280.00. The amount payable to Brandon and Rodney Andrews is increased by the fees of their Guardians *ad litem* which are attributable to this allocation proceeding, $900.00 for Brandon and $1,340.00 for Rodney.

A Final Order of Distribution will enter accordingly.

December 14, 2017
DATE

RYA W. ZOBEL
SENIOR UNITED STATES DISTRICT JUDGE

# Sara Delphia Culp Andrews
(DOB: 6.17.1932
DOD: 12.15.2013)

↓

Children of Sara Delphia Culp Andrews

| Debbie Denise Andrews (DECEASED) | Roger Eugene Culp 11621 Bridgeport Rd. Taneytown, MD 21787 | Joseph Andrews 2327 Cantle Lane Rke., VA 24018 | William Dale Andrews, Jr. Status and Location Unknown | Charles E. Andrews 3733 Summerplace VA Beach, VA 23453 | James Kevin Andrews (DECEASED) |
|---|---|---|---|---|---|

**Brandon Andrews (43)**
a/k/a Nafar Pierson (SO# P01083077)
*Fulton County Jail*
*901 Rice Street*
*Atlanta, GA 30318*

**Tosha Andrews (32)**
*2327 Cantle Lane*
*Rke., VA 24018*

**Nina Andrews (39)**
*322 Liberty Road, NE*
*Roanoke, VA 24012*

**Rodney Andrews (35)**
*C/O Johnson Ayers & Matthrews*
*John D. Eure, Esq.*
*310 First Street, SW*
*Suite 700*
*Rke., VA 24011*

**Alexis Andrews ( )**
*C/O CooleySublettPearson*
*Stuart J. Pearson, Esq.*
*2965 Colonnade Dr., Ste. 200*
*Rke., VA 24018*

**Laura Jennings (22)**
*2721 Deerfield Road, SW*
*Rke., VA 24015*

**Cassie Jennings (27)**
*2721 Deerfield Road, SW*
*Rke., VA 24015*

**Corey Jennings (27)**
*2426 Westover Ave.*
*Rke., VA 24015*

**Michael Gilmer (27)**
*716 Welton Avenue*
*Rke., VA 24015*

EXHIBIT A