## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | ) ) ) | MDL No. 02419 Docket No. 1:13-md-2419-RWZ |
| _____ | ) | |
| | ) | |
| This document relates to: | ) | |
| | ) | |
| Handy v. Box Hill Surgery Center, LLC, et al. | ) | |
| No. 1:14-cv-14019-RWZ | ) | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## CONSOLIDATED MEMORANDUM OF LAW IN SUPPORT OF THE BOX HILL DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants, Box Hill Surgery Center, L.L.C., Ritu T. Bhambhani, M.D., and Ritu T. Bhambhani, M.D., L.L.C. (hereinafter, collectively "Box Hill Defendants" or "Defendants"), by undersigned counsel, submit this consolidated summary of their previously submitted Motion for Summary Judgment and state the following in support thereof:

### I.   INTRODUCTION

This lawsuit is one of eight lawsuits that were filed in Maryland state court against the Box Hill Defendants that were subsequently transferred by the PSC to this MDL. On December 7, 2017, Plaintiffs' counsel in seven of those matters filed a Stipulation of Voluntary Dismissal with prejudice. *See* Dkt. 3494.[1] Those seven lawsuits were dismissed voluntarily by the Plaintiffs, and there was no settlement, payment, or other stipulation with regard to those dismissals. The instant lawsuit is the <u>*only*</u> one that remains in this MDL. Every other lawsuit against every other health

---

[1] These seven lawsuits included: Armetta v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14022-RWZ; Torbeck v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14023-RWZ; Kashi v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14026-RWZ; Bowman v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14028-RWZ; Dreisch v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14029-RWZ; Davis v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14033-RWZ; and Farthing v. Box Hill Surgery Center, LLC, et al. No. 1:14-cv-14036-RWZ.

care provider defendant has either been dismissed or remanded to the state courts in which they were initially filed.

## II.     RELEVANT BACKGROUND

The Box Hill Defendants hereby incorporate the Statement of Undisputed Facts that was filed contemporaneously with their initial Consolidated Motion for Summary Judgment. *See* Dkt. 3461.

## III.     STANDARD OF REVIEW

A moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c)(2). The moving party is "entitled to judgment as a matter of law" when it makes a sufficient showing on all essential elements of its case to which it has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 317–18 (1986). If the non-moving party fails to make a sufficient showing on an essential element of his case, on which he would bear the burden of proof at trial, summary judgment is proper. *Id.* at 322.

A non-moving party may avert summary judgment by showing that there exist specific facts that would present a genuine issue for trial. *Id.* at 324. To establish a genuine issue of fact sufficient to warrant trial, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must set forth "specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**IV.    ARGUMENT**

    **A.  COUNT I – Medical Malpractice – Negligence**

Maryland law requires a plaintiff to allege sufficient facts to meet each element of a medical negligence claim, namely: (1) the existence of a duty; (2) a breach of the duty; (3) that the plaintiff suffered actual injury or loss; and (4) that the loss or injury proximately resulted from the defendant's breach of the duty. *See Dehn v. Edgecombe,* 384 Md. 606, 619 (2005). To be a proximate cause of an injury, the negligence must be (i) a cause in fact and (ii) a legally cognizable cause. *See Pittway Corp. v. Collins*, 409 Md. 218, 243 (2009). "Causation-in-fact concerns the threshold inquiry of whether defendant's conduct actually produced an injury." *Id*. Legal causation is governed by a determination of "whether the injury was foreseeable." *See Wankel v. A&B Contractors, Inc.*, 127 Md. App. 128, 159 (1999).

This Court must begin its analysis of a negligence action with the question of whether a legally cognizable duty exits. *Patton v. USA Rugby,* 381 Md. 627, 636 (2004). The initial determination as to whether a duty exists is significant because "[t]here can be no negligence where there is no duty that is due." *Id*. at 636 (internal citations omitted). Maryland courts have applied a "foreseeability of harm" test, "which is based upon the recognition that duty must be limited to avoid liability for *unreasonably remote consequences*." *Doe v. Pharmacia & Upjohn Co.*, 388 Md. 407, 415 (2005) (emphasis added) (internal citation omitted). The existence of a duty in a negligence action is a question of law to be decided by the court. *Dehn*, 384 Md. at 619–20.

Causation is an essential element of a negligence claim. For a plaintiff to recover damages, a defendant's negligence must be a cause of a plaintiff's injuries. The causation element consists of factual and proximate cause. If there is no causation in fact, then no further analysis is necessary because the causation element is insufficient. *Mackin v. Harris*, 342 Md. 1, 8 (1996). If there is

causation in fact, the inquiry continues to proximate cause. This Court is able to render a determination as to causation when the relevant facts of the underlying action, as they are in the instant matter, are not in dispute. *See Lashley v. Dawson*, 162 Md. 549, 563 (1932).

### 1. Plaintiffs' "due diligence" claim fails as a matter of law.

In Count I of their Complaint, Plaintiffs set forth what appears to be a laundry list of "duties" that the Box Hill Defendants allegedly owed to Ms. Rozek as a result of the physician-patient relationship. Under the guise of these "duties," it is essentially alleged that the Box Hill Defendants were required to inspect, investigate, and otherwise supervise NECC's compounding procedures, testing and safety policies, and its production facilities. Plaintiffs couch these "duties" as engaging in a "due diligence" of sorts prior to lawfully purchasing preservative-free MPA from NECC.

Plaintiffs' claims, however, fail as a matter of law because no such duties exist under Maryland law and certainly did not exist at the time giving rise to the alleged causes of action. Even assuming, *arguendo*, that such a "due diligence" duty did exist, Plaintiffs' claim still fails because the undisputed facts are devoid of any support for the contention that a breach of that duty bears any causal relationship with NECC's contamination of the MPA. In fact, even Plaintiffs' common-issue experts agree that the Box Hill Defendants did not cause the contamination. *See* Deposition Transcript of David Chason, M.D., 118:11–118:14, excerpts attached as **Exhibit 1**; Deposition Transcript of Lloyd R. Saberski, M.D., 64:7–65:1, excerpts attached as **Exhibit 2**. It is undisputed that "but for" the contamination of the MPA by NECC, Ms. Rozek would not have received a contaminated injection and would not have suffered injury. In short, the alleged negligence of the Box Hill Defendants and the contamination of the MPA are too remotely

connected to satisfy a causal relationship such that the Box Hill Defendants could be held liable for the injuries allegedly sustained by Plaintiffs.

There is no authority supporting the "due diligence" duty proffered by Plaintiffs. Maryland law does not impose a duty on physicians or medical clinics to regulate the pharmacies from which they lawfully purchase medications, nor does Maryland law impose a duty on physicians to visit and/or evaluate a licensed pharmacy's compounding facility prior to purchasing medications as Plaintiffs have shockingly alleged. Plaintiffs not only fail to provide support for such an imposition, but they also fail to cite to any case law that held or found such a duty because no such case law or support exists. In this instance, it is clear that it was the duty of the Massachusetts Board of Pharmacy,[2] the Maryland Board of Pharmacy, or the United States Food and Drug Administration (hereinafter "FDA") to regulate and license NECC and to ensure that NECC complied with applicable pharmacy laws, established by those entities. Regulating and licensing an entity such as NECC is certainly not the responsibility of a single Maryland physician like Dr. Bhambhani. Indeed, even Plaintiffs' expert, Dr. Saberski, conceded that the standard of care did not require Dr. Bhambhani to travel to NECC's facility to perform an inspection prior to purchasing medication from NECC. *See* Deposition Transcript of Lloyd Saberski, M.D., 67:7–67:10, excerpts attached as **Exhibit 2**. Dr. Manchikanti, one of the Box Hill Defendants' standard of care experts, also confirmed that there were no guidelines from any major medical associations requiring any performance of "due diligence" and that the Box Hill Defendants' actions were consistent with the practices of her reasonable peers. *See* Deposition Transcript of Laxmaiah Manchikanti, M.D., 104:10–105:6, excerpts attached as **Exhibit 3**.

---

[2] The Massachusetts Board of Pharmacy is also known as the "Massachusetts Board of Registration in Pharmacy."

The only duty imposed on the Box Hill Defendants was that they exercise reasonable care in their underlying care and treatment of the patients involved in these actions. This duty is, and was, premised on what other reasonable and similarly situated health care providers and clinics in the medical community did, and how they acted, at the time that the care and treatment occurred— not traveling around the country to every manufacturer for every product that might lend itself to a dangerous situation in order to oversee, inspect and ensure compliance.

Dr. Bhambhani and the Box Hill Defendants were well within their legal right to purchase medication from a licensed pharmacy that had licensed pharmacists and from whom thousands of other reasonable, similarly situated physicians and clinics purchased medications and products without ensuring that particular pharmacy complied with Massachusetts law. To further elucidate this point, the Box Hill Defendants also purchase syringes, sterile dressings, sedatives, and other drugs and products that could potentially lead to serious injury, infection, and/or death if not handled appropriately by a manufacturer. Health care providers in a similar position to the Box Hill Defendants are not required under those circumstances, either, to first launch an investigation against each separate manufacturer and to make annual, unannounced visits to dozens of manufacturing facilities across the country throughout the year before they can purchase those other potentially dangerous products. Plaintiffs have not countered that fact with any evidence in this litigation. Further, Maryland law does not impose a duty on physicians and/or clinics, nor does it require them, to purchase medications from an FDA-regulated drug manufacturer as Plaintiffs suggest.

Consistent with the practices of her reasonable peers, Dr. Bhambhani and the Box Hill Defendants, as well as other physicians, did not have a duty to regulate pharmacies or to engage in any type of special due diligence inspection or investigation prior to lawfully purchasing

medications from a licensed pharmacy such as NECC. Maryland law has never recognized any such duties with respect to physicians and/or clinics and the imposition of the same would mark a drastic expansion of existing law that is best left to policy-makers and the legislature.

As a result of Plaintiffs' inability to establish a legally cognizable "due diligence" duty, Plaintiffs' claim necessarily fails and the Box Hill Defendants are entitled to judgment as a matter of law.

Plaintiffs' assertion that the Box Hill Defendants were negligent in procuring medication from NECC fails as a matter of law because, even assuming *arguendo* that such a duty exists, the level of "due diligence" performed does not bear a causal relationship with the Plaintiffs' alleged harms. Plaintiffs were harmed by contaminated MPA, which resulted from NECC's failure to properly manufacture and utilize appropriate sterility practices while compounding MPA. The actions taken by the Box Hill Defendants simply had nothing to do with the actual cause, or cause-in-fact, of the contamination, and the alleged acts of negligence by the Box Hill Defendants are too remotely connected to Ms. Rozek's injuries to support a finding of causation.

The undisputed facts establish that even if the Box Hill Defendants had completed all the various proposed elements of "due diligence" that the PSC's professional witnesses claim were required, the Box Hill Defendants, acting reasonably and in accordance with a standard of care identical to thousands of others, would have purchased medications from NECC, just like they had done for years without incident, and that the resulting fungal meningitis outbreak would not have been averted. Moreover, the level of "due diligence" the Box Hill Defendants completed prior to purchasing medication from NECC did not cause, or have any remote causal relationship with, an outcome which would not have otherwise occurred.

### 2. Plaintiffs' claims related to patient-specific prescriptions fail as a matter of law.

As a preliminary matter, the Box Hill Defendants were not under any duty to use patient-specific prescriptions when ordering medication from NECC. The regulations cited in Plaintiffs' Complaint govern the ordering practices of pharmacists, rather than physicians, and therefore do not apply to the Box Hill Defendants. *See* Handy Complaint at 45–47, ¶¶ 169–174, attached as **Exhibit 4**. Moreover, the standard of care, as determined by reasonable, similarly situated physicians, did not require the use of patient-specific prescriptions. However, even assuming *arguendo* for purposes of this Motion that the Box Hill Defendants were required to provide patient-specific prescriptions in order to purchase MPA from NECC, the undisputed facts in this matter are insufficient to establish either factual or proximate causation.

Factual cause is the "but for" aspect of causation. A negligent act is only deemed the factual cause of an outcome if, in the absence of the act, the outcome would have been avoided. *See Peterson v. Underwood*, 258 Md. 9, 16 (1970). Contrary to Plaintiffs' claims, the injuries sustained by Ms. Rozek were the direct result of NECC's failure to properly manufacture and apply proper sterility and testing practices as to the MPA that they provided to the Box Hill Defendants. Plaintiffs have failed to proffer any evidence to support a finding that the MPA produced by NECC would not have been contaminated if the Box Hill Defendants had ordered medications using patient-specific prescriptions. In fact, Plaintiffs' experts have testified in deposition that ordering MPA without using patient-specific prescriptions had absolutely no impact on the fact that the MPA produced by NECC was adulterated. Dr. Chason, Plaintiffs' expert pharmacist, adopted the findings detailed in his initial Report that "[i]t is clear that operational failures at New England Compounding Center were the *cause* of the [MPA] contamination involved in the 2012 fungal infection outbreak and that NECC's practices facilitated the appearance that it was closely

8

regulated and operated as safely as a manufacturer." *See* Deposition Transcript of David Chason, M.D., 117:1–117:9, excerpts attached as **Exhibit 1**. Plainly stated, Dr. Chason agrees that NECC caused the contamination of the MPA. *See id.* at 118:11–118:14. Dr. Saberski, Plaintiffs' pain medicine expert, further testified that submitting patient-specific prescriptions had no effect on whether the drugs received were contaminated and that ordering medication using patient-specific prescriptions would not have changed the outcome. *See* Deposition Transcript of Lloyd Saberski, M.D., 167:13–168:16, excerpts attached as **Exhibit 2**.

Accordingly, it is undisputed that NECC's failure to properly manufacture and apply proper sterility and testing practices as to MPA was the source of the contamination, not an alleged failure to provide patient-specific prescriptions.  In other words, even assuming that the Box Hill Defendants had provided patient-specific prescriptions to the satisfaction of the Plaintiffs in this case, that would not have caused otherwise contaminated MPA to transform into an unadulterated form to be administered to Ms. Rozek. The Box Hill Defendants still would have received contaminated MPA and the same outcome would have resulted. Therefore, the contamination occurred independent of the ordering practices of the Box Hill Defendants and the "but for" test necessarily fails as a matter of law. Absent a finding of causation in fact, no further analysis is necessary because the causation element is insufficient.  *See Mackin v. Harris*, 342 Md. 1, 8 (1996).

Even if this Court finds that Plaintiffs have met their burden in establishing causation in fact, the Court must also find that the failure to provide patient-specific prescriptions was the proximate cause of Plaintiffs' injuries. In order to support a finding of proximate cause, Ms. Rozek's injuries must have been the "natural and probable consequence" of the Box Hill Defendants' allegedly negligent act of ordering MPA from NECC without using patient-specific prescriptions. *See Hartford Ins. Co. v. Manor Inn*, 335 Md. 135, 159 (1994) (internal citations

omitted). There is no factual support or any testimony in this matter that would support such a conclusion. Rather, the Box Hill Defendants' use of order forms supplied and as directed by NECC instead of patient-specific prescriptions when ordering from NECC is wholly unrelated to and bears no causal relationship with the fact that NECC's negligence caused batches of MPA to be contaminated.

The Box Hill Defendants are entitled to summary judgment as a matter of law because Plaintiffs are unable to establish either factual or proximate causation as it relates to any alleged negligence in ordering MPA from NECC without patient-specific prescriptions.

> **3. The negligent acts of NECC, as well as the criminal conduct of Barry Cadden, constitute superseding, intervening causes that relieve the Box Hill Defendants of any liability related to Ms. Rozek's injuries.**

The Box Hill Defendants, even if presumed to be negligent for purposes of this argument, are precluded from liability with regard to Plaintiffs' negligence claims because the actions of both NECC and Barry Cadden constitute superseding, intervening causes.

An original tortfeasor's liability is terminated when the chain of causation is broken by an intervening force that amounts to a superseding cause. *See Yonce v. SmithKline Beecham Clinical Laboratories, Inc.*, 111 Md. App. 124, 140 (1996). *See also* RESTATEMENT (SECOND) OF TORTS § 440. A superseding cause arises primarily when "unusual" and "extraordinary" independent intervening negligent acts occur that could not have been anticipated by the original tortfeasor. *See Pittway Corp.*, 409 Md. at 249 (internal citations omitted). Maryland courts consider *both* the foreseeability of the harm suffered by the plaintiffs as well as the foreseeability of the intervening acts in determining superseding causation. *Id*. at 252–53 (emphasis in original) (citations omitted). Injuries that result from a highly extraordinary event will not be deemed foreseeable and, in such

a case, the court may declare the intervening cause to be a superseding cause of the plaintiff's injury. *Id*. at 247. *See also* RESTATEMENT (SECOND) OF TORTS § 435(2) cmt. c (1965).

Ms. Rozek's alleged injuries were caused by what has been widely considered to be the largest public health crisis ever caused by a pharmaceutical product.[3] The negligent acts of NECC, as well as the criminal acts of Barry Cadden, amount to superseding, intervening causes that relieve the Box Hill Defendants from any liability stemming from Plaintiffs' alleged injuries.

### a.   NECC's Negligence

It is undisputed that the actions of NECC and other defendants, as well as non-parties, constituted intervening negligent causes of Plaintiffs' injuries. In fact, Plaintiffs, by admission of their own experts, have established that the negligence of NECC caused the asserted injuries. *See* Deposition Transcript of David Chason, M.D., 120:1–121:11, excerpts attached as **Exhibit 1** (testifying that NECC's actions fell below the standard of care with regard to the contaminated lots of MPA and that NECC's conduct caused the injuries of the patients in these cases); Deposition Transcript of Lloyd Saberski, M.D., 64:7–65:18, excerpts attached as **Exhibit 2** (testifying that NECC caused the contamination of the MPA, that NECC failed in the summer and fall of 2012 to fulfill its duty to accurately represent the safety and quality of its products to consumers and potential consumers, and that in his opinion NECC broke the law).

NECC's intervening negligent acts amount to superseding causes of Plaintiffs' alleged harms, thereby precluding the Box Hill Defendants from liability, because NECC's actions were not foreseeable. In the instant matter, the Box Hill Defendants ordered and used NECC products, specifically including preservative-free MPA, with no contamination issues or adverse events for

---

[3] *Owner of New England Compounding Center Convicted of Racketeering Leading to Nationwide Fungal Meningitis Outbreak*, U.S. DEPT. OF JUSTICE (MAR. 22, 2017), https://www.justice.gov/usao-ma/pr/owner-new-england-compounding-center-convicted-racketeering-leading-nationwide-fungal.

years prior to the outbreak. *See* Deposition Transcript of Ritu T. Bhambhani, M.D., 97:12–98:15, excerpts attached as **Exhibit 5**. In addition to the good results that the Box Hill Defendants had with the NECC products, Dr. Bhambhani also noted in her deposition that she was unaware of any regulatory issues with NECC's products or operations. *See id.* at 106:04–109:04. Further eliminating any likelihood that NECC's negligence was foreseeable is the fact that NECC was approved by every regulatory agency exercising oversight over its products and operations. Specifically, they were subject to oversight from the FDA as well as the Massachusetts Board of Pharmacy, and were approved by the Maryland Board of Pharmacy. In addition to such regulatory oversight, NECC also passed the inspection of the Massachusetts Board of Registration in Pharmacy about a year prior to the outbreak, as well as Brigham and Women's Hospital, a highly accredited and respected healthcare institution, as recently as a week prior to the time that the first batch of recalled MPA solution was manufactured in May 2012. *See* Brigham and Women's Hospital Department of Pharmacy USP <797> Audit of NECC, attached as **Exhibit 6**; Brigham and Women's Vendor Audit Survey Form, attached as **Exhibit 7**.

NECC's negligent conduct unquestionably fits the mold as being highly "extraordinary" and "unusual" and, based on the undisputed facts, no reasonable jury could find that the Box Hill Defendants could have foreseen either NECC's actions or Ms. Rozek's injuries. Accordingly, the Box Hill Defendants are entitled to summary judgment on Plaintiffs' negligence claim because NECC's negligence constituted a superseding, intervening cause that as a matter of law precludes them from liability relating to Plaintiffs' negligence claims.

### b.  Barry Cadden's Criminal Conduct

Under Maryland law, the criminal act of a third party can constitute a superseding, intervening cause that precludes liability of the initial actor. *See Troxel v. Iguana Cantina, LLC*,

201 Md. App. 476, 509–10 (2011) (citing RESTATEMENT (SECOND) OF TORTS § 448). In determining whether criminal acts by a third party constitute a superseding, intervening cause, Maryland courts have adopted Section 448 of the RESTATEMENT (SECOND) OF TORTS:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that third person might avail himself of the opportunity to commit such a tort or crime.

*Troxel*, 201 Md. App. at 509–10.

It is undisputed that a federal jury convicted Barry Cadden, the owner and head pharmacist of NECC, of racketeering, racketeering conspiracy, mail fraud and introduction of misbranded drugs into interstate commerce with the intent to defraud and mislead in connection with the 2012 nationwide fungal meningitis outbreak.[4] Specifically, Mr. Cadden directed and authorized the shipping of contaminated MPA to NECC customers nationwide.[5] Additionally, he authorized the shipping of drugs before test results confirming their sterility were returned, never notified customers of nonsterile results, and compounded drugs with expired ingredients.[6] Mr. Cadden also repeatedly took steps to shield NECC's operations from regulatory oversight by the FDA.[7] As a result of his criminal conduct, Mr. Cadden was sentenced to nine years in prison.[8]

Pursuant to Maryland law, the Box Hill Defendants can only be found liable if, at the time they ordered medications from NECC, they realized, or should have realized, both that they had

---

[4] *Owner of New England Compounding Center Convicted of Racketeering Leading to Nationwide Fungal Meningitis Outbreak*, U.S. DEPT. OF JUSTICE (Mar. 22, 2017), https://www.justice.gov/usao-ma/pr/owner-new-england-compounding-center-convicted-racketeering-leading-nationwide-fungal.
[5] *Id*.
[6] *Id*.
[7] *Id*.
[8] *Pharmacist in meningitis outbreak that kills dozens gets 9 years in prison*, BOSTON GLOBE (June 26, 2017), https://www.bostonglobe.com/metro/2017/06/26/feds-cadden-should-pay-for-fungal-meningitis-outbreak/kwet31ZTnsT4lpq4WRzkXO/story.html.

somehow created a situation in which Mr. Cadden would commit such criminal acts *and* that Mr. Cadden was likely to avail himself of such an opportunity. The facts in this matter, when viewed in a light most favorable to Plaintiffs, fall drastically short of even remotely supporting such a conclusion. For years prior to the outbreak, the Box Hill Defendants ordered MPA from NECC that had been unadulterated. Shockingly, during the summer of 2012, Barry Cadden committed criminal acts by shipping contaminated MPA instead of unadulterated MPA. These intervening criminal acts became a superseding cause which broke the chain of causation as it relates to the Box Hill Defendants. The uncontroverted facts in this matter permit but one conclusion and, as such, the question of whether the criminal acts of Mr. Cadden constitute a superseding, intervening cause becomes one of law. *See Pittway Corp.*, 409 Md. at 253.   Accordingly, the Box Hill Defendants are entitled to judgment as a matter of law because liability is precluded as a result of Mr. Cadden's criminal acts.

### B.  Count XII – Violation of Massachusetts Gen. Laws Ch. 93A[9]

In Count XII of Plaintiffs' Complaint, Plaintiffs assert a claim against the Box Hill Defendants for purported violations of consumer protection statutes in Massachusetts, including Mass. Gen. Laws Ann. Ch. 93A, et seq. Massachusetts law is clear, however, that there is no proper cause of action in the instant case against the Box Hill Defendants under Massachusetts General Law Ch. 93A. These Massachusetts laws are intended to protect *Massachusetts consumers* from unfair or deceptive trade practices. *See* G.L. Ch. 93A(2) (emphasis added). No relief can possibly be granted to the Plaintiffs based on this claim.

Section 11 governs jurisdiction of the Ch. 93A claim made by Plaintiffs, and provides as follows:

---

[9] The Box Hill Defendants incorporate the arguments contained in their Reply to Plaintiffs' Opposition to Summary Judgment on Plaintiffs' Massachusetts Consumer Protection Claims. *See* Dkt. 3490.

Any person who engages in the conduct of any trade or commerce and who suffers any loss…as a result of [another person's]…unfair or deceptive act or practice declared unlawful by section two…to bring an action **in the superior court** [of Massachusetts], **or in the housing court** [as provided in another statute unrelated to this claim], whether by way of original complaint, counterclaim, cross-claim or third-party action for damages and such equitable relief, including an injunction, as the court deems to be necessary and proper…

A person may [also] assert a claim under this section in a **district court**, whether by way of original complaint, counterclaim, cross-claim or third-party action, for money damages only…

*See* G.L. Ch. 93A, § 11 (emphasis added).

After analyzing this statute, it is clear that the Circuit Court for Baltimore County, Maryland, where these claims were made, does not enjoy subject matter jurisdiction over a Ch. 93A claim. Section 11 clearly states that a Ch. 93A claim **must be brought** in a [Commonwealth of Massachusetts] "superior court," "housing court," or a "district court." The instant actions were brought in the Maryland Circuit Court for Baltimore County. The fact that this case was removed to this Court by action of the JPML for purposes of more efficient pretrial discovery does not in any way mean that Section 11 of G.L. Ch. 93A is satisfied.

If there is any doubt after reading Section 11 that the Circuit Court for Baltimore County lacks subject matter jurisdiction over Plaintiff's Ch. 93A claim, Section 7 further explains:

A person upon whom a notice is served pursuant to [a Ch. 93A investigation[10]] shall comply with the terms thereof unless otherwise provided by the **order of a court of the commonwealth**.

…

The **attorney general** may file in the **superior court** of the county in which such person resides or has his principal place of business, or of Suffolk county if such person is a nonresident or has no principal place of business in the commonwealth, and serve upon such person, in the same manner as provided in section six, a petition for an order of **such court** for the enforcement of this section and section six.

---

[10] Section 7 refers to Section 6 of MGL Ch. 93A, which addresses Massachusetts law enforcements' ability to enforce Ch. 93A if a person does not comply with an investigation into the alleged violation.

…

*See* G.L. Ch. 93A, § 7 (emphasis added). This provision makes clear that enforcement of Ch. 93A and its parts is put in the hands of the Commonwealth and the Superior Court or another Court in the Commonwealth of Massachusetts, and advanced by an officer of the Commonwealth.

The only interpretation of 93A is that it does not apply to the parties in this case. It only applies to trade or commerce directly or indirectly affecting the *people of* [*Massachusetts*], Ch. 93A(1)(b), and to be handled by the Commonwealth of Massachusetts. This action was filed only by Maryland plaintiffs against Maryland defendants in a Maryland state court. It is undisputed that Defendant Dr. Bhambhani resides only in Maryland and that she is a physician licensed to practice in Maryland (not Massachusetts). Defendants Box Hill Surgery Center and Ritu T. Bhambhani, M.D., LLC, are both Maryland corporations. It is also undisputed that Plaintiffs are not residents of Massachusetts. The Box Hill Defendants are alleged to have sold or distributed MPA in their possession in Maryland to Maryland patients in the Box Hill Surgery Center facility, which is physically located in Maryland. The Plaintiff is alleged to have suffered injury in (or from care in) Maryland. To the extent that treatment was required for Ms. Rozek in this case, it occurred in Maryland. At the very least none of the care occurred in Massachusetts. Clearly, all of the injuries alleged in this action are to a non-Massachusetts consumer. Again, G.L. Ch. 93A does not apply to these cases.

In instances when Section 11 does not apply, Section 9 may apply. However, Plaintiffs' assertions in this regard would be an effort to expand the grasp of G.L. Ch. 93A in order to reach the parties in this case who have absolutely no relation to Massachusetts consumers. An examination of that anticipated assertion shows that Section 9 does not save Plaintiffs' 93A claim either. While not conceding that Section 9 even applies in this instance, Plaintiffs' claim still fails

under Section 9 even if the reach of Section 9 is considered. Clarification is found in *Snyder v. ADS Aviation Maintenance*, 2000 Mass. Super. LEXIS 5 at *20 (Jan. 10, 2000), curiously cited by Plaintiffs' counsel and/or the PSC in their opposition to the Box Hill Defendants' Motion to Dismiss years ago. *Snyder* maintains that jurisdiction under Section 9 of Ch. 93A is determined by the Massachusetts Long-arm Statute. *See Snyder* (quoting M.C. Gilleran, The Law of Chapter 93A, § 7:4 (1989 and Supp. 1999)). More precisely, the only long-arm statute section that applies is Ch. 223A, § 3(d). *See Snyder, supra*. Section 3(d) of G.L. Ch. 223A provides, in pertinent part, that:

> A court may exercise personal jurisdiction over a person…as to a cause of action…arising from the person's…causing tortious injury **in this commonwealth** by an act…outside this commonwealth if he regularly…engages in…or derives substantial revenue from goods or services rendered **in this commonwealth**.

Plaintiffs bear the burden of establishing sufficient facts upon which to predicate personal jurisdiction over the Defendants under the Commonwealth's long-arm statute. *See Tatro v. Manor Care, Inc.*, 416 Mass. 763, 767 (1994). They have not done so. The first distinct element under section 3(d) requires a plaintiff to demonstrate that a defendant's act or omission <u>caused a tortious injury inside Massachusetts</u>. *Cunningham v. Adrox, Inc.,* 40 Mass. App. Ct. 279, 281 (1996) (emphasis added); *see also Snyder, supra*. Unlike in *Snyder*, where four individuals suffered injuries and died from a plane crash in <u>Massachusetts</u>, Ms. Rozek allegedly suffered a tortious injury and died in <u>Maryland</u> after contracting meningitis from medical care in <u>Maryland</u>. The services offered by the Box Hill Defendants to Ms. Rozek did not even occur in Massachusetts. Moreover, the claim was not even made in the proper Court or by the proper person as addressed above.

Having failed the first element, let alone failing to meet their burden of proof, Plaintiffs' Massachusetts consumer protection claims against the Box Hill Defendants, even under Section 9, necessarily fail. As such, there is no need to consider the second prong of the test involving

contacts and derivation of business in Massachusetts, although that element also favors the Box Hill Defendants.

Plaintiffs filed this action in the Circuit Court for Baltimore County, Maryland, but did not even plead a basis for jurisdiction of a Massachusetts state law, let alone establish any evidence during discovery to suggest that this Massachusetts law even applies. In fact, as explained above, the language of Ch. 93A does not allow this cause of action to continue against the Box Hill Defendants. Further, Plaintiffs are unable to state or prove a claim under either Section 11 or Section 9 of G.L. Ch. 93A upon which relief can be granted.

Based on all of the above, Defendants are entitled to judgment as a matter of law as to Plaintiffs' Massachusetts consumer protection claims.[11]

### C.  Plaintiffs are not entitled to punitive damages.[12]

Plaintiffs in this action have asserted a punitive damages claim. While Plaintiffs may attach numerous labels to their claims for punitive damages, the underlying claims in the instant matter involved the medical care of a patient by a health care provider. The Maryland Health Care Malpractice Claims Act (hereinafter "the Act") applies and the claims in the instant case fall under alleged medical negligence principles and rules. *See* Md. Code Ann., Cts. & Jud. Proc., § 3-2A-01, et seq. Pursuant to the Act and governing case law, Plaintiffs' allegations are insufficient to support a punitive damages claim and there are no facts that would even give rise to one.

Maryland law is clear that plaintiffs are required to show <u>actual</u> malice as a prerequisite to the recovery of punitive damages in medical malpractice actions. *Miller v. Schaefer*, 80 Md. App. 60, 68 (1988). Maryland courts have characterized actual malice as "**the performance of an**

---

[11] It bears emphasis that this Court indicated during the Scheduling Conference on December 19, 2017 that the Box Hill Defendants were likely entitled to summary judgment as to Plaintiffs' Massachusetts consumer protection claim.

[12] The Box Hill Defendants incorporate the arguments contained in their Reply to Plaintiffs' Opposition to Summary Judgment on Plaintiffs' Punitive Damages Claim. *See* Dkt. 3489.

**act…with an evil or rancorous motive influenced by hate…to deliberately and willfully injure the plaintiff.**" *Miller*, 80 Md. App. at 69.

While Plaintiffs in the instant matter have pleaded acts of negligence, recklessness, intentional conduct, and fraudulent conduct in trying to describe the Box Hill Defendants' actions, these superfluous allegations without more do not satisfy the prerequisites of establishing a basis for punitive damages. Implied malice is simply not sufficient to support punitive damages. In fact, even with common issue discovery completed, there is no set of facts that would give rise to the showing of actual malice that is required to support Plaintiffs' punitive damages claim. Specifically, Plaintiffs have not and cannot point to any evidence that establishes that Dr. Bhambhani actually acted "with an evil or rancorous motive influenced by hate… to deliberately and willfully injure" Ms. Rozek. *See id*. Plaintiffs cannot simply allege fraud or recklessness, for example, to meet their burden to survive summary judgment. They need to provide facts that reach "actual malice" as outlined above. When that definition of actual malice is taken apart, it is clear that no actual malice exists here. For example, Plaintiffs have not established that Dr. Bhambhani had an "evil or rancorous motive" when treating any of her patients. Rancorous is defined as with bitterness or resentment. Plaintiffs can point to no evidence that Dr. Bhambhani acted with bitterness or resentment. All evidence adduced to date suggests the exact opposite.

Likewise, Plaintiffs can point to no actual evidence or set of facts to support a claim that Dr. Bhambhani had any kind of evil motive when treating her patients generally or Ms. Rozek specifically. The Box Hill Defendants anticipate that Plaintiffs may suggest that Dr. Bhambhani was using NECC's MPA to cut costs and make more money, which they will claim is an "evil motive." However, the Box Hill Defendants challenge Plaintiffs to provide any evidence whatsoever that Dr. Bhambhani was purchasing NECC's MPA because of cost. In fact, the exact

opposite is true. Dr. Bhambhani testified in her deposition that she used NECC's MPA because her previous employer had used it, she had good results with it, and she was concerned about adverse events from preservatives. *See* Deposition Transcript of Ritu T. Bhambhani, M.D., 71:25–73:16, excerpts attached as **Exhibit 5**. Cost was simply not a factor in her decision to purchase MPA from NECC and Plaintiffs cannot provide any evidence to the contrary. This cost incentive theory is simply a tired remnant of claims and actions against other health care provider defendants wherein facts existed to support such a claim. Plaintiffs here are simply parroting that same claim with no facts to support it. Issues of cost simply do not apply to the Box Hill cases generally or Ms. Rozek's case specifically. Accordingly, there is no evidence to support a definition of actual malice.

Even if Plaintiffs can show evidence of an evil or rancorous motive, which they cannot, Plaintiffs certainly cannot show any facts to support that Dr. Bhambhani was influenced by hate. Defendants challenge Plaintiffs to present such evidence. Moreover, actual malice would have required Dr. Bhambhani to act deliberately or to willfully injure her patients. Plaintiffs know that to even suggest such a thing is preposterous. There are absolutely no facts to support that Dr. Bhambhani acted to deliberately or willfully injure her patients and Plaintiffs can point to none to support this claim.

**CONCLUSION**

WHEREFORE, the Box Hill Defendants respectfully request that the Court grant their Motion for Summary Judgment.

[SECTION LEFT INTENTIONALLY BLANK]

Respectfully submitted,


/s/ Catherine W. Steiner_____
Catherine W. Steiner
Gregory K. Kirby
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 500
Towson, Maryland  21204
Tel: (410) 938-8800
*Attorneys for Box Hill Surgery Center, L.L.C.,*
*Ritu T. Bhambhani, M.D., and Ritu T.*
*Bhambhani, M.D., L.L.C.*


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY, that on this 4th day of January, 2018, a copy of the foregoing Consolidated Memorandum of Law in Support of the Box Hill Defendants' Motion for Summary Judgment was electronically filed in the United States District Court for the District of Massachusetts and electronically served upon counsel of record through the Court's CM/ECF system.


/s/ Catherine W. Steiner_____
Catherine W. Steiner, Esq.

21