# EXHIBIT B

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

DAVID J. MATTILA, as Personal Representative of the
Estate of MILDA E. MATTILA, Deceased, WILLARD
MAZURE, STEVEN H. SMITH, JACQUELINE
FOBARE, DOLORES SCULL, NORA K. CLARK,
BETTY L. NEIDIGH, COLLEEN ADKINS, Estate of
JAMES REDMON, PATRICIA TOUZEAU, and PAUL
WHITE, JR,

    Plaintiffs,

v.

CENTERS FOR MEDICARE & MEDICAID
SERVICES, SELECT SPECIALTY HOSPITAL – ANN
ARBOR, and BLUE CROSS BLUE SHIELD OF
MICHIGAN,

    Defendants.

Case No. 2:19-cv-10446
Hon. Gershwin Drain

_____ /

GEOFFREY N. FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Attorneys for Plaintiff
19390 W. 10 Mile Road
Southfield, MI  48075
(248) 355-5555
(248) 355-5148 (fax)
t.weglarz@fiegerlaw.com

_____ /

## PLAINTIFFS' FIRST AMENDED COMPLAINT

This action relates to and/or arises out of the previously filed cases of *Adair v Michigan
Pain Specialists,* Case No. 14-28156-NO, which was assigned to the Honorable Michael
P. Hatty in the Livingston County Circuit Court, and *In Re New England Compounding
Pharmacy, Inc,* Case No. MDL No. 1:13-md-2419-FDS, which was assigned to the
Honorable F. Dennis Saylor IV, in the United States District Court in Massachusetts.
Upon information and belief, both actions are now closed.

*/s/ Todd J. Weglarz*
Todd J. Weglarz (P48035)

NOW COME Plaintiffs, by and through their attorneys, Fieger & Fieger PC, and

for their Declaratory Action against the above-named Defendants, states as follows:

1.     All Plaintiffs reside in the Eastern District of Michigan, as more specifically set forth below.

2.     All Defendants conduct business in the Eastern District of Michigan, as more specifically set forth below.

3.     Defendant CENTERS FOR MEDICARE & MEDICAID SERVICES (CMS) is a federal agency within the United States Department of Health and Human Services which administers the Medicare Program, and has its headquarters in Baltimore County Maryland, and conducts business throughout the country, including in Lenawee, Livingston, Roscommon, and Wayne Counties, Michigan.

4.     Venue and jurisdiction are properly vested in this Court by virtue of Defendant CMS having removed this action to the herein federal district court, and by virtue of Plaintiffs bringing claims against CMS / Medicare, an agency of the United States.

**PLAINTIFF MATTILA**

5.     Plaintiff DAVID J. MATTILA is a resident of Roscommon County, Michigan.

6.     Plaintiff DAVID J. MATTILA is the lawful appointed Personal Representative of MILDA E. MATTILA, Deceased, per order of the Oakland County Probate Court.

7.     Defendant BLUE CROSS BLUE SHIELD OF MICHIGAN ("BCBS") is a Michigan Insurance Company, with its headquarters in Detroit, Wayne County, Michigan.

8.     Defendant SELECT SPECIALTY HOSPITAL – ANN ARBOR ("SSH") is a foreign corporation which conducts its business activities out of and throughout Ann Arbor, Washtenaw County, Michigan.

9.     Plaintiff MATTILA's Decedent was a victim of the fungus-tainted steroid solution with which she was injected in August of 2012 while a patient at the Michigan Pain Specialist Clinic located in Genoa Township, Livingston County, Michigan.

10.    Plaintiff MATTILA's Decedent is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

11.    Plaintiff MATTILA's Decedent is expected to receive a total gross settlement of $300,186.91 from the above fungal steroid cases.

12.    Defendant CMS has asserted a lien on Plaintiff MATTILA's anticipated settlement proceeds, in an amount for $367,828.72 in conditional payments.

13.     Defendant SSH has asserted a lien on Plaintiff MATTILA's anticipated settlement proceeds in an amount in excess of $500,000.00.

14.     Defendant BCBS has asserted a lien on Plaintiff's anticipated settlement proceeds in an amount of $51,175.92.

15.     The liens asserted against Plaintiff MATTILA's anticipated settlement proceeds are grossly in excess of Plaintiff MATTILA's anticipated gross recovery.

16.     Upon information and belief, Defendant SSH has been paid / reimbursed by Defendant CMS / Medicare for the medical expenses it is asserting on Plaintiff MATTILA's settlement proceeds, and therefore, Defendant SSH has no legitimate claim of lien on this matter.

17.     During the negotiations on the settlements reached on the underlying state and federal "fungal" cases referenced above, Defendants agreed that where a Plaintiff has significant liens asserted against his or her settlement by two lienholders, CMS and BCBS would take no more than a certain percentage, determined on a sliding scale based upon several factors including total matrix points awarded (known as the "lien reduction formula").   In the case of Plaintiff MATTILA, the "lien reduction formula" is 21.5%[1], meaning Defendant CMS's and BCBS's total lien would be resolved for 21.5% of Plaintiff MATTILA's gross

---

[1] Under the lien reduction formula, 21.5% is the highest combined percentage two lienholders could be awarded.  Most of the claimants received an even lower percentage under which to resolve their outstanding liens.

settlement proceeds, to be split equally amongst the lien holders ($78,523,25 total, or $39,261.62 each).

18.    During the negotiations on the settlements reached on the underlying state and federal "fungal" cases referenced above, Defendants CMS and BCBS agreed that their lien interests would be resolved pursuant to a "lien reduction formula", whereby Defendant CMS's and BCBS's total lien interests would be resolved for 21.5% of Plaintiff MATTILA's gross settlement proceeds, to be split equally amongst the lien holders ($64,540.18 - $32,270.09 to BCBS, and $32,270.09 to CMS).

19.    Plaintiff MATTILA requests that the above agreement be applied to the liens asserted by Defendants on his settlement, and/or that any other process be applied in determining the amount of liens owed, in order to preserve a / the fair, just, and reasonable result intended by the parties when resolving and settling Plaintiff's claim.

## **PLAINTIFF MAZURE**

20.    Plaintiff WILLIARD MAZURE is a resident of Bay County, Michigan.

21.    Plaintiff MAZURE was a victim of the fungus-tainted steroid solution with which he was injected in September of 2012 while a patient at the Michigan Pain Specialist Clinic located in Genoa Township, Livingston County, Michigan.

22.     Plaintiff MAZURE is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

23.     Plaintiff MAZURE is expected to receive a total gross settlement of $365,224.44 from the above fungal steroid cases.

24.     Defendant CMS has asserted a lien on Plaintiff MAZURE's anticipated settlement proceeds, based upon the amount of $77,597.14 in conditional payments.

25.     Defendant BCBS has asserted a lien on Plaintiff MAZURE's anticipated settlement proceeds in an amount of $161,727.94.

26.     Plaintiff MAZURE has resolved Blue Cross's lien for the amount of $45,000.

27.     Plaintiff MAZURE submits that many of the conditional payment amounts submitted by Medicare are unrelated to the Plaintiff's tainted fungal injection claims, and that the related conditional payments are really in the area of $58,000, perhaps even less.

28.     After applying the traditional Medicare formula to conditional payments in the amount of $58,770.45, the lien payoff amount should only be $38,964.81, less consideration of the $45,000 lien Plaintiff is paying to BCBS.

29.     To date, Defendant CMS has refused to resolve its lien interest for anything less than an amount based on conditional payments of $77,597.14.

30.     Plaintiff requests, for the reasons set forth above and below, that the court issue a ruling declaring that the CMS should be resolved on a conditional payment amount of $58,770.45, as those are the only amounts which are related to Plaintiff's fungal tainted steroid injection claim.

## PLAINTIFF SMITH

31.     Plaintiff STEVEN H. SMITH ("SMITH") is a resident of Lenawee County, Michigan.

32.     Plaintiff SMITH was a victim of the fungus-tainted steroid solution with which he was injected on September 24, 2012 while a patient at the Michigan Pain Specialist Clinic located in Livingston County, Michigan.

33.     Plaintiff SMITH is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

34.     Plaintiff SMITH received a total gross settlement of $269,000.23 from the above fungal steroid cases.

35.     Throughout the pendency of the underlying litigation, Plaintiff's counsel has regularly requested CMS to advise of the conditional payment amounts

it would be asserting as a lien on Plaintiff SMITH's tainted steroid injection claims / cases.

36.     CMS always represented to Plaintiff SMITH that the total amount of medical expense payments it expended on Plaintiff, which relate to the September 24, 2012 tainted steroid injection, was approximately $36,000.

37.     On April 7, 2017, Plaintiff SMITH's counsel notified CMS that Plaintiff SMITH will be receiving a total global settlement approximating $227,000, to be paid out in several installment checks over the next year.  Plaintiff's counsel requested CMS to advise of its total lien payoff based upon the total settlement, and Plaintiff's counsel provided CMS with Plaintiff's advanced costs and total 1/3 attorney fee based upon the total anticipated payout.

38.     On May 8, 2017, CMS responded by advising in writing that the total lien payoff amount was $23,758.30, which was based upon a total conditional payment amounts of $35,837.79 (consistent with what CMS asserted over the last couple of years).

39.     Plaintiff's counsel received Plaintiff SMITH's 1ˢᵗ settlement installment on June 8, 2017.  Several weeks later, Plaintiff's counsel forwarded a check to CMS in the full requested payoff amount of $23,758.30.

40.     On September 8, 2017, CMS issued a letter acknowledging "Full Payment" of its lien interest on Plaintiff SMITH's tainted steroid injection claims.

41.     On October 4, 2017, CMS re-asserted its lien interest on the very same September 2012 tainted steroid injection claim which Plaintiff SMITH negotiated and resolved just a few months earlier, and which CMS acknowledged as being paid in full just a month earlier. This was initially thought to be a clerical error on the part of CMS, in light of Plaintiff having just received a satisfaction in full letter just a month earlier.  However, CMS has continued to re-assert its re-asserted lien, and Plaintiff's counsel's efforts / requests to CMS to withdraw / waive the re-asserted lien have been unsuccessful.

42.     CMS's re-asserted lien asserts a claim for conditional payments of $18,610.30, the gist of which are for medical expenses incurred Plaintiff was hospitalized at St. Joseph Mercy Hospital in October of 2012.  These expenses were well known and well available to CMS at the time it negotiated and resolved its entire lien with Plaintiff SMITH in May of 2017.

43.     Plaintiff SMITH submits that because CMS's lien interest was already negotiated, and paid in full, any attempt re-litigate the CMS lien interest is barred by res judicata and/or collateral estoppel.

44.     Plaintiff SMITH respectfully requests that this Honorable Court issue an order declaring that because Plaintiff SMITH already paid in full any lien interest CMS had in Plaintiff's September 24, 2012 tainted steroid injection claim in June of

2017, CMS's attempt to re-assert its now resolved lien interest on Plaintiff's claim is null and void.

## **PLAINTIFF FOBARE**

45.     Plaintiff JACQUELINE FOBARE ("FOBARE") is a resident of Wayne County, Michigan.

46.     Plaintiff FOBARE was a victim of the fungus-tainted steroid solution with which she was injected on October 1, 2012, while a patient at the Michigan Pain Specialist Clinic located in Livingston County, Michigan.

47.     Plaintiff FOBARE is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

48.     Plaintiff FOBARE received a total gross settlement of $316,714.01 from the above fungal steroid cases.  Liens were asserted by Blue Care Network and CMS.

49.     Since 2013, Plaintiff's counsel has regularly requested CMS to advise of the conditional payment amounts it would be asserting as a lien on Plaintiff FOBARE's tainted steroid injection claims / cases.

50.     Prior to receiving her first settlement installment, on September 30, 2016, Plaintiff FOBARE was advised by the NECC Settlement Trustee that she had

30 days to decide whether she wanted to have her liens resolved by the "lien reduction formula", whereby 21.5% would be withheld from all gross proceeds, or if she wanted to "opt-out" and resolve her liens on her own.

51.     Naturally, the lien reduction formula was designed to benefit claimants having high liens.  The lien reduction formula did *not* benefit claimants having small liens and higher settlements.

52.     At the time, it was estimated that Plaintiff FOBARE's total settlement proceeds would be approximately $268,000.

53.     The lien reduction formula of 21.5% on Plaintiff's gross proceeds meant that at least $57,620 would automatically be withheld and paid to CMS and Blue Care to resolve said liens, regardless of the actual lien amounts.

54.     Prior to the 30-day deadline during which Plaintiff had to decide whether to accept the automatic lien percentage of 21.5% or to opt-out of same, Plaintiff's counsel requested Blue Care and CMS to advise of their lien amounts. Blue Care advised its total lien was only $6,257.77, and on October 8, 2016, CMS advised that it revised its conditional payment amount from $28,071.28 to *$3,273.09*.

55.     Assured that the her actual lien exposure was *well less* than taking out the automatic 21.5% from her gross settlement ($10,000 in conditional payments total (less pro rata for attorney fees) compared to $57,000 plus), it was in Plaintiff FOBARE's financial best interest to opt-out of the lien reduction percentage.

Plaintiff FOBARE opted out of the automatic lien resolution formula on October 27, 2016, just a few days before her deadline.

56. Two months later, on December 16, 2016, CMS sent a lien letter increasing its lien / conditional payment amounts to *$120,834.43.*

57. Had Defendant CMS simply advised Plaintiff FOBARE at any from 2013 through October 30, 2016, that it was claiming conditional payment amounts of $120,000 or above, Plaintiff would have opted-in for the automatic 21.5% lien reduction percentage to resolve both of her liens.

58. Plaintiff FOBARE, through her counsel, explained the injustice caused her by opting out of the lien reduction formula only because she relied on CMS's representation its lien was only a few thousand dollars.  Plaintiff explained that had she known CMS had a lien in excess of $120,000, she would have opted for the agreed to lien percentage of 21.5%, and kindly asked CMS to agree to the formula as initially offered to her.  CMS ignored this request and simply re-issued the same lien letter asserting the same $120,000 in conditional payments (CMS Conditional Payment Letter dated June 5, 2017).

59. On June 7, 2017, Plaintiff FOBARE contested the $120,000 in conditional payments by pointing out each and every diagnosis code which was either pre-existing and/or did not otherwise relate to Plaintiff's tainted steroid injection.  Plaintiff also advised CMS that she was expected to receive a total global

settlement approximating $267,750, to be paid out in several installment checks over the next year[2].  Plaintiff's counsel requested CMS to advise of its total lien payoff based upon the total settlement, and Plaintiff's counsel provided CMS with Plaintiff's advanced costs and total 1/3 attorney fee based upon the total anticipated payout.

60.    A couple weeks later, Defendant CMS responded, and agreed with Plaintiff FOBARE that some of the expenses were unrelated to Plaintiff's claim, and CMS reduced the conditional payment amount from $120,000 to $89,006.55[3].  CMS then issued a final payoff amount of $58,144.42 for satisfaction of its lien for the cost of medical care related to Plaintiff's case.

61.    Not wanting to fight CMS any further, and not wanting her settlement funds to continue being withheld by the settlement trustee, Plaintiff FOBARE agreed to resolve the CMS lien for the requested $58,144.42.

62.    Plaintiff's counsel received Plaintiff FOBARE's 1st settlement installment on October 10, 2017.  Two weeks later, Plaintiff's counsel forwarded a check to CMS in the full requested payoff amount of $58,144.42.

63.    A week after receiving Plaintiff FOBARE's lien payment in full, on November 27, 2017, Defendant CMS re-asserted another lien on the very same case

---

[2] The Settlement Trustee would not release settlement checks until after he / she received a resolution letter from each lien holder.
[3] Plaintiff FOBARE resolved the BCBS lien for $4,000 (which has been paid and is fully resolved).

it just settled, resolved, and on which it received its full requested payment.  CMS's re-asserted lien alleges $8,986.90 in conditional payments for expenses incurred in 2012 and 2013.  These were claims that were known to CMS for years, and which were resolved or should have been in the prior satisfied lien.

64.    On January 5, 2018, CMS issued a letter acknowledging "Full Payment" of its lien interest on Plaintiff FOBARE's tainted steroid injection claims.

65.    Notwithstanding Plaintiff FOBARE having fully satisfied CMS's claim of lien, CMS is still re-asserting a claim of lien for conditional payments of $8,986.90 against Plaintiff FOBARE.  Plaintiff's counsel's efforts / requests to CMS to withdraw and waive its re-asserted lien have been unsuccessful.

66.    CMS's re-asserted lien asserts conditional payments which are unrelated to Plaintiff FOBARE's tainted injection received in the lumbar spine at L4/L5.  For example, CMS requests reimbursement for a stay at Heartland Health Center in 2013 for a fractured neck.  Plaintiff did not suffer a fractured neck from the steroid injection.  She suffered an abscess at L4-L5.

67.    Plaintiff FOBARE submits that because CMS's lien interest was already negotiated, and paid in full, any attempt re-litigate the CMS lien interest is barred by res judicata and/or collateral estoppel.  In the alternative, Plaintiff FOBARE submits that her total CMS lien liability should be re-examined and

reduced significantly because a significant amount of those expenses were unrelated to her lumbar injections.

68.     Plaintiff FOBARE respectfully requests that this Honorable Court issue an order declaring that because Plaintiff FOBARE already paid in full any lien interest CMS had on Plaintiff's claim relating to her October 1, 2012 tainted steroid injection at L4/L5, CMS's attempt to re-assert its now resolved lien interest is null and void.

69.     In the alternative, if Defendant CMS is permitted to re-assert its lien interest notwithstanding the fact that said interest as previously resolved, Plaintiff requests the she be permitted to contest CMS's lien in its entirety, for reason a significant number of the expenses CMS was reimbursed for were unrelated to the underlying claim.

## **PLAINTIFF SCULL**

70.     Plaintiff DOLORES SCULL ("SCULL") is a resident of Washtenaw County, Michigan.

71.     Plaintiff SCULL was a victim of the fungus-tainted steroid solution with which she was injected on September 23, 2012 (lumbar epidural at L3-L5 on the left), while a patient at the Michigan Pain Specialist Clinic located in Livingston County, Michigan.

72.     Plaintiff SCULL is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

73.     Plaintiff SCULL received a total gross settlement of $84,172.32 from the above fungal steroid cases.  Liens were asserted by BCBS[4] and Defendant CMS.

74.     Defendant CMS was aware of Plaintiff SCULL's liability claim against NECC and MPS since at least 2013, several years before Defendant CMS was advised of Plaintiff SCULL's anticipated settlement.

75.     On January 18, 2017, Defendant CMS asserted a lien on conditional payments totaling $6,456.61.

76.     Plaintiff SCULL contested many of the conditional payments, as they were unrelated to her claim for a tainted injection to her lower back.  For example, there were multiple payments for expenses incurred for treatment of a fractured ankle.  Plaintiff SCULL also advised CMS of her anticipated global settlement amount and provided CMS with the procurement costs.

---

[4] BCBS Lien of $1,1269.75 was resolved for $757.19 and has been paid in full.  The BCBS lien is not an issue in the matter of Plaintiff Scull.

77.    On April 17, 2017, Defendant CMS agreed with Plaintiff SCULL's position, and reduced its conditional payments amount from $6,456.61 to $1,746.07, and demanded a lien payoff in the amount of $1,125.45.

78.    Plaintiff's counsel received Plaintiff SCULL's 1st settlement installment in May of 2017, after which Plaintiff's counsel forwarded a check to CMS in the full requested payoff amount of $1,125.45.

79.    On June 22, 2017, CMS issued a letter of "Acknowledgment of Full Payment" of its lien interest on Plaintiff SCULL's tainted steroid injection claims.

80.    Several months later, CMS re-asserted another lien on the very same case it just settled, resolved, and on which it received its full requested payment. CMS's re-asserted a lien interest on $5,529.27 in conditional payments for medical expenses.   Most of these expenses are the exact same expenses which CMS attempted to previously assert, and later acknowledged were unrelated to Plaintiff's claim.

81.    Plaintiff's counsel's efforts / requests to CMS to withdraw and waive its re-asserted lien which was previously negotiated, resolved, and paid, have been unsuccessful.

82.    Plaintiff SCULL submits that because CMS's lien interest was already negotiated, and paid in full, any attempt re-litigate the CMS lien interest is barred by res judicata and/or collateral estoppel.  In the alternative, Plaintiff SCULL submits

that her total CMS lien liability should be re-examined and reduced significantly because a significant amount of those expenses are unrelated to her lumbar injection.

83.    Plaintiff SCULL respectfully requests that this Honorable Court issue an order declaring that because Plaintiff SCULL already paid in full any lien interest CMS had on Plaintiff's claim relating to her September 23, 2012 tainted steroid injection at L4/L5, CMS's attempt to re-assert its now resolved lien interest is null and void.

84.    In the alternative, if Defendant CMS is permitted to re-assert its lien interest notwithstanding the fact that said interest as previously resolved, Plaintiff requests the she be permitted to contest CMS's lien in its entirety, for reason a significant number of the expenses CMS was reimbursed for were unrelated to the underlying claim.

## **PLAINTIFF CLARK**

85.    Plaintiff NORA K. CLARK ("CLARK") is a resident of Mason County, Michigan.

86.    Plaintiff CLARK was a victim of the fungus-tainted steroid solution with which she was injected on August 20, 2012 (SI Joint, bilateral) while a patient at the Michigan Pain Specialist Clinic located in Livingston County, Michigan.

87.    Plaintiff CLARK is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and

the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

88.     Plaintiff CLARK received a total gross settlement of $19,431.93 from the above fungal steroid cases.

89.     Defendant CMS asserted a lien on conditional payments totaling $1,654.02.

90.     Plaintiff CLARK contested many of the conditional payments, as they were unrelated to her claim for a tainted injection to her SI Joint.  Defendant CMS was advised of Plaintiff's anticipated global settlement amount and was provided with Plaintiff's procurement costs.  Defendant CMS agreed that the related conditional payments were only $783.30 and demanded a lien payoff in the amount of $379.93.

91.     Plaintiff's counsel received Plaintiff SCULL's 1st settlement installment on June 30, 2017, after which Plaintiff's counsel forwarded a check to CMS in the full requested payoff amount of $379.93.

92.     On October 17,2017, CMS issued a letter advising that CMS's lien interest relating to Plaintiff CLARK's August 20, 2012 incident has been "resolved".

93.     Notwithstanding Defendant CMS's own letter admitting its lien interest relating to Plaintiff's August 20, 2012, has been resolved, Defendant CMS has re-

asserted its lien interest on this very same incident.  Since CMS is now asserting a lien interest on $4,731.25 in conditional payments.

94.    Plaintiff's counsel's efforts / requests to CMS to withdraw and waive its re-asserted lien which was previously negotiated, resolved, and paid, have been unsuccessful.

95.    Plaintiff CLARK submits that because CMS's lien interest was already negotiated, and paid in full, any attempt re-litigate the CMS lien interest is barred by res judicata and/or collateral estoppel.  In the alternative, Plaintiff CLARK submits that her total CMS lien liability should be re-examined and reduced significantly because a significant amount of those expenses are unrelated to her SI injection.

**PLAINTIFF NEIDIGH**

96.    Plaintiff BETTY L. NEIDIGH ("NEIDIGH") is a resident of Oakland County, Michigan.

97.    Plaintiff NEIDIGH was a victim of the fungus-tainted steroid solution with which she was injected on September 13, 2012 (Low back L5/S1; and SI Joint) while a patient at the Michigan Pain Specialist Clinic located in Livingston County, Michigan.

98.    Plaintiff NEIDIGH is a claimant in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and

the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.

99.    Plaintiff NEIDIGH received a total gross settlement of $175,395.93 from the above fungal steroid cases.

100.   Defendant CMS asserted a lien on conditional payments totaling $13,822.30.

101.   Plaintiff CLARK contested many of the conditional payments as being unrelated to her claim for a tainted injection to her Low back and SI Joint.  Defendant CMS was advised of Plaintiff's anticipated global settlement amount and was provided with Plaintiff's procurement costs.  Defendant CMS agreed that the related conditional payments were only $10,976.41 and demanded a lien payoff in the amount of $7,171.66.

102.   Plaintiff's counsel received Plaintiff NEIDIGH's 1st settlement installment on May 1, 2017, after which Plaintiff's counsel forwarded a check to CMS in the full requested payoff amount of $7,171.66.

103.   On October 17,2017, CMS issued to Plaintiff a letter advising that its lien was paid in full.

104.   Notwithstanding Defendant CMS's own letter admitting its lien interest relating to Plaintiff's August 20, 2012, had been paid in full, on October 4, 2017,

Defendant CMS re-asserted its lien interest on this very same incident, and asserted a lien interest on $11,927.42 in conditional payments.

105.   Plaintiff NEIDIGH's counsel sent a letter to CMS on November 13, 2017, explaining that Plaintiff had just paid off CMS's lien and that CMS is re-asserting a lien interest which had already been resolved, and that CMS should withdraw its re-asserted lien.

106.   On November 27, 2017, Defendant CMS sent Plaintiff a letter advising that it agrees with Plaintiff's request to waive its reasserted lien and advised the case would be adjusted accordingly.   In the same date, however, CMS sent Plaintiff another letter advising that it is asserting a line on conditional payments in the amount of $1,650.64.

107.   Plaintiff's counsel's subsequent requests and efforts to convince CMS to withdraw its re-asserted lien have been unsuccessful.

108.   Plaintiff NEIDIGH submits that because CMS's lien interest was already negotiated, and paid in full, any attempt re-litigate the CMS lien interest is barred by res judicata and/or collateral estoppel.   In the alternative, Plaintiff NEIDIGH submits that her total CMS lien liability should be re-examined and reduced significantly because a significant amount of those expenses are unrelated to her low back / SI joint injection.

## **PLAINTIFFS ADKINS, REDMON, TOUZEAU & WHITE**

109.   Plaintiff COLLEEN ADKINS ("ADKINS") is a resident of Washtenaw County, Michigan.

110.   Plaintiff Estate of JAMES REDMON, Deceased ("REDMON") is a resident of Livingston County, Michigan.

111.   Plaintiff PATRICIA TOUZEAU ("TOUZEAU") is a resident of Livingston County, Michigan.

112.   Plaintiff PAUL WHITE ("WHITE") is a resident of Lake County, Michigan.

113.   Plaintiffs ADKINS, REDMON, TOUZEAU, and WHITE were victims of the fungus-tainted steroid solution with which they were injected on September 17, 2012, September 17, 2012, September 12, 2012, and September 20, 2012, respectively.

114.   Plaintiffs ADKINS, REDMON, and TOUZEAU are claimants in both the federal and state actions arising out of the tainted steroid injections – the federal cases against the NECC, and the state action of *Adair v MPS,* Case No. 14-28156-NO filed in the Livingston County Circuit Court.  Plaintiff WHITE is a claimant in the federal cases against the NECC.

115.   Plaintiff ADKINS received a total gross settlement of $324,146.06 from the above fungal steroid cases.  BCBS asserted a lien in the amount of $270,568.35, and CMS asserted a lien on conditional amounts totaling $699.27.

116.   Plaintiff ADKINS resolved the BCBS lien for $69,691.40, and resolved the CMS lien for a total payout of $454.74.

117.   Plaintiff ADKINS paid off the CMS lien in full on July 14, 2017 (shortly after receiving her 1st settlement installment check).  CMS acknowledged the lien was paid in full on August 7, 2017.

118.   Several months later, Defendant CMS re-asserted its lien interest on the very same claim Plaintiff ADKINS just negotiated, settled and resolved with Defendant CMS.  The re-asserted lien by CMS now alleges $334.08 in conditional payments.

119.   Plaintiff REDMON received a total gross settlement of $166,214.97 from the above fungal steroid cases.  Plaintiff resolved the lien with Priority Health for $2,133.65, and resolved the lien with CMS for a total payoff amount of $6,242.23.

120.   Plaintiff REDMON paid off the CMS lien in full on August 21, 2017, (shortly after receiving the 1st settlement installment check and order from probate court authorizing the distribution).  Defendant CMS in turn issued a letter to Plaintiff

REDMON on October 4, 2017, advising its lien interest had been paid in full, and that CMS was closing out its file.

121.   On that same date, however, Defendant CMS re-asserted its lien interest on the very same claim Plaintiff REDMON just negotiated, settled and resolved with Defendant CMS.  The re-asserted lien by CMS now alleges $293.73 in conditional payments.

122.   Plaintiff TOUZEAU received a total gross settlement of $181,079.08 from the above fungal steroid cases.  Plaintiff resolved CMS's lien interest lien for a total payoff amount of $11,868.01.

123.   Plaintiff TOUZEAU paid off the CMS lien in full on October 25, 2017, (shortly after receiving her 1st settlement installment check).  Defendant CMS in turn issued a letter to Plaintiff TOUZEAU on November 28, 2017, advising its lien interest had been paid in full, and that CMS was closing out its file.

124.   On that same date, however, Defendant CMS re-asserted its lien interest on the very same claim Plaintiff TOUZEAU just negotiated, settled and resolved with Defendant CMS.  The re-asserted lien by CMS now alleges $411.39 in conditional payments.

125.   Plaintiff WHITE received a total gross settlement of $85,926.30 from the above fungal steroid cases.  Plaintiff resolved CMS's lien interest lien for a total payoff amount of $1,620.90.

126.   Plaintiff WHITE paid off the CMS lien in full on June 9, 2017, (shortly after receiving his 1st settlement installment check).  Defendant CMS in turn issued a letter to Plaintiff WHITE on June 30, 2017, advising its lien interest had been paid in full, and that CMS was closing out its file.

127.   Five months later however, Defendant CMS re-asserted its lien interest on the very same claim Plaintiff WHITE negotiated, settled and resolved with Defendant CMS five months earlier.  The re-asserted lien by CMS now alleges $514.70 in conditional payments.

## COUNT I

## PLAINTIFF MATTILA & PLAINTIFF MAZURE'S DECLARATORY ACTION

### (Defendants SSH, CMS & BCBS)

128.   Plaintiff hereby reincorporates each and every allegation contained in Paragraphs 1 through 128 as if fully set forth herein.

129.   Regarding Defendant SSH's lien interest alleged on Plaintiff MATTILA's settlement, Plaintiff respectfully requests that the Court declare that SSH has no lien on Plaintiff's settlement proceeds for reason that SSH has already been reimbursed by CMS for any alleged services and expenses incurred and paid for by SSH, which arise out of and relate to Plaintiff's Decedent's August 2012 tainted steroid injections.

130.   Regarding the liens asserted by Defendant CMS and Defendant BCBS, on Plaintiff MATTILA's settlement, Plaintiff respectfully requests that the Court declare that each respective Defendant's lien shall be resolved for a total of 21.5% of the Plaintiff's gross settlement proceeds ($78,523.25 total, with each Defendant to receive $39,261.62), the exact amount each such Defendant would have received under the lien reduction formula agreed to by each Defendant and other insurers during their negotiations on the settlements involving the *Adair v MPS* matter and the federal NECC matters.

131.   In the alternative, Plaintiff requests that the Court declare that the lien interests asserted by Defendants SSH, BCBS, and CMS shall be resolved in amounts founded and based upon principles of equity and fairness, including the consideration of whether Defendants should be entitled to reimbursement of expenses for which Plaintiff MATTILA received no compensation, and other factors, so that the Plaintiff MATTILA is fairly and reasonably compensated for her injuries and damages.

132.   Regarding the lien asserted by Defendant CMS on Plaintiff MAZURE's settlement, based on conditional payments of $77,597.14, Plaintiff requests that this Court strike all unrelated conditional payments asserted by CMS, and reduce the conditional payment accordingly, which Plaintiff asserts is less than $58,000.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to enter Declaratory relief consistent with the above.

## COUNT II

## PLAINTIFFS SMITH, FOBARE, SCULL, CLARK, NEIDIGH, ADKINS, REDMON, TOUZEAU & WHITE

## DECLARATORY ACTION

### (Defendant CMS)

133.   Plaintiffs hereby reincorporates each and every allegation contained in Paragraphs 1 through 132 as if fully set forth herein.

134.   For the reasons more fully explained above, Plaintiffs SMITH, FOBARE, SCULL, CLARK, NEIDIGH, ADKINS, REDMON, TOUZEAU & WHITE submit that because CMS's lien interests were previously negotiated, settled, resolved, and paid in full, Defendant CMS's attempt to re-assert its lien interest on the same claims are barred by res judicata and/or collateral estoppel.

135.   In the alternative, if Defendant CMS is permitted to re-assert lien claims previously resolved, then Plaintiffs request they be permitted to challenge and contest all expenses asserted CMS, and that the Court strike any and all such expenses unrelated to Plaintiffs' tainted injection claims, and reduce the conditional payments accordingly.

WHEREFORE, Plaintiff respectfully requests the Honorable Court to enter Declaratory relief consistent with the above.

/s/ Todd J. Weglarz
GEOFFREY N. FIEGER (P30441)
TODD J. WEGLARZ (P48035)
Fieger Law
Attorneys for Plaintiffs
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555

Dated: August 27, 2019

## CERTIFICATE OF SERVICE

I hereby certify that on August 27, 2019, I electronically filed Plaintiffs First Amended Complaint with the clerk of the Court, using the ECF system which will send notification of such filing.

/s/ Danielle L. Dezbor
Danielle L. Dezbor