# EXHIBIT K

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID J. MATTILA, ET AL.,

Plaintiffs,

v.

Case No. 19-cv-10446

CENTERS FOR MEDICARE & MEDICAID,
ET AL.,

UNITED STATES DISTRICT COURT
JUDGE GERSHWIN A. DRAIN

Defendants.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [#20]

### I. INTRODUCTION

On August 10, 2018, Plaintiff David J. Mattila, as Personal Representative of the Estate of Milda E. Mattila, filed the instant declaratory action against Defendants Centers for Medicare & Medicaid Services, Select Specialty Hospital – Ann Arbor, and Blue Cross Blue Shield of Michigan in the Livingston County Circuit Court. *See* ECF No. 1, PageID.2. On February 14, 2019, Defendant Centers for Medicare & Medicaid Services (hereinafter, "Defendant") removed this matter to this Court. *See id.*

Presently before the Court is Defendant's Motion to Dismiss, filed on October 29, 2019. ECF No. 20. Plaintiffs filed a Response on December 18, 2019. ECF No. 24. Defendant filed its Reply on January 17, 2020. ECF No. 27. A hearing on

Defendant's Motion was scheduled for February 5, 2020. After reviewing the parties' briefs, the Court finds that no hearing on the Motion is necessary. *See* E.D. Mich. LR 7.1(f)(2). For the reasons that follow, the Court will **GRANT** Defendant's Motion to Dismiss [#20].

## II. FACTUAL BACKGROUND

The instant matter stems from a mass tort settlement relating to a national meningitis outbreak. ECF No. 20, PageID.125. Plaintiffs were injured as a result of steroid injections found to be tainted with fungal meningitis. ECF No. 24, PageID.300.

### A. The Parties' Relationship to the Underlying Mass Tort Settlement

Plaintiffs received covered medical items and services as a result of their injuries from the fungus-tainted steroid injections. ECF No. 20, PageID.124. Under the Medicare Secondary Payer ("MSP") provisions of the Social Security Act, 42 U.S.C. § 1395y(b)(2), Medicare functions as a secondary provider of medical services for beneficiaries. ECF No. 24, PageID.124. Generally, a non-Medicare, primary payer—including a judgment or settlement involving a third-party tortfeasor—must be utilized first before Medicare coverage is available. *Id.* In some circumstances, however, such coverage is not immediately available; Medicare therefore pays a "conditional payment" for covered services to make sure that their beneficiaries receive their necessary medical items and services. *Id.* The MSP

provisions give Medicare a statutory right to reimbursement for its conditional payments once a primary payer can fulfill its payment responsibility. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). Here, Defendant asserted liens against Plaintiffs for its conditional payments. *See* ECF No. 13.

Plaintiffs in the instant matter each pursued separate federal and state actions[1] to receive monetary relief for their injuries from multiple defendants, including the manufacturer of the steroid injections, New England Compounding Pharmacy Inc., d/b/a New England Compounding Center ("NECC"). *See* ECF No. 13; ECF No. 20, PageID.126. Due to the number of claimants and the amount of damages presented in the federal lawsuit, NECC filed for Chapter 11 bankruptcy in the United States Bankruptcy Court for the District of Massachusetts. ECF No. 20, PageID.126; ECF No. 24, PageID.303. The bankruptcy court approved a NECC National Settlement in May 2015, which established five NECC settlement funds for claimants to receive payments in connection with their tort claims. ECF No. 24, PageID.126.

In September 2016, Defendant, the NECC Tort Trustee, and several other parties entered into a settlement agreement ("MSP Settlement Agreement"), which was created to "streamline the process by which Medicare-entitled claimants (such as plaintiffs) could resolve their MSP obligations to [Defendant]." ECF No. 20,

---

[1] *In re: New England Compounding Pharmacy, Inc.*, Case No. MDL No. 1:13-md-2419-FDS (D. Mass.) and *Adair, et al. v. Michigan Pain Specialists PLLC, et al.*, Case No. 14-28156-NO (Livingston Cty. Cir. Ct., Mich.)

PageID.127.  The MSP Settlement Agreement provided a formula to calculate the amount of MSP payments that Defendant would accept "in full satisfaction of its reimbursement rights from the NECC Settlement Funds."  *Id.*  Further, the MSP Settlement Agreement provided that claimants, like Plaintiffs, would have the "Negotiated Lien Payment Amounts" automatically deducted from any settlement payments they received from the NECC Settlement Funds.  *Id.*

According to Defendant, every Plaintiff "opted-out" of the MSP Settlement Agreement.  *Id.* at PageID.128.  Plaintiffs therefore "relinquished their rights to have their MSP obligations resolved based on the formula and Negotiated Lien Payment Amounts."  *Id.*  Defendant argues that Plaintiffs were thus "left to process and resolve their MSP claims pursuant to the standard process set forth by the MSP statute and implementing regulations and guidance."  *Id.*  Plaintiffs assert that they never "opted out," but rather were "forced out" of the lien agreement.  ECF No. 24, PageID.304.  In their Amended Complaint, Plaintiffs explain that the lien reduction formula did not benefit claimants having small liens and higher settlements.  *See* ECF No. 13, PageID.59.

Nevertheless, each Plaintiff either received or is expected to receive a total gross settlement from the federal and state actions.[2]  *See* ECF No. 13.  Plaintiffs

---

[2] The Amended Complaint includes the total gross settlement amount for each named Plaintiff.

Mattila and Mazure allege that "[b]ecause of the unique circumstances of these cases," they must first resolve their Medicare liens before they are entitled to any proceeds from the lawsuits. ECF No. 24, PageID.300. The remaining Plaintiffs received some or all of their settlement proceeds. *Id.* at PageID.301. According to these remaining Plaintiffs, they also paid off their liens in full, "only to have Medicare re-assert the same lien on the same settlement." *Id.*

### B. Plaintiffs' Action for Declaratory Judgment

Plaintiffs' Amended Complaint brings two counts of declaratory relief against Defendant.[3] *See* ECF No. 13. In Count I, Plaintiffs Mattila and Mazure request that the Court declare that Defendant's claim of lien against them be resolved. *Id.* at PageID.75. They allege that they cannot receive their settlement proceed without such judicial intervention. ECF No. 24, PageID.302.

In the Amended Complaint, Plaintiff Mattila asserts that the liens asserted against the anticipated settlement proceeds are "grossly in excess" of the anticipated gross recovery. ECF No. 13, PageID.52. Specifically, Defendant asserted a lien for $367,828.72 in conditional payments, while Plaintiff Mattila is allegedly expected to receive a total gross settlement of $300,186.91. *Id.* at PageID.51. Plaintiff Mattila

---

[3] Since Defendants Select Specialty Hospital – Ann Arbor and Blue Cross Blue Shield of Michigan are not parties to the instant Motion, the Court will only address Plaintiffs' claims as they relate to Defendant Centers for Medicare & Medicaid Services.

purports that Defendant agreed to resolve its lien interests pursuant to a "lien reduction formula." *Id.* at PageID.53.

Plaintiff Mazure asserts that many of the conditional payment amounts which Defendant submitted are "unrelated to [his] tainted fungal injection claims[.]" *Id.* at PageID.54. Defendant's asserted lien, therefore, is allegedly inaccurate. According to Plaintiff Mazure, Defendant has refused to resolve its lien interest for anything less than an amount based on conditional payments of $77,597.14. *Id.* at PageID.55.

In Count II, the remaining nine Plaintiffs request that the Court (1) declare that Plaintiffs have paid their Medicare liens in full and (2) prevent Defendant from reasserting the allegedly resolved lien interests. ECF No. 13, PageID.76. They assert that while they have either received some or all of their settlement proceeds, and subsequently paid off their liens in full, Defendant has continued to re-assert the same liens on the same settlement. ECF No. 24, PageID.301.

Defendant removed Plaintiffs' declaratory action from the Livingston County Circuit Court to this Court. *See* ECF No. 1. The parties informed this Court at a Status Conference on August 20, 2019 that they were engaging in settlement negotiations. *See* ECF No. 12, PageID.47. Plaintiffs filed an Amended Complaint the following week, which added several additional parties. *See* ECF No. 13.

**C. Defendant's Present Motion to Dismiss**

Defendant filed its instant Motion to Dismiss, arguing that Plaintiffs' claims against it should be dismissed for lack of subject matter jurisdiction.  ECF No. 20. Medicare beneficiaries, like Plaintiffs, are entitled to appeal a demand for reimbursement of MSP conditional payments through a five-step administrative process set forth in 42 U.S.C. § 405(b).  *Id.* at PageID.131.  Once beneficiaries comply with the administrative process, judicial review is permitted in accordance with 42 U.S.C. § 405(g).  *Id.*  Defendant argues that all of Plaintiffs' claims "arise under" the Medicare Act, thus making them subject to administrative exhaustion. *Id.* at PageID.132.  However, Plaintiffs have purportedly "failed to exhauste their administrative remedies with respect to any of the demands for payment made by [Defendant] or its contractor under the MSP statute."  *Id.*

Plaintiffs opposed Defendant's Motion, asserting that the Motion should be denied for three reasons.  ECF No. 24, PageID.302. First, Plaintiffs Mattila and Mazure argue that because they have not received any settlement proceeds, "the administrative process for demand for reimbursement and any review and appeal thereof does not and cannot apply."  *Id.*  Second, they assert that their request for judicial intervention is actionable pursuant to 5 U.S.C. § 704.  *Id.*  Finally, the remaining Plaintiffs purport that "all administrative remedies have been exhausted as evidenced by each Plaintiff having already negotiated, resolved, and fully paid

[Defendant]'s lien interests." *Id.* Defendant filed its Reply to Plaintiffs' opposition on January 17, 2020. *See* ECF No. 27.

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction; they exercise only that authority conferred on them by Article III and congressional enactments pursuant thereto." *Walters v. Leavitt*, 376 F. Supp. 2d 746, 751 (E.D. Mich. 2005) (quoting *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986)). It is presumed that actions lie outside of this limited jurisdiction and that the burden of establishing jurisdiction is on the party asserting jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).

Federal Rule of Civil Procedure 12(b)(1) allows the court to dismiss an action for lack of subject matter jurisdiction. "A Rule 12(b)(1) motion for lack of subject matter jurisdiction can challenge the sufficiency of the pleading itself (facial attack) or the factual existence of subject matter jurisdiction (factual attack)." *Cartwright v. Garner*, 751 F.3d 752, 759 (6th Cir. 2014) (citing *United States v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)). "A facial attack goes to the question of whether the plaintiff has alleged a basis for subject matter jurisdiction, and the court takes the allegations of the complaint as true for purposes of Rule 12(b)(1) analysis," but "[a] factual attack challenges the factual existence of subject matter jurisdiction." *Cartwright*, 751 F.3d at 759 (internal citation omitted). When a party presents a

factual attack, the court has "broad discretion with respect to what evidence to consider in deciding whether subject matter jurisdiction exists, including evidence outside the pleadings, and has the power to weigh evidence and determine the effect of that evidence on the court's authority to hear the case." *Id.* at 759–60.

Where subject matter jurisdiction is challenged pursuant to Rule 12(b)(1), the plaintiff has the burden of proving jurisdiction in order to survive the motion. *DLX, Inc. v. Commonwealth of Kentucky*, 381 F.3d 511, 516 (6th Cir. 2004); *Moir v. Greater Cleveland Regional Transit Authority*, 895 F.2d 266, 269 (6th Cir. 1990).

## IV. ANALYSIS

### A. Plaintiffs' Claims "Arise Under" the Medicare Act

Congress has prescribed a specific and exclusive method for judicial review of any and all disputes arising under the Medicare program. *See Michigan Ass'n of Homes and Servs. For Aging v. Shalala*, 127 F.3d 496, 497 (6th Cir. 1997). Congress limited federal court jurisdiction by expressly incorporating 42 U.S.C. § 405(h), a Social Security Act provision, into the Medicare Act. *See* 42 U.S.C. § 1395ii. Section 405(h) provides, in relevant part, that:

> No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided. No action against the United States, the Commissioner of Social Security, or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.

42 U.S.C. § 405(h).

A claim "arises under" the Medicare Act, therefore triggering § 405(h), where "both the standing and the substantive basis for the presentation" of the claims is the Medicare Act. *Heckler v. Ringer*, 466 U.S. 602, 615 (1984) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760–61 (1975)); *Giesse v. Sec'y of Dep't of Health and Human Servs.*, 522 F.3d 697, 702 (6th Cir. 2008); *see also Walters*, 376 F. Supp. at 753. Here, Defendant argues that all of Plaintiffs' claims in the Amended Complaint "arise under" the MSP provisions of the Medicare Act. ECF No. 20, PageID.135. Plaintiffs do not dispute that their claims "arise under" the Medicare Act in their Response to Defendant's instant Motion. *See* ECF No. 24, PageID.457.

Each Plaintiff was a Medicare beneficiary at the time of their injuries from the tainted steroid injections. ECF No. 20, PageID.135. According to Defendant, Plaintiffs have received or anticipate receiving settlement payments from the federal and state actions.[4] *Id.* Defendant now asserts its statutory right to be reimbursed for Medicare's conditional payments. *Id.* Defendant has purportedly "determined and demanded repayment of its conditional payments from [P]laintiffs, based on the amount of the recoveries that they have reported receiving" through its contractor

---

[4] Plaintiffs Mattila and Mazure allege that "[b]ecause of the unique circumstances of these cases," they must first resolve their Medicare liens before they are entitled to any proceeds from the lawsuits. ECF No. 24, PageID.300. The remaining Plaintiffs received some or all of their settlement proceeds. *Id.* at PageID.301.

that administers the MSP program, the Benefits Coordination & Recovery Center ("BCRC"). *Id.*

Courts within the Sixth Circuit have determined that claims "arise under" the Medicare Act when they derive from Medicare's determination that it is entitled to certain conditional payments under the MSP provisions. For example, the district court concluded in *Walters v. Leavitt* that plaintiffs' claims "arise under" the Medicare Act because "[they] are seeking a determination of the amount of reimbursement that Defendant will seek under its subrogation rights created by the Medicare Act's MSP provisions." 376 F. Supp. 2d at 755. In *Wetterman v. Sec'y, Dep't of Health and Human Servs.*, the district court held that plaintiff's claim for medical benefits "undoubtedly arises under the MSP Act." No. 2:18-cv-85, 2019 WL 3208130, at *4 (S.D. Ohio July 16, 2019). There, plaintiff's underlying claim was related to Medicare's determination that it was entitled to reimbursement from the wrongful death settlement proceeds for conditional payment of the decedent's medical care. *Id.*

Here, each Plaintiff makes separate factual allegations in the Amended Complaint about the appropriate calculation of Medicare's demand for conditional payment. Their individual claims are derived from Medicare asserting its statutory right to reimbursement for its conditional payments under the MSP provisions. Accordingly, the Court finds that Plaintiffs' claims "arise under" the Medicare Act.

## B. Plaintiffs Cannot Establish Jurisdiction Under the APA

Rather than contesting whether their claims "arise under" the Medicare Act, Plaintiffs—specifically Plaintiffs Mattila and Mazure—assert that this Court has subject matter jurisdiction over their claims pursuant to the Administrative Procedures Act ("APA"). ECF No. 24, PageID.311, 312 ("Plaintiffs have standing under the APA to pursue a claim for judicial review of Medicare's actions relating to the issue lien interests."). Specifically, Plaintiffs argue that they have standing under the APA §§ 704 and 706(1) and (2). *Id.*

The APA "sets forth the procedures by which federal agencies are accountable to the public and their actions subject to review by the courts." *Muniz-Muniz v. United States Border Patrol*, 741 F.3d 668, 672 (6th Cir. 2013) (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 796 (1992)). It is well-settled that the APA is does not directly grant subject matter jurisdiction to the federal courts. *Haines v. Fed. Motor Carrier Safety Admin.*, 814 F.3d 417, 423 (6th Cir. 2016) (internal quotations and citations omitted); *see also Califano v. Sanders*, 430 U.S. 99, 107 (1977).

An agency action, to be reviewable under the APA, must be a "final agency action for which there is no other adequate remedy in court." 5 U.S.C. § 704. Defendant argues that there is no final agency action in this case since Plaintiffs have allegedly failed to take the first step of the administrative review process pursuant to 42 U.S.C. § 1395ff. ECF No. 20, PageID.125, 131–32. Plaintiffs Mattila and

Mazure do not contest Defendant's argument. Rather, they explain that they cannot avail itself of any of the administrative remedies because they have not yet received an initial Determination Letter. *See* ECF No. 24, PageID.307, 309. They therefore purport that they cannot request a redetermination pursuant to 42 U.S.C. § 1395ff(a)(3)(B)(i).

Defendant explains that it included the process for how to obtain a demand letter in its "Beneficiary Conditional Payment Letter" to both Plaintiffs Mattila and Mazure.[5] The letters request that Plaintiffs "refrain from sending any monies to Medicare prior to submission of settlement information and receipt of demand/recovery calculation letter from our office." ECF No. 24-6, PageID.337; ECF No. 24-13, PageID.386. A blank "Final Settlement Detail Document" was included with each letter; this form required information of the settlement amount, as well as the "Attorney Fee Amount Paid by the Beneficiary" and any "Additional Procurement Expenses Paid by the Beneficiary." ECF No. 24-6, PageID.339; ECF No. 24-13, PageID.388. Defendant alleges that Plaintiffs Mattila and Mazure failed to submit the required information. Specifically, Defendant asserts that Plaintiff Mattila failed to specify the amount of attorneys' fees or additional procurement

---

[5] Defendant sent Plaintiff Mattila the "Beneficiary Conditional Payment Letter" on September 22, 2017. *See* ECF No. 24-6. BCRC sent Plaintiff Mazure the "Beneficiary Conditional Payment Letter" on December 19, 2016. *See* ECF No. 24-13, PageID.385–88.

expenses paid by the beneficiary. ECF No. 27, PageID.459. Defendant purports that Plaintiff Mazure has yet to provide the amount of the initial settlement payment. *Id.* Without this required information, Defendant argues that it cannot issue Plaintiffs Mattila and Mazure their demand letters. *Id.* at PageID.459–60.

The Court denotes that Plaintiff Mattila attempted to compromise or settle its MSP obligations with Medicare via letter on April 10, 2017 and via email on August 9, 2018. *See* ECF Nos. 24-3; 24-8. The Court further recognizes that Plaintiff Mazure provided only the total estimated settlement payment—rather than the approved initial payment amount. *See* ECF No. 24-13, PageID.363. However, these attempts fail to include the required information for Defendant to issue demand letters to begin the administrative review process. Plaintiffs concede in their Response that they have not taken the first step of the appeal process since they do not have the demand letters from Defendant. ECF No. 24, PageID.311. Since Plaintiffs have not yet initiated the appeals process, the Court finds that there is no final agency action in this case as required under § 704.

Plaintiffs additionally cite to § 706(1) and (2) of the APA in an attempt to establish jurisdiction. They claim that under these subsections, the Court is "empowered to compel agency action unlawfully withheld or unreasonably delayed, and / or to set aside any agency actions contrary to law, regulation, or the evidence." ECF No. 24, PageID.311. Under § 706(1), a party may seek a court order "to compel

-14-

agency action that is unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1); *see also Huron Mountain Club v. United States Army Corps of Eng'rs*, 545 F. App'x 390, 393 (6th Cir. 2013). The Sixth Circuit has held that claims against an agency for a failure to act are available only under "limited circumstances"; specifically, "only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Id.* (quoting *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63 (2004) (emphasis in original)).

Here, Plaintiffs fail to identify the legal requirement for any discrete agency action that Defendant was required to take but has failed to do so. Rather, Plaintiffs only discuss Defendant's alleged "apathy on these cases[.]" ECF No. 24, PageID.311. As explained above, Defendant has not issued any demand letters because Plaintiffs Mattila and Mazure have not yet complied with the requirements in the provided "Final Settlement Detail Document" forms. Accordingly, the Court finds that Plaintiffs Mattila and Mazure have failed to state a claim under 5 U.S.C. § 706(1).

Further, as discussed above, Plaintiffs Mattila and Mazure have not alleged a final action to which the provisions of 5 U.S.C. § 706(2) would apply. Accordingly, the Court finds that the APA cannot be a basis for subject matter jurisdiction in the instant matter. *See Herzog v. Sec'y of Health, Educ. & Welfare*, 686 F.2d 1154,

1161 n. 5 (6th Cir. 1982) (dismissing plaintiffs' allegation that the APA, 5 U.S.C.

§§ 703 and 706, provided the district court with subject matter jurisdiction).

**C. Plaintiffs Have Not Exhausted Their Administrative Remedies**

The Medicare Act not only provides the sole basis for jurisdiction over

Medicare claims, but it also requires that claims be pursued through the entirety of

an administrative review process before the Court is able to exercise its jurisdiction.

*See* 42 U.S.C. § 1395ff(b)(1)(A). Specifically, the Medicare Act adopts the

exhaustion requirement of the Social Security Act set forth in 42 U.S.C. § 405(g).

*See Walters v. Leavitt*, 376 F. Supp. 2d 746, 752 (E.D. Mich. 2005). "Until a

claimant has exhausted h[is] administrative remedies by going through the agency

appeals process, a federal district court has no subject matter jurisdiction over h[is]

lawsuit seeking to 'recover on any claim arising out of the Medicare Act.'" *Walters*,

376 F. Supp. at 753 (internal citation omitted); *see also Heckler v. Ringer*, 466 U.S.

602, 614–15 (1984) (explaining that § 405(g), to the exclusion of 28 U.S.C. § 1331,

is the "sole avenue for judicial review for all claims arising under the Medicare

Act").

The Sixth Circuit has recognized that § 405(g) has been interpreted to contain

two prerequisites to judicial review. *See S. Rehab. Grp., P.L.L.C. v. Sec'y of Health*

*and Human Servs.*, 732 F.3d 670, 678 (6th Cir. 2013). First, § 405(g) consists of a

nonwaivable requirement for a party to present their claim(s) to the Secretary.

*Heckler*, 466 U.S. at 617. Second, there is a waivable requirement that the administrative remedies prescribed by the Secretary be "pursued fully by the claimant." *Id.* Thus, "both presentment of claims *and* the exhaustion of administrative remedies is required." *Manakee Prof'l Med. Transfer Serv., Inc. v. Shalala*, 71 F.3d 574, 580 (6th Cir. 1995).

Here, Plaintiffs did not complete the administrative review process before bringing the instant action. Plaintiffs fail to allege in their Amended Complaint that they obtained an adverse decision from the Medicare Appeals Council or that they completed one of the five steps to the administrative review process. ECF No. 20, PageID.139. Further, Plaintiffs do not purport that they previously presented their claims to the agency before raising it in court. *Id.*

In their Response, Plaintiffs raise several arguments in order to explain why they have not exhausted the administrative remedies. Plaintiff Mattila asserts that it "cannot avail itself of any of the administrative remedies cited by Defendant because Plaintiff does not have standing to pursue even the "first level" of appeal[.]" ECF No. 24, PageID.307. Plaintiff Mattila claims that it never received an initial determination letter from Defendant. *Id.* However, as explained in the previous section, Plaintiff Mattila failed to include the required information for Defendant to issue a demand letter to begin the administrative review process. Defendant argues

that once it receives this information, "the BCRC will calculate the final amount due to Medicare and issue a demand letter." ECF No. 27, PageID.459.

Plaintiff Mazure similarly purports that he does not have an initial determination letter to begin the administrative review process. ECF No. 24, PageID.309. Plaintiff Mazure included a timeline of his correspondence with Defendant to demonstrate that he has been in a "perpetual holding pattern" since 2017. *Id.* at PageID.308–09. However, as explained above, Plaintiff Mazure has also failed to submit all of the required settlement and procurement information to the BCRC to initiate a determination letter. *See* ECF No. 27, PageID.459. Defendant asserts that once Plaintiff Mazure provides this information, it will issue a demand letter to initiate the administrative review process. *Id.* at PageID.460.

The remaining Plaintiffs in the instant matter argue that they have "completely exhausted their administrative remedies, as evidenced by the fact that Medicare's lien was settled and paid in full." ECF No. 24, PageID.312. They included a timeline of Plaintiff Fobare's correspondence with Defendant between June 2017 and August 2018 to illustrate their argument. *Id.* at PageID.312–13. The Court denotes, though, there is no evidence that Plaintiff Fobare, or any of the remaining Plaintiffs, completed or attempted to complete any of her administrative remedies available under § 405(g). For example, there is no evidence provided in Plaintiffs' Response or in their Amended Complaint that Plaintiffs sought review of their

-18-

claims by the Appeals Council. Accordingly, this Court finds that Plaintiffs have not yet exhausted all available administrative remedies to them.

While this Court has determined that Plaintiffs have not exhausted all available administrative remedies, the Court may still have jurisdiction over this matter. In *Bowen v. City of New York*, the Supreme Court identified three factors to be considered in deciding whether to waive the exhaustion requirement: (1) are the claims at issue collateral to the underlying decisions to eligibility for entitlements; (2) would claimants be irreparably harmed were the exhaustion requirement enforced against them; and (3) would exhaustion of administrative remedies be futile. 476 U.S. 467, 482–86 (1986); *see also Shalala*, 71 F.3d at 580.

The Court denotes that Plaintiffs do not argue that the exhaustion requirement of § 405(g) should be waived in the instant action. Rather, Defendant is the only party to raise such a possibility. ECF No. 20, PageID.139–41. In its Motion, Defendant asserts that Plaintiffs fail to satisfy any of the three *Bowen* factors. *Id.* at PageID.140. Plaintiffs have not established why the exhaustion requirement should be waived in the instant matter. In light of this, and because of Supreme Court and Sixth Circuit precedent holding that the satisfaction of the administrative exhaustion requirement is necessary for jurisdiction, this Court has no authority to hear Plaintiffs' claims at this juncture.

### D. Plaintiffs Have Not Met Their Burden For This Court To Invoke Equitable Estoppel Against Defendant

The remaining Plaintiffs allege that they have "negotiated, resolved, and fully paid Medicare's lien interests on their respective claims." ECF No. 24, PageID.312. They therefore argue that Defendant's attempt to reassert its lien interests are barred by res judicata and/or collateral estoppel.[6] *Id.* Defendant contends in its Reply that it is not estopped from recovering settlement proceeds. ECF No. 27, PageID.461. The Court agrees with Defendant.

---

[6] In Count II of their Amended Complaint and in their Response, Plaintiffs—excluding Plaintiffs Mattila and Mazure—employ "collateral estoppel" to argue that the Court should enter declaratory relief in their favor. The party invoking collateral estoppel bears the burden of proving that the doctrine applies. *Cent. Transp., Inc. v. Four Phase Sys., Inc.*, 936 F.2d 256, 260 (6th Cir. 1991). The doctrine is intended to "relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and, by preventing inconsistent decisions, encourage reliance on adjudication." *Allen v. McCurry,* 449 U.S. 90, 94 (1980). "Under collateral estoppel, once a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Id.* Collateral estoppel effect is given not only to final judgments of courts, but also, under certain circumstances, to final decisions of administrative agencies. *See United States v. Utah Construction Co.*, 384 U.S. 394, 421-22 (1966); *see also United States v. School Dist. Of Ferndale, Mich.*, 400 F. Supp. 1141, 1145 (E.D. Mich 1975). Here, Plaintiffs fail to demonstrate that the doctrine applies. Indeed, Plaintiffs do not address any of the doctrine's elements in their Amended Complaint or in their Response to the instant Motion. Further, the Court denotes that there has been no final agency decision in the instant action. Accordingly, the Court finds that the collateral estoppel principles do not apply to Plaintiffs' claims. The Court will thus only address the equitable estoppel doctrine which Defendant raises in its Reply. *See* ECF No. 27, PageID.461.

Estoppel is an "equitable doctrine which a court may invoke to avoid injustice in particular cases." *Michigan Exp., Inc. v. United States*, 374 F.3d 424, 427 (6th Cir. 2004) (internal citation omitted). Generally, the elements of equitable estoppel are: "(1) misrepresentation by the party against whom estoppel is asserted; (2) reasonable reliance on the misrepresentation by the party asserting estoppel; and (3) detriment to the party asserting estoppel." *Id.* (internal citation omitted). The government, however, "may not be estopped on the same terms as any other litigant." *Heckler v. Cmty. Health Servs. of Crawford Cty., Inc.,* 467 U.S. 51, 60 (1984). A plaintiff bears a "very heavy burden" in attempting to estop the government. *Fisher v. Peters,* 249 F.3d 433, 444 (6th Cir. 2001). At a minimum, a plaintiff must demonstrate some "affirmative misconduct" by the government in addition to the other estoppel elements. *Michigan Exp., Inc.*, 374 F.3d at 427 (internal citation omitted). The Sixth Circuit has determined that "affirmative misconduct" is more than mere negligence; it is an "act by the government that either intentionally or recklessly misleads the claimant." *Id.*

Here, Plaintiffs do not demonstrate any "affirmative misconduct." Further, Plaintiffs do not prove an "intentional act" by Defendant nor the Defendant's "requisite intent." *Id.* Rather, Plaintiffs merely allege that Defendant's lien interests have already been "negotiated, resolved, and fully paid[.]" ECF No. 24,

PageID.312.  Accordingly, the Court finds that Plaintiffs have not met their burden

for this Court to invoke equitable estoppel against Defendant.

## V. CONCLUSION

For the reasons articulated above, the Court will **GRANT** Defendant's Motion

to Dismiss [#20] and **DISMISS THIS CASE WITHOUT PREJUDICE**.

IT IS SO ORDERED.


Dated:          February 3, 2020

                                        s/Gershwin A. Drain
                                        HON. GERSHWIN A. DRAIN
                                        United States District Court Judge



CERTIFICATE OF SERVICE
Copies of this Order were served upon attorneys of record on
February 3, 2020, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager