# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| In RE NEW ENGLAND COMPOUNDING PHARMACY, INC. PRODUCTS LIABILITY LITIGATION | MDL No. 2419 <br> MDL No. 1:13-md-2419-RWZ |
| THIS DOCUMENT RELATES TO: <br><br> Milda Mattila | |

## PLAINTIFF MATTILA'S MOTION FOR RELIEF FROM ORDER DENYING PLAINITFF'S MOTION FOR EQUITABLE AND/OR DECLARATORY RELIEF

Plaintiff Mattila, by and through his undersigned counsel, pursuant to Fed. R. Civ. P. 60(a) and (b)(1), respectfully requests this Court to grant Plaintiffs' Motion for Relief from this Court's August 2, 2022, Order [#3686] Denying Plaintiff's Motion for Equitable and/or Declaratory Relief [#3566], for the reasons stated in the attached Brief In Support.

Respectfully Submitted by:

Date:  August 30, 2022

/s/Todd J. Weglarz
Geoffrey N. Fieger (P30441)
Todd J. Weglarz (P48035)
Fieger, Fieger Kenney & Harrington, P.C.
19390 W. Ten Mile Road
Southfield, MI 48075
(248) 355-5555
(248) 355-5148 (fax)
t.weglarz@fiegerlaw.com

### BRIEF IN SUPPORT OF PLAINTIFF MATTILA'S MOTION FOR RELIEF FROM ORDER [#3686] DENYING PLAINITFF'S MOTION FOR EQUITABLE AND/OR DECLARATORY RELIEF

Plaintiff, DAVID J. MATTILA, as Personal Representative of the Estate of MILDA J. MATTILA, Deceased, by and through the undersigned, very respectfully submits that pursuant Fed. R. Civ. P. 60(a) and (b)(1), this Court should reconsider its Order Denying Plaintiff Mattila's Motion for Equitable and/or Declaratory Relief, and replace said order with an order granting Plaintiff Mattila's motion and/or granting such other relief as may be appropriate, such as an order directing CMS / Medicare to comply with the terms of the settlement agreement to which it consented and agreed (ie, *negotiate* its claim of lien with Mattila), for the following reasons[1]:

1. **THOUGH THIS COURT MAY NOT HAVE JURISDICTION UNDER THE MEDICARE ACT, IT *DOES* HAVE JURISDICTION BY VIRTUE OF THE SETTLEMENT AGREEMENT (INCLUDING CMS'S LIEN REDUCITON AGREEMENT) WHICH WAS PRESENTED TO AND APPROVED BY THIS COURT.**

Plaintiff Mattila respects this Court's determination that under the Medicare Act, this Court is has no authority to exercise subject matter jurisdiction over Plaintiff Mattila's Motion for Equitable / Declaratory Relief. However, this Court's inability to exercise jurisdiction to determine Mattila's rights under the Medicare Act is independent from and has nothing to do with any other bases of subject matter jurisdiction. As set forth in Plaintiff Mattila's Reply, because CMS has entered into a settlement agreement, the terms of which Plaintiff alleges CMS has breached, CMS has waived its sovereign immunity under the Tucker Acts. See 28 USC §§1346(a)(2), 1491(a)(1), *U.S. v Zajanckauskas,* 346 F.Supp.2d 251, 257 (D.Mass. 2003).

---

[1] Plaintiff Mattila adopts, relies on, and incorporates by reference all facts, exhibits, authorities, arguments, and analyses set forth in Plaintiff Mattila's Reply to CMS's Statement of interest (Response) to Plaintiff Mattila's Motion for Equitable Relief, as if fully set forth, word for word, herein. [#3583].

This Court further has subject matter jurisdiction over Plaintiff's motion because the CMS lien reduction agreement was part and parcel to the NECC Settlement Agreements agreed to under the Bankruptcy Plan. A court has jurisdiction to adjudicate disputes related to a settlement agreement if the court previously expressed an intent to retain such jurisdiction. *Kokkonen v Guardian Life,* 511 U.S. 375, 381 (1994); *First Marblehead Corp v The Education Resources Institute, Inc,* 463 B.R. 151, 161 (D.Mass. 2011).

The settlement and lien agreements at issue here were part of the Chapter 11 Plan filed in Defendant NECC's bankruptcy proceedings. This (bankruptcy) court was tasked with the very difficult decision of ensuring that a settlement agreed to by a bankrupt defendant would have the maximum beneficial impact on the thousands of lives which were destroyed by the bankrupt Defendant's tainted drugs. When approving the NECC settlement, the Bankruptcy Court expressly retained original and exclusive jurisdiction of all matters arising under, out of, and related to the Chapter 11 Case and Plan, including for the following purposes:

- to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, any transactions contemplated by any agreement or document relating to the Plan;

- to take any action and issue such orders necessary to construe, enforce, implement, execute, and consummate or maintain the integrity of the Plan following consummation;

- and to hear and determine any other matters related to the Plan, the Estate Causes of Action, and Tort Trust Documents.

[See Plf Reply].

All parties to the NECC settlement agreement intended to maximize the limited settlement proceeds available to the thousands of NECC victims by reducing the lien exposure for these under-reimbursed plaintiffs. The terms of the Lien reduction agreement to which CMS

consented expressly state that if an NECC victim opts out of the agreement, CMS and the NECC claimant / victim shall "negotiate" CMS's claim of lien. [Plf Reply, Ex E, Sec 4, p. 4]. CMS has more power under the lien reduction agreement than with a typical settling CMS recipient since the agreement mandates that the Tort Trustee "shall withhold all distributions" to NECC victims until CMS provides the Trustee with written confirmation that the victim's Medicare lien has been *resolved.*[2] [Plf Reply, Ex E, Sec III, p. 5]. The CMS lien reduction agreement also provides that if any dispute arises out of the agreement, CMS agrees to attempt to resolve that dispute in *good faith.* [Plf Reply, Ex E, Sec. IX, p. 8].

For the reasons set forth in his Reply, Mattila strongly believes that the lien reduction agreement should apply to him, notwithstanding the fact that Plaintiff opted out (Mattila was "set up" after he relied on CMS's representation it held a very nominal lien interest ($26k or less) just before Mattila opted out). CMS then did an about face and asserted a lien for several hundred thousand dollars just a few weeks later. CMS has yet to "negotiate" or attempt to resolve its lien interest with Mattila in "good faith" as it previously agreed to do. CMS will only be satisfied if it sucks up every last dollar which should have been paid to this 91-year-old fungal meningitis victim before she passed away. For the reasons stated above, this Court should rescind its Order and instead grant Plaintiff's Motion.

2. **PLAINTIFF DID NOT SIT IDLY BY AFTER CMS SUDDENLY CHANGED ITS LIEN INTEREST FROM $26K TO $300K PLUS RIGHT AFTER MATTILA OPTED OUT**

This Court's Order mentions that Plaintiff waited for six years after he opted out of the lien reduction program to now seek the benefit of that program. Plaintiff wishes to provide some context and correct the Court's perception.

---

[2] CMS is not empowered to hold up a settlement payment to a liability insurance claimant simply because CMS has not yet coerced the claimant into accepting a lien payoff amount.

As mentioned in Plaintiff's Reply, even a year after Mattila's contraction of meningitis, CMS represented it incurred no conditional payments related to her meningitis claim. [Plf Reply, Ex D].  Right before Mattila decided he had to opt-out, CMS represented on December 26, 2016 that it expended only $23,208 in conditional payments[3].  When CMS changed its CPL amount to nearly $300,000 less than four weeks later, Mattila asserted his objections shortly thereafter.  Plaintiff faxed a request to CMS on April 10, 2017, asking CMS to reconsider its lien interest and to permit Mattila to resolve his lien per the lien reduction agreement.  [**Ex A** CMS 04-10-17].   A month later, CMS advised Mattila that his request and CMS case was being referred to the Regional Office in Chicago for consideration.  [**Ex B** CMS May 2017].  Over a year went by without Plaintiff ever getting a response to his request to reduce the CMS lien.  Instead, CMS served Plaintiff with another CPL in September 2017, <u>increasing</u> the conditional payments by $100,000.  Plaintiff served the CMS Regional Office with email correspondence in the summer of 2018, again with no response.  In August of 2018, Plaintiff filed an action for Declaratory Judgment against CMS in the Michigan state court, before the state judge who presided over the fungal claims asserted against the Michigan distributor of the tainted steroid product, Michigan Pain Specialists.  It was CMS who removed Plaintiff's action / motion to the federal district court in Detroit.

   The difference between the federal court in Detroit and this Court is that Plaintiff could not argue that the Detroit court approved of presided over the CMS settlement agreement which forms the basis of Mattila's request for relief.  For the reasons stated above, this Court should grant Plaintiff's Motion for Relief from Order under FRCP 60.

---

[3] This was now 4 ½ years after Mattila's exposure to NECC's fungal tainted steroid injection.  Medicare is not even allowed to claim payments more than three years old.  After applying the standard CMS formula to take into account procurement costs, the lien payoff for $26,000 in conditional payments amounts to approximately $15,317.28.


Respectfully submitted,

FIEGER, FIEGER, KENNEY & HARRINGTON, P.C.

Dated: August 30, 2022

/s/ Todd J. Weglarz
GEOFFREY N. FIEGER
TODD J. WEGLARZ
Attorneys for Plaintiff
19390 West Ten Mile Road
Southfield, MI 48075
(248) 355-5555

CERTIFICATE OF SERVICE

I hereby certify that the foregoing document filed through the ECF system will be sent electronically to counsel of record who are registered participants as identified on the Notice of Electronic Filing (NEF).